**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DWIGHT RUSSELL, )<br>JOHNNIE PIERSON, )<br>JOSEPH ORTUNO, )<br> )<br>    On behalf of themselves and all )<br>    others  similarly situated, )<br> )<br>        Plaintiffs, )<br> )<br>v. )<br> )<br>HARRIS COUNTY, TEXAS, )<br> )<br>SHERIFF ED GONZALEZ, )<br> )<br>        Defendants. )<br> ) | Case No. _____ |

**MOTION TO CERTIFY CLASS**

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ............................................................... 1

BACKGROUND ................................................................................................... 1

    I.      Defendants' Post-Arrest Policies and Practices Violate Plaintiffs' Rights to Pretrial Liberty and Against Wealth-Based Detention ............................ 1

    II.     The Named Plaintiffs Will Be Kept in Jail Because They Cannot Pay the Money Bail Demanded for Their Release ............................................ 2

    III.    Plaintiffs Seek Class-wide Prospective Relief ....................................... 3

ARGUMENT ....................................................................................................... 3

    I.      Numerosity: Joinder of All Proposed Class Members is Impracticable ................. 4

    II.     Commonality: Claims by the Proposed Class Raise Common Questions That Will Generate Common Answers .................................... 9

    III.    Typicality: The Named Plaintiffs' Claims Are Typical of the Proposed Class ................................................................................................. 12

    IV.    Adequacy: The Named Plaintiffs Are Competent and Dedicated Class Representatives ...................................................................................... 13

    V.     Certification for Prospective Relief is Appropriate Under Rule 23(b)(2) ................................................................................................ 19

CONCLUSION ................................................................................................... 23

CERTIFICATE OF SERVICE ............................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allapattah v. Exxon*,
   333 F.3d 1248 (11th Cir. 2003) ............................................................ 21

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ........................................................ 21, 22

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................ 20

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) .......................................................................... 3

*Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002)......................................................... 23

*Baby Neal ex rel. Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ............................................................. 10, 23

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................... 3

*Bradley v. Harrelson*,
   151 F.R.D. 422 (M.D. Ala. 1993)......................................................... 7

*Carpenter v. Davis*,
   424 F.2d 257 (5th Cir. 1970) ............................................................. 19

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
   624 F.3d 185 (5th Cir. 2010) ............................................................. 21

*Daves v. Dallas Cty., Texas*,
   341 F. Supp. 3d 688 (N.D. Tex. 2018) .............................................. 17

*De Bremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) ............................................................. 19

*Earnest v. GMC*,
   923 F. Supp. 1469 (N.D. Ala. 1996)................................................... 19

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ............................................................. 14

*Gerardo v. Quong Hop & Co.*,
   No. 08-CV-3953, 2009 WL 1974483 (N.D. Cal. July 7, 2009) ............... 8

*Gerstein v. Pugh,*
  420 U.S. 103 (1975)..................................................................................... 6

*Horton v. Goose Creek Indep. Sch. Dist.,*
  690 F.2d 470 (5th Cir. 1982) ................................................................ 4, 14

*In re Deepwater Horizon,* 739 F.3d 790, 811 (5th Cir. 2014) ........................... 3, 9, 14

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. 2009) ...................................................................... 21

*In re Rodriguez,*
  695 F.3d 360 (5th Cir. 2012) ...................................................................... 12

*In re Universal Service Fund Telephone Billing Practices Litig.,*
  619 F.3d 1188 (10th Cir. 2010) .................................................................. 18

*In re Veneman,*
  309 F.3d 789 (D.C. Cir. 2002) ................................................................... 20

*Jack v. Am. Linen Supply Co.,*
  498 F.2d 122 (5th Cir. 1974) ....................................................................... 6

*Jackson v. Foley,*
  156 F.R.D. 538 (E.D.N.Y. 1994) ................................................................. 8

*James v. Dallas,*
  254 F.3d 551 (5th Cir. 2001) ................................................................. 12, 13

*Jones v. Diamond,*
  519 F.2d 1090 (5th Cir. 1975) ........................................................... 4, 5, 6, 7

*Kilgo v. Bowman Transp., Inc.,*
  789 F.2d 859 (11th Cir. 1986) ..................................................................... 7

*Lightbourn v. County of El Paso,*
  118 F.3d 421 (5th Cir. 1997) ....................................................................... 9

*Longden v. Sunderman,*
  123 F.R.D. 547 (N.D. Tex. 1988) ................................................................ 3

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012) ...................................................................... 19

*Miller v. Mackey Int'l., Inc.,*
  452 F.2d 424 (5th Cir. 1971) ....................................................................... 3

*Mullen v. Treasure Chest Casino, LLC,*
  186 F.3d 620 (5th Cir. 1999) ........................................................ 5, 9, 12, 14

*Neff v. Via Metro. Transit Auth.*,
179 F.R.D. 185 (W.D. Tex. 1998) ............................................................. 22

*Nemnich v. Stangler*,
No. 91-CV-4517, 1992 WL 178963 (W.D. Mo. 1992) ............................. 7

*ODonnell v. Harris County*,
No. 16-CV-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) .................. 1, 17, 22

*Paxton v. Union Nat'l Bank*,
688 F.2d 552 (8th Cir. 1982) ..................................................................... 14

*Pederson v. La. State Univ.*,
213 F.3d 858 (5th Cir. 2000) .................................................................. 4, 6

*Perez-Benites v. Candy Brand*,
267 F.R.D. 242 (W.D. Ark. 2010) ............................................................. 7

*Prado-Steiman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ............................................................... 10

*Rodriguez v. Providence Comm. Corrections, Inc.*,
155 F. Supp. 3d 758 (M.D. Tenn. 2015) .................................................. 17

*Schultz v. State*,
330 F. Supp. 3d 1344, 1356 (N.D. Ala. 2018) ....................................... 17

*Sherman v. Griepentrog*,
775 F. Supp. 1383 (D. Nev. 1991) ............................................................ 8

*Simms v. Jones*,
296 F.R.D. 485 (N.D. Tex. 2013) ............................................................ 10

*Stoffels v. SBC Commc'ns, Inc.*,
238 F.R.D. 446 (W.D. Tex. 2006) ........................................................... 14

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ...................................................................... 7

*Wal-Mart v. Dukes*,
564 U.S. 338 (2011) ......................................................................... passim

*Zeidman  v. J. Ray McDermott & Co.*,
651 F.2d 1030 (5th Cir. 1981) ................................................................ 4, 7

## Other Authorities

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97,
132 (2009) .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................... 4, 12, 13

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 19

Fed. R. Civ. P. 23(g) ................................................................................................... 16

**Treatises**

Moore's Federal Practice § 23.22(f) ............................................................................ 5

Moore's Federal Practice § 23.24[ 4] (3d ed. 2000) .................................................. 13

Moore's Federal Practice § 23.43 .............................................................................. 20

Newberg on Class Actions § 1:3 (5th ed.) ................................................................. 20

Newberg on Class Actions § 25:4 (4th ed.) ................................................................. 5

Newberg on Class Actions § 3:11 (5th ed.) ................................................................. 5

Newberg on Class Actions § 3:12 (5th ed.) ................................................................. 4

Newberg on Class Actions § 3:19 (5th ed.) ................................................................. 9

Newberg on Class Actions § 4:28 (5th ed.) ............................................................... 19

Newberg on Class Actions § 4:40 (5th ed.) ............................................................... 20

## NATURE AND STAGE OF PROCEEDING

Plaintiffs have filed this proposed class action challenging Defendants' unconstitutional post-arrest system, which jails some of Harris County's poorest residents because they cannot afford to pay for their pretrial release. Plaintiffs move for certification of a class, seeking prospective relief, under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs propose a class defined as: All felony arrestees who are detained by Harris County, for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on secured money bail because of indigence.[1]

Finally, Plaintiffs move for appointment of the undersigned counsel to represent the certified class under Rule 23(g) of the Federal Rules of Civil Procedure.

## BACKGROUND

**I.     Defendants' Post-Arrest Policies and Practices Violate Plaintiffs' Rights to Pretrial Liberty and Against Wealth-Based Detention**

Plaintiffs challenge Defendants' policy and practice of enforcing secured financial conditions of release that result in the pretrial detention of only those arrestees who are too poor to pay the money bail amounts. The amount of money an arrestee must pay to secure release is imposed without any findings concerning ability to pay or alternative conditions of release or a finding that detention is required.

Arrestees who can pay the predetermined money bail amount are released while those who cannot stay in jail until they are taken to a probable cause hearing before a Hearing Officer. At the probable cause hearing, Hearing Officers make no findings concerning ability to pay; they make no findings as to whether pretrial detention is necessary to serve any government interest;

---

[1] The class Plaintiffs seek to certify is nearly identical to the classes certified in *ODonnell v. Harris County*, No. 16-CV-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017)  ("All Class A and Class B misdemeanor arrestees who are detained by Harris County . . . for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on the secured money bail because of indigence.").

arrestees cannot put on evidence in support of pretrial release; and Hearing Officers do not provide other basic procedural safeguards, such as making findings by any evidentiary standard, let alone by clear and convincing evidence, or issuing any statement of reasons concerning why a particular financial condition or pretrial detention is required. Due to these and other policies and practices, thousands of people languish in jail cells every night in Harris County, simply because they cannot afford to pay for their release.

In Harris County, whether a presumptively innocent arrestee is released or detained after arrest turns on her access to cash. This system violates the constitutional rights of tens of thousands of people arrested in Harris County every year who cannot afford to pay for their release.

## II.     The Named Plaintiffs Will Be Kept in Jail Because They Cannot Pay the Money Bail Demanded for Their Release

The Named Plaintiffs are all being kept in jail because they are too poor to pay a secured financial condition of release that is being demanded without an inquiry into or findings concerning their ability to pay. Plaintiff Dwight Russell is a 61-year-old man who was arrested for a felony offense. He is being kept in jail because he is too poor to pay a $25,000 money bail. Plaintiff Johnnie Pierson is a 51-year-old man who was arrested for a state jail felony. He is being kept in jail because he cannot afford the $15,000 money bail required for his release. Plaintiff Joseph Ortuno is an 18-year-old teenager who was arrested for a felony offense. He is being kept in jail because he cannot afford the $30,000 money bail amount required for his release from Harris County Custody. All of the Plaintiffs struggle to meet the basic necessities of life, and all of them would walk out of the doors of the jail if they could afford to purchase their release.

### III.    Plaintiffs Seek Class-wide Prospective Relief

Defendants' policies and practices violate class members' substantive due process rights against wealth-based detention (count one) and to pretrial liberty (count two) as well as class members' procedural due process rights (count three). Plaintiffs request class-wide declaratory and injunctive relief and certification of the following class: All felony arrestees who are detained by Harris County, for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on secured money bail because of indigence.

### ARGUMENT

For purposes of a class-certification motion, the substantive allegations contained in the Complaint must be accepted as true. *Longden v. Sunderman*, 123 F.R.D. 547, 551 (N.D. Tex. 1988) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Miller v. Mackey Int'l., Inc.*, 452 F.2d 424 (5th Cir. 1971). Class certification is not a "dress rehearsal for the merits." *In re Deepwater Horizon*, 39 F.3d 790 (5th Cir. 2014). While the Court must perform a "rigorous analysis" to determine whether to certify a class, *Wal-Mart v. Dukes*, 564 U.S. 338, 351 (2011), the Court may not require the plaintiffs to establish their claims at the class certification stage. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). The Fifth Circuit instructs courts to "err in favor of certification." *Horton v. Goose Creek Indep. Sch. Dist.*, 690

F.2d 470, 487 (5th Cir. 1982). Further, the Fifth Circuit has held that "it is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975); *accord Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Jones*, 519 F.2d at 1099 (holding courts should not apply rules about the burden of proof "rigidly or blindly" in civil rights cases)).

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). These fundamental class action prerequisites, known respectively as numerosity, commonality, typicality, and adequacy, are easily each met in this case.

## I.    Numerosity: Joinder of All Proposed Class Members is Impracticable

Plaintiffs' proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class or subclass members required for a finding of numerosity. Instead, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman*, 651 F.2d at 1038. These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.*; Newberg on Class Actions § 3:12 (5th ed.). Courts also consider "judicial economy arising from the avoidance of a multiplicity of actions." Newberg on Class Actions § 3:12 (5th ed.). Finally, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. La. State Univ.*, 213 F.3d 858, 867 n.11 (5th Cir. 2000). The Fifth Circuit has held that "[t]he general rule encouraging liberal construction of civil rights class

4

actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Jones*, 519 F.2d at 1100. Joinder is presumptively impracticable when a class consists of forty members or more. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing Newberg on Class Actions § 3:11 (5th ed.)).

Although the Defendants are in the best position to know exactly how many class members there are and will be in the future—because the Defendants keep records of the identities of the people who they detain—the proposed class clearly satisfies the numerosity requirement. To take just one representative month, in September 2018, the average daily population of the Harris County Jail was 9,803 individuals, 8,386 of whom were pretrial detainees. About 90 percent of these pretrial detainees—7,553 individuals—had been arrested for felony charges. Many of these individuals were in Harris County custody solely because they could not afford to pay money bail. Publicly available statistics reveal that the County arrests and charges more than 300 people with criminal offenses each day, and each new arrestee is subjected to the Defendants' secured money bail wealth-based pretrial detention practices.

Moreover, there is an indeterminate future stream of class members who will suffer the same injury, absent injunctive relief, given that the Defendants arrest and detain new people every day. Thus, traditional "joinder" is not practicable. *See* Moore's Federal Practice § 23.22(f) ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future. Courts in these cases often find that joinder of separate suits would be impracticable because those who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit."); Newberg on Class Actions § 25:4 (4th ed.) ("Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future or if the

identity or location of many class members is unknown for good cause."); *see also Pederson*, 213 F.3d at 868 n.11 ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification."); *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (finding the numerosity requirement satisfied where the class included "unknown, unnamed future" class members rendering joinder "certainly impracticable"). In such cases, the numerosity requirement is met because the putative class seeks declaratory and injunctive relief against an ongoing policy, a resolution will affect numerous people in the future, and the composition of the class is fluid and unknown. *Jones*, 519 F.2d at 1100 (granting liberal construction of numerosity prong in a case seeking injunctive relief on behalf of future class members because "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1).").

These considerations were the foundation of the Supreme Court's decision to hear a similar class action brought by two post-arrest inmates in *Gerstein v. Pugh*, 420 U.S. 103 (1975):

> Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures.

*Id.* at 110–11 n.11. The Supreme Court's discussion of why such cases are not moot is therefore relevant to why it is critical to allow such challenges to ongoing policies to proceed as a class:

> It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.

*Id.*

In addition to the future stream of arrestees suffering the same violations, other factors highlight the undesirability of individual lawsuits here. In assessing the impracticability of non-

class joinder, "courts should take a common-sense approach which takes into account the objectives of judicial economy and access to the legal system." *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993). The judicial resources that would be expended in repeated litigation and discovery, the potential for multiple or conflicting judgments inherent in many more individual cases concerning the same municipal scheme, and the lack of access to the legal system for low-income arrestees all point strongly toward the advantages offered by the class-action vehicle in this case. *See Zeidman* , 651 F.2d at 1039 ("[A] number of facts . . . may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."); *Jones*, 519 F.2d at 1098; *see also Nemnich v. Stangler*, No. 91-CV-4517, 1992 WL 178963, at *4 (W.D. Mo. 1992) (finding impracticability of joinder and emphasizing indigency of class members); *Perez-Benites v. Candy Brand*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (same); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) ("Practicability of joinder depends on many factors, including, for example, . . . ease of identifying [the class's] numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."). The resolution of the central facts and legal issues concerning the Defendants' wealth-based post-arrest detention scheme in one judicial proceeding is far preferable, for all parties involved, to proceedings and discovery repeatedly litigated in this Court on behalf of new indigent arrestees each week and each month. A class action is superior when "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Judicial economy will therefore be well-served by adjudicating the legality of the

Defendants' money bail system in a single class proceeding rather than clogging this Court with numerous individual suits on an ongoing basis for each new arrest.

Moreover, the ability of individual impoverished arrestees to instigate separate lawsuits is compromised because they are unlikely to have the resources to investigate and develop their constitutional claims, let alone to find a lawyer to represent them in the hours after their arrest. As a group, they are among the most marginalized and economically desperate members of the community. And, unlike those who have been injured by a defective product, indigent arrestees may not even be aware that they have a valid constitutional claim for challenging the practice of jailing the poor for the inability to make a monetary payment. *See Jackson v. Foley*, 156 F.R.D. 538, 541–42 (E.D.N.Y. 1994) (finding numerosity and impracticable joinder when the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits); *Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding, in action brought for injunctive relief challenging Medicaid policy, that joinder was impracticable because the proposed class consisted of poor and elderly or disabled people who could not bring individual lawsuits without hardship); *Gerardo v. Quong Hop & Co.*, No. 08-CV-3953, 2009 WL 1974483, at *2 (N.D. Cal. July 7, 2009) (certifying class where "potential class members are not legally sophisticated," making it difficult for them to bring individual claims).

Finally, a class action does not present any insurmountable difficulties in management— the class is easily ascertainable from records in the Defendants' possession *and* the class is limited in geographic scope, as opposed to a nationwide, multi-district class of millions. Requiring separate individual lawsuits against the Defendants would likely result in far greater manageability problems, such as duplicative discovery (including numerous depositions of the

same County officials and repetitive production of documents), repeated adjudication of similar controversies in this Court (with the resultant risk of inconsistent judgments), and excessive costs for all involved.

Joinder of so many individual claims would be impracticable, and judicial economy would undoubtedly suffer.

## II.    Commonality: Claims by the Proposed Class Raise Common Questions That Will Generate Common Answers

The claims asserted on behalf of the proposed class include "questions of law or fact common to the class" that satisfy Rule 23(a)(2). Commonality requires that the class members' claims "depend on a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The threshold for satisfying the commonality prerequisite is "not demanding." *Mullen*, 186 F.3d at 625; *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810. Courts generally "find[] common questions of law to be at a high level of generality . . . and questions of fact similarly broad . . . ." Newberg on Class Actions § 3:19 (5th ed.) (citations omitted). Commonality also requires these common questions "to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) ). These "common answers" may be answers about the "defendant's injurious conduct." *Deepwater Horizon*, 739 F.3d at 811 . Traditionally, the Rule asks whether the disputed questions are capable of class-wide proof or resolution, and claims need not be identical to satisfy this requirement. *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex.

2013) ("Even a single common question of law or fact can suffice.") (citing *Dukes*, 564 U.S. at 359); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000).

Although there need not be *both* common issues of law and fact under Rule 23(a), here the entire case is pervaded by critical and dispositive issues of both law and fact that are common to the class. Among the most important, but not the only, common questions of fact are:

- Whether the Defendants have a policy and practice of using a predetermined schedule to determine the amount of money required to secure post-arrest release;

- Whether the Defendants require that scheduled amount of money to be paid up front before releasing a person from the jail;

- Whether the Defendants require arrestees who have had probable cause hearings to pay the secured money bail amount imposed by the Hearing Officer before releasing such people from the jail;

- Whether, when requiring a financial condition of release there is an inquiry into ability to pay;

- Whether, if a person cannot pay for release, there is any inquiry into and findings concerning availability of alternative conditions of release and a finding that pretrial detention is necessary;

- Whether, in requiring pretrial detention, there is an adversarial hearing with counsel and notice of the critical issues at stake, opportunity to be heard and to confront evidence, findings by clear and convincing evidence, and a statement of reasons orally or in writing concerning the need for pretrial detention.

- What standard post-arrest procedures the Defendants perform on felony arrestees; for example, whether Defendants use any other alternate procedures for promptly releasing people determined otherwise eligible for release but who are unable to afford a monetary payment.

Among the most common questions of law with respect to the Class are:

- Whether requiring arrestees to pay money up front to secure release from post-arrest detention without an inquiry into or findings concerning the arrestee's present ability to pay the amount required, and without meaningful consideration of less restrictive alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

- Whether it is lawful to impose a secured financial condition of release that operates as a de facto order of pretrial detention because of a person's inability to pay without complying with the substantial findings, legal standards, and procedural safeguards required for issuing and enforcing a transparent order of preventive detention;

- What substantive findings and procedural safeguards are required as a matter of federal law prior to pretrial detention of a presumptively innocent person.

This case exemplifies the Supreme Court's explanation of commonality in *Dukes*, 564 U.S. at 349–51. As the Court noted, it is not just the existence of hypothetical common questions that justify class treatment (such as, "Are all of the Plaintiffs human beings?" or "Does Harris County have a jail?"). Rather, it is the existence of common factual or legal questions *relevant to deciding the claims raised*. In other words, there must be factual or legal questions the "answers" to which or the "resolution" of which help to advance the legal claims of the Plaintiffs. *Id.* In this case, the fundamental common questions of fact and law listed above are the dispositive issues necessary to determine the Defendants' liability as to all class members. To put it simply, Defendants have standard post-arrest procedures. If those procedures rely upon the use of a secured "bail schedule" as described in the Complaint—charging fixed monetary sums based on generic offenses to all arrestees—then this litigation turns on whether that system is unlawful.

Do the Defendants tell arrestees that they will be jailed unless they make monetary payments set by reference to a chart of offenses? Is the automatic jailing of an individual who cannot make that payment inconsistent with due process and equal protection principles? The answers to these common questions—as well as to other related factual and legal questions—will determine, for the class as a whole, whether the Defendants are violating their rights.

Plaintiffs' proposed class falls well within the usual parameters for commonality. Named Plaintiffs, and other members of the class, are subject to Defendants' policies and practices of

requiring payment of secured money bail, imposed without the required findings. Every member of the proposed class will be subjected to these policies, meaning that every class member will be eligible for release from Harris County custody if she pays the money bail amount (unless she is subject to certain holds); every class member will be detained by Harris County if she is unable to pay the money bail amount; no class member will receive findings that she has the ability to pay, nor will any class member who cannot afford to pay money bail be offered non-financial alternative conditions of release that permit release to occur as expeditiously as if she had posted the money bail amount. Every class member will be held in jail if she cannot afford the financial condition of release imposed during that inadequate process.

Because Defendants apply and enforce a detention system with the same constitutional flaw for each class member and cause the same harm to each class member, the proposed class satisfies the commonality requirement of Rule 23(a)(2).

As these common questions demonstrate, the Plaintiffs' claims stand or fall on answers about the Defendants' policies and practices toward all class members; resolving Plaintiffs' contentions about the Defendants' policies and practices "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

## III.   Typicality: The Named Plaintiffs' Claims Are Typical of the Proposed Class

The named Plaintiffs in this case have claims typical of people who are subject to Defendants' post-arrest policies and practices. "[T]he test for typicality is not demanding." *Mullen*, 186 F.3d at 625. To meet the typicality requirement, the named plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality does not require a complete identity of claims." *James v. Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds in In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012). In analyzing typicality, "the critical inquiry is whether the class representative's claims have the same

essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (citing Moore's Federal Practice § 23.24[4] (3d ed. 2000)).

The named Plaintiffs are injured in the same way as the other class members: they are being detained following hearings at which de facto detention orders were issued; their detention is due to their inability to pay the amount of money required for their release; and the amount required was determined without any findings concerning ability to pay and without the procedures necessary for issuing a valid order of pretrial detention, including consideration of alternatives to secured financial conditions of release and findings on the record.

The named Plaintiffs also rely on the same legal theories as the other class members concerning whether the Defendants' indiscriminate money bail schedule scheme is unconstitutional. *James*, 254 F.3d at 571 ("If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."). The proof concerning whether the Defendants engage in those policies and the legal argument about whether those policies are unlawful are critical for each class member in this case to establish the liability of the Defendants. Thus, if the named Plaintiffs succeed in their claim that the Defendants' policies and practices concerning post-arrest detention as alleged in the Complaint are unlawful, then that ruling will likewise benefit every other member of the class. That is the essence of Rule 23(a)'s typicality requirement.

## IV.    Adequacy: The Named Plaintiffs Are Competent and Dedicated Class Representatives

The class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis encompasses two separate inquiries: (1) whether the named Plaintiffs have common interests with the other class members, and (2) whether the

representatives will adequately prosecute the action through qualified counsel. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The named Plaintiffs are adequate class representatives. To determine adequacy, courts consider "[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Feder*, 429 F.3d at 130 . "Class representatives must 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Deepwater Horizon*, 785 F.3d at 1015 (citation omitted). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen* , 186 F.3d at 625–26. The Fifth Circuit has specified that, while courts should consider class representatives' "willingness and ability . . . to take an active role in and control the litigation," the representatives "need not be legal scholars and are entitled to rely on [class] counsel." *Feder*, 429 F.3d at 132 n.4. "The representative class members are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006). An example of an adequate class representative is one with "commendable familiarity with the complaint and the concept of a class action." *Horton*, 690 F.2d at 484.

The named Plaintiffs in this case have agreed to act as class representatives. They have each met with the undersigned counsel and discussed the responsibility of prosecuting a class action on behalf of Harris County's poorest residents. The named Plaintiffs can demonstrate

familiarity with the complaint and the concept of a class action. Each named Plaintiff is familiar with the Defendants' procedures challenged here and the constitutional protections they seek to vindicate. The named Plaintiffs are prepared to respond to discovery requests in this case. Finally, the named Plaintiffs are dedicated to fulfilling the role and duties of a class representative protecting class members' fundamental constitutional rights.

The named Plaintiffs here are part of the class, share the class' interests, and suffer the same injuries as the class members. There are no known conflicts between the named Plaintiffs' interests and the interests of the class members. The interests of the named Plaintiffs and class members are aligned: all people seeking relief from unconstitutional pretrial detention. There are no named Plaintiffs or class members who benefit from the denial of due process or equal protection while imprisoned. Plaintiffs have also hired counsel who are willing to undertake financial responsibility for this action pro bono, and seek payment of costs and attorney's fees only as permitted under 42 U.S.C. § 1988 and other fee-shifting provisions.

Finally, Plaintiffs' counsel are competent and zealous. Plaintiffs' counsel from Civil Rights Corps, Susman Godfrey, and Texas Civil Rights Project have extensive experience litigating civil rights cases. Ex. 1 (Declaration of Alec Karakatsanis); Ex. 2 (Declaration of Natalia Cornelio). This experience includes representation of class of misdemeanor arrestees in a case that raises the same legal claims challenging materially identical bail practices in misdemeanor cases. *ODonnell v. Harris County*, No. 16-CV-1414. Counsel have a history of zealous advocacy on behalf of their clients, as evidenced by the filings in those cases and favorable results obtained. Having spent more than two years litigating Harris County's pretrial detention scheme, Class Counsel are intimately familiar with the practices and procedures at issue as well as the constitutional law. Class counsel have studied the way that these systems

function in other cities and counties in order to investigate the wide array of reasonable constitutional options available to municipalities. As a result, Class Counsel have devoted substantial resources to becoming familiar with the wealth based detention scheme in Harris County, Texas and with the relevant state and federal laws and procedures that relate to it.

Counsel for the named Plaintiffs also seek to be appointed Class Counsel pursuant to Rule 23(g), given their extensive involvement in this action and that they will "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g). Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Rule 23(g)(1)(B) . The Court must consider factors including: 1) "the work counsel has done in identifying or investigating potential claims in this action"; 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" 3) "counsel's knowledge of the applicable law;" and 4) "the resources that counsel will commit to representing the class." Rule 23(g)(1)(A) .

The undersigned counsel satisfy these four requirements. First, Plaintiffs' counsel have interviewed Plaintiffs and other class members, performed relevant legal research and drafting, investigated the facts and legal claims raised in this case for a significant period of time. Ex. 1 ¶¶ 4-5; Ex. 2 ¶ 7. Second, Plaintiffs' counsel have significant experience litigating civil rights actions, including claims concerning due process, equal protection, the right to counsel, and conditions of confinement. Ex. 1 ¶¶ 6-8; Ex. 2 ¶¶ 4-6. Counsel have also litigated challenges to unconstitutional bail systems in this jurisdiction, other jurisdictions in Texas, and across the country. Ex. 1 ¶¶ 6-8. Third, Plaintiffs' counsel are particularly familiar with the application of constitutional rights in Texas misdemeanor and felony courts. Ex. 1 ¶¶ 4-6; Ex. 2 ¶ 7. Counsel

have advocated for policy reform on the issues raised in this case with state and local officials, and educated the public and other attorneys about preventing and remedying the type of constitutional violations exemplified by this case. Ex. 1 ¶ 8. Counsel have substantial experience litigating class actions and other complex matters. Ex. 1 ¶¶ 6–8; Ex. 2 ¶¶ 3-6. Finally, Plaintiffs' counsel are prepared to contribute significant resources to the representation of this class. Ex. 1 ¶ 9. Therefore, plaintiffs' counsel satisfies the four criteria in Rule 23(g), and they respectfully request appointment as class counsel.

Counsel for the named Plaintiffs have also been the lead attorney in several recent constitutional civil rights class action lawsuits raising similar issues. *See, e.g.*, *ODonnell*, 2017 WL 1542457, at *8 (appointing Civil Rights Corps and Susman Godfrey, along with Texas Fair Defense Project class counsel in a materially identical lawsuit challenging the misdemeanor bail-setting process); *see also Schultz v. State*, 330 F. Supp. 3d 1344, 1356 (N.D. Ala. 2018) (granting preliminary injunction requiring sheriff, with some exceptions to release all bail-eligible defendants on unsecured bonds); *Daves v. Dallas Cty., Texas*, 341 F. Supp. 3d 688 (N.D. Tex. 2018) (granting preliminary injunction enjoining Dallas County from imposing prescheduled bail amounts as a condition of release on arrestees who attest that they cannot afford it without providing adequate process); *Rodriguez v. Providence Comm. Corrections, Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015) (granting preliminary injunctive relief to a class of thousands of probationers owing money to Rutherford County and prohibiting post-arrest detention based on predetermined monetary bond amounts imposed without any inquiry into or findings concerning ability to pay).

Susman Godfrey is one of the preeminent law firms in the country in class action litigation, with extensive experience in prosecuting class action cases and civil rights cases.

Counsel are knowledgeable concerning the factual and legal issues involved in this lawsuit and are committed to providing the resources necessary to represent the class. They possess the necessary qualifications, experience, and resources.[2] Plaintiffs' counsel has a history of zealous advocacy on behalf of their clients, as evidenced by the filings in those cases and the favorable results obtained.  Susman Godfrey has more than 100 lawyers and offices in Houston, New York, Los Angeles, and Seattle. The firm has extensive experience representing plaintiffs in complex class action litigation in state and federal courts in many fields, including antitrust and price-fixing cases, securities litigation, consumer class actions, products liability, and civil rights cases.  A few of Susman Godfrey's significant cases as lead counsel for classes of consumer plaintiffs include *Clark v. AdvanceMe Inc.*, No. 08-3540 (C.D. Cal.) (challenging financial agreements with retail merchants under California's laws against usury); *In re Universal Service Fund Telephone Billing Practices Litig.*, 619 F.3d 1188 (10th Cir. 2010) (challenging overcharges to customers for telephone bills); and *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 10-2151 (C.D. Cal.) (challenging defectiveness of vehicles for breach of warranty, unjust enrichment, and violation of consumer protection statutes). Susman Godfrey is eminently able to conduct this litigation and protect the interests of this class. It is anticipated that the Defendants will not dispute the qualifications of Susman Godfrey or their ability to prosecute this case on a class action basis.

Accordingly, the named Plaintiffs and undersigned counsel meet the adequacy requirement of Rule 23(a) and Rule 23(g)(2).

---

[2] See http://www.susmangodfrey.com (biographies of Neal S. Manne, Lexie White, Joseph Grinstein, and Elizabeth Hadaway).

## V.      Certification for Prospective Relief is Appropriate Under Rule 23(b)(2)[3]

The proposed class in this case is exactly the sort of class described in Rule 23(b)(2). To certify a class under Rule 23(b)(2), the party seeking class certification must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "This is a simple inquiry in most cases." Newberg on Class Actions § 4:28 (5th ed.). The requirement of a generally applicable set of actions "ensures that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient." *Id.* Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Civil rights class actions seeking injunctive and declaratory relief are "prime examples" of the types of actions that Rule 23(b)(2) is meant to capture. *Dukes*, 564 U.S. at 361. Rule 23(b)(2) classes seek "an indivisible injunction benefitting all its members at once," individualized inquiries into "whether class issues predominate" are unnecessary, and "[p]redominance and superiority are self-evident." *Id.* at 363 (emphasizing the importance of classwide relief based on the structure of Rule 23(b)(2) and noting the Rule's historical basis in civil rights cases).

---

[3] At least with respect to a Damages Class under Rule 23(b)(3) (Plaintiffs do not seek to certify a Damages class because they have not brought a damages claim), courts have held that "ascertainability" is, in essence, a fifth Rule 23 prerequisite. A class must be "adequately defined and clearly ascertainable." *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). "In other words, the class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class[,]" although "'it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.'" *Earnest v. GMC*, 923 F. Supp. 1469, 1473 & n.4 (N.D. Ala. 1996) (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)). Although it is doubtful that such a requirement should exist with respect to a purely injunctive class under Rule 23(b)(2) , *see, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012) (noting that the rule has been applied to Rule 23(b)(3) damages classes), that requirement is easily met here. The Defendants already have in their possession the identity of each and every person for whom an arrest warrant has been issued and who it keeps in custody after an arrest because of the inability to make a monetary payment. Also, by necessity, the Defendants will come to know the identity of each future arrestee.

This case is exactly the kind of class action that Rule 23(b)(2) is meant to capture. *Id.*; *see also* Newberg on Class Actions § 4:40 (5th ed.) ("While civil rights cases are often maintained against public and private defendants under civil rights *statutes*, many (b)(2) class actions challenge government actions on *constitutional* grounds as well.") (emphasis in original). The class's interests are sufficiently related to warrant aggregate litigation, as are the interests of the members of the subclass. The Defendants have acted on grounds that apply generally to the class —Defendants' unconstitutional policies and practices apply to every arrestee detained in the Harris County Jail before trial because they cannot afford the secured financial conditions required for their release. Injunctive and declaratory relief are appropriate to the class precisely because the only adequate relief is enjoining Defendants' unconstitutional policies. Furthermore, it is far more efficient for this court to grant injunctive and declaratory relief protecting all of the class members than to extend that relief piecemeal through individual suits. Because the putative class challenges the Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the class, Rule 23(b)(2) is appropriate and necessary. *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002) (" Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury)."[4] As the Supreme Court explained recently:

> When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident.

---

[4] Rule 23(b)(2) arose out of experience "in the civil rights field," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted), in which the government typically treats a whole class in an unconstitutional manner based on law or government policy. "Rule 23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions." Moore's Federal Practice § 23.43; *see also* Newberg on Class Actions § 1:3 (5th ed.) (" Rule 23(b)(2) authorizes a class action when a party has taken or refused to take action with respect to a class, and final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole. This category is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.").

*Dukes*, 564 U.S. at 363. In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), the Fifth Circuit stated that the underlying premise of a Rule 23(b)(2) class action is that class members suffer from a common injury which is properly addressed by class-wide relief. *Id.* at 413. "Thus, if the plaintiffs [seek] only injunctive and declaratory relief, [the] case [can] readily be certified as a class action under Rule 23(b)(2)." *Id.* at 411. As the Fifth Circuit recognized, "[s]uch relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Id.* at 414.

Plaintiffs seek only injunctive and declaratory relief that is designed to remedy the deficiencies of the post-arrest system in ways that apply to the class as a whole—the Defendants have acted on grounds that apply generally to the class. A declaration and injunction stating that the Defendants cannot implement and enforce their system of wealth-based detention would provide relief to every member of the class.[5] *See Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) ("Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class.").[6] Because Plaintiffs seek only such "uniform group remedies," certification under Rule 23(b)(2) is appropriate. *Allison*, 151 F.3d at 414.

---

[5] For this reason, Plaintiffs do not anticipate that notice to the class would be necessary.

[6] All of the proof and evidence in this case relevant to whether the Defendants' policies and practices exist—including their standing orders and rules, internal written and oral directives to employees, the standard documents and systems used by the County officers and clerks, the testimony of numerous civilian witnesses as well as the testimony of County court and jail officials, and the Defendants' docket and record-keeping systems—will be common to all Class members and comprise the necessary proof for their claims of Defendants' liability. The legal claims thus involve the same nucleus of facts about the scheme that the Defendants have constructed and that it applies every day. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) (certifying the class based on a common course of conduct by the defendant). Similarly, the dispositive legal questions in determining liability are identical. Once the common facts are established through common evidence, the question will be whether those facts give rise to the legal violations alleged in the Complaint. Those important constitutional questions concerning liability should be decided in one proceeding rather than in hundreds. *Allapattah v. Exxon*, 333 F.3d 1248, 1261 (11th Cir. 2003).

Due to the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, "assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Allison*, 151 F.3d at 413. Thus, the Court need not conduct an independent probe into the degree to which common issues predominate over those affecting only individuals, as they would with a Rule 23(b)(3) class, for example. *Id.* at 414. Indeed, the Rule 23(b)(3) requirement is "almost automatically fulfilled in actions where the relief sought is primarily injunctive." *Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 195 (W.D. Tex. 1998). The central issue common to the entire class is the Defendants' application and enforcement of policies and procedures to detain arrestees unless and until they pay amounts of money imposed without any findings concerning ability to pay and without consideration of nonfinancial conditions of release for those who cannot pay. The fact that class members have different abilities to pay bail has no bearing on the class certification question regarding the legality of Defendants' general post-arrest procedures. *E.g.*, *ODonnell*, 2017 WL 1542457 (granting, for the purposes of pursuing declaratory and injunctive relief, a class composed of "All Class A and Class B misdemeanor arrestees who are detained by Harris County from the date of this order through the final resolution of this case, for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on the secured money bail because of indigence."); *Walker*, 2016 WL 361580 (granting, for the purposes of pursuing declaratory and injunctive relief, a class composed of "[a]ll arrestees unable to pay for their release who are or will be in the custody of the City of Calhoun as a result of an arrest involving a misdemeanor, traffic offense, or ordinance violation").

As the relief requested in this case makes clear, the requirements of Rule 23(b)(2) are satisfied because "the predominant relief sought is injunctive or declaratory." *Allison*, 151 F.3d

at 411; *Baby Neal*, 43 F.3d at 58 (noting that the requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief" for common legal claims.); *see also Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 465 (S.D. Fla. 2002) (finding class certification appropriate when "the Class Plaintiffs sought exclusively injunctive relief based on their allegations").

Certification of the class under Rule 23(b)(2) is merited because the named Plaintiffs, at the time of their arrest, and the rest of the members of the putative class are arrestees who are or will be detained by Harris County after arrest because they are unable to pay money bail. Absent the requested relief, the named Plaintiffs and the putative class members will be subjected to a flagrantly unconstitutional set of practices, policies, and procedures. Injunctive relief compelling the Defendants to comply with Equal Protection and Due Process will protect each member of the class from being subjected to the Defendants' unlawful policies and practices. A declaration and injunction stating that Defendants cannot detain arrestees due to their inability to make a monetary payment would provide relief to every class member. Therefore, declaratory and injunctive relief with respect to the class as a whole is appropriate.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the court certify the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Respectfully Submitted,

*s/ Neal S. Manne*
Neal S. Manne
State Bar No.: 12937980
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Phone: (713) 651-9366
nmanne@susmangodfrey.com

Attorney-in-Charge for Plaintiffs

**OF COUNSEL:**
Lexie G. White
State Bar No.: 24048876
Joseph S. Grinstein
State Bar No.: 24002188
Elizabeth Hadaway (*Pro Hac Vice* application forthcoming)
State Bar No. 24109962
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Phone: (713) 651-9366
lwhite@susmangodfrey.com
jgrinstein@susmangodfrey.com
ehadaway@susmangodfrey.com


Alec Karakatsanis (*Pro Hac Vice* application forthcoming)
D.C. Bar No. 999294
Elizabeth Rossi (*Pro Hac Vice* application forthcoming)
D.C. Bar No. 1500502
**CIVIL RIGHTS CORPS**
910 17th Street NW, Suite 200
Washington, DC 20006
Phone: (202) 599-0953
Fax: (202) 609-8030
alec@civilrightscorps.org
elizabeth@civilrightscorps.org


*/s/ Natalia M. Cornelio*
Natalia M. Cornelio
Illinois State Bar No. 6289267
Southern District No. 1278866
**TEXAS CIVIL RIGHTS PROJECT**
405 N Main St, Suite 716
Houston, TX 77003
Phone: 832-767-3650
Fax: 832-554-9981
natalia@texascivilrightsproject.org

**Certificate of Service**

I certify that on January 21, 2019, a true and correct copy of this motion was filed simultaneously with the complaint in this action and properly served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing. This motion and all accompanying exhibits, along with copies of the summons and complaint, will be served on each Defendant by delivery to Professional Civil Process on the same date that the Clerk of Court issues a summons for that Defendant.

*/s/ Joseph S. Grinstein*
Joseph S. Grinstein