# Exhibit D – Declaration of Sarah V. Wood

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| RUSSELL, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 4:19-cv-00226 (Class Action) The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) ) | U.S. District Judge |
| Defendants. | ) ) ) | |

## DECLARATION OF SARAH V. WOOD

1. My name is Sarah V. Wood.

2. I am an attorney, licensed to practice law in the state of Texas.

3. I serve as Policy Director for the Harris County Public Defender's Office (PDO). I have been licensed since 2005, having worked in private criminal trial and appellate practice until joining PDO when it opened in 2011. I served in the PDO's Appellate Division for over six years, litigating appeals and consulting on felony trials. I am Board Certified in Criminal Appellate Law. In 2017, during the federal litigation challenging the County's unconstitutional misdemeanor bail practices, the PDO was finally permitted to provide representation at initial bail hearings and I focused on developing policies and procedures for our newly formed Bail Division as well as working inside the jail representing arrestees. I was appointed Policy Director in early 2019 and have since focused on systemic policy reform in coordination with other government agencies with an emphasis on bail and booking center operations.

4. I am over the age of 18.

### A. Arrest and the Initial Bail-Setting Process

5. For decades, Harris County has used a predetermined money bail schedule, promulgated by the Harris County District Court Judges ("the felony judges"), to determine financial

conditions of pretrial release for felony arrestees in Harris County.

6.  Some arrestees are required to remain in custody until a magistrate determines conditions of release at a probable cause hearing.

7.  For most felony arrestees, money bail is automatically set at the scheduled amount at the time charges are filed.

8.   Those who cannot pay the predetermined amount will be detained.

9.  On March 20, in the midst of the global Covid-19 pandemic, the felony judges promulgated an order requiring the release of certain people arrested for any of a list of 20 enumerated state jail felony offenses.

10. As of Wednesday, March 24, the order had apparently gone into effect, but not everyone eligible for release was being released.

11. As the order only applies to certain offenses, large categories of people are still subject to detention because they cannot afford money bail and without a constitutionally adequate hearing to determine ability to pay or whether detention is necessary.

12. About 75% of people arrested for felonies in Harris County are arrested by either Harris County or the Houston Police Department ("HPD").[1]

13. Those people are taken directly after arrest to the Joint Processing Center ("JPC") in downtown Houston.

14. People arrested by other agencies are sometimes taken to "field stations" before being transported to the JPC.

15. At the scene, officers call the District Attorney's Office's ("DAO") intake hotline to ask

---

[1]    Harris    County    Pretrial    Services,    2017    Annual    Report    (2017),    at    16,
https://pretrial.harriscountytx.gov/Library/2017%20Annual%20Report.pdf

the DAO whether they will accept charges. If the DAO declines charges, the person is released.

16. If the DAO wants to accept the charge, the the officer submits a probable cause statement and the DAO eventually files a complaint with the District Clerk who then creates a case number and assigns the case to a specific judge's courtroom.

17. Pretrial Services runs the person's information through an algorithm to create a "risk assessment" score and applies the felony judges' bail schedule by using the charged offense and the person's "risk" score to identify the scheduled amount of money required by the felony judges for release.

18. Once this scheduled monetary amount is set, the arrestee can pay the secured money bail amount and, absent another basis for detention such as a warrant from another jurisdiction or an immigration detainer, the person will be released.

19. If a person arrested by an agency other than the Harris County Sheriff's Office or HPD pays the amount required for release pursuant to the bail schedule before transport to the JPC, the person may be released without being transported to or booked into the Harris County Jail.

20. If a person pays the amount required for release in the felony case but is subject to detention for any other reason, such as a hold from another jurisdiction, that person will be eligible for release, subject to the other basis for detention.

21. Typically, there is a set time period within which the jurisdiction asserting the hold must pick the individual up. The time period by which the holding jurisdiction must take custody of the person does not begin to run until bail is posted on Harris County charges.

22. Sometime after a person arrives at the JPC—and usually before the person is assigned to

a housing unit—the person will be taken by Sheriff's Office employees to a courtroom in the jail with other recent arrestees to appear before a Hearing Officer, who will determine probable cause for warrantless arrests and set conditions of release.

23. If a person pays money bail after arriving at the JPC but prior to the probable cause hearing, she will be released and the probable cause determination in her case is to be made at a subsequent court appearance.

### B. Probable Cause and Bail Hearings

24. The first post-arrest hearing before a judicial officer is referred to locally by a variety of terms, including "magistration," "Article 15.17 hearing," "bail hearing," and "probable cause hearing."

25. Each of these terms refers to the initial hearing before a Criminal Law Hearing Officer, which occurs inside the JPC.

26. Defendants attempt to provide arrestees with a probable cause and bail hearing within 48 hours of arrest.

27. The Public Defender's Office represents felony arrestees at these bail hearings.

28. By order of the judges, the PDO is appointed for the limited purpose of arguing bail and is not authorized to represent the person during the portion of the hearing in which probable cause is determined.

29. When determining conditions of release on felonies at the magistration hearings:

- Hearing Officers routinely do not make findings as to whether a person can pay any particular amount of money before requiring secured money bail as a condition of release.
- Hearing Officers routinely do not make findings as to whether an order to pay secured bail will operate to detain the person because the person cannot pay it.
- Hearing Officers routinely do not make findings that detention is necessary to meet a compelling government interest or that less-restrictive conditions are inadequate to meet a compelling government interest.

- Hearing Officers do not apply any evidentiary standard to any factual finding.

30. When the docket begins, arrested individuals sit on benches in a courtroom inside the JPC.

31. The Hearing Officer calls an individual's name, determines probable cause, and asks the person whether he or she wishes to be represented by a public defender for purposes of the bail decision.

32. A typical felony bail hearing proceeds as follows:

- An ADA, who appears by video, reads the allegations in the law enforcement officer's probable cause statement.
- In cases involving warrantless arrests, the Hearing Officer decides whether there is probable cause.
- Next, the Hearing Officer considers whether to adjust the money bail amount pre-determined by the schedule, or, if no amount was set, whether to release the person and if so on what conditions.
- If the person arrested accepted the representation of the public defender's office, the public defender will provide information about the person's ties to the community and other life circumstances.
- Sometimes Hearing Officers grant personal bonds.
- Routinely, the Hearing Officers condition release on payment of a secured money bail amount without first determining the person's ability to pay or making any findings.

33. These financial conditions often result in the pretrial detention of people who are too poor to pay them, but the Hearing Officer makes no findings concerning the availability of less-restrictive, alternative conditions, or the necessity of detaining the person.

34. Hearing Officers believe that they are not permitted to impose non-monetary conditions of release in certain cases.

35. Throughout the hearing, the arrestees remain in the JPC, supervised by Sheriff's Office employees.

36. Sheriff's Office employees and agents also observe the probable cause hearings.

37. If an individual is not brought to the probable cause hearing due to medical reasons, which is a frequent occurrence, the Hearing Officer will make a finding of probable cause and require financial conditions of pretrial release in that person's absence.

38. The County's protocol generally prohibits assistant public defenders from representing people on felonies who are not present at the hearing. In these cases, the money bail amount is set without any argument on the arrestee's behalf.

## C. The Use of Personal Bonds

39. Hearing Officers sometimes recommend arrestees for release on "personal bonds," a term Defendants use to describe unsecured release without requiring an up-front payment prior to release, i.e., without a secured financial condition of release.

40. For decades, Hearing Officers adhered strictly to written and oral directives regarding the money bail–setting process issued by the felony judges, who control their employment.

41. For decades, Hearing Officers simply reviewed the bail amount previously affixed to ensure that it conformed to the schedule and the specific instructions from the felony judges.

42. These instructions included charts and emails instructing Hearing Officers about who could be released on personal bonds and in what circumstances Hearing Officers could deviate from the cash bail schedule (rarely, according to the instructions).

43. Some judges instructed Hearing Officers never to set non-financial conditions for any person who was assigned to their courtroom at all, or for particular categories of individuals.

44. Judges placed other policy limitations on Hearing Officers.

45. Although the felony judges purportedly rescinded these instructions in 2017 with the implementation of a new felony bail schedule and expanded the Hearing Officers' authority to determine money bail amounts and other conditions of release, Hearing Officers continue to require secured financial conditions of release without making

findings concerning ability to pay, the necessity of pretrial detention, or the adequacy of alternative conditions, and without application of the clear-and-convincing-evidence standard or a statement of reasons concerning why a particular financial condition or pretrial detention is necessary.

### D.  Completion of Booking Process

46. In total, it often takes a minimum of 24 hours for a person to be fully booked into the jail, assigned to a housing unit, and made available for a visit by a lawyer or by family or friends.

47. At any point during the period of time after arrest and prior to first appearance before a felony judge, a person whose bail is set at a monetary amount can pay and be released.

### E.  People Who Cannot Afford Money Bail Will Often Be Detained For Two to Four Weeks Prior to First Appearance

48. Pursuant to Defendants' current practice, if an arrestee is unable to pay the secured bail amount initially set, she often must wait two to four weeks, or longer, to be taken to court for a first appearance.

49. There is typically no review of the money bail amount previously imposed at that hearing, except that some judges routinely revoke personal bonds or increase the monetary amount set by the magistrate and without notice or a formal hearing.

50. Although an informal, off-the-record request for a reduction in the amount required may theoretically occur at first appearance, the felony judges do not provide for an adversarial bail hearing on the record at that time.

51. As a matter of routine practice, the felony judges do not conduct bail hearings at first appearance: they make no findings concerning ability to pay; they make no findings as to whether pretrial detention is necessary to serve any government interest; they do not allow

arrestees to confront the evidence and arguments of the government or put on evidence and argument in support of pretrial release; and they do not provide other basic procedural safeguards, such as making findings by any evidentiary standard or issuing any statement of reasons concerning why a particular financial condition or pretrial detention is required.

52. Detained individuals typically remain in lock-up outside of the courtroom and are not brought into the courtroom on this court date.

53. The case is almost always then "reset," meaning that another hearing is scheduled, typically weeks in the future.

54. As a result, individuals who cannot pay money bail remain in detention after first appearance and are returned to the Harris County Jail, often without ever having been brought into the courtroom.

55. If a person wishes to have an evidentiary hearing concerning their pretrial detention and whether less-restrictive conditions of release are available, the person's lawyer usually must file a motion and then schedule a court proceeding for a later date.

56. A hearing on the motion will likely not occur for more than a week after the motion is filed—likely longer in light of the current public health crisis and the decreased number of courtrooms open each day.

57. This hearing will be the arrestee's first opportunity to present witnesses or documentary evidence.

58. If an arrestee agrees to plead guilty at this appearance, then the arrestee will be brought out from the lock-up to plead guilty.

59. The felony judges routinely accept guilty pleas from individuals who are in jail solely because they are too poor to pay money bail.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my ability.


/s/ *Sarah V. Wood*                                                    3/26/20
Sarah Wood                                                                 DATE
Policy Director
Harris County Public Defender's Office