# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| RUSSELL, et al. ) <br><br> Plaintiffs, ) <br><br> v. ) <br><br> HARRIS COUNTY, TEXAS, et al. ) <br><br> Defendants. ) | Case No. 4:19-cv-00226 <br> (Class Action) <br> The Honorable Lee H. Rosenthal <br> U.S. District Judge |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs need emergency relief now. Every hour increases the likelihood they will contract COVID-19 and suffer extreme illness or death,[1] and that they will spread the disease to other incarcerated people, staff at the jail, the broader community, and the nurses and doctors who will be forced to treat an uncontrollable outbreak of COVID-19 in downtown Houston.

### I. This Court Has Broad Discretion to Issue Temporary Relief

This Court began its March 29, 2020, telephonic hearing by noting the unprecedented nature of the situation facing all of us. The Court noted that any temporary emergency relief it ordered would be predicated on the very narrow exigencies of that situation, and that these exigencies could dissipate in short order. After the Court made those observations, the Court and the parties learned of the first positive COVID-19 test inside the jail.

To be sure, a temporary restraining order is an "extraordinary" remedy. *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). However, the Court is well within its authority to enter an agreed order by the parties immediately that it could review within a matter

---

[1] Elizabeth Chuck, *What is a ventilator? The 'critical resource' that is in short supply* (Mar. 25, 2020), https://www.nbcnews.com/health/health-news/what-ventilator-critical-resource-currently-short-supply-n1168641

1

of days with a full record. Indeed, because of its extraordinary nature, limited duration, and exigent circumstances, "[a] circuit court normally has no authority to review a TRO." *Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999). In this way, settled appellate procedure protects the district court's power to exercise its discretion on an abbreviated time-frame and with an abbreviated record in extraordinary, exigent circumstances—like the ones here—to protect against irreparable harm while the parties assemble a record and make more fulsome arguments. Exceptions to the unavailability of appellate review exist in certain circumstances where the temporary restraining order ("TRO") is more like a preliminary injunction order, for example, when the TRO was entered following an adversarial hearing, with development of a full factual record with witnesses and documentary evidence, and following substantive legal argument by the parties. *Knoles v. Wells Fargo Bank, N.A.*, 513 F. App'x 414, 415 (5th Cir. 2013); *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974). A TRO might also be appealable when it extends beyond the 14-day time limit set forth in Federal Rule of Civil Procedure 65(b)(2). *Connell v. Dulien Steel Prod., Inc.*, 240 F.2d 414, 418 (5th Cir. 1957) (explaining that appeals are generally not allowed from TROs because they expire before the time required for an appeal and generally are issued without full briefing, argument, or a developed factual record, and because it is unfair to subject a district court to appellate review before an ample opportunity for a hearing).

Here, Plaintiffs understand the limitations of the temporary relief they sought and understand that the evidentiary and legal record developed at a preliminary injunction hearing, should they continue to request such a hearing, or a trial on the merits, may lead the Court to enter very different relief. But Plaintiffs here seek emergency, temporary relief, limited to a matter of days that the Court can and should revisit following development of a full factual and legal record.

II. **The Risk of Irreparable Harm, Including Death, Has Increased Since Plaintiffs Filed Their Motion**

2

On Sunday, March 29, the Houston Chronicle reported that the first detained person in the Harris County Jail has tested positive for COVID-19.[2] This person has been in the jail almost two weeks, since March 17.[3] Thirty other people in the jail have shown symptoms, and another 500 may have been exposed.[4] Similar outbreaks are happening in jails around the country. As of Sunday morning, there were 103 inmates and 80 staff in New York City jails who are positive for COVID-19.[5] "The current infection rate at local jails [in New York City] is 14.51 per 1,000 people, *more than 7 times higher than New York City* and *87 times higher than the United States* at large."[6] In Cook County Jail, the number of confirmed positive cases jumped from 2 to 89 in several days.[7] Twelve guards there are infected. As this Court noted at the hearing, the first inmate in a federal prison died on Saturday, March 28 of COVID-19.[8]

The CEO of the local County health care system, Dr. Esmaeil Porsa, warns that an outbreak is imminent in Harris County. He explained that "[t]he Harris County Jail . . . pose[s] a real and immediate danger to the health of the community," warning that "a concentrated outbreak" in the jail "would not only be a tragedy in itself but also have the compounding effect of leaving fewer beds for other members of our community." Plaintiffs have clearly demonstrated a risk of

---

[2] Gabrielle Banks & Nicole Hensley, *First Harris County Jail inmate tests positive for COVID-19* (Mar. 29, 2020), https://www.houstonchronicle.com/news/houston-texas/houston/article/First-Harris-County-Jail-inmate-tests-positive-15164825.php
[3] *Id.*
[4] *Id.*
[5] Jessica Schulberg & Angelina Chapin, *Prisoners at Rikers Say It's Like a 'Death Sentence' As Coronavirus Spreads* (Mar. 28, 2020) https://www.huffpost.com/entry/rikers-prisoners-coronavirus_n_5e7e705ec5b6256a7a2a995d?guccounter=1
[6] *Id.* (emphasis added).
[7] Cook County Jail population and COVID-19 tracker, Source: Cook County Sheriff's Office (updated daily), https://datastudio.google.com/u/0/reporting/1AI4THiXJ_6Nt-9NXwE0MfO_DUaa1Koxi/page/hcyJB?s=oQGghs5nYPk
[8] Aristos Georgiou, *Louisiana Inmate, 49, Dies from COVID-19, The First in Bureau of Prisons Federal Custody to Succumb to Coronavirus* (Mar. 29, 2020), https://www.newsweek.com/first-federal-inmate-49-coronavirus-bureau-prisons-facility-louisiana-1494862

irreparable harm from continued detention in violation of their constitutional rights, and in the context of a pandemic.

It has also become clear that the other options considered and urged by the Court on March 29 are not going to happen. Prior to the March 29 hearing, the Sheriff and the County concluded that they have no state-law authority to compel the felony judges to hold constitutionally appropriate hearings or otherwise to act at all to avert disaster. Despite efforts by the Sheriff, County representatives, Plaintiffs, representatives of local hospitals, law professors, religious leaders, and others to convince the felony judges to act, several felony judges report that their colleagues are deadlocked and unwilling to agree on any relief of the scope requested by the Sheriff. After the hearing on March 29, the felony judges, through Judge Ritchie, again declined to act other than through time-consuming individualized proceedings that all parties understand are a physical impossibility given logistics of court closures, emergency attorney notification, prosecution and defense resources, and inmate transport at a facility in outbreak crisis. The Court expressed a preference yesterday for a solution that somehow might happen without the Court's involvement. Plaintiffs warned against this approach as a mirage; it was. Plaintiffs are before this Court on their constitutional claims and make this TRO request for one reason: there are no other options. Absent action by this Court, the constitutional rights of the Plaintiffs will continue to be denied, and they will suffer irreparable harm that soon will be beyond the ability of this Court or anyone else to remedy.

### III. Plaintiffs are Likely to Succeed on the Merits

Individuals arrested in Harris County have no opportunity to seek relief because there is no mechanism for most new arrestees to appear in front of a felony judge for two to four weeks even under normal circumstances. Ex. D, ¶ 48; Ex. I. With the County Judge's emergency order to close

4

most courts on most days, Ex. J, and the rising infection among Sheriff staff, it is unclear whether, when, or how bail hearings will occur going forward. And, in any event, the felony judges disagree that they need to make a finding that pretrial detention serves a government interest at these hearings if and when they do occur. *See* Dkt. 32 at 24–31.

Plaintiffs are people who are presumptively innocent and who are in jail only because they cannot make a monetary payment. One simple fact lies at the heart of this case: the state has not made a finding that the detention of any Plaintiff class member serves any interest, in violation of multiple lines of binding Supreme Court precedent. *See* Dkt. 32 at 24–31. The U.S. Constitution forbids pretrial detention that is not necessary for either public safety or to prevent flight from prosecution. *Id.* New class members are arrested and subjected to these violations each day.

The Attorney General has no response to this precedent. At the hearing on Sunday, March 29, the Attorney General asserted that this case is only about "procedures," and that "substantive" relief is unavailable because of *ODonnell*. That is plainly wrong. First, *ODonnell* was not only about "procedures"—the Fifth Circuit upheld this Court's holding that it violates a person's equal protection right—which is a *substantive* constitutional right—not to be detained due solely to indigence. *ODonnell v. Harris County*, 892 F.3d 147, 157 (5th Cir. 2018) (quotations omitted) ("[W]e have already concluded that the incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements."). The *en banc* Fifth Circuit concluded as much decades ago. *Pugh v. Rainwater*, 572 F.2d 1052, 1057 (5th Cir. 1978) (*en banc*). Second, and more importantly, Plaintiffs in *this* case raise substantive claims in their Complaint and Motion that are not addressed at all in *ODonnell*, including the fundamental right to pretrial liberty.[9] Dkt. 1 at 41; Dkt. 32 at 25–

---

[9] Governor Greg Abbott's Executive Order GA 13, issued on Sunday, March 29, purports to bar release after arrest, except through payment of money, for large categories of individuals in Texas. Dkt. 39-1. As written, the edict

5

26 ("But *ODonnell* did not consider the second substantive constitutional right in this case: the 'fundamental' federal right to pretrial liberty."); *ODonnell*, 892 F.3d at 157 ("Here, our focus is the law of Texas."). The difference between substantive and procedural rights, lost on the Attorney General, has been explained by the Supreme Court in the clearest terms. Dkt. 32 at 22–24; *see, e.g.*, *Washington v. Harper*, 494 U.S. 210, 220 (1990) (explaining the difference between and interaction among substantive and procedural claims). If only procedural remedies were available when a plaintiff proved a violation of a *substantive* right, such as the right to equal protection under the law, a state court judge could hold a hearing and announce, without violating the Constitution: "I conclude that no conceivable government interest in public safety or court appearance is served by your pretrial detention, but I am detaining you anyway because I held a hearing." That is not, and never has been, the law with respect to *any* substantive constitutional right enshrined in the American Bill of Rights.[10]

Next, the Attorney General suggested that the current Defendants cannot grant full relief. That contention misunderstands over a century of binding law. A person suffering unconstitutional

---

purports to allow the release of *anyone* who can pay, but to bar release of many arrestees who cannot pay, even if a state judge rules that the person poses no public safety or flight risk. It then purports to suspend the speedy trial rights of those arrestees who cannot pay. This order is flagrantly unconstitutional for reasons identical to Plaintiffs' claims in this case, although it goes further: it not only allows detention (of only the poor) without a finding that any government interest is served, it purports to suspend the authority of the state judiciary and to bar release without monetary payment even if a state judge affirmatively concludes that a person must be released because they pose no risk of flight or danger to the community. This Executive Order cannot trump federal law, and even on its own terms does not purport to bar the bulk of the relief the parties discussed for non-violent arrestees.

[10] For example, in the Eighth Amendment context, the Supreme Court has held that procedural protections alone are not sufficient to implement the "substantive [rule] that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Montgomery v. Louisiana*, 136 S. Ct. 718, 735 (2016). "Even if a court *considers* a child's age before sentencing him or her to a lifetime in prison," the Court admonished, "that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Id.* at 734 (emphasis added); *see also Malvo v. Mathena*, 893 F.3d 265, 274 (4th Cir. 2018) (*Montgomery* confirmed that a court violates this substantive rule whenever it sentences a juvenile offender to life without parole "*without first concluding* that the offender's 'crimes reflect permanent incorrigibility'" (emphasis added)), *petition for cert. filed*, No. 18-217 (U.S. Aug. 20, 2018). Unless a court *finds* that a child is permanently corrupt, it may not sentence him or her to life in prison with no possibility of parole. *Montgomery*, 136 S. Ct. at 736-737. Protecting a substantive liberty interest, in other words, requires not just considering the questions the Constitution demands; it requires answering those questions.

6

conduct may sue the government agent enforcing that conduct against her, at least since the Supreme Court decided *Ex Parte Young*, 209 U.S. 123 (1908). Here, Plaintiffs can obtain all the relief they seek from the County and the Sheriff, as Judge Sutton recently explained for a unanimous panel of the Sixth Circuit in an opinion upholding a preliminary injunction prohibiting a Tennessee Sheriff from enforcing unconstitutional bail orders issued by state court judges. *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991 (6th Cir. 2019) (holding that the Sheriff was a proper *Ex parte Young* actor, who could be enjoined from enforcing unconstitutional bail orders that resulted in detention of people who could not afford to pay the secured amount). And, of course, the Fifth Circuit itself reinstated the Sheriff as a proper defendant in *ODonnell* under *Ex parte Young* and concluded that he was subject to injunctive relief for his role in enforcing unconstitutional bail orders against indigent people arrested for misdemeanors in Harris County. *ODonnell*, 892 F.3d at 165–67. As the Sixth Circuit explained, there are "plenty of cases" like this one, enjoining a state or local enforcement actor from violating the federal constitution. *McNeil*, 945 F.3d at 996. No other Defendant need be joined for this Court to issue temporary, emergency relief requiring the Sheriff and the County to temporarily cease enforcing certain financial conditions of pretrial release.

**IV. Conclusion**

For purposes of emergency temporary relief, the County and the Sheriff do not contest the factual allegations in Plaintiffs' Motion, that Plaintiffs are likely to succeed on the merits of their constitutional arguments, that relief is in the public interest, or that Plaintiffs are facing the ongoing irreparable harms caused by pretrial detention, including but not limited to a heightened risk of serious illness or death given the spread of COVID-19 and the inability to prevent the spread of the virus or protect people detained in the Harris County Jail from it. They do not contest that the

harm to Plaintiffs will have ripple effects throughout the Harris County community, jeopardizing the lives and safety of the staff who work in the jail, the families and communities to which the people in the jail go home each night, and the doctors and nurses who will have to treat a surge in patients once COVID-19 breaks out there. Accordingly, this Court should adopt the emergency, *temporary* relief proposed by the Sheriff, County, and Plaintiffs. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

There is no question that this is a matter of life and death. The question is whether this Court will act.

Date: March 30, 2020

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

*s/ Mimi Marziani*
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
Meagan T. Harding
Texas State Bar No. 24080179
Southern District No. 3365526
Texas Civil Rights Project
405 N Main St, Suite 716
Houston, TX 77002
Phone: 512-474-5073 ext 118
liyah@texascivilrightsproject.org
mimi@texascivilrightsproject.org
meagan@texascivilrightsproject.org

Respectfully Submitted,

*/s/ Neal S. Manne*
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

## **CERTIFICATE OF SERVICE**

I certify that on March 30, 2020 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Elizabeth Rossi*
Elizabeth Rossi
