**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | |
|---|---|
| RUSSELL, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HARRIS COUNTY, TEXAS, et al. ) <br> ) <br> Defendants. ) <br> ) | Case No. 4:19-cv-00226 <br> (Class Action) <br> The Honorable Lee H. Rosenthal <br> U.S. District Judge |

## **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REGARDING EXECUTIVE ORDER GA 13**

Governor Abbott's Executive Order GA 13, issued on Sunday, March 29, violates the Equal Protection and Due Process Clauses of the U.S. Constitution because it purports to suspend various laws and to suspend state judicial powers in order to prohibit individualized consideration of non-financial release of many pretrial arrestees. *See* Ex. A. The text of the Order purports to block release of presumptively innocent individuals even if state judges conclude that there is no individualized basis for their pretrial detention—but only for those who cannot pay. The order thus permits release of any and all arrestees, including those charged with the *most* serious offenses, as long as they are required to pay money, but would remove the power of state judges on an individualized basis to even consider non-financial release for many arrestees. The result is the automatic pretrial detention of the indigent without any individualized process—exactly what the Fifth Circuit recently struck down in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018).

Plaintiffs seek emergency relief enjoining Defendants from enforcing the Order against them until a full hearing on the matter can be held. *Plaintiffs seek this relief only as to the narrow portion of the Order that purports to bar state judges from making individualized determinations*.

1

## I. The Terms of the Executive Order

On Sunday, March 29, 2020, Texas Governor Greg Abbott issued Executive Order GA 13, purporting to suspend various state laws that protect federal and state constitutional rights. The Order also purports to bar local officials and the state judiciary from enforcing those state or federal rights and to bar state court judges from making individualized determinations of pretrial release.[1]

The relevant effect of the Order in this case is that the Order purports to require anyone currently charged with a crime involving "violence" and anyone with a prior conviction at any time in the past for a crime involving "violence" (regardless of the current charge), to pay secured money bail as a condition of pretrial release regardless of any individualized proceedings or findings by a state court judge. *See* Dkt. 39-1.

The Order does not define or give guidance for different local officials or judges across the state to determine what categories would be encompassed by the term "violence," and indications are that implementation of different views of this vague term would be chaotic and unpredictable.[2] Regardless of this uncertainty, the language of the Executive Order encompasses broad categories of people, including, for example, any person arrested for the most minor non-violent offense (say, simple drug possession) who was convicted three decades ago of a qualifying offense (say,

---

[1] The relevant text of the Order, Dkt. 39-1, is as follows:

- Article 17.03 of the Texas Code of Criminal Procedure, and all other relevant statutes and rules relating to personal bonds, are hereby suspended to the extent necessary to preclude the release on personal bond of any person previously convicted of a crime that involves physical violence or the threat of physical violence, or of any person currently arrested for such a crime that is supported by probable cause. I hereby order that no authority should release on personal bond any person previously convicted of a crime that involves physical violence or the threat of physical violence, or any person currently arrested for such a crime that is supported by probable cause.

- Article 17.151 of the Texas Code of Criminal Procedure is hereby suspended to the extent necessary to prevent any person's automatic release on personal bond because the State is not ready for trial.

[2] Wildly disparate understandings of similar terms in federal sentencing guidelines and statutes have necessitated an entire wing of federal court and Supreme Court common law jurisprudence and the creation of "the categorical approach," even though those federal provisions offer more narrowing guidance than the Executive Order.

2

misdemeanor battery), or any presumptively innocent person with no prior criminal record at all who is currently arrested for the first time on unproven allegations.

For all of the people in these broad categories, the Executive Order *requires* their pretrial detention if they cannot pay for release because it purports to suspend state laws authorizing state courts to release people on "personal bonds" after individualized hearings.[3] The Order further purports to make such pretrial detention indefinite by suspending relevant speedy trial provisions of Texas law that ordinarily would require release of a person if the state is not ready for trial. Preliminary data from Defendants suggest that this language is being read by the District Attorney to block the release of a significant percentage of the Plaintiff class without monetary payment. Crucially, the Executive Order would invalidate even Judge Ritchie's March 20 Order, Dkt. 32-6, requiring prompt release of people charged with a small number of the least serious offenses that the parties discussed with this Court at the March 29, 2020 hearing.

Moreover, the Executive Order purports to bar *each of the more than twenty state court judges in Harris County* who hear felony cases (and all local, state, and county judges who hear all types of cases across Texas) from making individualized determinations based on state and federal law that arrested individuals may be safely released on non-financial conditions of release.

To be clear, the Governor's edict suspends these laws and judicial powers only to the extent they allow for release of the indigent. The Order would allow the release of *anyone* who can pay, no matter what threat local police believe the person to pose, but bar the release of similarly situated people who cannot pay, even if a state judge determines on an individualized basis that

---

[3] A personal bond is an unsecured bond that allow a person to be released without making an up-front payment if the person agrees to pay an amount of money if the person does not appear.

the person cannot afford to purchase release but poses no safety or flight risk, or that less restrictive conditions would meet the government's interest in court appearance or community safety.[4]

Blocking state judges from releasing the indigent after making individualized judicial determinations of danger and flight risk is not only unconstitutional, but dangerous. What the Governor appears to have intended was to block blanket release on personal bond by local governments (not state judges) *based on* the COVID-19 pandemic of people otherwise validly detained—that kind of blanket release order had been contemplated by local Harris County officials and others around Texas.[5] The *actual* language of the Order, however, not only bars that kind of blanket release, but it bars the state judiciary from *considering and ordering release even after individualized consideration*—an unprecedented threat to the federal Constitution.

The Order suspending constitutional rights is therefore projected to dramatically expand local jail populations at a time when the medical and scientific community is concluding that widespread death and disease can only be averted by doing the opposite.[6] The Order came on the

---

[4] The Order asserts that state judiciary somehow supports the suspension of its own powers. But the order omits the portion of the Texas Judicial Council's March 26 Guidance that encourages judges to consider "the health risks to arrestees and their families and communities, and the burdens on communities from increased detentions," and reminds judges to "[d]etermine bail on an individualized determination for each defendant consider the factors set out in [Texas Code of Criminal Procedure Article 17.15]." Court Operation Guidance, Issued 3/26/2020, https://www.txcourts.gov/media/coronavirus-covid-19-court-operation-guidance/

[5] Even that kind of more limited order would have flagrantly violated the Texas Constitution, which nowhere gives the Governor the power to limit the power of the judiciary or to suspend criminal laws that protect constitutional rights let alone to suspend the Texas Constitution, which is the effect of the Executive Order's prohibition on personal bonds for specific categories of people. *See* Tex. const. art. 1 § 11. This is not the forum for litigating the separate state-law illegalities in the Order, although some Texas judges immediately announced that they would not comply with it. *See* Ryan Autullo, Statesman, *Abbott order limits efforts to prevent coronavirus spread in jails, judges say* (March 31, 2020), https://www.statesman.com/news/20200331/abbott-order-limits-efforts-to-prevent-coronavirus-spread-in-jails-judges-say.

[6] *See* Dkt. 32-1 at 7 (letter from Texas physicians stating, "If we wait, or simply perform half measures, we will have an absolute disaster on our hands."); *id.* at 6 ("An outbreak would case a surge of hospital referrals, which would overwhelm a system that is not equipped for a surge[.]"); *id.* at 5 (letter from Dr. Esmaeil Porsa, M.D., MPH, and CEO of Harris Health, stating that even a "limited outbreak of COVID-19 in the Harris County Jail has the potential to overwhelm our already overburdened hospital system," and "could leave many vulnerable people in our community without access to care"); Dkt. 32 at 1–2 (public statement by Sheriff Gonzalez that the jail has limited medical services, and COVID-19 will "spread like wildfire" once it hits (which is has)); *see also, e.g.*, Ex. B (In re: Covid-10 Pandemic, No. ADM2020-00428, Order of the Supreme Court of Tennessee at Nashville (Mar. 25, 2020)); Ex. C (Memorandum

same day that this Court expressed grave concern about the situation and encouraged the parties to work as quickly as possible to avert disaster at the Harris County jail and purports to remove the individualized tools that state judges and County officials might have used to do so.

## II. Argument

### A. Standard of Review

A preliminary injunction is warranted if the movant demonstrates: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). The same factors apply to a Motion for Temporary Restraining Order. *Whole Woman's Health v. Paxton*, 265 F. Supp. 3d 813, 818 (W.D. Tex. 2017). Plaintiffs satisfy each of these requirements.

### B. Plaintiffs Are Likely to Succeed on the Merits

The Executive Order suspending state laws and suspending individualized judicial powers violates several federal Constitutional requirements: (1) that no individual's fundamental bodily liberty be deprived prior to trial unless pretrial detention is necessary for public safety or to prevent flight from prosecution; (2) that no individual may be detained prior to trial solely because the person cannot make a monetary payment, and (3) that all pretrial detention determinations be individualized and made after appropriate safeguards.[7] The latter two of these principles were the entire basis of the Fifth Circuit recent unanimous decision affirming this Court's holdings on the

---

from Chief Justice Beatty of the Supreme Court of South Carolina to Magistrates, Municipal Judges, and Summary Court Staff, RE: Coronavirus (Mar. 16, 2020)); Ex. D (Michigan Governor Gretchen Whitmer Executive Order 2020-29 (COVID-19) (Mar. 29, 2020)).

[7] The Order flagrantly violates other provisions of state law and the Texas Constitution not addressed in this lawsuit.

same issues in *ODonnell*. 892 F.3d at 160 (explaining that the "constitutional defect in the process afforded was the *automatic* imposition of pretrial detention on indigent misdemeanor arrestees"); *id.* at 163 (requiring a "case-by-case evaluation of a given arrestees' circumstances," and "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker"). And each of these three federal constitutional principles has been extensively briefed by Plaintiffs in their existing application for a Temporary Restraining Order and Preliminary Injunction, which they incorporate here, *see* Dkt. 32, Dkt. 44.

A few examples illustrate the application of the Order:

- Under the order, any person charged with possession of less than 1 gram of cocaine, who has a twenty-year-old conviction for misdemeanor threats, will be prohibited from receiving non-financial release. If the person cannot pay, the person will be detained, even if a state judge holds a hearing and determines on an individualized basis that the person poses no danger to the community and no risk of flight.
- A person charged with felony assault based only on probable cause, who has no prior convictions, will be required to pay secured money bail as a condition of release no matter what any state judge determines. If the person cannot pay, the person will be detained—even if a judicial officer concludes at an individualized hearing that alternative non-financial conditions of release would be sufficient to serve the government's interests in public safety and court appearance.
- The Order would permit the automatic and immediate release, pursuant to a secured bail schedule, of any person accused of sexual assault, even if the person had prior convictions for sexual assault, so long as the person could pay, and without any individualized judicial hearing at all.

The Order thus *requires*, as a *categorical* matter, pretrial detention for certain groups of arrestees, contrary to *ODonnell*. *See* 892 F.3d at 160, 163. It will require the detention of people who could be safely released pending trial on less-restrictive conditions, even as similarly situated people with access to cash will go free. It will do all of this regardless of what any state judge concludes at an individualized hearing.

To summarize, Plaintiffs' constitutional claims have both substantive and procedural aspects. *See, e.g.*, Dkt. 32 at 22–24; *Washington v. Harper*, 494 U.S. 210, 220 (1990) (explaining

the interaction between claims that share substantive and procedural aspects). Substantively, Plaintiffs' claims flow from two lines of precedent. First, equal protection and due process forbid jailing a person solely because of her inability to make a payment. *ODonnell v. Harris County*, 892 F.3d 147, 161 (5th Cir. 2018); *Bearden v. Georgia*, 461 U.S. 600, 665 (1983); *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978); *Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972). Second, due process protects a "fundamental" right to pretrial liberty. *United States v. Salerno*, 481 U.S. 739, 750 (1987). The two substantive constitutional rights at issue cannot be infringed unless the government demonstrates that wealth-based pretrial detention is necessary to protect public safety or prevent flight from prosecution. Procedurally, the Constitution requires the government to provide individualized safeguards to protect the accuracy of the substantively required determinations. *Harper*, 494 U.S. at 228; *ODonnell*, 892 F.3d at 157.

The Executive Order evades the findings and safeguards required for pretrial detention. The Supreme Court has held: "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). But the automatic, categorical detention of many impoverished people required by the Order is not an "exception" at all, let alone a "carefully limited" one. As Plaintiffs explained in their prior briefing, the Arizona Supreme Court and *en banc* Ninth Circuit have repeatedly struck down on due process grounds much more narrowly focused laws requiring categorical pretrial detention. Dkt. 32 at 29.

The Court need not reach most of Plaintiffs' arguments to bar the enforcement of the Order to the extent it removes individualized discretion from state judges to consider non-financial release and order such release where appropriate. Although this case involves issues broader than *ODonnell*, this automatic detention of the indigent that resulted from the failure to exercise judicial discretion was already at the core of *ODonnell*.

The Executive Order includes an exception clause that allows consideration of release "on an individualized basis for health or medical reasons." Dkt. 39-1 at 4. This provision does not save its constitutionality, and further exacerbates the procedural due process violation implicated by the Order. This provision purports to prohibit release of people who pose no danger or flight risk if there is not an "individualized," "health or medical" reason to release them, even if a judge holds an individualized hearing and concludes that their pretrial detention serves no government interest and that the state law, Texas Code of Criminal Procedure art. 17.15 factors do not warrant a secured bond. That is the exact violation alleged in this case and found in *ODonnell*. And it does so only for the poor. Again, the exact violation alleged in both cases. If interpreted as written, this clause would therefore prevent release of people the U.S. Constitution requires be released and prevent state judges from applying and weighing the factors listed in Article. 17.15, if an individualized weighing of those factors required release without monetary payment. This is exactly what the Texas Judicial Council just admonished state judges against. *See supra* note 4.

Further, the Order would then place on presumptively innocent pretrial detainees the burden to prove that there was some "individualized" reason *relating to* "health or medical" issues that they must be released. If the person could not prove that they had some special health or medical reason requiring their release, they would be detained regardless of individualized finding that they should not be detained under either state or federal law. And, moreover, in Harris County, even prior to the pandemic, people detained could not obtain such an individualized hearing for *two to four weeks*. Dkt. 32-4 at 8–9. The Constitution requires the government always to bear the burden that detention of presumptively innocent people is justified.

For all of the reasons set forth in Plaintiffs' first Motion for Temporary Restraining Order and Preliminary Injunction, *see* Dkt. 32, and supplemental brief, Dkt. 44, Plaintiffs are likely to succeed on the merits of this Motion. Plaintiffs fully incorporate that briefing herein.

### C. Plaintiffs Face Irreparable Harm, and the Balance of Harms and Public Interest Weigh in Their Favor

Plaintiffs have extensively briefed the enormous and ongoing irreparable harm flowing from their continued pretrial detention at a facility exploding in contagion without necessary medical supplies, and why the public interest and balance of harms weigh strongly in their favor. *See* Dkt. 32, 44. Plaintiffs fully incorporate their briefing herein. Plaintiffs therefore seek an injunction prohibiting the County and Sheriff from enforcing the Order against them.

### III. Conclusion

Plaintiffs move this Court for a temporary restraining order prohibiting enforcement of the Executive Order as applied to Plaintiffs insofar as the Order is interpreted to bar state judges from making individualized determinations that non-financial conditions of release are appropriate.

This relief will preserve the status quo of existing state law and provide some chance of preserving the existing status quo of Plaintiffs' physical health and lives pending full briefing on this Motion and expedited hearing in front of this Court, for which Plaintiffs request an expedited briefing schedule.

Date: April 1, 2020                                                                 Respectfully Submitted,

| | |
|---|---|
| */s/ Alec Karakatsanis* | */s/ Neal S. Manne* |
| */s/ Elizabeth Rossi* | Neal S. Manne |
| Alec George Karakatsanis (*Pro Hac Vice*) | Texas Bar No. 12937980 |
| alec@civilrightscorps.org | nmanne@susmangodfrey.com |
| Elizabeth Rossi (*Pro Hac Vice*) | Lexie G. White |
| elizabeth@civilrightscorps.org | Texas Bar No. 24048876 |
| Civil Rights Corps | lwhite@susmangodfrey.com |

9

1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

*s/ Mimi Marziani*
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
Meagan T. Harding
Texas State Bar No. 24080179
Southern District No. 3365526
Texas Civil Rights Project
405 N Main St, Suite 716
Houston, TX 77002
Phone: 512-474-5073 ext 118
liyah@texascivilrightsproject.org
mimi@texascivilrightsproject.org
meagan@texascivilrightsproject.org

Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

## **CERTIFICATE OF SERVICE**

I certify that on April 1, 2020 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Elizabeth Rossi*
Elizabeth Rossi