UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 4:19-cv-00226 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
|     *Defendants*. | § | |

---

## STATE INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... ii

Introduction ................................................................................................... 1

Preliminary Injunction Standards ................................................................ 4

Argument ....................................................................................................... 5

    A.    Plaintiffs are unlikely to succeed on the merits. ........................... 5

        1.   This Court cannot issue the requested relief of release under *ODonnell*. ........................................................................... 5

        2.   The procedural due process remedy Plaintiffs seek has already been adopted by the County. ....................................... 7

        3.   Because each arrestee already receives sufficient process only rational basis review applies, a standard that is easily met. ................ 9

    B.    Regardless, substantive relief is unavailable. ............................... 12

        1.   Plaintiffs cannot plead around the Eighth Amendment to assert an excessive-bail claim as a substantive due process claim. ....................................................................... 12

        2.   There is no substantive due process right for indigents to obtain affordable bail. ........................................................... 17

        3.   Plaintiffs are also unlikely to succeed because this Court lacks subject-matter jurisdiction. ......................................... 19

    C.    The *Rooker-Feldman* doctrine deprives this Court of jurisdiction over a suit challenging past bail orders. .................................... 20

    D.    No named Plaintiff has Article III standing to seek relief based on future bail orders. ................................................................. 23

    E.    Any arguments Plaintiffs might offer in response fail. ................ 25

    F.    Releasing felons during a time of public crisis endangers public safety and, therefore, is not in the public interest. ..................... 28

    G.    Plaintiffs' Supplemental Brief Confirms that this Court May Not Grant Relief. .......................................................................... 34

Conclusion .................................................................................................. 41

Certificate of Service ................................................................................. 43

## TABLE OF AUTHORITIES

**Cases**

*Am. Family Life Assurance Co. of Columbus v. Aetna Life Ins. Co.*, 446 F.2d 1178 (5th Cir. 1971) ............................................................ 36

*Ariz. Christ. Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011) ................................... 25

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281 (1970) ............ 21

*Austin v. Johnson*, 328 F.3d 204 (5th Cir. 2003) ............................................ 14, 15

*Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) ................................................ 1

*Booth v. Galveston Cty., Tex.*, No. 3:18-cv-00104, 2019 WL 3714455 (S.D. Tex. Aug. 7, 2019) .................................................................................. 9

*Brannen v. Willoughby*, 257 F.2d 580 (5th Cir. 1958) ............................................. 35

*Brown v. City of New York*, 210 F. Supp. 2d 235 (S.D.N.Y. 1999) ............................ 22

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ....................................................... 37

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................... 24, 27

*Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013) .................................................. 24

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992) ........................................ 13

*Conn v. Gabbert*, 526 U.S. 286 (1999) ............................................................ 13

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ........................................... 13

*Cruson v. Jackson Nat'l Life Ins. Co.*, — F.3d —, 2020 WL 1443531 (5th Cir. Mar. 25, 2020) .......................................................................... 37

*Ctr. for Biol. Diversity v. U.S. Env't Prot. Servs.*, 937 F.3d 533 (5th Cir. 2019) ..................................................................................... 24, 25

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ............................... 21, 22, 23

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........................................... 19

*Doyle v. Elsea*, 658 F.2d 512 (7th Cir. 1981) .................................................... 9

*Ex parte Anderer*, 61 S.W.3d 398 (Tex. Crim. App. 2001) ...................................... 11

*Ex parte Clark*, 537 S.W.2d 40 (Tex. Crim. App. 1976) ......................................... 27

*Ex parte Sellers*, 516 S.W.2d 665 (Tex. Crim. App. 1974) ...................................... 27

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560 (5th Cir. 1971) ................................................................................... 36

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ..................... 21, 23

*Frank v. Gaos*, 139 S. Ct. 1041 (2019) ....................................................... 20, 26

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............................................................................... 26

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ........................................ 26

*Graham v. Connor*, 490 U.S. 386 (1989) ........................... 13, 14, 15

*Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567 (2004) .............................. 19

*Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308 (1985) ................. 35

*Hodgdon v. United States*, 365 F.2d 679 (8th Cir. 1966) .......................................... 16

*Hoeme v. Jeoffroy*, 100 F.2d 225 (5th Cir. 1938) ........................ 36

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) .................. 4

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002) ...................................................................................... 28

*Houston Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613 (5th Cir. 2007) ......................................................................... 29

*In re Reitnauer*, 152 F.3d 341 (5th Cir. 1998) ............................. 27

*Ingram v. Fish*, No. 09-204, 2010 WL 3075747 (W.D. Pa. Aug. 5, 2010) ................. 22

*John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) ............................... 14, 15

*Jones v. Perez*, 790 F. App'x 576 (5th Cir. 2019) ........................ 14

*Kans. Health Care Ass'n v. Kans. Dep't of Social Rehab.*, 31 F.3d 1536 (10th Cir. 1994) ....................................................................... 38

*Lewis v. Casey*, 518 U.S. 343 (1996) ............................................ 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......................... 38

*M.L.B.* v. *S.L.J.*, 519 U.S. 102 (1996) ......................................... 10

*Martinez* v. *Mathews*, 544 F.2d 1233 (5th Cir. 1976) ............... 4, 5

*McGinnis* v. *Royster*, 410 U.S. 263 (1973) ....................... 9, 10, 12

*McNeil v. Cmty. Probation Servs.*, 945 F.3d 991 (6th Cir. Dec. 23, 2019) ................ 40

*Mercury Motor Exp., Inc. v. Brinke*, 475 F.2d 1086 (5th Cir. 1973) .......................... 35

*Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975) ...................... 36

*Mounkes v. Conklin*, 922 F. Supp. 1501 (D. Kan. 1996) .............. 22

*Norton* v. *Parke*, 892 F.2d 476 (6th Cir. 1989) .......................... 27

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .............................. passim

*ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) ............. passim

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) ............... 1, 8, 12, 17

*ODonnell* v. *Harris Cty., Tex.*, 882 F.3d 528 (5th Cir. 2018) ..................... 10

iii

*ODonnell v. Salgado*, 913 F.3d 479 (5th Cir. 2019).................................................. 2

*Planned Parenthood of Houston & Southeast Tex.* v. *Sanchez*, 403 F.3d 324 (5th Cir. 2005) .................................................................................. 5

*Portuondo v. Agard*, 529 U.S. 61 (2000)....................................................... 13

*Pugh* v. *Rainwater*, 572 F.2d 1053 (5th Cir. 1978)...................................... 11, 15, 17

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)........................................ 28

*Reno v. Flores*, 507 U.S. 292 (1993)............................................................. 17

*Rizzo v. Goode*, 423 U.S. 362 (1976) ........................................................... 24

*Rose v. Lundy*, 455 U.S. 509 (1982)............................................................ 39

*Ross* v. *Moffitt*, 417 U.S. 600 (1974) ........................................................... 10

*Rouse v. Mich.*, No. 2:17-CV-12276, 2017 WL 3394753 (E.D. Mich. Aug. 8, 2017) ............................................................................................ 27

*Salazar v. Buono*, 559 U.S. 700 (2010........................................................... 4

*San Antonio Indep. Sch. Dist.* v. *Rodriguez*, 411 U.S. 1 (1973) ................................ 10

*Schilb* v. *Kuebel*, 404 U.S. 357 (1971) ........................................................... 11

*Skinner v. Switzer*, 562 U.S. 521 (2011) .................................................... 21, 22

*Smith* v. *U.S. Parole Comm'n*, 752 F.2d 1056 (5th Cir. 1985) ............................... 9, 12

*Sorenson v. Raymond*, 532 F.2d 496 (5th Cir. 1976).......................................... 35

*Stack* v. *Boyle*, 342 U.S. 1(1951)............................................................ 11, 16

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................. 19, 26

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702 (2010) .......................................................................................... 13

*Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019)............................................. 26

*Tate v. Short*, 401 U.S. 395 (1971) .............................................................. 17

*Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005).......................................... 37

*United States ex rel. Bowe v. Skeen*, 107 F. Supp. 879 (N.D. W.Va.1952) ................... 28

*United States v. Cordero*, 166 F.3d 334 (4th Cir. 1998) ...................................... 16

*United States v. Lanier*, 520 U.S. 259 (1997)................................................. 13

*United States v. Mantecon-Zayas*, 949 F.2d 548 (1st Cir. 1991) .............................. 16

*United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988)..................................... 16

*United States v. Salerno*, 481 U.S. 739 (1987)............................................ 18, 19

*United States v. Setser*, 607 F.3d 128 (5th Cir. 2010), *aff'd*, 566 U.S. 231 (2016) ........................................................................................... 15

*United States v. Wright*, 483 F.2d 1068 (4th Cir. 1973) ............................................ 16

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ........................................................................ 27

*Walker* v. *City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018) ............................ 9, 10, 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 37

*Washington v. Glucksberg*, 521 U.S. 721 (1997) ........................................................ 17

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ............................................. 5, 29

*White* v. *Carlucci*, 862 F.2d 1209 (5th Cir. 1989) ........................................................ 4

*White v. Wilson*, 399 F.2d 596 (9th Cir. 1968) .......................................................... 16

*Whitmore v. Ark.*, 495 U.S. 149 (1990) ...................................................................... 24

*Williams v. Ill.* 399 U.S. 235 (1970) .......................................................................... 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................... 29, 34

*Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305 (2004) ...................... 1

*Yarls v. Bunton*, 905 F.3d 905 (5th Cir. 2018). ......................................................... 12

**Statutes**

28 U.S.C. § 2241 ............................................................................................................ 28

28 U.S.C. § 2242 ............................................................................................................ 28

28 U.S.C. § 2254(b)(1)(A) .............................................................................................. 39

42 U.S.C. § 1983 ............................................................................................................ 28

TEX. CODE CRIM. PROC. ART. 11.24 ...................................................................... 12, 22

TEX. CODE CRIM. PROC. ART. 16.20(6) .......................................................................... 21

TEX. CODE CRIM. PROC. ART. 17.25 ............................................................................... 21

TEX. CODE CRIM. PROC. ART. 17.27 ............................................................................... 21

TEX. CONST. ART. I, § 11 ............................................................................................... 11

U.S. CONST., AMEND. VIII ............................................................................................. 13

**Other Authorities**

Charity Nicholson, *Dallas County Bail Reform Policies Scrutinized Following Increase in Homicides*, The Texan (Feb. 26, 2020), ............................... 31

Emma Graham Harrison et al., *Lockdowns Around the World Bring Rise in Domestic Violence*, Guardian (Mar. 28, 2020), .................................................. 31

Executive Order GA 13, Office of Tex. Governor (Mar. 29, 2020) ............................. 39

Katie Honan, *NYPD Officials Say New Bail Law Is Leading to a Crime Increase*, Wall St. J. (Mar. 5, 2020) ........................................................................ 31

Marissa J. Lang, *Domestic Violence Will Increase During Coronavirus Quarantines and Stay-at-Home Orders, Experts Warn*, Wash. Post (Mar. 27, 2020) ..................................................................................................... 31

Paul Cassell, *Bail Reform in Chicago Appears to Have Increased Crime*, Volokh Conspiracy (Feb. 19, 2020) ................................................................ 30

Paul G. Cassell & Richard Fowles, *Does Bail Reform Increase Crime?* (Univ. of Utah Coll. of Law, Research Paper No. 349, Mar. 2, 2020) ................... 30

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 28

Fed. R. Civ. P. 23(a)-(b) ....................................................................................... 36

**Treatises**

11A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2948 (3d ed.) ............................. 35

11A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2951 (3d ed.) ............................. 35

7AA WRIGHT& MILLER, FED. PRAC. & P7ROC. CIV. § 1785.2 (3d ed.)......................... 37

## INTRODUCTION

Plaintiffs seek to authorize what amounts to a mass release of arrestees—including those charged with dangerous felonies or with a history of criminal violence. Not only does the relief sought violate the Fifth Circuit's holding in *ODonnell v. Harris County*, 892 F.3d 147, 163-66 (5th Cir. 2018) ("*ODonnell I*"), it would upset the status quo by overturning a bail system intended to protect the safety of the general public while still respecting the constitutional rights of those charged with crimes.

A preliminary injunction, all by itself, "is an extraordinary remedy never awarded as of right." *Benisek* v. *Lamone*, 138 S. Ct. 1942, 1943 (2018) (per curiam) (quotation omitted). Plaintiffs' ask the Court to violate the general rule that the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties." *Id.* at 1945. And Plaintiffs' underlying challenge seeking a substantive right to release has already been rejected by the Fifth Circuit. *Cf. Wis. Right to Life, Inc.* v. *Fed. Election Comm'n*, 542 U.S. 1305, 1305-06 (2004) (Rehnquist, C.J., in chambers). If a preliminary injunction is appropriate only in a "rare" case, this one is not it.

Plaintiffs here ask for relief that the Fifth Circuit already said this Court cannot give. In *ODonnell* v. *Harris County*, 892 F.3d 147, 163-66 (5th Cir. 2018) ("*ODonnell I*"), the Fifth Circuit provided clear guidance about the procedures necessary to satisfy the Constitution in bail proceedings. When this Court provided substantive—not just procedural—relief by ordering mandatory release in certain scenarios, the Fifth Circuit reversed, and instructed the Court to implement the relief the *ODonnell I* panel ordered. *ODonnell* v. *Goodhart*, 900 F.3d 220, 225-26, 228 (5th Cir. 2018) ("*ODonnell II*"). To stave off challenges just like this one, the Fifth Circuit

1

reminded this Court and others that those decisions "bind[] the district courts in this circuit." *ODonnell* v. *Salgado*, [913 F.3d 479, 482](#) (5th Cir. 2019) ("*ODonnell III*"). Plaintiffs' underlying suit seeks to relitigate issues that the Fifth Circuit has already decided.

More fundamentally, this Court lacks subject-matter jurisdiction to entertain it at all. As the parties' pleadings and discussion at telephonic conferences make clear, Plaintiffs ask this Court to revise or review *past* bail determinations made by state courts: Namely, they ask this Court to release them and thousands of other felony arrestees even though state courts have set bail and remanded them to custody. As the *Rooker-Feldman* doctrine instructs, however, this Court lacks jurisdiction to do so. Even if this Court ignores Plaintiffs' pleas for release from past bail orders and recasts their complaint as seeking equitable relief reforming bail policies for *future* bail determinations, Plaintiffs' lack an Article III injury in fact under binding Supreme Court precedent. Far from awarding preliminary injunctive relief, all this Court has power to do is dismiss this suit.

Even ignoring binding Fifth Circuit precedent and a lack of subject-matter jurisdiction, a host of other factors caution against awarding the preliminary relief that Plaintiffs seek. In the realm of equity, the public interest is paramount. Here that factor weighs in support of the State Intervenors—as the chorus of declarations from state and local law enforcement groups confirms.

The Chiefs of Police for Houston, Allen, Arlington, Frisco, Carrollton, Deer Park, Ft. Worth, Frisco, Grand Prairie, Irving, Lewisville, Pearland, and Plano, all

agree that the relief Plaintiffs seek will harm the public during this pandemic.[1] To be sure, arrestees with a violent history pose an acute risk if released. But as the officials note, violence is not the only harm the public faces during this crisis in which individuals are vulnerable, stores are closed, and streets are empty. Ex. 1, *Acevedo Dec.*; Exhibit 14, *Declaration of Gregory W. Rushin.* This Court should not consign homeowners, businesses, the elderly, and others to their fate by accepting Plaintiffs' suggestion that, say, burglary is *just* burglary—especially when law enforcement resources are already stretched thin in response to the coronavirus. The Director of the Texas Attorney General's Law Enforcement Division[2], the Director of the Department of Public Safety[3], the President of the Texas Police Chiefs Association[4], the President of the National Narcotic Officers' Associations' Coalition[5], and Crime Stoppers of Houston[6] (the Nation's largest victims' advocacy group) echo the same theme.

Finally, even if this Court were still inclined to award preliminary relief, local officials are currently considering measures that might obviate the need for this Court to act. As discussed on this Court's most recent telephonic meeting, County

---

[1] Ex. 1 *Declaration of Houston Chief of Police Art Acevedo*; Ex. 2 *Declaration of Allen Police Chief Brian Harvey;* Ex. 3 *Declaration of Arlington Police Chief Will Johnson*; Ex. 4 *Declaration of Police Chief Derick Miller*; Ex. 5 *Declaration of Deer Park Chief of Police Gregg Grigg*; Ex. 6 *Declaration of Frisco Police Chief David Shilson*; Ex. 7 *Declaration of Fort Worth Police Chief Edwin Kraus*; Ex. 8 *March 31, 2020 Letter from Garland Police Department; Ex.* 9 *Declaration of Daniel Scesney*; Ex. 10 *Declaration of Irving Police Chief Jeff Spivey*; Ex. 11 *Declaration of Lewisville Police Chief Kevin Deaver*; Ex. 12 *Declaration of Pearland Police Chief Johnny Spires*; Ex. 13 *Declaration of Plano Police Chief Ed Drain.*
[2] Ex. 15 *Declaration of David Maxwell.*
[3] Ex. 16 *Declaration of Director of Department of Public Safety Steven McCraw.*
[4] Ex. 17 *March 31, 2020 Letter from Gene Ellis, President, Texas Police Chiefs Association.*
[5] Ex. 18 *Declaration of Bob Bushman.*
[6] Ex. 19 *Declaration of Andy Kahan.*

Judge Hidalgo is preparing an order that would likely cover the same individuals this Court is inclined to provide relief. The Court was right to observe that "obviously it is preferable" for "politically responsible" state and local authorities to address any problems (real or perceived) rather than a Federal District Court. Taking that route here would not only reinforce important federalism principles but would also avoid other serious problems like this Court's lack of jurisdiction and its independent inability to award class-wide relief without first certifying a class in compliance with Rule 23(b)'s strictures.

For all these reasons along with those set out below, the State Intervenors respectfully request this Court decline to release these felons and, instead, dismiss this entire action for lack of subject matter jurisdiction.

### PRELIMINARY INJUNCTION STANDARDS

Injunctive relief "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White* v. *Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co.* v. *Succession of Roy*, 777 F.2d 992, 997v (5th Cir. 1985)). While issuing preliminary injunctive relief is designed primarily to freeze the status quo until a full hearing permits final relief, "[m]andatory preliminary relief . . . goes well beyond simply maintaining the status quo" and is "particularly disfavored." *Martinez* v. *Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)  (citation omitted). And when altering the status quo may prejudice an important "public interest," a court "'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Salazar* v. *Buono*, 559 U.S. 700, 714 (2010) (quoting *Weinberger v.*

*Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Martinez*, 544 F.2d at 1243..

To obtain preliminary injunctive relief, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the relief will serve the public interest. *Planned Parenthood of Houston & Southeast Tex.* v. *Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).

## ARGUMENT

### A. Plaintiffs are unlikely to succeed on the merits.

#### 1. This Court cannot issue the requested relief of release under *ODonnell*.

Plaintiffs allege three constitutional violations to support their request for a temporary restraining order. They argue that procedural and substantive due process require "notice, an opportunity to be heard and to present and confront evidence at a hearing with counsel, and findings on the record by clear and convincing evidence explaining the basis for detention." ECF No. 32 at p. 23-24.[7] And they assert that the Equal Protection Clause provides a substantive right. *Id.* at p. 25. In sum, Plaintiffs allege that Harris County felony arrestees' due process and equal protection rights are violated because Defendants do not provide the procedural safeguards necessary to meet constitutional minimums. Additionally, Plaintiffs invoke the COVID-19

---

[7] The cited pagination refers to the CM/ECF page numbering.

coronavirus pandemic as an emergency that entitles them to unsecured pretrial release en masse. They are wrong at every turn.

First, the procedural remedies Plaintiffs seek in this lawsuit have already been put into place in Harris County as a result of the Consent Decree, *ODonnell, et al. v. Harris Cty., Tex., et al.*, No. 16-cv-1414, (S.D. Tex. Nov. 21, 2019), ECF No. No. 708 (consent decree); *see also* Memorandum and Opinion Approving the Proposed Consent Decree, *ODonnell, et al.* v. *Harris Cty., Tex., et al.*, No. 16-cv-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) (approving proposed consent decree). Plaintiffs make clear that this case raises the same constitutional issues previously raised in *Odonnell*. ECF No. 32 at p. 24. Plaintiffs seek the same procedural remedies adopted by this Court in the *ODonnell* consent decree, but the County has already extended those procedural remedies to felony arrestees. *See* Exhibit 21, *Affidavit of James Leitner*. Because the County has already provided ample procedural remedies addressing Plaintiffs' *ODonnell*-style claims, they are not substantially likely to succeed in proving their claim asking for what they already have.

Second, because this case mirrors *ODonnell*, Plaintiffs' request for substantive relief runs headlong into the Fifth Circuit's instruction that substantive remedies, like releasing arrestees, is improper. *See ODonnell II* ("The grant of automatic release smuggles in a substantive remedy via a procedural harm."). Put plainly, the Fifth Circuit has already rejected Plaintiffs' requested remedy.

### 2.   The procedural due process remedy Plaintiffs seek has already been adopted by the County.

This Court presided over the *ODonnell* litigation for nearly four years, and recently concluded the litigation by approving a consent decree. *See Consent Decree, ODonnell* v. *Harris County*, No. 16-cv-1414, ECF No. 708 (S.D. Tex. Nov. 21, 2019) (consent decree); *see also ODonnell, et al.* v. *Harris Cty., Tex., et al.*, No. 16-cv-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) (approving proposed consent decree). The procedural remedies adopted through the consent decree included adoption of Harris County's Local Rule 9,[8] a sweeping recitation of amended bail practices in Harris County. *ODonnell* v. *Harris County*, No. 16-cv-1414, ECF No. 708 at 16-24. (S.D. Tex. Nov. 21, 2019). Those procedures easily satisfy the model injunction provided by the Fifth Circuit.

The same bail practices this Court adopted in *ODonnell* for misdemeanor arrestees have been extended to felony arrestees. Ex. 21, *Leitner Aff*. ("This probable cause and bail hearing process is the same for the process utilized for misdemeanor defendants who are not released under a General Order Bond."). The process starts with assignment of counsel, if requested, and interviews with both defense counsel and the Harris County Pretrial Services to gather personal and financial information about the arrestee. *Id*. at p. 2. Based upon information gathered from the interview and other research, Pretrial Services uses a risk assessment tool to develop a Public

---

[8]   Administrative Order Number 2019-01, *available online* at https://hccla.org/wp-content/multiverso-files/829_56990d05d6719/AdminOrder-MISD.pdf (last visited Mar. 30, 2020).

Safety Assessment score ("PSA"). *Id.* at p. 3. The PSA score ranges from 1-6 on two different scales, and places assigns an arrestee a risk category. *Id.*

At the probable cause hearing, a hearing officer provides warnings and explains the process to the arrestee. *Id.* at p. 2. An assistant district attorney then presents the case for finding probable cause. *Id.* If probable cause is found, the arrestee proceeds to a bail hearing. *Id.* The bail hearing involves both the assistant district attorney and the assistant public defender for the arrestee. *Id.* The attorneys for the State and the arrestee, respectively, are given opportunities to present evidence and argument on what amount of bail or other conditions of pretrial release, if any, should be set. *Id.*

Hearing officers routinely set bonds lower than the amount recommended by the felony bail schedule when an arrestee's PSA score recommends a lower amount. *Id.* at p. 3. Hearing officers also routinely set bail in the amount requested by the assistant public defender, which often is lower than the amount recommended by either the felony bail schedule or the arrestee's PSA score. *Id.* After setting bail, hearing officers explain their decisions and inform the arrestees that they can seek a bail reduction from the judge presiding over the case. *Id.*

The procedural remedies currently provided to felony arrestees satisfy the *ODonnell* requirements of "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker. *ODonnell I*, 892 F.3d at 163; *see also ODonnell II*, 900 F.3d at 227 ("Those who cannot afford the set bail are entitled to an individualized hearing within 48 hours to

8

determine whether lowering that bail would be release on sufficient sureties."). Because Plaintiffs received everything the law requires, there is no likelihood that Plaintiffs can put on a successful case. Indeed, Judge Hanks reached that conclusion in denying a preliminary injunction on felony arrestees' Fourteenth Amendment claims after Galveston County adopted bail procedures mirroring those that the Fifth Circuit endorsed in *ODonnell*. *See Booth* v. *Galveston Cty., Tex.*, No. 3:18-cv-00104, 2019 WL 3714455, at *7-8 (S.D. Tex. Aug. 7, 2019).

### 3. Because each arrestee already receives sufficient process only rational basis review applies, a standard that is easily met.

Despite Plaintiffs' claims to the contrary, "[d]etention of indigent arrestees and release of wealthier ones is not constitutionally infirm purely because of the length of detention." *ODonnell II*, 900 F.3d at 227. "An Equal Protection Claim that an indigent person spends more time incarcerated than a wealthier person is reviewed for a rational basis." *Id.* at 226 (citing *Doyle* v. *Elsea*, 658 F.2d 512, 518 (7th Cir. 1981); *Smith* v. *U.S. Parole Comm'n*, 752 F.2d 1056, 1059 (5th Cir. 1985); *McGinnis* v. *Royster*, 410 U.S. 263, 270 (1973)); *see also Walker* v. *City of Calhoun*, 901 F.3d 1245, 1262 (11th Cir. 2018) ("Such scheme does not trigger heightened scrutiny under the Supreme Court's equal protection jurisprudence").

Heightened scrutiny is applicable only when a bail system includes the *automatic* imposition of secured bail without meaningful consideration of other alternatives—in other words, an absolute deprivation of a right *because* of poverty without sufficient procedural safeguards. *Walker*, 901 F.3d at 1261; *ODonnell II*, 900 F.3d at 230. That is not the situation here.

9

As explained above, Harris County's bail process does not automatically impose bail and includes the meaningful consideration of alternatives: an initial individual assessment and hearing with the assistance of counsel. *See ODonnell I*, 882 F.3d at 546-549. Under this process, a poor arrestee suffers no "absolute deprivation" of the benefit of being bailable upon sufficient sureties. *Walker*, 901 F.3d at 1261-1262. Instead, he "must merely wait some appropriate amount of time to receive the same benefit as the more affluent." *Id.*. Therefore, Harris County's bail process does not trigger heightened scrutiny under the Supreme Court's equal protection jurisprudence. *See M.L.B.* v. *S.L.J.*, 519 U.S. 102, 127 (1996) (explaining that wealth-based sanctions are impermissible when they are "not merely disproportionate in impact," but "[r]ather, they are wholly contingent on one's ability to pay"); *Ross* v. *Moffitt*, 417 U.S. 600, 616 (1974) (explaining that in a proceeding that involves indigents, "[t]he duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . ., but only to assure the indigent defendant an adequate opportunity to present his claims fairly"); *San Antonio Indep. Sch. Dist.* v. *Rodriguez*, 411 U.S. 1, 24 (1973) (noting that mere diminishment of a benefit was insufficient to make out an equal protection claim: "[A]t least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages"); *McGinnis*, 410 U.S. at 270 (examining a wealth based system that did not result in an absolute deprivation under rational basis).

Because Harris County's bail process does not cause an absolute deprivation and heightened scrutiny is inapplicable, the current bail system must be reviewed only for a rational basis. *ODonnell II*, 900 F.3d at 226 (applying rational basis review to post *ODonnell I* bail system "because it is premised solely on inability to afford bail, as distinguished from inability to afford bail plus the absence of meaningful consideration of other possible alternatives").

Harris County undoubtedly has "a compelling interest in assuring the presence at trial of persons charged with crime." *Pugh* v. *Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978); *Ex parte Anderer*, 61 S.W.3d 398, 404-05 (Tex. Crim. App. 2001) (en banc). Harris County may "requir[e] a bail bond or the deposit of a sum of money subject to forfeiture" as a condition of pretrial release in appropriate circumstances. *Stack* v. *Boyle*, 342 U.S. 1, 5 (1951); *see also* TEX. CONST. art. I, § 11.. This use of bail is so "basic to our system of law" that the Texas Constitution specifically allows for release conditioned upon sufficient sureties. *Schilb* v. *Kuebel*, 404 U.S. 357, 365 (1971); *see also* TEX. CONST. art. I, § 11. In carrying out this legitimate interest, Harris County has implemented the same procedural safeguards approved by the Fifth Circuit in *ODonnell*. For Plaintiffs to succeed on their procedural claim, they must prove not only that the current bail system in Harris County lacks a rational basis, but also that the identical system created by the Fifth Circuit and this Court fails to meet that deferential standard as well—something they simply cannot do.

In light of these procedural safeguards, Plaintiffs' only remaining argument is that some arrestees, after receiving the benefits of Harris County's process, may still

not be able to afford bail. Yet "that is an equal protection claim consistently rejected on rational-basis review." *ODonnell II,* 900 F.3d at 227 (citing *McGinnis*, 410 U.S. at 270; *Smith*, 752 F.2d at 1059). In fact, *ODonnell I* "found that the substantive right to release on 'sufficient sureties' is 'not purely defined by what the detainee can afford' and 'does not create an automatic right to pretrial release.'" *ODonnell II,* 900 F.3d at 226 (citing *ODonnell I*, 892 F.3d at 158). In short, indigent arrestees have no absolute right to unsecured pretrial release; they have only the right to procedures that provide notice, individualized consideration of their arguments and evidence for unsecured release, and a reasoned decision by an impartial magistrate. Of course, if any individual arrestee believes that the magistrate's bail decision was erroneous, he can challenge that decision by seeking a pretrial writ of habeas corpus. *See* Tex. Code Crim. Proc. art. 11.24.

At bottom, because Harris County has already implemented procedures sufficient to meet the constitutional minimums, Plaintiffs are unlikely to succeed on their claims and the Court should deny the request for injunctive relief.[9]

## B. Regardless, substantive relief is unavailable.

### 1. Plaintiffs cannot plead around the Eighth Amendment to assert an excessive-bail claim as a substantive due process claim.

The gravamen of Plaintiffs' substantive due process claim is that money bail in Harris County is being set too high for indigent felony defendants, resulting in their detention where wealthier arrestees would go free, thus infringing their pretrial

---

[9] Because Plaintiffs are already receiving all of the process required under *ODonnell* this case is also moot, which deprives this Court of subject-matter jurisdiction. *Yarls* v. *Bunton*, 905 F.3d 905, 907-08 (5th Cir. 2018)..

right to liberty. *See, e.g.*, ECF No. 32 at 23. Plaintiffs seek to mandate a rule by which felony arrestees be released under alternative systems of bail. *E.g.*, *id.* at 26-42. That claim falls squarely in the wheelhouse of the Eighth Amendment, which provides that "[e]xcessive bail shall not be required." U.S. CONST., AMEND. VIII.

The Supreme Court has foreclosed Plaintiffs' chosen path. A plaintiff cannot invoke substantive due process to seek relief that can be addressed by more specific constitutional guarantees. *Graham* v. *Connor*, 490 U.S. 386, 395 (1989); *accord Portuondo* v. *Agard*, 529 U.S. 61, 74 (2000); *Conn* v. *Gabbert*, 526 U.S. 286, 293 (1999); *County of Sacramento* v. *Lewis*, 523 U.S. 833, 842 (1998); *United States* v. *Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Stop the Beach Renourishment, Inc.* v. *Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 721 (2010) (plurality op.). This accords with the Court's longstanding "reluctan[ce] to expand the concept of substantive due process." *Collins* v. *City of Harker Heights*, 503 U.S. 115, 125 (1992). That doctrine, after all, has often been treated as an invitation for freewheeling judicial inquiry, with "guideposts for responsible decisionmaking in this unchartered area . . . scarce and open-ended." *Id.*

In *Graham* v. *Connor*, the Court rejected the approach then employed by the "vast majority of lower federal courts"—a "four-part 'substantive due process test'"— to analyze section 1983 constitutional claims. 490 U.S. at 393. Instead, the Court instructed, the analysis of a claim for which there is "an explicit textual source of constitutional protection" must be guided by that source, "not the more generalized notion of 'substantive due process.'" *Id.* at 395. In *Graham*, it was the Fourth Amendment that provided the "explicit textual source of constitutional protection"

13

because the claim was one sounding in excessive force. *Id*. But the Court recognized that the Eighth Amendment could likewise supply the explicit textual source for claims based on individuals' interactions with the justice system. *Id*. at 394.

*Graham*'s holding that courts cannot use substantive due process to enlarge more specific constitutional guarantees remains good law. Indeed, the Fifth Circuit has repeatedly observed that *Graham* continues to apply when plaintiffs attempt to invoke substantive due process, with its "purpose" being to "avoid expanding the concept of substantive due process where another constitutional provision protects individuals against the challenged governmental action." *John Corp.* v. *City of Houston*, 214 F.3d 573, 582 (5th Cir. 2000); *see, e.g.*, *Jones* v. *Perez*, 790 F. App'x 576, 582 (5th Cir. 2019). And it has done so even in the Eighth Amendment context. *See, e.g.*, *Austin* v. *Johnson*, 328 F.3d 204, 210 n.10 (5th Cir. 2003).

This approach is fully consistent with *ODonnell I*. There, the Fifth Circuit observed that "when a constitutional provision specifically addresses a given claim for relief under 42 U.S.C. § 1983, a party should seek to apply that provision directly." 892 F.3d at 157 (citing *Graham*, 490 U.S. at 394). The panel observed the former-Fifth Circuit's 1978 en banc decision in *Rainwater* allowed ODonnell to raise claims of equal protection and *procedural* due process instead of grounding those claims in the Eighth Amendment. *Id*. (citing *Rainwater*, 572 F.2d at 1057). But the explicit textual source rule is concerned with invoking the "more nebulous" *substantive* due process concept in the face of another concrete textual provision. *Jones*, 790 F. App'x at 582. Naturally, *ODonnell* did not—because it could not—conflict with Supreme

14

Court precedent on that score. *See, e.g., Graham*, <u>490 U.S. at 393-95</u>; *John Corp.*, <u>214 F.3d at 582</u>; *Austin*, <u>328 F.3d at 210 n.10</u>.

So too in *Rainwater*, which like *ODonnell I*, did not involve a substantive due process claim. The claims there were based on equal protection and procedural due process. The *Rainwater* court vacated a panel opinion purporting to apply strict scrutiny to Florida's bail system, holding that the Equal Protection Clause did not require Florida to adopt a presumption against money bail for indigents. <u>572 F.2d at 1056</u>. The court then held that so long as there were procedural mechanisms in place that ensured individualized consideration when setting secured money bail, the use of a bail schedule was constitutional. *Id.*, <u>572 F.2d at 1057</u>.

In any event, although *Rainwater* binds this Court, it is binding only to the extent that it is not contradicted by "an intervening decision by the Supreme Court," *United States* v. *Setser*, <u>607 F.3d 128, 131</u> (5th Cir. 2010), *aff'd*, <u>566 U.S. 231</u> (2016). Thus, to the extent of any conflict between the 1978 decision in *Rainwater* and the 1989 decision in *Graham*—to say nothing of later Supreme Court and circuit cases reaffirming the central holding in *Graham*—*Graham* controls. *Cf. Graham*, <u>490 U.S. at 393</u> (observing that, at the time of the Court's decision, the "vast majority of lower federal courts" were inappropriately entertaining claims for substantive due process in addition to or instead of the applicable amendment in the Bill of Rights).

The Fifth Circuit has long recognized that the Eighth Amendment does not provide a right to affordable bail, and the mere inability to pay does not render bail excessive and thus invalid under the Eighth Amendment. *See, e.g.*, *United States* v.

*McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) ("[A] bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement"). Other circuits concur. *See, e.g.*, *Walker*, 901 F.3d at 1258; *United States* v. *Cordero*, 166 F.3d 334, at *2 (4th Cir. 1998) (per curiam) (citing *United States* v. *Wright*, 483 F.2d 1068, 1070 (4th Cir. 1973)); *United States* v. *Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) (per curiam); *White* v. *Wilson*, 399 F.2d 596, 598 (9th Cir. 1968); *Hodgdon* v. *United States*, 365 F.2d 679, 687 (8th Cir. 1966)

Moreover, it is well settled that excessive bail claims are subject to review only for reasonableness, not heighted scrutiny. *See, e.g.*, *Stack*, 342 U.S. at 5 (holding that "excessive" bail under the Eighth Amendment is bail set at a higher figure than the amount reasonably calculated to assure the accused will stand trial). This recognizes the longstanding, legitimate "practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture," which "serves as additional assurance of the presence of an accused." *Id*. Thus, only when bail is "set at a higher figure than an amount reasonably calculated to fulfill this purpose" can any particular bail amount be thought of as "'excessive' under the Eighth Amendment." *Id*.

Plaintiffs recognize that any Eighth Amendment claim would fail. That is why they are forced to seek substantive relief by relying on the (faulty) assumption that strict scrutiny applies to the incidental detention of arrestees who cannot afford bail. *See, e.g.*, ECF No. 32 at n.72 (suggesting that "heightened" scrutiny is a euphemism for "strict" scrutiny).

16

2.      **There is no substantive due process right for indigents to obtain affordable bail.**

Plaintiffs attempt to distinguish *ODonnell I* from this case by invoking the Equal Protection Clause. ECF No. 44 at p. 5. But that alternative argument ignores that the Fifth Circuit addressed an equal protection claim in *ODonnell*. In doing so, the court pointed to the same line of cases as relevant to its equal protection and due process analysis, for which it crafted only *procedural* remedies. 892 F.3d at 161-62 & n.6 (discussing *Tate* v. *Short*, 401 U.S. 395, 397-99 (1971); *Williams* v. *Ill.* 399 U.S. 235, 241-42 (1970); *Rainwater*, 572 F.2d at 1057). And *ODonnell I* held that a limited set of "constitutionally-necessary procedures" would "cure the constitutional infirmities arising" from the failure to take account of indigents' ability to make bail. *Id.* at 163. What's more, the Fifth Circuit subsequently explained that the *ODonnell I* panel did not extend any substantive relief. *See ODonnell II*, 900 F.3d at 220 ("The grant of automatic release smuggles in a substantive remedy via a procedural harm.").

Plaintiffs' misconstruction of *ODonnell I* aside, numerous other courts have held that there is no substantive due process right to affordable bail conditions. "Substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno* v. *Flores*, 507 U.S. 292, 302 (1993). The alleged liberty interest must be "carefully formulat[ed]" and must be "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 721, 722 (1997). Plaintiffs' claimed liberty interest in affordable bail for the indigent is neither.

In Plaintiffs' telling, however, Chief Justice Rehnquist's 1987 opinion for the Court in *United States* v. *Salerno*, 481 U.S. 739 (1987) ushered in a sea change in the law, which—for some unexplained reason—lay dormant for three decades. Plaintiffs assert that, in the guise of *rejecting* a constitutional challenge to provisions in the federal Bail Reform Act allowing for pretrial detention, the Supreme Court actually set a high, substantive bar for the imposition of money bail, focused myopically on defendants' ability to pay; implicitly mandated strict scrutiny for instances of pretrial wealth-based disparate impact; and invalidated, *sub silentio*, scores of state bail laws in the process. *See* ECF No. 32 at 28-31.

Plaintiffs misread *Salerno*. The *Salerno* Court was pellucid as to its liberty-interest holding: "[W]e cannot categorically state that pretrial detention offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Salerno*, 481 U.S. at 751 (quotations omitted). The defendant there challenged his outright denial of bail under the Bail Reform Act, claiming that that denial violated his interest in pretrial liberty. *Id*. at 744-45. The Court rejected that argument. While "conced[ing]" "the 'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial," the Court recognized that bail decisions fell within the "well-established authority of the government, in special circumstances, to restrain individuals' liberty prior to or even without criminal trial and conviction." *Id*. at 749. Thus, in accordance with the Bail Reform Act, federal courts properly consider a multitude of factors when setting or denying bail, including dangerousness to the

community. *Id.* at 751-52. If the right against pretrial detention *without bond* is not a fundamental substantive due process liberty interest, then pretrial detention *with bond* certainly cannot be.

### 3. Plaintiffs are also unlikely to succeed because this Court lacks subject-matter jurisdiction.

Subject-matter jurisdiction implicates "the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Because it is "always an antecedent question," this Court must address subject-matter jurisdiction before addressing anything else. *Id.* at 101. Jurisdiction is based on the facts at the time Plaintiffs filed their complaint. *Grupo Dataflux* v. *Atlas Global Grp., L.P.*, 541 U.S. 567, 574 (2004). And Plaintiffs "must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 352 (2006).

This Court lacks subject-matter jurisdiction for two independent reasons. First, insofar as Plaintiffs seek relief from their past bail hearings through a federal-court order changing their existing bail determinations, the *Rooker-Feldman* doctrine bars this suit. Lower federal courts are powerless to revisit individual state-court decisions setting bail. Second, while *Rooker-Feldman* does not prevent a litigant from challenging a state policy or practice as opposed to a particular state-court decision, Plaintiffs' challenge to Harris County's bail practices is based on a future injury that is pure "speculation and conjecture." *O'Shea* v. *Littleton*, 414 U.S. 488, 497 (1974). Plaintiffs therefore lack an Article III injury in fact. And in a putative class action

19

like this one, "federal courts lack jurisdiction if no named Plaintiff has standing."

*Frank* v. *Gaos*, [139 S. Ct. 1041, 1046](#) (2019).

## C. The *Rooker-Feldman* doctrine deprives this Court of jurisdiction over a suit challenging past bail orders.

In their complaint, all three named Plaintiffs admit that they have already been through bail proceedings, had bail set by state courts, and been remanded to custody. *See* Compl., ECF No. [1 at 11-13](#) (describing past bail proceedings for Plaintiffs Russell, Pierson, and Ortuno). They ask this Court to award:

    a. A declaratory judgment that Defendants violate the Named Plaintiffs' and Class members' constitutional rights by operating a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay secured money bail amounts required without findings concerning ability to pay, without consideration of or findings concerning non-financial alternatives, without findings that pretrial detention is necessary to meet a compelling government interest, and without safeguards to ensure the accuracy of that finding; [and]

    b. An order and judgment permanently enjoining Defendants from operating and enforcing a system of post-arrest detention that keeps Named Plaintiffs and Class members in jail because they cannot pay a secured financial condition of release required without findings concerning ability to pay, without consideration of or findings concerning nonfinancial alternatives, without findings that pretrial detention is necessary to meet a compelling government interest, and without safeguards to ensure the accuracy of those findings[.]

Compl., [at 42](#). This prayer reads like a request to have Plaintiffs' existing bail orders redetermined—either by reducing the amount of secured bail or ordering unsecured bail instead. The Court apparently reads Plaintiffs' request the same way. *See* Order, ECF No. [34 at 1](#) (noting that Plaintiffs seek relief ordering that they be "promptly released" or have "their current bail status reheard").

That, of course, is problematic. "[L]ower federal courts possess no power whatever to sit in direct review of state court decisions." *Atl. Coast Line R.R. Co.* v.

*Bhd. of Locomotive Eng'rs*, 398 U.S. 281 (1970). The *Rooker-Feldman* doctrine thus bars a lower federal court from entertaining a suit that "seek[s] federal-court review and rejection of" a state-court decision. *Skinner* v. *Switzer*, 562 U.S. 521, 531 (2011). Simply put, Plaintiffs may not "seek review of the . . . application [of Harris County's bail procedures] in a particular case." *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 (2005).

*D.C. Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983), is a classic example. There, the D.C. Court of Appeals refused to admit Marc Feldman, *id.* at 465-68, and Edward Hickey, *id.* at 470-72, to the D.C. bar because they had not graduated from ABA-accredited law schools. The would-be lawyers then sued in federal district court, arguing that the D.C. Court's policy violated federal law and asking the federal court to order the state court to admit them to the bar, or at least permit them to sit for the D.C. bar exam. *Id.* at 468-73. The Supreme Court held the district court lacked jurisdiction because federal law authorizes only the Supreme Court to review state court decisions. *Id.* at 486 (citing 28 U.S.C. § 1257). Because Feldman and Hickey "sought review in [federal district court] of the [state court's] denial of their" requests for bar admission, "the District Court lacked subject matter jurisdiction." *Id.* at 482. That was true *even though* their "challenges allege[d] that the state court's action was unconstitutional." *Id.* at 486.

This principle applies here. State courts have already made bail determinations for Russell, Pierson, and Ortuno, and remanded them to custody. Compl., ECF No. 1 at 11-13; *see* TEX. CODE CRIM. PROC. ARTS. 16.20(6), 17.25, 17.27.

Under state law, an arrestee can obtain review of that decision only in state habeas proceedings. *See* TEX. CODE CRIM. PROC. ART. 11.24; *accord Schall* v. *Martin*, 467 U.S. 253, 280-81 (1984). Insofar as the named Plaintiffs ask this Court to order the state courts to revisit those determinations, they ask this "Court to overturn the injurious state-court judgment" rendered as to them. *Skinner*, 562 U.S. at 531. In other words, this Court "is in essence being called upon to review the state court decision[s]" setting Plaintiffs' bail. *Feldman*, 460 U.S. at 482 n.16. That is exactly what *Rooker-Feldman* says this Court has no power to do.

What Plaintiffs seek to do here—use § 1983 to obtain class-wide relief from felony arrestees' existing bail orders—is unprecedented in the Fifth Circuit. But persuasive caselaw from other jurisdictions addresses this exact issue. Courts across the Country recognize that *Rooker-Feldman* bars a plaintiff from seeking relief that would require a federal district court to revisit a state court's decision setting bail and remanding him to custody. *See, e.g., Ingram* v. *Fish*, No. 09-204, 2010 WL 3075747v, at *4 (W.D. Pa. Aug. 5, 2010) (holding *Rooker-Feldman* barred suit "essentially asking this Court to conduct a *de novo* review of the bail order to determine whether it is unconstitutionally excessive and, if so, to order [the state court] to re-set bail at a lesser, more 'reasonable' amount"); *Brown* v. *City of New York*, 210 F. Supp. 2d 235, 240 (S.D.N.Y. 1999) (holding *Rooker-Feldman* "bars the Plaintiff's prayer for declaratory relief" regarding state court bail decision); *Mounkes* v. *Conklin*, 922 F. Supp. 1501, 1508-10 (D. Kan. 1996) (holding *Rooker-Feldman* barred federal court

jurisdiction to review state court "decisions that have required 'cash only bonds' and the condition that the cash must be posted by the accused").

Because Plaintiffs seek a federal district court decision ordering state courts to "promptly release[]" the Plaintiffs or have their "current bail status reheard," *Rooker-Feldman* bars this suit.

## D. No named Plaintiff has Article III standing to seek relief based on future bail orders.

Plaintiffs might counter that the *Rooker-Feldman* doctrine does not prohibit them from challenging a state-court *policy*, as opposed to a state-court *decision*. That much is true. Lower federal courts may entertain a Plaintiff's challenge to the validity a state-court policy "so long as the plaintiff[] d[oes] not seek review of the [policy's] application in a particular case." *Exxon Mobil Corp.*, 544 U.S. at 286; *see also Feldman*, 460 U.S. at 482-85. So, Plaintiffs will likely argue that they seek a declaration and an injunction ordering Harris County to reform its bail practices *going forward*—i.e., prospectively and not retroactively. Compl., ECF No. 1 at 42.

But if that is right, then this lawsuit still fails. If the policies that Plaintiffs challenge are untethered from their past application in Plaintiffs' underlying bail determinations, then those policies could affect Plaintiffs only in the future. But whether those bail policies would ever be applied to Plaintiffs is a purely hypothetical proposition. Plaintiffs must speculate that—at some unknown time—they will again be arrested in Harris County, encounter (allegedly) unlawful bail practices, have secured bail set, and still be unable to afford a bond to secure their release.

Future injuries, however, must be "*certainly* impending" to confer Article III standing. *Ctr. for Biol. Diversity* v. *U.S. Envt'l Prot. Servs.*, 937 F.3d 533, 537 (5th Cir. 2019). The Supreme Court has repeatedly found that future injuries like Plaintiffs' are insufficient. *See, e.g.*, *Clapper* v. *Amnesty Int'l*, 568 U.S. 398 (2013) (future government surveillance); *Whitmore* v. *Ark.*, 495 U.S. 149 (1990); *City of Los Angeles* v. *Lyons*, 461 U.S. 95 (1983) (future chokeholds); *Rizzo* v. *Goode*, 423 U.S. 362 (1976) (future mishandling of police misconduct complaints).

But this case does not even require the application of established legal principles to a new context. The Supreme Court has applied these principles in a nearly identical case—one involving indigent Plaintiffs' challenge to bail procedures. In *O'Shea*, 414 U.S. 488, a putative class of plaintiffs, who had been subjected to (allegedly) unlawful bail procedures in the past, sued under § 1983 on behalf of "financially poor persons . . . unable to afford bail" for declaratory and injunctive relief requiring changes to bail procedures. *Id.* at 491-92. Because past bail proceedings were insufficient to justify prospective relief, the plaintiffs necessarily relied on a future injury. *Id.* at 495-96 . The Supreme Court noted:

> [H]ere the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners. . .. Apparently, the proposition is that *if* respondents proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory [bail] practices that petitioners are alleged to have followed.

*Id.* at 496-97. That injury, the Court said, "takes us into the area of speculation and conjecture." *Id.* at 497. It was therefore "too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court." *Id.* at 498.

As in *O'Shea*, each of the named Plaintiffs has already been subjected to the challenged bail procedures and, in fact, are no longer in custody. *Id.* at 495-96. As in *O'Shea*, any relief altering those bail procedures could therefore affect them only in the future. *Id.* at 496. And as in *O'Shea*, any such future injury is pure "speculation and conjecture." *Id.* at 497. Plaintiffs' future injury depends on this Court speculating that at some unknown time (1) they will commit criminal acts (2) in Harris County (3) be arrested (4) have secured bail set (5) pursuant to an unlawful policy (6) at amounts they cannot pay (7) because they remain too poor to pay a bondsman. That is not "*certainly* impending." *Ctr. for Biol. Diversity*, 937 F.3d at 537. Concluding otherwise would fly in the face of *O'Shea*.

**E. Any arguments Plaintiffs might offer in response fail.**

Plaintiffs will likely argue that this Court cannot consider the jurisdictional issues discussed here because it entertained similar challenges in the *ODonnell* case. They may also suggest that the class-action nature of this case somehow alters the jurisdictional analysis, or that finding a lack of jurisdiction unfairly forecloses all avenues to relief. These arguments fail.

Plaintiffs may argue that the *ODonnell* case, which adjudicated similar claims, settles the question of subject-matter jurisdiction. But no party—either in this court or in the Fifth Circuit—ever raised the jurisdictional defects identified here. And a jurisdictional defect "neither noted nor discussed" in a prior decision does not permit a court to ignore the limits of subject-matter jurisdiction in a later case. *Ariz. Christ. Sch. Tuition Org.* v. *Winn*, 563 U.S. 125, 144-45 (2011). Even "drive-by jurisdictional rulings" in an earlier decision by the Supreme Court itself "have no precedential

effect." *Steel Co.*, 523 U.S. at 91. The existence of any latent jurisdictional defects "neither noted nor discussed" in the course of the *ODonnell* proceedings therefore does not permit this Court to ignore the limits of subject-matter jurisdiction here.

Alternatively, Plaintiffs may argue that the jurisdictional analysis is somehow different because this is a putative class action. That is also wrong. "That a suit may be a class action . . . adds nothing to the question of standing." *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996). Just last year, in a putative class action like this one, the Supreme Court held that "federal courts lack jurisdiction if no named Plaintiff has standing." *Frank*, 139 S. Ct. at 1046. Simply put, "if none of the named Plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea*, 414 U.S. at 494. That is why the mootness exception for injuries capable of repetition yet evading review in class action cases, *see Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975), "is not implicated" here, *Stringer v. Whitley*, 942 F.3d 715, 724-25 (5th Cir. 2019). "Standing admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc.* v. *Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). This result is only compounded by the fact that Plaintiffs have made no efforts, outside of filing their initial motion, for well over a year to have this Court certify their putative class.

Finally, Plaintiffs may argue that this outcome is simply unfair because no one can pursue their claims. Even if that were true, it would not matter. The absence of a party with standing to sue "is not a reason to find standing." *Valley Forge Christian Coll.* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982). In any case, Plaintiffs *had* other routes open to them. For example, they might have been able to seek money damages based on their past injuries. *See Lyons*, 461 U.S. at 105. They could have filed their complaint seeking prospective relief after arrest but before their bail proceedings commenced, at which time a future injury might not have been speculative. *See O'Shea*, 414 U.S. at 495-96. Or they could have challenged their bail orders in state habeas proceedings. The Supreme Court has pointed to state habeas review "on a case-by-case basis" as an adequate mechanism for pressing bail challenges. *Martin*, 467 U.S. at 280-81. And Texas prisoners routinely seek (and obtain) relief in state court. *See, e.g.*, *Ex parte Clark*, 537 S.W.2d 40, 42 (Tex. Crim. App. 1976) (reducing bail from $40,000 to $10,000); *Ex parte Sellers*, 516 S.W.2d 665, 666 (Tex. Crim. App. 1974) (vacating and remanding with instructions to consider evidence of ability to pay).

Federal habeas review, moreover, is a noted exception to the *Rooker-Feldman* doctrine. *In re Reitnauer*, 152 F.3d 341, 343 n.8 (5th Cir. 1998). But habeas petitioners must proceed on an individual basis—not as a class. *See, e.g.*, *Norton* v. *Parke*, 892 F.2d 476, 478 (6th Cir. 1989); *Rouse* v. *Mich.*, No. 2:17-CV-12276, 2017 WL 3394753, at *1 (E.D. Mich. Aug. 8, 2017) ("It is improper for different petitioners to file a joint habeas petition."); *United States ex rel. Bowe* v. *Skeen*, 107 F. Supp. 879, 881 (N.D.

W.Va. 1952) ("Several applicants can not join in a single petition for a writ of habeas corpus.").

On this Court's March 31, 2020, conference call, the Court observed that it was "not sure why the[] [Plaintiffs] relied on" 42 U.S.C. § 1983, rather than seeking habeas corpus relief. The previous paragraph suggests the answer: Habeas review provides the only way around the jurisdictional defects that bar this suit, but Plaintiffs' counsel likely knew they could pursue habeas relief only as individuals in separate habeas petitions. Unwilling to seek relief for individual plaintiffs, Plaintiffs' counsel took a gamble on a class-action under § 1983 instead. And because Plaintiffs are "the master[s] of the complaint," *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), this Court may not award habeas relief they never asked for, *see* Compl., ECF No. 1 at 8 (nowhere listing a cause of action under 28 U.S.C. § 2241). In any event, even if this Court could *sua sponte* treat Plaintiffs' complaint as a habeas corpus "application," 28 U.S.C. § 2242, it could not award habeas relief on a class-wide basis, much less on an uncertified class.

Because this Court lacks subject-matter jurisdiction over any of the named Plaintiffs' claims for relief, it should not only deny injunctive relief, but also dismiss this suit in its entirety. *See* Fed. R. Civ. P. 12(b)(1).

## F. Releasing felons during a time of public crisis endangers public safety and, therefore, is not in the public interest.

"The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction." *R.R. Comm'n of Tex.* v. *Pullman Co.*, 312 U.S. 496, 500 (1941). Accordingly, federal courts often

consider two factors—the balance of the equities and the public interest—together. *See, e.g.*, *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26-31 (2008); *see also Weinberger*, 456 U.S. at 312.

Public safety is a paramount public interest. *Winter*, 555 U.S. at 23, 25 (holding that public interest in safety and security "plainly outweighs" countervailing environmental interests, "even if plaintiffs have shown irreparable injury"); *see also Houston Chronicle Pub. Co.* v. *City of League City, Tex.*, 488 F.3d 613, 622 (5th Cir. 2007) (recognizing "public safety" as "a compelling interest at the heart of government's function"). The requested injunctive relief will imperil public safety.

On March 31, 2020, news broke that Harris County Judge Lina Hidalgo intended to order the release of pre-trial arrestees that the County considered low-risk. Judge Hidalgo excluded from this list those arrestees previously convicted of a crime that involves physical violence or the threat of physical violence; those currently arrested for a crime that involves physical violence or the threat of physical violence that is supported by probable cause; and those not being held on one or more charges of DWI (3rd or more) or burglary (habitation).

When asked by this Court if they would be satisfied with Judge Hidalgo's generous proposal, Plaintiffs balked, making it clear that they also wanted the arrestees excluded from the proposed order released. Thus, while they do not want to acknowledge as much, *Plaintiffs apparently seek to release violent felons, burglars, and habitual drunk drivers back into our communities during a pandemic.* That cannot conceivably be in the public interest.

29

What Plaintiffs fail to understand is that unleashing these felons at this critical time endangers public safety, strains already limited police resources, and places victims back in harm's way. *See* Ex. 1, *Acevedo Dec.;* Ex. 2, *Harvey Dec.;* Ex. 3, *Johnson Dec.*; Ex. 4, *Miller Dec.*; Ex. 5, *Grigg Dec.*; Ex. 6, *Shilson Dec.*; Ex. 7, *Kraus Dec.*; Ex. 8, *Mar. 31, 2020 Letter from Garland Police Dep't; Ex.* 9, *Scesney Dec.*; Ex. 10, *Spivey Dec.*; Ex. 11, *Deaver Dec.*; Ex. 12, *Spires Dec.*; Ex. 13, *Drain Dec.* A recent study conducted by a former federal judge shows that the unsecured pretrial release of arrestees pursuant to bail-reform efforts in Chicago, Illinois has already led to an increase in violent crimes there. *See* Paul G. Cassell & Richard Fowles, *Does Bail Reform Increase Crime?* (Univ. of Utah Coll. of Law, Research Paper No. 349, Mar. 2, 2020) https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3541091; Paul Cassell, *Bail Reform in Chicago Appears to Have Increased Crime*, Volokh Conspiracy (Feb. 19, 2020), https://bit.ly/3b3eRm9.

Recent events in Texas confirm what this new study suggests. Just last month, Jacques Dshawn Smith murdered two people one week after being having bail set in Dallas County. Ex. 3, *Johnson Dec*. ¶ 8. Smith was released on secured bail of $15,000. But this this example highlights the kind of arrestees that Plaintiffs want released into our communities. That is plainly unacceptable, as the Dallas community's reaction demonstrates. This double homicide has drawn "additional attention to a larger trend in the bail system in Dallas County, which was the subject of very vocal frustration in the Dallas City Council's Public Safety and Criminal Justice Committee." Charity Nicholson, *Dallas County Bail Reform Policies Scrutinized*

*Following Increase in Homicides*, The Texan (Feb. 26, 2020), https://perma.cc/A397-MUKW; *cf.* Katie Honan, *NYPD Officials Say New Bail Law Is Leading to a Crime Increase*, Wall St. J. (Mar. 5, 2020), https://on.wsj.com/2IWFai1.

The threat to public safety is particularly acute for victims of domestic violence. Arrestees that this Court orders released would be required to stay at home under existing shelter-in-place orders. That will expose domestic violence victims—a spouse, a child, an elderly relative—to further violence at the hands of the same attacker. *See* Ex. 1, *Acevedo Dec.* ¶ 12; Ex. 19, *Kahan Dec.* ¶7 ; Ex. 3, Johnson Dec. ¶ 10. That tragic story is already playing out across the world. *See* Emma Graham Harrison et al., *Lockdowns Around the World Bring Rise in Domestic Violence*, Guardian (Mar. 28, 2020), https://bit.ly/2xsxyBs; Marissa J. Lang, *Domestic Violence Will Increase During Coronavirus Quarantines and Stay-at-Home Orders, Experts Warn*, Wash. Post (Mar. 27, 2020), https://wapo.st/2QRVOn4. Domestic violence is a significant driver of homicides. Ex. 1, Acevedo Dec. ¶ 12.

But the risks posed by to the public is not limited to those arrestees with a history for violence. Burglary of Habitation, Burglary of a Building, Burglary of a Motor Vehicle, Unauthorized use of a Motor Vehicle, DWI, Theft, and a multitude of other offenses wreak more havoc on a community than most violent crimes. Ex. 19, *Kahan Dec.* ¶ 9; Ex. 14, *Rushin Dec.* ¶ 7. These communities are "being repeatedly victimized by the same offenders who were often released before the paperwork was even filed." *Id.* Under Plaintiffs' requested relief, burglars would be free to roam the streets committing numerous offenses. Since 2015, law enforcement officers in Harris

County arrested 1,697 individuals who were charged with either a burglary or robbery offense and then released on bond. Ex. 16, *McCraw Dec.* ¶ 8. Those same 1,697 suspects were arrested and charged with 2,374 new felony crimes committed after their release. *Id.* Releasing such individuals during the coronavirus pandemic presents a "target rich environment" for burglars to exploit as businesses are closed pursuant to governmental mandates and proprietors are encouraged to stay home with a diminished ability to monitor their closed storefronts. *See* Ex. 1, *Acevedo Dec.* ¶ 8.

Likewise, released fraudsters will be presented with new opportunities to prey on Texans, especially the elderly, during this pandemic. Zack Friedman, *Beware These Coronavirus Scams*, Forbes (Mar. 20, 2020), hhttps://bit.ly2xzJT6B. And habitual DWI offenders certainly endanger the public through intoxicated driving— something that is especially troubling in light of the fact that Houston, Harris County, and Texas already lead the nation in DWI injury and fatal crashes. Ex. 1, *Acevedo Dec.* ¶ 12.

The requested relief would further threaten public safety by placing additional strain on already limited law enforcement resources and divert them from aiding with the pandemic control efforts. *See Id.* at ¶ 5; Ex. 3, *Johnson Dec.* ¶ 3; Ex. 4, *Miller Dec.* ¶ 3. The risk of this harm is compounded by the likelihood that law enforcement officers will contract COVID-19 by having to apprehend recidivists released from a jail population known to be at risk for having contracted the virus. As of March 29, 2020, 11 Houston Police Department officers have tested positive for COVID-19

related to their duties, with close to 50 more awaiting test results. Ex. 1, *Acevedo Dec.* ¶ 6. The general population would likewise face a heightened risk of infection by the hasty mass release requested by Plaintiffs.

The impact is not limited to Houston. Although Pearland is in Harris, Brazoria, and Ft. Bend Counties, 41 percent of arrests there involve arrestees from Houston. Ex. 12, *Spires Dec.* at ¶ 6. And communities in the Dallas-Fort Worth Metroplex have also fallen victim to gangs that travel from Houston to victimize innocent locals. Ex. 14, *Rushin Dec.* at ¶ 8.

The Director of Law Enforcement for the Office of the Attorney General (and former Texas Ranger) David Maxwell states that "[t]he State of Texas has a critical problem with apprehending felons across this state on several levels. Most of the local agencies do not have the man power and resources to actively pursue violators as they are consumed with answering the daily crimes being reported and pursuing fugitives that are not showing up for court dates arising out of local charges. To release more criminals back on the streets would only exacerbate an already difficult problem." Ex. 15, *Maxwell Dec.* at ¶ 7.

Finally, the requested injunction will disserve the public interest by releasing felony arrestees without proper consideration of the safety, wellbeing, and legal rights of victims. Ex. 11, *Deaver Dec.* ¶ 9. The mass release of felons without an individualized assessment by a judge and input by victim advocates will undoubtedly put victims at risk and create future victims. Ex. 19, *Kahan Dec.* ¶ 14. For example, DPS Troopers and Special Agents have arrested 373 robbery suspects in Harris

County since April 2017 in support of local law enforcement agencies in Harris County at the direction of the Governor. Ex. 16, *McCraw Dec.* ¶ 7. These 373 robbery suspects belong to 188 robbery crews that were responsible for 620 armed robberies. *Id.* Members of these robbery crews tend to be career criminals who present a high probability of quickly reoffending upon release. *Id.* Several of the robbery suspects were on bond at the time of their arrest. *Id.*

In sum, the State Intervenors have grave concerns about the increased risk of harm to the public and the additional burden on already-strained law enforcement resources. It is no response to say that these "concerns about the preliminary injunction [are] 'speculative.'" *Winter*, 555 U.S. at 27. As the Supreme Court has noted, this kind of uncertainty in uncharted waters "is almost always the case when a plaintiff seeks injunctive relief to alter a defendant's conduct." *Id.* Instead, this Court should "defer to [the state] officers' specific, predictive judgments about how the preliminary injunction" would impact public health, public safety, law enforcement, and State's criminal justice system. *Id.*

## G. Plaintiffs' Supplemental Brief Confirms that this Court May Not Grant Relief.

Much of what Plaintiffs offer in their supplemental brief hurts them and helps the State Intervenors.

In their supplemental brief, Plaintiffs dial up the rhetoric in an effort to release thousands of felony arrestees from custody. Suppl. Br. 1, 8 (ECF No. 44). But they endeavor to assure the Court that the emergency relief they seek is "limited" and "temporary" and could easily and quickly be undone. *Id.* at 1-2.. The supposed

exigencies, which today are "a matter of life and death," *Id.* 8, "could dissipate in short order" only days from now, *Id.* at 1.

This argument demonstrates the fundamental flaw in Plaintiffs' request for emergency relief. Even if they otherwise satisfy the preliminary injunction factors, the relief Plaintiffs request is improper because it seeks to deviate from—not preserve—the *status quo ante*. It is black letter law that a temporary restraining order or a preliminary injunction is designed to *preserve* the preexisting state of affairs, not bring a new state of affairs into being. *See* 11A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. §§ 2948, 2951 (3d ed.) (noting "the purpose of the preliminary injunction is the preservation of the status quo" and "[t]he [TRO] is designed to preserve the status quo"); *see also Heckler* v. *Redbud Hosp. Dist.*, 473 U.S. 1308, 1313-14 (1985) (Rehnquist, J., in chambers).

Decades of Fifth Circuit precedent establishes this principle. *See, e.g, Sorenson* v. *Raymond*, 532 F.2d 496, 498-99 (5th Cir. 1976) (holding an earlier preliminary injunction could not ground collateral estoppel "because the judge in a preliminary injunction hearing seeks only to preserve the status quo"); *Mercury Motor Exp., Inc.* v. *Brinke*, 475 F.2d 1086, 1095 (5th Cir. 1973) (noting "[t]he intended function of a preliminary injunction is to preserve the status quo" and affirming district court's decision denying an injunction because that "would best preserve the status quo"); *Brannen* v. *Willoughby*, 257 F.2d 580, 581 (5th Cir. 1958) (per curiam) (noting the "sole function [of a temporary or preliminary injunction] is to preserve the status quo"); *Exhibitors Poster Exch., Inc.* v. *Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th

Cir. 1971) (noting "[t]he purpose of a preliminary injunction is to preserve the status quo"); *Hoeme* v. *Jeoffroy*, 100 F.2d 225, 226 (5th Cir. 1938) (noting the effect of granting the requested injunction "would not have been to preserve the status quo pending suit, [but] would have been . . . to destroy it").

The status quo as of today is that thousands of putative class members are in custody. Plaintiffs admit that they ask to change that status quo by seeking to be released from custody. That simple fact demonstrates why preliminary relief is inappropriate because "[t]he function of a preliminary injunction is merely to preserve the status quo." *Morgan* v. *Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975). But it also demonstrates why Plaintiffs' suggestion that this Court could easily "revisit" any temporary relief is a false promise. Suppl. Br. 2. If the Court releases thousands of felony arrestees tomorrow, how will it ensure that law enforcement authorities will ever get them back? Because the *new* status quo that Plaintiffs seek requires a loss of control, this Court could not easily unwind that relief. In this case, therefore, "the status quo, which a preliminary injunction seeks to maintain, would best be preserved by keeping the parties in their present positions." *Am. Family Life Assurance Co. of Columbus* v. *Aetna Life Ins. Co.*, 446 F.2d 1178, 1180 n.6 (5th Cir. 1971).

More fundamentally, Plaintiffs have not addressed the impossibility of awarding class-action relief in this procedural posture. This Court cannot award class-wide relief without first certifying a Plaintiff class. *See* Fed. R. Civ. P. 23(a)-(b). And this Court cannot certify a class without first holding a robust class certification

hearing. A plaintiff must "affirmatively demonstrate his compliance with" Rule 23, *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 348-50 (2011), in order to justify a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano* v. *Yamasaki*, 442 U.S. 682, 700-01 (1979). Just last week, the Fifth Circuit "cautioned that a district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Cruson* v. *Jackson Nat'l Life Ins. Co.*, — F.3d —, 2020 WL 1443531, at *7 (5th Cir. Mar. 25, 2020).

There is simply no way that this Court could, in compliance with Rule 23, order preliminary injunctive relief for thousands of prisoners two days from now and without formally "'find[ing],' not merely assum[ing], the facts favoring class certification." *Unger* v. *Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). That problem is independent of Plaintiffs' other shortcomings. In other words, even if this Court ignores the Fifth Circuit's decisions in the *ODonnell* case, looks past the subject-matter jurisdiction defects that plague this suit, and finds that Plaintiffs satisfy the preliminary injunction factors, all that this Court would have power to do is award preliminary relief to *the three named Plaintiffs*. (Of course, the Court could not do even that because as their counsel admitted yesterday, all three were released from custody weeks ago.)

It is true that a court need not certify a class before awarding relief that may *incidentally* benefit third parties that are not before the court. *See* 7AA WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1785.2 (3d ed.); *Kans. Health Care Ass'n* v. *Kans.*

*Dep't of Social Rehab.*, 31 F.3d 1536, 1548 (10th Cir. 1994). But this Court's order demonstrates that is not what is at stake here. *See* Order, ECF No. 34 at 1 (noting that Pseek relief ordering that they be "promptly released" or have "their current bail status reheard"). Plaintiffs ask this Court to order state courts to revisit their past bail determinations. As already explained above, this Court has no power to do so under the *Rooker-Feldman* doctrine. But even assuming that problem away, ordering new bail determinations for the named Plaintiffs could not incidentally aid the putative class. Plaintiffs may respond that this Court could award declaratory or injunctive relief directing County officials to alter a policy going forward. That policy might incidentally benefit third parties who may later be subject to bail proceedings. But as already discussed above, Plaintiffs lack Article III standing to seek that relief.

Plaintiffs' supplemental response essentially admits that they have a separate Article III standing problem. Namely, Plaintiffs admit that the only defendants they sued "have no state-law authority . . . to act at all." Suppl. Br. 4. Those defendants therefore cannot redress the harm that Plaintiffs fear. Article III standing, however, requires a plaintiff to show that is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). Plaintiffs' own pleadings affirmatively demonstrate the opposite. This subject-matter jurisdiction problem is over and above the *Rooker-Feldman* bar and the lack of an injury in fact detailed above.

Plaintiffs also baldly assert that "there are no other options." Suppl. Br. 4. As this Court has recognized, that is untrue. Plaintiffs do not allege that they even

tried to obtain habeas relief for any of the named Plaintiffs. Without trying, it is impossible to know whether state courts are incapable of affording relief. That is precisely why federal habeas review requires state petitioners to exhaust state court remedies before coming to federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose* v. *Lundy*, 455 U.S. 509, 515-19 (1982). Here by contrast, Plaintiffs did the opposite—they ran to federal court seeking an injunction on behalf of 4,000 people without even trying to obtain habeas relief on behalf of a single class representative. If, as Plaintiffs admit, "it is unclear whether, when, or how bail hearings will occur," Suppl. Br. 5, that is because they have not even tried that route. Plaintiffs cannot turn that vice— their failure to exhaust available state remedies—into a virtue.

The discussion at this Court's most recent telephonic hearing is a perfect example. County authorities are working to quickly reduce the jail population  by providing a one-to-one remedy. At the start of the call, the Court explained that it is not contemplating any relief that is barred by Governor Greg Abbott's recent executive order. *See* Executive Order GA 13, Office of Tex. Governor (Mar. 29, 2020). Counsel for Judge Hidalgo confirmed that Judge Hidalgo intends to issue an order to the same effect. Further discussion confirmed that the County Judge's order "includes those individuals" for whom this Court is contemplating relief and may even "go beyond" them. Recognizing that state and local authorities are potentially remedying the wrongs this Court would remedy, Plaintiffs' counsel was forced to admit that they *do* seek the release of violent felony arrestees. The fact that Plaintiffs' counsel presses

on while admitting it is "unclear" which individuals may obtain relief from local officials demonstrates their disregard for federalism.

On the merits, Plaintiffs simply ignore *ODonnell II* when they claim they are entitled to the substantive right to be released. Suppl. Br. 5-6. As noted above, the Fifth Circuit has already rejected that argument. This Court knows the story well. After the Court initially expanded the scope of injunctive relief to include mandatory release in certain scenarios, the Fifth Circuit reversed and ordered the Court to comply with *ODonnell I. See ODonnell II*, 900 F.3d at 225-26, 228. It held that this Court's injunction "smuggl[ed] in a substantive remedy" for a non-existent substantive right. *Id.* at 228. Plaintiffs, apparently realizing that free-standing substantive due process is out of bounds, make a pass at repackaging their claim for substantive relief under the Equal Protection Clause. Suppl. Br. 5. But of course, the Equal Protection Clause was at issue in *ODonnell*, and the Fifth Circuit rejected it as a basis for substantive relief: "The due process *and equal protection relief* found sufficient in *Odonnell I* did not contemplate release, and it follows that such relief is improper." *ODonnell II*, 900 F.3d at 228; *see also ODonnell I*, 892 F.3d at 152, 161-63. *ODonnell* forecloses Plaintiffs' attempt to wrest substantive relief from the Equal Protection Clause.

Finally, Plaintiffs point to a recent Sixth Circuit decision. Suppl. Br. 7 (citing *McNeil* v. *Cmty. Probation Servs.*, 945 F.3d 991 (6th Cir. Dec. 23, 2019)). But that case seemingly had none of the subject-matter jurisdiction problems that plague this case. Standing was not even litigated in *McNeil*, perhaps because some of the named

plaintiffs (unlike here) obviously had it: When the complaint was filed, a judge had issued a warrant ordering Indya Hilfort's arrest and imposing secured bail, but Hilfort had not yet been arrested but remained out on probation. *McNeil*, 1:18-cv-00033, ECF 41 at 63-64, ECF 212 at 3-4. An order enjoining the sheriff, then, would have remedied Hilfort's certainly impending future injury. (But Plaintiffs have no such injury here.) And it would have encountered no *Rooker-Feldman* shoal because there, unlike here, the federal court was not asked to revisit the previous bail determination.

CONCLUSION

The Court should deny Plaintiffs' request for preliminary injunctive relief. Indeed, it should dismiss this suit in its entirety for lack of subject-matter jurisdiction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ERIC A. HUDSON
Special Counsel
Special Litigation Unit
Texas Bar No. 24059977
Southern District ID: 1000759
Eric.Hudson@oag.texas.gov
P.O. Box 12548, Capitol Station Austin,
Texas 78711-2548
(512) 936-1414 | FAX: (512) 936-0545

DARREN L. MCCARTY
Deputy Attorney General for Civil
Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Special Litigation Counsel
Attorney-in-Charge
Texas Bar No. 24077727
Southern District No. 2964087
Adam.Biggs@oag.texas.gov

MATTHEW BOHUSLAV
Assistant Attorney General
Texas Bar No. 1303218
Southern District ID: 1303218
Matthew.Bohuslav@oag.texas.gov

DOMINIQUE G. STAFFORD
Assistant Attorney General
State Bar No. 24079382
Southern District ID: 3195055
Dominique.Stafford@oag.texas.gov
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

COUNSEL FOR THE STATE INTERVENORS

42

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Southern District of Texas, Houston Division, on April 1, 2020 to all parties of record.


*/s/ Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Special Litigation Counsel