UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUSSELL, *et al.*,<br>*Plaintiffs,*<br><br>v.<br><br>HARRIS COUNTY, TEXAS, *et al.*,<br>*Defendants.* | § § § § § § § § § § § § § | Case No. 4:19-cv-00226<br>(Class Action) |

## DECLARATION OF DANIEL SCESNEY

1. My name is Chief Daniel Scesney, I have been a Texas Peace Officer for approximately nineteen years and currently serve as the Chief of Police for the City of Grand Prairie, Texas.

2. It my understanding that Harris County officials have evaluated inmates and released those offenders whose release without a bond was deemed appropriate. It is also my understanding that the Plaintiffs in this lawsuit are seeking an order requiring the release of the remaining Harris County jail inmates who are habitual offenders awaiting trial and inmates awaiting trial for felony offenses.

3. Based on my training, experience, and understanding of the current circumstances on the ground throughout the State, I believe that such releases would strain the already limited law enforcement resources and pose a danger to Texans. This pandemic is like nothing we have ever seen before but releasing potentially dangerous felons will not serve the public at large.

4. Every Texas peace officer is charged with the duty of preserving peace within their jurisdiction. As this unprecedented pandemic has limited resources available to first responders, that duty hasn't changed. More first responders are diagnosed with COVID19 every day, yet police officers continue to put

**EXHIBIT 9**

themselves at risk as they protect and serve the public. I believe if released, these felons would endanger their communities and further stretch the limited resources of police departments, putting a bigger strain on the community.

5. A portion of those inmates who are housed in the jail do not have a home to go to or a job to provide for their basic needs. During this time many hotels have closed or have very limited operations. In addition, many inmates are without the financial resources to afford the other limited housing options, so those inmates who are without homes would likely be living out on the street. This not only increases their community contact and chance of contracting and spreading COVID19, it also increases the chance of those individuals committing offenses to provide for their needs.

6. In addition, law enforcement has continued to see a rise in violent crime over the past month, specifically child abuse and aggravated assault. Many of these are domestic related as families are staying at home in accordance their jurisdiction's orders. The release of inmates, who were arrested for domestic violence and not subject to a protective order, would inevitably place the lives of their victims, including their minor children, at risk as the inmates return home. The release would essentially force those victims to stay in close quarters with their abuser and send the message to the victims that police can't help because the jail has a revolving door. For those inmates who are subject to a protective order preventing them from going home, they would likely be forced to live on the street or violate the protective order which would further place the victim at risk.

7. Releasing "non-violent" habitual offenders such as burglars and fraudsters would also place the public at great risk. As businesses are closed and law enforcement resources are limited, businesses are prime targets for looting and burglary. As departments operate with minimal staffing, responses to violent offenses must take priority over those relating to property. This increases the risk of damage to business owners who are already struggling due to required closures. In addition, members of the public are struggling as layoffs and business closures continue to rise. These circumstances create a perfect environment for seasoned fraudsters to take advantage of innocent citizens who are just trying to survive. In addition, individuals who are facing felony DWI charges due to their prior convictions have shown they are unwilling to stop driving drunk. Not only are a significant number of officers killed every year due to drunk drivers, drunk drivers pose a significant risk to the driving public as they frequently cause crashes. Every time first responders must respond to a vehicle crash, they must come in close contact with a person thereby increasing the risk of exposure and further transmission of COVID19.

**EXHIBIT 9**

8. Furthermore, approving the plaintiff's request would empower criminals to commit more offenses as it would essentially tell offenders the jail has a revolving door and they can't be held during the pandemic.

9. Finally, the courts have previously ruled that that an individualized assessment should be conducted to determine the appropriate bond, and a pandemic does not change the need for an individualized assessment. Bonds are meant to secure appearance at court. Inmates who do not have ties to the community or who have ties to foreign countries are significantly less likely to comply with an order to appear in the future and more likely to move to other jurisdictions to continue their criminal actions.

10. I believe releasing those inmates for whom probable cause exists to believe they have committed felony offenses into the community without an individualized risk assessment would not serve the best interest of the public in our current environment. On the contrary, it would place countless domestic violence victims at risk of being repeatedly victimized, endanger the public at large, and strain the already limited public safety resources.

Date: 3-31-2020

Daniel Scesney, Chief of Police
Grand Prairie, Texas

**EXHIBIT 9**