United States District Court,
Southern District of Texas,
Houston Division

**RUSSELL,** *et al.*,
    *Plaintiffs,*

v.                                         Case No. 4:19-cv-00226
                                                               (Class Action)

**HARRIS COUNTY, TEXAS,** *et al.*,
    *Defendant.*

_____

**Declaration of Bob Bushman, President of the National Narcotic Officers' Associations' Coalition**

_____

    1.    I am Bob Bushman, President of the National Narcotic Officers' Associations' Coalition (NNOAC). Our membership consists of State Narcotic Officers Associations and partner organizations across the United States, representing about 55,000 law enforcement officers, including the Texas Narcotic Officers Association. The NNOAC vigorously opposes the wholesale release of inmates from the Harris County jail, or any other jail or correctional facility, in response to the COVID-19 pandemic. The NNOAC believes that Government's obligation to protect citizens from violent criminals is just as vital as it is to protect our citizens from pandemic disease.

    2.    While the NNOAC agrees that there may be some low level arrestees posing minimal risks to the public that may be released, that is not true for the many violent and habitual offenders who have committed serious crimes, victimizing many of our citizens. Offenders do not find their way into our jails accidentally. They have violated laws which have been designed to protect our citizens and our communities. Many jurisdictions have already released offenders that they have identified as low level, non-violent offenders. Most of those remaining in the jails are violent criminals and habitual offenders.

**EXHIBIT 18**

3. The NNOAC believes that there must be a transparent risk assessment process for determining which offenders pose substantial, harmful risks to the community. Those offenders must be evaluated on an individual, case-by-case basis. Offenders that have committed crimes of violence, including drug trafficking, those who are habitual offenders, and those who are likely to fail to appear for subsequent court proceedings and hearings, must remain incarcerated to protect the public.

4. Wholesale releases of violent criminals and repeat offenders have the potential to cause more harm than the COVID-19 virus itself. For, unlike the COVID-19 virus from which many of those infected will recover, many crime victims never recover from the injuries, death and addiction inflicted by the violent criminals, drug traffickers and the habitual offenders that do not respect or obey our laws, and who prey upon our citizens to support their criminal livelihoods. Those violent and repeat offenders must not be released.

5. Current release guidelines often require offenders to be supervised by probation officers and to participate in alternative programs such as specialty courts and drug treatment programs. Given the current efforts by federal, state and local entities to slow the spread of the COVID-19 virus, it is simply unworkable to add more offenders to court supervision and other programs that are already at capacity, and where effectiveness and oversight is diminished by decreased personal interaction between program providers, staff and the offenders, all of whom are required to comply with social distancing practices and possible quarantines.

6. Due to the growing demands on law enforcement and first responder services by the rapidly expanding COVID-19 infections, the release of violent criminals and recidivists will add an unnecessary burden to an already overwhelmed public safety system. As the COVID-19 virus continues to spread throughout our country, it must be a priority for law enforcement agencies to be available to assist with pandemic issues. Releasing large numbers of dangerous criminals and repeat offenders into the communities will needlessly divert law enforcement agencies and their officers from availability for pandemic response in their communities.

**EXHIBIT 18**

7. The NNOAC urges the Court to deny the plaintiffs' petition to release violent and repeat offenders on a broad scale basis, and instead, to implement a risk assessment process to ensure that offenders being considered for release do not include those offenders who are violent criminals, habitual offenders or flight risks, and, that such offenders remain incarcerated in the best interests of public safety and protecting our citizens. Further, that Harris County be directed to explore alternatives that will allow for continued incarceration of such offenders in an environment that will also provide for measures to help prevent and slow the spread of the COVID-19 virus within the inmate population.

**These statements are true and correct to the best of my ability.**

Date: <u>March 31, 2020</u>

                                                Bob Bushman, President

                                                on behalf of the
National Narcotic Officers' Associations' Coalition

**EXHIBIT 18**