

**County Judge Lina Hidalgo**
DIRECTOR

## ORDER BY THE COUNTY JUDGE OF HARRIS COUNTY

**Whereas,** on March 11, 2020, a Declaration of Local Disaster for Public Health Emergency was issued to allow Harris County to take measures to reduce the possibility of exposure to COVID-19 and promote the health and safety of Harris County residents; and

**Whereas,** on March 13, 2020, a Declaration of State of Disaster was issued by Governor Abbott to take additional steps to prepare for, respond to, and mitigate the spread of COVID-19 to protect the health and welfare of Texans; and

**Whereas,** on March 13, 2020, the Texas Court of Criminal Appeals issued its First Emergency Order regarding the COVID-19 State of Disaster, which provides the following directives to Texas courts to avoid exposing court proceedings to the threat of COVID-19 (until May 8, 2020, unless extended by the Chief Justice of the Supreme Court):

"Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

a. Modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted;

b. Allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, or court reporter, but not including a juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means;

c. Consider as evidence sworn statements made out of court or sworn testimony given remotely, out of court, such as by teleconferencing, videoconferencing, or other means;

d. Conduct proceedings away from the court's usual location, but in the court of venue, and only with reasonable notice and access to the participants and the public;

  e. Require every participant in a proceeding to alert the court if the participant has, or knows of another participant who has, COVID-19 or flu-like symptoms, or a fever, cough or sneezing;

  f. Take any other reasonable action to avoid exposing court proceedings to the threat of COVID-19."

**Whereas,** on March 13, 2020, the Harris County Criminal Courts At Law posted this COVID-19-related public safety notice on their website, suspending jury service and stating, in part:

  a. "In an effort to encourage the safety of the public and court staff members from COVID-19, the County Criminal Court at Law Judges are NOT requiring accused individuals on the bond docket, to come to Court unless they are (1) scheduled for an arraignment setting, (2) set for a plea, (3) do not have an attorney of record, or (4) directly ordered by the Judge of the presiding court. Missed court appearance will NOT lead to bond forfeitures or bond revocations outside of the above four exceptions. All individuals with an attorney, hired or appointed, shall NOT attend their court settings until further notice. Please continue to contact your attorney if you have questions.

  b. If anybody is having symptoms similar to COVID-19, recently travelled internationally, or has come in contact with somebody who has travelled internationally, DO NOT COME TO COURT until released from isolation by your Health Care Physician. Contact the Court and the Court will make the necessary scheduling changes to accommodate."; and

**Whereas,** on March 18, 2020, the Harris County District Courts Trying Criminal Cases issued a Joint Statement on Felony Court Operations during the COVID-19 pandemic seeking, with exceptions relating to preliminary assigned court appearances, to limit in-court appearances to protect public health and safety while adhering to the concepts of justice and the rule of law (through May 8, 2020 unless later revised) by:

  a. Encouraging remote court appearances and limiting appearances in Court to those matters that are essential or time sensitive and have been docketed;

  b. Encouraging attorneys to request to docket a matter if the parties believe it will lead to the disposition of the case; and

  c. Emphasizing that all efforts must be taken to limit court appearances and that anyone appearing before the Court in person must make the Court aware of whether he or she is sick or experiencing any symptoms that may risk their safety or the safety of others; and

**Whereas,** on March 19, 2020, Governor Abbott issued the first Public Health Disaster Declaration released in the State of Texas since 1901 and an Executive Order which, among other things, prohibits Texans from gathering in groups of more than ten persons; and

**Whereas,** on March 19, 2020, the Texas Court of Criminal Appeals and the Texas Supreme Court issued their Third Emergency Order regarding the COVID-19 State of Disaster, stating that Governor Abbott declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic and providing, in pertinent part, that:

> "With respect to the First Emergency Order Regarding the COVID-19 State of Disaster issued March 13, 2020: ... Paragraph 2(d) is amended as follows: Conduct proceedings away from the court's usual location with reasonable notice and access to the participants and the public; [and] ...
>
> "Courts must not conduct non-essential proceedings in person contrary to local, state, or national directives, whichever is most restrictive, regarding maximum group size."; and

**Whereas,** on March 23, 2020, the Centers for Disease Control and Prevention issued *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*,[1] which states, in relevant part, that:

> a. "Correctional and detention facilities can include custody, housing, education, recreation, healthcare, food service, and workplace components in a single physical setting. The integration of these components presents unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors";
>
> b. "Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced";
>
> c. "Persons incarcerated/detained in a particular facility often come from a variety of locations, increasing the potential to introduce COVID-19 from different geographic areas. Options for medical isolation of COVID-19 cases are limited and vary depending on the type and size of facility, as well as the current level of available capacity, which is partly based on medical isolation needs for other conditions. Adequate levels of custody and healthcare staffing must be maintained to ensure safe operation of the facility, and options to practice social distancing through work alternatives such as working from home or reduced/alternate schedules are limited for many staff roles";
>
> d. "Incarcerated/detained persons and staff may have medical conditions that increase their risk of severe disease from COVID-19. Because limited outside information is available to many incarcerated/detained persons, unease and misinformation regarding the potential for COVID-19 spread

---

[1] *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, U.S. Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (last visited Mar. 31, 2020).

may be high, potentially creating security and morale challenges. The ability of incarcerated/detained persons to exercise disease prevention measures (*e.g.*, frequent handwashing) may be limited and is determined by the supplies provided in the facility and by security considerations. Many facilities restrict access to soap and paper towels and prohibit alcohol-based hand sanitizer and many disinfectants"; and

**Whereas**, on March 29, 2020, Governor Greg Abbott issued Executive Order GA 13 relating to detention in county and municipal jails during the COVID-19 disaster, which provides, in pertinent part, that:

a. "[N]o authority should release on personal bond any person previously convicted of a crime that involves physical violence or the threat of physical violence, or any person currently arrested for such a crime that is supported by probable cause [, and]

b. Sections 418.1015(b) and 418.108 of the Texas Government Code are hereby suspended to the extent necessary to preclude any county judge or mayor of a municipality, or any emergency management director, from releasing persons under any circumstances inconsistent with this order"; and

**Whereas**, the suspension of court deadlines and limitations on in court appearances will likely lead to the backlog of individuals incarcerated in the Harris Jail system; and

**Whereas**, the Harris County Commissioners Court "shall provide safe and suitable jails for the county" in accordance with Section 351.001 of the Texas Local Government Code; and

**Whereas**, the Harris County Sheriff "is the keeper of the county jail" and "shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court" in accordance with Section 351.041(a) of the Texas Local Government Code; and

**Whereas**, the Harris County Sheriff "has all the powers, duties and responsibilities with regard to ... operating the jail that are given by law in a county operating its own jail" in accordance with Section 351.035 of the Texas Local Government Code;

**Whereas**, the Harris County Sheriff and Harris County are obligated under the United States Constitution to ensure the safe and reasonable medical care of individuals in their custody.

**Whereas**, the Harris County Sheriff operates the third largest county jail system in the United States; and

**Whereas**, approximately 7,791 individuals were detained in the Harris County Jail facilities on March 31, 2020 and the majority of those held are pretrial detainees; and

**Whereas**, the Harris County Jail facilities (collectively referred to as the Harris County Jail system) consist of temporary lockups in four patrol district substations, a downtown Joint Processing Center (located at 700 North San Jacinto) and four housing locations, including the 700

4

North San Jacinto Joint Processing Center, the 1200 Baker Street Jail, the 701/711 North San Jacinto Jail and the 1307 Baker Street Jail, all located in the local disaster area; and

**Whereas,** the COVID-19 virus is contagious and spreads through person-to-person contact, especially in group settings; and

**Whereas,** the risk posed by COVID-19 in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected.  This is due to a number of factors: the close proximity of individuals in those facilities; their reduced ability to protect themselves through social distancing; the lack of necessary medical and hygiene supplies ranging from hand sanitizer to protective equipment; ventilation systems that encourage the spread of airborne diseases; difficulties quarantining individuals who become ill; the increased susceptibility of the population in jails and prisons; the fact that jails and prisons normally have to rely heavily on outside hospitals that will become unavailable during a pandemic; and loss of both medical and correctional staff to illness; and

**Whereas,** the Centers for Disease Control and Prevention ("CDC") recommends an "All of Community" approach focused on slowing the transmission of COVID-19 through social distancing to reduce illness and death, while minimizing social and economic impacts; and

**Whereas,** detainees in the Harris County Jail system cannot engage in these measures to slow transmission as they are not in control of their physical environment within the jail, nor can the detainees reject touching by Harris County detention officers and other criminal justice system staff; and

**Whereas,** detainees in minimum and medium security settings in the Harris County Jail system are held in close proximity to other prisoners and unable to distance themselves.  These detainees spend significant time in communal spaces, including dormitories, eating areas, recreation rooms, bathrooms, and cells or holding areas, and are unable to choose to do otherwise. Further, detainees live in spaces with open toilets within a few feet from their beds, and unable to access a closed toilet that would not aerosolize bodily fluids into their living spaces; and

**Whereas,** individuals in the Harris County Jail system are a vulnerable, at-risk population, given pre-existing health conditions, lack of regular access to health care outside the Harris County Jail system and other factors leading to compromised immune systems;  and

**Whereas,** the Harris County Jail system has neither the physical space nor sufficient personal protection equipment nor medical supplies to handle an outbreak of the infection inside the jail, to quarantine exposed individuals, to isolate and treat sick individuals, or to prevent the spread of any outbreak into the broader community; and

**Whereas,** without significant reductions in the current population, the lack of physical space, supplies, and staff to control an infectious outbreak in the Harris County Jail system is likely to spread to the greater Harris County region; and

**Whereas,** more than 3,000 Harris County employees and vendors work in the Harris County Jail system before returning to the community at the end of their workdays;  and

**Whereas,** an outbreak of COVID-19 in the Harris County Jail system could devastate Harris County's health care system and the Harris County community at large by overwhelming an already overburdened health care system; and

**Whereas,** on or before March 24, 2020, Dr. Esmaeil Porsa, the President and Chief Executive Officer of the Harris Health System, strongly urged the Harris County Criminal District Court Judges to consider releasing defendants in the Harris County Jail who are charged with non-violent offense, explaining, among other things, that "[t]he Harris County Jail and other large correctional facilities pose a real and immediate danger to the health of the community"; that "[a]n even limited outbreak of COVID-19 in the Harris County Jail has the potential to overwhelm our already overburdened hospital system"; that "[i]f this happened—and the likelihood is high—it could leave many vulnerable people in our community without access to care"; and

**Whereas,** the Harris County Sheriff has publicly advocated the propriety of the issuance of an order or orders providing for the temporary, compassionate release of individuals who, given their charged offenses and backgrounds, appear to pose little or no risk to public safety, and to thereby reduce and control the occupancy of the Harris County Jail facilities and preserve the health of prisoners, Harris County Sheriff's Office staff, vendors and the community at large during this public health disaster; and

**Whereas,** the Governor may use all available resources of state government and of political subdivisions that are reasonably necessary to cope with a disaster and may temporarily reassign resources, personnel, or functions of state executive departments and agencies or their units for the purpose of performing or facilitating emergency services in accordance with Sections 418.017(a) and (b) of the Texas Government Code; and

**Whereas,** the Governor may recommend the evacuation of all or part of the population from a stricken or threatened area in the state if the governor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery in accordance with Section 418.018(a) of the Texas Government Code; and

**Whereas,** the Governor may control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area if the Governor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery in accordance with Section 418.018(c) of the Texas Government Code; and

**Whereas,** a County Judge acts as the emergency management director for the county and serves as the Governor's designated agent in the administration and supervision of duties during a state of emergency declared by the Governor in accordance with Section 418.1015(a) and (b) of the Texas Government Code; and

**Whereas,** a County Judge, serving as the Governor's designated agent in the administration and supervision of duties during a state of emergency declared by the Governor, "may exercise the powers granted to the governor under this chapter on an appropriate local scale" in accordance with Section 418.1015(b) of the Texas Government Code; and

**Whereas,** a County Judge, serving as the Governor's designated agent in the administration and supervision of duties during a state of emergency declared by the Governor,

6

may use state or federal resources without prior authorization from the division or the state or federal agency having responsibility for those resources in accordance with Section 418.1015(d) of the Texas Government Code; and

**Whereas,** a County Judge, serving as the Governor's designated agent in the administration and supervision of duties during a state of emergency declared by the Governor, is authorized to control ingress to and egress from a disaster area and control the movement of persons and the occupancy of premises on an appropriate local scale in accordance with Sections 418.1015 and 418.018 of the Texas Government Code; and

**Whereas,** upon Declaration of a Local Disaster, a County Judge is authorized to order the evacuation of all or part of the population from a stricken or threatened area under the jurisdiction and authority of the County Judge if the County Judge considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery in accordance with Section 418.108(f) of the Texas Government Code; and

**Whereas,** upon Declaration of a Local Disaster, a County Judge is authorized to control ingress to and egress from a disaster area and control the movement of persons and the occupancy of premises in accordance with Section 418.108(g) of the Texas Government Code; and

**Whereas,** due to the substantial risks to the individuals in the Harris County Jail system, the Harris County Jail staff, contractors, visitors and the public, the following extraordinary measures must be taken to reduce and control the occupancy of the Harris County Jail system in a time of public health disaster to protect the public safety.

**NOW THEREFORE, I, COUNTY JUDGE FOR HARRIS COUNTY, TEXAS, PURSUANT TO THE AUTHORITY VESTED BY TEXAS GOVERNMENT CODE CHAPTER 418, HEREBY FIND AND ORDER:**

**SECTION 1.** That the findings and recitations set out in the preamble to this ORDER are found to be true and correct and they are hereby adopted by the County Judge and made a part hereof for all purposes.

**SECTION 2.** That it is in the public interest to issue an order or orders providing for the temporary release of individuals who are detained pretrial or who have agreed to deferred adjudication, but whose convictions have not become final ("detainees"), and who, given their charged offenses and backgrounds, appear to pose little or no risk to public safety, thereby reducing and controlling the occupancy of the Harris County Jail system in accordance with Sections 418.017, 418.018, 418.1015 and 418.108 of the Texas Government Code so as to mitigate the grave threat posed by a concentrated outbreak of COVID-19 in the Harris County Jail system that could cost lives and overwhelm local hospitals.

**SECTION 3.** That this Order applies to detainees and to persons who are received into custody by the Harris County Sheriff on new charges and who otherwise qualify for release under this Order (collectively referred to as "detainees").

**SECTION 4.** That the actions required by this Order are undertaken in deference to Governor Abbott's Executive Order GA 13 ("EO-GA-13") and are intended to be consistent with EO-GA-13 in all respects.

**SECTION 5.** That this Order does not authorize the release of any person who has previously been convicted of a crime that involves physical violence or the threat of physical violence, or who is currently arrested for a crime that involves physical violence or the threat of physical violence that is supported by probable cause.

**SECTION 6.** For purposes of this Order, "non-violent" is defined to include any charge that does not have as an element the use or threatened use of physical force or unwanted sexual touching against another person. The charges that are considered "non-violent" include, but are not necessarily limited to, those listed in Appendix A, as well as their equivalents in Harris County record-keeping systems. The listed offenses' "equivalents" are included in light of the fact that Harris County databases refer to the same statutory offenses using different names.

**SECTION 7.** Effective as of 2:00 p.m. on April 1, 2020, and continuing until 11:59 p.m. on the date the Local Disaster Declaration ends, unless terminated or modified by an earlier or subsequent order, the Sheriff must take immediate steps to reduce and control the occupancy of the Harris County Jail system in accordance with Sections 418.017, 418.018, 418.1015 and 418.108 of the Texas Government Code, by ceasing to enforce orders to hold any detainees in the Harris County Jail system on one or more non-violent charges, so long as the detainee:

1. has not previously been convicted of a crime that involves physical violence or the threat of physical violence;

2. is not currently arrested for a crime that involves physical violence or the threat of physical violence that is supported by probable cause;

3. is not the subject of any protective order, including a Magistrate's Order of Emergency Protection; and

4. is not being held on one or more charges of DWI (3rd or more), burglary (habitation), which are exceptions to the release of detainees held on non-violent charges.

**SECTION 8.** The Sheriff shall, as soon as reasonably possible, compile and provide a list (or lists) of detainees who appear to be eligible for release in accordance with Section 7 to designees of the Harris County Justice Administration Department, the Harris County District Attorney, the Harris County Public Defender, and Harris County Community Supervision and Corrections Department ("Criminal Justice Stakeholders") to permit these Criminal Justice Stakeholders the opportunity to provide information to Harris County Pretrial Services identifying any detainees who: (a) have previously been convicted of a crime that involves physical violence or the threat of physical violence; or (b) are currently arrested for a crime that involves physical violence or the threat of physical violence that is supported by probable cause.

8

**SECTION 9.** After the passage of 32 hours from the time the Sheriff provides the list or lists of detainees, the Sheriff will begin releasing the detainees on Personal Bond, in accordance with this Order, unless one of the Criminal Justice Stakeholders has in the meantime identified any detainees who: (a) have previously been convicted of a crime that involves physical violence or the threat of physical violence; or (b) are currently arrested for a crime that involves physical violence or the threat of physical violence that is supported by probable cause.

**SECTION 10.** Harris County Pretrial Services is authorized to impose non-financial conditions on detainees as necessary to promote public safety and ensure appearance in Court as to anyone who meets the criteria in Sections 7 and 8 above. Non-financial conditions of release include, but are not limited to, protective orders, drug testing, and GPS monitoring. Detainees released under this Order must agree to the conditions of release in the Personal Bond and sign the Personal Bond in order for the Personal Bond to be valid. Harris County Pretrial Services shall begin providing the Personal Bond release order to the Harris County Sheriff or his designee within 24 hours after the Sheriff's initial distribution of the list(s) to Harris County Pretrial Services and the other Criminal Justice Stakeholders in accordance with Section 8 of this Order.

**SECTION 11.** After receipt of the Personal Bond release orders from Harris County Pretrial Services, the Harris County Sheriff shall release on Personal Bond in accordance with this Order all detainees in custody who: (a) have not previously been convicted of a crime that involves physical violence or the threat of physical violence; (b) are not currently arrested for a crime that involves physical violence or the threat of physical violence that is supported by probable cause; and (c) are otherwise subject to release under the terms of this Order.

**SECTION 12.** The Harris County District Clerk's Office shall file records of the Personal Bond prepared by Pretrial Services consistent with their existing policy for filing Personal Bonds.

**SECTION 13.** The detainees approved for release on Personal Bond under the authority of this Order shall be supervised by Pretrial Services.

**SECTION 14.** All detainees released on a Personal Bond shall report/appear back to the Court of Record for which their respective case is pending, as directed by Pretrial Services. Each such detainee released shall adhere to the requirements of his or her Personal Bond, which shall include any non-financial conditions of release previously or subsequently imposed by a criminal court on the person's liberty in the case for which the person was confined to the jail. Each such release shall also adhere to the requirements of Harris County Judge Lina Hidalgo's Stay at Home Orders and any other emergency orders issued and shall not commit any new offense. Each such detainee released may also refer to the Harris County District Clerk's website for information.

**SECTION 15.** Any detainee released in accordance with this Order who is arrested and charged with the commission of a new offense shall not be subject to later release under this Order.

**SECTION 16.** The Harris County Sheriff or his designee must screen individuals qualified under Section 7 of this Order for symptoms of COVID-19 before they can be released. The Sheriff must not release any individuals who present symptoms of COVID-19, as identified by the Centers for Disease Control and Prevention, until they have been cleared by a qualified medical professional.

**SECTION 17.** All detainees released under this Order are required to abide by any previously or subsequently imposed non-financial conditions of release imposed by a hearing officer or court in the case for which the person was incarcerated.

**SECTION 18.** Detainees subject to any hold will follow the normal release procedures of the Harris County Sheriff's Office.

**SECTION 19.** The Sheriff shall have the discretion, continuing until 11:59 p.m. on the date the Local Disaster Declaration ends, to refuse to accept into custody in the Harris County Jail system any person who presents with COVID-19-related symptoms and whose detention may thus threaten the public health of the prisoners, employees or contractors of the Harris County Jail system.

**SECTION 20.** The Harris County Justice Administration Department, the Harris County District Attorney, the Harris County Public Defender, the Harris County Pretrial Services Department, and the Harris County Community Supervision and Corrections Department are cooperating with the Harris County Judge's Office and the Harris County Sheriff's Office to develop a process to operationalize this Order and to protect the public health and wellbeing of Harris County residents by carrying out this Order.

**SECTION 21.** The Harris County Judge will file this Order with the Harris County District Clerk's Office.

**SECTION 22.** The Harris County Judge will post this Order on the Internet. In addition, the Harris County Sheriff is encouraged to post a copy of this Order on the Internet. If any subsection, sentence, clause, phrase, or word of this Order or any application of it to any person, structure, gathering, or circumstance is held to be invalid or unconstitutional by a decision of a court of competent jurisdiction, then such decision will not affect the validity of the remainder of this Order.

**ORDERED** This, the 1st day of April, 2020, in the County of Harris, Texas.

**IT IS SO ORDERED**

_____
**LINA HIDALGO**
**HARRIS COUNTY JUDGE**

10

## APPENDIX A

**2nd Degree Felonies (2-20 years imprisonment; $0 to $10,000 fine)**
- Bigamy (Penal Code § 25.01(e)(1))
- Fraud. Use or Possession of Credit/Debit Information (Penal Code § 32.315)
- Fraud. Use or Possession of Identifying Information (Penal Code § 32.51(c)(3))
- Mail Theft (Penal Code § 31.20)
- Tampering w/Evidence (human corpse) (Penal Code § 37.09(c))

**3rd Degree Felonies (2-10 years imprisonment; $0 to $10,000 fine)**
- Aggravated Perjury (Penal Code § 37.03)
- Bail Jumping (from felony) (Penal Code § 38.10(f))
- Bigamy (Penal Code § 25.01(e)]
- Burglary (bldg. with prescription drugs) (Penal Code § 30.02(c-1))
- Burglary of Vehicle (w/drugs) (Penal Code § 30.04(d)(3))
- Credit/Debit Card Abuse (elderly victim) (Penal Code § 32.31(d))
- Electronic Access Interference (Penal Code § 33.022)
- Forgery (Penal Code § 32.21(e))
- Fraud. Use or Possession of Identifying Information (Penal Code § 32.51(c)(2))
- Fraudulent Use of Possession of Credit/Debit Information (Penal Code § 32.315)
- Mail Theft (Penal Code § 31.20)
- Official Oppression (impair school data) (Penal Code § 39.03(d))
- Online Impersonation  (Penal Code § 33.07(a), (b) if response by emergency personnel)
- Prohibited Substance/Item in Corr. Fac. (Penal Code § 38.11(g))
- Repeated Violations of Court Order/Bond (Penal Code § 25.072)
- Tampering with Evidence (not corpse) (Penal Code § 37.09)(a), (c), (d)(l)
- Tampering with Voting Machine (attempt) (Penal Code § 33.05(e))
- Tampering with Witness (Penal Code § 36.05) (but see 36.05(d)-{e})

**State Jail Felony (180 days-2 years imprisonment in State Jail; $0-$10,000 fine)**
- Abuse of Corpse (body) (Penal Code § 42.08)
- Burglary (building) (Penal Code § 30.02(c)(1))
- Burglary of Vehicle (3rd or rail car) (Penal Code § 30.04(d)(2))
- Credit/Debit Card Abuse (Penal Code § 32.31(d))
- Criminal Nonsupport (Penal Code § 25.05)
- False Alarm/Report  (Penal Code § 42.06(b))
- Forgery(commercial instrument) (Penal Code § 32.21(d))
- Fraudulent Use or Possession of Identification Information (Penal Code § 32.51(c)(1))
- Fraudulent Use or Possession of Credit/Debit Information (Penal Code § 32.315)
- Interference with Emergency Call (Penal Code § 42.062(c)
- Interference w/Radio Frequency (Penal Code § 38.152(b)(1)·{2))
- Interference with Rights of Guardian (Penal Code § 25.10)
- Mail Theft (Penal Code § 31.20)
- Sale or Purchase of Human Fetal Tissue (Penal Code § 48.03)
- Unauthorized Use of Vehicle (Penal Code § 31.07)

**Class A Misdemeanor (0-1 year imprisonment; $0-$4,000 fine)**
- Abuse of Corpse (gravesite) (Penal Code § 42.0B(a)(5))

11

- Bail Jumping from Class A or B offense) (Penal Code § 38.10(d))
- Burglary of Coin Operated Machine (Penal Code § 30.03)
- Burglary of Vehicle (Penal Code § 30.04(d)(1))
- Criminal Trespass (Penal Code § 30.0S(d)(3))
- Escape (misdemeanor arrest) (Penal Code § 38.06(b))
- Evading (no vehicle or injury) ((Penal Code § 38.04(b))
- Failure to Comply with Immigration Detainer Request (Penal Code § 39.07)
- Failure to Identify (false information; fugitive) (Penal Code § 38.02(b), (d)(2))
- Failure to Report Felony (Penal Code § 38.171]
- False Alarm/Report (Penal Code § 42.06(b))
- False Caller ID Display (Penal Code § 33A.051)
- Forgery (Penal Code § 32.21(c))
- Gambling Promotion (Penal Code § 47.03)
- Interference with Emergency Request (Penal Code § 42.062(c))
- Interference w/Radio Frequency (Penal Code § 38.152(b))
- Mail Theft (Penal Code § 31.20)
- Online Impersonation (spoofing) (Penal Code § 33.07(b), (c))
- Operation of a Stash House (Penal Code § 20.07)
- Perjury (Penal Code § 37.02)
- Poss./Manuf. Criminal Inst. for Retail Theft (Penal Code § 31.15)
- Resisting Arrest (Penal Code § 38.03(c))
- Sale or Purchase of Adult Stem Cells (Penal Code § 48.03)
- Sexting (Penal Code § 43.261(b), (c)(2), (d)(2))
- Stealing/Receiving Stolen Check (Penal Code § 32.24)
- Tampering with Evidence (failure to report a corpse) (Penal Code § 37.09(c), (d)(2))
- Unauthorized Transfer of Financial Information (Penal Code § 31.17(b)(2), (c))
- Violation of Court Order/Bond (Penal Code § 25.07(g))
- Violation of Court Order/Bond (hate crime) (Penal Code § 25.071)

**Class B Misdemeanor (0 to 180 days imprisonment; $0-$2,000 fine)**
- Contraband in Correctional Facility (by an employee or volunteer) (Penal Code § 38.114(c))
- Criminal Trespass (not habitation) (Penal Code § 30.05(d)(1))
- Disorderly Conduct (Penal Code § 42.01(a)(7)·(8}, (d))
- Failure to Identify (Penal Code § 38.02(d)(l))
- False Report to Peace Officer (Penal Code § 37.08)
- Fraudulent Degree (Penal Code § 32.52)
- Fraudulent Military Record (Penal Code § 32.54)
- Issuance of Bad Check or Sight Order (Penal Code § 32.41(f))
- Misrepresenting Child as Family Member at Port of Entry (Penal Code § 37.082)
- Obstructing a Highway (Penal Code § 42.03)
- Silent or Abusive Calls to 9-1-1Service (Penal Code § 42.061)
- Unauthorized Acquisition of Financial Information (Penal Code § 31.17(b)(l), (c))

**Class C Misdemeanor (0 to 180 days of deferred adjudication; $0-$500)**
- Bail Jumping (Penal Code § 38.10(e))
- Contraband in Correctional Facility ((Penal Code § 38.114(c))
- Criminal Trespass (Penal Code § 30.05(d)(2))

12

- Disorderly Conduct (Penal Code § 42.01(a)(1)-(6), (9)-(11), (d))
- Failure to Identify (Penal Code § 38.02(a), (c)(1))
- False Report of Missing Child or Person (Penal Code § 37.081)
- Gambling (Penal Code § 47.02)
- Issuance of Bad Check or Sight Order (Penal Code § 32.41(f))
- Open Container (Penal Code § 49.031)
- Preventing Execution of Civil Process (Penal Code § 38.16)
- Public Intoxication (Penal Code § 49.02)
- Smoking tobacco or cigarette (Penal Code § 48.01)

**Other Crimes Whose Classification depends on Value**
- Abuse of Official Capacity (Penal Code § 39.02)
- Breach of Computer Security (Penal Code § 33.02(b-2))
- Cargo Theft (Penal Code § 31.18)
- Credit Card Record Laundering (Penal Code § 32.35)
- Criminal Mischief (Penal Code § 28.03)
- Electronic Data Tampering (Penal Code § 33.023)
- False Statement to Obtain Property/Credit (Penal Code § 32.32)
- Forgery (Penal Code § 32.21(e-1))
- Fraudulent Destruction of Writing (Penal Code § 32 47(e))
- Fraudulent Transfer of Motor Vehicle (Penal Code § 32.34)
- Graffiti (Penal Code § 28.08)
- Health Care Fraud (Penal Code § 35A.02]
- Interference with Railroad Property (Penal Code § 28.07)
- Misapplication of Fiduciary Property (Penal Code § 32.45)
- Money laundering (Penal Code § 34.02)
- Organized Retail Theft (Penal Code § 31.16)
- Securing Execution of Document by Deception (Penal Code § 32.46)
- Theft (Penal Code § 31.03)
- Theft of Petroleum Product (Penal Code § 31.19)
- Theft of Service (Penal Code § 31.04)
- Theft of Telecomm. Services (Penal Code § 33A.04)
- Trademark Counterfeiting (Penal Code § 32.23)
- Hindering Secured Creditors (Penal Code § 32.33)
- Illegal Recruitment of Athlete (Penal Code § 32.441)
- Insurance Fraud (Penal Code § 35.02)
- Unauthorized Use of Telecommunication Services (Penal Code § 33A.02)
- Unlawful Decryption (Penal Code § 33.024)

**Other Crimes (Whose Classification depends on Value or Amount), including all non-violent controlled substances or property offenses where a weapon was not used in the commission of the offense, including but not limited to the following:**
- Abuse of Official Capacity (Penal Code § 39.02)
- Breach of Computer Security (Penal Code § 33.02(b-2))
- Cargo Theft (Penal Code § 31.18)
- Credit Card Record Laundering (Penal Code § 32.35)
- Criminal Mischief (Penal Code § 28.03)
- Electronic Data Tampering (Penal Code § 33.023)

13

- False Statement to Obtain Property/Credit (Penal Code § 32.32)
- Forgery (Penal Code § 32.21(e-1))
- Fraudulent Destruction of Writing (Penal Code § 32 47(e))
- Fraudulent Transfer of Motor Vehicle (Penal Code § 32.34)
- Graffiti (Penal Code § 28.08)
- Health Care Fraud (Penal Code § 35A.02]
- Interference with Railroad Property (Penal Code § 28.07)
- Misapplication of Fiduciary Property (Penal Code § 32.45)
- Money laundering (Penal Code § 34.02)
- Organized Retail Theft (Penal Code § 31.16)
- Securing Execution of Document by Deception (Penal Code § 32.46)
- Theft (Penal Code § 31.03)
- Theft of Petroleum Product (Penal Code § 31.19)
- Theft of Service (Penal Code § 31.04)
- Theft of Telecomm. Services (Penal Code § 33A.04)
- Trademark Counterfeiting (Penal Code § 32.23)
- Hindering Secured Creditors (Penal Code § 32.33)
- Illegal Recruitment of Athlete (Penal Code § 32.441)
- Insurance Fraud (Penal Code § 35.02)
- Unauthorized Use of Telecommunication Services (Penal Code § 33A.02)
- Unlawful Decryption (Penal Code § 33.024)
- Delivery of a Controlled Substance
- Possession of a Controlled Substance