UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | Case No. 4:19-cv-00226 |
| *Defendants*, | § | |
| | § | |
| STATE OF TEXAS, *et al.*, | § | |
| *Intervenor-Defendants.* | § | |

---

**STATE INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION REGARDING EXECUTIVE ORDER GA 13**

---

## INTRODUCTION

Plaintiffs' demand for emergency relief moves far beyond their complaint in this matter and therefore, unsurprisingly, beyond their standing to obtain such relief, because the individual Plaintiffs have not suffered any injury from Executive Order GA 13 ("GA 13").[1]  Plaintiffs are also asking this Court to interpret a state statute that has not been determined by any Texas state court. And their fundamental premise, that there is some constitutional right to a personal bond is simply wrong as a matter of law.

Over a year ago, Plaintiffs filed this action to challenge Harris County's bail processes. Governor Abbott's recently-issued GA 13 is unrelated. Plaintiffs do not have roving authority over all aspects of the Harris County bail system and all changes in Texas bail law. And Plaintiffs have no standing to seek forward-looking relief to remedy a hypothetical future injury. *O'Shea v. Littleton*, 414 U.S. 488 (1974). Plaintiffs simply cannot enjoin an emergency order that they were never subject to in the first place.

What's more, sovereign immunity bars this Court from awarding relief against the State Intervenors. And binding Supreme Court precedent obligates this Court to abstain here because state courts have not yet had the opportunity to interpret GA 13 or to determine the scope of its application.

---

[1] As explained in the State Intervenors' response to the first emergency motion, Plaintiffs have made no effort in well over a year to certify a class. As a result, any analysis of the underlying claims must be limited to the named-Plaintiffs.

Finally, Plaintiffs will not succeed on the merits. There is simply no fundamental right to a personal bond. The State created that interest and may suspend it—or even take it away altogether. And the Governor's police powers—which are at a zenith during a public health crisis and include the ability to control the movement of citizens and suspend statutes—easily defeat Plaintiffs' constitutional claims.[2]

For all these reasons, this Court should deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction Regarding Executive Order GA 13.

BACKGROUND

## I.  Governor Abbott issues GA 13.

As the Chief Executive Officer of the State of Texas, Governor Abbott is charged with "meeting the dangers to the state and people presented by disasters." TEX. CONST. ART. IV, § 1; TEX. GOV. CODE § 418.011. To meet this weighty task, the Legislature provided sitting governors with extremely broad powers. *See* TEX. GOV. CODE. § 418.001, *et seq*. These powers include the ability to suspend statutes; issue executive orders carrying the force and effect of law; control ingress, egress, movement of persons, and occupancy of premises; and even to take public and private property. *Id*. at §§ 418.012; 418.016–418.018.

On March 29, 2020, Governor Abbott used his lawfully-vested authority and issued GA 13. Ex. 1. This emergency order's purpose was to protect the public and maintain the rule of law during the unprecedented threat posed by COVID-19. *Id*.

---

[2] The State Intervenors' response (ECF No. 54) to Plaintiffs' last motion for emergency relief (ECF No. 32) applies with equal force to the instant motion.

This order prevents magistrates from releasing, on solely their own recognizance, large numbers of arrestees charged with violent crimes or who had a prior conviction for such offenses. *Id*. Specifically, GA 13 suspends Texas Code of Criminal Procedure Art. 17.03's personal bond provisions, and all other related statutes, in order to:

> preclude the release on personal bond of any person previously convicted of a crime that involves physical violence or the threat of physical violence, or of any person currently arrested for such a crime that is supported by probable cause.

*Id*. GA 13's effect is that personal bonds are temporarily unavailable for violent arrestees unless, after an individualized assessment, a judge determines that release is justified for a health or medical reason. *Id*. GA 13 does not preclude judges from conducting individualized assessments of arrestees using the specific factors provided in article 17.15 of the Texas Code of Criminal Procedure. *See generally id*.

Governor Abbott issued GA 13 to respond to a real and meaningful COVID-19-related threat to Texans. *See id*. Many advocates appear to believe that no arrested defendants—even the most potentially dangerous persons charged with violent felonies—should be placed in jail during the COVID-19 crisis. As a result of the concerns regarding COVID-19 spreading in jails, the personal bond process was being misused to release potentially dangerous individuals back into the public. In some instances, this has continued to occur even after the issuance of GA 13.

A stark example is Arrestee A[3] whom was arrested for Assault Family Violence Strangulation. *See* Ex. 2. The State alleged that Arrestee A assaulted his victim on

---

[3] Where possible pseudonyms will be used for pretrial arrestees that are not already publicly known or parties to this action. State Intervenors have attempted to redact non-essential information

March 26, which caused her to flee their residence. *Id*. When the victim returned on March 28, he started a verbal altercation with her and damaged some home valuables. *Id*. He then became more aggressive and pushed her. The victim tried to leave, and Arrestee A grabbed her by the neck. *Id*. When the victim told him to let her go, Arrestee A placed her in a choke hold and she began to gasp for air, losing her breath. *Id*. This assault was observed by a witness on FaceTime. *Id*. Arrestee A was released on personal bond over the prosecutor's objection. Ex. 3.

Another example is Arrestee B. Officers observed Arrestee B sitting in the middle of the street. Ex. 4. They determined that Arrestee B was under the influence of PCP and attempted to arrest him for impeding the use of a roadway. *Id*. He resisted attempts to lift him from the street and place him in handcuffs. *Id*. When police officers attempted to place him in handcuffs, he turned his head and spit into an officer's face. *Id*. Despite having many prior convictions, including aggravated sexual assault of a child and assault of a family member, Arrestee B was also released on a personal bond over the State's objection. Ex. 5; Ex. 6; Ex. 7.

Violent felons caught with firearms have also been receiving personal bonds without any stated health or medical reason. On December 2, 2019, Humble Police Department officers were following Arrestee C's car when he stopped, turned on his emergency flashers, and exited the vehicle to talk to the officers. Ex. 8. The officers determined that Arrestee C was intoxicated and detained him for driving while intoxicated. *Id*. During an inventory of the car, they found a loaded pistol in a console

---

from exhibits that could lead to identification. Unredacted versions will be made available upon request from the Court or the other parties.

compartment on the driver's side floorboard. *Id*. Arrestee C has numerous prior convictions, including making a terroristic threat and two assaults of a family member. Ex. 9. Despite the seriousness of his criminal history and his current charges (Felon in Possession of a Weapon and felony Driving While Intoxicated), Arrestee C was also granted a personal bond—again without input from the prosecutor. Ex. 10.

Judges are considered "highly visible symbols of government under the rule of law." *Johnson* v. *Johnson*, 948 S.W.2d 835, 840 (Tex. App.—San Antonio1997) (citing Tex. Code Jud. Conduct, *Preamble* (1993)). The possible abuse of personal bonds to release potentially violent felons, especially without any individualized inquiry, could have dangerous ramifications in the months ahead as the State struggles with the unprecedented danger posed by COVID-19. Governor Abbott, using his lawfully-vested authority, issued GA 13 to respond to this real and meaningful threat to the public.

## II. Plaintiffs were never subject to GA 13 and each received all the process required by *ODonnell*.

During the April 3, 2020 telephone conference, Plaintiffs' counsel were unable to provide basic information about the Plaintiffs, including whether they were still in custody, the nature of their crimes, and whether they were ever subject to GA 13. To clarify the matter, the State Intervenors provide the following information about the Plaintiffs.

### A.      Plaintiff Joseph Ortuno

Plaintiff Ortuno is currently charged with aggravated assault with a deadly weapon and selling ecstasy, which is categorized as a Penalty Group 2 controlled substance. TEX. PENAL CODE § 481.103(a)(1). He has been out of jail for over a year.

On November 25, 2018, a complaining witness was doing a drug deal with Ortuno when they decided to discontinue the deal. Ex. 11. Ortuno (later identified by a photograph) shot at the complainant's departing car, damaging the complainant's front and rear windshields. *Id*. Minutes later, Ortuno and others drove by the complainant's home and shot at the house several times before speeding off. *Id*.

On January 17, 2019, Houston Police spotted Ortuno and two other men sprinting to a car in an area known for narcotics and gang activity. *Id*. The car sped away and entered the freeway without signaling. *Id*. During the high-speed pursuit that followed, two guns were thrown out of the car which were later recovered. *Id*. After police apprehended Ortuno, they found Xanax, ecstasy, and marijuana in his backpack, individually wrapped in bags for easy distribution. *Id*.

For his aggravated assault and drug dealing, Ortuno was charged by felony complaint. Ex. 12. His original recommended bail amount was $888,888. Ex. 13. After an individualized assessment, the hearing officer deviated from the bail schedule and set Ortuno's bail at $30,000. *Id*. The bail order includes a written reason for not allowing a personal bond. *Id*. And the order shows that Ortuno was represented by counsel, completed a financial affidavit, and had that affidavit considered in lowering his bail. *Id*.

On April 4, 2019, Ortuno made his $30,000 bail and has been free since. Ex 14. GA 13—issued nearly a year after Ortuno made bail—never prevented Ortuno from obtaining pretrial release.

### B.    Plaintiff Dwight Russell

Plaintiff Russell was charged with felony DWI; went through a bail process compliant with *ODonnell*; and has already pleaded guilty and been released.

On January 19, 2019, Department of Public Safety officers conducted a traffic stop on Russell. Ex. 15. There was an open beer in the car. *Id*. Russell failed field sobriety tests. *Id*. Russell was charged by felony complaint on January 19, 2019 for a third or subsequent DWI offense. Ex. 16.

 After a hearing, his bond was set at $25,000. Ex. 17. His bond order shows that he had an individualized assessment, he was represented by counsel, his financial affidavit was considered, and the hearing officer noted the reason why a personal bond was denied. *Id*.

Russell entered an agreed plea of guilty to misdemeanor DWI and was sentenced to a one-year confinement in the Harris County Jail. Ex. 18. Russell was released from jail approximately ten months before GA 13 was issued.

### C.    Plaintiff Johnnie Pierson

Plaintiff Pierson appears to be currently in jail. But this is only because he keeps getting arrested while out on bond and because his probation is in the process of being revoked.

Pierson has been arrested numerous times since January 18, 2019 for selling crack cocaine. Ex. 19. In each instance he received all the process required under

*ODonnell*. Ex. 20.  And twice Pierson was able to post a surety bond and secure his release. Ex. 21.

On November 21, 2019, he was placed on four years deferred adjudication probation. Ex. 22. However, on March 5, 2020, a motion revoking Pierson's probation was filed. *Id*. On March 9, 2020, bond was set on his case at $25,000. Ex. 23.

GA 13 is not preventing Pierson from obtaining unsecured pretrial release. Instead, Pierson remains in jail because he has repeatedly violated the conditions of his bond and probation. And based on his charges and criminal history GA 13 is inapplicable.

ARGUMENT

## I.   The Court lacks jurisdiction over this motion because it does not relate to the underlying complaint.

Plaintiffs' instant motion for emergency relief fails at the outset. A request for preliminary injunctive relief must grow out of the underlying complaint that created the action. Federal courts have jurisdiction to hear "Cases" (or "Controversies"), U.S. Const. art. III, § 2, cl. 1, and a party commences a case "by filing a complaint," Fed. R. Civ. P. 3. If a party in an existing case seeks relief unrelated to the complaint, then it effectively asks the court to entertain a case that has not commenced. Because Plaintiffs' "motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion." *Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002).

The Supreme Court applied this rule in *De Beers Consolidated Mines v. United States*, 325 U.S. 212 (1945). There the United States sued various companies and

individuals for alleged violations of federal antitrust laws and sought to enjoin them from engaging in anticompetitive activity in the future. *Id.* at 215, 219. At the same time, the United States also filed a motion for a preliminary injunction asking the district court to enjoin the defendants from transferring any property outside of the United States. *Id.* That would ensure defendants had assets available to satisfy any judgment the court might later issue on the merits. *Id.* The Supreme Court held the United States had no power to seek—and the district court had no power to award—the preliminary injunction because "[i]t is not an injunction *in the cause*, and it deals with a matter lying wholly outside the issues in the suit." *Id.* at 220 (emphasis added). *DeBeers* is not limited to the antitrust context. "This suit, as we have said, *is not to be distinguished from any other suit in equity.*" *Id.* at 222 (emphasis added). Federal courts across the Country consistently apply this rule in cases that (like this one) involve underlying claims brought under 42 U.S.C. § 1983.[4]

One simple question demonstrates why this motion fails: If Plaintiffs won the underlying suit based on the pleadings in their complaint, would they necessarily have won the relief they seek in this motion? *Pac. Radiation Oncology, LLC*, 810 F.3d 631, 636-37 (9th Cir. 2015). The answer is no. In their complaint, Plaintiffs sought a declaration and an injunction against Harris County and its Sheriff based on

---

[4] *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). They apply the same rule in other contexts as well. *See, e.g., Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 635-36 (9th Cir. 2015); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 & n.2 (4th Cir. 1997); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (per curiam); *Stewart v. INS*, 762 F.2d 193, 198-99 (2d Cir. 1985); *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W.Va. 2014); *Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 290 (D.D.C. 2014).

allegedly defective bail procedures. ECF No. 1 at 42. That complaint nowhere requested an injunction against the enforcement of the Governor's executive order. Nor could it have, as GA 13 did not yet exist. Plaintiffs first requested this distinct relief in the instant motion more than one year after filing their underlying complaint. ECF No. 53 at 9; *Colvin*, 605 F.3d at 287 (motion filed two months after complaint was unrelated). So even if Plaintiffs succeed in obtaining a declaration that the County defendants are violating the Constitution and an injunction enjoining them from doing so, those remedies would say *nothing* about GA 13. Whether GA 13 is constitutional is "unrelated to any supposed violation of" the Constitution by Harris County. *DeBeers*, 325 U.S. at 222.

It does not matter that the complaint and this motion, in a broad sense, involve the same general issue of bail. *Colvin v. Caruso* is a good example. Colvin, an inmate, sued prison officials for interruptions, mistakes, and other deficiencies in the administration of the prison's kosher food program. 605 F.3d at 287-88. After Colvin filed his complaint, prison officials removed him from the kosher food program, and Colvin sought a preliminary injunction ordering officials to reinstate him. *Id.* at 299. Both pleadings sought relief related to the prison's kosher food program. But the Sixth Circuit nevertheless concluded Colvin's motion "was improper because he did not bring his wrongful-removal claim in his original complaint." *Id.* at 300.

Finally, granting the preliminary injunction here in no way "enable[s] or aid[s]" this Court in giving the relief Plaintiffs ultimately request in the underlying complaint. *United States ex rel. Rahman v. Oncology Assoc.*, 198 F.3d 489, 498 (4th

Cir. 1999). In fact, it would do the opposite. Suppose the Court declines to enjoin GA 13. In that scenario, some violent felony arrestees would continue being held until this Court renders judgment on the merits. If the Court ordered their release at final judgment, they could be released at that time. But suppose Court enjoins GA 13 until it is able to render a judgment. Those violent felony arrestees may be released before this Court is ever able to reach a decision. Oddly, Plaintiffs' request *inhibits* this Court's ability to render an ultimate judgment in the underlying action.

The mere fact that Plaintiffs filed a federal lawsuit does not entitle them to enjoin an Executive Order they were never subjected to. Plaintiffs may respond that this Court's equitable powers are expansive enough to evade these legal niceties, but the Supreme Court has rejected attempts to circumvent the limits of equity jurisdiction in the name of whatever is most "practical or efficient." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321 (1999). "This expansive view of equity must be rejected." *Id.*

## II.  Even if this motion relates to the original Complaint, this court lacks jurisdiction over the entire action.

Regardless of the above, Plaintiffs' motion must fail because, as the State Intervenors previously argued, this Court lacks subject-matter jurisdiction over the case. The Court should therefore dismiss the suit. Fed. R. Civ. P. 12(b)(1).

This Court lacks jurisdiction for two independent reasons. First, insofar as Plaintiffs seek relief from their past bail hearings through a federal court order changing their existing bail determinations, the *Rooker-Feldman* doctrine bars suit. Lower federal courts are powerless to revisit (or order state courts to revisit)

11

individual state-court decisions setting bail. Second, while *Rooker-Feldman* does not prevent a litigant from challenging a state policy or practice as opposed to a particular state-court decision, Plaintiffs' challenge to Harris County's bail practices is based on a future injury that is pure "speculation and conjecture." *O'Shea*, 414 U.S. at 497. Plaintiffs therefore lack an Article III injury in fact. In a putative class action like this one, "federal courts lack jurisdiction if no named Plaintiff has standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).

The State Intervenors' arguments on these points, *see* ECF No. 54 at 19–28, continue to apply here because the original complaint is the benchmark against which this Court assesses subject-matter jurisdiction. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 574 (2004). And this Court "has a duty of making further inquiry as to its own jurisdiction." *In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019) (per curiam). The Fifth Circuit recently found that a failure to observe that duty presented extraordinary circumstances justifying a writ of mandamus ordering the district court to address "obvious" jurisdictional defects. *Id.* at 160, 170.

The defects are obvious here too. State courts have already made bail determinations for Plaintiffs, remanded them to custody, and released them. ECF No. 1 at 11-13; *see* TEX. CODE CRIM. PROC. ARTS. 16.20(6), 17.25, 17.27. Insofar as Plaintiffs ask this Court to order the state courts to revisit those determinations, they ask this "Court to overturn the injurious state-court judgment" rendered as to them. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). In other words, this Court "is in essence being called upon to review the state court decision[s]" setting Plaintiffs' bail. *D.C. Court of*

*Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983). Put simply, the Court cannot order the release of (or reassessment of bail for) a felony arrestee who has already had bail set and been remanded to custody without violating the *Rooker-Feldman* doctrine. *See, e.g., Ingram v. Fish*, No. 09-204, 2010 WL 3075747, at *4 (W.D. Pa. Aug. 5, 2010); *Brown v. City of New York*, 210 F. Supp. 2d 235, 240 (S.D.N.Y. 1999); *Mounkes v. Conklin*, 922 F. Supp. 1501, 1508-10 (D. Kan. 1996).

Even Plaintiffs seem to recognize this obvious *Rooker-Feldman* problem. Presumably that is why they walked back from any backward-looking theory of relief during the Court's April 3 teleconference. For the very first time, Plaintiffs' counsel attempted to disclaim any interest in having Plaintiffs (or any putative class member for that matter) released from custody or having their existing bail status redetermined. Plaintiffs, he said, seek only constitutionally adequate bail hearings going forward. Yet, the April 3 telephonic hearing focused on release or reassessment for individuals who have *already been subjected* to the challenged procedures: How many felony arrestees have already been released? How many will be released in the short term? Who is eligible for release under GA 13?

Plaintiffs admittedly seek injunctive relief to redress a *future* injury. That injury, however, is not "certainly impending." *Ctr. for Biol. Diversity v. U.S. Envt'l Prot. Servs.*, 937 F.3d 533, 537 (5th Cir. 2019). Because, each Plaintiff had already been subjected to the Harris County bail procedures they challenge here when they filed their complaint, and because any backward-looking relief ordering a state court reassess an existing bail decision is out of bounds, Plaintiffs could be injured by the

County's bail procedures only the *next time* they are arrested. In other words, Plaintiffs' future injury depends on this Court speculating that at some future time (1) they will commit criminal acts (2) in Harris County (3) be arrested (4) have secured bail set (5) pursuant to an unlawful policy (6) at amounts they cannot pay (7) because they remain too poor to pay a bondsman. The Supreme Court rejected that theory of injury in *O'Shea*, 414 U.S. at 496-98.

At the April 3 teleconference, Plaintiffs' counsel revealed that he was unsure about the named Plaintiffs' current custodial status.[5] But to be clear, whether the named Plaintiffs are currently in custody is irrelevant to the standing inquiry. At the time Plaintiffs filed their complaint, any challenge to Harris County's procedures was already premised on a *future* injury. That is why this Court's suggestion that the capable-of-repetition-yet-evading-review exception to *mootness* could save Plaintiffs' case is wrong. The Court seems to suggest that Plaintiffs' subsequent release did not strip the district court of jurisdiction because they were in custody when their original complaint was filed. The crucial point for standing purposes, however, is that Plaintiffs had already been subjected to the bail procedures they challenge at the time they filed this lawsuit. They were never subject to GA 13.

The Fifth Circuit made a similar point several months ago in *Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019). The plaintiffs there sought injunctive and declaratory relief requiring Texas to change its voter registration system. Based on the existing system, plaintiffs were unable to vote in the 2014 elections. *Id.* at 719.

---

[5] Nor did he know the details of their current charges or prior convictions, threshold issues that determine whether they are even covered by GA 13 at all.

But they had successfully registered to vote by the time they filed suit. *Id.* The policy they challenged therefore could affect them only in a future election if they moved again and had to re-register. *Id.* at 721-22. Plaintiffs nevertheless argued "they have standing because their claims are capable of repetition, yet evading review." *Id.* at 724. The Fifth Circuit disagreed: Because the plaintiffs lacked standing at the time their complaint was filed, the mootness exception "is not implicated." *Id.* at 725.

There is nothing novel about *Stringer's* holding. The Supreme Court said the same thing decades ago. Standing and mootness are two entirely different things. Mootness permits an exception for injuries capable of repetition yet evading review. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). But "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). "That a suit may be a class action . . . adds nothing to the question of standing." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

On the day they filed their complaint, all three named Plaintiffs had already been through bail proceedings, had bail set by state courts, and been remanded to custody. *See* ECF No. 1 at 11-13 (describing past bail proceedings for Plaintiffs Russel, Pierson, and Ortuno); *cf. supra* II A-C (detailing that Plaintiffs received process meeting the minimums of *ODonnell*). Because Harris County's (allegedly) unlawful bail policies could affect them only at some future time, Plaintiffs lacked

15

Article III standing to seek injunctive relief reforming those procedures going forward *on day one.*

## III. Sovereign immunity bars Plaintiffs' requested relief.

In their motion, Plaintiffs ask this Court to "enjoin[] Defendants from enforcing" GA 13. ECF No. 53 at 1; *see also id.* at 9 ("Plaintiffs move this Court for a temporary restraining order prohibiting enforcement of the Executive Order as applied to Plaintiffs."). But they are not entirely clear about *whom* they wish this Court to enjoin.

To the extent Plaintiffs seek to enjoin the State Intervenors from enforcing GA 13 their efforts run headfirst into sovereign immunity. The State retains its immunity from suit even after intervening because it immediately asserted that this Court lacks jurisdiction. *See, e.g., Calif. v. Deep Sea Research, Inc.*, 523 U.S. 491, 496-97 (1998); *Mo. v. Fiske*, 290 U.S. 18, 24-25 (1933); *cf. Okla. ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1215-16 (10th Cir. 2008) (citing 28 U.S.C. § 2403 and FED. R. CIV. P. 5.1). The Governor and the Attorney General are likewise immune from suit because they appear in their capacities as state officials.[6] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

---

[6] Plaintiffs may argue that sovereign immunity has been waived because of the intervention. This argument misses that sovereign immunity consists of two distinct immunities: immunity from suit and immunity from liability. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005), reh'g denied with opinion 454 F.3d 503 (2006), cert. denied 550 U.S. 917 (2007); *Kelley v. Papanos*, No. H-11-0626, 2012 U.S. Dist. LEXIS 8071, at *11-12 (S.D. Tex. Jan. 24, 2012) (holding that the state may continue to "assert its state sovereign immunity as defined by Texas law as a defense" to the claims removed to federal court); *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 737 (W.D. Tex. 2011) ("The Fifth Circuit has held that there is a distinction between immunity from suit in federal court, which a state may waive by removal to federal court, and immunity from liability"); *Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12CV229TSL-MTP, 2013 U.S. Dist. LEXIS 9600, at *11–14 (S.D. Miss. Jan. 24, 2013)(same); *Pathria v. Univ. of Tex. Health Sci. Ctr.*, No. SA-12-CV-388, 2013 U.S. Dist. LEXIS 10795, at *3–4 (W.D. Tex. Jan. 23, 2013); *In re Supreme Beef Processors, Inc.*, 468

The Supreme Court has carved out a narrow exception to sovereign immunity where "a federal court commands a state official to do nothing more than refrain from violating federal law." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). That means the officer "must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 157 (1908). What has come to be known as the *Ex parte Young* doctrine is therefore subject to two limits relevant here: (1) The state officer must enforce the challenged statute and (2) a court may not order that officer to take official acts.

Even when an official has authority to enforce a statute, the plaintiff seeking to invoke *Ex parte Young* must show that official "is likely to [do] so." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). Plaintiffs have not alleged that the Governor or the Attorney General can enforce GA 13—much less that they are *likely* to do so. And because Plaintiffs have not shown that either official is tasked with enforcing the executive order, this motion merely and impermissibly seeks to "mak[e] [either official] a party as a representative of the state." *Young*, 209 U.S. at 157.

Assuming the Governor and the Attorney General have the authority to enforce GA 13 and are likely to exercise it, this Court could not order either of them to affirmatively exercise official power. *Ex parte Young* is about "prevent[ing] [a state officer] from doing that which he has no legal right to do." *Id.* at 159. By acting *ultra vires*, so the theory goes, the official loses his official status with respect to that act and can be ordered to stop. *Id.* at 159–60. But ordering him to take "affirmative" action *intra vires* is premised on the idea that he retains his "official or representative

---

F.3d 248, 257–58 (5th Cir. 2006) (Higginbotham, J., concurring) (explaining Meyers). Even assuming sovereign immunity from suit has been waived, which it has not, sovereign immunity from liability is still intact and, therefore, makes Plaintiffs unlikely to succeed on the merits.

character." *Id.* at 160. Accordingly, "a suit may fail" if a party requests relief that "cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949); *see also United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 548 (10th Cir. 2001) ("Because this requested relief would require us to order federal officials to take various forms of affirmative action and affect the disposition of sovereign property, the suit does not fall within the ultra vires doctrine.").

Here, it would not be enough for this Court to order the Governor or the Attorney General to merely stop enforcing GA 13. State and local judges have an independent obligation to comply with state law, and the Governor's executive orders "have the force and effect of law." TEX. GOV'T CODE § 418.012. To afford Plaintiffs effective relief, then, this Court would need to order the officials to take some kind of "affirmative action," like ordering the Governor to withdraw the executive order. But withdrawing the executive order would have significance only as an official act. Because this Court would be ordering the Governor "to satisfy the court decree only *by acting in an official capacity*" sovereign immunity bars such relief. *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971) (emphasis added).

## IV. Federal abstention doctrines bar this Court from awarding the requested equitable relief.

Plaintiffs complain that "[t]he Order does not define or give guidance for different local officials or judges across the state to determine what categories would be encompassed by the term 'violence,' and indications are that implementation of

different views of this vague term would be chaotic and unpredictable." ECF No. 53 at 2. Throughout this Court's most recent teleconference on April 3, 2020, the parties and the Court discussed questions regarding GA 13's sweep. Does it prevent judges from conducting individualized hearings? May judges release for health-related reasons individuals who would otherwise be kept in custody? May they release others as well? Plaintiffs suggest this confusion bolsters their motion. But it is more accurate to say that a lack of clarity prevents the Court from providing relief.

It is undisputed that the instant motion seeks equitable relief. *See* ECF No. 53 at 1, 9. The "common-law background" of federal courts' equity jurisdiction, however, obligates them to abstain from awarding equitable relief in certain cases. *New Orleans Public Serv., Inc. v. New Orleans*, 491 U.S. 350, 359 (1989). Abstention remains "the exception, not the rule." *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976). But the Supreme Court has required abstention in a variety of circumstances, *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17 (1996) (collecting examples), two of which are pertinent here.

First, the Supreme Court has instructed federal courts to abstain where an antecedent question of state law would obviate the need to address a federal constitutional question, *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941), or would at least "significantly modify" the federal analysis, *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 512 (1972).

Plaintiffs here assert constitutional claims: They allege violations of the Due Process Clause (U.S. Const. amend. XIV, § 1) and Equal Protection Clause (U.S.

19

Const. amend. XIV, § 1). *See* ECF No. 53 at 1, 5. But if state law establishes that GA 13 does none of the things Plaintiffs fear—either because it prevents the creation of a state-created liberty interest or because it continues to permit release for certain violent arrestees—then this Court may not need to decide those constitutional questions at all. GA 13 clearly strips covered arrestees of their state-created liberty interest. *Infra* Part V.A. But GA 13 is one week old, and the Texas courts have yet to interpret the order's scope. *See Lake Carriers Ass'n*, 406 U.S. at 511 (Michigan law "has not been construed in any Michigan court"); *Reetz v. Bozanich*, 397 U.S. 82, 86 (1970) (Alaska constitutional provisions "have never been interpreted by an Alaska court"). GA 13's application is "uncertain." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984).

Second, the Supreme Court has instructed federal courts to observe a general "doctrine of nonintervention" in state proceedings. *See, e.g.*, *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432-35 (1982) (state bar disciplinary proceedings); *Judice v. Vail*, 430 U.S. 327, 334-35 (1977) (state contempt proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975) (state nuisance proceedings); *Younger v. Harris*, 401 U.S. 37, 54-55 (1971) (state criminal proceedings). Federal courts must abstain where (1) "an ongoing state judicial proceeding" (2) "implicate[s] important state interests" and (3) offers "adequate opportunity" to "raise constitutional challenges." *Middlesex Cty. Ethics Comm'n*, 457 U.S. at 432.

State Intervenors believe there are ongoing state court proceedings that involve the question Plaintiffs seek to press here. *See, e.g.*, *State v. Jones, Dustin* Cause No. 2285846, 2297288 (Harris County Court at Law 16). That question undoubtedly implicates important state interests. The rules governing bail are "in aid of and closely related to criminal statutes," *Huffman*, 420 U.S. at 604, and Texas has an "interest in administering [its own] criminal justice system[] free from federal interference," *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Moreover, any question regarding the Governor's power to issue GA 13 implicates the State's authority to formulate policy in the face of a pandemic ravaging the State. *Infra* Part V.C. It is difficult to imagine a greater "offense" to state authority than a federal court's interference with (1) the State's management of its own criminal justice system (2) in the midst of a public health crisis. *Huffman*, 420 U.S. at 604. This Court should abstain—even though the state court proceedings commenced after Plaintiffs filed this suit. *Hicks v. Miranda*, 422 U.S. 332, 348-49 (1975).

## V. Plaintiffs also cannot enjoin GA 13 because they have not satisfied the preliminary injunction factors.

Aside from the threshold problems discussed above, Plaintiffs are not entitled to the relief they seek for at least 3 reasons. First, Plaintiffs cannot succeed on the merits of their claims given the Fifth Circuit's decision in *ODonnell*. Second, they likewise cannot meet the significant burden needed to mount a facial challenge to GA 13. Third, Supreme Court precedent gives Governor Abbott broad power to protect Texans and, as a result, his decision to issue GA 13 is entitled to significant deference.

For these reasons plus those already set out in the response to Plaintiffs' first motion, this Court should deny the requested relief.

**A.    Plaintiffs are unlikely to succeed on their due process and equal protection claims given the Fifth Circuit's decision in *ODonnell*.**

At the outset, Plaintiffs misunderstand the preliminary injunction analysis. They argue they "are likely to succeed on the merits *of this Motion*." ECF No. 53 at 9. Accordingly, they devote most of their briefing to whether GA 13 is constitutional. *Id.* at 5-9. But that is the wrong "merits" question. The first preliminary injunction factor is concerned with the merits of *the underlying action. See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 690-91 (2008) (holding preliminary injunction analysis was concerned with "the merits of the underlying habeas petition"); *Walgreen Co. v. Hood*, 275 F.3d 475, 478 (5th Cir. 2001) (holding plaintiff "does not have a substantial likelihood of success on the merits of its underlying claim").

Plaintiffs' fixation on the entirely different question of GA 13's constitutionality only confirms that their motion seeks relief that is not related to their underlying complaint. *Supra* Part I. Because the proper question here is the same one the parties have already briefed—*i.e.*, whether Harris County's bail procedures violate the Constitution as pleaded in the complaint—the State Intervenors reincorporate by reference their earlier arguments on that question. *See* ECF No. 54 at 5-18, 40.

Even if the relevant question were whether Plaintiffs are likely to succeed on their (unpleaded) claim that GA 13 is unconstitutional, the clear answer would still be no. By temporarily suspending the operation of state statutes that authorize

unsecured pretrial release, GA 13 precludes the existence of the liberty interest that grounds Plaintiffs' due process and equal protection claims.

Notwithstanding Plaintiffs' claims to the contrary, the Fifth Circuit's decision in *ODonnell* did not recognize a substantive *federal* right to be free from wealth-based detention. *ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018) ("*ODonnell I*"). To the contrary, the Fifth Circuit recognized that "there is no such . . . fundamental substantive due process right." *ODonnell v. Goodhard*, 900 F.3d 220, 228 (5th Cir. 2018) ("*ODonnell II*"). Instead, the Fifth Circuit concluded that "Texas *state law* create[d]" the right at issue, which "weighs the detainees' interest in pretrial release and the court's interest in securing the detainee's attendance." *ODonnell I*, 892 F.3d at 158 (emphasis added). And "[h]aving found a *state-created* interest," *id.* (emphasis added), the Court considered what procedures the federal Constitution requires States to provide in order to protect that interest, *id.* at 158–59.

Because the interest at issue in that case and this one is a creature of "Texas state law," not a federal constitutional entitlement, the State may take away what it gives. And it may do so without running afoul of the U.S. Constitution.

A related example is a criminal defendant's right to appeal under state law, for which the Supreme Court has developed numerous precedents protecting the constitutional rights of indigent defendants. Like the rights asserted by Plaintiffs here, those rights arise under the Due Process and Equal Protection Clauses. *See, e.g.*, *Griffin v. Illinois*, 351 U.S. 12, 20 (1956) (barring state rule requiring indigents

to purchase a trial transcript for appeal); *Burns v. Ohio*, 360 U.S. 252, 258 (1959) (barring state rule requiring indigents to pay filing fee to docket an appeal); *Douglas v. California*, 372 U.S. 353, 357–58 (1963) (requiring State to furnish indigent defendant with appellate counsel); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (requiring appointed appellate counsel to be constitutionally effective).

But these due process and equal protection rights safeguard a *state-created* interest: For instance, criminal defendants have no federal constitutional right to appeal. *McKane v. Durston*, 153 U.S. 684, 687 (1894). A criminal defendant's right to appeal is either "a creature of a federal statute" or "of state statute[]." *United States v. Bergrin*, 885 F.3d 416, 419 (6th Cir. 2018) (Sutton, J.).

So, while an indigent criminal defendant is entitled to effective counsel on appeal, *Evitts*, 469 U.S. at 396, a State may take away the underlying right to which the federal protection attaches. In other words, Texas could eliminate altogether the right to appeal that criminal defendants currently enjoy under Texas law. If it did, that would not infringe the due process and equal protection rights indigent defendants possess when appeal *is* available. So too here. Texas may suspend (or eliminate altogether) the statutory provisions that allow arrestees to be released on unsecured bond. By doing so, it has not infringed the federal due process and equal protection rights that mandate certain procedures when that state-created right exists.

Nor can an absolute right to a personal bond be found in the Texas Constitution's "sufficient sureties" provision. This provision creates two important

rights for defendants. First is the right to have one's bail determined based on a balancing of the individual's "interest in pretrial freedom" against "the court's interest in assurance." *ODonnell I*, 892 F.3d at 158. *ODonnell I & II* found that an individualized bail hearing based on the factors enumerated inquired by TEX. CODE CRIM. PROC. ART. 17.15 satisfies this right. *See ODonnell I*, 892 F.3d at 158; *ODonnell II*, 900 F.3d at 226-27. Second is the right to be free from excessive bail or to otherwise be free from having bail imposed "as an instrument of oppression." *Ex parte Smith*, No. 09-06-104 CR, 2006 WL 1511480, at *1 (Tex. App. May 31, 2006); *see also* Tex. Const. Art. 1, § 13.

But the Texas Constitution's "sufficient sureties" provision does not imbue defendants with an absolute right to a personal bond. *ODonnell II* appeared to foreclose any such interpretation when it explained that "'sufficient sureties' is 'not purely defined by what the detainee can afford' and does not create an automatic right to pretrial release.'" *ODonnell II*, 900 F.3d at 226 (quoting *ODonnell I*, 892 F.3d at 158).

Plaintiffs overlook this fatal flaw in their motion. They make no attempt to explain how a liberty interest in personal bonds was created or where it can be found. Plaintiffs are asking this Court to be the first ever to find that the Texas Constitution *requires* personal bonds. Plaintiffs' four-page analysis vastly undersells the unprecedented nature of their request and provides no meaningful guidance on the issue. *See* ECF No. 53 at 5–9.

25

*Faulkner v. Gusman*, No. CIV.A. 13-6813, 2014 WL 1876213 (E.D. La. May 9, 2014), is instructive. In *Faulkner*, the plaintiff argued that a Louisiana statute prohibiting recognizance bonds violated, among other things, the Fourteenth Amendment's Due Process Clause. *Id.* at *1–2. The district court rejected this argument, concluding that the challenged statute "does not deprive defendants of their interest in pretrial release, because it does not require judges to set bond in any amount that is likely to prevent defendants from obtaining pretrial release." *Id.* at *3.

The court explained that Louisiana law (like Texas law) directed judges to consider specific enumerated factors, which included the defendant's ability to pay, when setting the amount of bail. *Id.* Thus, a defendant "may argue that the statutory factors favor a low or nominal money bond" and, "[i]f the judge agrees, she may set bond in an amount the defendant can satisfy, be it a hundred dollars or ten dollars or even ten cents." *Id.* In short, the difference between being released on personal recognizance and being released on a ten-cent bond did not meaningfully impact any constitutionally-protected liberty interest. *See id.* at *4 (describing the alleged deprivation as "minimal, if not non-existent"). The court further explained that the plaintiff's due process claim also could not survive a *Mathews v. Eldridge* balancing test in light of: (1) the minimal deprivation of liberty attributable to the challenged statute; (2) the minimal risk of erroneous deprivation of that interest given judges' ability to set nominal money bonds as they see fit; and (3) the "'great leeway' given to

26

governments in 'protect[ing] public health and safety.'" *Id.* at *4-6 (quoting *Bevis v. City of New Orleans*, 686 F.3d 277, 281 (5th Cir. 2012)) (alteration in original).

The *Faulkner* plaintiff, like the Plaintiffs here, tried to extract an absolute right to release on a defendant's recognizance from the Fifth Circuit's decision in *Pugh v. Rainwater*,572 F.2d 1053 (5th Cir. 1978). *Id.* at *6; ECF No. 53 at 7. The court rejected this argument, explaining that *Pugh*'s refusal "to invalidate a Florida bail rule that did not include a presumption against money bonds" was not tantamount to a holding "that state bail schemes must make personal recognizance bonds available in all categories of cases." *Id.* Likewise here, Plaintiffs cannot establish a constitutionally-protected interest in obtaining release on personal bond.

## B.   Plaintiffs fall far short of establishing a facial challenge to GA 13.

Because Plaintiffs do not (and cannot) argue that GA 13 is unconstitutional as applied to them (because they were never subject to it), their challenge amounts to a facial attack on the order. Yet facial challenges are "disfavor[ed]" and pose a "daunting burden" to the challenger. *Roy v. City of Monroe*, 950 F.3d 245, 251–52 (5th Cir. 2020) (quotations omitted). To prevail, Plaintiffs "must establish that no set of circumstances exists under which the [Order] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Plaintiffs cannot meet that high bar. For instance, various types of arrestees may be refused bail altogether under the Texas Constitution and Code of Criminal Procedure. *See, e.g.,* Tex. Const. Art. I, § 11 (carving out capital offenses); TEX. CONST. ART. I, § 11a ("Denial of Bail After Multiple Felonies"); TEX. CODE CRIM. PROC. ART.

27

17.152 ("Denial of Bail for Violation of Certain Court Orders or Conditions of Bond in a Family Violence Case"); TEX. CODE CRIM. PROC. ART. 17.153 ("Denial of Bail for Violation of Condition of Bond Where Child Alleged Victim"). The challenged portion of GA 13—which generally prohibits personal bonds for certain arrestees without health or medical reasons—has no effect on those persons that are not entitled to release on bail at any amount, let alone on a personal bond. Clearly, GA 13 is valid in those circumstances. Thus, Plaintiffs' facial challenge fails because they have not, and cannot, establish that no set of circumstances exists under which the Order would be valid.

> **C.    Supreme Court precedent gives Governor Abbott broad power to protect Texans and, as a result, his decision to issue GA 13 is entitled to significant deference.**

The State's police power to protect its citizens from the unprecedented threat posed by COVID-19 trumps the minimal theoretical deprivations at issue in Plaintiffs' instant motion. And the State's decisions on how best to protect its citizens from the unprecedented threats posed by COVID-19 are entitled to great deference.

The Supreme Court recognizes that a State "has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Mass.*, 197 U.S. 11, 27-28 (1905). In that case, the Supreme Court upheld a Massachusetts law requiring compulsory smallpox vaccinations against due process and equal protection challenges. *Id.* at 25–26, 30. The plaintiff argued mandatory vaccination infringed his liberty and was unnecessary to combat a localized smallpox outbreak. The Supreme Court disagreed: The State had concluded those measures were "necessary in order to protect the public health and secure the public safety,"

28

and federal courts could not "usurp the functions of another branch of government" by second-guessing that conclusion. *Id.* at 28. The Supreme Court further explained that the health of a State's people are "in the first instance[] for that [state] to guard and protect" and that a court should only invade this authority "when it is plainly necessary to do so in order to enforce the law." *Id.* at 38.

Three years earlier, the Supreme Court had similarly recognized States' sweeping power in the area of combatting "the spread of contagious or infectious diseases." *Compagnie Francaise de Navigation a Vapeur v. La. State Bd. of Health*, 186 U.S. 380, 378 (1902). In that case, Louisiana's Board of Health (pursuant to a statutory grant of authority) restricted travel into the State and prevented a French ship from landing. *Id.* at 384–85. A French corporation and a French citizen sued, alleging Louisiana had violated the Due Process Clause, Equal Protection Clause, Commerce Clause, and treaties with France and Italy. *Id.* at 385, 387, 393, 397. The Supreme Court rejected every challenge, noting that the States' power "to enact and enforce quarantine laws for the safety and protection of the health of their inhabitants" was "beyond question." *Id.* at 387.

Here, Chapter 418 of the Texas Government Code furnishes the sitting Governor with sweeping authority to protect the public from disasters like COVID-19, which presents an "imminent threat of widespread or severe damage, injury, or loss of life." TEX. GOV'T CODE § 418.004(1). That authority includes the power to declare a state of disaster; to use all available resources of state government and of political subdivisions that are reasonably necessary to cope with a disaster;" to control

29

ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area; and to suspend the operation of certain laws. *See id.* at §§ 418.014, 418.016(a), 418.017(a), 418.018(c).

On March 13, 2020, Governor Abbott invoked this authority and declared a state of disaster in response to the spread of COVID-19. *See* Proclamation, Office of Tex. Governor (March 13, 2020).[7] In GA 13, Governor Abbott recognized that COVID-19 "represents a public health disaster Chapter 81 of the Texas Health and Safety Code." Ex. 1. He further concluded that broad-scale release of arrestees "would not only gravely threaten public safety, but would also hinder efforts to cope with the COVID-19 disaster." *Id.* Police Chiefs from thirteen different cities agree with Governor Abbott on both scores. *See* ECF No. 54 at 2–3 n.1. To fulfill his goal of protecting Texans, Governor Abbott made personal bonds temporarily unavailable for violent arrestees unless, after an individualized assessment, a judge determines that such a bond is justified for a health or medical reason.

Plaintiffs disagree with that policy approach. The fact that they continue to press for the release of *violent* felony arrestees—the only ones affected by GA 13— underscores the State Intervenors' arguments regarding the public interest and balance of the equities. *See* ECF No. 54 at 28-34. Plaintiffs may believe that letting violent felony arrestees roam the streets during a pandemic is good for the public. But Governor Abbott—the individual actually tasked with making such

---

[7] A copy of this Proclamation is publicly available at the following location: https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf.

determinations—has a different view. And "[i]t is no part of the function of [this Court] to determine which [method] [i]s likely to be the most effective for the protection of the public against disease." *Jacobson*, 197 U.S. at 30. As a result, Governor Abbott's decision on how to protect Texans from the historic-level threat posed by COVID-19 is entitled to great deference. Over a century's-worth of binding and persuasive precedents support this conclusion.[8]

## CONCLUSION

The Court should dismiss this suit in its entirety for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). At the very least, it should deny Plaintiffs' additional request for preliminary injunctive relief.

---

[8] *See, e.g.*, *Moyer v. Peabody*, 212 U.S. 78, 85 (1909) ("When it comes to a decision by the head of the state upon a matter involving its life, the ordinary rights of individuals must yield to what he deems the necessities of the moment."); *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996) ("[G]overning authorities must be granted the proper deference and wide latitude necessary for dealing with [an] emergency . . . ."), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *United States v. Chalk*, 441 F.2d 1277, 1281 (4th Cir. 1971) (finding that judicial review of an executive's emergency measures "must be limited to a determination of whether the [executive's] actions were taken in good faith and whether there is some factual basis for his decision that the restrictions he imposed were necessary to maintain order"); *United States v. Ferguson*, No. 1:07-CR-70, 2007 WL 4146319, at *5 (E.D. Tex. Nov. 16, 2007) ("Cases have consistently held that it is a proper exercise of police power to respond to emergency situations with temporary curfews that might curtail the movement of persons who otherwise would enjoy freedom from restriction."); *Hickox* v. *Christie*, 205 F. Supp. 3d 579, 584 (D.N.J. 2016); ("The State is entitled to some latitude, however, in its prophylactic efforts to contain what is, at present, an incurable and often fatal disease."); *People ex rel. Barmore* v. *Robertson*, 302 Ill. 422, 427 (1922) ("Generally speaking, what laws or regulations are necessary to protect public health and secure public comfort is a legislative question, and appropriate measures intended and calculated to accomplish these ends are not subject to judicial review.").

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ERIC A. HUDSON
Special Counsel
Special Litigation Unit
Texas Bar No. 24059977
Southern District ID: 1000759
Eric.Hudson@oag.texas.gov
P.O. Box 12548, Capitol Station Austin,
Texas 78711-2548
(512) 936-1414 | FAX: (512) 936-0545

DARREN L. MCCARTY
Deputy Attorney General for Civil
Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Special Litigation Counsel
Attorney-in-Charge
Texas Bar No. 24077727
Southern District No. 2964087
Adam.Biggs@oag.texas.gov

MATTHEW BOHUSLAV
Assistant Attorney General
Texas Bar No. 1303218
Southern District ID: 1303218
Matthew.Bohuslav@oag.texas.gov

DOMINIQUE G. STAFFORD
Assistant Attorney General
State Bar No. 24079382
Southern District ID: 3195055
Dominique.Stafford@oag.texas.gov
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

**COUNSEL FOR THE STATE INTERVENORS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Southern District of Texas, Houston Division, on April 6, 2020 to all parties of record.

_/s/ Adam Arthur Biggs_
ADAM ARTHUR BIGGS
Special Litigation Counsel