UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:19-cv-00226 |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| *Defendants*, | § | |
| | § | |
| STATE OF TEXAS, *et al.*, | § | |
| *Intervenor-Defendants*. | § | |

---

### STATE INTERVENORS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ii

Nature and Stage of the Proceedings....................................................................... 1

Issues Presented and Standards of Review ............................................................. 2

Background ............................................................................................................... 4

    I.    An Overview of the *ODonnell* Litigation. ...................................... 4

    II.   Harris County Overhauls its Bail System to Comply with *ODonnell.* .................................................................................... 7

    III.  Plaintiffs Received all Bail Process Required by *ODonnell.* ....... 12

    IV.  An Overview of Plaintiffs' Lawsuit. ............................................ 16

Argument ............................................................................................................... 17

    I.    *ODonnell* Forecloses Plaintiffs' Substantive Due Process Claim. ............. 17

    II.   Plaintiffs' Procedural Due Process and Equal Protection Claims Fail Because They Received all Process Required by *ODonnell*................. 20

        A.    Plaintiffs' Claims are Nonjusticiable. ............................. 20

        B.    Plaintiffs' Procedural Due Process and Equal Protection Claims are Inadequately Pled. ............................................................. 21

    III.  Plaintiffs' References to COVID-19 and GA-13 do Not Create Legally Viable Claims.................................................. 23

    IV.  Plaintiffs' Claims Against Sheriff Gonzalez are Barred by *ODonnell.* ................................................................... 25

Conclusion............................................................................................................. 25

Certificate of Service............................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

*Anderson* v. *Valdez*,
   845 F.3d 580 (5th Cir. 2016) ................................................................... 3

*Arnold* v. *U.S. Dep't of Interior*,
   213 F.3d 193 (5th Cir. 2000) ................................................................. 18

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 3

*Barrera-Montenegro* v. *U.S. & Drug Enf't Admin.*,
   74 F.3d 657 (5th Cir. 1996) ................................................................... 3

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ................................................................................ 3

*Booth* v. *Galveston Cty.*,
   No. 3:18-CV-00104, 2019 WL 4305457 (S.D. Tex. Sep. 11, 2019) ........................ 19

*Brown* v. *Plata*,
   563 U.S. 493 (2011) .............................................................................. 24

*Cinel* v. *Connick*,
   15 F.3d 1338 (5th Cir. 1994) ................................................................. 4

*Collins* v. *City of Harker Heights*,
   503 U.S. 115 (1992) .............................................................................. 19

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................. 4

*Conn* v. *Gabbert*,
   526 U.S. 286 (1999) .............................................................................. 19

*County of Sacramento* v. *Lewis*,
   523 U.S. 833 (1998) .............................................................................. 19

*DaimlerChrysler Corp.* v. *Cuno*,
   547 U. S. 332 (2006) ............................................................................ 20

*Daves* v. *Dallas Cty., Tex.*,
   341 F. Supp. 3d 688 (N.D. Tex. 2018) ............................................... 19, 25

*Dillon* v. *Rogers*,
   596 F.3d 260 (5th Cir. 2010) ................................................................. 24

*Doe* v. *Tangipahoa Par. Sch. Bd.*,
   494 F.3d 494 (5th Cir. 2007) ........................................................... 20, 21

*Dorsey* v. *Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ................................................................. 4

*Edwards* v. *Cofield*,
    No. 3:17-CV-321-WKW, 2018 WL 4101511 (M.D. Ala. Aug. 28, 2018) ............... 19

*Ex parte Anderer*,
    61 S.W.3d 398 (Tex. Crim. App. 2001) ................................................... 22

*Gonzalez* v. *Seal*,
    702 F.3d 785 (5th Cir. 2012) ............................................................ 24

*Graham* v. *Connor*,
    490 U.S. 386 (1989) ....................................................................... 19

*In re Abbott*,
    954 F.3d 772 (5th Cir. 2020) ............................................................ 24

*Jacobson* v. *Commonwealth of Massachusetts*, 1
    97 U.S. 11 (1905) ......................................................................... 24

*Little* v. *Frederick*,
    No. 6:17-0724, 2020 U.S. Dist. LEXIS 21949 (W.D. La. Feb. 7, 2020) ................ 19

*Lowrey* v. *Tex. A & M Univ. Sys.*,
    117 F.3d 242 (5th Cir. 1997) ............................................................ 18

*Lujan* v. *Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................... 21

*Md. Manor Assocs.* v. *City of Houston*,
    816 F. Supp. 2d 394 (S.D. Tex. 2011) ................................................... 4

*MDPhysicians & Assoc., Inc.* v. *State Bd. of In*s.,
    957 F.2d 178 (5th Cir. 1992) ............................................................ 3

*Norris* v. *Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) ............................................................ 4

*Odonnell* v. *Goodhart*,
    900 F.3d 220 (5th Cir. 2018) ...................................................... 6, 18, 22

*ODonnell* v. *Harris County*,
    251 F. Supp. 3d 1052 (S.D. Tex. 2017) .......................................... 4, 5, 7

*ODonnell* v. *Harris County*,
    892 F.3d 147 (5th Cir. 2018) ................................................. 5, 18, 21, 25

*ODonnell* v. *Harris Cty., Tex.*,
    No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ................................ 7

*ODonnell* v. *Salgado*,
    913 F.3d 479 (5th Cir. 2019) ............................................................ 6

*Palacios* v. *Dep't of Homeland Sec.*,
    434 F. Supp. 3d 500 (S.D. Tex. 2020) ................................................... 4

*Polar Pro Filters Inc.* v. *FrogSlayer, LLC,*
  No. CV H-19-1706, 2020 WL 1987432 (S.D. Tex. Apr. 27, 2020) ............................ 4

*Portuondo* v. *Agard,*
  529 U.S. 61 (2000) ................................................................................... 19

*Pugh* v. *Rainwater,*
  572 F.2d 1053 (5th Cir. 1978) ..................................................................... 22

*Rocky* v. *King,*
  900 F.2d 864 (5th Cir. 1990) ....................................................................... 20

*Russell* v. *Harris County,*
  2020 --- F. Supp. ----, 2020 WL 1866835 (S.D. Tex. Apr. 14, 2020) ................. 6, 18

*S. Bay United Pentecostal Church* v. *Newsom,*
  140 S. Ct. 1613 (2020) ............................................................................... 24

*Sample* v. *Morrison,*
  406 F.3d 310 (5th Cir. 2005) ........................................................................ 3

*Schilb* v. *Kuebel,*
  404 U.S. 357 (1971) ................................................................................... 23

*Stack* v. *Boyle,*
  342 U.S. 1 (1951) ....................................................................................... 23

*Stop the Beach Renourishment, Inc.* v. *Fla. Dep't of Envtl. Prot.,*
  560 U.S. 702 (2010) ................................................................................... 19

*Teague* v. *City of Flower Mound,*
  179 F.3d 377 (5th Cir. 1999) ....................................................................... 18

*Technical Automation Servs. Corp.* v. *Liberty Surplus Ins. Corp.,*
  673 F.3d 399 (5th Cir. 2012) ....................................................................... 18

*Town of Chester* v. *Laroe Estates, Inc.,*
  137 S. Ct. 1645 (2017) ............................................................................... 21

*United States Parole Comm'n* v. *Geraghty,*
  445 U.S. 388 (1980) ................................................................................... 20

*United States* v. *Dwinells,*
   508 F.3d 63 (1st Cir. 2007) ........................................................................... 2

*United States* v. *Lanier,*
  520 U.S. 259 (1997) ................................................................................... 19

*Valentine* v. *Collier,*
  956 F.3d 797 (5th Cir. 2020) .................................................................. 24, 25

*Warth* v. *Seldin,*
  422 U.S. 490 (1975). .................................................................................. 20

iv

**Statutes**

18 U.S.C. § 3626(a)(3) ............................................................................... 24

42 U.S.C. § 1983 .......................................................................................... 5

Tex. Const. art. I, Sec. 11 ................................................................... 13, 23

Tex. Crim. Proc. art. 11.24 ...................................................................... 11

U.S. Const. art. III, § 2 ............................................................................. 20

U.S. Const., amend. VIII ......................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ......................................................................... 3, 23

## NATURE AND STAGE OF THE PROCEEDINGS

This case falls squarely within the Fifth Circuit's *ODonnell* decisions. These precedents establish the bail process required by the Fourteenth Amendment. Harris County adopted a version of the bail system outlined in *ODonnell's* model injunction and implemented additional protections for all arrestees. Plaintiffs received all bail process required by *ODonnell*. Plaintiffs never actually allege otherwise. Nor could they, as this fact is established by video recordings of the bail proceedings in question and other publicly available records. Plaintiffs' Fourteenth Amendment claims are thus barred by binding precedent. Plaintiffs are also trying to create a substantive due process right to affordable bail—which they smuggle in through allegations that Defendants were constitutionally required to make strict scrutiny-level findings on what an arrestee can afford before imposing bail. This too is barred by *ODonnell*, which found that there is no "fundamental substantive due process right to be free from any form of wealth-based detention."

During this suit, Plaintiffs tacked on allegations about COVID-19 and the related Executive Order GA-13, which limited the use of personal bonds for violent arrestees. Plaintiffs assert no distinct claims related to these allegations. Indeed, Plaintiffs' claims have not substantively changed since their original filing in January 2019—which was well over a year before COVID-19 was unfortunately introduced into our everyday lives. Looking back further, Plaintiffs largely fixate on infirmities in Harris County's bail system from 2016, which is when their counsel filed the *ODonnell* lawsuit. But Harris County significantly changed its bail systems since then; a fact which Plaintiffs ignore and which is ultimately fatal to their claims.

This case is not about what bail process is constitutionally required. *ODonnell* established the constitutional floor and, again, Harris County complied with *ODonnell's* requirement. Plaintiffs, and some recently "enlightened" Defendants, think that eliminating the "barbaric" practice of cash bail would promote a fairer judicial system.[1] While this may or may not be true, it is not a court's role to resolve such political debates about best practices. As one court explained: "Absent [constitutional] concerns . . . it is not the proper function of the courts to act as super-legislatures, passing judgment upon [the legislature's] penological determinations."[2] Your Honor's role is to apply the law honestly and fairly to the bail system Plaintiffs actually went through. And Plaintiffs received all constitutionally-required process outlined by *ODonnell*. This suit should be dismissed.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

1. **Substantive Due Process:** Plaintiffs try to create a substantive due process right to affordable bail. But in *ODonnell*, the Fifth Circuit explicitly found that there was no "fundamental substantive due process right to be free from any form of wealth-based detention." Is Plaintiffs' substantive due process claim barred by binding precedent?

2. **Procedural Due Process and Equal Protection:** Harris County complied with the bail process outlined by the Fifth Circuit's decision in *ODonnell*, a fact which is established by video recordings and other publicly available records. Have Plaintiffs alleged justiciable and plausible Due Process and Equal Protection claims under the circumstances?

3. **GA-13:** Plaintiffs assert a claim against GA-13, a COVID-19-related executive order regarding the use of personal bonds. But none of the Plaintiffs were subjected to GA-13 and none were denied personal bonds due to this order. Have Plaintiffs plausibly alleged a claim against GA-13?

---

[1] ECF 209, 2.
[2] *United States v. Dwinells*, 508 F.3d 63, 69 (1st Cir. 2007).

2

4. **Sheriff Ed Gonzalez:** Plaintiffs assert claims against Sheriff Gonzalez. But in *ODonnell*, the Fifth Circuit dismissed him as a defendant due to his lack of municipal policymaking authority. This has not changed since *ODonnell*. Do the claims against the Sheriff fail?

The mootness and standing issues concern whether the Court has subject matter jurisdiction to hear this dispute.[3] A party may move to dismiss a claim for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1). In deciding such a motion, a court is free to weigh the evidence to ensure that it has power over the case.[4] A court may rely on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts.[5]

The remaining issues are analyzed under FED. R. CIV. P. 12(b)(6).[6] Such a motion hinges on whether the plaintiff pled a "plausible" (as opposed to just a "possible") claim for relief—*i.e.* whether the plaintiff pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] If "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[8] On such a motion, the court can rely on: (1) the complaint; (2) the complaint's attachments; (3) a defendant's attachments that were referenced in the complaint and central to the plaintiff's claim; and (4) matters on which a court

---

[3] *See Sample* v. *Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).

[4] *MDPhysicians & Assoc., Inc.* v. *State Bd. of In*s., 957 F.2d 178, 181 (5th Cir. 1992).

[5] *Barrera-Montenegro* v. *U.S. & Drug Enf't Admin.*, 74 F.3d 657, 659 (5th Cir. 1996).

[6] *See Anderson* v. *Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).

[7] *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.* (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007)) (quotations omitted).

may take judicial notice.[9] As the Fifth Circuit and Your Honor have consistently noted: "'[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'"[10]

**BACKGROUND**

Harris County's bail system has dramatically changed over the last four years. As a result, the system challenged in *ODonnell* no longer exists. In its place are revamped procedures that give both misdemeanor and felony arrestees robust process in line with *ODonnell*. Despite this, Plaintiffs dwell on the infirmities of the old bail system in their Second Amended Complaint. But any alleged problems with the old bail system are irrelevant to this case. This is because Plaintiffs were arrested while Harris County's reformed bail system was in place. And, under this upgraded system, Plaintiffs received all process required by *ODonnell*.

## I.     An Overview of the *ODonnell* Litigation.

In 2016, Maranda ODonnell challenged Harris County's misdemeanor bail system.[11] That system featured the mechanical imposition of cash bail from a preapproved bail schedule without any individualized assessment of the arrestees' circumstances.[12] Without this consideration, the hearing officers imposed secured

---

[9] *See, e.g., Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

[10] *Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 403 (S.D. Tex. 2011) (brackets in original) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)); *see also Polar Pro Filters Inc. v. FrogSlayer, LLC*, No. CV H-19-1706, 2020 WL 1987432, at *4 (S.D. Tex. Apr. 27, 2020); *Palacios v. Dep't of Homeland Sec.*, 434 F. Supp. 3d 500, 506 (S.D. Tex. 2020).

[11] *See ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1060-61 (S.D. Tex. 2017).

[12] *Id*. at 1130.

4

bail 90% of the time, leaving only 10% of misdemeanor arrestees with personal bonds.[13]

This Court found that this bail system violated the Fourteenth Amendment and awarded the plaintiffs injunctive relief.[14] The Fifth Circuit later agreed that "the County's mechanical application of [its] secured bail schedule without regard for the individual arrestee's personal circumstances violated" the Constitution.[15]

But the Fifth Circuit disagreed with several of this Court's holdings. It dismissed Sheriff Ed Gonzalez as an improper party due to his lack of municipal policymaking authority under 42 U.S.C. § 1983.[16] The Fifth Circuit also found that this Court's injunction was overbroad because it amounted to the outright elimination of secured bail.[17] The Fifth Circuit reasoned that, while such a remedy could make sense if a fundamental substantive due process right to be free from any form of wealth-based detention existed, "no such right is in view."[18]

*ODonnell I* issued a model injunction outlining what would be a constitutionally-sufficient bail process.[19] Per the Fifth Circuit, the Constitution required that arrestees receive notice, an opportunity to be heard and to submit evidence, and a decision by an impartial magistrate.[20]

---

[13] *Id*. at 1052.
[14] *ODonnell v. Harris County*, 892 F.3d 147, 152 (5th Cir. 2018) (hereinafter "*ODonnell I*").
[15] *Id*. at 163.
[16] *Id*. at 156.
[17] *Id*. at 163-64.
[18] *Id*. at 163.
[19] *Id*. at 164-66.
[20] *Id*. at 163.

On remand, this Court revised the injunction to release some inmates.[21] The Fifth Circuit stepped in again.[22] In granting a stay, the Fifth Circuit explained that release was inappropriate because, again, "there is no 'fundamental substantive due process right to be free from any form of wealth-based detention.'"[23] It further held that "release on 'sufficient sureties'" is "not purely defined by what the detainee can afford" and "does not create an automatic right to pretrial release."[24] The Fifth Circuit warned that "[s]ecured bail was not to be eliminated for any category of indigent arrestees, no matter how narrow."[25]

The *ODonnell* defendants were swept out of office in the next election after *ODonnell II* and thus the new officials were substituted in as defendants in the case.[26] Within days of being sworn in, the new defendants dismissed their predecessors' appeal of the modified injunction, and the plaintiffs tried to vacate the adverse opinion in *ODonnell II*.[27] The Fifth Circuit rejected this attempt, writing that *ODonnell II* "is this court's last statement on the matter and, like all published opinions, binds the district courts in this circuit."[28]

---

[21] *Odonnell v. Goodhart*, 900 F.3d 220, 222 (5th Cir. 2018) (hereinafter "*ODonnell II*").
[22] *Id*.
[23] *Id*. at 225, 228; *see also Russell v. Harris County*, 2020 --- F. Supp. ----, 2020 WL 1866835, at *12 (S.D. Tex. Apr. 14, 2020).
[24] *ODonnell II*, 900 F.3d at 232.
[25] *Id*. at 225.
[26] *ODonnell v. Salgado*, 913 F.3d 479, 481 (5th Cir. 2019) (per curiam) (hereinafter "*ODonnell III*").
[27] *Id*.
[28] *Id*. at 482.

In late 2019, the new defendants settled the *ODonnell* litigation by charitably agreeing to a consent decree that gave plaintiffs more relief than they could have received at trial and paying them millions of dollars.[29]

## II. Harris County Overhauls its Bail System to Comply with *ODonnell*.

In April 2017, Your Honor noted that "Harris County is changing its bail procedures" and that the County "commendably plans to revise its pretrial processes and bail schedule by July 1, 2017."[30] Harris County continued its reform efforts past July 2017 and has changed its bail system for all arrestees to bring it in line with *ODonnell's* holdings.[31] Based on publicly available documents and videos of the bail hearings at issue, Harris County's upgraded bail system was fully operational prior to this suit's filing.[32]

As of January 2019, when the first Plaintiff had his bail set, the Harris County bail system consisted of the following robust procedures.[33]

After arrest and transport, Harris County employees interview the arrestee to collect both financial and personal information that will be considered in setting

---

[29] *See generally ODonnell v. Harris Cty., Tex.*, No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019).

[30] *ODonnell*, 251 F. Supp. 3d at 1132, 1168.

[31] *See, e.g.* Ex. A (Wilson PC Order memorializing *ODonnell*-compliant procedures); Ex. B (Wilson PC Court video showing *ODonnell*-complaint procedures); Ex. C (Affidavit of Financial Condition); Ex. D (Leitner Declaration, previously file at ECF No. 56); Second Amended Complaint (hereinafter "Second Amend. Comp.") at ¶ 3 (discussing presence of counsel), ¶ 101 (discussing presence of counsel), ¶ 119 (discussing interviews by counsel occur prior to bail hearing); The Harris County, Texas Bail Manual (hereinafter "Bail Manual") available at 2-4, available at https://www.nacdl.org/getattachment/e11b870d-0647-4468-a9aa-408204004509/the-harris-county-bail-manual.pdf (discussing counsel at bail hearings and use of Arnold risk assessment tool); Sheriff's Advisory, ECF 205 (describing system that provides for automatic settings in District Court for those refused a personal bond).

[32] *Id.*

[33] *See, e.g.*, Ex. B (Ortuno PC Court video showing ODonnell-complaint procedures on January 19, 2019).

bail.[34]   An arrestee also completes a verified affidavit of his or her financial condition.[35] This affidavit provides notice that it "will be used to assess alternatives to imposing secured money bail and determine eligibility for appointed counsel."[36] In addition to collecting information about employment, income, and expenses, the affidavit concludes by asking: "What is the most money you could reasonably pay to get out of jail within 24 hours after your arrest, including any contributions from family and friends?"[37] This affidavit is considered in affixing bail.[38]

Next, the arrestee undergoes a Public Safety Assessment ("PSA") using the risk assessment algorithm created by the Laura and John Arnold Foundation.[39] The PSA places arrestees into one of three risk categories and correlates to a recommended bail amount on the felony bail schedule.[40] The felony schedule also sets out 30 felonies that qualify for a presumptive personal bond.[41] This list has grown in response to COVID-19 to include over 50 different felonies eligible for an *automatic* personal bond.[42]

---

[34] *See* Second Amend. Comp. at ¶ 97 (discussing arrestees undergoing "interviews requiring them to disclose private financial and mental health information"); Ex. D at 2.

[35] Ex. C; Ex. D at 2.

[36] Ex. C.

[37] *Id.*

[38] *See, e.g.*, Ex. I at 2 (noting signed and sworn financial affidavit was considered before setting bail).

[39] *See* Second Amend. Comp. at ¶ 80 (discussing risk assessment); Bail Manual at 4-11; Data-Driven Tool Gives Harris County, Texas, Judges New Way to Assess Defendants' Pretrial Risk Level, Arnold Ventures, available at https://www.arnoldventures.org/newsroom/data-driven-tool-gives-harris-county-judges-new-way-assess-defendants-pretrial-risk-level/ (last visited July 10, 2020); Ex. F, Felony Bond Schedule).

[40] *Id.*

[41] Ex. F.

[42] Ex. G.

Those arrestees not immediately released proceed to probable cause court ("PC Court"), where a hearing officer conducts a probable cause and bail hearing within 48 hours of arrest.[43] However, before appearing in front of the hearing officer, the assistant public defender interviews the arrestee.[44] This interview gathers personal information such as ties to the community and other information (familial/social/educational/occupational) that the assistant public defender can later present to the hearing officer.[45] According to the Public Defender's Office, these interviews are "a rich and useful source of material to convince a judge to release someone the judge might otherwise detain."[46]

After this interview, and, again, within 48 hours of arrest, arrestees appear before the hearing officer.[47] The hearing officer reads all arrestees legal warnings, provides notice of the hearing's purpose, and explains how the hearing (including the portion for setting bail) will be conducted.[48] This includes an explanation that the

---

[43] *See* Second Amend. Comp. at ¶ 96 ("Many people every month must wait up to 48 hours for a probable cause hearing, though some have their hearings within 24 hours of arrest); Ex. H (Russell's PC Court order showing hearing within 48 hours of arrest); Ex. I (Ortuno's PC Court order showing hearing within 48 hours of arrest); Ex. A (Wilson's PC Court order showing hearing within 48 hours of arrest); Ex. K (Clack's PC Court order showing hearing within 48 hours of arrest); Ex. L (Pierson's PC Court order showing hearing within 48 hours of arrest).

[44] Second Amend. Comp. at ¶ 119 (admitting that interview with an assistant public defender occur shortly before the probable cause hearing).

[45] Bail Manual at 14, 38.

[46] *Id*. at 14.

[47] *See* Second Amend. Comp. at¶ 96 ("Many people every month must wait up to 48 hours for a probable cause hearing, though some have their hearings within 24 hours of arrest); Ex. H (Russell's PC Court order showing hearing within 48 hours of arrest); Ex. I (Ortuno's PC Court order showing hearing within 48 hours of arrest); Ex. A (Wilson's PC Court order showing hearing within 48 hours of arrest); Ex. K (Clack's PC Court order showing hearing within 48 hours of arrest); Ex. L (Pierson's PC Court order showing hearing within 48 hours of arrest); Ex. D at 2-3.

[48] *See* Ex. B, Russell video at 0:07 to 5:02, Wilson video at 0:00 to 6:00, Clack video at 0:00 to 8:00, Pierson 2 Oct 19 video at 0:05 to 6:44, and Ortuno video at 0:00 to 1:56.

proceedings are being recorded and that an arrestee can appeal any decision to the presiding District Court Judge.[49]

The hearing officer then calls each arrestee up individually for the presentation of probable cause by the prosecutor.[50] If there is a finding of no probable cause, the hearing ends for that arrestee and he or she is released unless there are additional holds.[51] If probable cause exists, the hearing officer next conducts a bail hearing.[52]

During this bail hearing, both the prosecutor and assistant public defender make their own bail recommendations.[53] This hearing includes argument/evidence about the seriousness of the case, criminal history, and any information about ties to the community or inability to afford bail.[54] Only after considering all the relevant information about the arrestee (including the PSA, affidavit of financial condition, and argument of counsel) does the hearing officer affix bail.[55] Hearing officers regularly adopt the public defender's bail request or set bail below what the felony bail schedule/PSA recommend.[56] The hearing officers explain any decision to not

---

[49] *Id.*

[50] *See* Second Amend. Comp. at¶ 105; Ex. B, Russell video at 32:37 to 36:22, Wilson video at 25:55 to 30:30, Clack video at 11:04 to 18:33, Pierson 2 Oct 19 video at 52:30 to 55:46, and Ortuno video at 30:29 to 37:05.

[51] *See* Second Amend. Comp. at ¶ 105; Ex. D at 2.

[52] *See* Second Amend. Comp. at¶ 105; Ex. B, Russell video at 32:37 to 36:22, Wilson video at 25:55 to 30:30, Clack video at 11:04 to 18:33, Pierson 2 Oct 19 video at 52:30 to 55:and Ortuno video at 30:29 to 37:05.

[53] *See* Ex. H; Ex. I; Ex. A; Ex. K; Ex. L; Ex. B, Russell video at 32:37 to 36:22; Wilson video at 25:55 to 30:30, Clack video at 11:04 to 18:33, Pierson 2 Oct 19 video 52:30 to 55:46, and Ortuno video at 30:29 to 37:05.

[54] *Id.*

[55] *Id.*

[56] *See, e.g.,* Ex. D at 3; Ex. A (adopting public defender's suggested bail amount); Ex. I (adopting public defender's suggested bail amount).

lower bail or issue a personal bond either orally, which is videotaped, or in writing on the bail order form.[57]

In the event arrestees cannot make any bail amount set by the hearing officer, they can later ask the presiding District Court Judge to review their bail amount.[58] To streamline this process, "Harris County has put in place an automated system for incoming arrestees" in which "bail review hearings are now automatically set if a magistrate denies a personal bond."[59]

This is the bail system that each Plaintiff went through.[60] And this bail system has caused a dramatic increase in pretrial release. For example, of the 83,320 total arrests in 2016, the year *ODonnell I* was filed, 52.4% of all arrestees were released pretrial on bond.[61] 41.7% of felony arrestees were released pretrial, but only 4.2% received personal bond.[62]

In 2017, the year this Court first enjoined Harris County, these numbers had improved slightly.[63] That year, the total number of arrestees released pretrial

---

[57] *See, e.g.*, Ex. B, Pierson 2 Oct 19 video at 54:00 to 55:45 (explaining orally that secured bail was set because Pierson has continued to get arrested while out on felony bond); Ex. K at 2 (listing Clack's extensive criminal history for why the hearing officer declined to set a personal bond).

[58] *See, e.g.*, Ex. B, Pierson 2 Oct 19 video at 54:00 to 55:45 (explaining to Pierson he can ask the District Court Judge to lower bond); Ex. M (showing Judge Warren reducing Wilson's bail amount); *see also* TEX. CRIM. PROC. art. 11.24.

[59] Sheriff's Advisory, ECF No. 205.

[60] *See* Ex. H; Ex. I; Ex. A; Ex. K; Ex. L; Ex. B Russell video at 32:37 to 36:22, Wilson video at 25:55 to 30:30, Clack video at 11:04 to 18:33, Pierson 2 Oct 19 video at 52:30 to 55:46, and Ortuno video at 30:29 to 37:05.

[61] 2016 Annual Report, Harris County Pretrial Services, at 3, 8-9, available at https://pretrial.harriscountytx.gov/Library/2016%20Annual%20Report.pdf.

[62] *Id*. at 8-9.

[63] 2017 Annual Report, Harris County Pretrial Services, at 6, 13, available at https://pretrial.harriscountytx.gov/Library/2017%20Annual%20Report.pdf.

increased to 63.6%.[64] 45.4% of felony arrestees were released pretrial, but only 8.6% received personal bonds.[65]

And the numbers for 2019 under the *ODonnell*-compliant bail system got significantly better.[66] Of the 76,519 total arrests, 76% of all arrestees were released pretrial.[67] Of those accused of felonies, 55% were released pretrial, including 23.6% on personal bond.[68]

## III.   Plaintiffs Received all Bail Process Required by *ODonnell*.

Video recordings and other publicly available documents show that Plaintiffs' bail hearings were all conducted under Harris County's current *ODonnell*-compliant bail system.[69]

***Plaintiff Maurice Wilson***: On January 30, 2020, officers stopped Wilson's vehicle and, after Wilson consented to a search, they found drug dealing paraphernalia and two crack rocks.[70] Wilson was arrested.[71]  Officers later found another large chunk of crack concealed inside Wilson's pants which had smaller pieces cut from it, a sign of drug dealing.[72]  Wilson was charged with felony possession of a controlled substance, which is a second degree felony.[73]

---

[64] *Id*.
[65] *Id*. at 16-17.
[66] 2019 Annual Report, Harris County Pretrial Services, at 3, 14-16, available at https://pretrial.harriscountytx.gov/Library/2019%20Annual%20Report.pdf.
[67] *Id*.
[68] *Id*.
[69] *See* Exs. A, B, H, I, K, L.
[70] Ex. B, Wilson video at 25:55 to 30:30.
[71] *Id*.
[72] *Id*.
[73] *Id*.; Ex. A at 1.

Within hours of his arrest, Wilson attended a PC Court hearing.[74] The hearing officer began by providing all arrestees with the required warnings and explaining the purpose and procedures for the bail hearing, including the specific factors and items that would be considered in setting bail.[75] Wilson was represented by counsel during this hearing and he completed an affidavit of financial condition.[76]

The hearing officer found probable cause for Wilson's arrest.[77] Wilson's PSA suggested a bail amount of $20,000 (personal bond not recommended).[78] Because he had at least 19 felony and misdemeanor convictions, Wilson was eligible to be held without bail.[79] The public defender asked for bail at $15,000 (no personal bond).[80] The public defender argued that Wilson is 35 years old, lives in Houston with his girlfriend and has a son.[81] He previously worked but has been unemployed for the past few months.[82] The prosecutor argued for bail at $20,000 based on Wilson's criminal history and the evidence of his drug trafficking.[83] The hearing officer holistically considered Wilson's circumstances and affixed bail at $15,000 as requested by the public defender.[84] The hearing officer declined to issue a personal bond, noting Wilson's prior recent felony conviction.[85]

---

[74] Ex. B, Wilson video; Ex. A.
[75] Ex. B, Wilson video at 0:00 to 6:00.
[76] *Id*. at 25:55 to 30:30; Ex. A at 2.
[77] Ex. B Wilson video at 25:58-30:30.
[78] Ex. A at 2.
[79] Ex. J; *see* TEX. CONST. art. I, Sec. 11 a (Denial of Bail After Multiple Felonies).
[80] Ex. A at 2; Ex. B, Wilson video at 25:55 to 30:30.
[81] *Id*.
[82] *Id*.
[83] *Id*.
[84] *Id*.; Ex. A at 2.
[85] *See* Ex. A at 2 (noting Wilson's recent conviction for the same offense for reason not to grant personal bond).

13

On February 12, 2020, District Judge Warren lowered Wilson's bail to $10,000.[86] On June 22, 2020, Wilson pleaded guilty to a reduced charge and is about to be released from jail.[87]

**_Plaintiff Joseph Ortuno_**: On January 17, 2019, officers arrested Ortuno with a backpack full of ecstasy and other drugs after he shot a gun into a house and led police on a highspeed chase with guns being thrown out the car's windows.[88] Ortuno was charged with selling drugs and, later, aggravated assault with a deadly weapon, which are first degree felonies.[89]

Within 48 hours of his arrest, Ortuno attended a PC hearing.[90] The hearing officer began by providing all arrestees with the required warnings and explaining the purpose and procedures for the bail hearing, including the specific factors and items that would be considered in setting bail.[91] Ortuno was represented by counsel during this hearing and he completed an affidavit of financial condition.[92] Ortuno's PSA recommended bail at $888,888.[93] After an individualized assessment and argument of counsel, the hearing officer affixed bail at $30,000.[94] On April 4, 2019, Ortuno made bail and has been free since.[95]

---

[86] Ex. M.
[87] Ex. T.
[88] Ex. E; Ex. B, Ortuno video  at 30:29 to 37:05.
[89] Ex. O.
[90] Ex. B, Ortuno video; Ex. I.
[91] Ex. B, Ortuno video at 0:00 to 1:56; Ex. I.
[92] Ex. B, Ortuno video at 30:29 to 37:05; Ex. I.
[93] _Id_.
[94] _Id_.; Ex. B, Ortuno video at 30:29 to 37:05.
[95] Ex. P. In February 28, 2020, Ortuno agreed to plead guilty to the controlled substance case and serve six years in prison.

14

**Plaintiff Dwight Russell**: On January 19, 2019, officers stopped Russell's car and, after he failed field sobriety tests, charged him with his third DWI.[96] Within 24 hours of his arrest, Russell received an individualized bail hearing just like Wilson and Ortuno and his bail was set at $25,000.[97] The bond order form reflects the reason why the hearing officer denied a personal bond—his prior drunk driving convictions in 2010 and 2015.[98] In March 2019, Russell pleaded guilty to misdemeanor DWI and he is out of jail.[99]

**Plaintiff Christopher Clack**: On January 17, 2020, Clack was arrested for fraudulently using identifying information and tampering with governmental records.[100] Within 24 hours of his arrest, he too had bail set under Harris County's upgraded bail system.[101] Because of his extremely long criminal history, prosecutors moved in both cases for no bail.[102] The public defender asked for either a personal bond or a $4,000 secured bond.[103] After considering argument of counsel and Clack's individual circumstances, the hearing officer set the bond on the tampering case at $10,000 and the fraudulent use case at $7,500.[104] The hearing officer recorded the reasons for denying a personal bond on the bail order form—Clack's extensive

---

[96] Ex. B, Russell video at 32:37 to 36:22.
[97] *Id.*; Ex. H.
[98] Ex. H.
[99] Ex. S. Russell left the Harris County Jail on May 17, 2019.
[100] Ex. B, Clack video at 11:04 to 18:33; Ex. K.
[101] *Id.*
[102] Ex. N; Ex. B, Clack video at 14:47-15:18.
[103] Ex. B, Clack video at 11:04 to 18:33; Ex. K.
[104] *Id.*

15

criminal history.[105] The hearing officer informed Clack that he could appeal the decision to a District Court Judge.[106]

**Plaintiff Johnnie Pierson**: On January 18, June 6, and October 2, 2019, Pierson was arrested for selling crack.[107] Within 24 hours of each arrest, he received the same bail processes described above.[108] While Pierson was able to post a surety bond twice, he has continued to get arrested while free on bail.[109]

As shown above, each Plaintiff was arrested while Harris County's upgraded bail system was in place. And each Plaintiff received the constitutionally-required bail process outlined in *ODonnell*.

## IV.   An Overview of Plaintiffs' Lawsuit.

On January 21, 2019, Plaintiffs sued Harris County and Sheriff Ed Gonzalez over the felony bail system.[110] While the Complaint purports to be about the current felony system, it omits the changes to the system that gave felony arrestees, including Plaintiffs, ample process in compliance with *ODonnell*.[111] It also paints a misleading picture of how felony arrestees are treated by citing to pretrial release statistics from 2017, while completely ignoring more recent statistics showing that more felony arrestees were being released under Harris County's modified bail procedures.[112]

---

[105] Ex. K.
[106] Ex. B, Clack video at 18:07-18:31.
[107] Ex. Q.
[108] Ex. B, Pierson 19 Jan 19 video at 39:40 to 44:46; Ex. B, Pierson 7 Jun 19 video at 32:55 to 36:25; Ex. B, Pierson 2 Oct 19 video at 52:30 to 55:46; Ex. L.
[109] Ex. R; Ex. O.
[110] Class Action Complaint, ECF 1.
[111] *See generally id*.
[112] *Id*. at 6-8, n. 3-6 (citing statistics from the 2017 Annual Report from Pretrial Services).

Shortly after filing, Plaintiffs and Defendants agreed to stay the case to work out yet another consent decree. Over a year passed with no movement. After COVID-19 started spreading, Plaintiffs tried to use this dormant suit to empty Harris County jails. Plaintiffs have amended their Complaint twice. The first amendment added Plaintiffs Clack and Wilson (both of whom went through the reformed bail system) and conclusory allegations about Governor Abbott's Executive Order GA-13—an executive order aimed at protecting the public and maintaining the rule of law during COVID-19 due to the threat of abusing the personal bond process to release dangerous individuals back into society.

The second amendment merely added the District Court Judges as Defendants. No allegations in this Second Amended Complaint suggest that Plaintiffs received anything less than the bail process required by *ODonnell*. Instead, Plaintiffs seek relief beyond *ODonnell*.[113] They ask this Court to recognize a substantive due process right previously rejected by the Fifth Circuit and, in doing so, find that hearings officer must make onerous findings by clear and convincing evidence before assigning secured bail.[114] If Plaintiffs get their way, it will effectively end the use of cash bail.

ARGUMENT

## I.   *ODonnell* Forecloses Plaintiffs' Substantive Due Process Claim.

Plaintiffs seek a federal substantive right to pretrial liberty that requires more relief than was outlined in *ODonnell*.[115] The gist of this claim is that cash bail is being

---

[113] *See generally* Second Amend. Comp. (pursuing a substantive due process claim and relief that includes findings of fact by clear and convincing evidence).

[114] *Id.*

[115] *See, e.g.*, Second Am. Compl., ¶¶ 38, 40 (stating that judges and hearing offices are improperly failing to issue findings that "pretrial detention is necessary or that less-restrictive

17

set too high for indigent defendants. Plaintiffs' view is that ordering any amount of cash bail that an arrestee cannot afford, even after *ODonnell's* required individualized assessment, amounts to a substantive due process violation that triggers strict scrutiny review. They demand a system where cash bail cannot be used unless several findings imported from the Federal Bail Reform Act are made by clear and convincing evidence. This would effectively create a presumption of release. Plaintiffs' substantive due process claim fails for three main reasons.

First, their substantive due process claim is barred by *ODonnell*. As Your Honor explained, *ODonnell* "clarified that there is no 'fundamental substantive due process right to be free from any form of wealth-based detention.'"[116] Rather, it is "'the *automatic* imposition of pretrial detention'" that "violate[s] federal due process."[117] Federal due process is therefore satisfied when there are proper individualized bail hearings that take place within 48 hours of arrest.[118] Simply put, *ODonnell* outlined what constitutionally-proper bail procedures look like and Harris County complied with these requirements.[119] This Court cannot overturn the Fifth Circuit's decisions in *ODonnell*.[120]

---

conditions are inadequate to reasonably assure community safety and reasonably prevent flight" and that they are failing to require showings "that pretrial detention is necessary to serve a compelling interest").

[116] *Russell v. Harris Cty., Texas*, --- F. Supp. 3d. ---, 2020 WL 1866835, at *10 (S.D. Tex. Apr. 14, 2020) (quoting *ODonnell I*, 892 F.3d at 163; *ODonnell II*, 900 F.3d at 225).

[117] *Id.* (quoting *ODonnell II*, 900 F.3d at 224).

[118] *Id.*

[119] *ODonnell I*, 892 F.3d at 164–66.

[120] *See Technical Automation Servs. Corp.* v. *Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012); *Arnold* v. *U.S. Dep't of Interior*, 213 F.3d 193, 198 (5th Cir. 2000); *Teague* v. *City of Flower Mound*, 179 F.3d 377 (5th Cir. 1999); *Lowrey* v. *Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

Second, Plaintiffs' substantive due process claims rests on their argument that bail is still being set too high for indigent detainees. This claim is squarely within the Eighth Amendment, which provides: "Excessive bail shall not be required."[121] Thus, Plaintiffs' claim is subject to Eighth Amendment jurisprudence on excessive bail claims.[122] As the Supreme Court explained, there is longstanding "reluctan[ce] to expand the concept of substantive due process."[123] As another court put it: "The moment that Plaintiffs transition from advocating for reformed procedures to advocating for the abolition of or lessening of monetary bail, they must traverse through the Eighth Amendment."[124] Plaintiffs' cannot circumvent Eight Amendment jurisprudence by dressing up their excessive bail claim in the garb of substantive due process.

Finally, to consider such a substantive due process right, according to Plaintiffs, would require findings concerning ability to pay, whether alternative conditions of release serve the government's interests, or whether pretrial detention is necessary to serve any government interest before affixing cash bail. Every district court in this Circuit has rejected such a theory in the bail context.[125] Plaintiffs' substantive due process claim is meritless and should be dismissed.

---

[121] U.S. CONST., AMEND. VIII.

[122] *Graham* v. *Connor*, 490 U.S. 386, 395 (1989); *see also Portuondo* v. *Agard*, 529 U.S. 61, 74 (2000); *Conn* v. *Gabbert*, 526 U.S. 286, 293 (1999); *County of Sacramento* v. *Lewis*, 523 U.S. 833, 842 (1998); *United States* v. *Lanier*, 520 U.S. 259, 272 n.7 (1997); *Stop the Beach Renourishment, Inc.* v. *Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 721 (2010) (plurality op.).

[123] *Collins* v. *City of Harker Heights*, 503 U.S. 115, 125 (1992).

[124] *Daves* v. *Dallas Cty., Tex.*, 341 F. Supp. 3d 688, 696 (N.D. Tex. 2018).

[125] *See id.*; *Little* v. *Frederick*, No. 6:17-0724, 2020 U.S. Dist. LEXIS 21949, at *35-37, 2020 WL 605028 (W.D. La. Feb. 7, 2020); *Booth* v. *Galveston Cty.*, No. 3:18-CV-00104, 2019 WL 4305457, at *2 (S.D. Tex. Sep. 11, 2019); *see also Edwards* v. *Cofield*, No. 3:17-CV-321-WKW, 2018 WL 4101511, at *3 (M.D. Ala. Aug. 28, 2018).

## II.   Plaintiffs' Procedural Due Process and Equal Protection Claims Fail Because They Received all Process Required by *ODonnell*.

Plaintiffs' procedural due process and equal protection claims also fail because they received the constitutionally-required bail process. As explained below, these claims are nonjusticiable and inadequately pled.

### A.   Plaintiffs' Claims are Nonjusticiable.

Article III of the Constitution limits the jurisdiction of federal courts to live cases or controversies.[126] "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."[127] This actual case-or-controversy requirement gives rise to the justiciability doctrines of standing and mootness.[128]

Constitutional standing requires that the plaintiff personally suffered some actual or threatened injury that is fairly traceable to the challenged action and is redressable by the court.[129] "The standing question . . . bears close affinity to [the] question[] . . . of mootness—whether the occasion for judicial intervention persists."[130] "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process."[131]

Plaintiffs lack standing to bring this suit and their claims are moot. It is uncontroverted that Plaintiffs were subjected to Harris County's revamped bail

---

[126] U.S. CONST. art. III, § 2; *United States Parole Comm'n* v. *Geraghty*, 445 U.S. 388, 395 (1980).
[127] *DaimlerChrysler Corp.* v. *Cuno*, 547 U. S. 332, 341 (2006).
[128] *Id.* at 352.
[129] *Doe* v. *Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007).
[130] *Warth* v. *Seldin*, 422 U.S. 490, 499 n.10 (1975).
[131] *Rocky* v. *King*, 900 F.2d 864, 866 (5th Cir. 1990).

20

system and thus received all process required by *ODonnell*. What then is Plaintiffs'
legally cognizable injury? How is this injury fairly traceable to Defendants? Given
that Harris County is complying with *ODonnell*, how would this Court redress
Plaintiffs' phantom injuries? How can Plaintiffs present a live challenge since they
already received all constitutionally-required process? How can Plaintiffs overcome
the "presumption of good faith" afforded to Harris County that it will not revert to its
prior constitutionally-infirm procedures, especially since the County itself is on
Plaintiffs' side in this policy debate masquerading as a lawsuit?[132] And how can
Plaintiffs sue the District Court Judges without an ongoing violation of law capable
of leveraging the *Ex parte Young* exception to sovereign immunity?

Plaintiffs have the burden of establishing that each of their claims is
justiciable.[133] They cannot meet this burden. And this Court cannot proceed unless
these threshold jurisdictional issues are resolved.

### B.   Plaintiffs' Procedural Due Process and Equal Protection Claims are Inadequately Pled.

Plaintiffs' procedural due process and equal protection claims are inadequately
pled for the same reason as their substantive due process claim—because Plaintiffs
received all bail process required by *ODonnell*.

As *ODonnell I* explained, "[t]he fundamental source of constitutional deficiency
in the due process and equal protection analyses is the same: the County's mechanical

---

[132] *See, e.g.*, ECF 209.
[133] *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Town of Chester* v. *Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017); *see also Doe*, 494 F.3d at 496-97 ("Standing to sue must be proven, not merely asserted . . . .").

application of the secured bail schedule without regard for the individual arrestee's personal circumstances."[134] Thus, the remedy for both claims were the same:

> the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay). These procedures are: notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker.[135]

*ODonnell II* clarified that, under the Equal Protection Clause, heightened scrutiny only applies if such procedures were not followed.[136] If these procedures were followed, a claim based around the indigent arrestee's inability to afford bail "is reviewed for a rational basis" and is the type of claim that courts have "consistently rejected."[137]

As explained above, Harris County gave Plaintiffs the constitutionally-required individualized bail hearings, within 48 hours, before an impartial decisionmaker, who considered the various factors required by Texas law, and who rendered a decision on the record.[138] Nor do they allege in the Second Amended Complaint that they were deprived of this process. Thus, Plaintiffs' procedural due process claim fails and their equal protection claim is subject to rational basis review; a standard which Harris County's bail system easily surpasses.

---

[134] *ODonnell I*, 892 F.3d at 163.
[135] *Id.*
[136] *ODonnell II*, 900 F.3d at 226.
[137] *Id.* at 226–27.
[138] *Supra*, Background II & III.

It is well-established that a justice system has "a compelling interest in assuring the presence at trial of persons charged with crime."[139] To assure the presence of an accused at trial, courts must be able to "requir[e] a bail bond or the deposit of a sum of money subject to forfeiture" as a condition of pretrial release in appropriate circumstances.[140] The use of cash bail is "basic to our system of law."[141] Harris County's bail system serves this compelling interest not by the automatic imposition of secured bail, but by utilizing *ODonnell's* procedural requirements.

Harris County provided Plaintiffs all bail process required by *ODonnell*, and Plaintiffs never meaningfully allege otherwise. Plaintiffs cannot sustain procedural due process and equal protection claims under these circumstances as they lack a plausible claim under Rule 12(b)(6).

## III. Plaintiffs' References to COVID-19 and GA-13 do Not Create Legally Viable Claims.

In the Second Amended Complaint, Plaintiffs casually toss in a few references to COVID-19 and GA-13.[142] It is unclear why. None of Plaintiffs' claims turn on the seriousness of this pandemic. This is best highlighted by the fact that Plaintiffs filed this action in January 2019, well before COVID-19. Plaintiffs' claims in 2019 were the same then as they are now.[143] And Plaintiffs' GA-13 "claim" cannot be meaningfully distinguished from their underlying Fourteenth Amendment claims.[144]

---

[139] *Pugh* v. *Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (footnote omitted); *Ex parte Anderer*, 61 S.W.3d 398, 404-05 (Tex. Crim. App. 2001) (en banc).

[140] *Stack* v. *Boyle*, 342 U.S. 1, 5 (1951); *See* TEX. CONST. art. I, § 11.

[141] *Schilb* v. *Kuebel*, 404 U.S. 357, 365 (1971).

[142] *See, e.g.*, Second Amend. Comp. at ¶¶ 69–70, 78–79, 168–75, Request for Relief (c).

[143] *Compare* Dkt. 1, *with* 2nd Am. Compl.

[144] Second Amend. Comp., Request for Relief(c) (requesting "[a] declaratory judgment that Executive Order GA-13 is unconstitutional to the extent it requires pretrial detention of arrestees who

Plaintiffs' motives aside, their COVID-19 and GA-13 references do not create legally viable claims, as explained below.

First, Governor Abbott issued GA-13 on March 29, 2020.[145] By this point, all of the Plaintiffs had received *ODonnell's* required bail process.[146] There are no allegations suggesting that Plaintiffs were denied a personal bond *because* of GA-13. Plaintiffs lack standing to challenge GA-13 and they cannot plead a plausible § 1983 claim against it if they were never injured by this order.

Second, if Plaintiffs are still seeking to release arrestees due to COVID-19, as they tried to do in their previous motion for a preliminary injunction, this would make their claim subject to the Prison Litigation Reform Act. Under the PLRA, only a three-judge panel can award such relief; this Court has no authority to do so.[147] And Plaintiffs are required to exhaust their administrative remedies before filing a claim subject to the PLRA.[148] They have not done so.

Finally, any challenge to GA-13—which is part of Governor Abbott's response to a public health emergency—is governed by *Jacobson v. Commonwealth of Massachusetts*.[149] GA-13 clearly meets *Jacobson's* low bar—it was reasonably related

---

cannot afford secured money bail without the substantive findings and procedural safeguards for an order of pretrial detention . . . .").

[145] Executive Order by the Governor of Texas, GA-13, available at https://gov.texas.gov/uploads/files/press/EO-GA-13_jails_and_bail_for_COVID-19_IMAGE_03-29-2020.pdf.

[146] *Supra*, Background II & III.

[147] 18 U.S.C. § 3626(a)(3); *Brown* v. *Plata*, 563 U.S. 493, 500 (2011) ("The authority to order release of prisoners as a remedy to cure a systemic violation of the Eighth Amendment is a power reserved to a three-judge district court, not a single-judge district court.").

[148] *Valentine* v. *Collier*, 956 F.3d 797, 804–05 (5th Cir. 2020); *Gonzalez* v. *Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *Dillon* v. *Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

[149] 197 U.S. 11 (1905); *see also S. Bay United Pentecostal Church v Newsom*, 140 S. Ct. 1613–14 (2020) (Roberts, C.J., concurring); *In re Abbott*, 954 F.3d 772 (5th Cir. 2020); *Valentine*, 956 F.3d at 797.

to Governor Abbott's effort to protect Texans during this crisis and it resulted in no invasion (much less a "palpable invasion") of Plaintiffs' constitutional rights.[150] Nor can Plaintiffs' COVID-19 references help their Fourteenth Amendment claims. The opposite is true; any claims resting on Defendants' response to this emergency would be governed by *Jacobson's* lenient standard and thus can be easily dismissed. The fact that Plaintiffs are using COVID-19 to usurp Defendants' administration of its jail systems—which is one of the strongest state interests—makes their claim even more implausible.[151]

## IV. Plaintiffs' Claims Against Sheriff Gonzalez are Barred by *ODonnell*.

In *ODonnell I*, the Fifth Circuit found that Sheriff Gonzalez was an improper defendant.[152] Plaintiffs ignored *ODonnell I's* holding and again named Sheriff Gonzalez as a defendant here. Plaintiffs' claims against Sheriff Gonzalez fail for the same reasons they did in *ODonnell I*—he lacks the municipal policymaking authority to be a proper defendant under § 1983. Binding precedents still apply, even when a party doesn't want them to.

## CONCLUSION

This suit boils down to a policy debate. Plaintiffs' counsel (and more than a few Defendants) want to revolutionize Texas' bail system to meet their policy goal—ending the State's use of cash bail. But this Court is not the proper forum for resolving

---

[150] *Jacobson*, 197 U.S. at 29.

[151] *Valentine*, 956 F.3d at 803 ("[T]he Supreme Court has repeatedly warned that it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.") (quotations omitted).

[152] *ODonnell I*, 892 F.3d at 155–56; *see also Daves*, 341 F. Supp. 3d at 693–94 (finding that the Dallas County Sheriff was not a proper defendant in a similar bond case for the same reason).

this political dispute. This Court can only resolve legal claims, and there are no viable legal claims presented here. Plaintiffs' action is barred by the Fifth Circuit's decisions in *ODonnell*. This suit should be dismissed.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ERIC A. HUDSON
Special Counsel
Special Litigation Unit
Texas Bar No. 24059977
Southern District ID: 1000759
Eric.Hudson@oag.texas.gov
P.O. Box 12548, Capitol Station Austin,
Texas 78711-2548
(512) 936-1414 | FAX: (512) 936-0545

DARREN L. MCCARTY
Deputy Attorney General for Civil
Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Special Litigation Counsel
Attorney-in-Charge
Texas Bar No. 24077727
Southern District No. 2964087
Adam.Biggs@oag.texas.gov

MATTHEW BOHUSLAV
Assistant Attorney General
Texas Bar No. 1303218
Southern District ID: 1303218
Matthew.Bohuslav@oag.texas.gov

DOMINIQUE G. STAFFORD
Assistant Attorney General
State Bar No. 24079382
Southern District ID: 3195055
Dominique.Stafford@oag.texas.gov
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

COUNSEL FOR THE STATE INTERVENORS

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Southern District of Texas, Houston Division, on July 10, 2020 to all parties of record.

*/s/Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Special Litigation Counsel