IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

|  |  |
|---|---|
| RUSSELL, et al.<br><br>Plaintiffs,<br><br>v.<br><br>HARRIS COUNTY, TEXAS, et al.<br><br>Defendants. | Case No. 4:19-cv-00226<br>(Class Action)<br>The Honorable Lee H. Rosenthal<br>U.S. District Judge |

### PLAINTIFFS' REPLY IN SUPPORT OF PARTIALLY-OPPOSED MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY

Plaintiffs have shown good cause for the limited discovery sought, and the objections of the 21 Felony Judges (Doc. 218) and the State-Intervenors (Doc. 217) do not undercut that showing. This Court has "broad discretion when deciding discovery matters[.]" *Jackson Woman's Health Org. v. Dobbs*, 945 F.3d 265, 275 (5th Cir. 2019); *see Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) ("[W]e have generally denied review of pretrial discovery orders." (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981))); *In re Deepwater Horizon*, 793 F.3d 479, 485 (5th Cir. 2015). For the reasons explained below and in Plaintiffs' motion, Doc. 211, this Court should exercise that discretion to grant the limited expedited discovery requested here.

### I. Plaintiffs Have Shown Good Cause to Take Limited Discovery at This Time

Unconstitutional pretrial detention is a serious irreparable harm that named Plaintiff Christopher Clack and the members of the putative class continue to suffer. *See ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1157-58 (S.D. Tex. 2017) (holding that "unnecessarily" jailing misdemeanor arrestees due to inability to pay causes irreparable harm); *id.* ("'Freedom from

1

imprisonment—from government custody, detention, and other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). The usual (and constitutionally intolerable) irreparable harms associated with pretrial detention are heightened by the global pandemic,[1] which has caused a deadly virus to circulate in the Harris County Jail since March, infecting at least 1,435 individuals, killing at least three people, and causing serious and perhaps lasting illness to others.[2] After briefly decreasing, the jail population has increased again and remains high; COVID cases in the jail and surrounding community continue to increase. *See, e.g.*, Doc. 219 (Gonzalez Advisory of July 21, 2020) ("[I]n spite of coordination and prodding from this Court, the situation regarding jail releases has not appreciably changed."; describing the "torpor of the system"); Doc. 205 (Gonzalez Advisory of July 6, 2020) ("It does not appear that this Court's efforts to push for formal bail hearings ha[ve] resulted in greater numbers of arrestees being released from jail."); Doc. 194 (Gonzalez Advisory of June 26, 2020) ("Only 2 remote bail hearings were held this week, with one more set for today.").[3]

---

[1] *ODonnell*, 251 F. Supp. 3d at 1057–58 (describing multiple irreparable harms, including "significant pressure to plead guilty," "increase[d] chance of conviction and of nonappearance or new criminal activity during release," and "cumulative disadvantages [which] mount for already impoverished misdemeanor defendants who cannot work, maintain their housing arrangements, or help their families because they are detained."); *see also ODonnell v. Harris County*, 260 F. Supp. 3d 810, 821 (S.D. Tex. 2017) (denying motion to stay pending appeal because "[e]very day brings about the incarceration of another hundred indigent misdemeanor defendants, in violation of the Constitution."); *id.* ("That cannot continue.").

[2] Reports make clear that death is not the only dire consequence of COVID-19, and that people who "recover" routinely suffer from lingering mental and physical health problems. *See As post-COVID heart and brain problems linger, some coronavirus survivors find it's a long haul to recovery* (July 22, 2020), available at https://news.yahoo.com/as-post-covid-heart-and-brain-problems-linger-some-coronavirus-survivors-find-its-a-long-haul-to-recovery-165434453.html; Ed Yong, *COVID-19 Can Last for Several Months* (June 4, 2020), available at https://www.theatlantic.com/health/archive/2020/06/covid-19-coronavirus-longterm-symptoms-months/612679/.

[3] Harris County Jail COVID-19 Rates for People Detained in the Jail:
- July 21, 2020: 1,435 cases out of 5,647 tests (25%)
- July 6, 2020: 1,115 cases out of 4,276 tests (26%)
- June 26, 2020: 1,046 cases out of 3,662 tests (28%)

When this Court denied Plaintiffs' request for emergency relief, it noted the importance of the issues and the need for the development of a full and accurate evidentiary record on which to resolve the legal questions raised. Doc. 122 at 3. These limited discovery requests are appropriate because they will permit Plaintiffs to put actual evidence before the Court, rather than what it gets now: periodic information updates, untested data, and unsworn representations.

Obtaining even basic information about whether and how bail hearings are happening is now extremely difficult. The Attorney General has instructed all parties not to communicate directly with the 21 felony judges he represents (including judges who have struck down as unconstitutional the same Executive Order that the Attorney General defends in this case), preventing Sheriff Gonzalez from coordinating with them and "slow[ing] or stop[ping]" the Sheriff's ability to address specific cases or process problems directly with the judges. Doc. 219 at 1-2.

Because of the important legal issues at stake and the consequences of those issues on many people's health and lives, this case must be resolved on the merits as soon as possible based on a complete record. Plaintiffs plan to file a motion for summary judgment as soon as possible. Basic discovery from the Judges cannot wait several more months.

## II. Plaintiffs Have Not Been Dilatory

Plaintiffs have not been dilatory in seeking discovery or pursuing a resolution of this case, contrary to the Attorney General's assertions. *See* Doc. 218 at 8; *see also* Doc 217 at 4. Soon after the case was filed in early 2019, Plaintiffs began working with the felony judges at their request on a new bail policy that Plaintiffs hoped would provide the foundation for a settlement with the County and Sheriff. Those efforts continued off and on for more than a year, especially after the final settlement in *ODonnell* was submitted for approval in October 2019. *ODonnell* put in place

3

certain logistical systems and county infrastructure that are critical to a resolution of this case as well. Plaintiffs worked informally with the Sheriff and the County to obtain information about the felony system that would facilitate settlement and voluntary reform. That effort generated two public dashboards that provide information about the jail population—which proved crucial to further efforts among the Parties to coordinate when COVID-19 first struck. *See* https://charts.hctx.net/jailpop/App/JailPopCurrent; https://charts.hctx.net/dr00226. The Sheriff had private meetings with interested judges, using this technology to enable the judges to see who from their courtrooms was detained in the jail and why. Counsel was actually in Houston for meetings with some of the Felony Judges, the Sheriff, and County officials in early March, just before domestic travel shut down. Negotiations with the felony judges fell apart over the next two weeks, and because many of the Felony Judges were not providing constitutional bail proceedings, the jail population was growing even as COVID-19 was spreading within the jail. Plaintiffs therefore moved for emergency relief on March 27, 2020. *See generally* Docs. 32, 44, 53, 66, 75, 88, 98. In denying such relief, this Court concluded that any ruling on the merits must "come[] later, on a fuller record." Doc. 122 at 3.

Plaintiffs responded appropriately to the Court's order. They moved to lift the stay on the litigation; amended their Complaint to include facts about the pandemic and Governor Abbott's Executive Order, which prohibits the release on personal bonds of certain categories of people in the jail; supplemented their motion for class certification; and worked with the parties to propose a joint scheduling and docket control order. Docs. 139, 140, 141, 155. All the while, Plaintiffs continued to work in good faith with the Court, the parties, and interested non-parties to address the substantial backlog of people detained in the jail who had not received a formal, individualized bail hearing as the COVID-19 crisis continued to mount. As part of this process, Plaintiffs relied

on representations by the Felony Judges to this Court and the other parties about the extent to which they would conduct formal bail hearings—representations that have failed to materialize week after week after week after week. Plaintiffs analyzed the limited data they could collect, and worked diligently with the Sheriff to facilitate information sharing that might reduce the backlog of thousands of individuals detained prior to trial for whom no judge has ever made a finding that pretrial detention is warranted. Plaintiffs have not been dilatory, and it is ironic that the Felony Judges would say so.

### III.  Plaintiffs Are Entitled to the Limited Discovery They Seek

In a practical sense, the discovery sought from the judges is neither expedited nor early. When the Scheduling and Docket Control Order was entered, the Judges were not even parties to the case. The Sheriff and Harris County have answered. Docs. 162, 197, 209. Plaintiffs would have been free to pursue discovery from the judges as important non-parties to the case, had they not been added as defendants. *See* Fed. R. Civ. P. 26(d)(1); 45. The fact that the judges have been added as parties is not a basis for delaying that discovery. Thus, though this motion is analyzed under a "good cause" standard typically due requests for expedited discovery from *defendants*, *St. Louis Grp., Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011), the discovery sought here is proceeding on the same schedule that it would have if they remained non-parties to Plaintiffs' suit against the County and Sheriff.[4] That would be true even if the judges prevailed on their planned motion to dismiss. Even as third parties, any burden to the Felony Judges is merely a factor for the Court's consideration. *MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018); *cf. St. Louis Grp.*, 275 F.R.D. at 239 n.4 (stating that the court should consider the

---

[4] *See id.* at 239 n.4 (noting that a key consideration in finding good cause is "how far in advance of the typical discovery process the request was made").

5

burden on the party from which expedited discovery is sought in assessing good cause). Otherwise, "[t]he scope of discovery is the same under both Federal Rules of Civil Procedure 45 and 26." *Id.* (citation omitted).

Plaintiffs' proposed discovery requests are narrowly tailored, and it is fair and reasonable to pursue them now. The Court can assure that any expense and inconvenience to the Felony Judges is limited and "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see MetroPCS*, 327 F.R.D. at 610 ("[T]he Court may properly apply the 26(b)(1) proportionality factors in the context of" Rule 45). The supposed "harms" asserted by the 21 Felony Judges are limited and can quite easily be accommodated. Doc. 218 at 10.

First, Plaintiffs seek to take depositions of only 5 of the 21 Felony Judges represented by the Attorney General (and of the other two judges, who consent to the request). Thus, the purported drain on "focus and resources" for the three-quarters of the Felony Judges who will not be deposed is virtually non-existent.[5] *Id.* For the judges Plaintiffs do seek to depose, Plaintiffs are more than willing to accommodate the judges' schedules to ensure that depositions do not interfere with judicial dockets or other court business, exactly as occurred in the *ODonnell* case.

Second, the purported harms the 21 Felony Judges raise are not unique to this particular moment; whatever inconvenience the Judges might experience now in responding to the proposed discovery is no different than if Plaintiffs were to seek that same information two months or six months from now. Moreover, the Judges' claims of judicial discretion fall flat. Plaintiffs' claims would constrain the Judges' discretion only in the sense that they would be constrained to follow the federal Constitution when setting policies and enforcing customs that affect fundamental rights. They are so constrained in every aspect of their jobs.

---

[5] Plaintiffs' four proposed interrogatories seek very limited, objective responses that do not require narrative answers, Doc. No. 211-1, and their four requests for production are also narrow, Doc. 215-1.

6

Third, this case raises serious constitutional questions that matter to the thousands of presumptively innocent people who are detained in jail pretrial, their families, their communities, and Harris County at large. In *ODonnell*, the evidence and testimony obtained from the misdemeanor judges proved to be crucial evidence in resolving the constitutional questions and was clearly proportional to the needs of the case. To the 21 Felony Judges, this case, like the misdemeanor case, may "only" be about the constitutionality of bail determinations. *Id.* at 10. But to Plaintiffs, this case seeks to vindicate the fundamental constitutional rights of presumptively innocent people kept in jail pretrial due to their inability to pay. Unconstitutional pretrial detention is a serious harm to liberty, dignity, health, and life.[6] Being required to provide basic information via discovery about how these important constitutional rights and matters of tremendous public concern are or are not being protected in Harris County is a small inconvenience in relation to the gravity of what is at stake in this case and in this particular moment.

## IV. The Felony Judges' Invocation of Sovereign Immunity is Meritless

The Felony Judges further ask this Court to prohibit discovery pending resolution of the "sovereign immunity" defense they plan to raise in their motion to dismiss—even though, again, they will have to provide oral and written discovery *even if* such a defense had merit. And it does not. This Court should not defer discovery on the basis of a meritless immunity defense.

---

[6] This case is not "only" about bail practices; it is quite literally a matter of life and death. Just this week, a woman detained on drug charges in Bexar County Jail committed suicide three days after her arrest. Based on an initial review of publicly available court records, Ms. Alvarado was apparently being detained due to inability to pay $5,000 secured money bail. Elizabeth Zavala & Taylor Pettaway, *Update: Police ID female inmate at Bexar County Jail dies in apparent suicide* (July 20, 2020), available at https://www.chron.com/news/local/article/Woman-inmate-at-Bexar-County-Jail-dies-in-15419036.php#photo-19397855. It is well known that there is a heightened risk of suicide in the first three days after an arrest. *See* Keri Blakinger, *Harris County jail inmate dies by suicide days after misdemeanor arrest* (Jan. 16, 2019), available at https://www.chron.com/news/houston-texas/article/Harris-County-jail-inmate-dies-by-suicide-days-13538819.php (Ms. Whited's suicide marked the fifth in the jail in less than two years); Keri Blakinger, *Harris County inmate hangs herself, marking jail's 2nd apparent suicide in a month* (Aug. 15, 2018), available at https://www.chron.com/news/houston-texas/article/Harris-County-inmate-hangs-herself-marking-13158942.php (Ms. Lyons was being detained pretrial on $1,500 secured bail related to a non-violent, felony theft charge).

Plaintiffs' Second Amended Complaint clearly pleads specific, detailed allegations to show Plaintiffs' entitlement to prospective relief as to the Felony Judge Defendants. Doc. 195-1, ¶¶ 11-13, 30-36, 38-43, 44-79, 176, 180, 185-86, 196-197, 199-204. That is all that is required to overcome the Eleventh Amendment bar to suit under the doctrine of *Ex parte Young*. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("A court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."); *Doe v. Caldwell*, 913 F. Supp. 2d 262, 273 (E.D. La. 2012). Moreover, this Court has previously held that judicial officers who "promulgate written Rules of Court or oversee the unwritten customs and practices that could be corrected through the written Rules" act on behalf of Harris County (not the "sovereign") and are not immune from suit for that additional reason. *ODonnell v. Harris Cty., Tex.,* 227 F. Supp. 3d 706, 757 (S.D. Tex. 2016).[7]

The 21 Felony Judges do not actually appear to disagree with this binding precedent or challenge this Court's prior holding.[8] In fact, they concede that the *Ex parte Young* exception to sovereign immunity, which applies in cases seeking only *prospective* relief, applies in this case. Instead, they argue that Plaintiffs cannot pursue their claims for prospective relief because "Plaintiffs are no longer incarcerated in Harris County Jail" and thus "it is impossible they are suffering any ongoing violation of federal law . . . ." Doc. 218 at 6.

---

[7] This Court has also opined that "[Harris] County's instructive comparison of Texas district judges and county judges may well support a finding that, in the particular function of regulating countywide pretrial processes and bail settings, the district judges act as local policymakers." *ODonnell v. Harris County, Tex.*, 2017 WL 784899 (S. D. Tex. Mar. 1, 2017) (denying County's motion for reconsideration of holding that the elected misdemeanor judges are County policymakers for bail policy).

[8] The State-Intervenors also raise "sovereign immunity" in a footnote in their brief opposing Plaintiffs' discovery request. Doc. 217 at 4 n.10. Additionally, they gesture at "sovereign immunity" in their Motion to Dismiss, Doc. 214 at 27, but the phrase appears only in a rhetorical question that they never analyze or answer.

This is actually a mootness argument couched in immunity language. The Judges do not dispute that Plaintiffs have met their burden by adequately pleading an ongoing violation of federal law, *see Verizon*, 535 U.S. at 645; they simply argue that Plaintiffs themselves are not "suffering any ongoing violation" *anymore*. Doc. 218 at 6. That assertion is factually wrong—one Plaintiff, Christopher Clack, remains in jail pre-trial as of this filing. It is also legally baseless. Even if at some future point all of the named representatives of the transitory class are released, as they were within days of the date the *ODonnell* lawsuit was filed, that still would not remove the claims of the ongoing transitory class against these Defendants under binding precedent.

This case presents essentially the same scenario as in *County of Riverside v. McLaughlin*, where the Supreme Court held that the claims of a class of people detained in jail without prompt probable cause determinations did not terminate the controversy against the Defendants when the claims of the named plaintiffs became moot. 500 U.S. 44, 51-52 (1991); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (constitutional challenges to pretrial detention squarely fit within the definition of an "inherently transitory" class that can withstand mootness challenges (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975))); *Ward v. Hellerstedt*, 753 F. App'x 236, 243 (5th Cir. Oct. 16, 2018) ("[T]he expiration of all of Plaintiffs' claims prior to the district court entering its class certification order did not have the effect of mooting this action as a whole."). Like the Court in *Riverside*, the release of the named representatives from jail does not end the controversy against the Defendants where there is a transitory class who allege that defendants violate their rights on an ongoing basis. The Attorney General does not cite a single case in the history of American jurisprudence since (or before) *Ex parte Young* that supports their contrary position.

9

The Felony Judges' claim of sovereign immunity to avoid early discovery is "at best, a submission of tortured reasoning." *Caldwell*, 913 F. Supp. 2d at 273, n.10 (rejecting defendants' frivolous assertion of sovereign immunity). Merely invoking sovereign immunity with no legal basis does not confer an automatic right to halt discovery, particularly when the immunity defense is facially meritless—and particularly when even a viable immunity defense would not prevent the discovery Plaintiffs seek. As the Fifth Circuit and many others have cautioned, immunity defenses can readily be abused by defendants who seek to delay or otherwise gain a strategic litigation advantage. *BancPass, Inc. v. Hwy. Toll Admin., L.L.C.*, 863 F.3d 391, 399 (5th Cir. 2017) (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1338-39 (7th Cir. 1989)); *see also Abel v. Miller*, 904 F.2d 394, 396 (7th Cir. 1990). By asking this Court to reserve any action on discovery until it can rule on a sovereign immunity question that is based on a mootness argument that, itself, has been directly rejected by the Supreme Court, the 21 Felony Judges seek to prolong this litigation while the Plaintiff class continues languishing in the jail under worsening pandemic conditions. The Court should decline the invitation for unnecessary delay.

## V.    This Motion is Not a Vehicle to Litigate the Merits of Plaintiffs' Claims

The 21 Felony Judges object to Plaintiffs' discovery requests on the basis that the information sought by Plaintiffs is somehow foreclosed by *ODonnell*. Doc. 218 at 3-5. This argument is wrong.

In this litigation, the Attorney General has repeatedly misstated both Plaintiffs' claims and the holdings of *ODonnell*. While there is more to be said on this question when this Court considers the *merits* of this case, Plaintiffs note briefly that *ODonnell* does not define the outer limits of Plaintiffs' claims in this litigation. Plaintiffs here make claims that this Court and the Fifth Circuit did not address in *ODonnell*. *ODonnell* only decided the questions before it; it was not and could

not have been a comprehensive articulation of all constitutional issues surrounding pretrial release and detention. It certainly did not resolve the many issues that were never briefed or argued. To take one prominent misstatement from the Attorney General's various briefs, *ODonnell* did not overrule *Salerno*'s holding, based on decades of binding precedent, that there is a "fundamental" interest in pretrial liberty. It did not even purport to consider the substantive *federal* constitutional right to pretrial liberty Plaintiffs seek to protect in this litigation.[9] *See* Doc. 32 at 25-26. Indeed, scholars have pointed out that *ODonnell* did not reach this question, *see generally* Kellen Funk, *The Present Crisis in American Bail*, 128 Y.L.J. Forum (2019),[10] and numerous other courts have recently affirmed that the fundamental right to pretrial liberty means that, although pretrial detention is permitted, such detention requires a substantive finding that less restrictive alternatives are insufficient to serve the government's interests. *See, e.g.*, *Valdez-Jimenez v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 460 P.3d 976, 984–85 (Nev. 2020) ("Because bail may be set in an amount that an individual is unable to pay, resulting in continued detention pending trial, it infringes on the individual's liberty interest. And given the fundamental nature of this interest,

---

[9] The Felony Judges repeatedly and incorrectly argue that this claim is foreclosed by the Fifth Circuit in *ODonnell*. Doc. 218 at 3-5; *see also* State-Intervenors' Mot. to Dismiss, Doc. 214 at 18. *ODonnell* did no such thing. Its holdings on the procedural due process issues were limited to what process is required to protect a liberty interest under Texas law, not federal law, and those procedural holdings do not address substantive due process *at all*. *See ODonnell v. Harris Cty.*, 892 F.3d 147, 157 (5th Cir. 2018) ("[O]ur focus is the law of Texas").

The Felony Judges therefore misstate Plaintiffs' substantive due process claims. They dishonestly argue that Plaintiffs seek an absolute constitutional right to pretrial *release*. Not so. As *ODonnell* pointed out, there is no substantive right to be "free from *any* form of wealth-based detention." 892 F.3d at 163 (emphasis added). This makes sense because few if any constitutional rights are *absolute*; there are almost always "conditions under which competing state interests might outweigh" the individual interest. *Washington v. Harper*, 494 U.S. 210, 220 (1990). There is a crucial difference between an absolute right to be free from detention, and a *liberty interest* in pretrial liberty that requires a compelling interest to overcome in the same way that the First and Second Amendments protect a right to free speech and a right to bear arms, neither of which are absolute. In each situation, as the Supreme Court explained in *Harper,* the government may infringe the substantive interest if it makes a sufficient showing. Plaintiffs' substantive due process claim is *not* that anyone is entitled to release—it merely seeks to establish what legal standard must be met in order for an order of pretrial detention to be valid.

[10] Available at https://www.yalelawjournal.org/forum/the-present-crisis-in-american-bail.

substantive due process requires that any infringement be necessary to further a legitimate and compelling governmental interest.").

Similarly, the Judges take issue with the fact that Plaintiffs did not raise a challenge to the Governor's Executive Order as a "separate" cause of action. Doc. 218 at 7 n.3. Nothing requires Plaintiffs to assert a separate cause of action when the harm caused by the EO—which strips the right to pretrial release from a specific subset of people who are charged with or who have a history of certain categories of crimes—squarely fits within the claims that Plaintiffs did plead. The specific relief Plaintiffs seek would remedy the harm caused by the EO. *See* Doc. 195-1 at 50. That is all that is required to satisfy the pleading standards of Rule 8(a)(2), which simply demands that the Complaint "give[] the respondent fair notice of the basis for petitioner's claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The Felony Judges' objections betray the fact that they clearly understand—and are therefore on notice—that the relief Plaintiffs seek includes a determination that the EO is unconstitutional to the extent it requires pretrial detention of certain individuals without any individualized finding that such detention is necessary to serve a government interest. *See* Doc. 218 at 7 n.3 ("Plaintiffs make a putative challenge to the Governor's Executive order, GA-13.") (citing Plaintiffs' Second Amended Complaint, Doc. 195-1 at 50). Plaintiffs need not formalistically plead a separate cause of action to be entitled to that relief (much less to discovery).

At any rate, disputes over the merits of Plaintiffs' claims are a distraction. The scope of discovery allowable to a party is not limited by the underlying *merits* of the Plaintiffs' claims. Otherwise, a party could prevent factual development by asserting that it eventually will prevail on the merits on a record that the party prevented from being developed. For any discoverable matter, the standards governing permissible discovery are relevance and proportionality. *See* Fed.

R. Civ. P. 26(b)(1). Crucially, "[t]o be relevant under Rule 26(b)(1), a document or information *need not, by itself, prove or disprove a claim* or defense or have strong probative force or value." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017) (emphasis added). Nothing in the Rules or the case law requires Plaintiffs to first prove the merits of their claims before they are entitled to discovery.

### VI. The State-Intervenors Lack Standing to Object to Plaintiffs' Request for Discovery from the 21 Felony Judges

Lastly, the State-Intervenors are not the parties from whom discovery is requested, nor do they allege that they have a "personal right or privilege" with respect to the discovery sought. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). Thus, although they too are represented by the Attorney General, they lack standing to object to Plaintiffs' motion. *Id.*; *Price v. Lockheed Martin Corp.*, 2006 WL 8445220, at *1 (S.D. Miss. Aug. 2, 2006); *see also Wilson v. Wexford Med.*, 2020 WL 930112, at *2 (S.D.W.V. Feb. 26, 2020) ("It follows that if Defendants have no basis upon which to object to the discovery, then they have no ground upon which to request a stay of an order compelling a response to that discovery.").

### CONCLUSION

The Court should grant Plaintiffs' motion.

Date: July 23, 2020

Respectfully Submitted,

/s/ Alec Karakatsanis
/s/ Elizabeth Rossi
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009

/s/ Neal S. Manne
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188

13

Telephone: (202) 681-2721

/s/ Liyah Brown
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
mimi@texascivilrightsproject.org
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
liyah@texascivilrightsproject.org
Peter Steffensen
Texas State Bar No. 24106464
Southern District No. 3327006
peter@texascivilrightsproject.org
Texas Civil Rights Project
2202 Alabama Street
Houston, TX 77004
Telephone: 512-474-5073 ext. 118

jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

/s/ Michael Gervais
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

## **CERTIFICATE OF SERVICE**

I certify that on July 23, 2020 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Peter Steffensen*
Peter Steffensen
