**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| RUSSELL, et al. | ) | **ORAL ARGUMENT REQUESTED** |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | Case No. 4:19-cv-00226 |
| v. | ) | (Class Action) |
|  | ) | The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) | U.S. District Judge |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**PLAINTIFFS' OMNIBUS RESPONSE TO THE 20 DISTRICT JUDGES'
AND THE STATE INTERVENORS' MOTIONS TO DISMISS**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Standard of Review ....................................................................................... 2

II.   Nature and Stage of Proceedings ................................................................. 3

III.  Statement of Issues ...................................................................................... 3

IV.   Factual Background ...................................................................................... 4

    A.    The Harris County Felony Bail System ............................................... 4

    B.    Relevant Facts About the Named Plaintiffs ........................................ 9

V.    Summary of the Argument ........................................................................... 10

VI.   Argument ...................................................................................................... 11

    A.    Plaintiffs Seek Substantive and Procedural Relief for Violations of
        Their Federal Substantive Due Process and Equal Protection Rights ................. 11

        1.    The Constitution protects a right against wealth-based
            detention ....................................................................................... 13

        2.    The Constitution protects a "fundamental" interest in liberty ................. 13

            a.    The interest in pretrial liberty is "fundamental" but not
                absolute ......................................................................... 15

            b.    *ODonnell* does not hold that there is no interest in
                pretrial liberty ............................................................... 16

        3.    Violations of These Substantive Rights Require Substantive
            Remedies ...................................................................................... 19

        4.    Pretrial detention is constitutionally permissible if it is
            necessary to serve a compelling government interest ............................ 21

            a.    An unattainable financial condition is the functional
                equivalent of an order of pretrial detention .................................. 22

            b.    Pretrial detention requires the government to
                demonstrate necessity, regardless of whether the
                detention results from a transparent order or a de facto
                one ............................................................................... 23

            c.    The State is wrong that rational basis applies .............................. 25

5. To prevent an erroneous deprivation of Plaintiffs' substantive rights, Defendants must provide procedural protections ......................... 28

    a. When considering financial conditions of release, the government must determine ability to pay.................................... 29

    b. The government must provide additional safeguards when pretrial liberty is at stake. .................................................. 30

        i. The government must provide notice, a prompt, adversarial hearing, and findings on the record ............... 30

        ii. The government must apply the clear-and-convincing-evidence standard to any finding that detention is necessary .................................. 31

    c. Defendants do not provide the required procedural safeguards .................................................................... 32

B. Movants' Other Arguments Fail ........................................................ 32

  1. Plaintiffs Were Not Required to Proceed Under the Eighth Amendment.................................................................. 32

  2. The State Misunderstands Plaintiffs' Challenge to GA-13....................... 34

  3. Plaintiffs' Claims Are Not Moot, and Plaintiffs Have Standing ............. 35

    a. Plaintiffs Had Standing When the Complaint Was Filed ............ 36

        i. Plaintiffs' Injuries Are Traceable to the Felony Judges............................................................... 36

        ii. This Court Can Order Relief Against the Felony Judges That Will Redress the Harm.................................. 41

        iii. Plaintiffs faced an "injury in fact" when they sued .................................................................. 45

    b. Plaintiffs' Claims Are Not Moot.................................................. 46

  4. Arguments Movants Advert to But Do Not Develop Are Waived ................................................................. 47

  5. Movants Do Not Have Sovereign Immunity ............................................. 49

  6. Plaintiffs' Claims Against the Sheriff Are Proper ................................... 49

7.      Plaintiffs Properly Brought Their Claims Under 42 U.S.C. §
        1983 ............................................................................................................... 49

VII.    Conclusion ............................................................................................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bearden v. Georgia*,
461 U.S. 600 (1983)..................................................................1, 12, 18, 20, 21, 24, 25, 28

*Bearden v. Georgia*,
461 U.S. 660 (1983)............................................................13, 15, 20, 24, 29, 34

*Brady v. Fort Bend Cnty.*,
145 F.3d 691 (5th Cir. 1998) ................................................................43

*Brangan v. Commonwealth*,
80 N.E.3d 949 (Mass. 2017) ............................................14, 22, 24, 25

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
345 F.3d 347 (5th Cir. 2003) ................................................................47

*Brooks v. Snow*,
313 F. Supp. 2d 654 (S.D. Tex. 2004) ..................................................2

*Buffin v. City & Cty. of San Francisco*,
No. 15-CV-04959-YGR, 2018 WL 424362 (N.D. Cal. Jan. 16, 2018) ............................14, 25

*Caliste v. Cantrell*,
329 F. Supp. 3d 296 (E.D. La. 2018), *aff'd on other grounds*, 937 F.3d 525
(5th Cir. 2019)................................................................14, 22, 24, 48, 50

*Carey v. Piphus*,
435 U.S. 247 ................................................................12, 28

*Carter v. HealthPort Technologies, LLC*,
822 F.3d 47 (2d Cir. 2016)................................................................2

*Castro v. United States*,
540 U.S. 375 (2003)................................................................50

*Ex parte Clear*,
573 S.W.2d 224 (Tex. Crim. App. 1978) (*en banc*) ............................................40

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985)................................................................27

*Colorado Christian University v. Weaver*,
534 F.3d 1245 (10th Cir. 2008) ................................................................33

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
    508 U.S. 602 (1993) ...........................................................................................31

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ...........................................................................................34

*Daves v. Dallas County*,
    341 F. Supp. 3d 688 (N.D. Tex. 2018) .........................................................34, 50

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ...........................................................................................15

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ...............................................................................2

*Envtl. Conservation Org. v. City of Dallas*,
    529 F.3d 519 (5th Cir. 2008) .............................................................................36

*Familias Unidas v. Briscoe*,
    619 F.2d 391 (5th Cir. 1980) .............................................................................42

*Fields v. Henry County*,
    701 F.3d 180 (6th Cir. 2012) .............................................................................37

*Fisher v. University of Texas at Austin*,
    570 U.S. 297 .........................................................................................15, 19, 28

*Foucha v. Louisiana*,
    504 U.S. 71 (1992) ...........................................................................13, 14, 23, 34

*Frazier v. Jordan*,
    457 F.2d 726 (5th Cir. 1972) ...........................................12, 13, 24, 25, 28, 34

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...........................................................................................48

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) .............................................................................................31

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ...........................................................................2, 5

*Gagnon v. Scarpelli*,
    411 U.S. 778 (1973) .................................................................................15, 30, 34

*Genesis Healthcare, Corp. v. Symczyk*,
    569 U.S. 66 (2013) .............................................................................................47

*Gerstein v. Pugh*,
    420 U.S. 103 (1975)................................................................47

*Graham v. Connor*,
    490 U.S. 386 (1989)............................................................32, 34

*Green Valley Spcial Utility District v. City of Schertz, Tex.*,
    2020 WL 4557844 (5th Cir. Aug. 7, 2020) (*en banc*) ......................41, 45

*Guerra v. Garza*,
    987 S.W.2d 593 (Tex. Crim. App. 1999)..........................................40

*Harper v. Va. Dept. of Taxation*,
    509 U.S. 86 (1993)..........................................1, 11, 12, 17, 18, 20, 21

*Henry v. Cox*,
    520 S.W.3d 28 (Tex. 2017)......................................................44

*Hollis v. Lynch*,
    827 F.3d 436 (5th Cir. 2016) ....................................................15

*Houston Federation of Teachers, Local 2415 v. Houston Ind. Sch. Dist.*,
    251 F. Supp. 3d 1168 (S.D. Tex.) ................................................12

*In re Humphrey*,
    19 Cal. App. 5th 1006 (Ct. App. 2018) (review pending) ..................14, 22, 24, 25

*Institute of Marine Mammal Studies v. Nat'l Marine Fisheries Serv.*,
    23 F. Supp. 3d 705 (S.D. Miss. 2014)............................................36

*Jacobson v. Commonwealth of Massachusetts*,
    197 U.S. 11 (1905)............................................................35, 42

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2d Cir. 2012)......................................................20

*Kuromiya v. United States*,
    37 F. Supp. 2d 717 (E.D. Pa. 1999) ............................................28

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949)........................................................41, 42, 44, 45

*Lawrence v. Dunbar*,
    919 F.2d 1525 (5th Cir. 2001) ..................................................36

*Lopez-Valenzuela v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014) (*en banc*) ......................................13, 15, 23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................36

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)...............................................................................19

*McMillian v. Monroe County, Ala.*,
    520 U.S. 781 (1997)........................................................................42, 43, 44

*McNeil v. Cmty. Prob. Servs., LLC*,
    1:18-cv-33, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019), *aff'd on other
    grounds*, 945 F.3d 991 (6th Cir. 2019) ...........................................14, 50

*McNeil v. Community Probation Servs., LLC*,
    945 F.3d 991 (6th Cir. 2019) ..............................................................41, 49

*Montgomery v. Louisiana*,
    136 S.Ct. 718 (2016).....................................................................16, 20, 21

*Morrissey v. Brewer*,
    408 U.S. 471 (1972)................................................................14, 15, 31, 34

*Northshore Development, Inc. v. Lee*,
    835 F.2d 580 (5th Cir. 1988) ..............................................................28

*ODonnell v. Goodhart*,
    900 F.3d 220 (5th Cir. 2018) ........................................................18, 26, 27

*ODonnell v. Harris County*,
    2017 WL 784899 (S.D. Tex. Mar. 1, 2017)......................................43, 44

*ODonnell v. Harris County*,
    227 F. Supp. 3d 706 (S.D. Tex. 2016) ..............................................28, 48

*ODonnell v. Harris County*,
    251 F. Supp. 3d 1052 (S.D. Tex. 2017) ...................................16, 17, 22, 25, 44

*ODonnell v. Harris County*,
    321 F. Supp. 3d 763 (S.D. Tex. 2018) ..............................................18

*ODonnell v. Harris County*,
    892 F.3d 147 (5th Cir. 2018) 1, 1, 5, 6, 8, 12, 13, 16, 17, 18, 19, 22, 25, 26, 30, 31, 33, 34, 38,
    41, 42, 43, 44, 46, 47, 49

*ODonnell v. Harris County*,
    Case No. 4:16-cv-01414 (S.D. Tex. June 25, 2018), Dkt. 421 ................17

*ODonnell v. Harris County,*
Case No. 4:16-cv-1414 (S.D. Tex. Nov. 21, 2019), Dkt. 708 ...................................5

*ODonnell v. Harris Cty.,*
260 F. Supp. 3d 810 (S.D. Tex. 2017) ...................................................................49

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986) ...............................................................................................43

*Preiser v. Rodriguez,*
411 U.S. 475 (1973) ...............................................................................................50

*Pugh v. Rainwater,*
572 F.2d 1053 (5th Cir. 1978) ....................................12, 13, 18, 20, 21, 24, 25, 28, 33, 34, 37

*Reno v. Flores,*
507 U.S. 292 (1993) ...........................................................................................23, 24

*Rosales-Mireles v. United States,*
138 S. Ct. 1897 (2018) ...........................................................................................26

*Samele v. Zucker,*
324 F. Supp. 3d 313 (E.D.N.Y. 2018) ...................................................................36

*Schultz v. Alabama,*
330 F. Supp. 3d 1344 (N.D. Ala. 2018), *appeal filed sub. nom. Hester v.*
*Gentry*, No. 18-13894 (11th Cir. Sept. 13, 2018) ..........................................14, 22, 50

*Simpson v. Miller,*
387 P.3d 1270 (Ariz. 2017), *cert. denied sub nom. Arizona v. Martinez*, 138 S.
Ct. 146 (2017) .....................................................................................................15, 24

*Skinner v. Switzer,*
562 U.S. 521 (2011) ...........................................................................................47, 48

*Soldal v. Cook County, Ill.,*
506 U.S. 56 (1992) ...............................................................................................33

*State v. Brown,*
338 P.3d 1276 (N.M. 2014) ...................................................................................22

*Swarthout v. Cooke,*
562 U.S. 216 (2011) ...............................................................................................28

*Tate v. Short,*
401 U.S. 395 (1971) ...........................................................................................13, 25

*Turner v. Rogers*,
564 U.S. 431 (2011)................................................................................29, 31

*Tyler v. Hillsdale Cty. Sheriff's Dep't.*,
837 F.3d 678 (6th Cir. 2016) (*en banc*) ................................................15, 37

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993)..........................................................................................33

*United States v. L.A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952)..........................................................................................19

*United States v. Leathers*,
412 F.2d 169 (D.C. Cir. 1969) .......................................................................22

*United States v. Mantecon-Zayas*,
949 F.2d 548 (1st Cir. 1991)..........................................................................22

*United States v. Payan*,
992 F.2d 1387 (5th Cir. 1993) ........................................................................29

*United States v. Salerno*,
481 U.S. 739 (1987).......................1, 12, 13, 14, 16, 17, 20, 21, 22, 23, 24, 25, 29, 30, 33, 34

*Valdez-Jimenez v. Eighth Judicial Dist. Court in & for Cty. of Clark*,
460 P.3d 976 (Nev. 2020) .................................................................14, 22, 24

*Vann v. Kempthorne*,
534 F.3d 741 (D.C. Cir. 2008) .................................................................42, 45

*Walker v. City of Calhoun*,
901 F.3d 1245 (11th Cir. 2018) ......................................................................50

*Ward v. Hellerstedt*,
753 F. App'x 236 (5th Cir. Oct. 16, 2018) ....................................................47

*Washington v. Glucksberg*,
521 U.S. 702 (1997)..................................................................................15, 23

*Washington v. Harper*,
494 U.S. 210 (1990)........................................................................11, 12, 15, 21

*Williams v. Illinois*,
399 U.S. ...................................................................................................13, 25

*Wolff v. McDonnell*,
418 U.S. 539 (1974)........................................................................................31

*Zablocki v. Redhail*,
  434 U.S. 374 (1978) ........................................................................23

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ..................................................................13, 34

*Zeidman v. J. Ray McDermott & Co.*,
  651 F.2d 1030 (5th Cir. 1981) ...................................................36

**Statutes**

42 U.S.C. § 1983 ....................................................................48, 49, 50

Tex. Code Crim Pro. 17.03 ................................................................6

Tex. Gov't Code § 54.852(a), (d) .....................................................39

Tex. Gov't Code § 54.856, (b) ...............................................38, 39, 40

Tex. Gov't Code § 74.091 ...............................................................43

Tex. Gov't Code § 74.093 ...............................................................37

Tex. Gov't Code § 75.401 ...............................................................44

State Intervenors and 20 District Judges (collectively "Movants") make a variety of arguments that fail because they misunderstand Plaintiffs' claims, misrepresent the Fifth Circuit's decision in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), and ignore bedrock legal precedent. *See* Dkt. 214 (State Intervenors); Dkt. 228 (District Judges).

First, Movants wrongly assert that Plaintiffs seek recognition of an absolute right to release. Plaintiffs recognize that the Constitution does not grant an absolute right to pretrial release or an absolute right to be free from wealth-based detention. They argue that (1) there is an "interest in [pretrial] liberty" that is "importan[t] and fundamental," but that this interest, like the right against wealth-based detention articulated in *Bearden*, may be "subordinated to the greater needs of society" "in circumstances where the government's interest is sufficiently weighty," *United States v. Salerno*, 481 U.S. 739, 750–51 (1987); and (2) before it may infringe this interest, the government must provide substantive findings and procedural safeguards to justify "subordinat[ing]" such an "important and fundamental interest." Movants conflate the undisputed fact that there is no absolute right to pretrial release with their unprecedented assertion that there is no liberty interest in pretrial release at all. This baseless contention would permit indefinite pretrial detention solely on a finding of probable cause. No court has ever agreed.

Second, Movants treat *ODonnell* as having answered every legal issue relating to bail. From this it is a short step to Movants' mantra that if they are not violating *ODonnell,* then they cannot be violating the law. *ODonnell* involved only an interlocutory appeal of a preliminary injunction motion, which injunction addressed only some of the *ODonnell* plaintiffs' constitutional claims. Neither this Court nor the Fifth Circuit addressed in *ODonnell* several issues raised by the *ODonnell* plaintiffs at the later summary judgment stage and raised here by the Plaintiffs, including the substantive findings required for the government to justify depriving a person's interest in

pretrial liberty, and whether that right and the right against wealth-based detention require the procedural safeguards of counsel and a heightened evidentiary standard. A court's decision does not foreclose claims it does not address. *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 118 (1993).

Third, Movants do not move to dismiss Sheriff Gonzalez's cross-claim against the District Judges for Declaratory Relief, which survives regardless of these Motions. *See* Dkt. 197 (Gonzalez Answer and Request for Declaratory Relief) ¶¶ 5–8 (requesting that the Court "declare his rights and obligations going forward in connection with the pre-trial detention of felony arrestees").

## I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). A court must rely on the complaint and documents attached to it or referenced in it, and may also consider any "matters of which the court may take judicial notice." *Id.*; *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *id.* (quoting Fed. R. Evid. 201(b)). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "come in two forms: facial attacks and factual attacks." *Brooks v. Snow*, 313 F. Supp. 2d 654, 658 (S.D. Tex. 2004) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (5th Cir. 2001)). Plaintiffs opposing a factual challenge "need to come forward with evidence of their own" *only* if the evidence presented by the defendants "reveal[s] the existence of factual problems in the assertion of jurisdiction." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (alterations omitted). "[P]laintiffs are entitled to rely on the allegations [] if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient" to show subject-matter jurisdiction. *Id.* That is the circumstance here: Movants have presented evidence, but none of it contests the facts alleged in Plaintiffs' Second Amended Complaint that demonstrate the Court's subject matter jurisdiction. Thus, Movants have made a

facial challenge to jurisdiction. In resolving it, the Court must assume Plaintiffs' allegations are true and must assess whether the allegations are sufficient to invoke the Court's jurisdiction. *Id.*

## II.     Nature and Stage of Proceedings

Plaintiffs filed this lawsuit on January 21, 2019. Dkt. 1. The case was abated to permit settlement discussion, which continued for about one year Dkts. 13, 14, 24, 29, 31. On March 27, 2020, after COVID-19 was declared a global pandemic, Plaintiffs filed an emergency Motion for TRO. Dkt. 32. On March 29, 2020, the Governor issued Executive Order GA-13, prohibiting the release on a personal bond of certain categories of people. The same day, the Governor, the State of Texas, and the Attorney General moved to intervene. Dkt. 38. The Court granted the motion. Dkt. 46. Plaintiffs filed a second Motion for TRO seeking to enjoin GA-13. Dkt. 53. On April 14, the Court denied Plaintiffs' motions, stating that "disagreements appear to have been somewhat resolved" and local officials had made "commendable [] progress [] in safely reducing the [] Jail population during this dangerous time." Dkt. 122 at 3. The Court declined to address the merits of Plaintiffs' claims. *Id.* ("That comes later, on a fuller record."); *see also id.* at 12. On May 6, Plaintiffs moved to lift the stay and filed an Amended Complaint adding two named Plaintiffs who were subject to GA-13. Dkts 139, 140, 140-1. The Court lifted the stay. Dkt. 152. Plaintiffs filed a Second Amended Complaint naming all Felony Judges as Defendants.[1] The Sheriff and County Answered. Dkt. 197; Dkt. 209. Movants moved to dismiss. Dkt. 214, Dkt. 228.

## III.     Statement of Issues

1. Whether the Fourteenth Amendment protects interests in pretrial liberty and against wealth-based detention.

2. Whether a finding that pretrial detention is necessary is required before those rights can be constitutionally infringed.

---

[1] On June 24, Judge Chuck Silverman and Judge Brian Warren had moved to intervene as Defendants. Dkts. 180, 181, 192. The Court granted the motions. Dkt. 191, 196.

3. Whether the Constitution requires procedural safeguards to ensure the accuracy of the decision to detain, including notice, an adversarial hearing with counsel, an opportunity to be heard and to present and confront evidence, and findings on the record by clear and convincing evidence stating the reasons for detention.

4. Whether Plaintiffs have standing and their claims are not moot, and whether Movants have sovereign immunity.

## IV.     Factual Background

### A.     The Harris County Felony Bail System

For decades, Harris County has used a predetermined secured money bail schedule, promulgated through administrative order by the Felony Judges, to determine financial conditions of pretrial release for felony arrestees. Dkt. 195-2 ¶ 80; Dkt. 1-4 (Felony Bond Schedule). Following arrest, and as soon as the scheduled amount is communicated to the person, the individual can pay the amount and, absent another basis for detention, will be released. Dkt. 195-1 ¶¶ 89–93. The County and Sheriff will detain any person who does not pay. *Id.* ¶ 92; *see also* ¶¶ 152–53. In March and April 2020, under pressure to reduce the jail population in light of COVID-19, the Judges promulgated additional, generally applicable orders designating certain categories of people for immediate release. Dkt. 214-7 (First Amended General Order Bond for Certain Offenses, April 2, 2020); Dkt. 32-6 (General Order Bond For Certain Offenses, March 20, 2020). The bail schedule's predetermined amounts of money apply to everyone else. Dkt. 195-1 ¶ 80.

People arrested in Harris County are transported to the Joint Processing Center ("JPC") where they are presented for a probable cause and bail proceeding before a Hearing Officer inside the jail. *Id.* ¶¶ 83, 96, 99–100. The Hearing Officer determines conditions of release. *Id.* ¶¶ 99, 105, 113. By order of the Felony Judges, the Public Defender's Office ("PDO") is authorized to represent felony arrestees at these proceedings for the limited purpose of arguing bail. *Id.* ¶ 101;

Ex. A1–A18 (sample magistration videos);[2] Ex. B (Order Appointing Public Defender for Art. 15.17 Bail Hearings).[3] When determining conditions of release: Hearing Officers routinely do not make findings as to whether a person can pay, whether secured money bail will result in detention, whether detention is necessary, or whether less-restrictive conditions are adequate. *Id.* ¶¶ 102, 106;[4] Ex. A1–A18; Ex. C (bail orders from hearings presented in Ex. A1–A18); *see* Appendix 1, column G. Because they do not make factual findings, they do not apply any evidentiary standard. Dkt. 195-1 ¶ 102; Ex. A1–A18; Ex. C. Sometimes, the person arrested is not even present at the hearing. *See* Ex. A6, A12, A15. When that happens, the person is not represented by counsel. Ex. A6, A12, A15; Ex. C at 13–14, 27–28, 35–36; Appendix 1, rows 6, 12, 15.

These hearings routinely result in the pretrial detention of people who are too poor to pay. Dkt. 195-1 ¶ 102. *See, e.g.*, Appendix 1, row 7 (E.A. was homeless, allegedly stole a soda, and was detained on $20,000 secured bail for 147 days, when he pled guilty to a lesser-included misdemeanor, and was sentenced to 100 days with credit for time-served, *i.e.* 47 fewer days than he actually served (citing Ex. A7, Ex. C at 15–16, and Ex. E7)); *id.*, row 6 (C.C. is homeless, had bond was set at $20,000 during magistration on 6/7/2019; she was not present at magistration and is still in jail (citing Ex. A6, Ex. C at 13–14, & Ex. E6)). Hearing Officers believe they may not impose non-monetary conditions in certain cases. Dkt. 195-1 ¶¶ 107–108, 117–18. For example, they routinely cite a Texas statute that they and the Judges interpret to bar Hearing Officers from

---

[2] The bail hearing videos and exhibits referenced in this brief are publicly available. A majority of the 18 videos in Ex. A are from the dockets the State submitted with its Motion. Plaintiffs submit several additional, more recent hearings, which occurred during the pandemic. Like the others, they are recorded by Harris County and available publicly. This Court may take judicial notice of "publicly-available documents" and "matters of public record" without converting the motions to summary judgment motions. *Funk*, 631 F.3d at 783.

[3] This Order as applied to misdemeanors was superseded by Section 40 of the *ODonnell* Consent Decree. *ODonnell v. Harris County*, Case No. 4:16-cv-1414 (S.D. Tex. Nov. 21, 2019), Dkt. 708 ¶ 40.

[4] *See also* Ex. C at 5–6 (bail Order for Plaintiff Russell, stating "4/2, 2010, 2015, 61 years old, instructed RE DLB"); *id.* at 11–12 (bail Order for Plaintiff Wilson, stating "2019 conviction for PCS"); *id.* at 13–14 (bail Order for C.C. stating, "Bond revoked in misd.," though records show she was released on bond in the concurrent misdemeanor case).

releasing certain people on personal bonds without action by a Judge. Tex. Code Crim Pro. 17.03; *e.g.*, Ex. A8–A11, A15, A18 (denying personal bonds based on 17.03); *see* Appendix 1, rows 8– 11, 15, 18. And they often state that they are "referring" the personal bond decision to the Judge. Ex. A1–A5, A12–A14, A16–A18; *see* Appendix 1, rows 1–5, 12–14, 16–18. Each bail decision is apparently *intended* to be a detention order for people who cannot pay: in every case, the Hearing Officer signs a document stating, "The Court ORDERS the defendant committed to the custody of the Sheriff . . . until he posts the required bond or until further order[.]" Ex. C at 1, 3, 5, etc.

For decades, Hearing Officers adhered strictly to the bail schedule, supplemented by the written and oral directives[5] of the Judges, who control their employment.[6] *Id.* Dkt. 195-1 ¶¶ 107– 108, 117–18. Although the Felony Judges purportedly rescinded these instructions in the middle of *ODonnell* and replaced them with a new bail schedule, Hearing Officers continue to require secured financial conditions of release without making findings about ability to pay, whether pretrial detention is necessary, or the adequacy of alternative conditions; without applying any evidentiary standard to any facts; and without explaining how any facts support any finding. *Id.* ¶

---

[5] *See* Dkt. 32-8 (State Commission on Judicial Conduct Documents) at 30, 40, 49 ("Until March 27, 2017, several of the District Court Judges did not permit Hearing Officers to grant personal bonds[.]"); Dkt. 32-7 at 186-211 (Chart of written instructions from Felony Judges to Hearing Officers); *id.* at 189 (authorizing personal bonds only for arrestees who are "not homeless."); *id.* (authorizing personal bonds only for arrestees who have "no prior criminal history"); *id*. at 190 (authorizing personal bonds only for arrestees who have a "confirm[ed] place to live"); *id.* at 186- 211 (Multiple Judges answering "No." to the question "Can the hearing officers grant pre-trial bonds?"); *id.* at 188 (authorizing personal bonds for some "[f]ull time students"); *id.* at 186 ("I don't want any bonds lowered at [the magistration hearing]. Ok to raise it, but no lowering."); *id.* at 187 ("Please set bond for felon in poss. of a weapon. Habitual offenders should be held w/out bond."); Dkt. 32-8 at 11 ("No pre-trial bonds; no lowering of bonds.").

[6] *See e.g.*, Dkt. 32-7 at 186 *id.* at 13, 17-18, 23 (Hagstette, Licata and Wallace violated the law "by strictly following directives not to issue personal bonds to defendants per the instructions of the judges in whose court the underlying cases were assigned." The Hearing Officers' "conduct was motivated by direct instructions from individual judges who played a role in [their] continued employment."); Dkt. 32-7 at 35 (Hagstette: "The Hearing Officers serve many masters. The Hearing Officers exercise the discretion they can within the bounds set."); Dkt. 32-8 at 11, 16, 21 ("[A] job description by the board of judges made clear the Hearing Officers are 'at will employees,' [and] that the Hearing Officers are the 'delegates' of the judges trying criminal cases."); *id.* at 11 (Hearing Officers could "be dismissed at any time by the same board that appoints us."); *id.* at 11, 16, 21 (from retired hearing officer) ("You may never, never ever give a PR bond to a defendant in any of the District courts. This would probably get you fired."); *id.* at 12 (hearing officers "didn't write the policies, but we had to follow them."; "Could I do something? Probably by law, I could have. I don't know if it would have been good for my career.").

118; Dkt. 1-4; Ex. A1–A18; Ex. C; *see also* Appendix 1, columns G–I. Felony Judges even preserve a written order on their current County website, Ex. D,[7] stating that the bail schedule is binding prior to a bail hearing, *id.* at 7–8, ¶ I(I), and that *at* a bail hearing, Hearing Officers "shall set bail in accordance with the Bail Schedule," *id.* at 5, ¶ I(D).

If, after magistration, an arrestee is still unable to purchase release from jail, she will be taken to a District Court. Dkt. 195-1 ¶ 124. Detained individuals are usually assigned a lawyer at this first appearance, but there is typically no review of the money bail amount. *Id. E.g.*, Appendix 1, row 15 (bond was set during magistration at $200,000 in C.M.'s absence, without counsel; he was found indigent and appointed counsel, but has not been to court since February 3, 2020; his next court date is September 22; he filed a motion for a bail hearing on July 27, which hearing has apparently not been scheduled (citing Ex. A15, Ex. C at 36, and Ex. E15)). Sometimes, arrestees are not even brought into court. *E.g.* Appendix 1, row 12 (bond was set at $15,000 in D.V.'s absence, he had no lawyer at magistration, and he was "not brought up" at his first appearance when counsel was appointed (citing Ex. A12, Ex. C at 27–28, E12)). It is not possible to have a formal, on-the-record, adversarial bail hearing at that time. Dkt. 195-1 ¶ 124. Detained individuals typically remain in lock-up outside the courtroom. *Id.* ¶ 125. The case is almost always "reset," meaning that another hearing is scheduled, typically weeks in the future. *Id.* People who cannot pay for their release remain in detention, usually without ever having been brought into a courtroom. *Id.* ¶ 126. If a person wishes to have an evidentiary hearing concerning the appropriateness of the secured bond amount, or the need to keep the person in a jail cell pending resolution of the case, or whether less-restrictive conditions of release are available, the person's lawyer must file a motion and have a court proceeding scheduled for a later date. *Id.* ¶ 128. Pre-

---

[7] Direct Filing Order, available at https://www.justex.net/Courts/Criminal/CriminalCourts.aspx (visited 8/27/2020).

COVID-19, such a hearing was not likely to occur for more than a week. *Id.* ¶ 43, 128; Ex. F (docket schedules). Delays have worsened during the pandemic. *E.g.*, Hrg. Tr. 7/6/2020 at 16; Hrg. Tr. 5/28/2020 at 9–14. This hearing would be the first opportunity to present witnesses or other evidence and the first time a judge even conceivably makes findings on the record regarding pretrial release or detention. Dkt. 195-1 ¶ 128.

Automatic use of secured bail causes significant harm, including worse case outcomes, wrongful convictions of people who plead guilty because it is the fastest way out of jail, racial disparities in convictions and jail population, family separation, and instability in employment, housing, medical care, and care for relatives.[8] *Id.* ¶¶ 139–40, 144, 162, 163, 165 166 & n.49. Defendants have no basis to believe that money bail serves any government interest as well as less-restrictive alternatives that do not result in the mass pretrial detention of people who are poor. Movants have not even studied the question. *Id.* ¶¶ 155–61, 167.[9]

Since March 2020, people detained in the Harris County Jail face another irreparable harm: a heightened risk of contracting am uncurable, deadly disease. *Id.* ¶ 168. The Jail is ill-equipped to prevent the virus from spreading. *Id.* ¶ 170. On March 29, 2020, the Houston Chronicle reported that the first detained person in the Harris County Jail had tested positive for COVID-19. *Id.* ¶ 171. The same day, Governor Abbott issued Executive Order GA-13, which purports to prohibit anyone charged with a crime involving "violence" and anyone with a prior conviction for a crime involving "violence" (no matter how old the conviction and regardless of the current charge), from

---

[8] *ODonnell v. Harris Cty.*, 892 F.3d 147, 154–55 (5th Cir. 2018) (upholding findings on harms of pretrial detention).

[9] *ODonnell* upheld this Court's findings on the efficacy of secured bail as compared to unsecured bail and nonfinancial conditions, stating: "The court's review of reams of empirical data suggested the opposite: that 'release on secured financial conditions does not assure better rates of appearance or of law-abiding conduct before trial compared to release on unsecured bonds or nonfinancial conditions of supervision.' Instead, the County's true purpose was 'to achieve pretrial detention of misdemeanor defendants who are too poor to pay, when those defendants would promptly be released if they could pay.' In short, 'secured money bail function[ed] as a pretrial detention order' against the indigent misdemeanor arrestees." *ODonnell v. Harris Cty.*, 892 F.3d 147, 154 (5th Cir. 2018).

being released on unsecured bail, regardless of any individualized proceedings or findings by a judge. *Id.* ¶ 172; Dkt. 39-1.[10] After GA-13 was issued, the number of COVID-19 cases in the jail exploded. *Id.* ¶ 175. By August 20, 2020, thousands of inmates had tested positive, three had died,[11] and four were in the hospital. Dkt. 251. Notwithstanding this Court's portrayal of the situation, Dkt. 122 at 3, the jail population has increased.[12]

On March 20, 2020, the Judges promulgated a General Order authorizing the immediate post-arrest release on a personal bond of people charged with certain offenses. Dkt. 32-6. On April 2, 2020, they amended the Order to add additional offenses, but, consistent with GA-13, excluded anyone with "a prior conviction involving [] physical violence or the threat of physical violence," among others. Dkt. 214-7. The Orders have done virtually nothing to decrease the jail population because of their many policy-based exclusions and because the Judges refuse to provide formal hearings at which they make the required findings. People who cannot pay secured bail wait weeks or months for any hope of an adversarial hearing to challenge pretrial detention.

## B.     Relevant Facts About the Named Plaintiffs

On January 21, 2019, Dwight Russell, Johnnie Pierson, and Joseph Ortuno filed this civil rights class action on behalf of themselves and a class of similarly situated people. Dkt. 1. At that time, each was being detained due to inability to pay a secured money bail amount. Dkt. 1-1 ¶¶ 4, 7; Dkt. 1-2 ¶¶ 4–5, Dkt. 1-3 ¶¶ 4, 12–13; Ex. A(1)–(5). No judge had made a finding that their detention served any government interest. Dkt. 1-1 ¶¶ 5–6; Dkt. 1-2 ¶¶ 6–7; Dkt. 1-3 ¶ 5; Ex. A1–

---

[10] Hearing Officers may *not* issue personal bonds under the Executive Order, even for "health or medical" reasons. Dkt. 53-1 at 4. Criminal penalties are associated with violation of GA-13. Hrg. Tr. 4/7/20 at 72:14–17, 22–25.

[11] St. John Barned-Smith, *A third Harris County jail inmate sick with COVID-19 has died* (May 13, 2020), available at https://www.houstonchronicle.com/news/houston-texas/houston/article/A-third-Harris-County-jail-inmate-sick-with-15268499.php.

[12] The Sheriff's public dashboard shows that on June 10, there were 8133 people detained in the jail, including 5723 people detained pretrial on felony charges. On July 10, the numbers were 7975 and 5644. On August 10, the numbers were 8236 and 5708. And on Saturday, August 22, the numbers were 8274 and 5779. *See* Total Jail Population Stats, https://charts.hctx.net/dr00226/App/DR15AUG19All.

A5; Ex. C at 1–12; *see generally* Appendix 1, rows 1–5. They faced weeks of detention prior to any opportunity to challenge those conditions at an individualized bail hearing, on the record with evidence and argument. Dkt. 195-1 ¶¶ 43, 128. The named Plaintiffs moved for class certification. Dkt. 2; *see also* Dkt. 11 (Amended Motion to Certify Class). Each Plaintiff eventually was released from pretrial custody. *See* Ex. E3 at 7 (released after pleading guilty); Ex. E2 at xx (released on a surety bond after two weeks of unconstitutional detention); Ex. E1 at xx (released on a surety bond after two months of unconstitutional detention). At any moment, thousands of people are in the transitory class. Dkt. 195-1 ¶¶ 180–81.[13]

On May 6, 2020, Plaintiffs amended their Complaint to add two named Plaintiffs—Christopher Clack and Maurice Wilson. They were detained in the jail, could not afford to purchase release, and were subject to the same policies. Dkt. 195-2 ¶¶ 11, 21, 22, 47–55, 57–64; Ex. A4–A5, Ex. C at 8–12; Appendix 1, rows 4–5. After GA-13 was issued, they were prohibited from release on a personal bond. *Id.* ¶¶ 56, 65. Mr. Pierson was also barred from release by GA-13. In March 2020, Mr. Pierson was alleged to have violated the terms of his deferred adjudication in a case arising after he sued. He was remanded to custody of the Harris County Jail, where he was detained from March 6 to April 7. Dkt. 66-5 (Declaration of Alex Bunin) ¶¶ 8–11. Relying on GA-13, the DA's Office objected to releasing him because of a prior "violent" conviction. *Id.* ¶ 10.

## V. Summary of the Argument

Plaintiffs allege violations of two substantive rights under the federal Constitution: the right to pretrial liberty and the right against wealth-based detention. Plaintiffs seek substantive relief: an order stating that consideration of less-restrictive alternatives and a finding of necessity to detain are required prior to issuing or enforcing an order to pay unaffordable bail. Plaintiffs also

---

[13] Jail Population Statistics, https://charts.hctx.net/dr00226.

seek procedural relief: an order identifying the procedural protections required to ensure the accuracy of any decision to detain, including an adversarial, on-the-record hearing with counsel and application of the clear-and-convincing-evidence standard. Movants' assertions regarding standing and mootness confuse those doctrines with the merits and fail under binding precedent. None of Movants' other arguments have merit. The motions should be denied

## VI.    Argument

### A.    Plaintiffs Seek Substantive and Procedural Relief for Violations of Their Federal Substantive Due Process and Equal Protection Rights

Plaintiffs' constitutional claims have both substantive and procedural components. "It is axiomatic that procedural protections must be examined in terms of the substantive rights at stake." *See, e.g.*, *Washington v. Harper*, 494 U.S. 210, 220 (1990). The Court must "identify[] the contours of the substantive right" and then "decid[e] what procedural protections are necessary to protect that right. *Id.* Thus, in *Harper*, the Court recognized the liberty interest at issue—"avoiding the unwanted administration of antipsychotic drugs," *id.*—and considered the "factual circumstance [that] must exist" before the government could infringe that interest, *id.* at 220, holding that a substantive finding that "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest" is required. *Id.* at 227. Then, the Court considered "what procedural protections are necessary to ensure that the decision to medicate an inmate against his will is neither arbitrary nor erroneous under the standards we have discussed above." *Id.* at 228. The Court held that the institution's policy requiring "notice, the right to be present at an adversary hearing [presided over by a medical professional], and the right to present and cross-examine witnesses," afforded sufficient procedural safeguards to protect the substantive interest at stake because they would adequately assure accurate factual findings about dangerous and medical interest, *id.* at 234.

Here, Plaintiffs' substantive rights flow from two separate lines of precedent. First, equal protection and due process forbid jailing a person solely because of her inability to make a payment. *ODonnell v. Harris County*, 892 F.3d 147, 161 (5th Cir. 2018); *Bearden v. Georgia*, 461 U.S. 600, 665 (1983); *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978); *Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972). Second, "substantive due process" protects an "interest in liberty" that is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987).  In *Salerno*, the Supreme Court held that there is a "general rule of substantive due process that the government may not detain a person prior to judgment of guilt in a criminal trial." *Id.* at 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Like virtually all other individual rights, the rights in this case are not absolute; they can be infringed if certain "factual circumstance[s]" exist, *Harper*, 494 U.S. at 220, specifically, if the government demonstrates that pretrial detention is necessary because less-restrictive alternatives are inadequate to meet a compelling government interest in public safety or court appearance.

As in *Harper*, after identifying the substantive rights at issue and the factual circumstance that must exist to justify depriving them, the Court must identify the procedural safeguards required to prevent an "erroneous or arbitrary" deprivation of those interests. *See Harper*, 494 U.S. at 228; *ODonnell*, 892 F.3d at 157; *Carey v. Piphus*, 435 U.S. 247, 262 ("[The] purpose of procedural due process is to . . . minimize the risk of mistaken deprivations of protected interests."). The safeguards required to ensure the accuracy of any finding that pretrial detention is necessary include notice, an opportunity to be heard and to present and confront evidence at an adversarial hearing with counsel, and findings on the record by clear and convincing evidence explaining the basis for detention. *See Houston Federation of Teachers, Local 2415 v. Houston Ind. Sch. Dist.*, 251 F. Supp. 3d 1168, 1176 (S.D. Tex.) ("[P]rocedural due process rules are shaped by the risk of

error inherent in the truth-finding process[.]" (quoting *Carey*, 453 U.S. at 259)). *See infra* Part VI(A)(5). It is uncontested that Defendants do not make these findings or provide such safeguards before detaining Plaintiffs. Dkt. 195-1 ¶¶ 102, 106, 127.

### 1.    The Constitution protects a right against wealth-based detention

The Equal Protection and Due Process Clauses protect a substantive right against wealth-based detention. *Rainwater*, 572 F.2d at 1057 ("The incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.").[14] In *ODonnell*, the Fifth Circuit held that Harris County's misdemeanor bail practices—in which "poor arrestees . . . are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond"—create a "basic injustice." 892 F.3d at 162 (holding that heightened scrutiny applies when the government infringes the right against wealth-based detention and that Harris County failed to justify its practices under that scrutiny). For the same reasons, the County's felony bail practices create the same "basic injustice." Dkt. 195-1 ¶ 92.

### 2.    The Constitution protects a "fundamental" interest in liberty

This case involves a second substantive constitutional right: the "fundamental" federal interest in bodily liberty. *Salerno*, 481 U.S. at 750 (recognizing the "importance and fundamental nature" of "the individual's strong interest in liberty"); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.") (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (same); *Lopez-Valenzuela v.*

---

[14] *ODonnell*, 892 F.3d at 161; *Tate v. Short*, 401 U.S. 395 (1971); *Williams v. Illinois*, 399 U.S. at 244; *Bearden*, 461 U.S. at 665; *Frazier*, 457 F.2d at 728; *see also* Brief of Conference of Chief Justices as Amicus Curiae in Support of Neither Party at 35, *ODonnell*, 2017 WL 3536467, at *24 (5th Cir. Aug. 9, 2017).

*Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to Arizona pretrial detention law because it infringed on the "fundamental" right to pretrial liberty).[15]

The State asserts that "[e]very district court in this Circuit has rejected such a theory in the bail context." Dkt. 214 at 25. If "such a theory" refers to Plaintiffs' claim that their substantive due process right to pretrial liberty requires a finding of necessity and procedural safeguards prior to its infringement, Intervenors are wrong. For example, the Eastern District of Louisiana agreed with Plaintiffs in every respect. *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314, 320 (E.D. La. 2018) (holding that "[p]laintiffs have been deprived of their fundamental right to pretrial liberty"), *aff'd on other grounds*, 937 F.3d 525 (5th Cir. 2019) (equal protection and due process require, *inter alia*, a "determination of the necessity of pretrial detention").

The State ignores both the binding law set forth above and numerous state supreme courts and district courts that have held that presumptively innocent people have a fundamental interest in bodily liberty protected by the Fourteenth Amendment. *Valdez-Jimenez v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 460 P.3d 976, 984–85 (Nev. 2020); *Brangan v. Commonwealth*, 80 N.E.3d 949, 961 (Mass. 2017); *Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1376 (N.D. Ala. 2018), *appeal filed sub. nom. Hester v. Gentry*, No. 18-13894 (11th Cir. Sept. 13, 2018); *McNeil v. Cmty. Prob. Servs., LLC*, 1:18-cv-33, 2019 WL 633012, at *14-15 (M.D. Tenn. Feb. 14, 2019), *aff'd on other grounds*, 945 F.3d 991 (6th Cir. 2019).[16]  The State does not even attempt to square its position with *Salerno*, *Foucha*, or the decades of precedent on which those cases rely.

---

[15] *See also In re Humphrey*, 19 Cal. App. 5th 1006, 1049 (Ct. App. 2018) (review pending) (recognizing the "fundamental constitutional right to pretrial liberty"); *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2018 WL 424362, at *6 (N.D. Cal. Jan. 16, 2018) (holding that pretrial detention "implicates plaintiffs' fundamental right to liberty"); *Brangan v. Commonwealth*, 80 N.E.3d 949, 961 (Mass. 2017) (holding that the right to pretrial liberty is "fundamental"); *Valdez-Jimenez v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 460 P.3d 976, 984–85 (Nev. 2020) (holding that "substantive due process principles" "mandated" the court's "conclusion that bail may be imposed only where necessary").

[16] Even people whose liberty is diminished because they are on parole or probation have an interest in bodily liberty that the Fourteenth Amendment protects. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that although a

Most chilling, the State's position—that there is no federal interest in bodily liberty prior to trial—would mean that Texas could pass a law requiring indefinite pretrial detention based solely on probable cause of every person arrested without any hearing and without a determination that detention served any purpose. According to the State, such a law would not violate the United States Constitution because federal law does not protect pretrial liberty at all. Both the Arizona Supreme Court and the Ninth Circuit struck down such laws under federal due process, even when they were narrowly targeted toward serious felony sexual offenses and felonies committed by non-citizens. *Simpson v. Miller*, 387 P.3d 1270, 1276-1277 (Ariz. 2017), *cert. denied sub nom. Arizona v. Martinez*, 138 S. Ct. 146 (2017); *Lopez-Valenzuela*, 770 F.3d at 780-781.

### a.   The interest in pretrial liberty is "fundamental" but not absolute

Movants fight a straw-man. They repeatedly assert that Plaintiffs seek a "right to be free from *any form* of wealth-based detention." Dkt. 214 at 7 (emphasis added); *see also id.* at 8, 11, 12, 23–24; Dkt. 228 at 8–9, 23–25. But Plaintiffs acknowledge that there are almost always "conditions under which competing state interests might outweigh" even an individual interest that is "fundamental." *Harper*, 494 U.S. at 220 (quoting *Mills v. Rogers*, 457 U.S. 291, 299 (1982)); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (explaining that even "fundamental liberty interests" can be overcome).[17] Thus, although "racial classifications" infringe Equal Protection rights, universities may use race in admissions if doing so is "necessary" to achieve a compelling interest in diversity. *Fisher v. University of Texas at Austin*, 570 U.S. 297, 311–12. Similarly,

---

parolee's liberty is "indeterminate," it "includes many of the core values of unqualified liberty," and is protected by the Fourteenth Amendment."); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (extending *Morrissey* to probation); *Bearden v. Georgia*, 461 U.S. 660, 671 (1983) (affirming "the significant interest of the individual in remaining on probation").

[17] *See also District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("Like most rights, the right secured by the Second Amendment is not unlimited."); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 685 (6th Cir. 2016) (*en banc*) (holding that the right to bear arms "is not unlimited, just as the First Amendment's right of free speech [is] not" (quoting *Heller*, 554 U.S. at 595)); *Hollis v. Lynch*, 827 F.3d 436, 444 (5th Cir. 2016) (same).

children convicted of homicide have a substantive constitutional right against being sentenced to mandatory life without parole. *Montgomery v. Louisiana*, 136 S.Ct. 718, 726 (2016). But that right can be overcome if the government shows that the child is "irreparabl[y] corrupt[]." *Id.* at 736. The same is true of Plaintiffs' interest in pretrial liberty. *Salerno* made clear that although Plaintiffs' interest is "fundamental," it "may . . . be subordinated to the greater needs of society" "in circumstances where the government's interest is sufficiently weighty." 481 U.S. at 750-51. The crux of Plaintiffs' claims is merely that Defendants must demonstrate that "the government's interest is sufficiently weighty" before depriving Plaintiffs of their rights.

> **b.    *ODonnell* does not hold that there is no interest in pretrial liberty**

Neither this Court nor the Fifth Circuit in *ODonnell* addressed the federal interest in pretrial liberty, which arises under substantive due process. Movants' insistence to the contrary does not make it so. In fact, this Court already rejected Movants' interpretation of *ODonnell*. In its preliminary injunction opinion in *ODonnell*, the Court stated that "plaintiffs' claims and the court's conclusions do not rely on substantive due process." *See ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1147 (S.D. Tex. 2017). The Court then engaged in a "procedural, not substantive, due process analysis" to determine the *procedural* protections necessary to protect a *state-created* liberty interest.[18] *See id.* On appeal, the Fifth Circuit recognized that "[l]iberty interests protected by the due process clause can arise from two sources, the Due Process Clause itself and the laws of the States," and stated that "[h]ere, our focus is the *law of Texas*." 892 F.3d at 157 (emphasis

---

[18] Plaintiffs do not allege a violation of a state-created liberty interest and do not seek a ruling on the findings or procedures required to protect any such right. Plaintiffs' claims arise purely under the federal Constitution.

added).[19] The Fifth Circuit said nothing about the substantive right to bodily liberty. It did not cite *Salerno*, let alone overrule it. Scholars have noted that *ODonnell* did not reach this question.

On remand, the *ODonnell* plaintiffs argued that the revised preliminary injunction should include a requirement under federal due process that a judicial officer make a finding of necessity before requiring unaffordable bail.[20] *ODonnell v. Harris County*, Case No. 4:16-cv-01414 (S.D. Tex. June 25, 2018), Dkt. 421 (Plaintiffs' Response to Court Order Concerning the Proposed Tentative Injunction) at 6–7. The misdemeanor judges asserted that "Plaintiffs' initial preliminary injunction request was based only on a claim of *procedural*, not substantive, due process," and "the Fifth Circuit's mandate prohibits [] preliminary relief based on any such substantive right." *Id.*, Dkt. 420 (Fourteen Judges' Response to the Court's Proposed Amended Preliminary Injunction) at 11. This Court agreed that *ODonnell* had not addressed the substantive due process claim Plaintiffs were attempting to raise on remand:

> Basing relief on substantive due process is improper at this stage. As this court noted . . ., "the plaintiffs' claims and the court's conclusions do not rely on substantive due process." [] Similarly, the Fifth Circuit's analysis and suggestions recognized only procedural due process and equal protection violations. *ODonnell*, 892 F.3d at 163.

---

[19] Defendants' comments in footnote 13 (Dkt. 228 at 24–25) misunderstand constitutional law. Plaintiffs are not arguing that their federal rights merit more protection than a different state-created liberty interest. The point is that this case raises *different* federal law issues than *ODonnell*—*ODonnell* did not have before it or issue a ruling on a federal substantive interest in pretrial liberty. Separately, whether or not other provisions of the Texas Constitution, like other state constitutions, are *more* protective than federal law (forbidding pretrial detention *at all* in some circumstances) is not a question for the federal courts, and Plaintiffs have conceded that the federal Constitution permits their pretrial detention after appropriate individualized findings and safeguards.

[20] The *ODonnell* plaintiffs based their argument on language in this Court's preliminary injunction opinion, and the Supreme Court's decision in *Harper* and other cases explaining the relationship between substantive and procedural rights. *See ODonnell*, 251 F. Supp. 3d at 1140 ("[P]retrial detention of indigent defendants . . . is permissible only if the court finds, based on evidence and in a reasoned opinion, either that the defendant is not indigent and is refusing to pay in bad faith, or that no less restrictive alternative can reasonably meet the government's compelling interest"); *id.* at 1145 (before requiring an unaffordable financial condition, a judicial officer must make a finding that wealth-based detention "is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial."); *see generally infra* Part VI(A)(3), (5).

*ODonnell v. Harris County*, 321 F. Supp. 3d 763, 774–75 (S.D. Tex. 2018). In rejecting a "substantive" preliminary injunction remedy in *ODonnell II*, the stay motions panel again made clear that plaintiffs' preliminary injunction challenge was only to a "procedural harm." *ODonnell v. Goodhart*, 900 F.3d 220, 228 (5th Cir. 2018).[21]

Movants ignore this history and repeatedly cite out-of-context the six-word phrase from *ODonnell* that "no such right is in view" to argue that *ODonnell* held there is no substantive due process interest in pretrial bodily liberty. But the Fifth Circuit was addressing the notion of an absolute right to pretrial release: it rejected the first preliminary injunction's "outright elimination of secured bail for indigent misdemeanor arrestees," which resulted in mandatory pretrial release. The court stated that mandatory release would make sense only "if one assumes a fundamental substantive due process *right to be free from any form of wealth-based detention*," and that "no *such right* is in view." 892 F.3d at 163 (emphases added). The court simply identified why the first injunction exceeded what *Bearden* and *Rainwater* require: it did not allow for detention, even when the government demonstrated that no alternative was available.

This is the key point: Plaintiffs do not argue that there is an absolute "right to be free from *any form* of wealth-based detention." The question is what factual circumstances justify infringement of Plaintiffs' interests, and what procedures sufficiently ensure the accuracy of a finding that those circumstances exist. *See infra* Part VI(A)(4) (a finding of necessity is required); Part VI(A)(5) (robust procedural safeguards are required to ensure the accuracy of that finding). Movants cannot rewrite the history of *ODonnell* and convert that case into one that overruled Supreme Court and Fifth Circuit precedent so that they can avoid litigating this issue. A court cannot issue binding precedent on an issue it did not address. *Harper v. Va. Dept. of Taxation*, 509

---

[21] Defendants point to plaintiffs' briefs in *ODonnell*, *see* Dkt. 228 at 24–25, in which plaintiffs *asked* for a different interpretation of *ODonnell I*. But this Court and the Fifth Circuit rejected plaintiffs' requested interpretation.

U.S. 86, 118 (1993); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37–38 (1952). The Fifth Circuit did not address the findings and procedures required to overcome the fundamental right to liberty. Thus, nothing in *ODonnell* forecloses such a claim in *this* case.[22]

### 3.     Violations of These Substantive Rights Require Substantive Remedies

Movants' position is nonsensical for another related reason: substantive rights cannot be protected through purely procedural remedies. The Supreme Court has repeatedly recognized that violations of substantive rights require substantive remedies. For example, in the context of race discrimination under the Fourteenth Amendment, the Court explained that "consideration of workable race-neutral alternatives"—*i.e.*, a procedural remedy—"is of course necessary, but it is not sufficient to satisfy strict scrutiny: The reviewing court must ultimately be satisfied that no workable race-neutral alternatives would" achieve the government's compelling interest. *Fisher*, 570 U.S. at 312. If, after consideration of alternatives, a race-neutral alternative *could* achieve the government's compelling interests, then the government will be prohibited from considering race, *id.*—which is substantive relief. Similarly, in the contexts of the substantive rights protected by the First and Second Amendments, the government cannot prohibit an individual from protesting or from possessing a firearm simply because the government holds a hearing at which it *considers* alternatives to such bans. If the hearing demonstrated that there was no interest served by the prohibition, or that the prohibition was not sufficiently tailored to the interest, then the prohibition would be unconstitutional, regardless of how procedurally robust the hearing. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 769–70 (1994) (prohibiting protests within 36 feet of an abortion clinic after considering alternative means of protecting access and finding that the "buffer zone [] burdens no more speech than *necessary* to accomplish the governmental interest"); *id.*

---

[22] Nor does *ODonnell* foreclose Plaintiffs' claims that the right against wealth-based detention requires counsel and application of the clear-and-convincing-evidence standard, which were not litigated at the preliminary stage.

(rejecting other protest restrictions because they *did* "burden[] more speech than necessary to protect access"); *Kachalsky v. County of Westchester*, 701 F.3d 81, 98 (2d Cir. 2012) (upholding a handgun restriction after considering less-restrictive alternatives and finding that, because "widespread access to handguns in public increases the likelihood that felonies [of]  death," the infringement was "substantially related to the state's important public safety interest").

Likewise here: because substantive interests protect against unjustified wealth-based detention and pretrial detention, a purely procedural remedy (*e.g.* a hearing at which alternatives to wealth-based detention are considered) is insufficient to remedy the harm. Substantive relief, requiring a finding that factual circumstances exist to justify infringement of the right, is essential. That is precisely what *Salerno*, *Bearden*, and *Rainwater* all held. In *Salerno*, the Court upheld the Bail Reform Act because it required a judicial officer to make a finding, after an adversary hearing, "that no conditions of release can reasonably assure the safety of the community." 481 U.S. at 750. In *Bearden*, the Court stated that a person may be detained due to inability to pay "[o]nly if the sentencing court *determines* that alternatives to imprisonment are not adequate[.]" 461 U.S. at 672 (emphasis added). And in *Rainwater* this Court had "no doubt" that if "appearance at trial could reasonably be assured by … alternate [conditions] of release, pretrial confinement for inability to post money bail would" be unconstitutional. 572 F.2d at 1058. A contrary approach would enable a court to hold a hearing on pretrial detention, determine that pretrial release was perfectly acceptable and that no interest is served by detention, but nonetheless order the person detained simply because the court held a hearing. Under *Harper*, the entire point of procedural safeguards is to sufficiently ensure the accuracy of *the appropriate substantive finding*.

*ODonnell*'s discussion of procedural requirements did not preclude substantive ones; it reflected the fact that many substantive holdings "ha[ve] a procedural component." *Montgomery*

*v. Louisiana*, 136 S. Ct. 718, 734 (2016). As *Harper* explained, where there is a substantive right, there must also be "minimum procedures … for determining that the individual's liberty interest actually is outweighed in a particular instance." 494 U.S. at 220. "[P]rocedural requirement[s are] necessary *to* implement a substantive guarantee." *Montgomery*, 136 S. Ct. at 734. This basic pillar of constitutional adjudication is again confirmed by *Bearden*, *Rainwater*, and *Salerno*. *Bearden* recognized the procedural component of its substantive holding, stating that "it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." 461 U.S. at 668–69. *Rainwater* concluded that "[t]he incarceration of those who cannot [meet a bail schedule], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection." 572 F.2d at 1057. And *Salerno* recognized that government conduct infringing substantive rights "must still be implemented in a fair manner." 481 U.S. at 746 ("This requirement has traditionally been referred to as 'procedural' due process."); *id.* at 755 ("numerous procedural safeguards . . . must attend this adversary hearing" which might result in an individual's detention).

*ODonnell*'s discussion of procedural requirements in the context of the state-created liberty interest at issue there does not mean that the *sole* constitutional constraint on pretrial detention is procedural. If Defendants violate Plaintiffs' substantive rights, the Court must craft a *substantive* remedy, specifically, prospective relief ordering that pretrial detention absent a finding that the required "factual circumstances" exist to justify it violates the Fourteenth Amendment. *See Harper*, 494 U.S. at 820; Dkt. 195-1 at 50.

### 4.   Pretrial detention is constitutionally permissible if it is necessary to serve a compelling government interest

Given the "fundamental" nature of the interest in pretrial bodily liberty, the government must demonstrate that detention is necessary to serve a compelling interest because less-restrictive

alternatives are inadequate. These are the "factual circumstances" required to justify detention. Defendants require unattainable financial conditions of release that function as de facto detention orders without any such finding. Dkt. 195-1 ¶¶ 102, 106, 127; Ex. A1–A18; Ex. C; Appendix 1; *Schultz*, 330 F. Supp. 3d 1344 at 1376; *Caliste*, 329 F. Supp. 3d 296 at 320; *Brangan*, 80 N.E.3d at 963; *Humphrey*, 228 Cal. Rptr. 3d at 517; *Valdez-Jimenez*, 460 P.3d at 984–85.

### a. An unattainable financial condition is the functional equivalent of an order of pretrial detention

Applying *Salerno*, every appellate court to consider the question has held that an order requiring an unattainable financial condition of release is a de facto order of pretrial detention. *ODonnell*, 892 F.3d at 162 (Defendants' practices result in the "absolute deprivation of [indigent misdemeanor arrestees'] most basic liberty interests—freedom from incarceration"); *see also, e.g.*, *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991);[23] *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014); *Brangan*, 80 N.E.3d at 963; *Humphrey*, 228 Cal. Rptr. 3d at 517. This Court reached the same conclusion, stating that when secured money bail is set "at unpayable amounts," it operates "as [a] de facto pretrial detention order," 251 F. Supp. 3d at 1150; *id.* at 1131, 1156, 1161, and held that Harris County had a "policy and practice of imposing secured money bail as de facto orders of pretrial detention." *Id.* at 1059–60, *aff'd as modified*, 892 F.3d 147 (emphasis added).

---

[23] "[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause [detention]— it must satisfy the procedural requirements for a valid *detention* order[.]" *Mantecon-Zayas*, 949 F.2d at 550.

> **b.     Pretrial detention requires the government to demonstrate necessity, regardless of whether the detention results from a transparent order or a de facto one**

Pursuant to either the *Bearden-Frazier-Rainwater* wealth-based detention cases, or the fundamental right to pretrial liberty articulated in *Salerno*, an order to pay unaffordable bail that results in detention is unconstitutional unless the government demonstrates that less-restrictive alternatives are inadequate and pretrial jailing is necessary to serve a compelling government interest. Because a person's "interest in liberty" is "fundamental," the Supreme Court has held that it is a "'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial." *Salerno*, 481 U.S. at 750, 749. This right to pretrial liberty is not absolute (*see supra* Part VI(A)(2)(a)): the government may deprive a person of pretrial liberty if its interest is sufficiently compelling and the deprivation is narrowly tailored to serve that interest. *Salerno*, 481 U.S. at 749, 751 (describing the government interest in preventing serious pretrial crime as "compelling" and the statute as "careful[ly] delineat[ing] . . . the circumstances under which detention will be permitted"); *Reno v. Flores*, 507 U.S. 292, 301-302 (1993) (citing *Salerno* as part of its "line of cases which interprets … 'due process of law' to … forbid[] the government to infringe certain  fundamental' liberty interests … unless the infringement is narrowly tailored to serve a compelling state interest."); *Foucha*, 504 U.S. at 81 (explaining that the statutory scheme *Salerno* addressed was "narrowly focused on a particularly acute problem in which the government interests [were] overwhelming."); *see also Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978).

In light of *Reno* and *Foucha*, the *en banc* Ninth Circuit held that "*Salerno* applied heightened scrutiny." *Lopez-Valenzuela*, 770 F.3d at 780-781; *id.* at 780, meaning that the government must demonstrate that its "infringement [of pretrial liberty] is narrowly tailored to serve a compelling state interest." Every appellate court to consider the question has agreed,

including the Supreme Courts of Arizona, Nevada, and Massachusetts, as well as the ourt of

Appeals of California. *Simpson*, 387 P.3d at 1276-1277 ("heightened scrutiny" applies where, as

in *Salerno*, the "fundamental" "right to be free from bodily restraint" is implicated).[24] Under these

cases, the government must establish that pretrial detention using unattainable bail is "narrowly

tailored to serve a compelling state interest." *Reno*, 507 U.S. at 302; *see also, e.g.*, *Reem*, 2017 WL

6765247, at *1 ("The due process clauses of the Fifth and Fourteenth Amendments bar pretrial

detention unless detention is necessary to serve a compelling government interest.").

Independently, government action that infringes the right against wealth-based detention

must be necessary to serve a compelling interest. In *Frazier*, the Fifth Circuit invalidated a practice

requiring an indigent person to either pay a fine or be jailed after conviction because the alternative

jail term was not "necessary to promote a compelling governmental interest." 457 F.2d at 728

(quotations omitted). *Frazier* explained that there were "far less onerous alternatives" that would

satisfy the "state's interest in collecting its fine revenue." *Id.*; *see id.* at 729–30 (reviewing adequate

alternatives available). *Bearden* similarly required "careful inquiry" into the state's asserted

interests and "the existence of alternative means for effectuating" those interests. 461 U.S. at 666,

667; *id.* at 672 ("Only if the sentencing court determines that alternatives to imprisonment are not

adequate in a particular situation . . . may the State imprison a probationer[.]"); *see also Rainwater*,

572 F.2d at 1057 (explaining that the same principles apply prior to trial and the Constitution

requires "meaningful consideration of . . . alternatives" to "incarceration of those who cannot" pay

a financial condition of release, and a finding that secured money bail "is *necessary* to reasonably

assure defendant's presence at trial." (emphasis added)). If the government's interest in

---

[24] *Valdez-Jimenez*, 460 P.3d at 984–85 (holding that unaffordable bail "resulting in continued detention . . . infringes on the individual's [fundamental] liberty interest," and "substantive due process requires [such] infringement be necessary"); *Humphrey*, 19 Cal. App. 5th at 1028, 1037 (same); *Brangan*, 80 N.E.3d at 962 (same); *Caliste*, 329 F. Supp. 3d 296 at 320 (same).

24

"appearance at trial could reasonably be assured by … alternate [conditions] of release, pretrial confinement for inability to post money bail" is unconstitutional. *Id.* at 1058.[25]

*ODonnell* likewise held that "heightened scrutiny" applies to Harris County's wealth-based bail practices. *ODonnell*, 892 F.3d at 161; *id.* at 157 (affirming this Court's equal protection holding because detention due to inability to pay requires "'meaningful consideration of other possible alternatives'" (quoting *Rainwater*, 572 F.2d at 1057)); *id.* (a court must explain why a "'particular financial requirement is a *necessary* part of the conditions for release' when setting a bond that a detainee cannot pay" (quoting *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (emphasis added)))). Regardless of the substantive label, the cases are clear that depriving a person of liberty requires a finding that detention is necessary because less-restrictive alternatives are inadequate to meet the government's interests in court appearance or public safety.[26]

### c.    The State is wrong that rational basis applies

The State argues that "rational basis review applies" because Plaintiffs "received all bail process required by *ODonnell*." *See* Dkt. 214 at 27–29 (citing *ODonnell II*). But this argument misunderstands that case. Neither *ODonnell* nor *ODonnell II* addressed the substantive findings and procedural protections to which Plaintiffs are entitled *at* a bail hearing—indeed, the motions panel did not cite *Salerno*, *Williams*, *Tate*, *Bearden*, or *Rainwater*—decisions it could not overrule and which are binding on this Court. *ODonnell II* instead addressed the type of scrutiny required

---

[25] *See also Buffin*, 2018 WL 424362, at *8 ("[S]trict scrutiny applies to plaintiffs' Due Process and Equal Protection claims."); *Brangan*, 80 N.E.3d at 965 (holding that an order requiring unattainable bail must explain why "the defendant's risk of flight is so great that no alternative, less restrictive financial or nonfinancial conditions will suffice to assure his or her presence at future court proceedings"); *Humphrey*, 19 Cal. App. 5th at 1026 (same).

[26] Strict scrutiny and intermediate scrutiny are both forms of "heightened" scrutiny. *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1138 (S.D. Tex. 2017). Neither *Rainwater* nor *Frazier* nor *Bearden* used the language of tiers of scrutiny, but all required consideration of less-restrictive alternatives and a finding that detention was necessary before the government could require an unattainable payment.

for the first 48 hours of detention *before* a bail hearing. 900 F.3d at 228 (confining its analysis to the first 48 hours of detention).

The motion panel's comment in *ODonnell II* about rational basis review rested on a factual assertion that does not apply here, specifically that people detained for up to 48 hours "do not face the same dire prospects" as those facing "lengthy pretrial incarceration." 900 F.3d at 228.[27] Plaintiffs have alleged that their unconstitutional detention lasts weeks or months, Dkt. 195-1 ¶¶ 38–43,[28] and that even brief periods of pretrial detention inflict significant harm, *id.* ¶ 97 ("The inmate processing center is notoriously crowded with people who are in moments of extreme crisis, having just been arrested, separated from their children and families, and deprived of their freedom. Some are suffering from painful withdrawal symptoms or mental health episodes. Many are worried about missing shifts at their jobs or making rent payments.");[29] *id.* ("The risk of suicide . . . is at its highest in the hours and days immediately following arrest."); *id.* ¶ 10 ("Between 2009 and the present 125 people died in the Harris County Jail awaiting trial, including a woman this month who committed suicide while being detained due to her inability to pay $3,000 money bail.");[30] *id.* ¶ 9 ("[E]ven a couple of days in pretrial detention makes a person more likely to

---

[27] That assertion is also wrong because it conflicts both with the Supreme Court's statement two years ago that "'[a]ny amount of actual jail time' is significant" and "has exceptionally severe consequences for the incarcerated individual and for society," *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018), and with the factual record affirmed by *ODonnell I*, *see ODonnell* 251 F. Supp. 3d at 1121–22 ("As a consequence [of pretrial detention of the indigent], they often lose their jobs, may lose their housing, be forced to abandon their education, and likely are unable to make their child support payments." (citation to record omitted)).

[28] Plaintiffs have already amassed evidence of these delays, *see* Dkt. 32-4 ¶ 48; Dkt. 66-5 ¶ 2; Dkt. 74-1 ¶¶ 22–23, and intend to further demonstrate them through data analysis, depositions, and other discovery.

[29] Dkt. 195-1 ¶ 97 ("Arrestees booked into the jail endure a lengthy, intrusive, and humiliating process that includes seizure of their property, bodily searches, personal questions about their physical health, and interviews requiring them to disclose private financial and mental health information. . . . The processing center is loud, dirty, and full of flies and noxious smells[.]").

[30] *See also* Elizabeth Zavala & Taylor Pettaway, *Update: Police ID female inmate at Bexar County Jail dies in apparent suicide* (July 20, 2020), available at https://www.chron.com/news/local/article/Woman-inmate-at-Bexar-County-Jail-dies-in-15419036.php#photo-19397855 (describing the suicide of a woman who was detained in Bexar County due to inability to pay $5,000); Keri Blakinger, *Harris County jail inmate dies by suicide days after misdemeanor arrest* (Jan. 16, 2019), available at https://www.chron.com/news/houston-texas/article/Harris-County-jail-inmate-dies-by-suicide-days-13538819.php (Ms. Whited's suicide marked the fifth in the jail in less than two years); Keri Blakinger, *Harris County inmate hangs herself, marking jail's 2nd apparent suicide in a month* (Aug. 15,

commit crimes in the future."). These usual (and constitutionally intolerable) harms are heightened by COVID-19, which has infected at least 1,435 people detained in the jail, killing at least three people, and causing serious and perhaps lasting illness to others. Dkt. 195-1 ¶ 168; Dkt. 232 ¶ 4.[31]

To be sure, *ODonnell II* is not persuasive on the limited question it addressed: whether rational basis review or some form of heightened scrutiny applies to the first 48 hours of wealth-based detention. *ODonnell II* suggested that heightened scrutiny would be triggered in "the absence of meaningful consideration of … alternatives." 900 F.3d at 226. The motion panel majority conflated two points that a merits panel would have corrected if the judges had not withdrawn their appeal: what government conduct *triggers* heightened scrutiny versus what government conduct *satisfies* heightened scrutiny. The scrutiny that applies in a given context is triggered by the nature of the right, not by what procedures the government uses to assess whether infringement of the right is justified. Were it otherwise, rational basis review (itself a substantive standard) would apply to *every important constitutional right* because "[a]n essential principle of due process" is that the government provide notice and an opportunity to be heard before depriving a person of "life, liberty, or property." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Under the State's approach, courts would apply rational-basis review, for example, to a university's use of race-conscious admissions because the university has a process for *considering* race-neutral alternatives, even though the Court has stated that "[c]onsideration [of race-based

---

2018), available at https://www.chron.com/news/houston-texas/article/Harris-County-inmate-hangs-herself-marking-13158942.php (Ms. Lyons was being detained pretrial on $1,500 secured bail for a non-violent, felony theft charge).

[31] St. John Barned-Smith, *A third Harris County jail inmate with COVID-19 has died* (May 13, 2020), available at https://www.houstonchronicle.com/news/houston-texas/houston/article/A-third-Harris-County-jail-inmate-sick-with-15268499.php. *See also post-COVID heart and brain problems linger, some coronavirus survivors find it's a long haul to recovery* (July 22, 2020), available at https://news.yahoo.com/as-post-covid-heart-and-brain-problems-linger-some-coronavirus-survivors-find-its-a-long-haul-to-recovery-165434453.html; Ed Yong, *COVID-19 Can Last for Several Months* (June 4, 2020), available at https://www.theatlantic.com/health/archive/2020/06/covid-19-coronavirus-longterm-symptoms-months/612679/.

alternatives] … is not sufficient to satisfy strict scrutiny." *See Fisher*, 570 U.S. at 312. That is not the law.[32]

Regardless, *ODonnell II* is not binding precedent. *Northshore Development, Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988) ("[A] motions panel decision is not binding precedent."). And even if, generally, decisions of stay panels were binding, *ODonnell II* could not bind this Court to the extent it conflicts with *ODonnell I*, *Frazier*, *Rainwater*, and *Bearden*.

The Court need not wade into any potential conflict between *ODonnell I and ODonnell II* because Movants raise these merits issues as part of clearly erroneous mootness and standing arguments, and even if rational basis review applies to the first 48 hours of pretrial detention, Plaintiffs must have an opportunity to develop a record showing the irrationality of the secured bail schedule. *Supra* n.32

### 5. To prevent an erroneous deprivation of Plaintiffs' substantive rights, Defendants must provide procedural protections

Procedural Due Process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). "Procedural due process rules are meant to protect persons not from the deprivation, but from *the mistaken or unjustified* deprivation of life, liberty, or property." *Carey*, 435 U.S. at 259 (recognizing "the risk of error inherent in the truth-finding process").

---

[32] And even if rational basis review applies, the Court should deny the motions to dismiss to allow Plaintiffs an opportunity to present evidence negating each conceivable rational basis. *See ODonnell v. Harris County*, 227 F. Supp. 3d 706, 730–31 (S.D. Tex. 2016) ("Even if the defendants were correct that rational-basis review applies, the court would still deny the motion to dismiss under 12(b)(6). . . . Courts are properly reluctant to dismiss without permitting plaintiffs to make a factual showing that a government policy is irrational."); *Kuromiya v. United States*, 37 F. Supp. 2d 717, 729–30 (E.D. Pa. 1999) (denying 12(b)(6) motion arguing that claims failed rational basis review because "plaintiffs must at least be given the opportunity" to prove the challenged policies are irrational).

Plaintiffs are deprived of two substantive liberty interests: their interest in not being detained solely because they cannot make a payment, *see Bearden*, 461 U.S. at 665 and their "fundamental" "interest in [pretrial] liberty." *Salerno*, 481 U.S. at 750. The second step of the procedural-due-process analysis—determining the procedures required for a valid pretrial detention order—proceeds under *Mathews v. Eldridge*, in which a court must balance: (1) "the private interest", (2) "the risk of an erroneous deprivation" absent each additional safeguard, and (3) the state's interest in not providing it. 424 U.S. 319, 335 (1976). Plaintiffs are entitled to notice; an inquiry into and findings concerning ability to pay; an adversarial, evidentiary hearing with counsel; consideration of less-restrictive alternatives; and, if a transparent or de facto order of detention, findings on the record by clear and convincing evidence that detention is necessary.

### a.    When considering financial conditions of release, the government must determine ability to pay

When the government contemplates requiring a secured financial condition of pretrial release, it must provide procedures adequate to determine whether the monetary condition will operate as a detention order. The Supreme Court, the Fifth Circuit, and this Court have held that, if the government seeks to condition physical liberty on a payment, due process requires notice that financial information will be collected and notice of the significance of the financial information; an inquiry into the person's ability to pay; and findings on the record as to whether the person can pay. *See Turner v. Rogers*, 564 U.S. 431, 447 (2011) (applying the *Mathews* test and holding that, before the state may jail a person for not paying child support, the government must provide notice that ability to pay is a "critical issue," an opportunity to be heard, and "an express finding by the court that the defendant has the ability to pay"); *Bearden*, 461 U.S. at 673 (before the state can revoke probation for nonpayment, it must determine whether the person could afford to pay such that the nonpayment was willful); *United States v. Payan*, 992 F.2d 1387, 1396

(5th Cir. 1993) (the "court must inquire into the reasons" the person did not pay and determine whether she could afford to pay and willfully refused to do so); *ODonnell*, 251 F. Supp. 3d at 1144–45 (Harris County's automatic use of secured money bail, without an inquiry into ability to pay, presents an intolerably high risk of erroneous deprivation); *id.* at 1161. If, after notice and inquiry, the government considers requiring a secured bail amount that the person cannot pay, then further safeguards are required before the government may detain the person.

> **b.   The government must provide additional safeguards when pretrial liberty is at stake.**

The substantive rights to pretrial liberty and against wealth-based detention require rigorous process to ensure the accuracy of any finding that preventive, pretrial detention is necessary and to ensure that detention of presumptively innocent individuals remains the "carefully limited exception." *Salerno*, 481 U.S. at 755. *Salerno* upheld the procedural protections required by the Bail Reform Act but emphasized that an order of detention under the Act may be issued only after a "full-blown adversary hearing," *id.* at 750, "findings of fact" by "clear and convincing evidence," and a "statement of reasons for a decision to detain," *id.* at 752. *Salerno* only considered the statute before it, but the *Mathews* test makes clear that due process requires safeguards similar to the provisions the Supreme Court emphasized when it upheld that law.[33]

> **i.   The government must provide notice, a prompt, adversarial hearing, and findings on the record**

The procedures due process requires prior to the deprivation of *any* liberty interest are well-established. Most of them apply even in the post-conviction context, where a person's liberty interest is diminished. In *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), the Court explained that

---

[33] *Salerno* addressed the procedural protections required for preventively detaining someone charged with certain particularly serious felony offenses, for only in such cases could the balance of interests that might permit deprivation of an individual's "fundamental" right tilt in the government's favor. 481 U.S. at 747, 750. Plaintiffs have not raised a claim here that federal due process prohibits pretrial detention of people charged with less-serious offenses.

before revoking a convicted person's probation, the government must still provide (a) "notice" of the critical issues to be decided; (b) "disclosure" of the evidence presented by the government; (c) an "opportunity to be heard in person and to present witnesses and documentary evidence"; (d) "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)"; (e) a "neutral and detached" factfinder; and (f) findings and reasons on the record of "the evidence relied on." *See also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that "the minimum requirements of due process" require the same six procedural protections before the government make revoke parole); *Turner*, 564 U.S. at 447–48 (requiring "notice to the defendant that 'ability to pay' is a critical issue," the opportunity to be heard, and findings on the record); *see also, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("Parties whose rights are to be affected are entitled to be heard."); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 617 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance.'" (quoting *Ward v. Village of Monroeville¸*409 U.S. 57, 61–62 (1972))); *Wolff v. McDonnell*, 418 U.S. 539, 564–65 (1974) (requiring a statement of reasons for revocation of good-time credits). Because a bail hearing implicates the fundamental right to bodily liberty prior to trial, each of these safeguards is required.

> ii. **The government must apply the clear-and-convincing-evidence standard to any finding that detention is necessary**

When the government seeks to infringe the fundamental right to bodily liberty prior to conviction, it bears a heightened evidentiary burden. That issue was not litigated in *ODonnell*. *See ODonnell*, Case No. 4:16-cv-1414 (S.D. Tex. June 11, 2018), Dkt. 402 (Plaintiffs' Brief in Support of the Amended Preliminary Injunction Proposed by Plaintiffs and Defendant Judges No. 14 and No. 16) at 1 n.1; *id.*, Dkt. 400 (Plaintiffs' Motion for Partial Summary Judgment) at 21–28 (raising these procedural issues for the first time). Defendants routinely ignore these requirements. *See*

Dkt. 195-1 ¶¶ 102, 106, 127; Ex. A1–A18; Ex. C. Movants do not contend that Harris County satisfies them. For this reason alone, the claim that procedural due process requires a heightened evidentiary standard at pretrial detention hearings cannot be dismissed. If Movants later contest this claim, the Court can resolve it on a full evidentiary record, applying the *Mathews* test.[34]

> c.        **Defendants do not provide the required procedural safeguards**

Harris County and the Judges do not provide the procedural safeguards required to ensure the accuracy of pretrial detention decisions. Predetermined money bail amounts are required prior to any legal proceeding before a judicial officer. Dkt. 195-1 ¶¶ 80, 89–93; Dkt. 1-4. Although a proceeding occurs in the jail after arrest for those who cannot pay the amount set pursuant to the judges' schedule, there is no notice of the important rights at stake in the proceeding. *See* Dkt. 228 (the Judges do not believe those rights exist). There are no findings on the record concerning ability to pay, the availability or adequacy of alternative conditions of release, or the necessity of detention in light of alternatives. Dkt. 195-1 ¶¶ 102, 106; Ex. A1–A18; Ex. C. No evidentiary standard, let alone the heightened evidentiary standard required by due process, is applied to any findings. Dkt. 195-1 ¶ 102; Ex. A1–A18; Ex. C. When bail hearings occur at all, typically weeks or months later, the Judges routinely fail to provide these protections. Dkt. 195-1 ¶ 127.

> B.        **Movants' Other Arguments Fail**

> 1.        **Plaintiffs Were Not Required to Proceed Under the Eighth Amendment**

Movants argue that *Graham v. Connor*, 490 U.S. 386 (1989), requires Plaintiffs to bring their claims under the Eighth Amendment. Dkt. 214 at 23–24, 25; Dkt. 228 at 28 n.16. They start by mischaracterizing Plaintiffs' claims. Plaintiffs do not argue that bail is "set too high," Dkt. 214 at 25; they recognize that secured bail, even unaffordable bail that results in pretrial detention, can

---

[34] Procedural due process requires the government to provide counsel at bail hearings. Defendants also do not contest this aspect of Plaintiffs' procedural due process claim.

be a constitutional condition of release, even for indigent arrestees. Plaintiffs argue that when the use of secured bail results in a de facto order of pretrial detention, due process requires the government to justify the detention in the same way it must justify transparent orders of pretrial detention. Courts are unanimous in holding that the imposition of an unattainable financial condition of release is tantamount to ordering pretrial detention. *Supra* VI(A)(4)(a).

Binding precedent forecloses Movants' argument. In *Rainwater*, the Fifth Circuit analyzed a challenge to Florida's money-bail system under the Fourteenth Amendment, and held that "[t]he incarceration of those who cannot [pay secured bail schedule's requirements], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Rainwater*, 572 F.2d at 1057. This holding—that a challenge like Plaintiffs' is cognizable under the Fourteenth Amendment—binds this Court, as it did the Fifth Circuit when it rejected the same argument in *ODonnell*. 892 F.3d at 157. The Supreme Court has repeatedly "rejected" the notion "that the applicability of one constitutional amendment pre-empts the guarantees of another." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49 (1993). "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 70 (1992); *see also, e.g.*, *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1266 (10th Cir. 2008) (recognizing that "statutes involving discrimination on the basis of religion" can arise under the First or Fourteenth Amendments). When a plaintiff invokes more than one constitutional provision, a court must "examine each [] in turn." *Soldal*, 506 U.S. at 70.[35] *Salerno* itself illustrates this point. Plaintiffs argued that pretrial detention violated both due process *and* the Excessive Bail Clause. 481 U.S. at 746. The Court analyzed the claim under both constitutional provisions and recognized the

---

[35] Here plaintiffs have pressed *only* a Fourteenth Amendment claim, as is their prerogative.

interest in pretrial liberty under "substantive due process." *See id.* at 746–52 (explaining the "general rule of substantive due process" that protects pretrial liberty and the conditions under which it can be overcome), 752–55 (Eighth Amendment analysis).[36]

Although the Supreme Court has cautioned that reliance on substantive due process is improper in some contexts where challenged conduct is covered by a specific constitutional provision, *see Graham,* 490 U.S. at 393–94, that concern is not implicated here. *Graham* reflects only a "reluctan[ce] to expand the concept of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiffs' claims involve no such expansion; they rely on two longstanding principles: that equal protection and substantive due process protect against wealth-based detention, *see Bearden*, 461 U.S. at 665; *ODonnell*, 892 F.3d at 161; *Rainwater*, 572 F.2d at 1057; *Frazier*, 457 F.2d at 728, and that substantive due process encompasses the "fundamental" interest in bodily liberty, *see Foucha*, 504 U.S. at 80; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), including for people accused or convicted of crimes, *Salerno*, 481 U.S. at 750; *Gagnon*, 411 U.S. at 786; *Morrissey*, 408 U.S. at 489.

### 2.      The State Misunderstands Plaintiffs' Challenge to GA-13

GA-13 purports to suspend various state laws and judicial powers to prohibit individualized consideration of non-financial release for certain categories of people. *See* Dkt. 53-1 Plaintiffs' challenge to GA-13 is not a separate claim. *See* Dkt. 195-1 ¶¶ 199–204 (Claims for Relief). Plaintiffs allege that enforcement of GA-13 violates the Fourteenth Amendment for the reasons Defendants' other practices do: it requires the pretrial detention of people who cannot pay secured bail without a finding that detention serves any purpose, and even if a judicial officer finds that detention is *not* necessary. The relief Plaintiffs seek against GA-13 is consistent with the relief

---

[36] *Daves v. Dallas County*, 341 F. Supp. 3d 688, 696 (N.D. Tex. 2018), which Defendants and Intervenors both cite, *see* Dkt. 228 at 28 n.16; Dkt. 214 at 25 n.124, was wrong on this point and cannot overrule binding precedent.

they seek against Defendants' other policies and practices. *Id.* If Plaintiffs prevail on their claim that pretrial detention is impermissible unless there is a finding that detention is necessary, such a ruling would prevent Defendants from enforcing GA-13 to the extent it conflicts with that relief. Relief identifying GA-13 is important to avoid confusion about whether to enforce the order if it violates the federal Constitution.

The State incorrectly asserts (with no support) that none of the Plaintiffs was denied a personal bond due to GA-13, *see* Dkt. 214 at 30, which points out the need for a fully developed factual record. GA-13 prohibited Defendants from releasing Mr. Clack and Mr. Wilson, Dkt. 195-1 ¶¶ 70, 79, and the District Attorney objected to Mr. Pierson's release on the basis of GA-13, Dkt. 66-5 (Declaration of Harris County Public Defender Alex Bunin) ¶¶ 8–11. GA-13 continues to cause the detention of members of the class every day, *see* Dkt. 214-7 (Judges' Amended General Order, which was amended to conform to GA-13): the Sheriff and County continue to enforce GA-13 against people arrested and detained in the jail, as required by the Judges' General Order. *Id.*[37]

Again showing a basic misunderstanding of the case, the State asserts that "if Plaintiffs are still seeking to release arrestees due to COVID-19," their claims are subject to the Prison Litigation Reform Act. Dkt. 214 at 30. Plaintiffs do not seek release. They seek an order requiring the government to justify pretrial detention. *See supra* Part VI(A)(4), (5).

### 3. Plaintiffs' Claims Are Not Moot, and Plaintiffs Have Standing

Movants confuse standing, mootness, and the merits. Dkt. 214 at 26; Dkt. 228 at 13–17. Although Movants submitted evidence in support of their jurisdictional arguments, none of it

---

[37] Intervenors also cite a 1905 Supreme Court case, *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), to suggest that GA-13 is constitutional. Dkt. 214 at 30–31. This argument fails because, to the extent GA-13 infringes the federal fundamental interest in pretrial liberty, the Order would not be subject to *Jacobson*'s "reasonableness" inquiry. It also fails for all the reasons Plaintiffs previously explained. *See* Dkt. 88 (Plaintiffs' Reply in Support of Motion for Temporary Restraining Order) at 13–15.

contradicts Plaintiffs' allegations relating to jurisdiction. (The evidence pertains to the merits and shows that, as Plaintiffs allege, Defendants do not provide the findings and safeguards that Plaintiffs contend are required.) Thus, the Court must rely solely on Plaintiffs' allegations to assess jurisdiction. *Lawrence*, 919 F.2d at 1528–29. None of Movants' arguments applies to the Sheriff's counter-claim. The Sheriff unquestionably has standing.

"Standing and mootness are interrelated concepts, but are not to be confused." *Samele v. Zucker*, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018). "The doctrine of standing concerns an analysis of whether the plaintiff had a justiciable case when the complaint was filed, while the doctrine of mootness concerns a determination of whether the plaintiff continues to assert a justiciable case throughout every stage of the lawsuit." *Institute of Marine Mammal Studies v. Nat'l Marine Fisheries Serv.*, 23 F. Supp. 3d 705, 712 (S.D. Miss. 2014) (citing *Kitty Hark Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1041–42 (5th Cir. 1981). To demonstrate standing, a plaintiff must allege (1) an injury in fact, (2) a causal connection between the injury and the challenged conduct, and (3) the likelihood that a favorable decision would redress the injury at the time the Complaint was filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To avoid mootness, plaintiffs must demonstrate that there are "adverse parties with sufficient legal interests to maintain the litigation" and that the parties continuously "have a personal stake in the outcome of the lawsuit." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (quotations and citations omitted).

### a.     Plaintiffs Had Standing When the Complaint Was Filed

#### i.     Plaintiffs' Injuries Are Traceable to the Felony Judges

Movants argue that Plaintiffs lack standing because (they assert) bail determinations are first made by Hearing Officers, whose decisions the Felony Judges cannot control. Dkt. 228 at 14–16. They ignore the bail schedule and General Orders. *See* Dkt. 195-1 ¶¶ 80, 89–93; Dkt. 1-4; Dkt.

214-7. Their assertion conflicts with Plaintiffs' allegations and publicly available materials showing that the Judges control what happens *before* the bail hearing. They also ignore Plaintiffs' allegations that the Judges control what happens *at* the hearings, Dkt. 195-1 ¶¶ 107–108, 117–18; Ex. D ¶ I(D), *and also* in their own courtrooms, where they refuse as a matter of policy to provide timely, adversarial, on-the-record hearings or to make the required findings, Dkt. 195-1 ¶ 127.[38]

The Judges' jurisdiction-wide bail policies—including the secured bail schedule and the General Orders—determine who is released and who is detained prior to a hearing. Dkt. 195-1 ¶¶ 34, 80, 89–93; Dkt. 214-7. Movants' only response to this is their peculiar assertion that Plaintiffs do not challenge the bail schedule. *See* Dkt. 228 at 15. Plaintiffs' challenge to wealth-based detention without required findings and safeguards includes a challenge to the automatic pretrial detention required by the bail schedule prior to a hearing (and, often, after the hearing, when Hearing Officers automatically apply it). *See* Dkt. 195-1 ¶¶ 199–204. The Felony Judges are proper defendants in that challenge because they promulgate that schedule.[39]

The Judges also control what happens *at* the initial bail hearings presided over by the Hearing Officers. *See* Dkt. 195-1 ¶¶ 107–108, 117–18; Ex. D ¶ I(D). Texas law grants judges broad discretion to promulgate post-arrest policies for their jurisdictions that are consistent with Texas law's broad provisions regarding pretrial release and detention. *See* Tex. Gov't Code § 74.093 ("The district and statutory county court judges in each county shall, by majority vote, adopt local

---

[38] Of course, none of these arguments affect the *Sheriff*'s standing to seek a declaratory judgment from this Court about his duties and obligations under the Constitution.

[39] Because Defendants and Intervenors do not move to dismiss this portion of Plaintiffs' challenge, Plaintiffs will not address it fully here, except to point out that Defendants and Intervenors do not explain how the allegations would support a conclusion that the bail schedule passes constitutional muster. Plaintiffs' Complaint alleges clearly—and Plaintiffs will prove after discovery—that the felony secured bail schedule fails any standard of scrutiny.

Defendants cite *Fields v. Henry County*, 701 F.3d 180, 184 (6th Cir. 2012), and *Rainwater*, 572 F.2d at 1057, with only unexplained parentheticals. Dkt. 228 at 15 n.10. *Fields* is irrelevant because that was an Eighth Amendment and Procedural Due Process case based on Tennessee law. And *Rainwater* did not approve of *secured* bail schedules. Nor does the case provide support for a finding that Defendants bail schedule in *this* case on *these* facts is constitutional under the applicable level of scrutiny.

rules of administration."), *see also id.* § 74.092. The Judges have power under these state laws to adopt policies governing post-arrest practices. Their motion ignores those statutes, from which the Judges derive their power to promulgate local rules (such as the bail schedule (Dkt. 1-4), the General Orders of March and April 2020 (Dkt. 32-6, Dkt. 214-7), and the Direct Filing Order (Ex. D)), as well as Texas Government Code § 54.856(b), which makes clear that nothing in §54.856(a) "limit[s] or impair[s] the jurisdiction of the court in which the complaint, information, or indictment is filed to review or alter the decision of the criminal law hearing officer."[40]

These laws are reflected in longstanding local practice. For decades, Hearing Officers adhered strictly to the bail schedule, supplemented by written and oral directives from the Judges. *Id.*; *supra* notes 6 & 7. Although the Judges purportedly rescinded these instructions after the *ODonnell* lawsuit, Hearing Officers continue to require secured financial conditions in *felony* cases without the required findings and procedures, Dkt. 195-1 ¶ 118; Dkt. 1-4; Ex. A1–A18; Ex. C; Ex. D ¶ I(D); *see generally* Appendix 1, even as they make findings of necessity on the record and apply a heightened evidentiary standard in *misdemeanor* cases, *see* Ex. A19–20;[41] Appendix 2.

The Hearing Officers treat misdemeanor and felony arrestees differently because they consider their felony bail practices to be controlled by the Felony Judges, just as their misdemeanor bail practices are controlled by the misdemeanor judges, who promulgated Rule 9 and other constitutional policies. Indeed, as soon as the misdemeanor judges promulgated Rule 9 in January 2019—and before this Court entered the Consent Decree in *ODonnell*—the Hearing Officers changed their misdemeanor bail practices to conform to Rule 9. *ODonnell*, Case No. 4:16-cv-1414 (S.D. Tex. Mar. 6, 2019), Dkt. 573 (Joint Motion for Entry of Proposed Order). The Hearing

---

[40] As the Felony Judges' policy document makes clear, their jurisdiction over a case begins after arrest, before the initial bail hearing, and is not interrupted by the bail hearing before a Hearing Officer. Ex. D ¶ I(A)(3)

[41] Exhibits A19 and A20 provide two examples of Hearing Officers describing the more stringent, constitutional policies applied to people arrested for misdemeanors as compared to those arrested for felonies.

Officers' deference to the elected judges makes sense given Texas statutes that authorize the judges to hire and fire the Hearing Officers at will. *See* Tex. Gov't Code § 54.852(a), (d); *supra* note 6. As Texas law and the history of Rule 9 show, local judges can order the Hearing Officers to provide the required findings and procedures. The Felony Judges choose not to, even as they issue general orders on bail policy that do not remedy the constitutional violations alleged. *E.g.*, Dkt. 214-7.

Movants' argument that the Felony Judges lack jurisdiction to address bail *before* an "arrestee seeks review or files a writ of habeas corpus in the state district court," Dkt. 228 at 15, thus fails. In addition to the laws and practices described above, the same written order from the Judges that requires the Hearing Officers to follow the bail schedule explicitly states that the *Felony Judges* have jurisdiction over cases as soon as they are filed, *i.e.*, shortly after arrest and prior to the bail hearing before a Hearing Officer. Ex. D ¶ I(A)(3); *see also* Tex. Gov't. Code § 54.856(b). The Felony Judges themselves apparently disagree with their lawyers' position. For example, in December 2019, a Hearing Officer ordered Ka Darian Smith released on a personal bond following a hearing. Three minutes later, in the middle of the same docket of bail hearings— and without notice or another hearing for Mr. Smith—Defendant Judge Randy Roll revoked the personal bond;[42] *see also* Ex. G (ethics complaint against Defendant Franklin, describing her routine practice of revoking bond *sua sponte*). Discovery will shed more light on the prevalence of this practice, but Judge Roll's and Judge Franklin's conduct contradicts the assertion that the Judges lack jurisdiction over bail *before* an "arrestee seeks review or files a writ of habeas corpus in the state district court," *see* Dkt. 228 at 15.[43]

---

[42] Keri Blakinger, *'A broken system in action': Judge's handling of bond in student's case sparks criticism* (Dec. 18, 2019), available at https://www.houstonchronicle.com/news/houston-texas/houston/article/A-broken-system-in-action-Judge-s-14914415.php.

[43] Contrary to Defendants' assertion in footnote 9, Dkt. 228 at 14, all Plaintiffs have adequately alleged that, at the moment the named Plaintiffs sued, they were subject to Defendants' unconstitutional bail policies. Plaintiffs have further alleged that none of the Judges provides the constitutionally required findings and procedures, whether acting alone in their own courts, or promulgating uniform County policies. Dkt. 195-1 ¶¶ 102, 106, 127; Dkt. 214-7.

The statutes Movants cite do not contradict this law or alter decades of actual experience in Harris County. *See* Dkt. 228 at 14–15 (citing Tex. Code Crim. Proc. art. 15.17 (setting forth basic duties of a bail-setting magistrate at the initial hearing); Tex. Gov't Code § 54.733 (relevant only to magistrates in El Paso); Tex. Gov't Code § 54.856 (Hearing Officers have "limited concurrent jurisdiction over criminal cases filed in the district courts," including to determine bail); Tex. Code Crim. Proc. art. 2.09 (defining "Magistrate")). The cases Movants cite also do not support their contention. *See id.* at 15 (citing *Ex parte Clear*, 573 S.W.2d 224, 229 (Tex. Crim. App. 1978) (*en banc*); *Guerra v. Garza*, 987 S.W.2d 593, 593–94 (Tex. Crim. App. 1999)). In *Clear*, a criminal case was filed in a Justice of the Peace court and a felony judge tried to intervene. In Harris County, felony cases are *filed* in criminal district court directly, and the district judges have jurisdiction over the cases from the moment of filing with concurrent jurisdiction for magistration residing also with Hearing Officers. *See* Tex. Gov't. Code § 54.856(a), (b); Ex. D at ¶ 1(A)(3). And in *Garza*, a misdemeanor county judge was ordering people released from the jail, even though other judges had jurisdiction over those cases, some of which were felonies. *Garza*'s facts are nothing like this case, and *Garza* does not hold that the Felony Judges have been illegally promulgating bail policies for cases filed in their courts for decades.

Even if Defendants were correct that state law prohibits the Felony Judges from dictating the *outcomes* of particular individual bail decisions, they do not argue that they could not order Hearing Officers to provide the findings and procedures Plaintiffs seek. Like the misdemeanor judges, the Felony Judges could rescind their bail schedule and promulgate a rule analogous to Rule 9. Further, there is no law prohibiting the Judges from promulgating policies requiring Hearing Officers to *release* certain categories of people—which is what they have done for decades through the mandatory bail schedule requiring the release of *everyone* who can pay a

predetermined amount—even if the Judges cannot constitutionally require the Hearing Officers to order detention.

None of Movants' arguments affect Plaintiffs' standing to challenge the Judges' policies and practices in their *own* proceedings, including their failure to provide prompt on-the-record, adversarial, evidentiary bail hearings, and their refusal as a matter of policy to make a finding that detention is necessary when they require unaffordable money bail. Dkt. 195-1 ¶ 127.

### ii. This Court Can Order Relief Against the Felony Judges That Will Redress the Harm

Movants cite footnote 11 of *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949), to argue that "Plaintiffs' claims against the District Judges are not redressable" because (they assert) this Court lacks authority to order the Felony Judges to issue a new bail schedule, rescind the old one, hold additional hearings, or release a person absent the required findings.[44] Dkt. 228 at 16–17. Even if that argument were true, it would not affect this Court's authority to grant complete relief by enjoining the Sheriff and the County. *ODonnell*, 892 F.3d at 165; *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991, 994–95 (6th Cir. 2019).

But Movants' argument is wrong anyway. As the Fifth Circuit noted in an *en banc* decision on August 7, 2020, the meaning and continuing viability of footnote 11 in *Larson* "is an unsettled question that has roused significant debate." *Green Valley Spcial Utility District v. City of Schertz, Tex.*, 2020 WL 4557844, at *7 n.21 (5th Cir. Aug. 7, 2020) (*en banc*) (citing *Vann v. Kempthorne*, 534 F.3d 741, 751–53 (D.C. Cir. 2008)). Movants ignore this debate and misrepresent the footnote in a crucial respect. They claim that "[s]overeign immunity bars constitutional claims" *categorically* if the relief requested would require the sovereign to take some affirmative action.

---

[44] Defendants also argue that the felony judges "cannot release anyone" because "the Sheriff detains pretrial arrestees." Dkt. 227 at 17. Semantics aside, Plaintiffs do not seek release as a remedy. *See infra* Part VI(B)(8).

Dkt. 228 at 16–17. That is wrong. *Larson* states that "a suit *may* fail . . . if the relief requested . . . will require affirmative action[.]" 337 U.S. at 691 n.11 (emphasis added); *see Vann*, 534 F.3d at 752 ("[W]e begin by noting the Court's use of *may* . . . rather than more commanding alternatives like *must* or *will* or *shall*."). Assuming the dicta from *Larson* is not obsolete, the word "may" is essential to reconciling it with the many subsequent applications of *Ex parte Young* that authorized federal courts to "direct *affirmative action*" in some instances. *Vann*, 534 F.3d at 752.[45]

Whatever force the footnote may have in general, it does not apply here because, (1) as policymakers for the County, the Judges lack sovereign immunity, and, (2) even if they make policy for Texas, the Court can craft an injunction that avoids any potential *Larson* problem.[46]

### 1.    Defendants are Policymakers for the County

Misdemeanor judges in Texas are policymakers for the County when they act as a group to promulgate and enforce local administrative rules and "acquiesce[] in an unwritten, countywide process for setting bail." *ODonnell*, 882 F.3d at 538. *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997), and *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980), compel the same conclusion with respect to Felony Judges. It would be incongruous to find that the Felony Judges act for Texas but the misdemeanor judges act for the County, when both groups promulgate

---

[45] Additionally, *Larson* and the other cases Defendants cite involve suits against *federal* officials, and it is unclear whether footnote 11 in *Larson* applies to state officials. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (4th ed. 2020), §3655 Actions Against Federal Agencies and Officers (addressing *Larson* only in the section of the treatise concerning suits against federal officials).

[46] Defendants cite two out-of-circuit cases without analysis. *See* Dkt. 228 at 16 (citing *Jacobson v. Florida Sec'y of State*, 957 F.3d 1193, 1212 (11th Cir. 2020); *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 548 (10th Cir. 2001)). *Jacobson* does not mention *Larson*, and *United Tribe*'s discussion of *Larson* is dicta. Neither changes the fact that if Defendants are County policymakers, sovereign immunity is unavailable, or that the Court can craft an injunction that avoids any potential *Larson* problem.

analogous bail policies directing the same officials (the Sheriff and Hearing Officers) on the same issues in the same geographic location[47] and are elected by the same voters.[48]

The Supreme Court explained in *McMillian* that whether a local official acts on behalf of the state or the county depends "on the definition of the official's functions under relevant state law," and must be determined with respect to the "particular area" or "issue" in question. 520 U.S. at 785–86; *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 699, 702 (5th Cir. 1998) (holding sheriff is county policymaker "with respect to the specific action at issue here"). As in *ODonnell*, the question here is whether the Felony Judges act for Harris County when they exercise their "broad authority to promulgate rules that will dictate post-arrest policies consistent with [] state law." 882 F.3d at 538 (citing Tex. Gov't Code § 75.403(f)).

The most important *McMillian* factor—and the only factor emphasized by the Fifth Circuit in *ODonnell*—is that state law affords the Felony Judges broad discretion to determine local rules governing bail practices. *See ODonnell*, 882 F.3d at 538. If the judges in a particular county choose to exercise that discretion in a way not required by Texas law but that violates federal law, their illegal policies constitute official policy for the county, not for Texas. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that a county is liable under § 1983 when a policymaker makes "a deliberate choice to follow a course of action . . . from among various alternatives"). That is precisely what has happened in Harris County. Nothing in state law requires

---

[47] *See* Tex. Gov't Code § 74.091; *id.* § 74.093(a); Ex. D. *See McMillian*, 520 U.S. at 791 (the fact that the sheriff's jurisdiction is limited to the county's border weighed in favor of finding the sheriff a county official).

[48] Each felony judge is elected by qualified voters in a judicial district that is limited to Harris County. Tex. Const. art. V, § 7 (West 2007); *see also* State District Courts, available at https://www.txcourts.gov/media/1445220/district-court-map-october-2019.pdf (Oct. 2019) (illustrating that Harris County is a single-county judicial district). *See McMillian*, 520 U.S. at 791 (finding it "important" that "the sheriff is elected locally by the voters in his county").

This Court has already recognized that, although district judges act on behalf of the state when performing *some* functions, there is no "general rule that Texas district judges are always state actors," and a "comparison of Texas district judges and county judges may well support a finding that, in the particular function of regulation countywide pretrial processes and bail settings, the district judges act as local policymakers." *ODonnell v. Harris County*, 2017 WL 784899, at *3, *3 n.1 (S.D. Tex. Mar. 1, 2017).

the Judges to promulgate a secured bail schedule or prohibits the judges from promulgating rules requiring magistrates to conduct bail hearings in ways that would be constitutional. *See ODonnell*, 251 F. Supp. 3d at 1151 (the misdemeanor judges' policies "are not required by Texas law"), *aff'd*, 882 F.3d 528. The Judges could make policy choices that are consistent with state law *and* that comply with federal due process and equal protection—which is exactly what the misdemeanor judges did in January 2019. *See ODonnell v. Harris* County, Case No. 4:16-cv-1414 (S.D. Tex. Jan. 25, 2019), Dkt. 557 (Notice and Explanation of New Local Rule); *id.* Dkt. 557-1 (Amended Local Rule 9.1). The Felony Judges have not done so, although three of them now say they wish to do so. As the Fifth Circuit in *ODonnell* recognized, policies and practices relating to bail-setting procedures that are not required by state law and that apply to all arrestees only within a given county constitute official policy for the County. 882 F.3d at 538. None of the other *McMillian* factors warrants deviating from *ODonnell*'s conclusion.[49] Because the Felony Judges are County policymakers for the relevant functions, the Court is not constrained by footnote 11 in *Larson*, even if that ambiguous and criticized dicta is still good law.[50]

---

[49] While the Court in *McMillian* ultimately held that the sheriffs were state officials, that was only because it concluded that several "important" points were outweighed by others. 520 U.S.. at 791–93. Those other points (the intent of the framers of the Alabama Constitution; that authority to impeach sheriffs rests with the Alabama State Supreme Court; and the existence of state case law interpreting the Constitution and its history to reveal the framers' intent that sheriffs be considered state officers, *McMillian*, 520 U.S. at 787–89) do not tip the balance here. And although the Felony Judges can be recommended for removal by a state commission rather than county actors, Tex. Const. art. V, § 1-a, the historical context that gave this factor weight in *McMillian* is absent here. Moreover, Harris County budgets for and funds the court administrator system, Tex. Gov't Code § 75.401, as well as any other officials "necessary to the administration of the judicial system," *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017).

In *ODonnell*, this Court considered the fact that the Governor fills vacancies for felony judges (as compared to the Harris County Commissioners Court, which fills vacancies for misdemeanor judges), and that only the Texas Supreme Court can remove felony judges (as compared to misdemeanor judges, who can also be removed by a felony judge), to be relevant to but not dispositive in deciding that the misdemeanor judges are County actors. *ODonnell v. Harris Cty., Tex.*, No. CV H-16-1414, 2017 WL 784899, at *3 (S.D. Tex. Mar. 1, 2017) (denying County's motion to reconsider). Here, these factors may be relevant, but cannot overcome the weight of the other factors pointing toward a conclusion that the Felony Judges, like misdemeanor judges, make bail policy on behalf of Harris County.

[50] Defendants argue that Plaintiffs lack standing against the Felony Judges because Plaintiffs *also* have standing against the Sheriff. Dkt. 228 at 17. But there is no requirement that a plaintiff sue any particular person, or every person, who can redress the harm they are suffering. Whatever relief Plaintiffs have against they Sheriff does not foreclose them from obtaining relief against the Judges as well.

### 2. The Court can issue an injunction that does not require the Judges to take any affirmative action

Were the Court constrained to do so by *Larson,* it could issue an injunction that redresses the constitutional violations but does not require the Felony Judges to take any affirmative action. In *Green Valley*, the Fifth Circuit left the *Larson* question "for another day" because it concluded that two forms of relief Plaintiffs sought "pass muster" even under the most controversial reading of *Larson*. 2020 WL 4557844, at *7 n.21. Here, the Court can issue an injunction prohibiting the felony judges from promulgating or acquiescing in any rule, policy, or practice that causes the pretrial detention of any individual solely due to inability to pay and without the procedural protections and substantive findings the Constitution requires. Such an order would "prevent the officer[s] from exercising any [discretionary] authority in violation of the [federal Constitution]" but would not compel the Judges to act in any specific way. *Vann*, 534, F.3d at 754. In *Vann*, the D.C. Circuit held that an analogous prohibition against a tribe avoided any *Larson* problem, explaining: "That the tribe might ultimately amend its constitution to bring its elections into conformance with federal law is irrelevant to our sovereign immunity analysis, because any such change would not be the direct result of judicial compulsion." *Id.*. Likewise, if an order against the Felony Judges prompted them to promulgate constitutionally compliant rules and procedures, their "discretion will not be steered by the [federal] judicial hand." *Id.*

Movants' arguments have no bearing on available relief against the County and Sheriff. Even if the Court accepted the Felony Judges' (wrong) argument, it could still issue affirmative injunctive relief against the Sheriff and the County to remedy the constitutional violations.

### iii. Plaintiffs faced an "injury in fact" when they sued

Movants' injury-in-fact argument ignores the relation-back doctrine applicable in transitory class actions. Dkt. 228 at 13–14 (arguing that Plaintiffs lack standing because "[m]ost

of the plaintiffs were released on bail well before filing their SAC against the District Judges"). When Plaintiffs sued, Harris County and the Sheriff *were currently enforcing against them* de facto orders of pretrial detention pursuant to policies and practices attributable to the Felony Judges, just as the plaintiffs in *ODonnell*, when *they* sued, were subject to de facto orders of pretrial detention pursuant to the misdemeanor judges' policies.[51] Ongoing illegal confinement is unquestionably an "injury" for standing purposes. Just as the First Amended Complaint in *ODonnell*, adding the misdemeanor judges as defendants, related back to the initial complaint, even though the named plaintiffs had been released from custody, the Second Amended Complaint in *this* case, adding the Felony Judges as Defendants, relates back to the initial complaint.

There is no dispute that the named Plaintiffs were subject to the challenged Harris County bail system when they sued, or that a ruling in their favor at that time would have ended the harm they were suffering. That ends the standing debate.

### b.    Plaintiffs' Claims Are Not Moot

To the extent the Felony Judges "injury-in-fact" argument is a mootness argument, Dkt. 228 at 13–14, it still fails. The State also gestures at mootness, but confuses mootness with merits. Dkt. 214 at 26–27.

Plaintiffs' class action falls under a well-established exception to general mootness rules for claims that are "inherently transitory"; such claims would otherwise evade review. This case

---

[51] Defendants state that when Plaintiffs amended their Complaint to add the judges as Defendants, named Plaintiff Christopher Clack was the only named Plaintiff still in Harris County custody. Dkt. 228 at 13 n.7. That is factually true, but legally irrelevant for the reasons explained in this section. Defendants make other misleading factual assertions in that footnote. For example, they state that "Clack claims his bond was not reduced after he filed a writ of habeas corpus and asked a district judge to review, but there are no allegations that the determination was made unconstitutionally." *Id.* Mr. Clack did not file a writ of habeas corpus. His lawyer apparently sought an informal bond review, which occurred without any notice to him. *See* Dkt. 195-1 ¶68. Mr. Clack was not present during whatever informal conversation took place, and Mr. Clack was never informed of the reason he remained detained because no findings were made on the record. *Id.* Plaintiffs have alleged that an order to pay unattainable bond requires notice, an inquiry into and findings concerning ability to pay, consideration of alternatives, an opportunity to present and challenge evidence, and findings on the record by clear and convincing evidence. *Id.* ¶¶ 200, 202, 204. None of those procedural protections was afforded to Mr. Clack, which the Complaint clearly alleges. *Id.* ¶ 68.

presents essentially the same scenario as *County of Riverside v. McLaughlin*, where the Supreme Court held that the claims of a class of people detained in jail without prompt probable cause determinations did not become moot when the claims of the named plaintiffs expired. 500 U.S. 44, 51-52 (1991); *see also Genesis Healthcare, Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (rejecting exception in labor case, but expressly noting the availability of exception to deal with "a class action challenging the constitutionality of temporary pretrial detentions"); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) ("Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted."); *Ward v. Hellerstedt*, 753 F. App'x 236, 243 (5th Cir. Oct. 16, 2018) ("[T]he expiration of all of Plaintiffs' claims prior to the district court entering its class certification order did not have the effect of mooting this action as a whole."). As in *Riverside*, the eventual release of the named Plaintiffs in this case did not end the controversy because a transitory class of thousands of people suffers constitutional harm on an ongoing basis. To the extent the State argues that Plaintiffs' claims are moot because Defendants comply with *ODonnell*, the argument fails for the reason discussed at length above: Plaintiffs bring substantive and procedural claims that were not litigated or resolved in *ODonnell*. *Supra* Part VI(A)(2)(b).

### 4.    Arguments Movants Advert to But Do Not Develop Are Waived

In footnotes, Movants refer to judicial immunity and suggest that the Court should abstain under *Rooker-Feldman*. But "[a]rguments that are insufficiently addressed in the body of the brief [] are waived." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003). The Court should not dismiss Plaintiffs' claims on the basis of a footnote. Regardless, the *Rooker-Feldman* doctrine does not apply. It is a "narrow" doctrine, applicable only to "cases . . . inviting district court review and rejection of a state court's judgments." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Plaintiffs are not challenging any state court judgment in this case. Moreover, the

doctrine does not preclude systemic challenges to the constitutionality of generally applicable rules, policies, and practices like those at issue in this case. *Id.* ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action."). This Court has already rejected judicial immunity for the functions of "promulgat[ing] written Rules of Court or oversee[ing] the unwritten customs and practices that could be corrected through the written Rules but are not." *ODonnell v. Harris County*, 227 F. Supp. 3d 706, 757 (S.D. Tex. 2016), *aff'd in relevant part*, *ODonnell*, 892 F.3d at 155–56. Although Plaintiffs cannot seek an injunction against the Judges in their judicial capacity in the first instance, declaratory relief is available against them under Section 1983. *See, e.g.*, *Caliste*, 329 F. Supp. 3d 296 at 320 (issuing declaratory relief against a judge in New Orleans).

In a single rhetorical question, the State questions whether Plaintiffs' claims are moot because, they suggest, Harris County stopped its unconstitutional practices and Plaintiffs cannot "overcome the 'presumption of good faith'" that Harris County "will not revert" to its prior practices. Dkt. 214 at 27. The State's "argument" is undeveloped, and the State does not even attempt to meet its "heavy burden." *E.g.*, *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The argument is also wrong. The unconstitutional conduct Plaintiffs allege continues. Three Felony Judges concede this explicitly, and the State does not dispute it; the State simply suggests that the Constitution does not require such findings. That is the definition of a controversy on the merits. Harris County and the Sheriff continue to play a critical role in the timing of and space available for bail hearings, provision of public defenders, and other logistics needed for a constitutional bail system. Thus, even if it were not waived, the State's assumption that Harris County has stopped the unconstitutional conduct Plaintiffs allege fails as a factual matter, and certainly cannot be assumed for purposes of a motion to dismiss.

### 5.     Movants Do Not Have Sovereign Immunity

Movants argue that they have sovereign immunity because the Felony Judges "do not enforce the state laws Plaintiffs challenge." Dkt. 228 at 18–27. But, as noted, Plaintiffs do not challenge any Texas state laws; they challenge the judges' own policies and practices.

The remainder of Movants' sovereign immunity argument conflates immunity with the merits of Plaintiffs' claims and causation, both of which Plaintiffs have addressed above. *See supra* Part VI(A) (merits); Part VI(B)(3) (causation and redressability).

### 6.     Plaintiffs' Claims Against the Sheriff Are Proper

The State argues that Plaintiffs' claims against Sheriff Gonzalez are barred by *ODonnell*. Dkt. 214 at 31. The Fifth Circuit rejected this argument. Although the court held that the Sheriff was not a policymaker, it reinstated plaintiffs' claims against him as an enforcement actor. *ODonnell*, 892 F.3d at 165 (authorizing the Sheriff "to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release . . . if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided"). As Judge Sutton recently explained when affirming an injunction prohibiting a Tennessee sheriff from enforcing unconstitutional bail orders, "[t]here are plenty of cases allowing injunction actions like this one." *See McNeil,* 945 F.3d at 996.

### 7.     Plaintiffs Properly Brought Their Claims Under 42 U.S.C. § 1983

Habeas corpus is not the exclusive remedy for Plaintiffs' claims. *See* Dkt. 228 at 27–30. In *ODonnell*, this Court remedied the systemic constitutional flaws in Harris County's misdemeanor bail practices under Section 1983. Indeed, this Court explained at length why those claims were appropriately brought under Section 1983. *E.g.*, *ODonnell v. Harris Cty.*, 260 F. Supp. 3d 810, 815–18 (S.D. Tex. 2017). As in *ODonnell*, no Plaintiff has argued that he or she is entitled to pretrial release. Rather, Plaintiffs seek a determination of what findings must be made and what

procedures must be afforded to justify pretrial detention. Numerous federal courts have granted

relief in similar Section 1983 cases challenging money bail systems. *See, e.g.*, *Daves*, 341 F. Supp.

3d at 697; *Caliste*, 329 F. Supp. 3d 296 at 320; *Schultz*, 330 F. Supp. 3d 1344 at 1376; *McNeil*,

2019 WL 633012, at *15–16; *Walker v. City of Calhoun*, 901 F.3d 1245, 1272 (11th Cir. 2018).[52]

None of this is to say that individuals enduring life-threatening, ongoing, unconstitutional

confinement may not bring emergency habeas petitions to seek immediate release from custody.

But here, Plaintiffs chose not to seek release, but rather to request basic individualized proceedings

and an order that the government must justify its decision to detain them. This litigation choice

does not foreclose any person (or group of people) from seeking habeas relief in federal court—a

choice some of them may decide to make.

## VII.   Conclusion

For all of the foregoing reasons, the Court should deny the Motions to Dismiss.

Date: August 27, 2020                      Respectfully Submitted,

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721


*/s/ Liyah Brown*
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
mimi@texascivilrightsproject.org
Liyah Brown (*Pro Hac Vice*)

*/s/ Neal S. Manne*
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

---

[52] Even if this Court concluded that plaintiffs' claims should have been brought in habeas, federal courts can treat the claims as if they had been. *See Castro v. United States*, 540 U.S. 375, 382-383 (2003). And in habeas, plaintiffs would be able to make their same claims without further, predicate proceedings in state court, because no state remedy would be "adequate and available" for claims of this nature. *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973).

D.C. Bar No. 500149
liyah@texascivilrightsproject.org
Peter Steffensen
Texas State Bar No. 24106464
Southern District No. 3327006
peter@texascivilrightsproject.org
Texas Civil Rights Project
2202 Alabama Street
Houston, TX 77004
Telephone: 512-474-5073 ext. 118

*/s/ Michael Gervais*
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

## CERTIFICATE OF SERVICE

I certify that on August 27, 2020 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Elizabeth Rossi*
Elizabeth Rossi