**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **DWIGHT RUSSELL, ET AL.**<br>　　**On behalf of themselves and all**<br>　　**Others similarly situated,**<br><br>　　*Plaintiffs*,<br><br>**v.**<br><br>**HARRIS COUNTY, TEXAS, ET AL.,**<br>　　*Defendants*. | **C.A. No. 4:19-CV-00226** |

---

**REPLY IN SUPPORT OF DISTRICT JUDGES' MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

---

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney
General

**DARREN L. MCCARTY**
Deputy Attorney General of
Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512.463.2080

**COURTNEY CORBELLO***
Assistant Attorney General
Texas State Bar No. 24097533
Southern District No. 3089117
Courtney.Corbello@oag.texas.gov
*Attorney in Charge

**LANDON WADE**
Assistant Attorney General
Texas State Bar No. 24098560
Southern District No. 3503435
Landon.Wade@oag.texas.gov

**JONATHAN PENA**
Assistant Attorney General
Texas State Bar No. 24110207
Southern District No. 3350256
Jonathan.Pena@oag.texas.gov

---

**ATTORNEYS FOR THE DISTRICT JUDGES**

---

TABLE OF CONTENTS

Table of Authorities ......................................................................................................3

Argument .....................................................................................................................9

I.  Plaintiffs Fail to Demonstrate the District Judges' Actions Are Traceable or Have Some Connection to the Unconstitutional Injuries They Allege.......................................9

    A.  Plaintiffs' Injuries Are Not Traceable to a Past Bail Schedule. ...................................11

    B.  Plaintiffs' Injuries Are Not Traceable to the Manner in which the District Judges Conduct Initial Appearances. ........................................................13

    C.  Plaintiffs' Injuries Are Not Traceable to the District Judges "Choosing" Not to Order Hearing Officers to Make Plaintiffs' Desired Findings and Procedures...........14

II.  Plaintiffs Have Failed to State a Colorable Constitutional Claim Against the District Judges.................................................................................................... 18

III. Plaintiffs' Requested Relief Would Impinge on Texas' Special Sovereignty Interests......... 21

IV. Plaintiffs' Misrepresentations of Supreme Court Case Law Does Not Confer Jurisdiction on this Court................................................................................ 25

V.  The District Judges are State Actors. ................................................................... 27

VI. Plaintiffs Are Required to Challenge their Bail Settings Through a Writ of Habeas Corpus.......................................................................................... 28

VII.The District Judges Have Not Waived any Arguments Based on Where they Appear in their Motion to Dismiss. .......................................................... 31

Conclusion .................................................................................................................32

Notice of Electronic Filing...........................................................................................33

Certificate of Service....................................................................................................34

TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ................................................................... 10

*Albright v. Oliver*,
    510 U.S. 266 (1994) ............................................................................... 30

*ANR Pipeline Co. v. LaFaver*,
    150 F.3d 1178 (10th Cir. 1998) ............................................................... 22

*Barton v. Summers*,
    293 F.3d 944 (6th Cir. 2002) ................................................................... 22

*Bearden v. Georgia*,
    461 U.S. 660 (1983) ........................................................................... 25, 26

*Beazley v. Johnson*,
    242 F.3d 248 (5th Cir.2001) ................................................................... 31

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ............................................................................... 12

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) ............................................................................... 22

*Broussard v. Parish of Orleans*,
    318 F.3d 644 (5th Cir. 2003) ................................................................... 20

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ................................................................... 17

*Clark v. Tarrant County*,
    798 F.2d 736 (5th Cir. 1986) ................................................................... 27

*Colorado Christian University v. Weaver*,
    534 F.3d 1245 (10th Cir. 2008) ............................................................... 29

*Davis v. Federal Election Comm'n*,
    554 U.S. 724 (2008) ............................................................................... 10

*Davis v. Mich. Dep't of Treasury*,
    489 U.S. 803 (1989) ........................................................................... 18, 19

*Davis v. Tarrant County, Tex.*,
  565 F.3d 214 (5th Cir. 2009) ...........................................................................27

*Doyle v. Elsea*,
  658 F.2d 512 (7th Cir. 1981) .......................................................................... 20

*Du Bois v. Warne*,
  336 Fed. Appx. 407 (5th Cir. 2009) ...............................................................27

*Engle v. Isaac*,
  456 U.S. 107 (1982) .........................................................................................23

*Ex parte Gray*,
  564 S.W.2d 713 (Tex. Crim. App. 1978) ....................................................... 30

*Ex parte Tucker*,
  977 S.W.2d 713 (Tex. App.—Fort Worth 1998) ........................................... 30

*Ex parte Young*,
  209 U.S. 123 (1908) ............................................ 10, 12, 14-16, 18-19, 22, 24, 32

*Fitts v. McGhee*,
  172 U.S. 516 (1899) .........................................................................................15

*Gates v. Cook*,
  376 F.3d 323 (5th Cir. 2004) ...........................................................................12

*Graham v. Connor*,
  490 U.S. 386 (1989) ................................................................................... 28-30

*Harper v. Va. Dept. of Taxation*,
  509 U.S. 86 (1993) ..................................................................................... 18, 19

*Heck v. Humphrey*,
  512 U.S. 477 (1994) .........................................................................................31

*Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*,
  452 U.S. 264 (1981) ........................................................................................ 24

*Hollywood Mobile Estates Ltd. v. Cypress*,
  415 F. App'x 207 (11th Cir. 2011) ................................................................. 22

*Horne v. Flores*,
  557 U.S. 433 (2009) ........................................................................................ 28

*Hudson v. City of New Orleans*,
  174 F.3d 677 (5th Cir. 1999) ...........................................................................27

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ...................................................................................10, 22, 24

*In re Abbott*,
    956 F.3d 696 (5th Cir. 2020) ................................................................. 17, 18

*In re Hickman*,
    260 F.3d 400 (5th Cir. 2001) .............................................................................23

*Jacobson v. Florida Sec'y of State*,
    957 F.3d 1193 (11th Cir. 2020) .......................................................................12

*Jones v. Alcoa Inc.*,
    339 F.3d 359 (5th Cir. 2003) ...........................................................................17

*Jordan v. Bailey*,
    985 F. Supp. 2d 431 (S.D.N.Y. 2013).............................................................. 24

*Kelly v. Robinson*,
    479 U.S. 36 (1986)...............................................................................................23

*Lane v. Cent. Ala. Cmty. Coll.*,
    772 F.3d 1349 (11th Cir. 2014) ....................................................................... 22

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949)............................................................................................12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................10

*MCI Telecomm. Corp. v. Bell Atl.-Pa.*,
    271 F.3d 491 (3d Cir. 2001) ........................................................................... 22

*Moore v. City of E. Cleveland, Ohio*,
    431 U.S. 494 (1977) ......................................................................................... 29

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) ..................................................................... 14, 16

*ODonnell v. Harris County*,
    892 F.3d 147 (5th Cir. 2018) ....................................................................19, 28

*ODonnell v. Harris County, Tex.*,
    227 F. Supp. 3d 706 (S.D. Tex. 2016).............................................................27

*ODonnell v. Harris County, Tex.*,
    251 F. Supp. 3d 1052 (S.D. Tex. 2017) .........................................................19

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001)..................................................................... 14, 15

*Oregon v. Ice*,
    555 U.S. 160 (2009) .........................................................................................23

*Patterson v. New York*,
    432 U.S. 197 (1977) .........................................................................................23

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973) .........................................................................................31

*Pugh v. Rainwater*,
    572 F.2d 1053 (5th Cir. 1978) ................................................................ passim

*Richardson v. Joslin*,
    501 F.3d 415 (5th Cir. 2007)......................................................................... 20

*Screws v. United States*,
    325 U.S. 91 (1945) ...........................................................................................23

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976)...................................................................................... 10, 17

*Soldal v. Cook County, Ill.*,
    506 U.S. 56 (1992) .......................................................................................... 29

*Tate v. Short*,
    401 U.S. 395 (1971) ....................................................................................25, 26

*United States v. McConnell*,
    842 F.2d 105 (5th Cir. 1988) ......................................................................... 30

*United States v. Acevedo-Ramos*,
    755 F.2d 203 (1st Cir. 1985) ...........................................................................21

*United States v. Chagra*,
    701 F.2d 354 (5th Cir. 1983)...........................................................................21

*United States v. Charles*,
    469 F.3d 402 (5th Cir.2006) ............................................................................31

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993) .......................................................................................... 29

*United States v. LaFontaine*,
    210 F.3d 125 (2d Cir. 2000) ............................................................................21

*United States v. Redd,*
    562 F.3d 309 (5th Cir. 2009) ................................................................................31

*United States v. Salerno,*
    481 U.S. 739 (1987) ....................................................................20, 25, 28, 29

*United States v. Thomas,*
    203 F.3d 350 (5th Cir. 2000) ................................................................................31

*United Tribe of Shawnee Indians v. United States,*
    253 F.3d 543 (10th Cir. 2001) ...........................................................................12

*Va. Office for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011) ................................................................................................14

*Warnock v. Pecos County, Tex.,*
    88 F.3d 341 (5th Cir. 1996) ................................................................................27

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) .........................................................................................9, 12

*Williams On Behalf of J.E. v. Reeves,*
    954 F.3d 729 (5th Cir. 2020) ..............................................................................12

*Williams v. Illinois,*
    399 U.S. 235 (1970) ........................................................................................25, 26

*Zapata v. Smith,*
    437 F.2d 1024 (5th Cir. 1971) ...........................................................................12

**Statutes**

28 U.S.C. § 2255 ...........................................................................................................31

42 U.S.C. § 1983 ...........................................................................................................32

Tex. Code Crim. Pro. art. 17.15 ...........................................................................12, 13, 16

Tex. Code Crim. Proc. art. 11.08 .................................................................................20

Tex. Code Crim. Proc. art. 11.11 ..................................................................................20

Tex. Const. Art. V § 28 .................................................................................................27

Tex. Gov't Code § 54.852 ...........................................................................................16

Tex. Gov't Code § 54.856 ......................................................................................17, 24

Tex. Gov't Code § 54.858 ................................................................................ 12, 16

Tex. Gov't Code § 659.012 .....................................................................................27

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..............................................................1, 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **DWIGHT RUSSELL, ET AL.** | |
|     **On behalf of themselves and all Others similarly situated,** | |
| | |
|     *Plaintiffs,* | |
| | |
| **v.** | **C.A. No. 4:19-CV-00226** |
| | |
| **HARRIS COUNTY, TEXAS, ET AL.,** | |
|     *Defendants.* | |

---

**Reply in Support of District Judges' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

---

This Court should decline Plaintiffs' invitation to use the power of the federal government to impose their will on the State, its criminal justice system and state court judges. *See* Dkt. No. 259. Plaintiffs' conclusory claims that a wealth-based detention system exists in Harris County does not suffice to justify revoking the District Judges' entitlement to sovereign immunity and ordering that they manage a criminal justice system in a manner far beyond the requirements of state or federal law. Because Plaintiffs' Response fails to meet their burden to confer subject matter jurisdiction on this Court, the District Judges should be dismissed from this suit.

**Argument**

**I.    Plaintiffs Fail to Demonstrate the District Judges' Actions Are Traceable or Have Some Connection to the Unconstitutional Injuries They Allege.**

The doctrine of standing "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Traceability is one of the irreducible constitutional minimums of standing, which requires there to

be a causal connection between the injury and the conduct complained of. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976). This means the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party..." *Id.* Courts assess standing as of the time a suit is filed. *See Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). The traceability element is not a "mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, traceability "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

Similarly, *Ex Parte Young* is not meant to be a low hurdle. Instead, in applying *Ex Parte Young*, courts must "ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997). To give meaning to sovereign immunity, courts must not apply *Ex Parte Young* where the plaintiff fails to allege the state official has "threaten[ed] and [is] about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." *Ex parte Young*, 209 U.S. 123, 155-56 (1908). Similar to traceability in the standing context, "*Ex parte Young* requires defendants have 'some connection' to the state law's enforcement *and* threaten to exercise that authority." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. at 157)) (emphasis added).

Plaintiffs allege their constitutional rights have been violated in two ways, neither of which are traceable to the District Judges in a manner that satisfies Article III standing or *Ex Parte Young*. First, Plaintiffs allege there is a lack of "consideration of less-restrictive alternatives and a finding

of necessity to detain...prior to issuing or enforcing an order to pay unaffordable bail" at their appearance in front of a Hearing Officer. Dkt. No. 259 at 21[1]. Second, Plaintiffs claim that, at the same hearing, they are not provided the "procedural protections required to ensure the accuracy of any decision to detain, including an adversarial, on-the-record hearing with counsel and application of the clear-and-convincing-evidence standard." *Id*. at 22.

Neither of the injuries Plaintiffs identify implicate the District Judges because they are not traceable to the specific actions that Plaintiffs claim the District Judges have taken. Indeed, the only actions Plaintiffs directly attribute to the District Judges are (1) they created a bail schedule in the past (*Id*. at 17); (2) they do not automatically review bail determinations at a defendant's first appearance in their court (*Id*. at 18); and (3) they could, but "choose not to," "order the hearing officers to provide the required findings and procedures" in their bail hearings (*Id*. at 50). None of these "facts" suggests traceability or "some connection" to the District Judges for Plaintiffs' claim that they are subjected to a wealth-based detention system that refuses them the procedural and substantive due process rights they claim to have.

### A. Plaintiffs' Injuries Are Not Traceable to a Past Bail Schedule.

As to the bail schedule, Plaintiffs' Response directly contradicts any finding that their injuries are traceable to the prior existence of a bail schedule no longer in effect. Plaintiffs acknowledge, several times, that the bail schedule was rescinded three years ago in 2017. Dkt. No. 259 at 6, 38; *see also* Plaintiffs' First Amended Complaint (Dkt. No. 195-1) at ¶¶108; 118. Although Plaintiffs allege hearing officers "continue" to make bail determinations without the substantive and procedural requirements they believe they are entitled to, Plaintiffs' Amended Complaint and

---

[1] The page number refers to ECF pagination.

Response is devoid of any facts that support the conclusion that the District Judges have caused this continued, alleged violation. *See Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 738 (5th Cir. 2020) (stating that, for *Ex Parte Young* to apply, "Plaintiffs must allege that the defendant *is violating* federal law, not simply that the defendant has done so at some point in the past"); *Whitmore*, 495 U.S. at 158–159 (refusing to confer standing for speculative future harm). And Plaintiffs appear to acknowledge that rescinding the bail schedule is a sufficient solution that would ensure hearing officers do not set bail at "predetermined" amounts since it is the exact relief they ask this Court to grant them.[2] Dkt. No. 259 at 51 (stating "Felony Judges could rescind their bail schedule" thereby ensuring "hearing officers…provide the findings and procedures Plaintiffs seek.").

Rescission aside, the existence of a bail schedule is simply not enough to establish standing or the *Ex Parte Young* exception. As explained in the District Judges' motion, the use of a bail schedule is constitutional.[3] *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc). And the hearing officers and the District Judges are already legally proscribed from mechanically applying the bail schedule to a given arrestee. Instead, the Texas Code requires officials to conduct

---

[2] Ultimately, however, such an order would be impermissible under the Eleventh Amendment since *Ex Parte Young* does not extend to an injunction requiring the defendant state official to take affirmative action, such as rescinding a bail schedule. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949) (holding that sovereign immunity bars the claim "if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign"). If "the [defendant] sued could satisfy the court decree only by acting in an official capacity," *Ex parte Young* is unavailable and the claim is barred by the state's sovereign immunity. *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971); *see also Jacobson v. Florida Sec'y of State*, 957 F.3d 1193, 1212 (11th Cir. 2020); *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 548 (10th Cir. 2001); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). After all, in order to act on behalf of the State the defendant would have to be re-clothed in state authority, at which point sovereign immunity would attach. *See Ex parte Young*, 209 U.S. at 159–60; *Larson*, 337 U.S. at 691 n.11.

[3] In a footnote, Plaintiffs claim, "*Rainwater* did not approve of *secured* bail schedules" and therefore cannot support a finding that the use of bail schedules like the one in this case is constitutional. Dkt. No. 259 at 48 n. 39. This is in direct contrast to Plaintiffs' own characterization of the type of bail schedule *Rainwater* addressed only 4 pages prior. *Id*. at 44 (citing *Rainwater*, 572 F.2d at 1057) (emphasis added) (claiming Fifth Circuit "held that "[t]he incarceration of those who cannot [pay *secured bail schedule's* requirements], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.").

an individualized review based on five enumerated factors, which include the defendant's ability to

pay, the charge, and community safety. Tex. Gov't Code § 54.858(b); Tex. Code Crim. Pro. art.

17.15. The Local Rules explicitly empower the hearing officers to set bail without any reference to

a bail schedule. *See* Local Rule 6.12.

### B. Plaintiffs' Injuries Are Not Traceable to the Manner in which the District Judges Conduct Initial Appearances.

Plaintiffs also provide no facts that indicate how their alleged injuries are traceable or

connected to the ways in which the District Judges conduct their initial appearances. There is no

authority, and Plaintiffs provide none, that suggests a defendant is entitled to an automatic, sua

sponte review of a magistrate's bail determination. Nonetheless, the District Judges do, in fact,

conduct a bail review at initial appearances. *See* Third Amended Joint Statement – Covid-19 Court

Operations, https://www.justex.net/JustexDocuments/0/News%20Items/News%202020/Third

%20Amended%20Joint%20Statement.pdf (last visited Sept. 1, 2020). Even if this were not the case,

however, it would be illogical to suggest that the procedures that hearing officers provide when

determining bail is impacted in any way based on whether the District Judges review bail

determinations at initial appearance.

Notably, Plaintiffs do not allege that, once the District Judges review a criminal defendant's

bail, they do so unconstitutionally. Indeed, Plaintiffs have conceded several times that once

criminal defendants follow procedures readily available to them to have their bail reviewed – by

filing a motion[4] – the District Judges hold "an evidentiary hearing concerning the appropriateness

---

[4] There is nothing procedurally unconstitutional about requiring a defendant to file a motion seeking reconsideration of the hearing officer's bail determination, and Plaintiffs do not argue otherwise.  After all, at the time of filing such a motion, each in-custody defendant has already, with selected counsel or the public defender's office present, received an individualized review by a hearing officer based upon the factors set forth in Tex. Code. Crim. Pro. 17.15.  Because Plaintiffs contend these hearings are the source of their due process violations, traceability is not shown. The District

of the secured bond amount, or the need to keep the person in a jail cell pending resolution of the case, or whether less-restrictive conditions of release are available." Dkt. No. 259 at 18; *see also* Dkt. No. 195-1 at ¶128.  Plaintiffs may want their bail reviewed at every appearance, daily, or even hourly. But the injury they allege – having bail determined in an unconstitutional manner by hearing officers – does not occur as a result of this unfulfilled desire.

### C. Plaintiffs' Injuries Are Not Traceable to the District Judges "Choosing" Not to Order Hearing Officers to Make Plaintiffs' Desired Findings and Procedures.

*Ex parte Young*'s exception to sovereign immunity applies only when "a federal court commands a state official to do nothing more than refrain from violating federal law." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  Plaintiffs seek to radically expand this exception by asking the Court to command state officials to *command county officials* to refrain from violating federal law. But "some connection" does not exist in this case simply because the hearing officers conduct their statutorily-permitted bail determinations "unconstitutionally." Dkt. No. 259 at 51. Sovereign immunity must be maintained, and standing cannot be shown, unless Plaintiffs demonstrate what the District Judges *actually* do to cause those "unconstitutional" practices to occur.

This is the analysis *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) requires. In *Okpalobi*, a plurality of the Fifth Circuit, sitting en banc, did not permit suit to go forward against the Governor and Attorney General under *Ex parte Young* because there was "no act, no threat to act, and no ability to act" on the part of those officials. [5] *Id.* at 421 (plurality op.). Citing numerous cases from

---

Judges do not hold, constrict or control those hearings nor do they bear the responsibility of filing motions for reconsideration on behalf of criminal defendants.

[5] Although this portion of the *Okpalobi* opinion originally did not garner majority support, the Fifth Circuit thereafter endorsed *Okpalobi*'s "connection" standard as the correct one in analyzing whether a suit against a state official can proceed pursuant to the *Young* exception: "The required 'connection' [to apply the *Ex parte Young* exception to a state official] is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to

other circuit courts, as well as *Ex parte Young* itself, the plurality concluded that there must be "some actual or threatened enforcement action before *Young* applies." *Id*. at 415. The plurality further stated that "the *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id*. at 416 (emphases added). *Young* required "both a close connection between the official and the act and the threatening or commencement of enforcement proceedings by the official." *Id*. at 415; *see also id*. at 421 (citing *Fitts v. McGhee*, 172 U.S. 516, 530 (1899) (requiring close connection or a "special relation" between the statute and the defendant state officer's duty before the Eleventh Amendment bar could be overcome)).

Plaintiffs claim their injury derives from the District Judges refusing to "order hearing officers to provide the findings and procedures Plaintiffs seek." Dkt. No. 259 at 40. But the reasons they provide do not demonstrate that the District Judges have the power to compel hearing officers to adhere to a rigorous set of procedures in making bail determinations. Pursuant to *Okpalobi*, simply having concurrent jurisdiction[6] with a hearing officer over a criminal matter [*id*. at 51], or the general ability to promulgate policy [*id*.], does not suffice to justify application of the *Young* exception against the District Judges. Nor does the past existence of a since-rescinded bail schedule

---

enforce the statute in question and *a demonstrated willingness* to exercise that duty.'" *Morris*, 739 F.3d at 746 (quoting *Okpalobi*, 244 F.3d at 416).

[6] Plaintiffs incorrectly claim the District Judges ignore their concurrent jurisdiction with the hearing officers and argue that they "lack jurisdiction to address bail before an "arrestee seeks review or files a writ of habeas corpus in the state district court." Dkt. No. 259 at 50 (citing Dkt. No. 228 at 15). Even the most cursory skimming of that section of the District Judges' argument demonstrates this is a mischaracterization. Just as the argument herein explains, the hearing officers are granted jurisdiction over bail matters pursuant to state law. Although concurrent jurisdiction permits them to, the District Judges do not, and Plaintiffs never claim they have, override the Hearing Officer's jurisdiction in order to make all initial bail determinations. This failure to show any willingness on the part of the District Judges to exercise the concurrent jurisdiction Texas law allows is fatal to Plaintiffs' *Young* application.

[*id.* at 49] or a current general order [*id.*], which is not even an order enforced against hearing officers or used to modify their bail determinations in any way. *See* Dkt. 214-7 (stating the general order bond provisions are in effect "*before* the matter is placed on the hearing officers' docket"). And even if this Court agrees with Plaintiffs that the District Judges must "order the hearing officers to provide the findings and procedures Plaintiffs seek" because they "control [the hearing officers] employment," [Dkt. No. 259 at 17] despite the statute that provides otherwise [Tex. Gov't Code § 54.852], the Fifth Circuit has refused to extrapolate a particularized connection to the law at issue on that basis. *See Morris v. Livingston*, 739 F.3d 740, 745–46 (5th Cir. 2014) (holding it is not enough that the official has a "general duty to see that the laws of the state are implemented.").

Instead, the critical question is what *particularized* connections the District Judges have, specifically to procedures and outcomes of bail hearings presided over by hearing officers, based on the Fifth Circuit's precedents only allowing *Young* to apply where there has been "actual or threatened enforcement," or, short of that, at least a demonstrated "willingness" to enforce certain policies, a "particular duty" to enforce, or a "special relation" to enforcement of the challenged law.

Plaintiffs provide no answer.

Hearing officers are permitted by statute to "determine all matters pertaining to bail" without intervention from a District Court Judge. Tex. Gov't Code § 54.858(d); *see also id.* at § 54.856(a) (hearing officers can "commit[ ] the defendant to jail, discharg[e] the defendant from custody, or admit[ ] the defendant to bail, as the law and facts of the case require."). The Texas Legislature has required hearing officers to determine bail not as set forth by policies promulgated by state district court judges but, instead, pursuant to the factors set forth in Texas Code of

Criminal Procedure 17.15. *See* Tex. Gov't Code § 54.858(b). And the District Judges are permitted no more than concurrent jurisdiction with a hearing officer over a criminal case, which Plaintiffs' facts have only shown they utilize to *review* and *modify*, not dictate, a hearing officer's bail determination. *See* Dkt. No. 259 at 18, 49; *see also* Tex. Gov't Code § 54.856. Thus, claiming the District Judges *could* choose to commandeer the hearing officers' statutorily-granted discretion to set bail is unsupported, in addition to being insufficient to show traceability or "some connection."

This Court need not accept as true Plaintiffs' conclusory allegation that the District Judges could adopt policies that invade the hearing officers' discretion to determine bail. *See, e.g., Jones v. Alcoa Inc.*, 339 F.3d 359, 363 n.4 (5th Cir. 2003) ("conclusory allegations or unwarranted deductions of fact" are not accepted as true). Plaintiffs fail to allege facts that show the District Judges have a *duty* to dictate the procedures and outcomes of a hearing officers' bail determinations or have demonstrated any *willingness* to take such action. Even to the extent the District Judges could create a policy for the hearing officers that dictates what procedures they must use to determine bail, there is no allegation as to how they could enforce such a policy. *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) ("The power to promulgate law is not the power to enforce it."); *see also Simon*, 426 U.S. at 38, 43, 96 (holding that, to satisfy Article III standing, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."); *see also* Dkt. No. 259 at 49 (Plaintiffs' claim that hearing officers continue to set bail pursuant to a bail schedule that has been rescinded). And when a state officer has the undisputed power to enforce a statute through litigation, this Court still must ask whether he is likely to do so against the plaintiff. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).

This Court should find Plaintiffs lack standing under Article III as well as respect the District Judges' sovereign immunity. The District Judges are "not statutorily tasked" with

ensuring hearing officers' bail procedures meet constitutional standards, thus, "the requisite connection is absent and [this Court's] *Young* analysis ends." *Abbott*, 956 F.3d at 709 (quotation marks omitted).

## II.   PLAINTIFFS HAVE FAILED TO STATE A COLORABLE CONSTITUTIONAL CLAIM AGAINST THE DISTRICT JUDGES.

Plaintiffs' conclusory allegation that they have federal substantive and procedural rights to pretrial liberty does not suffice as a "colorable constitutional claim." Dkt. No. 259 at 12. Plaintiffs do not allege the District Judges are acting outside the scope of the *ODonnell* model injunction, instead, as their Response demonstrates, Plaintiffs are attempting to relitigate whatever remains of "*the same legal claims*" that the Fifth Circuit declined to adopt in the *ODonnell* cases. Plaintiffs' SAC (Dkt. No. 195-1) at ¶14.

Plaintiffs' basis for why they should be permitted to do so is flawed. Plaintiffs argue that, although they raised "*the same legal claims*" in *ODonnell*, the injunction the Fifth Circuit issued in *ODonnell* "addressed only some" of the claims, which did not include the federal claims they re-raise in this case. Dkt. No. 259 at 12-13. Since the Fifth Circuit did not issue an injunction based on a finding of federal due process violations, the Plaintiffs argue, the "court's decision [can]not foreclose claims it does not address." *Id*. at 13 (citing *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 118 (1993)).

But Plaintiffs' reliance on the dissenting portion of the opinion in *Harper* to make this argument is misplaced. Dkt. No. 259 at 13. The *Harper* majority, in fact, held the very opposite. *Harper* arose following a previous Supreme Court decision *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989). The *Harper* court determined that *Davis* was binding precedent it was required to follow. *Harper*, 509 U.S. at 98. In doing so, it rejected an argument that *Davis* was distinguishable

because "this Court had 'made no … ruling' about the application of the rule announced in *Davis*
'retroactively to the litigants in that case.'" *Id.* The Court reasoned that, because any decision to
accord solely prospective effective to *Davis* would have foreclosed discussion on remedial issues,
the fact that remedial issues were discussed "necessarily" indicated retroactivity. *Id.*

    Likewise, the federal claims Plaintiffs raise in this case, which they concede they were
"attempting to raise" throughout *ODonnell*, should not be considered colorable simply because
the Fifth Circuit declined to reward those attempts. Dkt. No. 259 at 28 (conceding that Plaintiffs
argued in *ODonnell* that "the revised preliminary injunction should include a requirement under
federal due process."); *see also ODonnell v. Harris County, Tex.*, 251 F. Supp. 3d 1052, 1068 (S.D.
Tex. 2017) (recognizing Plaintiffs' attempts to assert federal claims: "the plaintiffs contend Harris
County will continue its policy of imposing secured money bail as de facto pretrial detention orders
*in violation of federal due process requirements*."). Similar to *Harper*, the *ODonnell* court, in crafting
its model injunction, stated the remedy provided by the district court's preliminary injunction did
not make sense because there was no "fundamental substantive due process right…in view."
*ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018). Thus, the express rejection of a
remedy that implicates fundamental substantive due process rights necessarily indicates none exist
based on the facts Plaintiffs have continued to allege from *ODonnell* to the present case.[7]

    This Court should refuse to provide Plaintiffs with constitutional protections greater than
what *ODonnell* provided simply because Plaintiffs' opportunities to appeal the *ODonnell* model

---

[7] Whether or not the Court agrees with Plaintiffs that the *ODonnell* opinions found only a "state-created liberty
interest," such does not justify an alternate conclusion. Even a finding of only a "state-created liberty interest" in
*ODonnell*, where Plaintiffs undisputedly also raised claims of a federal liberty interest, would require the conclusion
that binding precedent requires a finding that Plaintiffs have failed to raise colorable constitutional claims.

injunction have run out. The absence of a finding of a federal right in *ODonnell* logically cannot equate to a finding of federal right to sustain an *Ex Parte Young* exception in this case.

Even if this Court accepts Plaintiffs' invitation to expand *ODonnell*, the fact remains that there is simply no "right to release[8] before trial." *Rainwater*, 572 F.2d at 1057. Rather, pretrial release is "conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence." *Id.*; *see also Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) ("[T]here is no absolute constitutional right to bail."); *Doyle v. Elsea*, 658 F.2d 512, 516 n.6 (7th Cir. 1981). The Supreme Court reaffirmed this principle in *United States v. Salerno*, rejecting the argument that "pretrial detention offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 481 U.S. 739 (1987) (quotation marks omitted).

Harris County hearing officers are required by state law to weigh various factors in exercising their discretion in setting an arrestee's bond amount and type, and "[t]he grant of discretion … indicates that no entitlement and, hence, no liberty interest, was created." *Richardson v. Joslin*, 501 F.3d 415, 420 (5th Cir. 2007). Arrestees retain the right, at all times, to petition the District Judge to reconsider their bail, or to seek habeas review of the bail decision. *See* Tex. Code Crim. Proc. arts. 11.08, 11.11. The Due Process and Equal Protection Clause does not require more, and it certainly does not require the various formalities, precise on-the-record statements, or other procedures Plaintiffs are demanding.

---

[8] Although insistent that they are not arguing a right to "pretrial release," Plaintiffs have also acknowledged that they are arguing for a presumption against money bail, or, state another way, a presumption towards release. *Compare* Dkt. No. 259 at 60 ("no Plaintiff has argued that he or she is entitled to pretrial release.") *with id.* at 19 ("Defendants have no basis to believe that *money bail* serves any government interest…") *and* Transcript of April 7, 2020 hearing at 36:2-9, *Russell, et al., v. Harris County, et al.*, Case No. 4:19-cv-00226 (Plaintiffs' counsels explained the District Judges were not sued because "we have sued the parties, i.e. the sheriff and the county **that can get our clients released**.").

The Fifth Circuit has already endorsed "informal bail procedures," emphasizing that they may be so informal that the "decision may also be made at home or in chambers … or during telephonic communications with the jail." *United States v. Chagra*, 701 F.2d 354, 363-64 (5th Cir. 1983). As then-Judge Breyer explained, bail hearings are "typically informal affairs, not substitutes for trial or even for discovery. Often the opposing parties simply describe to the judicial officer the nature of their evidence; they do not actually produce it."[9] *United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985). Plaintiffs' demand that bail only be set or reviewed using a mini-trial with adversarial, evidentiary proceedings and a heightened standard of scrutiny simply cannot be constitutionally mandated given courts' ready acceptance of informal bail decisions.[10] *See United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (citation omitted) (stating that a "bail hearing cannot become a 'mini-trial' or 'a discovery tool for the defendant.'"). If Plaintiffs are found to have stated a colorable constitutional claim based on what is set forth in their amended complaint, then almost all - indeed, possibly all – bail hearing statutes and practices across the country are unconstitutional.

## III.   PLAINTIFFS' REQUESTED RELIEF WOULD IMPINGE ON TEXAS' SPECIAL SOVEREIGNTY INTERESTS.

The relief that Plaintiffs really seek against the District Judges is to have them use their authority under state statute to affirmatively police the hearing officers in an attempt to protect arrestees from alleged constitutional violations by those county-level employees. Dkt. No. 259 at

---

[9] This acceptance of an informal bail determination was made by Justice Breyer post-*Salerno*, thus contradicting Plaintiffs' position that *Salerno* constitutionally requires the formal procedures they desire.

[10] Nor does this demand square with Plaintiffs' claimed goal of obtaining pretrial release for those arrestees that are eligible at the soonest possible time. Requiring the formalized, on-the-record procedures Plaintiffs' desire at both initial bail hearings conducted by hearing officers and each subsequent review by a District Judge would necessarily obviate any ability for informal bail determinations to occur. Thus, all defendants would be deprived of the option to approach a District Judge or an ADA informally, and quickly, and ask for bail to be reduced thereby lessening their time spent in jail.

51. But that is insufficient to warrant relief against the state-official District Judges. An injunction in this case could not extend so far as to modify Texas' criminal justice system and require the District Judges to create policy that makes them the authority over hearing officers' discretion in determining bail.

*Ex Parte Young* does not apply—and thus a suit is barred by the Eleventh Amendment—when a plaintiff's requested relief against state officials "implicates special sovereignty interests" of the state. *Coeur d' Alene Tribe of Idaho*, 521 U.S. at 281. In order to implicate the special sovereignty interests of the state, the type of relief sought must implicate the "sovereignty interests and funds so significantly" that the *Ex Parte Young* exception does not apply. *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (emphasis added). Without question, they are implicated here.

Most courts applying *Coeur d' Alene Tribe* have done so in the context of real property. *See, e.g., Hollywood Mobile Estates Ltd. v. Cypress*, 415 F. App'x 207, 211 (11th Cir. 2011). In determining if special sovereignty interests are implicated in other contexts, courts have looked to whether (1) the injunctive relief would involve an area that "derives from [the state's] general sovereign powers," *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 515 (3d Cir. 2001); (2) the suit seeks to interfere "with the allocation of state funds" as opposed to "incidental expenditures" involved in complying with an injunction, *Barton v. Summers*, 293 F.3d 944, 949, 951 (6th Cir. 2002); or (3) the suit sought to "rewrite [the state's] property tax code with respect to its application against [] personal property," *ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1194 (10th Cir. 1998). In this case, all three of these criteria are instructive and support sovereign immunity.

To determine the sovereignty interests of states to manage its criminal justice system, this Court need only look to the Constitution. The Tenth Amendment grants States traditional police

powers to define the criminal law and to protect the health, safety, and welfare of their citizens. *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). This amendment exists to ensure that, although they must surrender many of their powers to the federal government, States are, nonetheless, able to maintain "a residuary and inviolable sovereignty" over, among other things, the operation of its criminal justice system. The Federalist No. 39, at 245 (J. Madison). Leaving the manner of regulating the criminal justice system in the hands of the states makes sense because allowing the federal government to regulate criminal justice matters for states would be "an unwarrantable transposition of power, and...a premeditated engine for the destruction of the State governments." The Federalist No. 59 (Alexander Hamilton).

The Supreme Court has likewise repeatedly recognized the sovereign interests of states in managing their own criminal justice systems. "Beyond question, the authority of States over the administration of their criminal justice systems lies *at the core of their sovereign status*." *Oregon v. Ice*, 555 U.S. 160, 170 (2009) (citing *Patterson v. New York*, 432 U.S. 197, 201 (1977)); *see also Engle v. Isaac*, 456 U.S. 107, 128 (1982)) (stating that "'States possess primary authority for defining and enforcing the criminal law.'"); *Screws v. United States*, 325 U.S. 91, 109 (1945) ("Under our federal system the administration of criminal justice rests with the States"). Given this, the Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).

It logically follows that "the bail bond is an integral and essential tool in the administration of the State's criminal justice system." *In re Hickman*, 260 F.3d 400, 406 (5th Cir. 2001). As one court has explained:

> Simply put, there is a reason why state court bail determinations are not brought before federal courts on habeas petitions: preservation of a state court's right to handle its own criminal proceedings *without interference from the federal courts unless there is a complete absence of a state court mechanism* is an entrenched and rational legal principle.

*Jordan v. Bailey*, 985 F. Supp. 2d 431, 433 (S.D.N.Y. 2013), aff'd, 570 Fed. Appx. 42 (2d Cir. 2014) (emphasis added). Given the recognized sovereignty of a state's bail system, no federal imposition on that system should occur without the court "recogniz[ing] the role of the States as laboratories for devising solutions to difficult legal problems" and refusing to "diminish that role absent impelling reason to do so." *Id.*

Plaintiffs ask this Court to use the *Ex Parte Young* exception to invade the sovereignty interests of the State of Texas by seeking an order that the District Judges create and enforce policies that mandate how hearing officers conduct their bail determinations. Dkt. 259 at 51 (stating Court could require the District Judges to "order hearing officers to provide the findings and procedures Plaintiffs seek."). The Texas Legislature has granted hearing officers jurisdiction and discretion in setting bail and dictated what those determinations must be based on. Tex. Gov't Code § 54.856; *Id.* at § 54.858. Plaintiffs' requested relief that State court judges should either "dictat[e] the outcomes" of those determinations [Dkt. No. 259 at 51] or mandate how those determinations are made [*id.*] is essentially a proposed first step towards an overhaul of Texas's criminal justice procedures, which would "diminish, even extinguish," *Coeur d' Alene Tribe*, 521 U.S. at 282, the State's and nonparty counties' power to control pretrial procedures, jail populations and bail determinations.

In effect, Plaintiffs are asking this Court to rewrite Texas law to grant the District Judges the sole authority, subject to the federal government's authority, over bail determinations for state criminal defendants. Such an order would undoubtedly regulate the "'States as States,'" address

"matters that are indisputably 'attribute[s] of state sovereignty,'" and "directly impair [the State's] ability to 'structure integral operations in areas of traditional governmental functions.'" *Hodel v. Virginia Surface Mining & Reclamation Assn.*, Inc., 452 U.S. 264, 287–288 (1981). This Court should decline Plaintiffs' proposed rewrite of the Texas Government Code and invitation to perpetually monitor and direct the District Judges to manage Texas' criminal justice system.

## IV. PLAINTIFFS' MISREPRESENTATIONS OF SUPREME COURT CASE LAW DOES NOT CONFER JURISDICTION ON THIS COURT.

Plaintiffs improperly cite, or cite out of context, from Supreme Court cases to insist they are entitled to the substantive findings and procedural protections to which Plaintiffs are entitled at a bail hearing. *See* Dkt. No. 259 (citing *Salerno*, 481 U.S. at 739; *Rainwater*, 572 F.2d at 1057; *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971); and *Bearden v. Georgia*, 461 U.S. 660 (1983)). They also implicitly indicate that these cases support their argument that a heightened standard of scrutiny applies rather than rational basis. None of these cases specifically addresses these issues much less support Plaintiffs' position.

The only cases that discuss procedural protections in the context of bail are *Salerno* and *Rainwater*. But *Salerno* dealt with a situation not present in this case where bail was not offered as an option at all due to the seriousness of the offense charged. And in fact, it does not support Plaintiffs' position that they have a fundamental right to pretrial liberty. *Compare* Dkt. No. 259 at 40 (claiming *Salerno* held there is a ""fundamental" "interest in [pretrial] liberty.") *with Salerno*, 481 U.S. at 751 ("we cannot categorically state that pretrial detention 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"). Nor did it answer what evidentiary standard must be applied to bail determinations to pass constitutional muster. *Compare* Dkt. No. 259 at 41 (stating *Salerno* "emphasized" a "clear and

convincing" standard) with *Salerno*, 481 U.S. at 752 (summarizing the bail determination process delineated in the Bail Reform Act).

*Rainwater* affirms that indigent pretrial detainees are afforded some procedural protections—the meaningful consideration of alternatives other than money bail to ensure attendance at trial—but it does not address at all what standard applies to a constitutional challenge to a bail procedure nor did it find the use of bail to detain (or a "wealth-based detention system" as Plaintiffs refer to it) to be a violation of Equal Protection or Due Process. *Compare* Dkt. No. 259 at 24 (stating as such), *with Rainwater*, 572 F.2d at 1057 (requiring only "meaningful" - not particular or on-the-record - "consideration of other possible" – not least restrictive – "alternatives" before secured bail is used).

The other cases Plaintiffs rely on also do not support Plaintiffs' position that they are entitled to a heightened standard of review when bail determinations are made. *See* Dkt. No. 259 at 36 (citing *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971); and *Bearden v. Georgia*, 461 U.S. 660 (1983)). *Williams*, *Tate*, and *Bearden* are entirely inapplicable to this case because they apply only to those already convicted of crimes. They shed no light on due process and equal protection in the context of bail much less dictate that rational basis review is the improper standard.

The District Judges should not be deprived of their entitlement to sovereign immunity, and Plaintiffs cannot maintain Article III standing, based on the misrepresentations of the above cases in their Response. Based on a proper reading of these cases, all support, if they apply at all, a finding in the District Judges' favor.

## V.      THE DISTRICT JUDGES ARE STATE ACTORS.

This Court should decline to find in favor of Plaintiffs' novel argument that State District Court Judges, that preside over state criminal matters, are not state officials. *See* Dkt. No. 259 at 42. The District Judges are entitled to sovereign immunity because they are state actors. To determine if an official is a state or local actor for sovereign immunity purposes, the Fifth Circuit uses a six-factor test: (1) "whether the state statutes and case law view the agency as an arm of the state;" (2) whether the entity is funded by the county or the state; (3) "the entity's degree of local autonomy;" (4) "whether the entity is concerned primarily with local, as opposed to statewide, problems;" (5) "whether the entity has the authority to sue and be sued in its own name;" (6) "whether it has the right to hold and use property." *Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986). "[I]t is well established that the second [factor] is the most important." *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999). The source of funds for an entity is the most important Eleventh Amendment factor, 'since an important goal of the Eleventh Amendment is the protection of state treasuries.'" *ODonnell v. Harris County, Tex.*, 227 F. Supp. 3d 706, 742 (S.D. Tex. 2016) (citing *Clark*, 798 F.2d at 744).

The District Judges are paid by the State of Texas and "district court vacancies are filled not by a county commissioners court but by the governor." Tex. Gov't Code § 659.012; *ODonnell v. Harris County, Tex.*, 227 F. Supp. 3d 706, 743 (S.D. Tex. 2016) (citing Tex. Const. Art. V § 28). Thus, in terms of the second, most important factor, this weighs in favor of finding the District Judges to be state actors. Moreover, as to the first factor, the Fifth Circuit and lower district courts have been very clear, many times, that "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities." *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (suit against state district court judges); *Du Bois v. Warne*,

336 Fed. Appx. 407, 409 (5th Cir. 2009) (same); *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 228 (5th Cir. 2009) (same); *Clark*, 798 F.2d at 744 (concluding that criminal district court judges are "**undeniably**" elected State officials). There is no case law that has determined a Texas district judge to be anything other than a state actor, which is apparent in Plaintiffs' Response. *See* Dkt. No. 259 at 53-55 (relying on case law regarding county sheriffs and county judges to claim state court judges are county policymakers). And as criminal district judges are tasked with determining the criminal responsibility of Texas citizens pursuant to the Texas Penal Code and Texas Code of Criminal Procedure, the District Judges are concerned with statewide, not merely local, problems. *Horne v. Flores*, 557 U.S. 433, 448 (2009) (holding the day-to-day functioning of a State's criminal justice system is an "area[] of core state responsibility."). The fourth factor is met.

The District Judges are state actors just as every state district judge before them has been determined to be. Given that any of the possibly disputed factors fall in favor of this finding, the District Judges are sovereignly immune from suit.

## VI.   PLAINTIFFS ARE REQUIRED TO CHALLENGE THEIR BAIL SETTINGS THROUGH A WRIT OF HABEAS CORPUS.

In an attempt to avoid dismissal of their *de jure* attack on the bail procedure in Harris County, Plaintiffs claim that the Eighth Amendment does not preclude their bail challenge because other courts [11] have considered due process and equal protection when analyzing bail procedures. To reach this conclusion, Plaintiffs mischaracterize the case law and notably fail to mention that the "binding precedent" (Dkt. No. 259 at 44) that they cite does not challenge the amount of bail,

---

[11] Plaintiffs also claim *ODonnell* forecloses this argument. But this is misguided. Dkt. No. 259 at 49-50. The *ODonnell* court declined to address this argument because it concluded that the argument was waived. *ODonnell*, 892 F.3d at 157 n. 3. Therefore, the District Judges are not foreclosed from arguing that Plaintiffs are required to pursue their claims through a writ of habeas corpus.

as Plaintiffs do here, but rather involve other issues of bail-setting procedure[12] (*Salerno*, 481 U.S. at 750 (holding the federal Bail Reform Act constitutional); *Rainwater*, 572 F.2d at 1056 (holding that the Equal Protection Clause does not require a presumption against bail in favor of alternative forms of pretrial release for indigent defendants)) or matters entirely outside the bail context (*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49 (1993) (seizure of property implicated the Fourth and Fifth Amendments); *Soldal v. Cook County, Ill.*, 506 U.S. 56, 70 (1992) (same); *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1266 (10th Cir. 2008) (First and Fourteenth Amendments claims regarding "statutes involving discrimination on the basis of religion")).

The fact that Plaintiffs can point generally to cases where some set of facts may implicate more than one constitutional right does not justify allowing Plaintiffs to avoid requirements they cannot meet under the Eighth Amendment by bringing their claim using the Fourteenth Amendment. The Supreme Court has expressly cautioned courts from allowing such a result:

> There are risks when the judicial branch gives enhanced protection to certain substantive liberties without the guidance of the more specific provisions of the Bill of Rights. As the history of the Lochner era demonstrates, there is reason for concern lest the only limits to such judicial intervention become the predilections of those who happen at the time to be Members of this Court. That history counsels caution and restraint.

*Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 502 (1977). Caution and restraint are necessary in this case; the Eighth Amendment expressly protects individuals against the imposition of "excessive bail," and specifically addresses the right Plaintiffs claim in this case.[13] Where, as here,

---

[12] Notably, both *Salerno* and *Rainwater* predate *Graham* and neither confronted the argument, later adopted in *Graham*, that courts cannot use the Fourteenth Amendment to enlarge more specific constitutional guarantees. *Graham*, 490 U.S. at 386 (holding that a claim that bail is excessive must be brought under the Eighth Amendment.)

[13] *Salerno* does not allow Plaintiffs to circumvent this reality, as they claim. Although the plaintiffs in *Salerno* indeed "argued that pretrial detention violated both due process and the Excessive Bail Clause," Dkt. No. 259 at 44 (citing *Salerno*, 481 U.S. at 746) they were able to do so because they were challenging a federal statute. Plaintiffs have been careful not to make any argument that Texas state law is the source of the constitutional violations they claim. Thus,

a plaintiff's claim falls within a specific "source[ ] of constitutional protection against … governmental conduct," the "claim must then be judged by reference to the **specific constitutional standard** which governs that right, rather than to some generalized … standard" fashioned from the Fourteenth Amendment. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")

Thus, no matter how well-disguised, Plaintiffs' claims—at their core—challenge the fact and duration of their confinement. *See, e.g.,* Dkt. 259 at 18 ("People who cannot pay for their release remain in detention"); *id.* at 23 ("equal protection and due process forbid jailing a person solely because of her inability to make a payment"). Unlike their cited cases that attack bail-setting procedure, Plaintiffs attack the resulting amount[14] of bail that is set. Dkt. No. 259 at 44 (stating their unconstitutional pretrial detention is based on financial conditions being "unattainable"); Dkt. No. 195-1 at ¶ 187 (SAC arguing Plaintiffs are subject to "confinement" because they "cannot afford to pay a standardized cash bail amount."). Plaintiffs have disguised their clear Eighth Amendment excessive bail claim in this way to evade binding Eighth Amendment jurisprudence that squarely rejects their position. *See, e.g., United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) ("[A] bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement.").

---

*Salerno* does not empower them to avoid *Graham*'s mandate that their claim that they have been subjected to unaffordable bail by a judge(s) be brought under the Eighth Amendment.

[14] Plaintiffs claim they are not arguing that bail is set "too high." Dkt. No. 259 at 43. However, this is a disingenuous assertion given that this was exactly what was argued, albeit in a more eloquent way, only one page prior. *Id.* at 44 (stating "the imposition of an *unattainable financial condition* of release is tantamount to ordering pretrial detention.")

Plaintiffs' excessive-bail challenge is cognizable *only* in a state pretrial application for writ of habeas corpus. *Ex parte Tucker*, 977 S.W.2d 713, 715 (Tex. App.—Fort Worth 1998) (citing *Ex parte Gray*, 564 S.W.2d 713, 714 (Tex. Crim. App. 1978)). This is true regardless of which constitutional amendments Plaintiffs choose to "challenge[ ] the fact or duration of [their] confinement and seek[ ] immediate or speedier release"; "habeas corpus is the exclusive remedy" when such a challenge is made. *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). This Court should not permit Plaintiffs to circumvent this reality simply by swapping the word "excessive" for "unattainable" and "unaffordable" or the Eighth Amendment for the Fourteenth Amendment. Because habeas corpus is their exclusive remedy, Plaintiffs' claims against the District Judges must be dismissed.

## VII. THE DISTRICT JUDGES HAVE NOT WAIVED ANY ARGUMENTS BASED ON WHERE THEY APPEAR IN THEIR MOTION TO DISMISS.

Plaintiffs aver that arguments made in footnotes are not sufficiently addressed in the body of the brief and are thus waived. Dkt. No. 259 at 47-48. However, the prevailing question is not where an argument is located, but rather, were the Plaintiffs put on *notice* of their pleading deficiencies. *United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009).

In *Redd*, the Appellant argued that the government waived its timeliness defense to a § 2255 motion by relegating the issue to a footnote in its initial brief. Redd reasoned that *United States v. Charles,* 469 F.3d 402 (5th Cir.2006), stood for the proposition that issues set forth in footnotes are insufficient to raise an issue for review. The Fifth Circuit corrected that in *Charles,* the Court said only that "[a] single conclusory sentence in a footnote is insufficient to raise an issue for review." *Id.* at 408 (*citing Beazley v. Johnson,* 242 F.3d 248, 270 (5th Cir.2001)).

The Fifth Circuit held that the government adequately briefed the issue in several sentences complete with citations to 28 U.S.C. § 2255, references to the one-year statute of limitations, and a citation to *United States v. Thomas,* 203 F.3d 350, 356 (5th Cir. 2000), which discusses this statute of limitations. The Fifth Circuit concluded that although all of that was presented in a footnote, it was enough to put Redd on notice of the issue.

Like the government in *Redd*, the District Judges, albeit in footnotes, have submitted several sentences complete with citations for both its judicial immunity and *Rooker-Feldman* argument. Dkt. No. 228 at 13. Plaintiffs affirmatively responded to those arguments. Dkt No. 259 at 58-59. Based on Fifth Circuit precedent, Plaintiffs were sufficiently put on notice. As a result, these arguments are properly before this Court and are not waived.

CONCLUSION

Plaintiffs' Response fails to meet their burden to show this Court has subject matter jurisdiction over their claims against the District Judges. Plaintiffs lack standing under Article III. Further, the District Judges are entitled to Eleventh Amendment immunity because Plaintiffs have not demonstrated how the narrow *Ex parte Young* exception applies. Alternatively, the District Judges ask that this Court dismiss this suit because Plaintiffs' claims, which lie in habeas corpus, cannot properly be brought under 42 U.S.C. § 1983.

**Dated:** September 25, 2020.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Chief, Law Enforcement Defense Division

*/s/ Courtney Corbello*
COURTNEY CORBELLO
Assistant Attorney General
Texas State Bar No. 24097533
Southern Distr. No. 3089117
*Courtney.Corbello@oag.texas.gov*
Attorney-in-Charge

*/s/ Landon Wade*
LANDON WADE
Assistant Attorney General
Texas State Bar No. 24098560
Southern Distr. No. 3503435
*Landon.Wade@oag.texas.gov*

*/s/ Jonathan M. Pena*
JONATHAN PENA
Assistant Attorney General
Texas State Bar No. 24110207
Southern Distr. No. 3350256
*Jonathan.Pena@oag.texas.gov*

OFFICE OF THE ATTORNEY GENERAL
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9410 (Fax)

ATTORNEYS FOR THE DISTRICT JUDGES

## NOTICE OF ELECTRONIC FILING

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance

with the Electronic Case Files system of the United States District Court for the Southern District of Texas, on September 25, 2020.

/s/ Courtney Corbello
**COURTNEY CORBELLO**
Assistant Attorney General

### CERTIFICATE OF SERVICE

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served directly to all counsel on record by the Electronic Case Files System of the Southern District of Texas on September 25, 2020.

/s/ Courtney Corbello
**COURTNEY CORBELLO**
Assistant Attorney General