# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

|  |  |  |
|---|---|---|
| RUSSELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:19-cv-00226 |
| v. | ) | (Class Action) |
| | ) | The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) | U.S. District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFFS' SURREPLY TO MOTIONS TO DISMISS (Dkt. 214, Dkt. 228)

The Intervenors and 19 Felony Judges make numerous, new false and misleading factual assertions in their Reply briefs. Many of their legal arguments are premised on these wrong factual assertions. A good-faith debate of the legal issues in their motions cannot occur until these factual errors are resolved. Additionally, their briefs introduce new legal arguments for the first time in reply. Plaintiffs submit this Surreply to avoid spending unnecessary time at oral argument correcting the record and to clarify any resulting confusion about important legal concepts.

**I.      A List of the Misrepresentations of Plaintiffs' Allegations and Assertions of New Facts**

### A.  Misrepresentations of Plaintiffs' Allegations

1.  The Judges state that, "Plaintiffs acknowledge, several times, that the bail schedule was rescinded three years ago in 2017." Dkt. 292 at 11. This is wrong. Plaintiffs allege that the Judges rescinded *a* bail schedule in 2017. That bail schedule is in the record at Dkt. 282-1. But Plaintiffs further allege that *another* bail schedule, promulgated by the Felony Judges, is *currently* in place, and has been in place since 2017. *See* Dkt. 1-4 (Felony Bond Schedule, effective 7/29/2017); Dkt. 195-1 ¶ 80; *see also id.* ¶¶ 25, 41, 45, 47, 105, 108, 118, 152.

The paragraphs of Plaintiffs' complaint that the Judges cite (¶¶ 108 and 118) refer to the purported rescission *not* of a bail schedule, but of additional, explicit "written and oral" *instructions* from the Judges.[1] Plaintiffs also described and filed with their Response Brief a

---

[1] *See* Dkt. 195-1 ¶ 117–18. Plaintiffs further allege that "actual practices are virtually the same as they have been for many years." *Id.* ¶ 118; *see also id.* ¶¶ 105, 108.

publicly available policy document, available on the Judges' government-run website, which states that the Hearing Officers "shall" apply the bail schedule. Dkt. 259 at 18 (quoting Dkt. 259-6 at 5). It is false for the Judges to assert that "the bail schedule" is rescinded.

2.   The Judges assert in reply that Plaintiffs' "Response is devoid of any facts that support the conclusion that the District Judges have caused the continued, alleged violation." Dkt. 292 at 12. That is wrong. Plaintiffs identify the bail schedule, which results in detention after arrest and prior to a hearing for those who cannot pay, *e.g.*, Dkt. 195-1 ¶¶ 41, 45, and a generally applicable policy, available on the Judges' website, that states that *at* a bail hearing, Hearing Officers "shall set bail in accordance with the Bail Schedule." Dkt. 259 at 18 (citing Dkt. 259-6 (Exhibit D)). And Plaintiffs' Complaint is replete with facts alleging the Judges' authority to control the findings and procedures at bail hearings. *See id.* at 48–52 (citing Dkt. 195-1 ¶¶107–108, 117–118 and relevant Texas law).

The Judges butcher a section of Plaintiffs' brief by reordering phrases and replacing a crucial phrase with an ellipsis, in an attempt to support their reply brief's new assertion that "Plaintiffs appear to acknowledge that rescinding the bail schedule is a sufficient solution that would ensure hearing officers do not set bail at 'predetermined' amounts since it is the exact relief they ask this Court to grant them." Dkt. 292 at 12. The Judges assert that Plaintiffs wrote: "'Felony Judges could rescind their bail schedule' thereby ensuring 'hearing officers . . . provide the findings and procedures Plaintiffs seek.'" *Id.* Actually, Plaintiffs wrote: "Even if Defendants were correct that state law prohibits the Felony Judges from dictating the outcomes of particular individual bail decisions, they do not argue that they could not order Hearing Officers to provide the findings and procedures Plaintiffs seek. Like the misdemeanor judges, the Felony Judges could rescind their bail schedule *and promulgate a rule analogous to Rule 9.*" Dkt. 259 at 51. To be clear: Merely rescinding the bail schedule would not be "sufficient" to prevent de facto orders of detention without the required findings and safeguards.

3.   The Judges assert in reply that "Plaintiffs do not allege that, once the District Judges review a criminal defendant's bail, they do so unconstitutionally," and that "Plaintiffs have conceded several times that once criminal defendants follow procedures readily available to them to have their bail reviewed – by filing a motion – the District Judges hold 'an evidentiary hearing concerning the appropriateness of the secured bond amount, or the need to keep the person in a jail cell pending resolution of the case, or whether less-restrictive conditions of release are available.'" Dkt. 292 at 13–14. That is false.

Once again, the Judges misquote Plaintiffs' brief to mislead the Court. Plaintiffs did not state that the Judges *will hold* such a hearing, but that "*[i]f a person wishes to have*" an evidentiary bail hearing, *"the person's lawyer must file a motion and have a court proceeding scheduled for a later date.*" Dkt. 259 at 18. Plaintiffs further note that this hearing "*would be the first opportunity* to present witness or other evidence and the first time a judge even *conceivably* makes findings on the record regarding pretrial release or detention." *Id.* at 19. Plaintiffs do *not* "concede" that the Judges *actually provide* those protections (or that they happen in a timely manner). The opposite is true: Plaintiffs allege that the Judges violate the federal Constitution when determining pretrial release and detention by *failing* to provide them. *See* Dkt. 195-1 ¶¶ 42–43. Additionally, Plaintiffs allege that these protections are *not* "readily

available" to them, contrary to the Judges' misstatement. Plaintiffs explained this point in their Response brief.[2]

4.   The Judges now assert in reply that, although the Felony Judges have authority under state law to "override the Hearing Officer's jurisdiction in order to make all initial bail determinations," "Plaintiffs never claim" that the District Judges have exercised that authority and that "[t]his failure to show any willingness on the part of the District Judges to exercise the concurrent jurisdiction Texas law allows is fatal to Plaintiffs' *Young* application." Dkt. 292 at 15 n.6. Leaving aside (for now) the Judges' incorrect legal analysis, their facts are wrong.

First, the Judges make a significant concession that Texas law allows the Felony Judges to control the initial bail determination. They argue simply that the Judges *choose* not to. But that assertion contradicts Plaintiffs' allegations and must be ignored. Plaintiffs allege that the Judges use their authority to make initial bail determinations and to dictate what happens at the bail hearings over which Hearing Officers preside, including by promulgating a bail schedule that controls what happens after arrest and before a bail hearing, and by promulgating rules, policies, and instructions that dictate findings, procedures, and outcomes *at* the bail hearings (Dkt. 259-4; Dkt. 259-6; Dkt. 195-1 ¶¶ 107–108, 117–118). Plaintiffs also allege that Judges *sua sponte* revoke bonds set by Hearing Officers. Dkt. 259 at 50–51. And the Judges simply ignore the publicly available Direct Filing Order on their own website which states that "[t]he criminal law hearing officer shall set bail in accordance with the Bail Schedule[.]" Dkt. 259-6 at 5. Plaintiffs allege not only that the Judges are "willing" to exercise their jurisdiction to control initial bail determinations both before the magistration hearing and at the magistration hearing, *but that they actually have controlled the findings, procedures, and outcomes of bail determinations for years*. In documents created by the Judges prior to their representation by this Attorney General, the Judges themselves state that their jurisdiction over a case begins after arrest, before an initial bail hearing. Dkt. 259-6 at 1.

### B. New Facts Introduced in Reply

1.   The Judges assert that their "Local Rules" "explicitly empower the hearing officers to set bail without any reference to a bail schedule." Dkt. 292 at 13. As an initial matter, this new factual assertion that the Judges, through their Local Rules, have "empowered" the Hearing Officers to reject the bail schedule (if it were true) would be consistent with Texas law and local practice, as described in Plaintiffs' Complaint, pursuant to which the Judges have authority to promulgate rules that dictate the procedures Hearing Officers apply—a view no one has questioned for decades until the Attorney General's intervention. Even if true, then, this would support Plaintiffs' argument.

---

[2] Dkt. 292 at 18–19 ("Sometimes, arrestees are not even brought into court. . . . It is not possible to have a formal, on-the-record, adversarial bail hearing at that time. Dkt. 195-1 ¶ 124. Detained individuals typically remain in lock-up outside the courtroom. Id. ¶ 125. . . If a person wishes to have an evidentiary hearing …, the person's lawyer must file a motion and have a court proceeding scheduled for a later date. Id. ¶ 128. Pre- COVID-19, such a hearing was not likely to occur for more than a week. Id. ¶ 43, 128; Ex. F (docket schedules). Delays have worsened during the pandemic. . . .").

But it does not appear to be true. The only "Local Rule" the Judges cite is "Local Rule 6.12," but they do not quote the rule or provide a link to it. Plaintiffs assume that the "Local Rules" to which the Judges refer are the ones that were last amended in 2007 and that are available here: https://www.justex.net/courts/criminal/LocalRules.aspx. According to that website, Rule. 6.12 says nothing about the bail schedule and is not even directed at the Hearing Officers. The Rule applies to the initial appearances that occur *before the Felony Judges*. It describes "Arraignment Initial Appearance" and states that the "preliminary initial appearance" "shall be held in each of the *District Courts sitting as a magistrate* at 9:00 a.m. Monday through Friday." The rule further states, "The Magistrate [i.e. the Felony Judge] shall set bail, and if bond has been posted in amount of set bail, order such bond shall continue in effect; if bond in the amount of set bail has not been posted, the Magistrate shall determine whether the defendant is eligible for release on personal recognizance, and commit defendant to custody of the Sheriff subject to defendant's posting bond in the amount of set bail." If this is the Local Rule to which the Judges are referring, they are wrong that it "empowers" the Hearing Officers.

2. The Judges now assert that they "do, in fact, conduct a bail review at initial appearances." Dkt. 292 at 13. The only evidence of this is a non-working link (which the Judges' counsel last visited over three weeks before filing the reply brief). When undersigned counsel asked Ms. Corbello to send a working link or the PDF, she shared this link. To the extent this document— a "joint statement" regarding Covid-19 court operations—could be read to suggest that the Judges provide formal, on-the-record bail review hearings at initial appearances, it contradicts Plaintiffs' factual allegations, *see* Dkt. 259 at 18–19, and, because that factual dispute (whether the Judges provide constitutionally adequate hearings) is not relevant to jurisdiction, it must be ignored at this stage. Nevertheless, the document does not state that the Judges provide these hearings. First, the "Joint Statement" was issued originally on March 18, 2020, more than a year after Plaintiffs sued, and it says nothing about the Judges' practices at the relevant time. Second, the Judges do not identify the section of the document they are relying on, but Plaintiffs presume they are referring to Section II, which states that the Preliminary Assigned Court Appearance setting "is to ensure the prompt appointment of counsel, as well as to review bail." Importantly, that portion of the document does not say that the Judges *actually* review bail, let alone that they provide the substantive findings and procedural safeguards the Constitution requires. Third, the document pertains to what happens in the Judges' courtrooms, not to the automatic application of the bail schedule or the magistration hearings.

## II. Defendants Make New Arguments and Misrepresent Plaintiffs' Arguments

### A. Standing and Sovereign Immunity

After misrepresenting Plaintiffs' factual allegations and introducing new facts, the Felony Judges premise their standing and sovereign immunity arguments on them. The central question in standing analysis is whether relief against the Judges could cure the violations. Of course it could, as *ODonnell* showed and as Texas law and decades of local practice make clear: the Judges

4

promulgate policies that everyone else must follow. Plaintiffs have shown, and the Judges concede, that state law contemplates the Felony Judges promulgating such rules. Further, Plaintiffs have alleged and will prove that the Judges have in fact been doing so for decades, and that those rules control the Hearing Officers' practices. Dkt. 259 at 46–57. The Judges' new "evidence"—Local Rule 6.12 and the post-litigation policy document promulgated in March 2020—are immaterial vis-à-vis Plaintiffs' well-pled allegations and proffered evidence because they do not even state what the Judges claim they state and because they would not implicate *standing* even if they did. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016).[3]

The 19 Judges' sovereign immunity argument is also confused. First, sovereign immunity is conceivable only if this Court concludes that the Felony Judges—unlike the misdemeanor judges who perform the same function promulgating bail rules, for the same County, in cases prosecuted by the same District Attorney, at the behest of the same voters—are not County policymakers.

Second, if the Judges are policymakers for the State when promulgating bail rules applicable only in Harris County, this Court can grant prospective relief against them under the plain text of 42 U.S.C. § 1983 and the equitable principles set forth in *Ex parte Young*: sovereign immunity is a defense only to damages claims.

Third, the Judges apparently now argue that the *Ex parte Young* exception to sovereign immunity does not apply because (1) they lack the requisite "connection" to the constitutional violations, and (2) the Judges do not show a "willingness" to "enforce" their local rules against the Hearing Officers. Dkt. 292 at 17 ("Even to the extent the District Judges could create a policy for the hearing officers that dictates what procedures they must use to determine bail, there is no

---

[3] Even if the Judges were correct that Plaintiffs lack standing against the Felony Judges, Plaintiffs would still have viable claims against the Sheriff and County and could add the Hearing Officers as Defendants, if the Court deemed it necessary to issue complete relief.

allegation as to how they could enforce such a policy."). Their first argument fails because it is based on the same wrong factual assertions addressed above. Obviously where, as here, the Judges could be enjoined and the constitutional violations remedied, the requirement under *Ex parte Young* that there be "some connection" is met. And cases they cite for the first time, which stand for the uncontroversial proposition that an *Ex parte Young* defendant must have "some connection" to the constitutional violation, do not change that fact. Dkt. 292 at 14–18. Here that connection is obvious: the Judges are the ones who set county bail policy. It is their bail schedule and their local rules, just like the misdemeanor bail schedule and local rules in *ODonnell*.

The Judges' second argument about their "willingness" or "duty" to "enforce" their rules against the Hearing Officers also fails. The Felony Judges are not violating the *Hearing Officers*' rights; they are violating Plaintiffs' rights. Thus, the question of what methods the Felony Judges would use to enforce their local rules against a Sheriff or Hearing Officer who refuses to enforce them has nothing to do with *Ex parte Young* or sovereign immunity. Plaintiffs have adequately alleged that the Felony Judges promulgate rules that control what happens prior to and at the bail hearings over which Hearing Officers preside. Sovereign immunity is no defense to that claim.

Finally, the Judges assert a new abstention-like argument, purportedly from *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261 (1997), that the relief Plaintiffs seek "implicates special sovereignty interests," and is therefore barred under the Eleventh Amendment because "[t]he Tenth Amendment grants States traditional police powers to define the criminal law and to protect the health, safety, and welfare of their citizens," Dkt. 292 at 22-23, and states have an "interest in administering their criminal justice systems free from federal interference," *id.* at 23 (quoting *Kelly v. Robinson*, 479 U.S. 36, 49 (1986)). First, this argument is waived because it was raised in Reply. Second, it is wrong. Principles of comity and federalism are addressed by the *Younger*

6

doctrine, which the Judges and Intervenors did not raise, and which was rejected in similar cases, including *ODonnell*. 892 F.3d at 156; *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1157 (S.D. Tex. 2017). The Judges' attempt to smuggle an abstention argument into their novel, waived "special sovereignty interests" argument is betrayed by their citation to *Kelly*, 479 U.S. at 49, a *Younger* case.

### B. Substantive Due Process

The Judges misrepresent quotations from *Salerno* in an effort to assert that the Supreme Court "rejected" the argument that "pretrial detention offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Dkt. 292 at 20. To make that claim, the Judges *omit the rest of the paragraph* which states that the right to pretrial liberty is "fundamental," and that all the Supreme Court rejected was an argument that the Government could not detain a person pretrial due to dangerousness *even* in circumstances where it "proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community[.]" *United States v. Salerno*, 481 U.S. 739, 750–51 (1987). In other words, the Court rejected an absolute right to pretrial liberty, recognizing that that right, albeit "fundamental," could be infringed if the Government proved that detention was necessary.[4]

The State briefly now asserts that *Salerno* engaged in only a procedural due process analysis. Dkt. 293 at 7. That is wrong and ignores that *Salerno* specifically addressed the substantive interest in pretrial liberty, holding that there is a "'general rule' of substantive due

---

[4] The full quote from *Salerno* is: "On the other side of the scale, of course, is the individual's strong interest in liberty. We do not minimize the importance and fundamental nature of this right. But, as our cases hold, this right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society. We think that Congress' careful delineation of the circumstances under which detention will be permitted satisfies this standard. When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat. Under these circumstances, we cannot categorically state that pretrial detention 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Snyder v. Massachusetts,* 291 U.S. 97, 105 (1934)." *Salerno*, 481 U.S. at 750–51.

process that the government may not detain a person prior to a judgment of guilt in a criminal

trial," 481 U.S. at 749. Then, in a different section, the Court *separately* assessed whether the

procedures in the Bail Reform Act "by which a judicial officer evaluates the likelihood of future

dangerousness are specifically designed to further the accuracy of that determination," *id.* at 751–

52. This is uncontroversial: procedural due process exists by reference to substantive rights, and

procedural protections are never sufficient to protect a substantive right. Dkt. 259 at 22–43.

### C.  *ODonnell*

The Judges and Intervenors try mightily, in new ways in Reply, to convince this Court that

the Fifth Circuit somehow rejected Plaintiffs' federal pretrial liberty claim without discussing it.

Their tortured reading of *ODonnell* is unpersuasive.

First, in an attempt to convince this Court to reach a different conclusion from the one it

already reached on remand in *ODonnell*, *see ODonnell v. Harris County*, 321 F. Supp. 3d 763,

774–75 (S.D. Tex. 2018), the Judges omit a critical phrase from *ODonnell* that specified the nature

of the right that the Fifth Circuit actually rejected: an *absolute* right to pretrial release for people

who are indigent. The Judges claim that *ODonnell* held that "there was no 'fundamental

substantive due process right . . . in view,'" implying that pretrial detention due to inability to pay

does not implicate *any* substantive right. Dkt. 292 at 19 (selectively quoting *ODonnell*, 892 F.3d

at 163; ellipsis in Judges' brief); *see also* Dkt. 293 at 4 (quoting the same section of *ODonnell* and

omitting the same phrase). That is obviously wrong because equal protection—which the Fifth

Circuit held defendants had violated—is a substantive right. Moreover, the due process right that

*ODonnell* rejected is set forth in the exact words the Judges and Intervenors omit, specifically, "a

fundamental substantive due process right to be free from *any form of wealth-based detention*,"

i.e., an absolute right to release—one that Plaintiffs do not ask this Court to recognize.

Second, Intervenors now ask this Court to conclude that when the Fifth Circuit described the "liberty interest" at stake as "the right to pretrial liberty of those accused . . . of misdemeanor crimes upon the court's receipt of reasonable assurance of their return," the court was all of a sudden rejecting what it had just written about state law and was actually "consider[ing] a more general interest in pretrial liberty." Dkt. 293 at 5 & n.9. But the opinion is clear that it is not based on a federal liberty interest: the panel had previously stated (following the district court's similar analysis) that "[h]ere, our focus is the law of Texas, which has acknowledged the two-fold, conflicting purpose of bail," and "[t]his tension [in Texas law] defines the protected liberty interest at issue here." *ODonnell*, 892 F.3d at 157. *ODonnell* addressed only a state-created liberty interest. The Judges cite nothing else for the proposition that *ODonnell* "considered" the federal substantive due process right that this Court and the stay motion panel subsequently clarified was *not* considered. *ODonnell v. Harris County*, 321 F. Supp. 3d 763, 774–75 (S.D. Tex. 2018); *ODonnell v. Goodhart*, 900 F.3d 220, 228 (5th Cir. 2018).

Third, Intervenors now assert—without citation—that "the procedures set out in *ODonnell* would apply with equal force to such an interest [in pretrial liberty, arising under the federal Constitution]." Dkt. 293 at 4. That is absurd. The Fifth Circuit did not consider the federal substantive due process right to pretrial liberty, let alone reject longstanding precedent that such a right exists or apply the appropriate federal constitutional legal tests to consider which additional procedural safeguards not litigated or decided in *ODonnell*—such as a right to counsel and a heightened evidentiary standard—are required to protect that right. Thus, Intervenors simply fabricate their assertion that "[a]ccording to Plaintiffs, *Salerno* ushered in a sea of change [sic] in the law governing bail processes." Dkt. 293 at 6.  Plaintiffs say no such thing. Citing cases from before and after *Salerno*, Plaintiffs show that the Supreme Court has long recognized the core due

process right to bodily liberty and has recognized that rigorous procedural safeguards are required *even in the post-conviction context* where a person's liberty interest is diminished. Dkt. 259 at 25–26 n.16. *Salerno* applied that longstanding principle to a federal law authorizing pretrial detention and found that it did not violate substantive due process because the law required a "full-blown adversary hearing" and a substantive finding that detention was necessary. Dkt. 259 at 34–35, 41.

*ODonnell* does not foreclose Plaintiffs' claims. Plaintiffs cited multiple cases for the basic rule that when a case does not mention or decide an issue, it cannot set precedent on that issue, Dkt. 259 at 29–30, although citation is hardly necessary for that elementary proposition: the Fifth Circuit did not and could not overrule precedent that there is a federal constitutional interest in pretrial liberty. No appellate court has ever rejected the fundamental interest in pretrial bodily liberty, and the Supreme Court has held the opposite. It would be lawless to hold that the Fifth Circuit did something so radical as to overturn decades of Supreme Court precedent without citing that precedent—and it would mean that Texas could pass a new law requiring pretrial detention in every criminal case.[5]

This Court has already agreed, and the Fifth Circuit has affirmed, that *ODonnell* did not address the federal substantive due process right to pretrial liberty. *ODonnell v. Harris County*, 321 F. Supp. 3d 763, 774–75 (S.D. Tex. 2018); *ODonnell v. Goodhart*, 900 F.3d 220, 228 (5th Cir. 2018). It is unclear why the Attorney General's Office wishes so desperately to avoid litigating the merits of that claim.[6]

---

[5] The Judges correctly note that Plaintiffs accidentally cited the dissenting opinion in *Harper v. Va. Dept. of Taxation*, 509 U.S. 86 (1993). But the proposition for which Plaintiffs cited *Harper* is utterly uncontroversial, and the portion of the dissent Plaintiffs cited simply collected prior Supreme Court opinions making the basic point that an opinion that does not decide an issue cannot set precedent on that issue.

[6] The Judges also confuse *ODonnell* as it applies to *Preiser* and the Eighth Amendment. As to *Preiser*, the Fifth Circuit held that defendants in *ODonnell* waived the argument that plaintiffs were required to proceed via writ of habeas corpus. *ODonnell v. Harris County*, 892 F.3d 147, 157 n.3. Separately, the Fifth Circuit rejected defendants' arguments that Plaintiffs were required to proceed under the Eighth Amendment and held that "we have already

Date: October 3, 2020

Respectfully Submitted,

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721


*/s/ Liyah Brown*
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
mimi@texascivilrightsproject.org
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
liyah@texascivilrightsproject.org
Peter Steffensen
Texas State Bar No. 24106464
Southern District No. 3327006
peter@texascivilrightsproject.org
Texas Civil Rights Project
2202 Alabama Street
Houston, TX 77004
Telephone: 512-474-5073 ext. 118

*/s/ Neal S. Manne*
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666


*/s/ Michael Gervais*
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

---

concluded that '[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.' *Pugh v. Rainwater*, 572 F.2d 1052, 1057 (5th Cir. 1978) (*en banc*). ODonnell's present claims do not run afoul of *Graham*." *Id.* at 157. In other words, *ODonnell* did not conclude that defendants waived their argument under *Graham*; rather, the court rejected the argument under case law that binds this Court as well.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 3, 2020 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Elizabeth Rossi*
Elizabeth Rossi