United States District Court
Southern District of Texas
**ENTERED**
November 18, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-226 |
| HARRIS COUNTY, TEXAS, *et al.*, | § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

Mario Garza, individually and on behalf of 1st Advantage Bail Bonds and the professional bail bondsmen of Harris County, has moved to intervene. (Docket Entry No. 252). The plaintiffs and three of the felony judges—Chuck Silverman, Brian E. Warren, and Lori C. Gray—oppose the intervention. (Docket Entry Nos. 282, 283). Based on the motions and responses, the record, the applicable law, and the oral arguments of counsel, the court denies the bondsmen's motion to intervene. The reasons are set out below.

**I.     Legal Standard**

The bondsmen moved for intervention as of right and, in the alternative, for permissive intervention. At the hearing, counsel for the bondsmen clarified that the motion was based on permissive intervention. The court analyzes both bases for the motion.

The general rules of pleading apply to Rule 24 motions, which are "construed liberally" in the movant's favor. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009). The court must accept the nonconclusory allegations in support of the motion as true. *See DeOtte v. Azar*, 332 F.R.D. 173, 184 (N.D. Tex. 2019) (collecting cases); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations

1

in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.").

### A. Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs intervention as of right. Under Rule 24(a), parties may intervene based on a statutory right or an interest in the action. FED. R. CIV. P. 24(a). The Fifth Circuit has "distilled" Rule 24(a)(2)'s requirements for parties asserting an interest in an action into four parts:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (citations omitted).

Denials of intervention under 24(a) are reviewed de novo. *Id.* at 973.

### B. Permissive Intervention

Federal Rule of Civil Procedure 24(b) provides for permissive intervention based on a conditional statutory right to intervene or a common question of law or fact. FED. R. CIV. P. 24(b). Permissive intervention may be appropriate when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185,189 n.2 (5th Cir. 1989).

"Permissive intervention 'is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th

Cir. 1984) (en banc) (citing Wright & Miller, *Federal Practice and Procedure: Civil* § 1913 at 551). "Denials of permissive intervention are only subject to reversal if extraordinary circumstances so require." *Graham v. Evangeline Par. Sch. Bd.,* 132 F. App'x 507, 513–14 (5th Cir. 2005) (citing *Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003)).

## II. Timeliness

District courts evaluating a motion's timeliness look to the length of time during which the proposed intervenor knew or reasonably should have known about its interest in the action, the prejudice to existing parties if the motion is granted, the prejudice to the intervenor if the motion is denied, and whether there are any "unusual circumstances militating either for or against a determination that the application is timely." *St. Bernard Par.*, 914 F.3d at 974. "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (citation omitted). Timeliness is contextual and must be determined based on all the circumstances. *Id.*

The bondsmen filed their motion to intervene in August 2020. While the plaintiffs filed this lawsuit in January 2019, the case was stayed for approximately a year while the parties engaged in settlement negotiations. The plaintiffs filed their second amended complaint on June 26, 2020. The case is still at an early stage. No unusual circumstances militate for or against finding timeliness. Considering all the factors and the circumstances, the motion to intervene is timely.

## III. Intervention as of Right

### A. The Bondsmen Do Not Have a Protectable Interest

An applicant to intervene under Rule 24(a)(2) must have a "direct, substantial, legally protectable interest in the proceedings." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quotation omitted). Whether an applicant has a legally protectable interest in the main action "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way. So, an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Id.* (emphasis in original). "[I]ntervention is improper where the intervenor does not itself possess the only substantive legal right it seeks to assert in the action. *New Orleans Pub. Serv.*, 732 F.2d at 466. "[C]ourts have found that asserted interests are not sufficient to justify intervention when . . . the interest asserted was too contingent, speculative, or remote from the subject of the case." *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. 2012) (collecting cases).

The Fifth Circuit has provided guidance on the interests sufficient to support intervention as of right. *See id*. at 315. A property right in the subject of the action creates a right to intervene. *In re Lease Oil Antitrust Litigation*, 570 F.3d at 251 (the State of Texas had a right to intervene to contest the distribution of unclaimed funds from a class action settlement because Texas had a state-created property right in the interest accrued on the funds that were the subject of the litigation.). An intervenor also has a protected interest when it is the intended beneficiary of the regulatory scheme that is the subject of the lawsuit. *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 566–67 (5th Cir. 2016). But the Fifth Circuit has declined to grant intervention as of right when the asserted interest will be only indirectly affected by the outcome of the lawsuit. The fact that the outcome of a lawsuit may, after intervening steps, increase a proposed intervenor's financial burdens does not create a right to intervene. *See Texas*

4

*v. Dep't of Energy*, 754 F.2d 550, 552 (5th Cir.1985) (the fact that a Department of Energy review process would increase electrical utilities' statutory obligations to pay into a federal nuclear waste program was too indirect to support intervention as of right); *New Orleans Pub. Serv.*, 732 F.2d at 466 (the mayor and citizens of New Orleans and others did not have the right to intervene in a fuel-pricing dispute on the ground that the electricity rates they paid would increase if the dispute was decided against the plaintiff utility company.).

The bondsmen assert "a vested property right to earn a living writing bail bonds" as their interest in this lawsuit. (Docket Entry No. 252 at 14). The Texas Supreme Court has recognized a "vested property right in making a living" that extends to the business of writing bail bonds, as it does to any other profession. *Smith v. Decker*, 312 S.W.2d 632, 634 (Tex. 1958); *see also Font v. Carr*, 867 S.W.2d 873, 875 (Tex. App. 1993), *writ dismissed w.o.j.* (Oct. 6, 1994) ("The right to earn a living by writing bail bonds is a property interest protected by the Texas Constitution."). The State may limit the right through "valid and subsisting regulatory statutes." *Smith*, 312 S.W.2d at 634. The Fifth Circuit found that bondsmen had at least a procedural due process interest in their livelihood when a sheriff categorically revoked all money bail based on allegations of the bondsmen's misconduct. *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

While the bondsmen's interest in earning a living is clear, the connection between that interest and this action is not. To qualify for intervention as of right, the asserted interest must "relat[e] to the property or transaction that is the subject of the action." FED. R. CIV. P. 24(a)(2). This action challenges Harris County's initial felony bail hearings. The issue is whether those hearings are constitutionally adequate. The bondsmen do not assert, nor could they, that their right to practice their profession gives them a proprietary interest in the procedures that govern bail hearings. *See Smith*, 312 S.W.2d at 634; *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414,

2019 WL 6219933, at *22 (S.D. Tex. Nov. 21, 2019) ("[*Smith*] recognizes that the general 'property right in making a living' is not unlimited but is instead 'subject . . . to valid and subsisting regulatory statutes.'" (citation omitted)). The bail determination rules, policies, and procedures that the plaintiffs challenge neither regulate the bondsmen nor are intended to benefit the bondsmen. *Cf. Wal–Mart*, 834 F.3d at 566–67.

Instead, the bondsmen assert that the relief that the plaintiffs seek could cause them economic harm. They argue that the "[p]laintiffs seek, if not to end surety bail in Harris County entirely, to reduce it to such a low level as to drive virtually all bondsmen in Harris County out of business." (Docket Entry No. 252 at 13). This statement mischaracterizes the relief the plaintiffs seek and the court need not take it as true. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 820. The plaintiffs have not asked that all, or most, money bail be eliminated, or that the amount of bail be reduced across the board. The plaintiffs seek a declaratory judgment and increased procedural protections at bail hearings. (*See* Docket Entry No. 195-1 at 50–51 (the plaintiffs' requests for relief)). It requires a series of hypotheticals to speculate that "the classwide injunction Plaintiffs seek will have ripple effects, leading others to make choices that will ultimately result in an economic burden on the [bondsmen]." *DeOtte v. Azar*, 332 F.R.D. 173, 183 (N.D. Tex. 2019) (denying intervention as of right based on an "attenuated" financial interest in the outcome of the case).

Such a series of hypotheticals, based on inaccurate descriptions of the case, do not give the bondsmen a right to intervene. Speculation that granting relief in this case might affect the bondsmen's bottom line in an as-yet-to-be-determined way is not enough. *Dep't of Energy*, 754 F.2d at 552 (intervention as of right was not warranted when the proposed intervenor was only implicated if its "speculation [was] accurate" that if the plaintiffs succeeded the proposed

6

intervenor might be subject to greater payment obligations). Binding precedents require a "direct, substantial, legally protectable interest in the proceedings." *Id.* (quoting *New Orleans Pub. Serv.*, 732 F.2d at 464).

The bondsmen assert a similarly speculative basis to support their proposed challenge to the risk-assessment tool. They state that "if Harris County ceased using a risk assessment for felony arrestees, and instead used a bail schedule like its 2012 misdemeanor bail schedule, more individuals would be able to afford a bondsman and thus secure their pretrial release." (Docket Entry No. 252 at 7). But the bondsmen do not challenge the risk-assessment tool because it affects their livelihood, and there does not appear to be a basis for them to do so. Instead, they allege that the risk-assessment tool is unconstitutional because of its effect on felony arrestees. (Docket Entry No. 252 at 16). This allegation presents no basis for intervention. *New Orleans Pub. Serv.*, 732 F.2d at 466 ("[I]ntervention is improper where the intervenor does not itself possess the only substantive legal right it seeks to assert in the action.").

The Supreme Court has held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). The plaintiffs do not seek relief directed at the risk-assessment tool. (Docket Entry No. 282 at 1 (the "pretrial risk assessment tool [is] irrelevant to Plaintiffs' claims and requested relief.")). The bondsmen assert that the risk-assessment tool is unconstitutional as applied to felony arrestees. (*See* Docket Entry No. 252 at 7 ("Movants believe that the Harris County felony bail schedule uses an unconstitutional risk assessment algorithm to calculate the amount of the bond."). The bondsmen's allegations about injuries to felony arrestees do not satisfy the injury-in-fact requirement for Article III standing.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way.") (citation and quotation marks omitted).

The "contingent, speculative, [and] remote" interests the bondsmen have asserted do not give them a right to intervene. *See Bear Ranch,* 286 F.R.D. at 316.

### B. The Bondsmen Have Not Shown an Adverse Effect

The bondsmen argue that denial of their motion to intervene would preclude them from vindicating their rights, adversely affecting their interests. (Docket Entry No. 252 at 14 (citing *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 435 (5th Cir. 2011))). Because the bondsmen have not identified a legally protected interest in this case, they have not shown an adverse impact that supports intervention.

### C. The Bondsmen Are Adequately Represented

The bondsmen concede that they are adequately represented by the defendants who are opposing the plaintiffs' constitutional claims. (Docket Entry No. 252 at 16 ("[M]ovants agree agree with the State of Texas, Governor Abbott, the Attorney General, and the majority of felony judges that Harris County's felony bail practices and procedures provide all the procedural due process to which plaintiffs are due under *O[]Donnell* I and II and that secured bail is constitutional."). The bondsmen join the felony district judges' and the state intervenor's motions to dismiss as to those claims. (Docket Entry No. 252-5 at 1–2).

The bondsmen assert that they are adverse to the defendants because they seek to challenge the risk-assessment tool used in Harris County's initial bail-setting process. (Docket Entry No. 252 at 16–17). But "[i]n order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. The plaintiffs do not challenge the risk-assessment tool or seek relief that

will affect the use of the risk-assessment tool. (*See* Docket Entry No. 195-1 at 50–51). The current defendants do not defend the risk assessment tool against a constitutional challenge. The bondsmen have not "identif[ied] the particular way in which th[eir] divergent interests have impacted the litigation." *See Texas*, 805 F.3d at 663; *see also Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 204 (5th Cir. 2016) (analyzing adversity of interest under *Texas*). The bondsmen cannot do so, because the constitutionality of the risk-assessment tool is not at issue.

The motion to intervene as of right is denied.

## IV.     Permissive Intervention

"Determining whether an individual should be permitted to intervene is a two-stage process. First, the district court must decide whether the applicant's claim or defense and the main action have a question of law or fact in common. If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (internal citation omitted); *see also Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) (the threshold determination for permissive intervention is whether there is a common question of law or fact).

In deciding whether to allow permissive intervention, district courts consider "whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). "When a proposed intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be adequately represented absent a showing of adversity of interest, collusion, or nonfeasance." *Id.* (citing *Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th

9

Cir. 1987); *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984)). The court also considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

### A. The Bondsmen Assert a Common Question on Plaintiff's Existing Claims

The bondsmen seek to join the motions to dismiss filed by the felony district judges and the state intervenors as to the plaintiffs' "due process claims." (Docket Entry No. 252-5 at ¶ 1). They assert a common question of law as to those claims.

The bondsmen "oppose the motions to dismiss insofar to the extent they seek dismissal of plaintiffs' allegations relating to Harris County's risk assessment algorithm used in the 2017 Harris County Felony Bail Schedule." (*Id*. at ¶ 2) The bondsmen have not asserted a common question of law or fact as to the risk assessments, because the plaintiffs do not challenge the risk-assessment tool or seek relief from any use of the risk-assessment tool. (Docket Entry No. 282 at 1 (the "pretrial risk assessment tool [is] irrelevant to Plaintiffs' claims and requested relief.")). This lawsuit is not the appropriate vehicle for the bondsmen's claims about the risk-assessment tool. *See Trans Chem.*, 332 F.3d at 824–25 (there was no common question of law and fact when the claim in the lawsuit was "not related to" the proposed intervenor's arguments).

### B. Permissive Intervention is Not Warranted

Although the bondsmen have presented some common questions as to the plaintiffs' existing claims, permissive intervention is inappropriate. The bondsmen join the felony district judges' and the state intervenors' motions to dismiss the plaintiffs' claims, but without adding additional arguments or factual support. (Docket Entry No. 252-5 at 1–2). The bondsmen have the same "ultimate objective" as the current defendants. *See Clements*, 884 F.2d at 189. Like the defendants, the bondsmen seek dismissal of the plaintiffs' claims on the basis that the "plaintiffs

10

received the procedural due process to which they were entitled under *O[]Donnell I* and *II* and that the imposition of secured money bail is constitutional." (Docket Entry No. 252-5 at ¶ 1). Their interests in opposing the plaintiffs' constitutional claims are adequately represented.

The bondsmen have also failed to show that they "are likely to contribute significantly to the development of the underlying factual issues." *Clements*, 884 F.2d at 189. While the bondsmen argue that they will contribute their expertise and "respectfully suggest that the court is being provided a distorted, myopic and incomplete picture of the reality of what is taking place in the Harris County criminal justice system," (Docket Entry No. 252 at 6), it is the bondsmen who appear to have an incomplete understanding of this case and the issues it presents. Their proposed pleading inaccurately describes the plaintiffs' Fourteenth Amendment claims, which are based on equal protection, procedural due process, and substantive due process. (Docket Entry No. 252-5 at ¶ 1). As described above, the bondsmen's motion to intervene mischaracterizes the relief the plaintiffs seek. The motion to intervene also makes hyperbolic statements about the relief in *ODonnell*. *Compare* (Docket Entry No. 252 at 5 ("The misdemeanor criminal justice system in Harris County is spiraling out of control.")), *with ODonnell v. Harris Cty., Tex.*, No. CV H-16-1414 (S.D. Tex. Sept. 3 2020) (Docket Entry No. 722-1) (the independent monitor's report finding that the *ODonnell* consent decree has increased pretrial release, while recidivism is "stable or declining"). This is unhelpful to the court, and does not contribute to the development of the real and important factual issues in the case.

Finally, adding additional defendants to this already complex case will not advance the interests of justice and will inevitably delay a case that needs to move forward. This case involves three sets of defendants: the felony district judges, the Harris County Sheriff, and the state intervenors. Each set is ably represented in presenting the many disputes over the key issues and facts. The addition of yet another party will not help to achieve "greater justice." *See Texas*, 805

F.3d at 657 ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained."). Instead, it will add complexity and increase delay and expense as the parties and the court attempt to resolve the fraught and urgent issues affecting thousands of felony arrestees.

## V.     Conclusion

The court denies the bondsmen's motion to intervene. (Docket Entry No. 252).

SIGNED on November 18, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge