IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION

| | |
|---|---|
| DWIGHT RUSSELL, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> HARRIS COUNTY, TEXAS, et al., <br><br> *Defendants.* | Civil Action No. 4:19-cv-226 |

MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION TO INTERVENE BY THE STATE OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant
Attorney General

ERIC A. HUDSON
Special Counsel
Special Litigation Unit
State Bar 24059977
Southern District ID: 1000759
Eric.Hudson@oag.texas.gov
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1414 | FAX: (512) 936-0545

SHAWN COWLES
Deputy Attorney General for
Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

KIMBERLY GDULA
Attorney-in-Charge
State Bar 24052209 | So. Dist. 1092074
Kimberly.Gdula@oag.texas.gov

Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

## INTRODUCTION

Exactly two years ago, Plaintiffs filed the above-captioned lawsuit against Harris County and Sheriff Ed Gonzalez, challenging the felony bail procedure in Harris County as violating their Fourteenth Amendment rights. Dkt. 1. On March 27, 2020, Plaintiffs filed a motion seeking a temporary restraining order and preliminary injunction that would have resulted in the release of thousands of felony arrestees. Dkt. 32. Even though that relief and the claims asserted by Plaintiff are contrary to the Fifth Circuit's holdings in [ODonnell v. Harris County, 892 F.3d 147 (5th Cir. 2018)](#) (*ODonnell I*), [ODonnell v. Goodhart, 900 F.3d 220 (5th Cir. 2018)](#) (*ODonnell II*), and [ODonnell v. Salgado, 913 F.3d 479, 482 (5th Cir. 2019)](#) (*ODonnell III*), the defendants at that time represented that they did not contest Plaintiffs' arguments. Dkt. 32.12.

Following these events, the State of Texas, the Governor of Texas, and the Attorney General moved for intervention of right under Fed. R. Civ. P. 24(a)(2); this Court granted the intervention on March 30, 2020. Dkt. 46. In June 2020, after Plaintiffs' request for a temporary restraining order and preliminary injunction was denied, Plaintiffs filed their Second Amended Complaint and added as defendants 23 Harris County District Court Judges who preside over felony criminal cases (the "Felony Judges"). The Felony Judges, unlike the initial defendants, did not simply fall in line with Plaintiffs' demands and, instead, actively worked to protect the very interests that the intervenors had intervened to protect. As a result, the intervenors sought to withdraw their intervention, subject to their right to intervene at a later time should the Felony Judges cease to be parties to the case capable of defending the constitutionality of state laws, including GA-13, the executive order issued by Governor Abbott in March 2020. Dkt. 341. The Court granted that motion on December 4, 2020. Dkt. 342.

On January 20, 2021, Plaintiffs filed a motion seeking to dismiss the 23 Felony Judges from this lawsuit. Dkt. 370. Subject to outstanding procedural questions, it appears that the Felony Judges

are not opposed to being dismissed from the lawsuit, which will once again leave no defendants who are willing to defend against Plaintiffs' attempts to invalidate Texas law as unconstitutional.

Therefore, the State of Texas seeks to intervene to defend the constitutionality of state law that Plaintiffs challenge in this lawsuit. Because the liberty interest at stake and the bail procedures at issue are creatures of state law, the State has an interest in the outcome of this case. With the dismissal of the Felony Judges, these important interests will be entirely unrepresented in this case. Mandatory intervention under Fed. R. Civ. P. 24(a)(2) is therefore appropriate. At a minimum, the State should be permitted to intervene under Fed. R. Civ. P. 24(b)(1)(B).

## ARGUMENT

**I.     The Court Should Grant the State's Intervention Under Fed. R. Civ. P. 24(a)(2).**

Under the Federal Rules of Civil Procedure, a non-party <u>must</u> be allowed to intervene (1) when it has an interest relating to the subject of the action and (2) disposing of the action may practically "impair or impede" that interest, (3) unless the parties "adequately represent" that interest. FED. R. CIV. P. 24(a)(2). The State may intervene as of right in this matter because it satisfies all three requirements.

**A.     The State has important interests that relate to the subject of this action.**

The Fifth Circuit instructs that the requisite interest for intervention purposes should not be defined "too narrowly." *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001). Here, the State has a "direct, substantial, legally protectable interest." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009) (quotation omitted). And those interests are related to "the subject of the action"—the constitutionality of bail procedures and laws designed to protect the public and ensure operation of the State's criminal justice system. FED. R. CIV. P. 24(a). An interest "is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016) (quotation omitted).

The State of Texas has an interest in the constitutionality of state laws, the enforcement of state laws, the orderly operation of the State's criminal justice system, the public's safety from

Page 3

recidivism, and the public health in the face of a rapidly developing pandemic. Although the State does not need Article III standing to intervene as defendants, its interests at stake here would nevertheless suffice to meet Article III standing's higher bar. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019).

As this Court has already recognized in the first intervention, the State of Texas has a *parens patriae* interest in the well-being of her citizens. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) ("[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."); *see also Massachusetts v. EPA*, 549 U.S. 497, 520 & n.17 (2007) (noting States are entitled to "special solicitude in [Article III standing] analysis" because of their *parens patriae* status); *Louisiana v. Texas*, 176 U.S. 1, 19 (1900). That includes an interest in keeping the public safe from crime. *See, e.g.*, *Addington v. Texas*, 441 U.S. 418, 426 (1979).

The State of Texas also has a sovereign interest in the enforcement of its own laws. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601 ("the power to create and enforce a legal code" is one "easily identified" example of sovereign interest). As the Fifth Circuit put it, "[t]he state *qua* state has an important sovereign interest" in ensuring that its own statutory schemes are "properly enforced." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997). And like every sovereign, Texas has an interest in overseeing its own criminal justice system. *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (noting "the States' interest in administering their criminal justice systems free from federal interference"); *cf. Gamble v. United States*, 139 S. Ct. 1960, 1968 (2019). Texas state law also gives rise to the liberty interest that forms the basis of this action. *See ODonnell I*, 892 F.3d at 153, 158 (citing Tex. Const. art. I, § 11 and Tex. Code Crim. Proc. art. 17.15).

In sum, the State has important interests in the public safety, the implementation of the State's criminal justice system, and the enforcement of state laws. This suit, which seeks to invalidate state procedures and laws as unconstitutional, implicates each of those interests. It also has state-wide implications, which further demonstrates why the State should be permitted to intervene. Local officials, like the defendants, cannot represent the State's interests because local governments are "not endowed with the same prerogatives in representing the interests of its residents as is the state in protecting the interests of its citizens, *particularly where, as here, city*

*and state level interests may be in conflict.*" *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256 n.7 (5th Cir. 1976) (emphasis added).

      **B.**      **Disposition of this action will impair the State's interest.**

The State must also show "that disposing of the action may as a practical matter impair or impede" their interests. FED. R. CIV. P. 24(a)(2). This does not mean that a judgment in this lawsuit would be binding on the State; rather, this element simply looks to whether the judgment "may" have a "practical" impact on the would-be intervenor's interest. *See Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828-29 (5th Cir. 1967). A decision awarding the relief Plaintiffs seek here—a declaration that the bail process followed by Harris County and GA-13 are unconstitutional and a permanent injunction imposing requirements to the bail system beyond what is imposed by law—will undoubtedly do that. The defendants other than the Felony Judges showed that they will not oppose Plaintiffs' efforts to obtain this relief when Plaintiffs sought a temporary restraining order and injunctive relief in March 2020.

Additionally, a decision in this lawsuit would likely impact the State's institutional and legal interests as well. *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (noting "a state official directly concerned in effectuating the state policy has an 'interest' in a legal controversy involving the Comptroller which concerns the nature and protection of the state policy"). The State believes the procedures that formed the basis for Plaintiffs' existing confinement (and the claims asserted in this lawsuit) fully complied with the U.S. Constitution and the terms of the Fifth Circuit's model injunction. *See ODonnell I*, 892 F.3d at 164-66. Awarding yet further relief would interfere with the operation of the State's bail scheme in accordance with state law. *Accord Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1981); *Avery v. Heckler*, 584 F. Supp. 312 (D. Mass. 1984); *Dixon v. Heckler*, 589 F. Supp. 1512 (S.D.N.Y. 1984). Moreover, as an executive order issued pursuant to Chapter 418 of the Texas Government Code, GA-13 has the force and effect of law. TEX. GOV'T CODE § 418.012. Because Plaintiffs seek to invalidate GA-13 in whole or in part as unconstitutional, a decision in this lawsuit will impact the State's institutional and legal interests.

      **C.**      **The parties cannot show that they adequately represent the State's interests.**

The next question is whether the existing parties adequately represent the State's interests. Arguably, the burden of persuasion on that question belongs to the parties. *See* 7C Wright & Miller,

Federal Practice & Procedure § 1909 (3d ed.). But even if the State shoulders it, its burden is "not a substantial one." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). Then-Judge Blackmun summarized three scenarios when inadequate representation exists: (1) when the party in question may be colluding with the opposing party; (2) when the party in question takes a position adverse to the would-be intervenor; or (3) when the party in question fails to diligently pursue the would-be intervenor's interests. *Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962). The State "need only show that the representation *may* be inadequate." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added).

      Here, there is no question that without the Felony Judges, the remaining defendants are inadequately representing the State's interests, as the Court recognized in granting the first intervention. Namely, the remaining defendants have been clear through their actions that they do not contest Plaintiffs' factual allegations or oppose the relief Plaintiffs seek through this lawsuit. At the very least, the conduct of the remaining defendants raises an inference of collusion, which is sufficient to support intervention. *See Park & Tilford v. Schulte*, 160 F.2d 984, 988 (2d Cir. 1947) (permitting intervention to avoid "even the appearance of any concerted action").

      The remaining defendants have also taken a position that is adverse to the State's interests by failing to contest the allegations made by Plaintiffs or the relief sought in this lawsuit. The Fifth Circuit has recognized that taking a position so diametrically opposed to a would-be intervenor's interests results in inadequate representation. *See, e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 435 (5th Cir. 2011); *Ford*, 242 F.3d at 240-41.

      Finally, the remaining defendants are failing to diligently pursue the State's interests. Even if the remaining defendants have not colluded with Plaintiffs or affirmatively taken a position adverse to the State's interests, their representation is still plainly inadequate. Where an existing party and the would-be intervenor have a unity of interests, representation will still be deemed inadequate where the existing party fails to diligently pursue those interests. *Int'l Mortg. & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 861 (2d Cir. 1962) (noting existing parties "have shown a conspicuous disinterest in asserting the rights of" the would-be intervenor); *Pyle-Nat'l Co. v. Amos*, 172 F.2d 425, 427 (7th Cir. 1949) (permitting intervention where plaintiffs "arranged a settlement with the

defendants for exactly one-half of the sum contended by the suit to be due"). Here, the remaining defendants have demonstrated they are not interested in opposing Plaintiffs' efforts to obtain the relief sought in this lawsuit.

Accordingly, this case easily satisfies this prong under any of the classic bases for finding inadequate representation.

### D. The request to intervene is timely.

Finally, this motion to intervene is timely under Fed. R. Civ. P. 24(a). The Fifth Circuit has noted that Rule 24's timeliness inquiry "is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Although this case has been pending since January 21, 2019, there has been little progression. The State seeks intervention well "before discovery [has] progressed" and does not "seek to delay or reconsider phases of the litigation that ha[ve] already concluded." *Wal-Mart*, 834 F.3d at 565. Moreover, the State has sought to intervene at the earliest possible moment when intervention became necessary—i.e., upon notice that Plaintiffs sought to dismiss the Felony Judges from this lawsuit. *See Ford*, 242 F.3d at 240-41.

## II. Alternatively, the Court Should Permit the State to Intervene Under Fed. R. Civ. P. 24(b)(1)(B).

If the Court does not grant the State intervention as of right— which it should, for the reasons addressed above—it should nonetheless grant permissive intervention because the State's position and this suit have a common question of law or fact. *See* FED. R. CIV. P. 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact.").

To obtain permissive intervention under Rule 24, the State must demonstrate that: (1) the motion to intervene is timely; (2) its claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice adjudication of the existing parties' rights. *Id.*; *see United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact."). The State satisfies each of these factors.

First, as stated above, the State's motion is timely. *See supra* Part I.D. Second, because the

State filed the motion before significant action has occurred in the case, granting the motion will not cause any delay or prejudice to the existing parties' rights to litigate the case. Third, the State shares common questions of law and fact with the claims asserted in the lawsuit. As stated above, this lawsuit is premised on state-created liberty interests and state-prescribed bail procedures. *See ODonnell I*, 892 F.3d at 153, 158. State judges utilize similar bail procedures across the State. *See, e.g.*, *Daves v. Dallas County*, 341 F. Supp. 3d 688 (N.D. Tex. 2018). The Plaintiffs' lawsuit calls those procedures into question everywhere they are used. Only the State will provide a state-wide perspective—and, with Plaintiffs' request to dismiss the Felony Judges, only the State will provide an adversarial presentation.

In considering whether to grant permissive intervention, the Court may also consider "(1) whether an intervenor is adequately represented by other parties; and (2) whether intervention is likely to contribute significantly to the development of the underlying factual issues." *Marketfare (St. Claude), L.L.C. v. United Fire & Cas. Co.*, Nos. 06–7232, 06–7641, 06–7639, 06–7643, 06–7644, 2011 WL 3349821, at *2 (E.D. La. Aug. 3, 2011) (citing *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir.1989)).

These factors provide additional support for granting permissive intervention in this case. As already discussed, the State has a significant interest in protecting the public, overseeing the state criminal justice system, and protecting the constitutionality of state laws. *See supra* Part I.A. These interests will not be adequately represented by the remaining defendants. *See supra* Part I.C. And the State's ability to address these interests will contribute significantly to the just and equitable resolution of the constitutional questions presented. Thus, even if the Court concludes that the State is not entitled to intervene as of right, it should grant the State's request for permissive intervention.

## CONCLUSION

The Court should grant the State's motion to intervene as of right or, alternatively, to intervene permissively, and grant it all the same rights and responsibilities as a party to the lawsuit.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant
Attorney General

ERIC A. HUDSON
Special Counsel
Special Litigation Unit
State Bar 24059977
Southern District ID: 1000759
Eric.Hudson@oag.texas.gov
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1414 | FAX: (512) 936-0545

SHAWN COWLES
Deputy Attorney General for
Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division


*/s/ Kimberly Gdula*
KIMBERLY GDULA
Attorney-in-Charge
State Bar 24052209 | So. Dist. 1092074
Kimberly.Gdula@oag.texas.gov

Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

Page 9

**CERTIFICATE OF SERVICE**

I, Kimberly Gdula, hereby certify that on this the 22nd day of January, 2021, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ *Kimberly Gdula*
Kimberly Gdula
Assistant Attorney General