**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| DWIGHT RUSSELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:19-cv-00226 |
| v. | ) | (Class Action) |
| | ) | The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) | U.S. District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' ADVISORY

### I.    Introduction

When the pandemic began, Plaintiffs identified more than 1,000 people detained in the jail for no reason other than poverty. Money bail had been set in relatively low amounts for each of them, reflecting the low-level nature of their alleged offenses. Each of these individuals was presumed innocent. And each would have been released if they had money to pay the secured bail amount required for their release, or even the much smaller amount required to satisfy a commercial bonding company's non-refundable premium. Plaintiffs sought an order requiring the release of people kept in jail because they were poor, noting that the Court had already found (and the Fifth Circuit had affirmed) in *ODonnell* that for misdemeanor arrestees, release on unsecured bond is not likely to increase crime or nonappearance. The Court denied relief. Dkt. 122.

Since then, the Court has held sixteen conferences[1] with various parties and non-parties. The Court has noted repeatedly that some of the conference participants have the ability to remedy

---

[1] These conferences occurred on: March, 29, 2020; March 31, 2020; April 3, 2020; April 7, 2020; May 28, 2020; June 4, 2020; June 11, 2020; June 18, 2020; June 29, 2020; July 6, 2020; July 24, 2020; August 7, 2020; August 21, 2020; September 11, 2020; January 15, 2021; and January 26, 2021. The next conference is scheduled for February 5, 2021.

the jail overcrowding and the detention of people due to poverty. The Court regularly has exhorted local officials to act, noting that their inaction raises legal and moral issues. Some have questioned whether the Court has jurisdiction over such issues and repeatedly sought to clarify that the Court is not actually ordering them to do anything. Having received confirmation of this, these officials then did nothing. Other conference participants have done just enough that "nothing" would slightly understate their efforts. But the release of an individual here and there, on occasion, over the past ten months, does not change the fact that the process is an abject failure. As the Sheriff recently reported to the Court, although 25% fewer people were booked into the jail in 2020 as compared to 2019, the daily jail population nevertheless has increased. During the greatest public health crisis in over 100 years, the number of people detained pretrial for felony offenses, many because they do not have money, has risen substantially. Six individuals detained in the jail have died of COVID-19, as have two jail employees. *See* Dkt. 364 at 2 (Report of Sheriff Ed Gonzalez).

One of those individuals is P.C.

P.C. died of COVID-19 in Harris County custody on August 7, 2020.[2] He had been in jail for three-and-a-half months, Ex. 1 at 1–2, because he was unable to pay a $1,000 bond for a burglary in which he allegedly stole lawn equipment and meat. *Id.* at 6. Court records state that he was also subject to a parole hold during that time (based on publicly available records, he was likely on parole due to a 1991 burglary-with-intent-to-commit-theft conviction that resulted in a

---

[2]  Nathaniel Lash, *The Coronavirus Has Found a Safe Harbor* (Dec. 18, 2020), available at https://www.nytimes.com/interactive/2020/12/18/opinion/jails-covid.html.

25-year sentence, *id.* at 22–23), but no lawyer challenged the hold.[3] The Hearing Officer wrote that a personal bond was denied because of Executive Order GA-13.[4] *Id.* at 9.



> **ORDER**
>
> After considering the above, the Court (1) advised the defendant of his rights pursuant to TEX. CODE CRIM. P. ART 15.17; (2) set the defendant's conditions of release in clear and unambiguous language; and (3) provided the defendant with information required by law. The Court then ORDERED the following:
>
> Bail is set at: ☐ No Bail    ☒ $1,000.00 _____
>          ☐ Conditions
>
> Personal bond is: ☒ Not Approved    Scores 4/2 (ave risk). No pending charges, no FTA. No PTRB per GA 13
>          ☐ Approved ☐ Conditions
>
> The reasons for this individual assessment of the appropriate conditions of release were explained to the above-named Defendant.

According to the County's case records, P.C. never saw Judge Kelli Johnson, who was assigned to his case, and his attorney did only two hours of work on the case in the three-and-a-half months P.C. spent in jail before he died. *Id.* at 4, 12–15. Nevertheless, the voucher the lawyer filed shows that he billed—and the Judge paid him—for work done on August 9, two days after P.C.'s death. *Id.* at 12–15.



| Court Number 178 | Defendant's Name ▮▮▮▮▮ | | County Auditor's Form 40-ILV Harris County, TX  (4/06/2016) |
|---|---|---|---|
| **In Court Activities** | | | |
| Date | Event | Case | Setting Reason |
| 04/27/2020 | NON-TRIAL Third Degree, SJF, MRP/MAJ | 167240101010 | ARRAIGNMENT |
| **Out of Court Activities** | | | |
| Date | Activity | Case | Duration | Description |
| 05/03/2020 | Records Research | 167240101010 | 01:00 (HH:mm) | Search and review records for client's criminal history, offense report, charges in the complaint, relevant law and RIP report |
| 05/07/2020 | Other | 167240101010 | 01:00 (HH:mm) | Mailed correspondence providing notice of representation and explanation of the charges and the effect of the enhancement paragraphs as well as the evidence against him which was available to the defense at that time. |
| 08/09/2020 | Other | 167240101010 | 01:00 (HH:mm) | Listen/review 911 calls (5), review case documents and prepare email to prosecutor to send on 8/10/20 to open plea negotiations. Mailed additional correspondence to client. |

Total Out of Court Activities Hours: 3

---

[3] In fact, as a matter of policy, people who are arrested in Harris County due to an alleged parole violation are not appointed counsel. The parole holds themselves are issued by the parolee's parole officer, not a neutral judge.

[4] Plaintiffs have argued that any application of GA-13 that results in the detention of a person who could be safely released conflicts with the federal Constitution.

There could be more deaths like this one if conditions do not improve.

One casualty of the Court's conferences, which focus on local court procedures for processing thousands of people through the felony court system in the largest county in Texas, is a sense of the individual tragedies that make up the enormous but sterile numbers. Relying on public records available on the Harris County District Clerk's website and documents produced in discovery, Plaintiffs have reviewed in-depth the case records and bail hearing videos for dozens of jailed class members. These records reveal deep indifference to human suffering and illness. In just the past ten days, Plaintiffs have identified two 17-year-old children detained in the Harris County Jail, who the District Attorney's Office objected to releasing, and who no judge or defense lawyer had made any apparent attempt to release. *See infra* page 21–23.

The people with the ability and authority to hold individualized hearings to evaluate whether to issue a personal bond, whether to reduce a person's secured monetary bail amount, and whether a reason exists to require a person's detention have been unwilling to do so.  As a result, thousands of people are detained in the jail who are presumed innocent and who would be released if they had money, but who languish in jail during a pandemic, caged in large groups, often with no communication from their lawyers and no idea if or when they will be taken to court. Almost none of these individuals has had an adversarial, individualized hearing at which a judge concluded that their detention serves any purpose.

In Section II, Plaintiffs offer some of these individuals' stories to provide a glimpse into the human effects of the issues local officials discuss so antiseptically at the Court's periodic conferences. And in Section III, Plaintiffs respond to some of the misstatements in the District Attorney's recent Advisory. *See* Dkt. 371.

## II.       Systemic Failures Are Causing A Humanitarian Crisis in the Jail

Early in the pandemic, this Court emphasized the urgent need for video bail hearings at the jail. The Sheriff and County worked hard to implement a system that would allow the judges to hold hundreds of video bail hearings every week. *See* Tr. Hrg. 6/4/2020 at 8:24–9:2 (counsel for the Sheriff explaining that, as of June, the jail could accommodate 16 judges conducting simultaneous hearings four days per week). With that capacity, judges could have held thousands of hearings by now. But the judges, District Attorney, and private defense bar chose not to use the technology: only 72 video bail hearings were held between January and October 2020, including just three in October.[5] The Court periodically states that all participants in this dysfunctional system are acting in good faith. But the County's case records, vouchers from defense attorneys documenting the little work they do, and videos of bail hearings tell a different story.

## I.       Examples That Illustrate How the System Works

In addition to P.C.'s story, Plaintiffs describe the following nine cases, which represent systemic flaws that are exacerbating the urgent overcrowding problems and constitutional violations in this case. These stories were identified as part of Plaintiffs' extensive, months-long, and ongoing review and analysis of the felony bail system in Harris County:[6]

1. **S.P.** was arrested on April 13, 2020, for allegedly shoplifting food and other personal items. Ex. 2 at 6. When stopped by the police, he explained that he was hungry. *See* Ex. 2A (S.P. Bail Hearing).

Defendant, heretofore on or about **April 13, 2020**, did then and there unlawfully, appropriate, by acquiring and otherwise exercising control over property, namely, One package of Batteries, One Loaf of Bread, Two packages of Cheese, One package of Cookies, Two items of Mascara, Two items of Eyeliner, Four packages of Meat, One item of Guacamole, One Drink, One package of Oranges and Two items of Deodorant, owned by Benjamin Durkop, hereafter styled the Complainant, of the value of less than two thousand five hundred dollars, with the intent to deprive the Complainant of the property.

---

[5] *See* Exhibit 14.

[6] The bail hearings for most of the cases discussed in this Advisory are available on Dropbox at this link: https://www.dropbox.com/sh/xp0w4i7mu9lmtfd/AAAmZaYCQ1kwmKsniT_sx-SVa?dl=0. They can also be provided to the Court on a thumb drive, if the Court would prefer.

S.P.'s bond was set at $10 by the Hearing Officer, who concluded that Executive Order GA-13 prohibited a personal bond. Ex. 2 at 8.

**ORDER**

After considering the above, the Court ORDERED the following:

Bail is set at:   ☐ No Bail   ☒ $10.00 _____
                                  ☐ Conditions

Personal bond is:   ☒ Not Approved   not present, mhu, no info re health, ga13 pr preclusion, allegedly stealing food.
                                    ☐ Approved ☐ Conditions

The assigned Felony Judge, Brian Warren, raised the secured bail amount the next day to $1,000. *Id.* at 10. Counsel was appointed that day, but the appointment-of-counsel form states that S.P was "in custody," meaning he was not brought into the courtroom, and may not have been brought to the court at all. *Id.* at 9. S.P. was finally released on a personal bond after about a week in jail. *Id* at 11. The case records do not explain why Judge Warren issued a personal bond after initially raising the bond amount.

2. **M.W.** was charged with two counts of forgery for allegedly attempting to cash two fraudulent checks. Exs. 3 at 1, 15; *see also* Ex. 3A (M.W. Bail Hearing). M.W. was not present at his bail hearing, which took place on April 23, 2020, at 8 p.m., because "deputies [weren't] sure where he's at – maybe seg but Def arrested last night (April 22nd) around 9 pm." *Id*. at 6, 20. Without locating M.W, the Hearing Officer required $100 secured money bail as a condition of release in each case, noting that she would normally grant personal bonds but was prevented from doing so by Executive Order GA-13. *Id.*; *see also* Ex. 3A (M.W. Bail Hearing).

**ORDER**

After considering the above, the Court ORDERED the following:

Bail is set at:   ☐ No Bail   ☒ $100.00 _____
                                  ☐ Conditions

Personal bond is:   ☒ Not Approved   Def not present but deputies aren't sure where he's at - maybe seg but Def arrested last night (April 22nd) around 9 pm. No PTRB per GA 13 due to prior misd convictions for Misd Assault Bl. 4/4 on PSA - No pending charges, no prior felony convictions, no FTA older than 2 yrs.
                                    ☐ Approved ☐ Conditions

About two-and-a-half months later, M.W wrote a letter to Judge Josh Hill. The letter was docketed on July 7, 2020. Ex. 3 at 8. M.W. told Judge Hill that he had not been brought to court and had not been able to contact his lawyer. *Id.* He offered to plead guilty to a reduced charge if it meant that he could resolve his case. *Id.* His letter indicates that he wrongly believed that he had to pay $2,000 to be released. *Id.*

> Hi my name is ▮▮▮▮ ▮▮▮▮ I have been in the Harris County Jail since April 23. I never made it to Proable Cause or any of my other court dates. I just know I am being charge with two counts of forgery and my bond is $2,000 dollars. Which they told me in booking I should get a PR bond, but never made it to Proable Cause Court. My attorney Natalie L Schultz did send me a letter, but everytime I try calling her number no answer. So I wrote her asking if she can Help get this cases reduce from a felony to a misdemeanor, if I take a plea. So I am asking you all new Judge Hill and the DA. To take my offer into consideration. I know things are not going well do to the COVID-19 in this jail and court system. So my hope is to be seen one less person out the way.
>
> God Bless

Court records support his statement that he had not seen a Judge: one appointment-of-counsel form states that he was "in custody" on April 27, *id.* at 7, and the other is blank, *id.* at 21, and there is no evidence that a setting that was apparently scheduled for June 9 actually occurred.[7]

M.W. appeared in court for the first time almost a month later, on August 4. He pleaded guilty and was sentenced to 105 days in jail with credit for the 105 days he had been detained. *Id.* at 10, 22. His attorney filed a fee voucher stating that the only work she had done for M.W. was to appear at his plea hearing. *Id.* at 13–14. According to the Texas Indigent Defense Commission,[8] M.W.'s counsel handled 422 cases in fiscal year 2019,

---

[7] There is no reset form in the file, *id.* at 4, 18, and the settings tab states that the arraignment scheduled for June 9 was "reset" to August 4, suggesting that no arraignment hearing occurred on June 9, *id.* at 3, 17.

[8] *See* Attorney Caseload Report, available at https://tidc.tamu.edu/public.net/Reports/AttorneyCaseLoad.aspx.

including 303 felony cases and 114 misdemeanor cases—one of the highest caseloads in the County.

| INDIVIDUAL CASE APPOINTMENT | | No. of Court Days/Hours | Rate | Total (presumptive max) | Amount |
|---|---|---|---|---|---|
| **NON-TRIAL** | First Degree | | $255/day | $1275 | |
| | Second Degree | | $205/day | $820 | |
| | Third Degree, SJF, MRP/MAJ | 1 | $155/day | $465 | $155.00 |
| **TRIAL** | First Degree | | $550/day | | |
| | Second Degree | | $450/day | | |
| | Third Degree, SJF, MRP/MAJ | | $350/day | | |
| **PRE-TRIAL HEARING WITH TESTIMONY & PSI HEARING** | | | $350/day | | |
| **OUT OF COURT HOURS** | First Degree | | $120/hour | $2400 | |
| | Second Degree | | $95/hour | $1140 | |
| | Third Degree, SJF, MRP/MAJ | | $75/hour | $750 | |
| **SPECIALTY COURT HOURS** | | | $75 - $120/hour | | |
| **INVESTIGATION HOURS** | | | $40/hour | $600/case | |
| **INVESTIGATION OTHER EXPENSES** | | | | | |
| **EXPERT** | | | | $650/case | |
| **BILINGUAL SUPPLEMENT** | | | $50/day | $250 | |
| **OTHER** | | | | | |
| | | | | **TOTAL** | $155.00 |

Court Appearance(s) : (167265901010): 08/04/2020
(167266101010)

**PERSONAL INFORMATION**

| Attorney Name SCHULTZ, NATALIE LYNN | Telephone Number (713) 269 - 7352 | Bar Card Number 24059003 |
|---|---|---|

3. **A.C.** was arrested on April 10, 2020, and charged with one count of burglary of a building for allegedly stealing rain boots and threatening that he had a gun. Ex. 4 at 5; *see also* Ex. 4A (A.C. Bail Hearing). His secured money-bail amount was set at $1,500 on the Complaint in accordance with the bail schedule. Ex. 4 at 5. A.C. was not present at the Article 15.17 bail hearing, and the Hearing Officer raised the bond to $5,000 in his absence. *Id.* at 6–7; Ex. 4A. Three days later, on April 13, Judge DaSean Jones reduced his bond to $1,500. *Id.* at 8. A.C. had counsel appointed that same day but was in "custody" during the proceeding. *Id.* at 9.

A.C. was subsequently charged with two additional counts of burglary of a habitation. One Complaint was filed on April 16, *id.* at 16, and the other on April 17 (he allegedly stole a camcorder, lunch bag, and costume jewelry), *id.* at 22. Bonds were set on the Complaints in those cases at $1,500 and $40,000 secured bail, respectively. *Id.* at 16, 22. New counsel was appointed for the original case and the two new cases on April 20. *Id.* at 10, 17, 23. As of today, A.C. has apparently never appeared personally before a Judge (or even a Hearing Officer) in any of the three cases. *Id.* at 3–4, 15, 21. After two months in jail, and despite having a lawyer appointed to him, A.C. filed his own handwritten motion for bond reduction. *Id.* at 24–25.

Two weeks later, on June 29, the Judge issued personal bonds on all three charges, and apparently imposed GPS monitoring as a condition of release. *Id.* at 11, 18, 27; *see id.* at 12. His next court date in all three cases is scheduled for February 12, 2021. *Id.* at 3–4, 15, 21. Almost four months after his release from custody in June, A.C. was removed from GPS monitoring. *Id.* at 12.

4. **C.C.** was arrested for felony assault on June 6, 2019. Ex. 5 at 6. She was alleged to have struck a police officer with an umbrella. *Id.* She was not present at her bail hearing, where the Hearing Officer required $20,000 secured money bail as a condition of release. *Id.* at 7–8. There was no consideration of C.C.'s ability to pay because she was not represented by counsel and was not present at the hearing, and she did not complete a financial affidavit. *Id.* at 8; *see also* Ex. 5A (C.C. Bail Hearing). Counsel was appointed four days after C.C.'s arrest, on June 10, 2019, and C.C was apparently in Judge Danilo Lacayo's courtroom (or at least the lock-up outside of the courtroom) that day because she signed the appointment-of-counsel form. Ex. 5 at 9. Records show that the next time C.C. was in court was three months later, on September 19, 2019. *Id.* at 10–11. She was also apparently in court on October 31, 2019, *id.* at 12, and again almost two months later, on December 19, 2019, *id.* at 13, but it does not appear that she ever had a bail hearing. Court records show that she is homeless. *Id.* at 1.



After December 19, 2019, it appears that C.C. may not have been to court until September 2, 2020, nine months later.[9] On September 2, 2020, C.C. pleaded guilty to a lesser-included offense and was sentenced to a year in County jail, *90 days less than she had already been detained. Id.* at 15. She received credit for the 455 days she was in jail pretrial. *Id.* at 15.



5.  **E.A.** was charged with robbery for allegedly stealing a soda and pushing the shop owner with his hand. Ex. 6 at 7; *see also* Ex. 6A (E.A. Bail Hearing). The Hearing Officer required $20,000 secured money bail as a condition of release. *Id.* at 8–9. The public defender who represented E.A. told the magistrate that E.A. was homeless, a lifelong Houston resident, and had no money for bond. *See* Ex. 6A (E.A. Bail Hearing).

---

[9] The evidence that C.C. did not have a court date for nine months is that (1) the reset form for a setting on 2/19/2020 states that C.C was in "custody," *id.* at 14; (2) there are no reset forms for the other three settings during that period, *id.* at 4–5; and (3) the settings tab of the Harris County Clerk's Office website does not state that C.C. was present at any of these settings, *id.* at 3–4.

E.A. never paid the financial condition required for release. *Id.* at 1–2, 6. While still detained, he pleaded guilty in Judge Chris Morton's courtroom on June 13, 2019, to a lesser-included misdemeanor offense and was sentenced to 100 days in jail, with credit for 147 days already served. *Id.* at 14–15. A review of the attorney-appointment and reset forms in the County's case records, all of which state that E.A. was "in custody," suggests that E.A. never saw Judge Morton until the day he pleaded guilty. *Id.* at 10–13. (The settings tab indicates that he may have been in court on March 19, 2020, but there is no reset form to support that notation. *Id.* at 6.)



6.  **B.Y.** was arrested on January 17, 2020, for burglary of a building. Ex. 7 at 6. He was accused of breaking into a Louisiana Fried Chicken restaurant. *See* Ex. 7A (B.Y. Bail Hearing). The Hearing Officer set a secured money-bail amount of $15,000 at his bail hearing. Ex. 7 at 8. Judge Amy Martin appointed counsel on January 21. *Id.* at 9. Court records suggest that B.Y. was in custody and not present in Judge Martin's courtroom on January 21, but the forms are difficult to read. *Id.* B.Y. was brought to court on February 25. *Id.* at 10. On April 8, B.Y. filed a *pro se* motion to reduce the felony charge to a misdemeanor, *id.* at 11, and pleaded with the judge in a letter to release him because he was in "fear for my life at every moment" due to COVID-19, *id.* at 13–14.



No hearing on the motion appears to have ever been set. *Id.* at 4–5. On September 15, B.Y. filed a motion to be released on a personal bond so that he could "be at the side of his elderly mother who is in her 90's." *Id.* at 16–17.



Based on the court records, it is unclear whether B.Y. saw a judge after the February 25 hearing until he pleaded guilty eight months later, on October 28. B.Y.'s attorney billed for a total of eight court appearances, *id.* at 23–24, but there are no case reset forms for this period of time, *id.* at 4–5, and no indication on the settings tab as to whether B.Y. was present in court for any of the proceedings the lawyer documented, *id.* at 4. B.Y. was sentenced to 15 months in state jail on October 28. *Id.* at 19.

7. **R.M.** was arrested on June 4, 2020, for burglary of a building (a felony), Ex. 8 at 6–7, and burglary of a coin-operated machine (a misdemeanor), *id.* at 16; *see also* Ex. 8A (R.M. Bail Hearing). According to the probable cause statement, R.M. allegedly tried to steal coins from a Watermill Express hut. He allegedly stated that he "sometimes breaks into coin machines to 'feed (his) addi[c]tion,'" and explained that on this occasion he put two dollars into the water machine, did not get any water, and hit the machine to get his money back. Ex. 8 at 6–7. Bail was set at $7,500 on the felony charge. *Id.* at 9.

At the bail hearing, the public defender appointed to represent R.M. explained that he is 48-years-old, has lived in Houston his whole life, has been homeless for the past year, is making money as a mobile mechanic, and that he has no violent convictions and no violence flag on the risk assessment tool. *See* Ex. 8A (R.M. Bail Hearing). Nevertheless, the Hearing Officer denied a personal bond and "referred the matter of a pretrial release bond" to Judge Jesse McClure.[10] *See id.* Counsel was not appointed until June 11, seven days after R.M. was arrested. Ex. 8 at 10. R.M. was apparently brought to court that day (as evidenced by the fact that he signed the reset form). *Id.* But there are no other forms or documents on the County's website indicating that R.M. has been to court at all since last June. *Id.* at 4–5. Records suggest that nothing has happened in his case since then. *Id.* at 1–2. He was scheduled for a court date on January 27, 2021, *id.* at 4, and the County's court records state that R.M. was present, but there are no documents to indicate what happened at the hearing. His next court date is set for April 8, 2021. *Id.*

While in jail, on June 21, 2020, a Complaint was filed against R.M. for criminal mischief that allegedly occurred on April 20. *Id.* at 21. Judge McClure set bond at $7,500 on June 25. *Id.* at 22. Case records do not indicate that there has been any discussion of bond since then, or that R.M. has been to court in this case since then. *Id.* at 17–20. His next court date in this case is scheduled for April 8, 2021. *Id.* at 27. On December 3, 2020, also while still in jail, a Complaint was filed against R.M. for allegedly committing burglary-with-intent-to-commit-theft on March 11, 2020. *Id.* at 27. The Judge appointed counsel on December 7, 2020, but the appointment form states that R.M. was "in custody" at that proceeding. *Id.* at 28. Bond was set at $7,500 on that date. *Id.* at 29. There is no indication that Mr. M has seen a Hearing Officer or a felony judge on this case at all. *Id.* at 25–26. Mr. M's next setting in this case is scheduled for February 17, 2021. *Id.* at 25.

8. **J.B.** has been in the Harris County Jail since February 29, 2020. Ex. 9 at 1–2. He is charged with theft, *id.* at 14, unauthorized use of a vehicle, *id.* at 6, and assault of a family member*, id.* at 20. He was taken to an Article 15.17 hearing on March 1, 2020, after his arrest, *id.* at 7–8, but at that point, only one case had been filed (the unauthorized-of-a-vehicle charge, case number 166648801010), *id.* at 6, 14, 20. A personal bond was denied due to his criminal history and concurrent charges. *Id.* at 8.

Judge Ramona Franklin did not appoint counsel in this case until *six weeks later* on April 15, 2020. *Id.* at 9. It is unclear whether he has been to court since then on that case (there are no reset forms, *id.* at 4–5, and the County's court records indicate that nothing has happened in the case since July, *id.* at 1–2). J.B. has apparently never had a bail hearing,

---

[10] Judge McClure was replaced by Judge Te'iva Bell in the November 2020 elections.

either before a Hearing Officer or Judge Franklin, for his other two pending charges. *Id.* at 10–11, 16–17. On July 9, J.B. wrote to Judge Franklin asking to "be reviewed for a [personal] bond" so that he could get home to his 5-year-old son who "needs me out there." *Id.* at 22. He told the Judge that "there is no way to be 6 feet apart in here and my family has no money right now." *Id.*



J.B.'s next setting in all three cases is scheduled for April 7, 2021. *Id.* at 4, 13, 19.

9. **K.F.** was arrested on August 13, 2020 for aggravated assault with a deadly weapon. Ex. 10 at 1–3, 5. According to court records, she was not present at her Article 15.17 hearing due to "mental illness/IDD." *Id.* at 6. She did not complete a financial affidavit. *Id.* at 7. The Hearing Officer set a secured money-bail amount of $30,000 and noted, "per PTS packet suicidal." *Id.* Judge George Powell[11] entered an order appointing counsel on August 17. *Id.* at 8. Ms. F was "in custody" during that proceeding. *Id.*.

---

[11] Judge Powell was replaced on January 1, 2021 by Judge Natalia Cornelio

On October 19, K.F. wrote Judge Powell asking him to dismiss her lawyer and appoint a new one because the lawyer had never contacted her. *Id.* at 9–10. That motion was docketed on November 5. *Id.* at 9.

Also on November 5, the court docketed a *pro se* motion for a personal bond, *id.* at 12, and a *pro se* motion to reduce bail, both of which K.F. filed, *id.* at 15. The motion for the personal bond stated that K.F. had lived in Harris County for a year, is disabled, legally blind, and has chronic obstructive pulmonary disease. *Id.* at 12. She informed the court that "PROOF is in my property here." *Id.*



K.F. further wrote that she has a brother and two daughters who would lend support if she were released on bond. *Id.* at 13.

On December 6, K.F. sent a letter to the Texas Jail Project, a local group that advocates on behalf of people detained in jails across Texas. *Id.* at 18–19. K.F. stated that she had had COVID-19 twice since being detained in the jail, that her case had been reset five times, and that she had had no contact with her lawyer. *Id.* at 18. She told Texas Jail Project that she had received an exculpatory letter, which she sent to her lawyer, and which her lawyer had ignored. *Id.* at 19. She further wrote, "I'm at a lost [sic] if I never get a chance to go to court to change counsel or lower my bond How [sic] am I ever going to get a chance to Prove im inosent? [sic]" *Id.*



On December 15, K.F. was brought to court. *Id.* at 20. She pleaded guilty and was sentenced to 123 days in jail. *Id.* She had already served 125 days. *Id.* On January 4, 2021, the lawyer appointed to represent K.F. sought payment for a single court appearance—the day K.F. pleaded guilty—and 1.2 hours of purported out-of-court work on September 3, 2020, over two weeks after the case was filed, when the lawyer stated that she "[o]pen[ed] file" and "[r]eview[ed] offense report and possible criminal convictions for complainant." *Id.* at 24–25. According to her fee voucher, the attorney never visited K.F. before K.F. pleaded guilty, never spent any time investigating the case, and apparently failed to investigate exculpatory material that her client had sent her. *Id.* at 19, 24–25.

These cases illustrate how the system works, at least for those who are poor.

### III.     Response to the District Attorney's Advisory on Holds and "Violent" Offenses

At the January 26, 2021 status conference, the Court discussed the extent to which "holds"

do and do not prevent certain people who are arrested from being released on personal bonds or

affordable bail. Because the District Attorney's "advisory" to the Court mischaracterizes how

holds work, *see* Dkt. 371, Plaintiffs offer some additional information, about which they have consulted with the Public Defender.

### A. "Holds" Are Not a Valid Excuse for Refusing to Release People on Personal Bonds or Affordable Bail

The District Attorney advised the Court that "a defendant cannot be released from the Harris County Jail until [a] pending hold has been legally resolved[.]" Dkt. 371 at 1. The District Attorney cited no Texas law for that proposition, instead asserting without explanation that releasing a person from jail so that the person can resolve a hold before resolving a pending Harris County case "appears to be a non-starter," and that "[m]ost holds are incapable of practical resolution before the pending Harris County case is resolved." *Id.* at n.1. These unsupported assertions are wrong. If any of the people in the jail who are subject to holds and who have bond set in their Harris County case had enough money to pay for their release, they could choose to be released from Harris County custody, and, after consulting with their lawyer, decide whether and how to challenge the hold before, or concurrently with, resolving the open Harris County case. That strategic choice is denied only to people who cannot afford the secured bail amount required by Harris County.

Many holds relate to warrants from jurisdictions other than Harris County. For example, a person arrested for an offense allegedly committed in Harris County may also have a warrant issued by another county. Texas law authorizes Harris County judges to issue personal bonds on most out-of-county cases and further prohibits the out-of-county judge who issued the warrant from revoking the Harris County personal bond "except for good cause shown." Tex. Code Crim. Pro. art. 17.031. Thus, under Texas law, a hold does not prohibit release from the Harris County Jail, and it certainly does not make a person ineligible for a bail hearing relating to either the Harris County charge or the out-of-county charge.

When someone is ordered released in a Harris County case but has an open case in another jurisdiction, that jurisdiction typically has ten days to pick up the person. If the jurisdiction does not pick up the person, Harris County must release the person. *See* Tex. Code Crim. Pro. art. 15.21. During the pandemic, many jurisdictions have opted not to transport people to their jails, meaning that Harris County is jailing people whom other counties would apparently be happy to see released. Reducing bond to an affordable amount or issuing a personal bond in the Harris County case when a person has a hold, therefore, would result in a reduction in the jail population, and out-of-county holds are not a valid excuse for refusing to conduct an individualized determination of the reasons for each person's detention. Similar to out-of-county holds, there are time limits that govern actions relating to Immigration and Customs Enforcement ("ICE") holds. Once a person is released in a Harris County case, ICE has 48 hours to transport that person to a federal detention center. *See* 8 C.F.R. 287.7(d). Although the District Attorney expresses concern that people with ICE holds could be deported before resolving their Harris County case, the Public Defender's Office reports that, with few exceptions, people with ICE holds are not deported while their criminal case is pending.

This litigation is not the first time misleading information about holds has been presented to this Court. In *ODonnell,* the County and misdemeanor Judges initially argued that people who were subject to holds were not detained due to inability to pay. This Court rejected that assertion and correctly observed that "arrestees who have secured money bail imposed for their misdemeanor charges are detained in Harris County not because of the hold, which they are legally unable to address, but because they are unable to pay the secured money bail." *ODonnell v. Harris County. Tex.*, 251 F. Supp. 3d 1052, 1116 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018). The Court further stated that "secured money bail, if unpaid, prevents the defendant

from addressing the hold or from being transferred to the agency imposing the hold, extending the overall time spent in custody." *Id.* at 1090. Thus, this Court already has evaluated and rejected in a similar context the false claims being made here about the effect of holds.

### B. The DA Objects to Releasing Individuals Charged With "Violent" Offenses *Only* If They Cannot Pay Secured Bail

There is no settled definition of "violence" in Texas law. As a practical matter, the District Attorney objects categorically to the release of any poor person charged with any offense on an overbroad and non-public list of offenses that the District Attorney deems "violent." Of course, people with money who are charged with these same offenses are free to leave the jail immediately. Thus, the District Attorney's list of violent offenses is in reality a list of offenses that the DA believes should prohibit release *only* when allegedly committed by poor people.

Two weeks ago, the Sheriff's Office circulated a list of 1,543 people charged with offenses the Sheriff considered *non-violent* who were being detained on $10,000 secured bail or less in at least one felony case, meaning that they would be released in that case if they could pay $1,000 or less. While the Sheriff considered the offenses non-violent, the District Attorney refused to even consider 1,148 of the cases, either because there was a hold or because the District Attorney had concluded the alleged offense was "violent."  Dkt. 371 at 2. The District Attorney objected to a personal bond or bail reduction in all of these cases as a categorical matter. Rather than judges and court-appointed lawyers setting bail hearings for everyone on the lists at which judges could make individualized bail determinations based on the particular charges, facts, and circumstances of each case, local officials are debating whether certain categories of offenses are truly "violent." Somehow, a new hurdle has been created out of thin air, which a poor person charged with a felony in Harris County must successfully overcome before being considered "eligible" for the sort of bail hearing the Constitution requires.

### C. Examples of Indigent People Whom the DAO Objected To Releasing And Who Were Therefore Deemed "Ineligible" For a Bail Hearing

Plaintiffs offer the Court a few examples of the poor people being denied an individualized bail hearing and consideration for release because the District Attorney has concluded that they are charged with a "violent" offense and/or are subject to a hold:

1. On March 13, 2018, **J.A.** was arrested for "abandoning child," and a secured money-bail amount was set at $1,000 on the Complaint. Ex. 11 at 6. J.A. was accused of leaving a child in a car "without reasonable supervision for approximately twenty-five minutes and with the intent to return[.]" *Id.* The Judge issued a personal bond on March 15, 2018. *Id.* at 7. On June 14, 2018, the Judge issued a deferred adjudication (meaning J.A. pleaded guilty, but the Judge did not find him guilty), and J.A. was placed on three years of community supervision. *Id.* at 8–12.

   On December 2, 2020, J.A. was arrested for drug possession (cocaine). *Id.* at 20. A Hearing Officer issued a personal bond on December 3, 2020. *Id.* at 21. Before J.A. could be released from custody, the District Attorney's Office filed a motion to adjudicate guilt in the abandoning child case from 2018 based on the new offense and other alleged violations of his conditional release, including failing to make payments (almost $2,000 in supervision fees, court costs, and drug-testing fees) and behavior that is consistent with relapse from recovery for a substance-use disorder (testing positive for controlled substances and not completing a drug treatment program). *Id.* at 13–15. Judge Lori Gray issued a warrant in response to the motion to adjudicate, *id.* at 15, and set secured bail at $2,000, *id.* at 16. If J.A. could afford $200 or otherwise strike a deal with a bonding company, he would be released. **The DAO objected to release on a personal bond or affordable secured bail.**

2. On October 23, 2020, **N.A.** was arrested for robbery-bodily injury. Ex. 12 at 4. She is 17-years-old, *id.* at 1, and has no criminal history, *id.* at 2. A secured bail amount of $10,000 was set on the Complaint. *Id.* at 4. Although the Complaint alleges that N.A. personally hit someone, *id.*, the probable cause statement, which was read at her Article 15.17 hearing, alleges that a different individual struck that person. *See* Ex. 12A (N.A. Bail Hearing). At the hearing, the public defender stated that N.A. is the mother of a one-year-old, lived with her father and step-mother, and attended school full time. *See id.* The Hearing Officer did not change the secured bail amount. Ex. 12 at 6.

   When undersigned counsel first learned of this case, case records indicated that N.A. had not been to court since October 26, 2020, and that her next scheduled court date was on March 17, 2021. *Id.* at 3. There may have been a setting on January 8, 2021, but there is no indication that N.A. was present. *Id.* **The DAO objected to release on a personal bond or affordable secured bail.**

Upon learning that a 17-year-old child was detained in the Harris County Jail, undersigned counsel reached out to multiple local officials, advocates, and N.A.'s court-appointed lawyer. Through those individuals' efforts, a bed was secured for N.A. at a local social services organization, and Judge Te'iva Bell issued a personal bond. It is unknown whether the DAO changed its position on issuing a personal bond. *Id.* at 9. N.A. was about to be released from the jail on Friday, January 29, when her COVID test came back positive. According to N.A.'s lawyer, her personal bond was revoked. N.A. is currently in the medical unit at the jail.[12]

3. On November 3, 2020, **I.F.**, who is also 17 years old, was arrested and charged with aggravated assault. Ex. 13 at 1, 3. The Bail Order from the 15.17 hearing states that a $10,000 secured bail amount was set at the Article 15.17 hearing. *Id.* at 7. However, a $10,000 personal bond was issued that day. *Id.* at 8. The public defender stated that I.F. is a high school junior who is passing his classes and helps with his grandfather's lawncare business. Ex. 13A. Although the personal bond was issued on November 4, 2020, it instructed I.F. to appear *a month earlier*, on October 8, 2020. *Id.*



---

[12] Since counsel first learned of N.A.'s case, the case records have been updated to reflect a setting that occurred on 1/28/2021, and to show that the next setting is now scheduled for 4/7/2021. *See* Ex. 12 at 11.

On November 10, 2020, Judge Randy Roll[13] forfeited I.F.'s personal bond (Case No. 16929160101A) due to nonappearance on November 9, 2020, a court date he was not informed of on the bonding paperwork. *Id.* at 9. I.F. was arrested on December 2, 2020 due to the bond forfeiture warrant. *Id.* at 3. Counsel was appointed for the first time in the case a week later, on December 9, 2020. *Id.* at 10. I.F. was "in custody" on that court date and did not sign the appointment-of-counsel form. *Id.* Bond was set on December 9, 2020 at $10,000 secured. *Id.* at 11. His next court date is scheduled for February 23, 2021. *Id.* at 4. **The DAO objected to release on a personal bond or affordable secured bail.**

Though every person detained pretrial in the jail is presumptively innocent and is eligible for and entitled to a robust, evidentiary, adversarial bail hearing with counsel, such hearings are not happening for those who are poor.

## IV.    Conclusion

As the cases described in this Advisory illustrate, if the felony bail system in Harris County is meant to provide equal justice for all people, it is broken. As of January 15, 2021, there were 1,151 people detained in the Harris County Jail with bond amounts of $10,000 or less, which would enable them to be released if they paid than $1,000 to a for-profit bonding company. *See* Dkt. 369 (Minute entry for proceedings on 1/15/2021). The judges could issue personal bonds in these cases tomorrow. Or, the judges, District Attorney, and appointed defense lawyers could begin scheduling immediate adversarial bail hearings using the Sheriff's available video technology in every pending case. The judges could require that if such a bail hearing is to be waived, it must be done by the person accused of a crime, in open court, after notice about their entitlement to an adversarial bail hearing. Unlike the process in which the parties and other participants have been engaged throughout the pandemic, these simple changes would actually make a difference.

---

[13] Judge Roll was replaced on January 1, 2021 by Judge Ana Martinez.

Date: February 3, 2021

/s/ Alec Karakatsanis
/s/ Elizabeth Rossi
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Jeffrey Stein (*Pro Hac Vice*)
jeff@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

/s/ Liyah Brown
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
mimi@texascivilrightsproject.org
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
liyah@texascivilrightsproject.org
Peter Steffensen
Texas State Bar No. 24106464
Southern District No. 3327006
peter@texascivilrightsproject.org
Texas Civil Rights Project
2202 Alabama Street
Houston, TX 77004
Telephone: 512-474-5073 ext. 118

Respectfully Submitted,

/s/ Neal S. Manne
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

/s/ Michael Gervais
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 3, 2021 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Elizabeth Rossi*
Elizabeth Rossi