**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **DWIGHT RUSSELL, ET AL.**<br>　　　**On behalf of themselves and all**<br>　　　**Others similarly situated,**<br><br>　　　*Plaintiffs,*<br><br>**v.**<br><br>**HARRIS COUNTY, TEXAS, ET AL.,**<br>　　　*Defendants.* | **C.A. No. 4:19-CV-00226** |

## NON-PARTY FELONY JUDGES' MOTION TO QUASH

**TO THE HONORABLE UNITED STATES DISTRICT COURT CHIEF JUDGE LEE H. ROSENTHAL:**

Plaintiffs continue to use the platform this case provides to strongarm, harass, and unjustly burden their perceived opposition, including the Felony Judges[1], who are not parties to this suit. And Plaintiffs' actions are not discouraged. In fact, Plaintiffs are permitted frequent, regularly scheduled status conferences with the Court, during which they make demands that go far beyond state or constitutional law. Defendants and non-parties, such as the Felony Judges, are often ordered to report and justify actions that are well-beyond the facts and law at issue in this matter.

On February 10, 2021, Plaintiffs served Rule 45 subpoenas on all 19 Felony Judges as well as a subpoena to depose Judge Herb Ritchie. **Exhibit A** (Feb. 10th Subpoenas *duces tecum*); **Exhibit B** (Judge Ritchie Deposition Subpoenas). On February 22, 2021, Plaintiffs served another set of Rule 45 subpoenas on the Felony Judges. **Exhibit C** (Feb. 22nd Subpoenas *duces tecum*). On

---

[1] To include Judges Frank Aguilar, Abigail Anastasio, Ramona Franklin, Greg Glass, Nikita Harmon, Josh Hill, Kelli Johnson, Robert Johnson, DaSean Jones, Hazel Jones, Jason Luong, Amy Martin, Chris Morton, Brock Thomas, Hillary Unger, Herb Ritchie, Jesse McClure III, George Powell, Randy Roll, Te'iva Bell, Ana Martinez and Colleen Gaido.

February 24, 2021, Plaintiffs emailed subpoenas to undersigned counsel to depose Judges Kelli Johnson, DaSean Jones and Ramona Franklin. **Exhibit D** (Judges Johnson, Jones and Franklin Deposition Subpoenas and accompanying email).

At the most recent status conference held by the Court in which alterations to the bail system was demanded solely because of the Covid pandemic, an issue outside this case, Plaintiffs complained that the Felony Judges were demonstrating resistance to complying with their Rule 45 subpoenas. This Court ordered the Felony Judges submit a pre-motion letter regarding their opposition to Plaintiffs' subpoenas. The substance of Plaintiffs' subpoenas and the Felony Judges' objections thereto are to be heard at the status conference scheduled on March 3, 2021.  In order to comply with the Federal Rules and properly preserve their arguments and evidence for a potential interlocutory appeal, the Felony Judges now move to quash the subpoenas issued (not not properly served) by Plaintiffs.

Despite the Felony Judges' recent dismissal from this case and vacatur of this Court's order denying sovereign immunity, Plaintiffs continue to seek the discovery that was barred by the Felony Judges' entitlement to sovereign immunity while they were parties. Plaintiffs, confident this Court will support the endeavor, demand discovery from the Felony Judges that is identical to the discovery served on the Felony Judges when they were parties, even though they are *not* parties anymore and there are *no* live claims against them. Rule 45 subpoenas only allow parties to obtain necessary, third-party discovery. No discovery is necessary from the Felony Judges because the only remaining claims concerns the authority and actions of Harris County officials.

The Felony Judges ask the Court to quash Plaintiffs' Rule 45 subpoenas and issue a protective order, disallowing Plaintiffs' repeated attempts to obtain discovery prohibited by the federal rules and legal precedent.

### Standard of Review and Remedy for Motions to Quash Brought by Non-Parties

This Court considers a motion to quash consistent with the technical and substantive requirements set forth in Federal Rule of Civil Procedure 45. Where a motion to quash brought by a non-party to the litigation is denied, this order is immediately appealable. *Whole Woman's Health v. Smith*, 896 F.3d 362, 369 (5th Cir. 2018), as revised (July 17, 2018). The appellant is also permitted to file a stay of the lower court proceedings with the Fifth Circuit. *Id.*

### Argument

### I.   This Court Lacks Jurisdiction to Enforce Subpoenas Against the Felony Judges.

Motions to quash may be granted on the basis of sovereign immunity. *Cartwright v. Walsh, MC* 3:18-0014, 2018 WL 461236, at *2 (M.D. Pa. Jan. 18, 2018)("The court will grant petitioners' motion to quash since the subpoenas are not enforceable based on the doctrine of sovereign immunity as they seek to discover official information from petitioners"). The Felony Judges' motion to quash should be granted because the Court lacks jurisdiction to enforce the third-party subpoenas Plaintiffs have served on the Felony Judges. The third-party subpoenas at issue constitute a "suit" for the purposes of the Eleventh Amendment, and the Felony Judges enjoy immunity from suit under the Eleventh Amendment. The Court, therefore, lacks jurisidiction to enforce the subpoenas.

Additionally, the Felony Judges are entitled to Eleventh Amendment immunity from being treated as parties and are therefore shielded from the burden of discovery. Although the Felony Judges are now technically non-parties to this suit, they continue to be treated as parties for discovery purposes. Despite Plaintiffs' implicit acknowledgment (by moving to dismiss them from the case) that the Felony Judges are immune from suit under Eleventh Amendment, Plaintiffs nevertheless believe they may still compel the Felony Judges to submit to their discovery requests as if they were still parties. The Court should not permit Plaintiffs to use Rule 45 to circumvent the Felony Judges' entitlement to sovereign immunity.

### A. The Felony Judges are Entitled to Eleventh Amendment Immunity from Subpoena Proceedings.

The Court lacks jurisdiction to enforce Plaintiff's subponeas against the Felony Judges because the Felony Judges enjoy Eleventh Amendment immunity from the subpoena proceedings in this case.

Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Texas criminal "district judges ... are undeniably elected state officials" for purposes of state sovereign immunity. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744 (5th Cir. 1986) (citing *Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985)).

Here, the Felony Judges are immune from the third-party subpoena proceedings in this case because the subpoenas constitutute "suits," for the purposes of the Eleventh Amendment. The Eighth Circuit has held that tribal immunity bars the enforcement of third-party subpoenas served dirrectly on a tribe or a tribal official under Rule 45. *See Alltel Communications, LLC v. DeJordy*, 675 F.3d 1100, 1105–06 (8th Cir. 2012). In *DeJordy*, the court highlighted the inherent

problems with a third-party subpoena *decus tecum* directed at a government entity: "The third-party subpoenas here at issue raise a very different issue. They command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming. The potential for severe interference with government functions is appearent." *Id.* at 1103. Similarly, the Fourth Circuit has identified the potential for abuse that a third-party subpoena has when directed at federal employees:

> Even though the government is not a party to the underlying action, the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding "interfere[s] with the public administration" and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function.

*Baron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). For that reason, the court concluded that the third-party subpoena proceedings against a federal employee fall within the protection of sovereign immunity, since the effect of the suit falls upon the government. *Id.* at 71. Relying on *Downie* and *Dugan*, the Eighth Circuit in *DeJordy* concluded that third-party subpoenas *duces tecum* against tribal officials constituted "suits," triggering tribal immunity, and that the tribe's immunity had not been waived. *See DeJordy*, 675 F.3d at 1104.

Whether a third-party subpoena served on a state official under Rule 45 triggers Eleventh Amendment immunity is an issue that has not been decided by the Fifth Circuit. Here, however, the third-party subpoenas served on the Felony Judges certainly qualify as "suits" under *Dugan*, because compliance with the subpoeans would "interfere with the public administration" and compel the Felony Judges to act in a manner different from how they would ordinarily choose to

act. *See Dugan*, 372 U.S. at 620. The Court, therefore, lacks jurisdiction to enforce the subpoenas because the Felony Judges enjoy Eleventh Amendment immunity from suit.

The subpoenas *duces tecum* served on each of the 19 Felony Judges would require the identification and collection of hundreds of thousands of potentially responsive documents. It is difficult to image an exercise that more "interferes[s] with the public administration" than requiring criminal district court judges to gather voluminous documents as non-parties that have no potential relevance to any surviving claims Plaintiffs may still have. Compelling the Felony Judges to sit through depositions where any information they may provide would be irrelevant to Plaintiffs' remaining claims, and possibly used against them in a public forum, would likewise interefere with the public administration. And requiring the Felony Judges to comply with Plaintiffs' subpoenas would certainly compel them to act differently than they would ordinarily act.[2] *See Dugan*, 372 U.S. at 620. Instead of presiding over trials and hearings or managing their dockets, the Felony Judges would have to devote a substantial amount of time to what would amount to a futile exercise. Because the subpoenas at issue would interefere with the public administration and compel the Felony Judges to act in a manner different from how they would normally act, they are "suits" from which the Felony Judges are immune under the Eleventh Amendment. *See Dugan*, 372 U.S. at 620; *DeJordy*, 675 F.3d at 1104. The Court, therefore, lacks jurisdiction to enforce the subpoenas.

> **B.**      **The Felony Judges are Immune from Being Treated as Parties.**

---

[2] Particularly where Plaintiffs have provided documents relevant to this case to the media previously. *See*, *supra*, fn. 14.

The Court lacks jurisdiction to enforce Plaintiffs' Rule 45 subpoenas for yet another reason: the Felony Judges enjoy Eleventh Amendment immunity from being treated as parties for discovery purposes.

As state officials, the Felony Judges are entitled to Eleventh Amendment immunity from being treated as parties for discovery purposes. *See Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996). Here, notwithstanding the Felony Judges' non-party status, they continue to be treated by Plaintiffs as if they were still parties to this suit. While the Felony Judges were still parties to this case, Plaintiffs served two sets of requests for production on them under Federal Rule of Civil Procedure 34. Plaintiffs' second set of requests for production were served while the Felony Judges' appeal of the denial of their entitlement to sovereign immunity was pending in the Fifth Circuit. The Felony Judges objected to providing the requested information because their appeal on immunity grounds was pending. They filed a motion to stay or, alternatively, a motion for protective order to shield them from having to respond to Plaintiffs' discovery requests until their appeal was resolved in the Fifth Circuit. Dkt. No. 351. Before the Court ruled on the Felony Judges' motion, the Felony Judges were dismissed from the case with prejudice at Plaintiffs' request.

The Felony Judges' dismissal from the case extinguished any duty to respond to Plaintiffs' outstanding discovery requests seeking information to prove their claims against them *as parties*. But Plaintiffs insist on obtaining that very information from the Felony Judges anyway—despite Plaintiffs' acknowledgment that the Felony Judges are not proper parties to this suit. Although Plaintiffs have now served third-party subpoenas under Rule 45, the information they are requesting from the Felony Judges is exactly the same information Plaintiffs requested from the

Felony Judges while they were still parties to the suit. *See* **Exhibit E** (Plaintiffs' discovery requests to Felony Judges in July and December 2020). This tactic is a flagrant attempt to circumvent the Felony Judges' entitlement to Eleventh Amendment immunity. This Court should not condone it. Since the Felony Judges are immune from being treated as parties for discovery purposes, this Court lacks jurisdiction to enforce the subpoenas at issue. *See Vratil*, 96 F.3d at 1340.

## II.   Plaintiffs have Failed to Follow the Techinical Requirements of Federal Rule of Civil Procedure 45

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties" and governs subpoenas served on a third party, such as the Felony Judges, as well as motions to quash or modify a subpoena. *Isenberg v. Chase Bank USA, N.A.,* 661 F.Supp.2d 627, 629 (N.D.Tex.2009). However, in order to obtain relevant discovery from non-parties, Plaintiffs must adhere to the technical requirements of Federal Rule of Civil Procedure 45. *See generally* FED. R. CIV. P. 45. In particular, Rule 45(b)(1) governs the service of subpoenas and states that "[se]rving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. FED. R. CIV. P. 45(b)(1). Thus, under Rule 45, "proper service requires...personal delivery of the subpoena." *In re Dennis,* 330 F.3d 696, 704 (5th Cir. 2003). "Under the plain language of the rule, as well as Fifth circuit precedent, service is improper if the person himself is not served with a copy of the subpoena." *Weiss v. Allstate Insurance Co.,* 512 F.Supp.2d 463, 466 (E.D.La. 2007) (citing *Harrison v. Prather,* 404 F.2d 267, 273 (5th Cir. 1968) (finding that service of subpoena on party's attorney, instead of the party, "renders such service a nullity."); *Omikoshi Japanese Restaurant v. Scottsdale Insurance Co.,* No. 08-3657, 2008 WL

4829583, at *1 (E.D.La.Nov. 5, 2008) (applying personal service requirement to subpoena for records propounded upon a non-party).

Upon properly serving non-parties with a subpoena, Plaintiffs must prove service, when necessary, by filing with the issuing court a statement showing the date and manner of service and the names of the persons served. FED R. CIV. P. 45(b)(4). The statement must be certified by the server. *Id.* Without doing so, the Court has no basis to conclude that the subpoena was personally served upon the Felony Judges. *Seals v. Shell Oil Co.,* 12-1983, 2013 WL 3070844 at *4 (E.D.La. June 17, 2013). Since Plaintiffs failed to comply with Federal Rule of Civil Procedure 45(a)(2)(B), Rule 45(b)(1), and Rule 45(b)(4), Defendants' motion to quash must be granted.

### A. Rule 45(b)(1)

Rule 45(b)(1) provides that "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." As to the first part of this rule, this Court has specifically held that "personal service is **required** under Rule 45 and that quashal of a subpoena is the appropriate remedy, *even when there is no real dispute that the subpoenaed individual or entity received the subpoena or at least notice of it*[.]" *In re Metal Process Int'l, L.P.*, M-13-036, 2013 WL 12155025, at *3 (S.D. Tex. May 13, 2013).

This Court's interpretation of this portion of Rule 45 tracks with the Fifth Circuit's, which has made clear that "proper service requires...personal delivery of the subpoena." *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) (internal quotation marks omitted); *see also Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (noting Fifth Circuit has interpreted the language of Rule 45 "literally to require nothing short of personal service"). Moreover, until the technical

requirements of Rule 45(b)(1) are satisfied, the court cannot force a party's compliance with a subpoena nor can the court exercise its contempt power under Rule 45(e) against the party. *Boze Mem'l, Inc. v. Travelers Lloyds Ins. Co.*, No. 3:12-cv-669-P, 2013 WL 5299278, at \*4 (N.D. Tex. Sept. 20, 2013); *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-cv-1486-D, 2010 WL 4258859, at \*1 (N.D. Tex. Oct. 21, 2010).

As in this case, Plaintiffs served their Rule 45 subpoenas on all 19 Felony Judges as well as a subpoena to depose Judge Herb Ritchie through the Felony Judges' counsel via email. **E**x. A; Ex. B. But, counsel for the Felony Judges never acquiesced to be served via email. Accordingly, Plaintiffs are requried to personally serve their subpoenas on all 19 Felony judges and to personally serve Judge Herb Ritchie a subpoena to deposed. As previously held by this Court, service on the party's attorney, instead of the party, renders such service a nullity. *See Doe v. Catholic Soc. of Religious & Literary Educ.*, CIV.A. H-09-1059, 2009 WL 4506560, at \*1 (S.D. Tex. Dec. 3, 2009) (quashing subpoena that was sent, not personally served, to counsel for defendants, not defendant himself); *see also Weiss,* 512 F.Supp.2d at 466.

## B.  Rule 45(b)(4).

Under Rule 45(b)(4), a party, when necessary, shall prove service of a subpoena by filing with the issuing court a statement showing the date and manner of service and the names of the person served. FED. R. CIV. P. 45(b)(4). The statement must be certified by the server. *Id.* To date, there is no indication that Plaintiffs have done so. Therefore, this Court has no basis to conclude that the subpoenas were actually personally served upon the Felony Judges in accordance with the Fifth Circuit's stringent interpretation of the Rule 45 service requirements

## C.  **Plaintiffs' Subpoenas are Unenforceable and Sactionable Because they Fail to Satisfy Rule 45's Technical Requirements.**

Before a Court may order compliance with a subpoena, the party seeking such an order must establish that it has complied with the requirements of Rule 45 of the Federal Rules of Civil Procedure. This Court cannot compel the Felony Judges to comply with deficient subpoenas or hold them in contempt for failing to do so. *See Schumacher v. Capital Advance Sols., LLC*, 4:18-CV-0436, 2021 WL 391416, at *2 (S.D. Tex. Feb. 4, 2021); *see also Smith v. Midland Brake, Inc.,* 162 F.R.D. 683 at 686 (D.Kan. 1995) (holding that subpoena was improperly served and the Court could not compel defendant corporation to comply with subpoena duces tecum and produce documents identified therein where subpoena was issued to and served upon witness, an employee of corporation, not corporation). Because Plaintiffs failed to meet Rule 45's technical requirements, their subpoenas are unenforceable.

A "decision to issue the unauthorized subpoenas also runs afoul of Rule 45's provisions for 'Protecting a Person Subject to a Subpoena.'" *Mick Haig Productions, e.K. v. Does*, 3:10-CV-1900-N, 2011 WL 5104095, at *5 (N.D. Tex. Sept. 9, 2011), aff'd sub nom. *Mick Haig Productions E.K. v. Does 1-670*, 687 F.3d 649 (5th Cir. 2012) (citing FED. R. CIV. P. 45(c)). Thus, "[b]y serving invalid subpoenas, [the serving party] **necessarily** "impos[s] an undue burden or expense" on [the subpoenaed party]." *Id.* (emphasis added) (citing Fed. R. Civ. P. 45(c)(1)). Because Plaintiffs knowingly failed to meet Rule 45's technical requirements, their subpoenas are subject to sanctions. *Id.* ("To knowingly abuse [the subpoena] power is an affront to the fair and impartial administration of justice and is subject to sanctions under the inherent power of the court[.]")

III. **PLAINTIFFS FAIL TO MEET THE SUBSTANTIVE REQUIREMENTS OF RULE 45.**

Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

### A.  Plaintiffs' Deadline for Compliance Fails to Allow Reasonable Time to Comply.

Plaintiffs served the Felony Judges subpoenas on February 10, 2021 with a demand that the documents be produced no later than *five*[3] business days later on February 18, 2021. Ex. A. Plaintiffs' February 22nd subpoenas required compliance within *six* business days. Ex. C. As discussed further below in paragraph III.C.4, *infra*, Plaintiffs' **twenty-seven** (27) requests served on **nineteen** (19) different judges generated approximately 315,578 documents for review just in electronically-stored information.[4] *See* Affidavit of Adrian Skinner attached herein as **Exhibit F**.

---

[3] Plaintiffs since agreed to a compliance deadline of March 3, 2021, although they refused to provide any deadline beyond that. This brief extension does not alleviate the undue burden. When the closures caused by the Feb 15-19 storm are factored in, this is only 10 business days for compliance with the Feb. 10th subpoenas (Ex. A), and still six business days for the Feb 22nd subpoenas. The proceeding case law in this section demonstrates why this minimal extension of a deadline is still unreasonable.

[4] As the affidavit explains, this number includes only a review of emails and attachments created between January 1, 2015 and August 2020 – the month after Plaintiffs' only set of authorized discovery requests were served on the Felony Judges. Following service of the Rule 45 subpoenas, counsel for Felony Judges endeavored to obtain all new data created between August 2020 and the present. Adrian Skinner began downloading this data on February 26, 2021. However, given how voluminous the data is, as well as due to technical issues, the data has not yet been fully downloaded much less processed, de-duplicated or filtered in a way that will allow searches to be run for responsive documents. This Court denied an extension on the Felony Judges motion seeking time to obtain this information (Dkt. Nos. 410-412), therefore, the Felony Judges will file a supplemental affidavit once all data is available and more accurate numbers can be provided.

There is no basis to find that five days[5] is a reasonable amount of time to (1) review this amount of documents; (2) redact or mark as privileged all documents, as necessary; (3) produce a privilege log; and (2) meet with all twenty-two Felony Judges to ensure all discoverable documents in other formats are found. *Parra v. State Farm Lloyds*, 7:14-CV-691, 2015 WL 12940023, at *1 (S.D. Tex. Jan. 13, 2015) ("thirty days is a 'reasonable time' to respond to a subpoena duces tecum, and Defendant should have been given at least thirty days."); *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 1:07-CV-956, 2009 WL 724001, at *1 (W.D. Mich. Mar. 10, 2009) ("Two business days, more or less, even with the intervening weekend, is not an adequate period of time to comply with a subpoena."); *United States v. Woods*, 931 F.Supp. 433, 442 n. 3 (E.D.Va.1996) (obtaining subpoenas seven days before the hearing did not allow a reasonable enough time to comply); *In Re: Stratosphere Corporation Securities Litigation*, 183 F.R.D. 684, 687 (D.Nev.1999) (six days′ notice not reasonable, citing William W. Schwarzer, et al,, CALIFORNIA PRACTICE GUIDE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, ¶ 11:360 (The Rutter Group 1998): "What is 'reasonable' depends on the circumstances of the case, but at least 10 days′ notice is customarily expected"); *In Re: Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D.Ill.2005) (10 days unreasonable in a complex case).

The Felony Judges ask that the Court to rule consistently with existing case law on this matter and quash the subpoenas because Plaintiffs fail to allow a reasonable time to respond.

### B.  Plaintiffs' Subpoenas Should be Quashed Under Rule 45(d)(3)(A)(iii) Because They Seek Discovery Protected by the Deliberative Process Privilege.

---

[5] Plaintiffs will argue that these are the same requests served on the Felony Judges back on December 3, 2020. This argument, however, ignores the posture of that case at the time. The Felony Judges had not yet answered the complaint or conducted a Rule 26(f) conference, and had appealed the denial of their sovereign immunity. The Felony Judges immediately filed a motion for stay on those bases and only objected to the requests in order to preserve the objections. Because a Rule 26(f) conference is required before discovery can commence, and sovereign immunity's protections are lost if a party is required to engage in discovery before the defense is ruled upon, Plaintiffs were not entitled, or authorized by this Court or the Federal Rules, to discovery at that time.

The Felony Judges ask this Court to quash Plaintiffs' subpoenas on the basis that they seek material protected by the deliberative process privilege. The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The reasoning behind the deliberative process privilege is "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government[.]" *Id.*

In keeping with this understanding of the privilege, this Court has recognized, "[t]he purposes of the deliberative process privilege are (1) to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; (2) to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and (3) to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action that were not in fact the ultimate reasons for the agency's action." *McQueen v. United States*, 264 F. Supp. 2d 502, 518 (S.D. Tex. 2003), aff'd, 100 Fed. Appx. 964 (5th Cir. 2004) and aff'd, 100 Fed. Appx. 964 (5th Cir. 2004). Failure to protect communications or documents subject to the deliberative process privilege irreparably "'expose[s] an agency's decision-making process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *E.E.O.C. v.*

*Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 606 (W.D. Tenn. 2009) (quoting *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir.2001)).

Plaintiffs' requests seek information clearly covered by the deliberative process privilege. For example, RFP Nos. 5, 6, 7, 10, 16, 17, 20, 22, 23, 24, 26 all make requests for documents that are so broad they require the disclosure of research, discussion and/or communication regarding the formulation of judicial policies. RFP 9 seeks documents about the Felony Judges' inquiries into any detainee's ability to pay – an obvious part of a judge's deliberation that is performed prior to setting bail. These requests, as discussed further below as to why the privilege applies, are subject to quashal. *See* Rule 45(d)(3)(A)(iii) ("the court for the district where compliance is required must quash or modify a subpoena that requires disclosure of privileged or other protected matter.").

### C.  Plaintiffs' Subpoenas Place an Undue Burden on the Felony Judges

"Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

Further, the Court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited." *In re O'Hare, Misc. A.* No. H–11–0539, 2012 WL 1377891, at *2 (S.D.Tex. Apr. 19, 2012).

In making this undue burden determination, courts must ensure plaintiffs meet the required higher burden of showing discovery is necessary because "non-parties have greater protections from discovery." *MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018). A subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action, and "[d]iscovery outside of this scope is not permitted." *Garcia v. Professional Contract Servs., Inc.*, No. A-15-cv-585-LY, 2017 WL 187577, at *2 (W.D. Tex. Jan. 17, 2017).

As the Fifth Circuit has explained: "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge **must** compare the hardship to the party against whom discovery is sought against the **probative value** of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and internal quotation marks omitted). The public is indisputably interested in the amount of time, money, effort, and resources, including their tax dollars, that is utilized by their elected officials in responding to discovery requests. *Id.*

By applying the Fifth Circuit's jurisprudence, the Felony Judges' motion should be readily granted. Plaintiffs' discovery requests fail at every factor necessary to successfully overcome the undue burden imposed upon the Felony Judges.

>   1. **Plaintiffs' Subpoenas Present an Undue Burden Based on the "(1) Relevance of the Information Requested;  (2) [Plaintiffs'] Need...for the Document[s]; [and] (3) the Breadth of the Document Request[s.]"**

>>      i.   *Plaintiffs' subpoenas go far beyond the current posture of their case where their claims are limited to County actors.*

None of Plaintiffs' requests seek information that is necessary to the actual claims in this case, which is entirely premised on a substantive due process right in the context of pre-trial bail determinations that the Fifth Circuit has clearly rejected. *ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) (rejecting plaintiffs' "substantive due process right to be free from any form of wealth-based detention" because "no such right [was] in view."). The current posture of this case is as follows:

The operative complaint in this case, Plaintiffs' Second Amended Complaint, seeks a finding of constitutional violations by Defendants for:

- "enforcing against them a system of pretrial detention that keeps them in jail solely because they cannot afford to pay money bail amounts imposed without findings concerning their present ability to pay and **without findings concerning the necessity of the detention in light of alternative conditions of release that could serve the government's interests**." Dkt. No. 195.1 at ¶200 (Count One)
- incarcerating them before "the government first demonstrates that no alternative short of pretrial detention exists to mitigate an identifiable risk to the safety of the community or a risk of flight from prosecution, and that **pretrial detention is therefore necessary to serve a specified, compelling interest in public safety or court appearance**." *Id.* at ¶202 (Count Two)
- "an adversarial hearing, with counsel, at which the person has notice of the critical issues to be decided at the hearing, an opportunity to be heard and to present and confront evidence, and a statement of reasons on the record explaining the reasons for **the finding that pretrial detention is necessary**." *Id.* at ¶204 (Count Three)

Plaintiffs have consistently asked this Court to interpret their claims for relief as going beyond what *ODonnell* allows. *See* Dkt. No. 22 at 5 ("Plaintiffs in *this* case raise substantive claims in their Complaint and Motion that are not addressed at all in *ODonnell*, including the fundamental right to pretrial liberty.") (emphasis in original); *see also* Dkt. No 32 at 25 ("*ODonnell* did not consider the second substantive constitutional right in this case: the "fundamental" federal right to pretrial liberty"); *see also* Dkt. No. 220 at 11 (Claiming "[*ODonnell*] did not even purport to consider the substantive federal constitutional right to pretrial liberty Plaintiffs seek to protect in this litigation."); Hearing Transcript October 5, 2020 ("**All** we are saying is that because of the importance of the right to pretrial liberty that order of unaffordable bail, that order of pretrial detention, has to be justified; and it has to be justified by a finding that there aren't less restrictive alternative conditions of release."). But the Fifth Circuit has already considered and rejected the additional rights Plaintiffs now assert; the Court has outlined the necessary components of pre-trial bail determinations. *See ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018); *see also ODonnell v. Goodhart*, 900 F.3d 220, 225–26, 228 (5th Cir. 2018).

Following *ODonnell's* logical path from this holding, any requests Plaintiffs have served on the Felony Judges that are designed to prove a substantive due process claim are unnecessary and unreasonable. *See* RFP Nos. 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 23, 24, 26.

This leaves Plaintiffs' complaint, and, relatedly, any need for discovery, sparse.

Even if Plaintiffs pivot their case to one regarding violations of the requirements in *ODonnell*, Plaintiffs' requests do not serve to prove such a claim. Although the scope of discovery is broad, "its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." *Jones v. Metzger Dairies,*

*Inc.*, 334 F.2d 919, 925 (5th Cir. 1964). Such bounds are not met here where none of Plaintiffs' requests seek discovery to demonstrate (1) violations of **ODonnell**; (2) that are **currently** occuring; (3) by the remaining **Defendants**[6] in this case.

Even to the extent any of Plaintiffs' requests are deemed to seek information relevant to this suit, this Court still must determine whether the **Felony Judges** will provide that relevant information. In *Doe*, this Court quashed a deposition subpoena even where the plaintiff argued that the deponent had knowledge about the organizational relationship between two other defendants. 2009 WL 4506560 at *1. Rather than assuming this claim to be true, this Court required a supported basis for the assertion. *Id*. Because the plaintiff could point to no more than a page on a website to show the deponent had this knowledge, this Court quashed the subpoena for claiming to seeking information from a source that was speculative at best. *Id*.

To compel compliance with Plaintiffs' subpoenas would be entirely inconsistent with this Court's reasoning in *Doe*. Despite two years, and the amount of discovery obtained as described in paragraph III.C.1.ii, *infra*, Plaintiffs have yet to support any of their conclusory statements that the Felony Judges cause (or enforce policies or practices that allow the County to cause) their alleged harms. In fact, the discovery Plaintiffs *have* received from the County Hearing Officers demonstrates the very opposite.[7] **Exhibit H** (Plaintiffs' Discovery Requests to current

---

[6] Plaintiffs do not dispute that their only claims in this case are as to the policies and procedures that the County is currently enforcing. *See* **Exhibit G** (Feb. 23, 2021 Meet and Confer email from E. Rossi to C. Corbello)

[7] For quick reference, Plaintiffs' interrogatory number 2 asked Hearing Officer to state, under penalty of perjury, whether they consider rules, instruction, etc from Felony Judges when setting bail. Judges Diggs, Castro, St. Julian and Gaut Responded: "I make the bond decisions on a case-by-case basis." Judge Olvera said "As a Hearing Officer I **do not consider any** instructions, rules, policies, or preferences of the Felony Judges when deciding whether to "refer" or "defer" a decision on a personal bond. I make the bond decisions on a case-by-case basis." Judge Martin said "In each case on my dockets, **I independently make the decision on the issue of bail**... I do not consider any instructions, rules, policies or preferences of the Felony Judges when deciding the issue of bail or any other issues under Article 15.17." Judge Amann said "**there are no** 'instructions, rules, policies, or preferences of the Felony Judges when deciding whether to 'refer' or 'defer' a decision on a personal bond.'" Judge Flores said **"I have not**

Defendants); **Exhibit I** (County Defendants' Discovery Responses) at pp. 2-5. The complete lack of support for Plaintiffs' claims regarding the Felony Judges' authority actions led to the dismissal of the Felony Judges as parties to this suit.

Thus, the Court should not deny this Motion based on repeated and disproven arguments by Plaintiffs that the Felony Judges possess knowledge as to how the County Defendants are causing their harm. As in *Doe*, where there is no factual basis for Plaintiffs' claims, the discovery sought in the subpoenas at issue should not be compelled merely upon Plaintiffs' fervent hope that it may reveal useful information.

> ii.    *Plaintiffs provide no reason why the documents or deposition they want cannot or have not been fully provided by the actual Defendants in this case.*

Plaintiffs engaged in significant discovery with the Felony Judges, while they were parties to this suit; and Plaintiffs continue to engage in extensive discovery with the County Defendants.

To date, Plaintiffs have sought and received the following discovery—

- Propounded 4 Interrogatory Requests to each of the 23 total Felony Judges;

- Propounded 4 Requests for Production to each of the 23 total Felony Judges;

- Propounded 23 more Requests for Production to each Intervening Felony Judge;

- Received agreement from Harris County to search for information responsive to the Rule 45 Subpoenas served on Felony Judges

- 183 total pages of responsive documents produced to Plaintiffs by Intervening Felony Judges;

---

**been given** any instructions, rules, policies, or preferences from or by any felony judge, and so therefore I do not consider such when making bond decisions." Judge Callan said "I am not aware of any instructions, rules, policies, or preferences of the felony judges... **I have discretion and am bound by the law**." Judge Porter said "**I have never received** any instructions, rules, policies or preferences from any of the felony judges.

- 3,821 total pages of responsive documents produced to Plaintiffs by remaining Felony Judges;

- +207,000 total pages of responsive documents produced to Plaintiffs by Harris County;

- Propounded 28 Requests for Production to Harris County;

- Propounded 15 Requests for Production to the Harris County Sheriff;

- Propounded 4 Interrogatories to Harris County

- Propounded 9 deposition notices to Harris County Defendants[8]

- Agreement to sit for depositions by Intervening Felony Judges[9]

Additionally, as set forth in the affidavit of Eileen Gaffney, attached herein as **Exhibit J**, the majority of Plaintiffs' subpoenaed requests seek discovery that is not within the Felony Judges' custody and control, but rather, the sought-after discovery is likely in the custody and control of the County. And, notably, Plaintiffs appear to understand the discovery they need would necessarily be in the County's custody since they have acknowledged their suit, at this point, is entirely about "*whether the orders **the current Defendants are enforcing** are, in fact, unconstitutional.*" Ex. G (Feb. 23 email from E. Rossi to C. Corbello). Plaintiffs' discovery requests to the County defendants already seek information related to the newest limitations on their case. Ex. H. Allowing Plaintiffs to engage in duplicative discovery is prohibited under the Federal Rules. Fed. R. Civ. P. 26(b)(2)(C)(i) ("[o]n motion or on its own, the court **must** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the

---

[8] Although these depositions have not yet occurred, the lack of any adversity between the Plaintiffs and other defendants make it likely there will be no resistance to the depositions going forward.

[9] *See*, *supra*, note 3.

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

Instead of permitting Plaintiffs duplicative discovery that serves no permissible purpose, the Felony Judges implore this Court to require Plaintiffs, at this point in their case, to specifically set forth (1) the exact claims currently asserted against the remaining Defendants in this case; (2) what, after the discovery already exchanged as described above, remains necessary to proving the outstanding claims; and (3) the legitimate basis that demonstrates the outstanding discovery related to the current claims is within the Felony Judges' custody and control. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (stating the Fifth Circuit "has long recognized" that a nonmovant's "entitlement to discovery ...may be cut off when the record shows that the requested discovery is not likely to produce the facts needed ... to withstand a motion for summary judgment."). As it is most likely that no such attestation can be made, Plaintiffs' Subpoenas should be quashed.

        iii.     *Plaintiffs' subpoenas are unnecessary to the threshold issue of class certification.*

Rule 23(c)(1) of the Federal Rules of Civil Procedure mandates that federal courts should decide whether class certification is appropriate "as soon as practicable after the commencement of an action brought as a class action." And this Court has specifically recognized that, where a class has yet to be certified, "unlimited discovery would be unfair and unwarranted." *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 465, 470 (S.D. Tex. 2002). Twelve discovery requests that address issues far outside Plaintiffs' constitutional claims is undoubtedly unfair and unwarranted, particularly where no class has been defined. Given this, the Felony Judges ask the Court to quash Plaintiffs' subpoenas.

No class has been certified in this case. And Plaintiffs have never attempted to identify what discovery they lack in order to support their motion for class certification. Thus, a quashal of Plaintiffs' subpoenas will cause no harm or prejudice to Plaintiffs because it is their duty to prove the requirements for class certification before proceeding any further in this suit.

      iv.    *Plaintiffs' discovery requests serve the sole purpose of allowing them to engage in a fishing expedition.*

Rule 45 subpoenas are properly quashed where the discovery requested "amounts to no more than a 'fishing expedition' in an attempt to discover unknown wrongs." *Phillips v. Automated Tel. Mgmt. Sys., Inc.*, 160 F.R.D. 561, 563 (N.D. Tex. 1994). It is not an abuse of discretion to order that a party requesting documents pay the costs associated with the request when extensive materials were sought giving the impression of a fishing expedition. *Spears v. City of Indianapolis*, 74 F.3d 153 (7th Cir. 1996). Many of Plaintiffs' discovery requests, and likely deposition topics, amount to no more than a fishing expedition. For example, Plaintiffs seek information regarding the appointment of attorneys (RFPs 19, 20); the hiring of an investigator, social worker, and/or expert (RFP 22); complaints against the Felony Judges to the Texas Commission on Judicial Ethics (RFP 25); campaign donations (RFP 21); and litigation holds (RFP 27). None of these topics serve the only right that Plaintiffs "seek to protect in this litigation[:]" "the substantive federal constitutional right to pretrial liberty Plaintiffs." Dkt. No. 220 at 11. Instead, the purpose of the discovery requested is clearly to seek potential additional causes of action either against the other defendants in this case, or in a future suit against the Felony Judges.[10] This Court should prohibit the use of Rule 45 subpoenas to serve these subversive goals and protect the interests of the

---

[10] At the very least, Plaintiffs will have additional material to use while maintaining the contact they have had with the media during this case. *See*, *supra*, fn. 14.

defendants not only this case, but also future suits brought by the Plaintiffs against the current defendants and the Felony Judges.

### 2. Plaintiffs' Subpoenas Present an Undue Burden Based on "the Time Period Covered by the Requests."

The time period of January 1, 2015 to the present that Plaintiffs attach to most of their discovery requests is disproportionate to the needs of this case. Plaintiffs claim to seek only prospective injunctive relief in the form of a modification of Harris County's current bail system. Dkt. No. 195.1. Thus, the only discovery Plaintiffs are entitled to is discovery regarding how the bail system currently works. But Plaintiffs, who are confident this Court will allow such broad-scope discovery, refused to budge from their demand for all documents generated from **six** years ago, January 1, 2015, to the present. Ex. A. This Court previously recognized the time period of necessary discovery to be limited to only January 1, 2019 to the present. July 24, 2020 Hearing 32:2-4. This 1.5 year timeframe was, of course, granted when the Felony Judges were parties and when their recent and current practices were the basis for their complaint, which is no longer the case. As Plaintiffs' case no longer involves the Felony Judges, much less the Felony Judges' policies or practices from six years ago, the time frame covered in Plaintiffs' subpoenas clearly presents an undue burden on the Felony Judges.

### 3. Plaintiffs' Subpoenas Present an Undue Burden Based on "the Particularity with Which the Party Describes the Requested Documents."

Plaintiffs' requests are largely overbroad and indiscernible as to the documents truly sought. For example, Plaintiffs' want "[a]ll documents or communications relating to bail." RFP No. 5. As this Court also sits on criminal cases concerning bail, it should be readily apparent that six-years of "documents and communications related to bail" for 22 different judges that handle a

docket five days a week all year long creates an insurmountable volume of documents to look through. Other examples considering the same context include: (1) "All documents relating to felony bail policies or practices in Harris County;" (RFP 6); (2) "All documents reflecting any Felony Judge's inquiry into any felony arrestee's ability to pay" (RFP 9); (3) "All written decisions relating to bail" (RFP 14); (4) "All communications relating to Governor Abbott's Executive Order GA-13, bail, and/or the post-arrest process" (RFP 15); (5) "All documents showing that, in Harris County or any other jurisdiction, secured money bail is more effective than other conditions of release" (RFP 23); and (6) "All documents reflecting, constituting, or referring in any way to a comment or statement by a Felony Judge, made outside of a judicial hearing, relating to bail in Harris County" (RFP 26).

Plaintiffs have cast an excessively wide net, attempting to obtain any and all communication or documents the Felony Judges possibly possess regarding Harris County's pretrial system. In this case, which is limited by *ODonnell* and solely against County actors, this Court should not allow such overarching, irrelevant, and excessively broad discovery requests on non-parties. There is no basis to find that Plaintiffs require every single communication a Felony Judge has had about bail, or appointing counsel for the past six years other than to permit them pre-suit discovery for future litigation against the Felony Judges.

### 4.   Plaintiffs' Discovery Presents an Undue Burden Based on "the Burden Imposed" in Reviewing an Excessively Large Amount of Documents.

Plaintiffs' twelve discovery requests posed to twenty-two Felony Judges imposes a burden far greater than the needs of this case. As attested to by Adrian Skinner (Ex. F), electronic discovery specialist for the Office of the Attorney General of Texas, a search of documents[11] for

---

[11] *See*, *supra*, fn. 3.

potential responsiveness using relevant search words and terms resulted in a need for review of 315,578 pages[12] of documents total. Even if this Court allows longer than the few days Plaintiffs have given the Felony Judges to review these documents, the time required to do a proper review, including creating a privilege log, is extensive. As set forth in the Affidavit of Courtney Corbello, attached herein as **Exhibit K**, counsel for the Felony Judges, the prior document review, even when limited by this Court, consisted of 60,000 documents. Corbello Aff. at ¶6. At that time, as well as currently, the Attorney General's Office, like many state agencies, was operating with a very limited amount of resources; only three attorneys, each with dockets of 40 cases or more, were able to be assigned to this case. *Id.* at ¶8-10. Thus, the review of 60,000 documents using the resources available required five months of work, both during normal business hours, after-business hours and weekends, to complete.[13] *Id.*

Given this, an application of the same resources using prior document review as a reference, it is likely that review of the 315,578 pages that Plaintiffs' requests demand would require anywhere from 10 - 18 months to complete.[14] Corbello Aff. at ¶15. This Motion is not the first time Plaintiffs are being informed of the excessive amount of document review required to meet their demands. Plaintiffs were well aware, and have sought constant Court intervention despite the fact,

---

[12] The page count is the most accurate and representative of the work to be complete as each one of a document's pages would not only have to be reviewed but also checked for privilege/personal information/etc and then redacted or logged accordingly.

[13] This does not include a privilege log that was not completed given the timing of Plaintiffs' desire to dismiss the Felony Judges from this suit. *Id.* at ¶12. The privilege log would likely take an additional month. *Id.* at ¶12.

[14] This math is consistent with industry standards. DISCO quotes an "industry average of 55 docs/hr" (https://www.csdisco.com/managed-reviewgclid=EAIaIQobChMI5PayhoHS6AIVTODICh0s9gJUEAAYASAAEgIAVPD_BwE), BIA cites that "most reviewers average 40-50 documents per hour" (https://www.biaprotect.com/blog/legal-document-review-q-a/), and a March 2019 write-up from Edge by Hilgers Graben (available here: https://cdn2.hubspot.net/hubfs/5352547/Hilgers_Graben_March2019%20Theme/PDF/Who%20Actually%20Is%20Reviewing%20My%20Documents.pdf), states on page 4 that "[a]n average document review pace in the 1990s was 60-70 documents per hour. It remains at about that pace today."

that their document demands resulted in thousands of pages to review. *See* Rule 45(c)(1) (providing for imposition of appropriate sanction if subpoenaing party or attorney breaches duty to take reasonable steps to avoid imposing undue burden or expense on subpoenaed person); Hon. Elizabeth D. Laporte, Jonathan M. Redgrave, A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26, 9 Fed. Cts. L. Rev. 19, 58 (2015) ("Rule 45...commands the court to "enforce this duty [to not impose an undue burden or expense upon a nonparty] and impose an appropriate sanction" upon the requesting party."). Plaintiffs have therefore demonstrated not only an unwillingness to reduce undue burden on the Felony Judges but also a willingness to increase that burden by demanding shorter deadlines for the necessary review.

### 5. Plaintiffs' Subpoenas Should be Quashed.

Applying the arguments above in paragraph III, *supra*, the most cursory reviews of Plaintiffs' requests demonstrates that they are entirely irrelevant and unecessary to their case:

Request No. 1: All communications to or from any of the Defendant Felony Judges relating to any proposed or enacted general order regulating bail.

> This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Documents and communications related to the general order would necessarily include documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require cannot or have not been fully provided by the actual Defendants in this case.

Request No. 2: All communications to or from any of the Defendant Felony Judges, or anyone acting on behalf of the Defendant Felony Judges, and any of the Hearing Officers relating to bail.

> This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Documents and communications related to bail would necessarily include documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require cannot or have not been fully provided by the actual Defendants in this case

Request No. 3: Any bail schedules or other instructions, guidelines, or advisories from any of the Defendant Felony Judges, or anyone acting on behalf of any of the Defendant Judges, to any of the Hearing Officers and/or to Harris County Pretrial Services or any employee of Harris County Pretrial Services relating to bail that have been in effect between January 1, 2019 and the present.

> This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. The use of a bail schedule is not prohibited by *ODonnell*. Nor is there any allegation left in this case that the Felony Judges act unconstitutionally in imposing a bail schedule. Documents and communications related to bail would necessarily include documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require cannot or have not been fully provided by the actual Defendants in this case

Request No. 4: All documents reflecting, constituting, or referring in any way to a comment or statement, made outside of a judicial hearing, relating to bail in Harris County.

Request No. 5: All documents or communications relating to bail, including any bail schedules or other instructions, guidelines, directives, or advisories to or from any of the Felony Judges relating to bail, and documents or communications relating to the development, adoption, rescission, proposed adoption, or proposed rescission of any such bail schedule, instruction, guideline, directive, or advisory.

> This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. The use of a bail schedule is not prohibited by *ODonnell*. Nor is there any allegation left in this case that the Felony Judges act unconstitutionally in imposing a bail schedule. Documents and communications related to bail would necessarily include documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require cannot or have not been fully provided by the actual Defendants in this case.

6. All documents relating to felony bail policies or practices in Harris County from January 1, 2015 through the present. Such policies include but are not limited to any and all bail schedules; the Public Safety Assessment and its incorporation into the bail schedule; the two General Orders issued in April 2020, App'x B; and the July 21, 2017 order authorizing public defenders to represent people at Article 15.17 bail hearings for purposes of bail but not for purposes of determining probable cause, App'x C.

> This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary in this case for prospective injunctive relief. The use of a bail schedule is not prohibited by *ODonnell*. Nor is there any allegation left in this case that the Felony Judges act unconstitutionally in imposing a bail schedule. Documents and communications related to bail practices would necessarily include documents subject to

the deliberative process privilege. Plaintiffs provide no reason why the documents they require cannot or have not been fully provided by the actual Defendants in this case.

7. All documents relating to or referencing the March 23, 2017 "Recommended Standard Bail Practices." App'x D.

This request is in regards to a four-year old document, which is unreasonable in this case for prospective injunctive relief. Moreover, the document in question is one that involves the Felony Judges' bail practices, which is not at issue in this case any longer. Documents related to bail practices would necessarily include documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case.

8. All templates, forms, or scripts used or referred to by any of the Felony Judges in making bail decisions.

This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. There is no claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms. This request necessarily seeks documents subject to the deliberative process privilege.

9. All documents reflecting any Felony Judge's inquiry into any felony arrestee's ability to pay and/or reflecting a felony arrestee's financial information and ability to pay, including any forms completed by Pretrial Services that any Felony Judge referred to when considering bail, and any forms appointing counsel on the basis of indigence. If all documents of which the Felony Judges are aware were produced by the County in response to RFP 13 served on the County, please so state.

This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. There is no claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms. This request necessarily seeks documents subject to the deliberative process privilege.

10. All documents, policies, or training materials that have been in effect at any time since January 1, 2015 that relate to the definition of "indigence" or "ability to pay" that Hearing Officers or Felony Judges apply for purposes of determining bail, appointment of counsel, or ability to pay fines, fees, or costs associated with a conviction.

This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. There is no

claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms.

11. All training, onboarding, or transition materials provided to any newly-elected Harris County criminal district court judge or a Harris County Criminal Law Hearing Officer relating to bail, the post-arrest process, the magistration process, preliminary court appearances, or the judges' preferences regarding bail decisions and conditions of release.

> This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. This is a request seeking discovery related to County defendants; Plaintiffs provide no reason why it cannot be obtained from those defendants.

12. Documents reflecting the number of on-the-record bail hearings conducted in person in your courtroom for people detained in the jail at the time of the hearing and arrested for one or more felony offenses from January 1, 2015 through the present. Plaintiffs are requesting documents reflecting such bail hearings at which the felony arrestee personally attended the bail hearing and a court reporter transcribed it.

> There is no claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms. Therefore, Plaintiffs do not require any documentation that demonstrates what occurs in their courtrooms. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Plaintiffs have previously been informed that this discovery is under the custody and control of the County and, therefore, Plaintiffs are well aware that it can be obtained from an easier source. Plaintiffs provide no reason why the documents they require cannot or have not been fully provided by the actual Defendants in this case

13. All correspondence submitted to you by or on behalf of a person detained pre-trial in the Harris County Jail, except correspondence filed by counsel.

> There is no claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. This request necessarily seeks documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

14. All written decisions relating to bail.

> There is no claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms. This

request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case.

15. All communications relating to Governor Abbott's Executive Order GA-13, bail, and/or the post-arrest process.

There is no claim in this case that the Felony Judges adherence to GA-13 violates Plaintiffs' consitutitonal rights. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. This request necessarily seeks documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

16. All documents reflecting standing orders, policies, procedures, directives, guidelines or instructions relating to court appearance, in-person or virtually, from March 1, 2020 to the present.

The Felony Judges are not parties to this suit, therefore, any discovery as to court appearances in their courtrooms is irrelevant. This request necessarily seeks documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

17. All documents reflecting standing orders, policies, procedures, directives, guidelines or instructions relating to releasing medically vulnerable people from March 1, 2020 to the present.

*ODonnell* does not require the release of medical vulnerable people from pretrial detention. And Plaintiffs have not brought any claims in this suit regarding the constitutionality of Harris County's actions while operating a jail during a pandemic. Also, the Felony Judges are not parties to this suit, therefore, any discovery as to the release of medically vulnerable from their jurisdictions is irrelevant. This request necessarily seeks documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

18. All documents concerning case backlogs or delays in Harris County's criminal district courts.

There is no claim left in this case regarding actions taken by the Felony Judges or any case backlogs or delays within their own courtrooms. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. This request necessarily seeks documents subject to the deliberative process privilege. Plaintiffs have provided no reason why they cannot

gain information regarding backlogs or delays in Hearing Officer courtrooms from the County defendants.

19. All documents relating to providing, assigning, or appointing lawyers to represent defendants who were released after arrest, who appear in court for a scheduled appearance without an attorney present, and in whose case the judge wants to address bail on that date.

> Plaintiffs have not alleged violation of a constitutional right on the basis of appointment of counsel in this case. See SAC at ¶199-204. This request is clearly posed as part of a fishing expedition. Even if they had, the Felony Judges, and their practices in appointing counsel, are not at issue in this case. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. This request necessarily seeks documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

20. All documents reflecting the judges' policies and practices relating to court-appointed counsel, including private counsel and the Public Defender's Office.

> Plaintiffs have not alleged violation of a constitutional right on the basis of appointment of counsel in this case. *See* SAC at ¶199-204. This request is clearly posed as part of a fishing expedition. The Felony Judges are not parties to this suit, therefore, the policies and practices in their courtrooms are irrelevant. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

21. All documents reflecting any campaign donations or gifts to you from any lawyer who has practiced in your courtroom.

> Plaintiffs have not made any claim in their suit about receiving campaign donations from layers in their courtrooms. *See* SAC at ¶199-204. This request is clearly part of a fishing expedition. The Felony Judges are not parties to this suit, therefore, the policies and practices in their courtrooms are irrelevant. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

22. All documents reflecting every case in which you authorized an appointed lawyer or public defender to hire an investigator, social worker, and/or expert.

*ODonnell* does not require the hiring of an investigator, social worker or expert for the purposes of setting bail. Plaintiffs have made no claim in this case that it does. *See* 195.1. The Felony Judges are not parties to this suit, therefore, the policies and practices in their courtrooms are irrelevant. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Documents regarding hiring of the above personnel in individual cases necessarily requires disclosure of documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case

23. All documents showing that, in Harris County or any other jurisdiction, secured money bail is more effective than other conditions of release at meeting any Judge's interest in an arrestee coming to court and/or not being rearrested.

*ODonnell* does not require that there be a finding that secured money bail is more effective than other conditions of release in ensuring an arrestee's return to court. The Felony Judges are not parties to this suit, therefore, their knowledge of effective bail practices is not at issue. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Documents showing that people return to court or do not reoffend where they have a financial reason to do so would necessarily require disclosure of documents subject to the deliberative process privilege. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case.

24. All documents reflecting any inquiry any Felony Judge has made to assess the comparative rates, in Harris County, of new criminal activity, bond-condition violations, nonappearance or failure-to-appear of felony arrestees released on different types of bonds.

*ODonnell* does not require that there be a finding that secured money bail is more effective than other conditions of release in ensuring an arrestee's return to court. The Felony Judges are not parties to this suit, therefore, their knowledge of effective bail practices is not at issue. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Documents reflecting the data above would necessarily require documents subject to deliberative process privilege, for example, where the data is used in the course of creating policy. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case.

25. All documents relating to a pending or concluded proceeding against any of the Felony Judges before the Texas Commission on Judicial Ethics.

This request is entirely inappropriate in that it clearly seeks privileged information. Moreover, the Felony Judges are not parties to this suit, therefore, TCJE proceedings against them have no bearing on this case whatsoever. This request requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Information that is included in any complaint against a state court judge to the Texas Commission on Judicial Ethics is privileged and confidential. Tex. Const. art. 5, § 1-a(10) ("All papers filed with and proceedings before the Commission or a Master shall be confidential, unless otherwise provided by the law."); *see* also Rule 12 of the Texas Rules of Judicial Administration.

26. All documents reflecting, constituting, or referring in any way to a comment or statement by a Felony Judge, made outside of a judicial hearing, relating to bail in Harris County between January 1, 2015 and the present.

Plaintiffs have already received this discovery for the time period of 2020 to the present after this Court granted expedited discovery before sovereign immunity was resolved. This request now requires all documents generated between 2015 and the present, which is a far wider time period than is necessary this case for prospective injunctive relief. Documents reflecting comments on bail necessarily require disclosure of discovery subject to the deliberative process privilege. Moreover, the Felony Judges are not parties to this suit, therefore, any comments they have made on bail has no bearing on this case whatsoever.

27. Any and all litigation hold notices, document preservation notices and/or other communications, memorandums, or documents provided by a Felony Judge or their agents or representatives to any current or former personnel, employees, agents, officers, officials, or representatives regarding the need to suspend document destruction for the purposes of preserving evidence, including electronic documents and data, relating to the abovecaptioned lawsuit.

This request clearly seek attorney-client privileged information because it asks for communications that would only come from counsel as to document preservation for this case. Moreover, the Felony Judges are not parties to this suit, so any discovery regarding litigation holds is irrelevant to Plaintiffs' claims against the County. Plaintiffs provide no reason why the documents they require, to the extent they involve the County, cannot or have not been fully provided by the actual Defendants in this case.

Plaintiffs Deposition Subpoenas to Judges Herb Ritchie, Kelli Johnson, DaSean Jones and Ramona Franklin:

It is reasonable to assume Plaintiffs will seek information from these Judges during their deposition consistent with the topics of the requests above. Plaintiffs do not require the depositions of these, or any other, state court criminal judges – the claims in this case are entirely premised on what County actors are doing in relation to bail. The deliberative process privilege prevents Plaintiffs from obtaining testimony as to how any of the Felony Judges'

policies were formulated. In sum, any questions posed to the Felony Judges in deposition would therefore be related to information that is either (1) easily and readily obtainable from County defendants; or (2) subject to deliberative process privilege. There is no legitimate basis to require the Felony Judges to be subjected to deposition.

No aspect of Rule 45 has been met in this case to merit allowing Plaintiffs to engage in full-blown discovery with non-party State officials who play no role in the "injury" claimed or relief sought.

This Court "must" quash Plaintiffs' subpoenas. Fed. R. Civ. P. 45(d)(3)(A).

## IV.   THE FELONY JUDGES ARE ENTITLED TO A PROTECTIVE ORDER.

Following a quashal of Plaintiffs' subpoenas, the Felony Judges ask this Court to issue a protective order barring any other discovery from being served on them by any party in this case. Rule 26(c)(1) provides that "[a]ny person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." FED. R. CIV. P. 26(c)(1).

Rule 26(c) of the Federal Rules of Civil Procedure grants the Court the discretion to issue protective orders that limit the extent and manner of discovery, in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As explained above in paragraph III.C, Plaintiffs' subpoenas subject the Felony Judges to a significant undue burden.[15] On this basis alone, a protective order is necessary. Plaintiffs and

---

[15] And to the extent Plaintiffs' counsel continues to contact the media regarding their opinions of the Felony Judges' courtroom practices, more discovery that they can utlize to place pressure on the Felony Judges to comply with their demands will undoubtedly subject the Felony Judges to annoyance, oppression and embarrassment as well. *See, e.g.,* Lawyers Decry Conditions at Texas Jail Overcrowded With People Unable to Pay Cash Bail, The Root, (https://www.theroot.com/after-64-year-old-inmate-dies-of-covid-19-lawyers-decr-1846232871) (last visited February 17, 2021) (stating that Alec Karakatsanis "**shared a list of judges in Harris County [to the writer of the article]** who have presided over the cases of people detained pretrial because of their inability to pay bail" and including interview with Elizabeth Rossi alleging that "[t]he key decision-makers who can do something about it have

the other parties in this case should be prohibited from continuing to bring the Felony Judges into this case - a case in which the Fifth Circuit has already declared what the proper relief is.

Additionally, protective orders limiting discovery are especially appropriate where the requesting party is entitled to Eleventh Amendment immunity. "The very object and purpose of the 11th Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct*, 506 U.S. at 146 (*quoting In re Ayers*, 123 U.S. 443, 505 (1887)); *see also Carty v. Rodriguez*, 211 Fed. App'x 292, 293 (5th Cir. 2006) (quoting *Williams v. Brooks*, 996 F.2d 728, 730 n. 2 (5th Cir. 1993) ("Immunity...is an entitlement to be free from the burdens of time-consuming pre-trial matters and the trial process itself."). Thus, where the Felony Judges, non-party officials, have been served with discovery, sovereign immunity should protect them from the burdens of engaging in such discovery just as if would if they were parties.[16]

## Conclusion

The Felony Judges ask that this Court no longer permit Plaintiffs to make allegations outside the four corners of their complaint and conduct limitless discovery on any aspect of the

---

chosen to do nothing, showing a deep indifference to human suffering and illness[.]"); *Two Harris County district judges face favoritism allegations in defense appointments,* Houston Chronicle, https://www.houstonchronicle.com/news/houston-texas/houston/article/harris-county-judges-favoritism-allegations-15646882.php (last visited February 17, 2021) (article detailing statutorily-protected judicial complaint filed by Plaintiffs' Counsel against Judges Martin and R. Johnson, and then shared with the reporter, as well as interview from Plaintiffs' counsel stating "The judges aren't complying with the law of course"); *'Deep indifference to human suffering' at Harris County Jail, lawyers say*; Houston Chronicle, https://www.houstonchronicle.com/news/houston-texas/crime/article/harris-county-jail-indifference-human-suffering-15926278.php (last visited February 17, 2021) (article presenting same arguments made by Plaintiffs' counsel in advisory filed less than 24 hours earlier (Dkt. No. 395)). Use of the media to influence ongoing litigation is expressly prohibited by the Model Rules of Professional Conduct. Model Rules of Prof'l Conduct r. 3.6(a) ("A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.").

[16] Particularly where any discovery obtained would likely be used in subsequent suits brought by Plaintiffs' counsel.

Harris County criminal justice system that they desire. By doing so, Plaintiffs' subpoenas should be quashed in their entirety and the Felony Judges should be granted a protective order from any future discovery by any party in this case.

**Dated:** March 2, 2021.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Attorney in Charge
Assistant Attorney General
Texas State Bar No. 24097533
Southern District ID 3089117
Courtney.corbello@oag.texas.gov

*/s/ Landon A. Wade*
**LANDON A. WADE**
Assistant Attorney General
Texas State Bar No. 24098560
Southern Distr. No. 3503435
*Landon.Wade@oag.texas.gov*

*/s/ Jonathan M. Pena*
**JONATHAN PENA**
Assistant Attorney General
Texas State Bar No. 24110207
Southern Distr. No. 3350256
*Jonathan.Pena@oag.texas.gov*

**OFFICE OF THE ATTORNEY GENERAL**
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9410 (Fax)

**Counsel for the Felony Judges**

### NOTICE OF ELECTRONIC FILING

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the United States District Court for the Southern District of Texas, on March 2, 2021.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General

### CERTIFICATE OF SERVICE

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served directly to all counsel on record by the Electronic Case Files System of the Southern District of Texas on March 2, 2021.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General