**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | |
|---|---|
| DWIGHT RUSSELL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00226 |
| | ) (Class Action) |
| HARRIS COUNTY, TEXAS, et al. | ) The Honorable Lee H. Rosenthal |
| | ) U.S. District Judge |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
THE FELONY JUDGES' MOTION TO QUASH**

Plaintiffs seek testimony and documents from the Felony Judges that are not merely relevant but critical to Plaintiffs' ability to prove their claims. Plaintiffs allege ongoing, irreparable harm to a putative class of thousands of people detained in the jail in violation of their fundamental, constitutional rights. Plaintiffs have alleged and seek to prove that the Criminal District Court Judges promulgate rules and policies, and acquiesce in customs, that govern the felony post-arrest process and result in unconstitutional felony bail orders, enforced by the County and Sheriff. These orders cause the pretrial detention of thousands of people every day. Plaintiffs seek discovery from the Felony Judges about these rules, policies, and customs.

The best evidence of the Felony Judges' policies and practices—including the communications in which those policies and practices are conveyed, and the reasons for them— are documents and testimony in the Judges' possession. Depositions taken over the last three weeks confirm this commonsense statement. Multiple witnesses were unable to answer questions about crucial factual issues relating to the bail policies that the County, Sheriff, and Hearing Officers enforce, and they identified the Judges as the people who would be able to answer those questions.

1

The Judges' principal argument is that the subpoenas impose too much of a burden and seek irrelevant information. But the subpoenas seek information about the Judges' customs, policies, and practices that Plaintiffs cannot obtain elsewhere. The Felony Judges also invoke the deliberative process privilege. But a person invoking that privilege must do so specifically, explaining both which documents might qualify and why the privilege applies, and the Judges' generic and conclusory argument on this front does not meet that burden. As for the Judges' novel argument that sovereign immunity bars any Rule 45 subpoena on a state agency or actor, it finds no support in the precedent they cite or the overwhelming weight of the precedent they choose *not* to cite. The Felony Judges' motion to quash should be denied.

## I.   Factual Background and Procedural History

### A.   Plaintiffs Name the Felony Judges As Parties Due To Their Role In Setting Felony-Bail Policy For Harris County

Plaintiffs challenge "Harris County's wealth-based felony pretrial detention system," which "violates the Equal Protection and Due Process Clauses of the United States Constitution." Dkt. 195-1 at 7. Plaintiffs allege that the Felony Judges play a central role in this system: they are responsible for bail practices that result in "arrestees who are too poor to purchase their liberty remain[ing] in jail solely because of their poverty." *Id.* at 4; *see also id.* at 12-15 (discussing the central role of the Felony Judges in felony bail practices). Given this role, Plaintiffs' Second Amended Complaint named the 23 Felony Judges as Defendants. *Id.* at 12;[1] Dkt. 211 at 2. In answering the complaint, another defendant, the Sherriff, reinforced the relevance of the Felony Judges' actions to the litigation. The Sheriff filed a cross-claim for declaratory relief against the

---

[1] Plaintiffs named the Judges after two intervened on the basis of an interest stemming from their role "in setting the policies and procedures regarding felony pretrial detention." Dkt. 181-1 at 5 (Judge Silverman); Dkt. 192 at 1-2 (Judge Warren).

Judges. Dkt. 197 at 3. He alleged that "new rules and procedures" were required to "satisfy the plaintiffs' request for a system that complies with constitutional requirements," to promote safety and court appearance, and to reduce the jail population. *Id.* The Sheriff made it clear that he was "dutybound to carry out orders of the felony judges" until those changes occurred, either voluntarily or through this litigation. *Id.*

### B.  The Felony Judges Delay Compliance With Court-Approved Discovery

"[T]o develop the accurate factual record that this Court" had indicated would be "critical" to move this litigation forward, in July 2020, Plaintiffs sought "very limited discovery from the defendant felony judges." Dkt. 211 at 3. Neither the County, nor the Sherriff, nor the two intervening judges opposed discovery. *Id.* The Felony Judges—represented by the Texas Attorney General[2]—did. *Id.*[3]

After holding a hearing, the Court agreed that discovery was appropriate. The Court noted that "[t]he need for information in admissible form that the Court can rely on to reach an accurate result, a fair result" was "paramount." Dkt. 231 (Tr. 7/24/2020) at 30:19-21. Plaintiffs' requests would lead to a "fuller and accurate evidentiary record on which to resolve the legal questions that have been and will be raised." *Id.* at 30:11-12. Plaintiffs had "been quite modest in seeking the discovery," and the Court further circumscribed that discovery by limiting the time period the requests covered, recognizing that the information was "important," that there was "good cause to have this information provided as soon as practicable," and that the requests were "not likely to

---

[2] The number and identities of the Felony Judges represented by the Texas Attorney General's Office has changed over time.

[3] Even so, the State Intervenors—also represented by the Texas Attorney General—requested discovery of their own a little over a month later, on August 20. These intervenors explained that, in doing so, they were "working behind the scenes to move the case along." Dkt. 277 (Tr. Hrg. 8/21/2020) at 17:6–7. The County and Sheriff provided timely responses to those requests.

impose a burden." *Id.* at 31:4-5, 10, 19. The Court ordered the Judges to respond to Plaintiffs' Interrogatories and Requests for Production by August 24. *Id.* at 33:14–15; Dkt. 226.

On July 30, 2020, the Felony Judges moved to dismiss.[4]

The Felony Judges represented by the Attorney General's Office made an initial, small production of documents on August 25. Despite this Court's emphasis on the need to move quickly, the Felony Judges adopted a slow pace. They stated that they would continue producing documents every two weeks beginning October 1. Ex. 1 (Felony Judges' Responses and Objections to Plaintiffs' First Requests for Production). The Judges estimated that they would not complete production until December 31, and refused to produce a privilege log before January 29, 2021. Ex. 2 (Oct. 10, 2020 email from C.Corbello to J.Grinstein). These developments led Plaintiffs to request the Court's assistance in moving along the limited discovery it had ordered. Ex. 3 (Plaintiffs' Pre-Motion Letter dated October 19, 2020). In response, the Felony Judges acted to delay the proceedings in a different way: they moved to stay the case pending a ruling on the motions to dismiss. Dkt. 317 (filed Oct. 22, 2020). Shortly thereafter, the Court denied the motions to dismiss, mooting the Judges' motion to stay. Dkt. 326 (Nov. 10, 2020).

The Felony Judges immediately filed a notice of interlocutory appeal from the portion of the motion to dismiss that had denied their "entitlement to sovereign immunity." Dkt. 327. Shortly thereafter, Plaintiffs asked to discuss issues with the Felony Judges' compliance with the discovery ordered in July.[5] Counsel for the Felony Judges stated that "[i]t does not appear to me that these

---

[4] The State Intervenors had moved to dismiss earlier. *See* Dkt. 214 (filed July 10, 2020). The Court held oral argument on both motions on October 5. Dkt. 309.

[5] These issues included the failure to produce metadata, a protocol for producing electronically stored information, and the recurring issue with the pace of production. Ex. 4 (Dec. 4, 2020 email from E.Rossi to C.Corbello) at 2. The Judges did not produce a loadfile containing metadata until March 12, 2021, after the Court ordered them to do so. Dkt. 427 (entered March 8, 2021).

discovery issues are within the jurisdiction of the court to resolve at this time." Ex. 4 (Dec. 4, 2020 email from E.Rossi to C.Corbello) at 1. Counsel refused to confer regarding the discovery issues related to the discovery ordered in July, asked Plaintiffs to withdraw an additional set of Requests for Production ("RFPs") served on December 3, Ex. 5 (Plaintiffs' Section Requests for Production to Felony Judges), and indicated that the judges would move to stay the litigation if Plaintiffs refused. *Id.* Plaintiffs refused to withdraw the RFPs and stated their opposition to the stay motion. The Judges carried out their threat and sought a stay. Dkt. 351 (filed Dec. 11, 2020).

A few days later, on December 15, the Judges indicated that they had completed production in response to the discovery ordered in July. They withheld responsive documents on the basis of privilege but did not produce a privilege log.[6]

### C.  To Avoid Further Delay, Plaintiffs Dismiss The Felony Judges As Defendants

On December 28, 2020, the Fifth Circuit decided *Daves v. Dallas County*, involving a challenge to the misdemeanor and felony bail system in Dallas County. *Daves v. Dallas Cty., Texas*, 984 F.3d 381 (5th Cir. 2020). The *Daves* panel upheld a preliminary injunction, holding that the Dallas bail system violated equal protection and due process. *See id.* at 413 ("These Plaintiffs have a right to pretrial liberty that cannot be taken by the State without constitutionally adequate justification."). The court also held that "[t]he Sheriff can be enjoined to prevent that officer's enforcement of measures violative of federal law," and "[s]o may the Magistrate Judges," but, as to the Dallas County felony judges, Plaintiffs' claims were "barred by sovereign immunity" and "Plaintiffs lack standing." *Id.* at 414. This Court ordered briefing on the effect of *Daves* on

---

[6] On December 22, while the stay motion was pending, Plaintiffs served deposition notices for six of the Felony Judges, Sheriff Gonzalez, Sheriff's Office employee Virginia Ryan, and a Criminal Law Hearing Officer.

this litigation. Dkt. 358; Dkt. 361. However, the Fifth Circuit subsequently granted rehearing en banc and vacated the panel decision. *See* 988 F.3d 834 (5th Cir. 2021).[7]

On January 12, 2021, the Sheriff requested a status conference to address the fact that "[t]he jail is bursting at the seams." Dkt. 364 at 1. The Court scheduled a hearing for January 15. Dkt. 366. At that hearing, Plaintiffs informed the Court that they intended to file a Rule 41(a) motion to dismiss the Felony Judges with prejudice after the Felony Judges dismissed their interlocutory appeal. Tr. Hrg. 1/15/2020 (forthcoming); Dkt. 369. Plaintiffs emphasized that they did not believe *Daves* required dismissal or that the Judges have sovereign immunity, but that they would dismiss the judges in the interest of moving the case forward expeditiously and avoiding a stay. Tr. Hrg. 1/15/2020 (forthcoming). Counsel for the Felony Judges informed the Court that she would seek vacatur of the decision denying the motion to dismiss, partly because of Plaintiffs' refusal to concede that the Judges have sovereign immunity. Tr. Hrg. 1/15/2020 (forthcoming); Dkt. 369. On January 20, Plaintiffs filed a Rule 41(a)(2) motion to dismiss the Judges, but asked the Court not to enter the order until after the Judges dismissed the appeal. Dkt. 370.

On January 27, this Court entered an order stating that it would vacate its opinion on the Felony Judges' motion to dismiss and grant Plaintiffs' motion to dismiss the Felony Judges with prejudice "when the Felony Judges notify the court of the withdrawal of the appeal." Dkt. 386. On January 28, Plaintiffs moved for a modification of the scheduling order, in part to allow time for third party discovery against the Felony Judges. Dkt. 388 at 3. On January 29, Plaintiffs withdrew the prior deposition notices, which were served on the Judges under Rule 30, governing party discovery. On February 2, the Court vacated its opinion denying the Felony Judges' Motion to

---

[7] Oral argument is scheduled for the week of May 24. *Daves v. Dallas County*, No. 18-11368, Doc. 00515761031 (Mar. 1, 2021).

Dismiss. Dkt. 392 (granting vacatur because "[t]he public interest in resolving the claims is pressing" and noting the "urgency" of "mov[ing] the case forward to the merits"). On February 8, the Judges filed an Unopposed Motion to Dismiss Under Fed. R. App. P. 42 in the Fifth Circuit. *Russell v. Jones*, No. 20-20587, Document 00515736118 (5th Cir. Feb. 8, 2021). The appeal was dismissed, and the mandate issued the same day. *Id.*, Document 00515736831.

### D.   Plaintiffs Seek Additional Relevant Discovery From The Judges, Now Under Rule 45's Provisions For Non-Party Discovery

Because the Felony Judges continue to possess information relevant to Plaintiffs' claims, Plaintiffs sought discovery from them under Rule 45.[8] The requests—in two sets—paralleled Plaintiffs' earlier requests. The first set of subpoenas mirrored the requests that had been served on December 3, 2020. These subpoenas, served on February 10 and 11, had a return date of February 18 because they were initially served almost 60 days earlier and the Judges represented by the Attorney General's Office had already served objections and responses to the December 3 requests on January 4, 2021. Ex. 6 (Felony Judges' Objections and Responses to Plaintiffs' Section Requests for Production). The second set of subpoenas mirrored the document requests served on the Judges in July 2020. These subpoenas, served on February 22, had a return date of March 1, 2021, because the Judges had completed production on the July 2020 requests and had stated on

---

[8] On February 10, Plaintiffs served Rule 45 document subpoenas on Judges Gray, Lacayo, Silverman, and Warren. On February 11, Plaintiffs served Rule 45 document subpoenas on Judges Aguilar, Anastasio, D. Jones, Franklin, Glass, Harmon, H. Jones, Hill, K. Johnson, Luong, Martin, McClure, Morton, Powell, Ritchie, R. Johnson, Roll, Thomas, and Unger. Plaintiffs served a Rule 45 deposition subpoena on Judge Ritchie, along with nine deposition notices on employees of the County and Sheriff. Plaintiffs later served an amended deposition subpoena on Judge Ritchie, and served deposition subpoenas on Judges B. Warren, D. Jones, K. Johnson, and R. Franklin.

October 12, 2020 that they would produce a privilege log by January 29, 2021. Ex. 2 (Oct. 10, 2020 email from C.Corbello to J.Grinstein).[9]

On February 22, counsel for the Judges stated that the Judges would not produce a privilege log and would move to quash the subpoenas. *See* Dkt. 411-8. On February 23, during a previously scheduled status conference, the Court scheduled a discovery conference for March 1 to address discovery disputes that had arisen between Plaintiffs and the Felony Judges in an attempt to resolve those disputes and avoid motion practice. Dkt. 408.

Plaintiffs substantially narrowed their requests to address the Judges' complaints. On February 24, Plaintiffs conferred with the Judges and the County regarding the scope of the subpoenas and agreed to serve a subset of the requests on the County and Sheriff, and to ask the Defendants to search for responsive documents that could be expected to be in their custody as well as in that of the Judges. Plaintiffs proposed a search protocol intended to substantially limit the documents the Judges would have to produce. Dkt. 411-5 at 1–4. Plaintiffs also proposed alternative, narrower search terms than the ones the Judges originally used. Ex. 7 (Feb. 24, 2021 Amended Search Protocol). Using their own search terms, the Judges estimated having to review approximately 90,165 documents, totaling approximately 315,578 pages. Dkt. 413-6 (Affidavit of Adrian Skinner) ¶¶ 5–7. Using Plaintiffs' proposed search terms, the Judges now estimate having to review approximately 11,018 documents totaling approximately 38,563 pages. Dkt. 434 ¶ 13.

Also on February 25, the Court rescheduled the discovery conference for Wednesday, March 3 and ordered the parties to submit preconference letters by March 1, 2021. On March 1, the Felony Judges filed an opposed motion for a one-week extension to file pre-motion letters and

---

[9] Plaintiffs served these subpoenas to ensure the Court would have jurisdiction to resolve disputes arising from the identical requests served in July 2020, including requiring the Judges to produce a privilege log.

an extension to March 10 for the discovery conference, stating that the Attorney General's office had not been able to download all of the data needed to run the searches on the Judges' emails, and, thus, they could not determine the extent of the "burden" imposed by Plaintiffs' requests. Dkt. 410; Dkt. 411; Dkt. 411-1. The next day, March 2, the Court extended the Felony Judges' deadline to submit their preconference letter to Tuesday March 2, and confirmed the March 3 date for the discovery conference. Dkt. 412. Also on March 2, the Judges filed their motion to quash, citing a preliminary estimate of "hundreds of thousands" of documents that they now acknowledge is approximately 11,000. Dkt. 413 at 6; Dkt. 413-1; Dkt. 434.

Among the issues raised in the Judges' motion was Plaintiffs' purported failure to comply with the technical requirements of Rule 45. Specifically, counsel for the Judges complained that Plaintiffs had not personally served her clients and had not tendered witness fees for the depositions. Dkt. 413 at 8–11. On March 3, although the motion to quash had already been filed, the Court held the previously scheduled discovery hearing. At the hearing, the Court set a deadline of March 24 for Plaintiffs to respond to the Judges' motion to quash, *see* Dkt. 427; *see also* Dkt. 440 (extending the deadline to March 31, 2021 and setting a hearing for April 9, 2021). Additionally, Plaintiffs agreed to cure the technical violations by personally serving the Judges who preferred to be personally served and to tender witness fees at the time of service. The Court set a deadline of March 16 for the Felony Judges to file supplemental affidavits in support of their motion to quash. Dkt. 423. The Judges filed those affidavits as instructed. Dkt. 433 (Affidavit of Courtney Corbello); Dkt. 434.

On March 17, 2021, Plaintiffs personally served a Rule 45 document subpoena on Judge Robert Johnson, and on March 20, Plaintiffs personally served Judge Te'iva Bell. These two judges did not authorize counsel to accept service by email. *See* Ex. 8 (Mar. 5, 2021 email from J.Stein to

C.Corbello); Ex. 9 (Mar. 14, 2021 email from C.Corbello to J.Stein); Ex. 10 (Proof of Service on

R.Johnson and T.Bell); Ex. 39 (Plaintiffs' Mar. 19, 2021 Pre-motion Letter). Attached to the

subpoenas were the document requests previously served by email on February 11 and February

22. Ex. 11 (copies of subpoenas personally served on R.Johnson and T.Bell). On March 18, 2021,

Plaintiffs re-served the Rule 45 document subpoenas previously served on February 11 and

February 22 by e-mail on the other Felony Judges represented by the Attorney General's Office[10]

and attached a protocol governing the production of electronically stored information, to which

the Felony Judges had previously agreed. Ex. 12 at 2–1281 (copies of subpoenas electronically

served on Felony Judges on Mar. 18, 2021). On March 18, Plaintiffs also served deposition

subpoenas on Judges DaSean Jones, Ramona Franklin, Kelli Johnson, and Herb Ritchie by email

to counsel. *Id.* at 1282–93. On March 19, Plaintiffs tendered the $40 witness fees for each of the

four deponents by mailing checks to counsel, per counsel's request. Ex. 13 (FedEx receipt for

witness fees delivered to C.Corbello); Ex. 14 at 2 (Mar. 22, 2021 email from C.Corbello to

E.Rossi). The document and deposition subpoenas served on March 17 and 18 are the operative

Rule 45 subpoenas and the subject of the Motion to Quash.[11]

## II.    Standard of Review

In determining whether to quash or modify a Rule 45 subpoena for documents or testimony,

the Court must consider whether the subpoena "(i) fails to allow a reasonable time to comply; (ii)

requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires

disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects

---

[10] Judges Aguilar, Anastasio, D. Jones, Franklin, Gaido, Glass, Harmon, H. Jones, Hill, K. Johnson, Luong, Martin, Martinez, McClure, Morton, Powell, Ritchie, Roll, Thomas, and Unger.

[11] Because Judge Te'iva Bell is no longer represented by the Attorney General's office, Plaintiffs presume she is no longer a party to the Motion to Quash.

a person to undue burden." Fed. R. Civ. P. 45(d)(3); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004). "The moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Wiwa*, 392 F.3d. at 818 (cleaned up). In determining whether a subpoena that is burdensome is nevertheless reasonable, the Court must consider "the facts of the case," including "the party's need for the documents and the nature and importance of the litigation." *Id.* (citation omitted) The following factors are relevant to determining whether a subpoena poses an "undue burden": "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* For non-party subpoenas, "the court may also consider the expense and inconvenience to the non-party." *Id.*[12]

### III.    The Subpoenas Comply with Rule 45

The Felony Judges move to quash Plaintiffs' subpoenas under Rule 45, raising substantive and technical arguments. They assert, among other things, that the documents and testimony Plaintiffs seek would pose an undue burden, primarily because the information sought lacks relevance and is protected by the deliberative process privilege. They further complain that Plaintiffs should have personally served the Felony Judges (instead of serving them by e-mail) and should have tendered witness fees for the as-yet-unscheduled-and-vigorously-opposed depositions at the time of service. The Judges' substantive objections fail, and Plaintiffs have cured any asserted technical violations, *see* Exs. 10, 13, 14, which lacked merit in the first place.

---

[12] A district court's discovery rulings will be affirmed unless they are "arbitrary or clearly unreasonable." *United States v. Butler*, 429 F.3d 140, 148 (5th Cir. 2005).

11

### A.  The Subpoenas Do Not Pose an Undue Burden

The Felony Judges act together as a group to set policies governing post-arrest release and detention decisions, including: which categories of people arrested are detained until an Article 15.17 hearing; the content of the forms Hearing Officers fill out at bail hearings; whether and to what extent the Public Defender's Office can represent people at bail hearings; whether arrestees receive procedural protections at Article 15.17 hearings and which ones; and the factual circumstances that must exist before a Hearing Officer can impose an unaffordable bail amount resulting in pretrial detention. For decades, the Judges issued explicit, written instructions to Hearing Officers about which categories of people arrested for felonies the Hearing Officers could consider releasing on a personal bond. After the *ODonnell* litigation increased scrutiny of the entire bail system, the Felony Judges purportedly withdrew those explicit instructions, though the County's corporate representative and Hearing Officer Jennifer Gaut testified last week that preferences and implicit instructions communicated informally by the Felony Judges continue to play a role in the Hearing Officers' bail decisions.[13] The Judges have continued to exercise their

---

[13] *See* Ex. 15 at 56–57 (Transcript, Rule 30(b)(6) Deposition of Harris County, Alex Bunin as corporate representative, March 15, 2021, at 174:3–175:5) (Q: "[T]here are some cases in Harris County in which a hearing officer will not consider a PR bond?" A: "Yes." Q: "And is that based on instruction from the felony judges?" A: "I don't know of explicit instructions to those magistrates." A: "So can you explain . . . ?" Q: "[W]hen persons are released, judges can do, like I was discussing, can revoke them. And those actions become known to the criminal law hearing officers and they realize that, in those types of cases, letting folks out is not going to be sustained by the presiding judge. And so to stay, you know, within what they believe those judges want, they're going to keep people in custody rather than do something that's going to be overruled the next day."); Ex. 15 at 39 (Harris County Rule 30(b)(6), at 119:7–11) ("[A]t times there have been explicit instructions, but there has – a culture has developed over time that you don't have to be told exactly to know that [a personal bond is] not favored."); Ex. 16 at 18–19 (Transcript, Deposition of Jennifer Gaut (draft), March 23, 2021, at 151:6—152:9) (Q: "In your time as a hearing officer have you ever received instructions from any of the felony judges about how to set bail?" A: "[N]o judge has ever reached out to me and asked me to do or not do something in regards to either a particular defendant or a prticular kind of case. However, for several months beginning in the summer of 2020 . . . when defendants would get arrested on felony arrest warrants . . . [J]udge Ramona Franklin was . . . setting the bail amount at zero and doing a court directive that

control even as this case has been pending, including by defining categories of arrestees who qualify for automatic release before an Article 15.17 hearing.[14] They have even threatened the Sheriff with contempt for failure to comply with their policies.[15] In short, for years, the Judges have issued orders,[16] acquiesced in customs, and failed to remedy egregious constitutional violations through the exercise of their control over most aspects of the post-arrest process.

Importantly, Plaintiffs are not concerned only with the Hearing Officers' bail decisions. They are also challenging Defendants' enforcement of the bail decisions Judges issue in their own courtrooms, as well as the pre-hearing detention that happens pursuant to the Judges' bail schedule *prior* to the magistration hearing. The documents and testimony Plaintiffs seek are relevant to all of these issues and will show that the Judges have the authority to promulgate and comply with constitutional rules and policies, and that they refuse to do so. The Judges' reasons for and evidence relating to their policies and practices are critical to proving that they are constitutional. Indeed, in *ODonnell*, testimony from the misdemeanor Judges featured prominently in this Court's findings.

---

said the bail amount had been set at zero. This was before a person had come into custody, you know, before they had a lawyer without a bail hearing. So then when the person would get arrested on that arrest warrant, their case would appear on our docket because it's a new arrest warrant. But I did not feel that I had the authority to change that bail amount or approve that person for a personal bond because the Court had already issued a court directive setting bail at zero.").

[14] Ex. 17 (Felony Judges' General Order Bond); Ex. 18 (Felony Judges' Amended General Order Bond).

[15] Ex. 19 (Order To Disregard Directive by Harris County Judge, signed by Administrative Judge Herb Ritchie); Ex. 20 at 5–7 (Transcript, Deposition of Sheriff Ed Gonzalez (Draft), March 29, 2021, at 53:11–55:11) (testifying that he was required to comply with Judge Ritchie's order under pain of contempt).

[16] Ex. 21 (2006 Direct Filing Order); Ex. 22 (Joint Administrative Order No. 2017-01: Order Appointing Public Defender for Art. 15.17 Bail Hearings); Ex. 23 (March 2017 Recommended Standard Bail Practices); Ex. 24 (Harris County Felony Bond Schedule, Effective 7/29/2017; 8/22/2017); Ex. 25 at 37–38 (Transcript, Deposition of Courtney St. Julian as Harris County corporate representative under Rule 30(b)(6) and in her individual capacity, at 184:17–185:10); Ex. 16 at 34 (Gaut at 226:6–14); Ex. 15 at 60. (Harris County Rule 30(b)(6) at 179:11–15).

*See ODonnell v. Harris Cnty., Texas*, 251 F. Supp. 3d 1052, 1103, 1105, 1110 & 1126 n.74 (S.D. Tex. 2017).

As this Court correctly characterized Plaintiffs' position, "the remaining claims that are before us concern the authority and the actions of enforcement officials, but they are enforcing the orders that result from the rules and approaches and procedures of the felony judges, and that is your relevance basis." Ex. 26 at 4 (Transcript of Mar. 3, 2021 hearing at 22:12–16). Indeed, the Felony Judges' own motion concedes they are policymakers. *See* Dkt. 413 at 15 (arguing that the requested discovery contains "research, discussion and/or communication regarding the formulation of *judicial policies*") (emphasis added); *see also* Dkt. 181-1 (Memorandum in Support of Judge Chuck Silverman's Motion to Intervene) ("The criminal district court judges have full discretion consistent with state and federal law to determine policies relating to post-arrest release and detention."). Plaintiffs cannot obtain the evidence they seek from other sources. Any burden on the Judges is proportional to the needs of this case.

### 1.     The Judges Possess Highly Relevant Documents and Information

The Felony Judges' main undue-burden argument is that the information Plaintiffs seek is "unnecessary" because Plaintiffs' claims fail on the merits. Dkt. 413 at 17–18 (arguing that the Fifth Circuit rejected Plaintiffs' substantive due process claim in *ODonnell* and, therefore, any discovery requests "designed to prove a substantive due process claim are unnecessary and unreasonable"). But this Court recognized in a non-vacated portion of its decision denying the motions to dismiss that "[d]istrict courts in and out of the Fifth Circuit have [] concluded that pretrial liberty is a fundamental right that requires the application of strict scrutiny." Dkt. 326 at 51; *see United States v. McKown*, 930 F.3d 721, 726 (5th Cir. 2019) ("Because commitment for any purpose constitutes a significant deprivation of liberty, the government must advance a sufficiently compelling interest to justify pretrial detention.") (quotations omitted); *see also In re*

*Humphrey*, --- P.3d ---, 2021 WL 1134487, at *1 (Cal. Mar. 25, 2021) (holding under the federal Constitution that pretrial detention requires a finding "by clear and convincing evidence that no condition short of detention could suffice"). This Court further held that "[e]ven if the state intervenors and felony judges are correct that rational-basis scrutiny applies . . . the court would still deny their motions to dismiss under Rule 12(b)(6)." Dkt. 326 at 52. Thus, the Judges' disagreement with the Court's view of the merits of Plaintiffs' claims is no reason to deny discovery.

Even on the Judges' own terms, the discovery Plaintiffs seek is relevant. They assert that Plaintiffs' only potentially viable legal challenges are to the County's and Sheriff's ongoing violations of *ODonnell*. Dkt. 413 at 19. As this Court recognized, Plaintiffs do allege ongoing violations of *ODonnell*. *See* Dkt. 326 at 47–48 ("[Plaintiffs] allege that they are not receiving the protections found necessary in *ODonnell I*, including an opportunity to be heard and present evidence, a reasoned decision by the decisionmaker, and individual consideration for each arrestee of whether [an affordable bail] amount or [nonmonetary] condition provides sufficient sureties.") (quotation omitted). And the Judges' policies and practices—including those that apply before, during, and after the Article 15.17 hearing, and those they apply in their own courtrooms—are critical to proving that the Defendants are violating *ODonnell*.[17]

---

[17] The Judges assert repeatedly in their objections to Plaintiffs' document requests that there is no "allegation left in this case that the Felony Judges act unconstitutionally in imposing a bail schedule," and "no claim left in this case regarding actions taken by the Felony Judges or the constitutionality of the bail practices they engage in within their own courtrooms." Dkt. 413 at 27–35. That is wrong. The Judges are no longer Defendants, but that does not mean Plaintiffs concede their conduct is constitutional. Rather, Plaintiffs seek relief from the *enforcement* actors, and to enjoin them, this Court still must hold that the Judges' conduct—including the bail schedule and their practices in their own courtrooms—violates the Constitution.

For example, orders from the Felony Judges have resulted in arrestees at the Article 15.17 hearing, through their public defenders, being prohibited from making arguments about probable cause and the strength of the state's evidence and at least one Hearing Officer refusing to consider release on personal bonds in certain cases. Ex. 15 at 8–15 (Harris County Rule 30(b)(6) at 42:3— 49:8); Ex. 16 at 19 (Gaut at 152:3–9). Additionally, witnesses, videos, and documents have confirmed that arrestees are sometimes not present physically at their Article 15.17 hearing. The County explained at deposition that, in those cases, the misdemeanor judges have authorized the Public Defender's Office to represent misdemeanor arrestees but the Felony Judges have not authorized the PDO to represent felony arrestees. Ex. 15 at 42–44 (Harris County 30(b)(6) at 124:21—126:2).[18] Thus, when a person arrested for a felony offense is not present at the bail hearing, the person typically has no procedural protections, no counsel, and a personal bond is unlikely. Ex. 25 at 12–13 (St. Julian at 125:10–126:2) (stating that she might issue a personal bond to someone who has a low risk score and no or little criminal history who is not present, but if there is anything that raises a "red flag" such as a higher risk score, she would need more information that would be unavailable without counsel). If a person who misses their 15.17 hearing is still in the medical or mental health unit at the time of the first appearance before a Felony Judge, the judge will decide whether and when to set another bail hearing. *See* Ex. 34 at 11–12 (Transcript, Rule 30(b)(6) Deposition of the Harris County Sheriff's Office, Mar. 10, 2021, at 154:23–155:7). The County further testified that Felony Judges routinely revoke bonds at first appearance without providing notice, a lawyer, or any findings on the record. Ex. 15 at 51–53 (Harris County 30(b)(6) at 168:12—170:17). Thus, even on the Judges' narrow—and wrong—view of the legal issues in

---

[18] Plaintiffs initial review of documents produced in discovery indicates that felony arrestees are absent from 15.17 hearings in approximately 1,500–2,000 cases each year. Ex. 27 (Declaration of Cole Lautermilch).

this case, Plaintiffs are entitled to documents and testimony from the people responsible for these policies and practices: the Judges.

Next, the Judges assert that "Plaintiffs have yet to support any of their conclusory statements that the Felony Judges cause . . . their alleged harms," Dkt. 413 at 19, as though Plaintiffs are required to produce evidence of their claims in order to be entitled to the discovery needed to prove their claims.[19] First, Plaintiffs *have* offered documentary and testimonial evidence showing that the Judges cause people arrested for felonies to be detained in violation of their constitutional rights, including, for example: (1) the felony bail schedule which requires the pre-hearing detention of those who cannot afford the pre-determined secured bail amount, Ex. 24 (*see* Dkt. 1-4); (2) an Order appointing the Public Defender's Office ("PDO") to represent people at Article 15.17 hearings but failing to clearly authorize the PDO to make arguments relating to probable cause and the strength of the state's evidence, Ex. 22 (*see* Dkt. 259-4); (3) a Direct Filing Order from 2006, stating that "[t]he criminal law hearing officer shall set bail in accordance with the Bail Schedule established by the Board of District Judges Trying Criminal Cases." Ex. 21 at 5 (*see* Dkt. 259-6); (4) written testimony from Chief Public Defender Alex Bunin and the PDO's

---

[19] The only case the Judges rely on to support their view that Plaintiffs must produce evidence before obtaining further evidence is an unpublished decision from this Court, which is readily distinguishable. *See* Dkt. 413 at 19 (citing *Doe v. Catholic Society of Religious and Literary Educ.*, Civil Action No. H-09-1059, 2009 WL 4506560 (S.D. Tex. Dec. 3, 2009)). In *Doe*, the motion to quash *non-party* subpoenas was granted based on noncompliance with the technical requirements of Rule 45. *Id.* at *1. The portion of the opinion the Judges rely on addresses a *party* subpoena under Rule 26. The Court quashed that subpoena at a different stage of proceedings—after a summary judgment motion had been filed—because the plaintiff's purported basis for taking the deposition ("to question [defendant] about the organizational relationship between the Province and Strake Jesuit") was undermined by "competent evidence" in the record "that the Province does not own, operate, or control Strake Jesuit or have any involvement with hiring lay faculty at the school." *Id.* Here, Felony Judges have offered no evidence that the documents and testimony Plaintiffs seek will *not* lead to relevant evidence, and even if Plaintiffs were required to meet some evidentiary burden to justify the need for further evidence, they have done so.

General Counsel that Judges routinely fail to provide bail hearings at all, and when they do provide them, they occur after two-to-four weeks of detention and typically are not on-the-record, Exs. 28–32 (*see* Dkts. 127-1, 76-1, 74-1, 66-5, 32-4); and (5) written testimony from Chief Public Defender Alex Bunin that Judges routinely "revoke bonds and detain people who have been released after arrest and who appear in court as required, with no notice or individualized hearing to determine whether detention serves any government purpose," Ex. 30 ¶ 27. These documents are sufficient to show that the Judges control the system and play a significant role in causing Plaintiffs' harm.

And Plaintiffs have adduced further evidence of the Judges' control over the post-arrest process during depositions in the past three weeks, including:

- The bond amounts on the charging documents are determined using a bail schedule promulgated by the Criminal District Court Judges, possibly in connection with the District Attorney's Office. Ex. 15 at 21 (Harris County 30(b)(6) at 73:4–16); *see also* Ex. 16 at 4 (Gaut at 27:7–14) ("[M]y understanding is that it was from the felony district court judges[.] . . . And my understanding is that it was also in connection with the district attorney's office.").

- The Sheriff testified that the Harris County Sheriff's Office ("HCSO") must follow the Judges' policies, including the bail schedule and the General Order Bonds. Ex. 20 at 28 (Gonzalez at 88:15–25) (A: "We follow the directives of the judges."; Q: "So if the schedule provides for a certain level of bond . . . are you obliged to release a defendant who posts that level of bond . . . per the schedule?" A: "Yes."); *Id.* at 30 (Gonzalez at 90:12-15) (Q: "[I]s the Sheriff's Office obliged to follow the provisions of the General Order Bond?" A: "Yes."); *Id.* at 30 (Gonzalez at 90:22–91:21) (testifying that the Judges make decisions regarding the timing of court proceedings, whether an arrestee is transported from the jail to the courthouse, and whether an arrestee who is transported to the courthouse remains in the lock-up outside of the courtrooms).

- Pursuant to the General Order Bond, issued by the Felony Judges, the Hearing Officers do not have discretion to impose a secured bail amount on someone who is eligible for release on a General Order Bond. Ex. 16 at 28 (Gaut at 187:19–22); Ex. 25 at 34 (St. Julian at 181:14–18).

- If the Judges defined the phrase "crime of physical violence," as used in the Amended General Order Bond, the Public Defender's Officer "would follow it. Or contest it and appeal it; but we would not ignore it." Ex. 15 at 26 (Harris County 30(b)(6) at 84:2–19).

18

- The Judges control the content of the financial affidavit used at the Article 15.17 hearing. Ex. 33 at 9–10 (Transcript, Rule 30(b)(6) Deposition of Pretrial Services, March 11, 2021, at 131:22–132:3); *but see* Ex. 25 at 7–9 (St. Julian at 85:18–87:8) (testifying that she did not know who decided on the content of the financial affidavits); Ex. 15 at 18 (Harris County 30(b)(6) at 61:10–16) (testifying that the County assumes the language on the financial affidavits must be approved by the Felony Judges, but "I'm not sure I know the answer[.]").

- The Hearing Officers and Judges "traditionally . . . expected that if someone were to commit a new offense or abscond while they were under the supervision of a court, then it's up to that court to decide whether they should be released or not," and that that person would not be "eligible to get released" at the 15.17 hearing. Ex. 15 at 28–30 (Harris County 30(b)(6) at 86:25–88:22).

- "Each . . . judge has their own policies" that the Sheriff's Office must follow regarding virtual hearings. Ex. 34 at 7–8 (HCSO 30(b)(6) at 120:21–121:4).

Thus, assuming the Judges are correct that Plaintiffs must meet some evidentiary threshold to demonstrate that a non-party has evidence relevant to Plaintiffs' claims, Plaintiffs have done so.

The Judges' reliance on the Hearing Officers' Interrogatories misses the point. *See* Dkt. 413 at 19 n.7. This case is not about whether Judges micromanage the specific outcomes of bail hearings in front of Hearing Officers—though they did that explicitly for years. *E.g.*, Ex. 25 at 37–38 (St. Julian at 184:17–185:10); Ex. 16 at 226 (Gaut at 226:6–14); Ex. 15 at 60 (Harris County 30(b)(6) at 179:11–15). This case is about the Judges' failure to exercise their rulemaking authority to promulgate policies and procedures that would ensure that felony bail orders comport with the federal Constitution, and their failure to follow the Constitution when setting bail in their own courtrooms. Multiple witnesses have testified that the Judges have the authority to promulgate constitutional rules and policies.[20] Thus, the Hearing Officers' interrogatory responses do not

---

[20] *E.g.*, Ex. 25 at 17 (St. Julian at 149:1–8 (stating that she would adhere to "this type of rule [like misdemeanor Rule 9] in felony cases" if such a rule "were issued and those rules were [] found to be constitutional"); Ex. 16 at 11 (Gaut at 90:5–9) (Q: "If the felony judges instructed you to make that specific factual finding about one's ability to pay, would you comply with that instruction?" A: "Of course."); *id.* at 14 (Gaut at 140:9–141:9) (stating that she would comply with an order from the Felony Judges to make findings by clear and convincing evidence that less-restrictive

19

weaken Plaintiffs' arguments or the need for evidence from the Judges one bit. In combination with deposition testimony and documents, all they show is that the system changed after the *ODonnell* litigation: Judges stopped issuing explicit, written instructions, and Hearing Officers understood that their ethical obligations require them to make decisions on a case-by-case basis.

### 2. The Discovery Plaintiffs Seek Is Not Duplicative, and Cannot Be Obtained from Another Source

The Judges further assert that Plaintiffs can obtain all of the information they seek in these subpoenas from the County and Sheriff Defendants. Dkt. 413 at 20–21. That is wrong. Several of the most important facts Plaintiffs seek to prove are (1) that bail orders resulting in felony arrestees' pretrial detention due to inability to pay—whether those orders are issued before the Article 15.17 hearing, following that hearing, or by the Felony Judges in their own courtrooms—are issued without the factual findings and procedural protections the Constitution requires, and (2) that the Felony Judges possess, and routinely exercise, the authority to promulgate post-arrest rules and policies. To prove those facts, Plaintiffs must have documents and testimony from the Judges explaining current and past written policies and unwritten customs governing the post-arrest process, including why they were implemented, amended, or rescinded, and pursuant to what authority—explanations that, to date, other deponents have been unable to fully provide.

The following are just a few examples of the questions that remain unanswered after depositions of the County's and Sheriff's witnesses:

---

conditions are inadequate because it would be "a court order"); Ex. 33 at 4–6 (Pretrial Services 30(b)(6) at 69:2–71:1–4) (testifying that Pretrial Services only interviews people arrested on new charges, as opposed to, for example, motions to adjudicate or motions to revoke; that Pretrial Services could change its practice and interview other arrestees; but that such a policy change would require input from the Felony Judges); *id.* at 13 (Pretrial Services 30(b)(6) at 177:10–25) (testifying that the Judges and the District Attorney's Office developed the language of the recommendations produced by the Public Safety Assessment, and the language could not be changed without the Judges' input).

- Although the County testified that the Felony Judges promulgated the bail schedule, Ex. 15 at 23 (Harris County 30(b)(6) at 75:15–17), other deponents were unsure, *see* Ex. 34 at 4 (HCSO 30(b)(6) at 83:2–7) ("I have no knowledge of this particular form and how it was derived."); Ex. 33 at 16 (Pretrial Services 30(b)(6) at 197:4–9) ("I believe that this was created by . . . the Felony Court. I would have to verify that, though[.]"); Ex. 25 at 4 (St. Julian at 17:20–24) (Q: "Who promulgated the felony bond schedule?" A: "Yeah. I'm not certain. I was not part of any committee or group that put this information together.").

- Deponents were unsure whether the March 2017 Recommended Standard Bail Practices Order, signed by the Felony Judges (Ex. 23), is still in effect. *See* Ex. 16 at 22 (Gaut at 174:7–9) (Q: "Do you know whether this order is still in effect?" A: "I have no idea."); Ex. 15 at 33 (Harris County 30(b)(6) at 105:15–25) ("I don't know" whether the order is still in effect; "certainly the district judges" would know).

- Deponents were unable to explain which "documents" were rescinded by the March 2017 Order. Ex. 25 at 27 (St. Julian at 166:4–16) ("I can't say for certain[] what the intention behind this document or precisely if that's what it meant to replace those charts with."); *id.* at 27 (St. Julian at 166:17–19) (Q: "Who would know for sure what documents are being referenced here in this order?" A: "I would guess the judges that signed it."); *see also* Ex. 16 at 22 (Gaut at 174:17–20).

- Deponents' testimony was inconsistent as to whether the 2006 Direct Filing Order is still in effect. Ex. 15 at 36 (Harris County 30(b)(6) at 116:9–15) (testifying that the Order is still in effect); Ex. 25 at 14 (St. Julian at 127:1–12) (testifying that she is not familiar with the Direct Filing Order); Ex. 16 at 7–8 (Gaut at 52:22–53:1) (testifying that she does not know whether the Order is currently in effect).

- Deponents were unable to explain the meaning of the terms "average," "above average," and "below average," as used in the felony bail schedule, but stated that the judges were involved in developing that language. Ex. 15 at 47–48 (Harris County 30(b)(6) at 136:18–137:6); Ex. 33 at 19 (Pretrial Services 30(b)(6) at 208:14–21); Ex. 16 at 31 (Gaut at 204:14–17).

- Deponents' testimony was inconsistent as to whether the Judges control the content of the financial affidavit used at the Article 15.17 hearing. Ex. 33 at 9–10 (Pretrial Services 30(b)(6) at 131:22–132:3) (testifying that the Judges control the content); Ex. 25 at 8–9 (St. Julian at 86:17–87:8) (testifying that she did not know who decided on the content of the financial affidavits); Ex. 15 at 18 (Harris County 30(b)(6) at 61:10–16) (testifying that the County assumes the language on the financial affidavits must be approved by the Felony Judges, but "I'm not sure I know the answer[.]").

- When asked whether "the felony judges have any policies relating to court appearance for arrestees that the Sheriff's Office must follow," the corporate representative of the Sheriff's Office stated, "I'm not sure what their policies say. The Sheriff's Department's responsibility is if a judge would like to see somebody in a court, we will provide the

inmate to the place and time where the judge wants them. What the judges' policies are, I – I do not know." Ex. 34 at 7 (HCSO 30(b)(6) at 120:6–20).

- The Sheriff did not know why the Felony Judges had declined to make more use of the "underutilized" courtroom in the jail to address the backlog of cases and jail overpopulation. When asked, "Do you know why the felony judges haven't made more use of that particular courtroom?" the Sheriff stated, "No." Ex. 20 at 9–10 (Gonzalez at 57:9–58:3). The Sheriff also did not know why the Judges had failed to fully utilize the Zoom technology to conduct bail hearings. *Id.* at 13–21 (Gonzalez at 62:13–71:10).

- The Sheriff testified that Visiting Judges have been hired to assist with the backlog of cases, but he did not know whether those Judges were conducting bail hearings or only resolving cases. Ex. 20 at 25 (Gonzalez at 82:3–14).

- The Sheriff testified that he did not know why the Judges promulgated the felony bond schedule or the General Order Bonds, why the Judges decide to hold certain hearings at certain times, or what criteria the Judges use to decide whether to transport a person from the jail to the courthouse and whether to bring the person from the lockup into the courtroom. Ex. 20 at 29–32 (Gonzalez at 89:1–92:5).

There are numerous other factual questions regarding policies and practices that result in unconstitutional bail orders, about which the County's and Sheriff's witnesses have been unable to testify, and about which those witnesses testified they would expect the Judges to have answers.

Plaintiffs have also taken steps to protect against any duplicative document discovery. They negotiated a search protocol with the Judges, County, and Sheriff that will ensure the Judges are producing documents of which they are the sole custodians. Although Plaintiffs originally assumed the Judges would prefer to produce ESI that they sent or received, after the Judges explained that they would prefer the County and Sheriff produce documents that either originated with the Judges and were sent to County or Sheriff employees or were sent to the Judges by such employees, Plaintiffs served additional discovery requests on the County and Sheriff and divided the custodian list to ensure there would be no duplication and that the Judges would not be asked to produce documents that are also in a Defendant's custody. The Gaffney Affidavit asserts that certain documents are not in the Judges' control. Dkt. 413-10 ¶¶ 8, 9, 11. If that is correct, then of course

there is no need for the Judges to produce those documents. But Plaintiffs are entitled to responsive documents that *are* in the Judges' custody or control.

### 3.      2015 to the Present Is a Reasonable Time Period

The Judges complain that Plaintiffs should only be able to discover information about the "current" felony bail system, because Plaintiffs seek only prospective injunctive relief. Dkt. 413 at 24.[21] That is wrong. Plaintiffs must prove that the bail practices they challenge in this lawsuit—those that existed in January 2019—violate the Constitution. Evidence dating back to 2015 is highly relevant because Plaintiffs are challenging entrenched policies, procedures, and unwritten customs that have their origin in the 1990s and 2000s and were in place at least until the middle of 2017. Ex. 35 (Declarations of Hearing Officer Defendants in *ODonnell*) (Wallace ¶¶ 9–11; Hagstette ¶ 12; Villagomez ¶¶ 11–12, Licata ¶¶ 9–11; Nicholas ¶ 9).[22] Indeed, Harris County testified that the Felony Judges' Direct Filing Order from 2006 is still in effect today. Ex. 15 at 36 (Harris County 30(b)(6) at 116:9–18).

Moreover, multiple policies changed in the middle of 2017, including the introduction of: public defenders at bail hearings, the Public Safety Assessment, and the Felony Judges' current bail schedule. Plaintiffs are entitled to discovery about the origin of and reasoning for those and other policies. To understand those facts, Plaintiffs must be able to obtain information and testimony about the bail system *before* it began changing in 2016, when the *ODonnell* lawsuit brought scrutiny to the entire County. *See, e.g.*, Ex. 25 at 39–40 (St. Julian at 186:13–187:14) (Q:

---

[21] The Judges rewrite history in asserting that "[t]his Court previously recognized the time period of necessary discovery to be limited to only January 1, 2019 to the present." Dkt. 413 at 24. At that point in the case, Plaintiffs sought to move forward with discovery, which the Felony Judges opposed while the motions to dismiss were pending. The Court found good cause for narrow discovery requests given the posture of the case.

[22] These declarations were produced pursuant to this Court's Order (ECF No. 376) in *ODonnell*. Ex. 35 (Feb. 23, 2018 email from P.Morgan transmitting the declarations in Ex. 34).

"Now, what caused you to reconsider your obligations as a hearing officer?" A: "Well, multiple things. Mostly the [*ODonnell*] lawsuit. . . . It really did unfortunately take litigation to kind of open my eyes to the fact that . . . there are [] ways that this can be done, better ways, more constitutional ways."); Ex. 15 at 5 (Harris County 30(b)(6) at 31:18–21) (Q: "So the [*ODonnell*] lawsuit played a role in precipitating the policy decision to fund the lawyers at bail hearings?" A: "I believe it did."). It is important for Plaintiffs to be able to prove how the system worked for years prior to any changes that were precipitated by litigation and increased scrutiny. Considering that at least one policy from 2006 is likely still in effect; that the *ODonnell* lawsuit precipitated significant changes to the system beginning in 2016; and that written instructions from Judges to Hearing Officers prohibiting personal bonds in certain cases were not even purportedly rescinded until 2017, a time frame of 2015 to the present is not only reasonable but modest.

### 4.      Each of Plaintiffs' requests for production is narrowly targeted to adduce evidence relevant to their claims

In Appendix 1, Plaintiffs have reproduced their requests for production followed by a brief explanation of the relevance of each and, to the extent not addressed elsewhere in the brief, responses to the Judges' objections as set forth in their motion. *See* Appendix 1.

In addition to these Requests for Production, Plaintiffs have served deposition subpoenas on former Administrative Judge Herb Ritchie, current Administrative Judge Kelli Johnson, Judge DaSean Jones, and Judge Ramona Franklin. While Plaintiffs expect the written materials to provide evidence of the Judges' control of the post-arrest system and implementation of unconstitutional bail practices, documents and testimony adduced so far in discovery indicate that many of the Judges' policies and directives were unwritten, and even written policies were conveyed orally. *E.g.*, Ex. 25 at 20–21 (St. Julian at 154:14–155:7) (testifying that she never saw the Judges' 2017 order appointing the PDO to represent people at bail hearings but instead learned

of the policy change by "word of mouth"); *supra* note 13. Moreover, numerous witnesses have already testified that only the Judges would possess answers to certain questions at the heart of Plaintiffs' claims. *Supra* Part III.A.2. Depositions are not only relevant, but necessary to capture that information.

### 5. Deliberative Process Privilege Is No Basis for Quashing the Subpoenas

The Felony Judges' generalized and conclusory assertion that the requested discovery is protected by the deliberative process privilege is both insufficiently specific and a mischaracterization of the privilege.

The Felony Judges bear the burden of establishing the applicability of the deliberative process privilege. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability."). Federal Rule of Civil Procedure 26(b)(5) requires a party withholding otherwise discoverable material on the basis of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Moreover, "compliance with Rule 26(b)(5) is 'usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter[.]' " *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.431 (1995)). The Fifth Circuit has explicitly rejected generalized assertions of privilege like those the Felony Judges raise here, instead requiring particularized, document-by-document justifications. *See United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991) (The defendant "has never indicated any document from the seized file which constituted a communication or described a communication between herself and her attorney."); *see also United States v. El Paso Co.*, 682 F.2d 530, 539 (5th

Cir. 1982) ("[T]he attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents.") (internal citations omitted); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 n.7 (5th Cir. 2001) ("[T]he privilege claimant's burden extends to proof of preliminary facts showing that the matter is eligible for protection").

Likewise, conclusory assertions are insufficient to satisfy the withholder's burden. *See Rodriguez*, 948 F.2d at 916; *see also Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264, 1270 (D.C. Cir. 2018) ("Nor is it sufficient to offer as support privilege logs with bare, conclusory assertions that the listed communications were made for the purpose of securing legal advice."); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984) (stating that the burden is not "discharged by mere conclusory or ipse dixit assertions" (internal citations omitted)); *Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258-RET-DLD, 2009 WL 854358, at *3 (M.D. La. Mar. 30, 2009) ("[T]he burden of the party withholding documents cannot be discharged by mere conclusory assertions.").

The Felony Judges do not "describe the nature of the [withheld materials]." *See* Fed. R. Civ. Pro. 26(b)(5); Dkt. 413 at 15. Nor have they produced a privilege log. *See* Dkt. 413 at 26 n. 13 (conceding Felony Judges have yet to complete a privilege log). They make no reference to any responsive documents at all, let alone sufficient information about each responsive document that would enable the Court to assess the applicability of the privilege. *See In re Santa Fe Int'l Corp.*, 272 F.3d at 710. Instead, the Felony Judges respond categorically with the conclusory contention that Plaintiffs' requests "seek information clearly covered by the deliberative process privilege . . . [because they] make requests for documents that are so broad they require the disclosure of research, discussion and/or communication regarding the formulation of judicial policies." Dkt. 413 at 15. Yet just as "[s]imply labeling communications as 'legal advice' is conclusory and

inadequate to satisfy the privilege-proponent's burden," labeling them as "requir[ing] the disclosure of research, discussion and/or communication regarding the formulation of judicial policies" fails to justify withholding materials under the Deliberative Process Privilege. *Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 963405, at *3 (E.D. Tex. Mar. 15, 2021). Thus, even as a threshold matter, the Felony Judges have failed to assert the Deliberative Process Privilege with adequate specificity. On that basis alone, their claim of privilege should be denied.

Second, the sole (hypothetical) example provided by the Judges of what material they argue would be protected by the deliberative process privilege—a response to Request for Production Number 9—shows that the privilege does not support quashing these subpoenas. *See* Dkt. 413 at 15. "[T]he deliberative process privilege is a qualified privilege, to be applied as narrowly as possible, consistent with efficient administrative operations." *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 43 (N.D. Tex. 1981); *see also Cain v. City of New Orleans*, No. CV 15-4479, 2017 WL 894653, at *3 (E.D. La. Mar. 7, 2017) (similar). To qualify for protection, "the discovery sought must be both deliberative and predecisional." *Swanston v. City of Plano, Texas*, No. 4:19-CV-00412, 2020 WL 4732214, at *2 (E.D. Tex. Aug. 14, 2020). In short, the privilege "protect[s] the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on the frank discussion of legal or policy matters in writing." *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (internal quotation marks omitted).

The privilege has no bearing on the materials requested in RFP 9 because it requests only factual and investigative material, which the privilege does not protect. *See id. at* 38 ("[T]he privilege protects predecisional materials 'reflecting deliberative or policy-making processes,' but not materials that are purely factual."); *see also Env't Prot. Agency v. Mink*,

410 U.S. 73, 89 (1973) (confirming that deliberative process applies to "materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other."). RFP 9 requests "documents reflecting any Felony Judge's inquiry into any felony arrestee's ability to pay and/or reflecting a felony arrestee's financial information and ability to pay . . . ." This information is "purely factual" and "investigative," *Env't Prot. Agency* 410 U.S. at 89—it is not related to "predecisional advisory opinions." *Skelton* at 38. RFP 9 does not request any information that would even arguably be protected under the deliberative process privilege. Therefore, even if the Judges had met their burden to assert the privilege in a particularized and non-conclusory way, their request to withhold discovery under the privilege should be denied.[23]

In similar cases involving challenges to money bail systems, courts have denied motions to quash based on the deliberative process privilege and have authorized plaintiffs to depose Judges about their policies and practices. *McNeil v. Comm. Prob. Servs.*, 2019 WL 5958332, at *3 (M.D. Tenn Jan. 7, 2019) (denying motion to quash because "Plaintiffs' limited inquiry into the procedures used by the judges to determine monetary conditions of release does not necessarily implicate the deliberative-process privilege."); *Cain v. City of New Orleans*, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016) (denying blanket protective order to judge asserting deliberative process privilege; noting that the judicial privilege is construed as "qualified" and, in any event, does not apply to "administrative, rather than judicial, decision-making").

### 6. The Judges' Other Arguments Fail

First, the Judges complain that they must review "315,578 pages of documents." Dkt. 413 at 26. As this Court stated, that number is "a big number compared to . . . fewer documents, but it

---

[23] Without a privilege log, Plaintiffs cannot respond to the Felony Judges' blanket invocations of the deliberative process privilege with respect to Plaintiffs' other document requests.

is not, in itself horrifying." Ex. 26 at 7 (Tr. Hrg. Mar. 3, 2021 at 26:19–21). In any event, the Judges have revised that number downward and now estimate having to review approximately 11,018 documents and 38,563 pages. Dkt. 434 ¶ 13. Moreover, although the Judges assert that "[i]t is difficult to imag[ine] an exercise" that interferes more significantly with "public administration," Dkt. 413 at 6, the Judges have not offered any evidence that Plaintiffs' discovery requests have in fact burdened them in any way. Instead, they have offered affidavits from counsel and counsel's support staff. *See Wiwa*, 392 F.3d. at 818 ("The moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.") (cleaned up). Given how crucial information from the Judges is to Plaintiffs' claims, producing approximately 11,000 documents is proportional. Moreover, the Judges estimate that only about 200 of those documents are from 2015, 2016, and 2017. Ex. 37 (Mar. 19, 2021 email from C.Corbello to E.Rossi). Especially in light of the Rule 502(d) Order this Court entered, Dkt. 420, the Judges should be able to expeditiously produce the documents with little burden.

Second, the Judges assert that Plaintiffs have not described the documents with sufficient particularity. Dkt. 413 at 24–25. That is false. Plaintiffs provided a proposed search protocol to govern the search for electronically stored information, which resulted in a reasonable number of documents. The Judges have not stated that they would have any difficulty producing responsive hard copy documents, if they exist. And because some of the requests mirror those in the July 2020 requests, to which the Felony Judges produced responsive documents, this unelaborated claim that Plaintiffs' requests are not clear enough falls flat.

Third, the Judges assert that Plaintiffs did not provide them with reasonable time to comply. The time to respond to RFPs 5–27 was reasonable because Plaintiffs had originally served those document requests on the Judges on December 3, 2020, and the Judges had already produced

objections and responses. Ex. 6. And the time to respond to RFPs 1–4 was also reasonable because the Judges had completed document production, and Plaintiffs were simply seeking a privilege log associated with identical requests served in July 2020. In any event, the Court stayed the deadline to produce documents pending a ruling on the motion to quash and is entitled to impose whatever deadline for production the Court deems appropriate. Ex. 26 at 10 (Tr. Hrg. Mar. 3, 2021 at 41:13–15) (contemplating 30 days to produce documents).

Fourth, the Judges assert that Plaintiffs should be limited to discovery related to the threshold question of class certification. Dkt. 413 at 22–23. But as is "generally" true, class determination in this case "involves considerations that are enmeshed in the factual and legal issues comprising plaintiff[s'] cause[s] of action." *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 380 (5th Cir. 2007) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)); Fed. R. Civ. P. 23(c)(1)(A) advisory committee note to 2003 amendment ("Time may be needed to gather information necessary to make the certification decision."). Plaintiffs are seeking evidence that Defendants enforce unconstitutional policies and practices. That evidence is relevant both to the merits of Plaintiffs' claims and whether this litigation should proceed as a class action because Defendants treated all members of the class similarly. Thus, it makes perfect sense that this Court approved a scheduling order with class-certification deadlines toward the end of fact discovery. *See* Dkt. 403[24]; *Macklin v. City of New Orleans*, 293 F.3d 237, 240 (5th Cir. 2002) (scheduling orders are reviewed for abuse of discretion).[25]

---

[24] Moreover, the parties to the case consented to the schedule, including the date for class certification. The Judges declined to participate in the Rule 26(f) conference and, as non-parties, have no say in the case management order.

[25] Although not mentioned in the motion itself, the affidavit of Eileen Marie Gaffney observes that Plaintiffs seek documents from former judges and states that these documents "may or may not be accessible / obtainable." Dkt. 413-10 ¶ 8. Plaintiffs assume that relevant documents have been preserved since all relevant local officials were on notice of the potential for litigation. If any

### B.  The Subpoenas Meet the Technical Requirements of Rule 45

The Judges complain that Plaintiffs did not personally serve them, and that Plaintiffs did not tender witness fees. Ultimately, all but two Judges waived personal service. Plaintiffs personally served those two Judges and tendered the witness fees. Any asserted technical violations have been cured and are not sanctionable. Ex. 10; Ex. 13; Ex. 14.[26]

### IV.    Sovereign Immunity Does Not Provide a Basis to Quash These Subpoenas

As a threshold matter, the Felony Judges' sovereign immunity arguments rest on the implicit argument that they should be viewed as *State* not *County* actors. Plaintiffs have previously explained that when these Judges set County-wide bail policy, they are in fact municipal officials who are not entitled to sovereign immunity. *See* Dkt. 259 (Plaintiffs' Omnibus Response to the 20 District Judges' and the State Intervenors' Motions to Dismiss) at 47–56; Dkt. 305 (Plaintiffs' Surreply to Motions to Dismiss) at 4–7; Dkt. 325 (Plaintiffs' Response in Partial Opposition to

---

documents have been destroyed since the *ODonnell* litigation was filed, and certainly after this case was filed in January 2019, that would be troubling in the extreme. Plaintiffs respectfully request assurance that emails of prior judges, including the four whose terms ended in December 2019, have been preserved.

[26] Nothing about Plaintiffs' subpoenas is "sanctionable." As to the purported technical violations of Rule 45, Plaintiffs reasonably believed, in light of emails with counsel, that the Judges had waived personal service. Ex. 38 (Feb. 10–11, 2021 emails between E.Rossi and C.Corbello). And, in fact, after the Judges filed their motion, the vast majority of the Judges *did* waive personal service. Ex. 8; Ex. 39 (Plaintiffs' Mar. 19, 2021 Pre-Motion Letter). As for witness fees, those are conventionally tendered once a deposition is firmly scheduled. Plaintiffs have now tendered the witness fees for the depositions the Judges oppose. Ex. 13; Ex. 14. And as to the purported substantive violations, the Judges' arguments fail for all the reasons explained in this brief. The only case the Judges cite does not support sanctions. *See Mick Haig Prods., e.K. v. Does*, 2011 WL 5104095, at *5 (N.D. Tex. Sept. 9, 2011) (holding that counsel "knowingly abuse[d]" the subpoena power and "acted in bad faith," "with gross negligence" and with "staggering chutzpah" where counsel "asked the Court to authorize sending subpoenas," the Court "said 'not yet,'" counsel "sent the subpoenas anyway," and counsel "eventually dismissed the case ostensibly because the Court was taking too long to make a decision," but was "all the while . . . receiving identifying information and communicating with some Does, likely about settlement") (citations omitted).

Motion to Stay) at 11–15. Plaintiffs incorporate those arguments herein, but the Court does not need to address this issue at all to reject the Judges' immunity-based arguments here. In their view, a non-party state agency or official can refuse to comply with discovery obligations under Rule 45 merely by asserting sovereign immunity. Because a Rule 45 subpoena is not a "suit" within the meaning of the Eleventh Amendment, even assuming they are state actors, they are wrong.

The Felony Judges make two arguments on this front, neither of which supports quashing these subpoenas. First, they argue that the Eleventh Amendment bars any Rule 45 subpoena against a state actor. But the doctrine shields state actors from "any *suit* in law or equity," and a Rule 45 subpoena is a process that is connected to an existing suit, not a suit itself. Second, they make an argument that sounds in rhetoric—but has no basis in the record or law—that these subpoenas somehow amount to an end run around the immunity that would attach if the Felony Judges were parties. But these Judges were not dismissed on sovereign immunity grounds, nor is there anything unusual about a party serving a Rule 45 subpoena on a non-party who controls information that bears directly on the party's claims.[27]

### A. Sovereign Immunity Does Not Limit This Court's Ability to Enforce These Rule 45 Subpoenas

The Felony Judges' sovereign immunity argument is radical. Under their view, no party can seek information from a state actor through a Rule 45 subpoena. A plaintiff seeking to hold state or local officials accountable under Section 1983, for example, could not actually vindicate their rights if critical evidence were in the hands of state officials or agencies that are not named

---

[27] Moreover, four of the judges who are subject to the document subpoenas and one of the judges who is subject to a deposition subpoena are no longer judges. The deposition subpoena served on former Judge Ritchie is served on him in his personal capacity—as he no longer has an official capacity. Thus, sovereign immunity is no defense. The document subpoenas served on the former judges seek documents in the possession of the County (or the state) and thus do not pose a burden on those judges who no longer possess them.

as defendants. For this reason, the overwhelming majority of courts have rejected the Judges' argument. And many of these courts have recognized that a contrary conclusion would upend settled practice and eviscerate civil rights laws. The Judges' argument that sovereign immunity protects them from having to respond to Rule 45 subpoenas is premised entirely on cases addressing federal and tribal sovereign immunity and ignores the numerous cases holding that the distinct principles of *state* sovereign immunity do not protect state officials from obligations under Rule 45. The Fifth Circuit has not addressed whether state officials are entitled to sovereign immunity from third-party subpoenas, but the reasoning of the courts that have rejected the Judges' argument is sound.

State sovereign immunity derives from the Eleventh Amendment, which limits federal courts' ability to hear a "*suit* in law or equity, commenced or prosecuted against" a state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984) (emphasis added). Thus, the Felony Judges can invoke sovereign immunity only if a Rule 45 subpoena is a "suit" under the Eleventh Amendment. *See Allen v. Woodford*, 544 F. Supp. 2d 1074, 1078 (E.D. Cal. 2008).[28] In a very literal sense, a Rule 45 subpoena is not a "suit." By definition, it arises only *after* a "suit" has been filed. *See* Fed. R. Civ. Proc. 45(a)(2) ("A subpoena must issue from the court where the action *is pending*." (emphasis added)). A party who serves a Rule 45 subpoena has not "commenced" a "suit" against the target; it has merely served a subpoena to further an existing suit.

The same result follows if the effect of a subpoena is considered. "[A] suit is against the sovereign if *the judgment sought* would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank*. 372 U.S. 609, 620 (1962) (emphasis added)

---

[28] Citing *State of Missouri v. Fiske*, 290 U.S. 18, 26–27 (1933) and *Dugan v. Rank*, 372 U.S. 609. 620 (1962).

(quotations omitted). Whether "the effect of *the judgment* would be to restrain the Government from acting, or compel it to act is also relevant." *Id.* (emphasis added) (quotations omitted).

The majority of courts to consider the question have held that, because a Rule 45 subpoena will not result in any kind of judgment or relief against the state, it is not a "suit" for purposes of state sovereign immunity. *See, e.g.*, *United States v. Univ. of Mass, Worcester*, 167 F. Supp. 3d 221, 223–24 (D. Mass. 2016) ("[N]onparty discovery does not constitute a 'suit' for purposes of the Eleventh Amendment."); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) (the Eleventh Amendment does not preclude discovery from state custodians of records because "[n]o judgment will be issued in this action against the State that could have any conceivable effect on the State treasury" and "no judgment or other relief of any kind is sought against" the state officials).[29] The result in these cases is consistent with the policy that underlies state sovereign immunity. That is because "a federal court's enforcement of a subpoena against a state agency does not significantly infringe on federalism's promise of dual independent sovereigns. As such, . . . a federal subpoena against a third-party state agency does not constitute 'a suit against the

---

[29] *United States Dep't of Just. v. Ricco Jonas*, No. 18-MC-56-LM, 2018 WL 6718579, at *4 (D.N.H. Nov. 1, 2018), *report and recommendation adopted sub nom. United States Dep't of Just. v. Jonas*, No. 19-CV-030-LM, 2019 WL 251246 (D.N.H. Jan. 17, 2019) (a subpoena to state officials is not a "suit against the State of New Hampshire"); *Jackson v. AFSCME Local 196*, No. 3:07CV0471(JCH), 2008 WL 1848900, at *2 (D. Conn. Apr. 25, 2008) (subpoena against a state agency official was not an action against the state); *Jones v. Tozzi*, No. CV-F-05-148 OWW/DLB, 2007 WL 1299795, at *4 (E.D. Cal. Apr. 30, 2007) (the Eleventh Amendment does not bar trial subpoenas issued to state officials); *Arista Records LLC v. Does 1-14*, No. 7:08CV00205, 2008 WL 5350246, at *3 (W.D. Va. Dec. 22, 2008) ("[T]he court finds that the doctrine of sovereign immunity is inapplicable to Plaintiffs' subpoena requests."); *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 30 n. 8 (D.D.C.2014) ("The Eleventh Amendment, therefore, does not completely shield UMass from certain non-party discovery requests."); *Laxalt v. McClatchy*, 109 F.R.D. 632, 634 (D. Nev.1986) (holding that the Eleventh Amendment does not shield state officials from subpoenas requiring "inspection and copying of State records"). *But see Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. 2006); *see also Allen*, 544 F. Supp. 2d 1074 (rejecting *Hickman*'s reasoning); *Johnson v. Dovey*, 2011 WL 5374958 (E.D. Cal. 2011) (same);

sovereign' for the purposes of state sovereign immunity and thus does not invoke the doctrine's protections." *Charleston Waterkeeper v. Frontier Logistics, L.P.*, No. 2:20-CV-1089-DCN, 2020 WL 5629717, at *5 (D.S.C. Sept. 21, 2020) (distinguishing Fourth Circuit case law protecting non-party *federal* agencies from enforcing state subpoenas because those cases are based on "the principle of federal supremacy, which is inapplicable in the context of state sovereign immunity")

Tellingly, the Felony Judges rely on precedent that applied tribal or federal sovereign immunity doctrines, rather than state sovereign immunity. *See* Dkt. 413 at 3–6 (citing *Cartwright v. Walsh, MC* 3:18-0014, 2018 WL 461236, at *2 (M.D. Pa. Jan. 18, 2018) (federal sovereign immunity); *Alltel Communications, LLC v. DeJordy*, 675 F.3d 1100, 1105–06 (8th Cir. 2012), (tribal sovereign immunity); and *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989), (federal sovereign immunity)). But courts apply immunity doctrines differently based on the sovereign in question, "according to the distinct principles that undergird the doctrine of sovereign immunity with respect to each." *Charleston Waterkeeper*, 2020 WL 5629717, at *4. "Generally, state sovereign immunity protects principles of federalism, and federal sovereign immunity protects separation-of-powers principles as well as the concept of federal supremacy." *Id.* Thus, district courts that have allowed Rule 45 subpoenas against a state sovereign immunity challenge have declined to blindly apply cases addressing other immunity doctrines. In *University of Massachusetts*, for example, the court concluded that *DeJordy* did not apply because it addressed tribal sovereign immunity, "UMass is asserting state sovereign immunity," and "[t]ribal immunity and Eleventh Amendment immunity are related but importantly distinct concepts." 167 F. Supp. 3d at 224 (citing *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 753–59 (1998)). And appellate decisions that address whether *state* sovereign immunity bars Rule 45 subpoenas suggest that the answer is no. *See, e.g.*, *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997); *see*

*also Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 371 n.5 (7th Cir. 2010); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008). Thus, cases addressing different types of sovereign immunity do not support the Felony Judges' assertion that a Rule 45 subpoena against a state official is a "suit" under the Eleventh Amendment.

In addition to being wrong as a matter of law, the rule the Felony Judges ask this Court to make should be rejected because it would undermine the entire field of civil rights litigation. This rule would prevent civil rights plaintiffs from accessing information held by any state agency or official. As a district court in California has explained, such a rule "would mean that a plaintiff who sues a state official in his individual capacity, a lawsuit specifically authorized by the United States Supreme Court, will never be able to prove his or her case, if any required proof is in the hands of the State's custodian of records. Such a result is ludicrous." *Allen*, 544 F. Supp. 2d at 1079; *see also Univ of Mass, Worcester*, 167 F. Supp. 3d at 225 (citing *Allen*, 544 F. Supp. 2d at 1079). A plaintiff could not avoid this result by "su[ing] a state employee in his or her individual capacity in state court for violation of federal law," because the state defendants could remove the suit to federal court. *Allen*, 544 F. Supp. 2d at 1079 n.1. That is not, and should not be, the law.

### B.  The Felony Judges' Policy-Based Arguments Are Wrong.

The Felony Judges spend a page arguing that they are somehow being "treated as parties" in violation of the Eleventh Amendment. Dkt. 413 at 7. They cite no precedent for this claim, and it makes little sense. The Rule 45 subpoenas at issue here treat the judges like what they are, non-parties. This section of their motion reads like simple disagreement with this Court's case management, which has nothing to do with sovereign immunity.

What is more, the Felony Judges' argument turns on the misleading implication that the Rule 45 subpoenas are identical to those served when the judges were still defendants. But Plaintiffs significantly narrowed the requests via an amended search protocol, reducing the

responsive documents from about 90,000 documents, Dkt. 413-6 ¶ 5, to approximately 11,000 documents, Dkt. 434 ¶ 13.[30] And Plaintiffs have not served interrogatories, which cannot be served on non-parties. *See Arista Recs.*, 2008 WL 5350246, at *3 (explaining that Rule 45 provides a specific procedure applicable to nonparties).

Nor is there anything suspect about Plaintiffs' decision to serve these subpoenas. Subpoenas seek information relevant to a case. The information these subpoenas seek here is no less relevant to the Plaintiffs' claims now that the Felony Judges are non-parties, rather than defendants. *See supra* Part III.A.1–2.

As for the suggestion that Plaintiffs could not have sought discovery from the judges when they were defendants because they were protected by sovereign immunity then, the judges are deeply mistaken. Dkt. 213 at 4, 7. Plaintiffs have never "implicit[ly] acknowledg[ed]," *id.* at 4, that the judges enjoy sovereign immunity. Just the opposite. Plaintiffs have consistently and vigorously disputed the notion that the Felony Judges' sovereign immunity arguments have merit or that the panel decision in *Daves v. Dallas County* required their dismissal. *See* Tr. 1/5/2021 Hrg. (forthcoming). Nor did Plaintiffs dismiss the Felony Judges as defendants for any reason related to sovereign immunity. The Felony Judges know this, as their counsel cited Plaintiffs' refusal to concede that the judges enjoy sovereign immunity when asking this Court to vacate the order on the motion to dismiss. *Id.*. Plaintiffs dismissed the Judges as parties for prudential reasons: because the Judges agreed, in exchange, to dismiss an appeal that, had it gone forward, could have resulted in a lengthy stay of this district court litigation. *See* Order, Dkt. 386 at 1 (stating that this Court

---

[30] Plaintiffs initially requested the documents from the Judges assuming the Judges would prefer to review and produce emails that the Judges sent or received from County officials.

would vacate the order on the motion to dismiss after the Felony Judges notified the court that they

had dismissed the appeal because of "the urgency of the issues in this case").

## V.     The Motion for Protective Order Should Also Be Denied

A court may issue a protective order "to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense," upon demonstration of "good cause."

Fed. R. Civ. P. 26(c). The moving party must "show the necessity of [the protective order's]

issuance, which contemplates a particular and specific demonstration of fact as distinguished from

stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir.1998). For

all of the reasons the Court should deny the motion to quash, the Court should deny the Judges'

motion for a protective order.

Date: March 31, 2021

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Jeffrey Stein (*Pro Hac Vice*)
jeff@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

*/s/ Liyah Brown*
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
mimi@texascivilrightsproject.org
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
liyah@texascivilrightsproject.org
Peter Steffensen
Texas State Bar No. 24106464
Southern District No. 3327006

Respectfully Submitted,

*/s/ Neal S. Manne*
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

peter@texascivilrightsproject.org
Texas Civil Rights Project
2202 Alabama Street
Houston, TX 77004
Telephone: 512-474-5073 ext. 118

## CERTIFICATE OF SERVICE

I certify that on March 31, 2021 a true and correct copy of this document properly was

served on counsel of record via electronic filing in accordance with the USDC, Southern District

of Texas Procedures for Electronic Filing.

/s/ Elizabeth Rossi
Elizabeth Rossi