United States District Court
Southern District of Texas
**ENTERED**
May 14, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-226 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This case requires the court to decide difficult and sensitive issues of constitutional rights and their limits. Cases working their way through the appellate courts will affect how these and related issues are framed and resolved. In short, this case is the subject of an ongoing national conversation. The pending motion, the arguments at the hearing, and this opinion are but one part in an ongoing, sometimes fraught, debate.

Dwight Russell and other felony arrestees allege improper wealth-based pretrial detention and failure to provide timely individualized hearings on bail and other conditions of pretrial release. The plaintiffs, seeking to represent a class of felony arrestees, sued Harris County, the Harris County Sheriff, and 23 Harris County felony district court judges under 42 U.S.C. § 1983. They allege that they are held in jail before any trial solely because they cannot afford the financial conditions of release that are imposed. Based on the parties' agreement, the court dismissed the felony judges from the case after they withdrew their interlocutory appeal from the court's denial of their motion to dismiss. The plaintiffs then served two sets of document subpoenas and one set of deposition subpoenas on the felony judges under Rule 45. Seventeen of the felony judges have moved to quash those subpoenas and for a protective order barring the plaintiffs from seeking

information from them through discovery.[1]  (Docket Entry No. 413).  The plaintiffs and the felony judges have exchanged briefs.  (Docket Entry Nos. 453, 469, 483, 484, 485, 486, 487, 488, 498, 502).

Based on the motion, the responses, the record, the arguments of counsel, and the applicable law, the court denies the felony judges' motion in part and grants it in part, modifying the plaintiffs' document subpoenas.  The reasons are explained below.

## I.    Background

The plaintiffs challenge pretrial bail rules, policies, and procedures for individuals arrested on felony charges and held in the Harris County Jail before any trial or conviction on the charges. The plaintiffs argue that the rules, policies, and procedures violate the Equal Protection and Due Process Clauses of the United States Constitution by detaining individuals who have not been convicted of the crimes charged, solely because they are unable to post a financial bail bond, without individualized findings that this pretrial detention is necessary to serve governmental interests, and without timely hearings at which the individuals can present evidence.  Meanwhile, arrestees with similar charges and criminal backgrounds who can afford to pay are promptly released.  (Docket Entry No. 195-1).[2]

The plaintiffs seek injunctive and declaratory relief.  Originally, they sued Harris County, Sheriff Ed Gonzalez, and 23 Harris County felony district judges in their official capacities. (Docket Entry No. 195-1 at ¶¶ 96–97).  The State of Texas, the Governor of Texas, and the

---

[1] The 17 judges are: Frank Aguilar, Abigail Anastasio, Ramona Franklin, Colleen Gaido, Greg Glass, Nikita Harmon, Josh Hill, Kelli Johnson, Robert Johnson, DaSean Jones, Hazel B Jones, Jason Luong, Amy Martin, Ana Martinez, Chris Morton, Brock Thomas, and Hilary Unger.

[2] The plaintiffs also challenge the Texas Governor's March 29, 2020, Executive Order GA-13, alleging that, like Harris County's felony bail rules, policies, and procedures, the order unconstitutionally detains pretrial detainees solely because of their inability to post a financial bond, without timely evidentiary hearings and individualized findings that such pretrial detention is necessary.  (Docket Entry No. 259 at 34–35).

Attorney General of Texas successfully moved to intervene in March 2020.  (Docket Entry Nos. 38, 46).

The state intervenors and felony judges moved to dismiss.  (Docket Entry Nos. 214, 228).  The court denied the motions because the complaint raised vigorously disputed factual allegations. (Docket Entry No. 326).  Nineteen of the felony judges appealed based on the court's denial of sovereign immunity. [3]  (Docket Entry No. 327).  The State of Texas, the Governor of Texas, and the Attorney General of Texas withdrew as parties.  (Docket Entry Nos. 341, 342).

In January 2021, the 19 felony judges then represented by the Texas Attorney General agreed to withdraw their interlocutory appeal after the remaining parties agreed to dismiss the felony judges.  The 19 felony judges sought vacatur of the Memorandum and Opinion denying their motion to dismiss.  (*See* Docket Entry No. 387).  The State of Texas intervened again. (Docket Entry Nos. 373, 375).  Shortly thereafter, the court dismissed the felony judges, with prejudice, and vacated its Memorandum and Opinion on the motions to dismiss as to the felony judges only.  (Docket Entry Nos. 399, 400).  The court "conclude[d] that the parties' interest in moving the case forward without delay weigh[ed] in favor of vacatur."  (Docket Entry No. 399 at 2).

In February 2021, the plaintiffs served three sets of subpoenas under Rule 45 totalling 27 requests for production on 17 felony judges and four demands for depositions served on four judges: Requests for Production Nos. 5–27,  (*see, e.g.*, Docket Entry No. 413-1 at 80–81); Requests for Production 1–4,  (*see, e.g.*, Docket Entry No. 413-3 at 21–22); and deposition subpoenas for Judges Ritchie, Johnson, Jones, and Franklin,  (Docket Entry Nos. 413-2, 413-4).

---

[3] The 19 appealing judges were: Frank Aguilar, Abigail Anastasio, Ramona Franklin, Greg Glass, Nikita Harmon, Josh Hill, Kelli Johnson, Robert Johnson, DaSean Jones, Hazel B Jones, Jason Luong, Amy Martin, Jesse McClure, III, Chris Morton, George Powell, Herb Ritchie, Randy Roll, Brock Thomas, and Hilary Unger.  (Docket Entry No. 327).

Seventeen felony judges have moved to quash the subpoenas and for a protective order. (Docket Entry No. 413).  The plaintiffs have responded, the 17 felony judges have replied, the plaintiffs have surreplied, and both have submitted supplemental briefs.  (Docket Entry Nos. 453, 469, 483, 484, 485, 486, 487, 488, 498, 502).

## II.      The Legal Issues and Standards

The felony judges argue that the subpoenas must be quashed because: (a) the felony judges are entitled to sovereign immunity; (b) judicial immunity and the deliberative-process privilege shield the answers and documents that the plaintiffs seek; and (c) the subpoenas do not comply with Rule 45.  The court considers the motion to quash under Rule 45 and the motion for a protective order under Rule 26(c).  FED. R. CIV. P. 26(c), 45.  An order denying a nonparty's motion to quash is appealable, and the nonparty may file a motion with the Fifth Circuit to stay the lower court proceedings while the appeal is pending.  *Whole Woman's Health v. Smith*, 896 F.3d 362, 369 (5th Cir. 2018), *as revised* (July 17, 2018).

## III.     Sovereign Immunity

The felony judges assert that sovereign immunity bars the plaintiffs' requested third-party discovery because the Rule 45 subpoenas are "suits" barred by the Eleventh Amendment and the plaintiffs are impermissibly continuing to treat them as parties.  (Docket Entry No. 413 at 3–8).

### A.      The Felony Judges' Status

The felony judges' argument assumes that they are state actors when they set bail policies, rules, and procedures for Harris County, and that the Eleventh Amendment shields them from complying with the subpoenas.  County and municipal actors are entitled to sovereign immunity under the Eleventh Amendment when they are acting as an "arm of the state."  *See, e.g.*, *N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193 (2006) ("[O]nly States and arms of the State

4

possess immunity from suits authorized by federal law."); *Alden v. Maine*, 527 U.S. 706, 756 (1999) ("[S]overeign immunity . . . bars suits against States but not lesser entities. The immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State.").

In this court's vacated opinion denying the felony judges' motion to dismiss, the court assumed, without deciding, that the felony judges are state actors. *Russell v. Harris Cty., Texas*, No. CV H-19-226, 2020 WL 6585708, at *18–22 (S.D. Tex. Nov. 10, 2020), *vacated as to the felony judges*, (Docket Entry No. 391).  It is premature for this court to decide that issue in light of the pending Fifth Circuit en banc decision in *Daves v. Dallas County, Texas*, 988 F.3d 834, 835 (5th Cir. 2021) (per curiam).   Continuing to assume the felony judges act as an arm of the state when they set bail rules, procedures, and policies for Harris County, binding precedents do not provide a basis to find that the Eleventh Amendment shields them from these Rule 45 subpoenas.

**B.**     **A Rule 45 Subpoena as an Eleventh Amendment "Suit"**

The Eleventh Amendment limits a federal court's ability to hear a "suit in law or equity, commenced or prosecuted against" a state.  U.S. Const. amend. XI.  When considering Rule 45 subpoenas issued to federal agency officials, several circuits, including the Fifth Circuit, have determined that a Rule 45 subpoena is an Eleventh-Amendment "suit," but have not adopted a blanket no-discovery-allowed approach.   The parties cite no decision finding that sovereign immunity categorically bars seeking third-party fact discovery from state officials.  Based on the available authority, the court applies the Federal Rules of Civil Procedure to narrow the third-party subpoenas to nonprivileged information that is necessary, cannot be obtained from other sources, and minimizes the burdens of responding to achieve proportionality as well as relevance.

The Seventh, Eighth, and Tenth Circuits have stated or assumed that third-party discovery in federal court does not implicate state sovereign immunity. *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) ("[O]rder[s] commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case[] . . . do not violate the Eleventh Amendment." (internal citations omitted); *In re Mo. Dep't of Nat. Res.,* 105 F.3d 434, 436 (8th Cir. 1997) ("There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."); *Hefley v. Textron, Inc*., 713 F.2d 1487, 1497 n.2 (10th Cir. 1983) (finding that the United States and the Kansas Army National Guard could not be joined as third-party defendants, but assuming that nonparty discovery was available from them). The Tenth Circuit, however, later stated that "the Eleventh Amendment may well shield a state agency from discovery in federal court." *Bonnet v. Harvest (U.S.) Holdings, Inc*., 741 F.3d 1155, 1161 (10th Cir. 2014). The Eighth Circuit recently reaffirmed its holding that the Eleventh Amendment does not categorically bar third-party subpoenas compelling state officials to provide discovery for use in federal court proceedings, but the opinion was vacated and the en banc court determined that the sovereign immunity issue was moot. *McGehee v. Neb. Dep't of Corr. Servs*., 968 F.3d 899, 901 (8th Cir. 2020), *reh'g granted and opinion vacated* (Oct. 5, 2020), *on reh'g*, 987 F.3d 785 (8th Cir. 2021).

Most district courts that have directly considered the question have concluded that Rule 45 subpoenas served on nonparty state officials are not barred by the Eleventh Amendment. *See, e.g*., *United States v. Univ. of Mass., Worcester*, 167 F. Supp. 3d 221, 223–24 (D. Mass. 2016) ("[N]onparty discovery does not constitute a 'suit' for purposes of the Eleventh Amendment."); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) (the Eleventh Amendment does not preclude discovery from state custodians of records because "[n]o judgment will be issued . . .

against the State that could have any conceivable effect on the State treasury" and "no judgment or other relief of any kind is sought against" the state officials).[4]

The 17 felony judges rely on tribal sovereign immunity, citing *Alltel Communications, LLC v. DeJordy*, 675 F.3d 1100, 1105–06 (8th Cir. 2012) (tribal sovereign immunity). The Eighth and Tenth Circuits have held that third-party subpoenas to tribes are suits barred under *Kiowa Tribe v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998), which held that federally recognized tribes are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Id.* at 754. The Eleventh Amendment does not apply to Indian tribes, but the special concerns of tribal sovereignty do. *See DeJordy*, 675 F.3d at 1104–05 ("[P]ermitting broad third-party discovery in civil litigation threatens to contravene federal policies of tribal self determination, economic development, and cultural autonomy that underlie the federal doctrine of tribal immunity" (quotation marks omitted)); *Bonnet*, 741 F.3d at 1160–62 (agreeing with *DeJordy* as to the tribe itself and declining to decide whether tribal sovereign immunity extends to subpoenas to tribal officials). The Eighth Circuit has distinguished tribal immunity from state sovereign immunity in the context of nonparty Rule 45 subpoenas, explaining that while "[t]here

---

[4] *See also U.S. Dep't of Just. v. Ricco Jonas*, No. 18-MC-56-LM, 2018 WL 6718579, at *4 (D.N.H. Nov. 1, 2018), *report and recommendation adopted sub nom. U.S. Dep't of Just. v. Jonas*, No. 19-CV-030-LM, 2019 WL 251246 (D.N.H. Jan. 17, 2019) (a subpoena to state officials is not a "suit against the State of New Hampshire"); *Jackson v. AFSCME Local 196*, No. 3:07CV0471(JCH), 2008 WL 1848900, at *2 (D. Conn. Apr. 25, 2008) (subpoena against a state agency official was not an action against the state); *Jones v. Tozzi*, No. CV-F-05-148 OWW/DLB, 2007 WL 1299795, at *4 (E.D. Cal. Apr. 30, 2007) (the Eleventh Amendment does not bar trial subpoenas issued to state officials); *Arista Records LLC v. Does 1-14*, No. 7:08CV00205, 2008 WL 5350246, at *3 (W.D. Va. Dec. 22, 2008) ("[T]he the doctrine of sovereign immunity is inapplicable to Plaintiffs' subpoena requests."); *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014) ("The Eleventh Amendment, therefore, does not completely shield UMass from certain non-party discovery requests."); *Laxalt v. McClatchy*, 109 F.R.D. 632, 635 (D. Nev. 1986) (holding that the Eleventh Amendment does not shield state officials from subpoenas requiring "inspection and copying of State records"); *but see Est. of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1229–30 (E.D. Cal. 2006) ("The federal subpoenas seeking the production of documents by the State are barred on the ground that the State is entitled to sovereign immunity"); *see also Allen*, 544 F. Supp. 2d 1074 (rejecting *Hickman*'s reasoning); *Johnson v. Dovey*, 2011 WL 5374958 (E.D. Cal. 2011) (same).

is simply no authority . . . for the position that the Eleventh Amendment shields government entities from discovery in federal court," the same is not true for tribal immunity, which "is not congruent with that which the Federal Government, or the States, enjoy." *DeJordy*, 675 F.3d at 1104. The tribal immunity cases do not answer the question that the felony judges raise.

The felony judges rely on the statement in *Dugan v. Rank*, 372 U.S. 609, 620 (1963), that "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Id.* at 620 (quotation marks omitted). The *Dugan* Court found that sovereign immunity barred an injunction preventing federal officials from impounding water at a federal dam because, by "forc[ing] the abandonment" of a dam project paid for by Congressional appropriations, the judgment would "not only interfere with the public administration but also expend itself on the public treasury." *Id.* at 621; *cf. Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 440 (5th Cir. 1985) ("One of the most important goals of the immunity of the Eleventh Amendment is to shield states' treasuries.").

The 17 felony judges argue that *Dugan* bars the subpoenas because they are part of an effort by the plaintiffs to "continue to seek relief against the Felony Judges as if they were still parties." (Docket Entry No. 469 at 3). The felony judges are correct that their dismissal bars them from being treated as "real parties in interest for discovery purposes." *Univ. of Tex. at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (quotation marks omitted). But the record does not support finding that they are being treated as parties and *Dugan* does not provide a basis for the broad application of sovereign immunity that the felony judges seek.

The felony judges were dismissed from this case. The plaintiffs do not seek relief against felony judges, whether in the form of an injunction, money damages, or otherwise. (Docket Entry No. 484 at 7). The subpoenas require four judges to appear by videoconference for depositions,

and they require counsel for the judges to review approximately 40,000 pages of relevant documents.  The subpoenas do not require, as the felony judges assert, that they "gather voluminous documents as non-parties [when the documents] have no potential relevance to any surviving claims Plaintiffs may still have."  (Docket Entry No. 413 at 6).  The court, as discussed below, modifies the plaintiffs' subpoenas.  Most of the discovery sought is highly relevant to their claims and not available from the party defendants or other sources.  The subpoenas, as modified, comply with Rule 45's technical and substantive requirements for nonparty discovery.  The record does not show that compliance with the limited fact discovery sought by the subpoenas, as modified, would interfere with public administration or abrogate the felony judges' autonomy as government officials.

Cases analyzing third-party subpoenas to federal government officials do not require quashing the subpoenas in this case.  The Fifth Circuit has assumed that sovereign immunity applies to Rule 45 subpoenas compelling discovery from federal agencies and that the immunity is subject to waiver and review under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706. *Davis v. U.S. Marshals Serv.*, No. 20-60465, 2021 WL 1157617, at *6 n.3 (5th Cir. Mar. 29, 2021); *Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 181 (5th Cir. 2017).  Other circuits have followed a similar approach.  *See Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001) (the Administrative Procedure Act waives the federal government's sovereign immunity to third-party subpoenas); *U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 599 (2d Cir. 1999), *opinion amended on reh'g*, 212 F.3d 689 (2d Cir. 2000) (same); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (same); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (assuming the same); *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778–79 (9th Cir. 1994) (declining to find that sovereign

immunity barred third-party subpoenas compelling testimony from federal officials in federal court and noting, in the alternative, that the Administrative Procedure Act waived the immunity).

Some precedents support finding a similar limit to state sovereign immunity in cases alleging violations of federal constitutional rights.  In *Ex parte Young*, 209 U.S. 123, 128 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity for suits seeking prospective injunctive and declaratory relief against state officials enforcing allegedly unconstitutional policies.  The Eighth Circuit has hypothesized that the *Ex parte Young* exception may apply to Rule 45 subpoenas.  *See Bonnet*, 741 F.3d at 1162 n.1 ("[U]nder *Ex parte Young* . . . neither a state nor a tribe would appear to be immune from a [third-party] discovery request served on the appropriate agency official."); *see also Hickman*, 466 F. Supp. 2d at 1229 (holding that Eleventh Amendment immunity barred third-party subpoenas to the State of California, but assuming the *Ex parte Young* exception to sovereign immunity applied to suits for prospective relief from constitutional violations).

Recent Fifth Circuit law counsels balancing sovereign immunity concerns with the limits set out in the Federal Rules of Civil Procedure.  In *Davis*, the Fifth Circuit assumed that sovereign immunity applied but affirmed the decision to quash a Rule 45 subpoena to the Department of Justice based on the Federal Rules of Civil Procedure, explaining that "[t]he DOJ sufficiently demonstrated that Davis's discovery request was overly broad and not relevant to [the plaintiff's] remaining . . . claim."  2021 WL 1157617, at *6.  Other circuits have weighed sovereign immunity concerns with the "broad and liberal treatment of the federal discovery rules," *Davis*, 2021 WL 1157617, at *6, by permitting third-party discovery within the circumscribed limits set out in the Federal Rules of Civil Procedure.  *See, e.g.*, *Moore*, 927 F.2d at 1197 (balancing federal agency's authority to restrict employee testimony with the Federal Rules of Civil Procedure, which

"strongly favor full discovery whenever possible."); *Linder*, 251 F.3d at 181–82 (finding a waiver of sovereign immunity under the Administrative Procedure Act and applying Rule 45); *cf. Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 622 (5th Cir. 1973) (finding that a Rule 45 subpoena to the U.S. Navy was defective under the Federal Rules of Civil Procedure).

Many of the concerns the felony judges raise in support of their sovereign immunity arguments are addressed by the discovery rules in the Federal Rules of Civil Procedure. Rule 26 permits discovery only if it is relevant to the parties' claims or defenses, proportional to the needs of the case, and not privileged. The Rule requires a district court to act to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(1); 26(b)(2)(C)(i). Rule 45 requires a district court to quash a subpoena when it:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond [100 miles from the person's place of residence, employment, or regular business activities]

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

FED. R. CIV. P. 45(d)(3)(A). Rule 45 also protects nonparties from undue expense through "two related avenues." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 250 (6th Cir. 2018) (quoting *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)). First, a district court may assess fees and costs to attorneys or parties as a sanction for failing to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Second, a district court may shift costs under Rule 45(d)(2)(B)(ii). *See Shields v. Eleveated Energy Sols., LLC*, No. 3:19-CV-00390, 2020 WL 5658499, at \*3 (S.D. Tex. Sept. 23, 2020) (collecting cases analyzing cost-shifting under Rule 45(d)(2)(B)(ii)).

Circuit courts have counseled against broadly importing sovereign immunity into the framework set out in the Federal Rules of Civil Procedure and developed in case law:

> We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the government's concerns under the general rules of discovery. The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden." The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas. In addition, the Rules can prevent private parties from exploiting government employees as tax-supported pools of experts. The Rules also recognize and protect privileged information.

*Exxon*, 34 F.3d at 779 (internal citations omitted); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 n.2 (D.C. Cir. 1984) (surveying cases that assume that sovereign immunity does not bar subpoenas against nonparty government entities and declining "to graft onto discovery law a broad doctrine of sovereign immunity"); *Linder*, 251 F.3d at 181 (quoting *Northrop*, 751 F.2d at 399 n.2). The D.C. Circuit has explained that, "[w]ith the[] tools [set out in the Federal Rules of Civil Procedure], district courts in cases involving third-party subpoenas to government agencies or employees can adequately protect both the litigant's right to evidence and the 'government's interest in not being used as a speakers' bureau for private litigants.'" *Watts v. S.E.C.*, 482 F.3d 501, 506–509 (D.C. Cir. 2007) (Kavanaugh, J.) (quoting *Exxon*, 34 F.3d at 780).

Whether under Eleventh Amendment principles or the Federal Rules, courts have carefully balanced sovereignty interests and the burdens to government officials with the need for relevant fact discovery from third parties. This court follows the same approach. Considering the record before the court and the inconclusive precedents, expanding the doctrine of sovereign immunity to Rule 45 subpoenas against a nonparty state actor is either beyond this court's authority, or imprudent, or both. *See Northrop*, 751 F.2d at 399 n.2. The court declines to do so, but carefully

weighs the burdens and necessities of discovery under the framework set out in the Federal Rules of Civil Procedure. *Cf. Watts*, 482 F.3d at 503 ("Disputes over third-party subpoenas to agencies in civil litigation . . . must commence in the district court under Rule 45.").[5]

## IV.   Judicial Immunity and Privilege

Rule 45 requires a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45(d)(3)(A)(iii). The 17 felony judges argue that judicial immunity prevents the plaintiffs from asking the judges "individual capacity questions" at their depositions. (Docket Entry No. 469 at 25). They also argue that the plaintiffs' document subpoenas seek materials protected by the deliberative-process privilege.[6]

### A.     Judicial Immunity

The Fifth Circuit has explained that a judge "may not be asked to testify about his mental processes in reaching a judicial opinion." *Robinson v. Comm'r*, 70 F.3d 34, 38 (5th Cir. 1995). Courts in this circuit have quashed subpoenas to judicial and quasi-judicial officers when the subpoenas targeted the judicial decision-making process in individual cases. *See, e.g.*, *Gary W. v. State of La., Dep't of Health & Hum. Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (affirming quashal of a deposition subpoena intended to elicit testimony about the decision-making process underlying a special master's report); *Terrazas v. Slagle*, 142 F.R.D. 136, 138–40 (W.D. Tex.

---

[5] The felony judges argue that the subpoenas must be quashed because they do not comply with the service requirements under Rule 45. (Docket Entry No. 413 at 8–10); *see* FED. R. CIV. P. 45(b)(1), (b)(4). The plaintiffs served the felony judges again on March 17, 18, and 20. (Docket Entry Nos. 453-12, 453-13, 453-14). The plaintiffs also tendered the required witness fees. (*See* Docket Entry Nos. 453-15, 453-16). That service cured the service errors asserted by the felony judges. (*See* Docket Entry No. 453 at 9–10). The felony judges' arguments based on the service requirements of Rule 45 are moot.

[6] The felony judges moved for an emergency protective order to prevent the plaintiffs from seeking deposition testimony barred by deliberative process privilege from any felony judge. (Docket Entry No. 454 at 5). The court denied that motion but limited the scope of the depositions based on the deliberative-process privilege. (Docket Entry No. 461). That moots the issue presented in the motion to quash.

1992) (quashing subpoenas to federal law clerks because the subpoenas were intended to trigger the recusal of the presiding judges).

Information about the felony judges' administrative and policymaking roles is nonjudicial and not shielded by judicial immunity.[7] *See Forrester v. White*, 484 U.S. 219, 229 (1988) (judicial immunity does not apply to administrative acts); *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (a chief judge's declaration of a moratorium on issuing writs of restitution was an administrative, not a judicial, act); *Craig v. State Bar of Cal*., 141 F.3d 1353, 1354 (9th Cir. 1998) (per curiam) (a state supreme court's promulgation of general rules for bar admission is nonjudicial (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 487 (1983))); *Swanston v. City of Plano, Texas*, No. 4:19-CV-00412, 2020 WL 4732214, at *3 (E.D. Tex. Aug. 14, 2020) ("[T]he mental process privilege does not extend to deliberations regarding administrative or executive acts performed by judges." (quotation marks omitted)); *ODonnell v. Harris Cty., Texas*, 227 F. Supp. 3d 706, 757–58 (S.D. Tex. 2016) (explaining that judicial immunity did not apply to Harris County misdemeanor judges when they set bail rules and oversaw the "unwritten customs and practices" governing bail hearings), *rev'd on other grounds*, 882 F.3d 528 (5th Cir. 2018); *Cain v. City of New Orleans*, No. CV 15-4479, 2017 WL 894653, at *4 (E.D. La. Mar. 7, 2017) (collecting cases and explaining that "discovery . . . relevant to the Orleans Parish Criminal Court judges' policy-making function, which is administrative or executive rather than judicial in nature" did not implicate judicial immunity or mental process privilege).

The plaintiffs do not and may not seek information from the felony judges about how they reach bail, detention, or other decisions in individual cases.  If a deposition question asks for

---

[7] The plaintiffs argue that mental process privilege, not judicial immunity, is the doctrine applicable to nonparty discovery.  (Docket Entry No. 484 at 2).  The court assumes, but does not decide, that judicial immunity applies and considers both immunity and privilege.

information about a particular felony judge's deliberations in individual cases, rather than about the general policies and practices used in the felony bail system, counsel for the felony judges may assert the privilege by objecting under Federal Rule of Civil Procedure 30(c)(2).  *See Cain*, 2017 WL 894653 at *6.

### B.    The Deliberative-Process Privilege

The deliberative-process privilege "shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quotation marks omitted).  As the party invoking the privilege, the felony judges have the burden of showing that it applies.  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

Rule 26(b)(5) requires a party withholding otherwise discoverable materials on the basis of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5).  "[C]ompliance with Rule 26(b)(5) is usually accomplished by submission of a [privilege] log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter."  *Santa Fe Int'l Corp.*, 272 F.3d at 710 (quotation marks omitted).  "[A] privilege log's description of each document and its content must provide sufficient information to permit courts and other parties to 'test the merits of' the privilege claim."  *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (brackets and quotation marks omitted).  "Continual failure" to provide an adequate privilege log "may result

in waiver of the privilege" if "the failure results from unjustified delay, inexcusable conduct, or bad faith." *Id.*

In their motion to quash and their objections to the plaintiffs' subpoenas, the felony judges assert that the plaintiffs' requests for production seek "documents subject to the deliberative process privilege," (Docket Entry No. 413 at 27–33), or "information protected by the deliberative process privilege," (Docket Entry No. 453-3 at 6–9; Docket Entry No. 453-8 at 5, 7–13, 15–17, 19–23, 25–26, 28–32). Counsel for the felony judges stated in August 2020 and January 2021 that she would produce a privilege log "within a reasonable time." (*See, e.g.*, Docket Entry No. 453-3 at 6; Docket Entry No. 453-8 at 5). She has not done so. The felony judges' generalized assertion of privilege is insufficient under Rule 26. The court denies the felony judges' motion to quash based on the deliberative-process privilege.

The court orders the felony judges to produce a privilege log by June 28, 2021. After the felony judges produce this log, they must meet and confer with the plaintiffs to resolve disputed assertions of privilege.

## V.   Undue Burden

Rule 45 requires a court to quash or modify a subpoena if it "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv). To show an "undue burden," the felony judges must "demonstrate that compliance . . . would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) (quotation marks omitted); *see Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 n.4 (5th Cir. 2012) ("While Rule 45 has been amended since *Wiwa* was decided, the substance of this provision has remained the same.").

To determine whether a subpoena is unduly burdensome, courts consider several factors:

(1) the relevance of the information sought;

(2) the party's need for the documents;

(3) the breadth of the document request;

(4) the time period covered by the request;

(5) the particularity with which the party describes the requested documents;

(6) the burden imposed;

(7) if the request is made to a nonparty, the expense and inconvenience to the nonparty; and

(8) whether the subpoena is facially overbroad.

*Wiwa*, 392 F.3d at 818.

The felony judges argue that the plaintiffs' subpoenas are unduly burdensome because: (1) the plaintiffs seek irrelevant information; (2) the plaintiffs can obtain the information sought from sources other than the felony judges; (3) the document requests are too broad; (4) the subpoenas do not request documents with particularity; (5) further discovery will lead to harassment; and (6) the felony judges are public officials. (Docket Entry No. 413 at 15–27; Docket Entry No. 469 at 4–25). The court addresses each argument in turn.

## A.     General Relevance

The felony judges argue that the subpoenas seek irrelevant information because the plaintiffs' only viable claims in this lawsuit are for violations of procedural due process and equal protection, making discovery related to claims under substantive due process irrelevant. (Docket Entry No. 413 at 17–18). The felony judges cite *ODonnell v. Harris Cty.*, 892 F.3d 147, 163 (5th Cir. 2018) (*ODonnell I*), and *ODonnell v. Goodhart*, 900 F.3d 220, 222 (5th Cir. 2018) (*ODonnell II*), for the proposition that the Fifth Circuit has rejected all substantive-due-process claims based on pretrial detention.

The Fifth Circuit in *ODonnell* rejected the substantive-due-process right "to be free from any form of wealth-based detention." *ODonnell I*, 892 F.3d at 163; *see ODonnell II*, 900 F.3d at 228 (same).[8] Here, the plaintiffs assert a related but different right:  the right to pretrial liberty unless the government makes findings that pretrial detention is necessary to serve governmental interests.

A comparison of the complaints in *ODonnell* and this case reveals the difference.  The *ODonnell* plaintiffs presented their equal-protection and due-process rights as follows:

> Defendants violate Plaintiffs' fundamental right to pretrial liberty by enforcing against them a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay money bail amounts imposed without any inquiry into or findings concerning their present ability to pay.

(Docket Entry No. 54 at 43, *ODonnell v. Harris Cty.*, No. 4:16-1414 (S.D. Tex.)).  The plaintiffs in this case frame their substantive-due-process right differently:

> Defendants violate Plaintiffs' rights by jailing them prior to trial without making any finding that pretrial detention is necessary to serve the government's interests.

(Docket Entry No. 195-1 at ¶ 202).  The Fifth Circuit in *ODonnell* did not reject the substantive-due-process claim the plaintiffs present in this case.

*ODonnell* was based on the plaintiffs' indigent status and Texas law.  *See ODonnell I*, 892 F.3d at 157 ("Liberty interests protected by . . . due process . . . can arises from two sources, the Due Process Clause itself and the laws of the States.  Here, our focus is the law of Texas." (internal citation and quotation marks omitted)).  The plaintiffs in this case base their substantive-due-process claim on the Due Process Clause, not state law.  Although the plaintiffs do assert claims

---

[8]  Similarly, in the Fifth Circuit's most recent case, *Daves v. Dallas Cty., Texas*, 984 F.3d 381, 412 (5th Cir. 2020), *reh'g en banc granted, order vacated*, 988 F.3d 834 (5th Cir. 2021), the court rejected the plaintiffs' argument that a court "must find that the State has a sufficiently strong interest in order to hold an indigent who cannot afford cash bail."  (emphasis added); *see id* at 413. ("The same substantive-due-process right [from *ODonnell I*] is being asserted in this appeal.").

based on their indigent status, that status is not the only basis of the plaintiffs' substantive-due-process claim. The plaintiffs' asserted substantive-due-process right may not succeed, but it is a colorable claim. At this stage, there is no basis to conclude that discovery related to that claim is irrelevant.

The felony judges assert that the plaintiffs' only viable claims are for ongoing violations of the rules set out in *ODonnell* by the remaining defendants. (Docket Entry No. 413 at 18–19). They argue that information related to the plaintiffs' procedural-due-process and equal-protection claims is wholly irrelevant because the discovery is not intended to prove viable claims. (*Id.*). The felony judges argue that, "as non-parties, [they cannot] be found to have violated Plaintiffs' rights under 42 U.S.C. § 1983." (Docket Entry No. 469 at 13).

The plaintiffs seek to enjoin the party defendants, including the Harris County Sheriff, from enforcing allegedly unconstitutional pretrial detention. (Docket Entry No. 453 at 15–17 & n.17). To determine whether those orders are unconstitutional, the court must examine the rules, policies, and practices governing them. Although the court cannot bind the felony judges as parties, it must determine how their rules, policies, and practices affect the plaintiffs' asserted constitutional rights.

The plaintiffs have provided evidence in support of their allegation that the felony judges affect, or direct, the party defendants' enforcement of unconstitutional detention orders. For example, the plaintiffs have provided declarations from Alex Bunin, Harris County's chief public defender. He states that adversarial bail hearings are "typically 2 to 4 weeks after arrest," (Docket Entry Nos. 453-32 at 2), and that "individualized adversary hearings, about reducing bail, are rare in Harris County criminal district courts, and when they do occur, it takes many weeks or months for a hearing to be scheduled." (Docket Entry No. 453-30). Bunin states that this delay "results from the felony judges['] failure to promulgate policies to assure more expeditious bail hearings."

(Docket Entry No. 453-32 at 2). He also states that "[j]udges in Harris County, as a matter of routine practice, revoke bonds and detain people who have been released after arrest and who appear in court as required, with no notice or individualized hearing to determine whether detention serves any government purpose." (*Id.* at 5).

The plaintiffs have also submitted the declaration of Sarah Wood, the Harris County Public Defender's Office's policy director, in which she states that the felony judges promulgate orders controlling the limited appointment of public defenders for felony pretrial detainees and that, for decades, hearing officers "adhered strictly to written and oral directives . . . issued by the felony judges, who control their employment." (Docket Entry No. 452-34 at ¶¶ 40–41). Wood states that, although the felony judges "purportedly rescinded [their] instructions [to the hearing officers] in 2017," hearing officers continue to follow the instructions. (*Id.* at ¶ 45).

The question at this stage is not whether the plaintiffs will ultimately prevail on their claims. The question is whether the discovery that the plaintiffs request is relevant to their plausibly alleged claims. The declarations provided by the plaintiffs show a basis for finding that the felony judges have not "exercise[d] their rulemaking authority to promulgate policies and procedures that would ensure that felony bail orders comport with the federal Constitution," and that the felony judges have "fail[ed] to follow the Constitution when setting bail in their own courtrooms." (Docket Entry No. 453 at 19). The requested discovery is relevant.

## B.    The Availability of the Information Sought

The felony judges argue that the subpoenaed information is duplicative because what is relevant is "likely in the custody and control" of the defendants. (Docket Entry No. 413 at 21). The felony judges primarily rely on the affidavit of Eileen Gaffney, a District Court Administration staff attorney, in which she states that the plaintiffs seek documents that are either no longer

accessible or for which the felony judges are not the custodians.  (Docket Entry No. 413-10 ¶¶ 8–9).

The plaintiffs respond that they have conferred with the felony judges and the defendants to mitigate the risk of duplicative discovery and to ensure that the felony judges are not asked to produce documents that the defendants have already produced or can produce.  (Docket Entry No. 453 at 22).  The plaintiffs also argue that discovery from the felony judges is necessary because the materials obtained from the defendants do not answer several questions key to their claims. (*Id.* at 20–22).  These questions include:

- whether the "March 2017 Recommended Standard Bail Practices Order" remains in effect, (*id.*);

- which documents the March 2017 order rescinded, (*id.*);

- what several terms in the felony bail schedule mean, and what the role of visiting judges has been as to bail hearings, (*id.*);

- what is the felony judges' understanding of their role in the post-arrest process, including their role in determining the content of the financial affidavit, the use of a risk-assessment tool, and the language and documents used to convey the results of the risk assessment, (Docket Entry No. 498 at 4);

- what is the felony judges' understanding of their authority to issue rules that apply at the Article 15.17 hearings, (*id.*);

- what is the felony judges' understanding of the state-law authority for issuing rules and policies that govern the post-arrest process, (*id.*);

- what is the felony judges' understanding of the legal authority governing bail determinations, (*id.*);

- what are the felony judges' bail practices in their courtrooms, (*id.*);

- what are the felony judges' policies and practices for appointing counsel at bail hearings in their courtrooms, (*id.*);

- whether the felony judges track comparative rates of nonappearance and new criminal activity among people released on different bond types in their courtrooms, (*id.*);

- what is the felony judges' understanding of the incentives and harms of money bail and the efficacy of alternatives, (*id.*);

- what is the felony judges' knowledge of whether pretrial detention may coerce guilty pleas, (*id.*); and

- what is the felony judges' knowledge of whether people are detained in the Harris County Jail due to their inability to pay a secured bond, (*id.*).

Those questions all bear on whether the felony bail and bond orders that the party defendants enforce are constitutional.

The deposition subpoenas to Judges Ritchie, Johnson, Jones, and Franklin seek relevant testimony responsive to these questions. Judges Ritchie, Johnson, and Franklin were on the bench when many of the policies at issue went into effect. Judge Ritchie was the former presiding judge, and Judge Johnson is the current presiding judge. With their deposition subpoenas, the plaintiffs seek relevant information from relevant sources.

The felony judges argue that if the questions identified above remain unanswered, it is because the plaintiffs have failed to fully engage in discovery with the party defendants or the party defendants have failed to provide sufficient answers. (Docket Entry No. 469 at 17–18). The record does not support this argument. The plaintiffs have deposed defendant Harris County under Rule 30(b)(6), (Docket Entry Nos. 453-27, 485-5 at 10), defendant Sheriff Ed Gonzales, (Docket Entry No. 453-22), and nonparties, (Docket Entry Nos. 453-18, 453-35, 453-36). The felony judges do not identify entities or individuals that the plaintiffs should deposes or why the deponents' statements that they lack certain information should be rejected. As the felony judges point out, the plaintiffs have received over 207,000 pages of responsive documents from defendant Harris County, sent 28 requests for production and 4 interrogatories to defendant Harris County, and sent 15 requests for production to defendant Sherriff Ed Gonzales, in addition to the depositions. (Docket Entry No. 413 at 20–21). The record does not support the conclusion that

critical questions remain because the plaintiffs or the party defendants failed to engage meaningfully in discovery. (*See* Docket Entry No. 456 (discovery order finding that "[t]he plaintiffs have diligently pursued discovery")).

> ### C.     The Breadth of the Requests

> #### 1.     Scope

The felony judges argue that the subpoenas are too broad because the plaintiffs are entitled to discovery only as it relates to the issue of class certification. (Docket Entry No. 413 at 22–23). There are two problems with that argument.

First, the felony judges' argument is based on an outdated version of Rule 23(c)(1)(A). Before the 2003 amendments, Rule 23(c)(1)(A) required district courts to rule on class certification "as soon as practicable." FED. R. CIV. P. 23(c)(1)(A) (2002). Since 2003, Rule 23(c)(1)(A) has stated that district courts must rule on class certification "[a]t an early practicable time." FED. R. CIV. P. 23(c)(1)(A) (2021). The Supreme Court has explained that this change "was made to allow greater leeway, more time for class discovery, . . . and afford the best possible representation for the class." *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1807 (2018) (quotation marks and alteration omitted). That purpose is reflected in the scheduling order for this case, which sets the deadlines for briefs on class certification toward the end of the fact discovery that bears on the class certification issues. (Docket Entry No. 455).

Second, the Supreme Court has explained that, when considering class certification, "it may be necessary for the court to probe behind the pleadings," which "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The certification issue "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," especially when the claim

is based on "pattern or practice" allegations. *Id.* at 351–52 (quotation marks omitted). Here, the plaintiffs assert that the defendants are "enforcing against them a system of pretrial detention" that violates the Constitution. (Docket Entry No. 195-1 at ¶ 200) (emphasis added). The challenged conduct is systematic and applies to many. The subpoenas seek information bearing on whether the felony judges' rules, policies, and procedures result in unconstitutional orders, enforced by party defendants, which intertwines issues of merits and class certification. This is not a basis to quash the subpoenas.

Next, the felony judges challenge Requests for Production Nos. 19–22, 25, and 27 as unrelated to the present lawsuit. (Docket Entry No. 413 at 23).

### Requests for Production Nos. 19 and 20

Request for Production No. 19 reads:

All documents relating to providing, assigning, or appointing lawyers to represent defendants who were released after arrest, who appear in court for a scheduled appearance without an attorney present, and in whose case the judge wants to address bail on that date.

Request for Production No. 20 reads:

All documents reflecting the judges' policies and practices relating to court-appointed counsel, including private counsel and the Public Defender's Office.

(Docket Entry No. 433-1 at 12).

These questions seek relevant documents. Evidence as to the felony judges' rules, policies, and procedures for appointing counsel for pretrial detainees facing bail determinations is central to the plaintiffs' claim that the orders of pretrial detention, which the party defendants enforce, are unconstitutional. These requests are limited to bail hearings and do not seek irrelevant documents.

### Request for Production No. 21

Request for Production 21 reads:

All documents reflecting any campaign donations or gifts to you from any lawyer who has practiced in your courtroom.

(Docket Entry No. 413-1 at 12).

The plaintiffs argue that the requested documents will "enable [them] to develop their claim that the [felony judges'] practices and local rules regarding appointment of counsel for bail hearings fail to uphold their right to counsel at bail hearings." (Docket Entry No. 453-1 at 6). The plaintiffs argue that the felony judges routinely appoint overburdened and ineffective defense attorneys, "resulting in the actual and constructive denial of counsel on a large scale," and that the appointment of those attorneys is driven by campaign donations and gifts that those attorneys provided to the felony judges. (Docket Entry No. 453-1 at 6).

The plaintiffs do not allege that the felony judges appoint ineffective defense counsel due to campaign donations and gifts. (Docket Entry No. 195-1). Nor do they allege that the felony judges' unconstitutionally fail to appoint particular attorneys. Instead, the plaintiffs' procedural-due-process claim is based on whether the felony judges provide counsel on a timely basis, or ensure the presence of counsel at bail hearings. (*See id.* at ¶ 204). This request is not sufficiently related to the claims in this lawsuit. The court modifies the subpoenas to remove Request for Production No. 21.

### Request for Production No. 22

Request for Production 22 reads:

All documents reflecting every case in which you authorized an appointed lawyer or public defender to hire an investigator, social worker, and/or expert.

(Docket Entry No. 413-1 at 12).

The plaintiffs argue that this request targets "one of the most important categories of evidence about systematic denial of adequate counsel at bail hearings." (Docket Entry No. 453-1

at 6). But the plaintiffs' claims are not based on the constitutional sufficiency of appointed counsel. They turn on whether felony pretrial detainees are provided counsel and whether counsel is present at bail hearings. Evidence of whether appointed attorneys retained others to investigate their clients' defenses does not affect the central issues: whether felony pretrial detainees are timely provided counsel at all. The court modifies the subpoenas to remove Request for Production No. 22.

## Request for Production No. 25

Request for Production 25 reads:

All documents relating to a pending or concluded proceeding against any of the Felony Judges before the Texas Commission on Judicial Ethics.

(Docket Entry No. 413-1 at 12).

The plaintiffs argue that documents related to ethics complaints made against the felony judges, if limited to their conduct in bail hearings and determinations, are "relevant to understanding the [felony judges'] policies and practices relating to bail." (Docket Entry No. 453-1 at 7). An ethics complaint against a felony judge, so limited, is relevant to the judges' exercise of jurisdiction in bail hearings. *Russell*, 2020 WL 6585708, at *17. This request, as limited, seeks relevant documents.

## Request for Production No. 27

Request for Production 27 reads:

Any and all litigation hold notices, document preservation notices and/or other communications, memorandums, or documents provided by a Felony Judge or their agents or representatives to any current or former personnel, employees, agents, officers, officials, or representatives regarding the need to suspend document destruction for the purposes of preserving evidence, including electronic documents and data, relating to the above-captioned lawsuit.

(Docket Entry No. 413-1 at 12).

The plaintiffs argue that discovery into preservation of relevant documents is "necessary to confirm that all responsive materials have been secured and produced," because preservation was an issue in *ODonnell* and some felony judges have entered and left the bench during the pendency of this lawsuit.  (Docket Entry No. 453-1 at 7).  The plaintiffs also argue that Eileen Gaffney's affidavit states that some documents "'may or may not be accessible / obtainable,' . . . without explaining *why*."  (*Id.* (quoting Docket Entry No. 413-10 at ¶ 8)).

Documents showing the policies and steps followed to preserve information relevant to the claims are relevant.  Whether the felony judges, as parties or nonparties, properly maintained information relevant to this case is important for both the court, as it pertains to the felony judges' obligations in this lawsuit, and the factfinder, as it pertains to the weight of the evidence produced. This request seeks relevant information.

### 2.    Time Period

The felony judges argue that Requests for Production Nos. 5–27 are overly broad because they seek materials dating back to January 1, 2015, and the relevant period for the plaintiffs' claims is 2020 onward.  (Docket Entry No. 413 at 24; Docket Entry No. 469 at 19–20 & n.21).  Counsel for the felony judges has identified 1,502 responsive documents from 2015 through 2019.  (Docket Entry No. 469 at 19 n.21; *see also* Docket Entry No. 453-39 (earlier accounting showing yearly breakdown)).

The felony judges' argument is based on the court's prior ruling that limited the period covered by Requests for Production Nos. 1, 2, and 4 to after January 1, 2020, and limited the period covered by Request for Production No. 3 to after January 1, 2019.  (Docket Entry No. 413 at 24; *see* Docket Entry No. 231 at 31–32 (limiting discovery "[s]o that we do not go back in time . . .

too far at this point")).  The felony judges argue that Requests for Production Nos. 5–27 should also be limited to after January 1, 2020.

The plaintiffs argue that documents from 2015 onward are necessary to uncover information "about the origin of and reasoning for" the felony judges' policies.  (Docket Entry No. 453 at 23).  They argue that their request is modest considering the decades of policies affecting the current system of felony pretrial detention and bail hearings in Harris County.

The court previously urged the plaintiffs to narrow the time frame of their requests, while recognizing that the "historical practices" targeted by the 2015 timeframe bear on the issues. (Docket Entry No. 469-7 at 4–5).  At the March 3, 2021, hearing, the court told the plaintiffs to ensure that they sought only information that was not previously produced by Harris County or Sheriff Ed Gonzales.  (*Id.* at 4).  The plaintiffs have since worked with the defendants and the felony judges to reduce the risk of duplicative discovery.  (Docket Entry No. 453 at 22).

The court has recognized the relevance of the information sought.  The plaintiffs have mitigated the risk of duplicative discovery and seek information in the sole custody of the felony judges.  The responsive documents identified amount to 13% of the overall documents to be reviewed by the felony judges.  These factors, along with the court's modifications of the subpoenas, support the conclusion that producing responsive documents from after January 1, 2015, does not create an undue burden.

### D.    The Particularity of the Subpoena Requests and the Burden of Reviewing the Requested Documents

The felony judges also argue that the plaintiffs' requests do not describe the requested documents with particularity.  (Docket Entry No. 413 at 24–27).  They argue that the plaintiffs "have cast an excessively wide net" that has "create[d] an insurmountable volume of documents to look through."  (*Id.* at 25).

28

The plaintiffs have described the documents through a proposed search protocol, and their requests resulted in a reasonable number of responsive documents.  The felony judges initially estimated that they would have to review 315,578 pages of documents, a number "not, in itself, horrifying."  (Docket Entry No. 453-28 at 7; Docket Entry No. 413 at 26; Docket Entry No. 413-6 at ¶ 7).  Since filing the motion to quash, the felony judges have lowered their own estimate from 315,578 pages to 39,420 pages, an 87.5% reduction.  (Docket Entry No. 469-8 at ¶ 9).  Counsel for the felony judges states that she previously reviewed 60,000 documents in response to earlier discovery requests.  (Docket Entry No. 413 at 26; Docket Entry No. 413-11 ¶6).  The current requests involve far fewer documents, and the court is granting the felony judges ample time for review, as stated in more detail below.  There is no undue burden.

### E.      The Complaint of Harassment Against the Felony Judges

The felony judges argue that subjecting them to nonparty discovery will lead to their intimidation and oppression, based on two sources of alleged past harassment:  (1) the personal service of Judges Jonson and Bell at their homes; and (2) their receipt of "hundreds of emails" and phone calls "from both 'local' and 'non-local' concerned citizens" about this case, allegedly at the plaintiffs' direction.  (Docket Entry No. 469 at 20–23).  Neither point justifies quashing the subpoenas.

The court has already addressed the service issue.  The plaintiffs obtained the judges' home addresses through publicly available means only after the felony judges' counsel refused to accept service on their behalf or inform the plaintiffs of an alternative time and location to serve the judges.  The court ordered the plaintiffs to instruct the process-server company and the individual process server to destroy any record of the judges' addresses and not to disclose them.  (Docket Entry No. 439).

The felony judges have submitted evidence of the emails they have received, along with one judge's written record of a phone call, that they say constitute harassment.  (Docket Entry Nos. 469-13, 469-15).  The emails identify the senders by name and address.  The judge's caller identification identified the caller.  Nothing in the record ties those individuals to the plaintiffs or their counsel.

The felony judges argue that the group behind the communications, the Texas Fair Defense Project, is tied to the plaintiffs, but do not explain how.  (Docket Entry No. 469 at 22; Docket Entry No. 469-14).  The felony judges assert that the Texas Fair Defense Project is counsel for the plaintiffs, (Docket Entry No. 469 at 22), but the record does not support this statement.  (*See* Docket Entry No. 498 at 6 (listing plaintiffs' counsel)).

The communications, whether appropriate or not, reflect in part the substantial public interest in this case.  Nothing in the record suggests a harassment campaign involving, let alone coordinated by, plaintiffs or their counsel.

**F.      The Felony Judges as Public Officials**

Finally, the felony judges argue that there is a presumption against allowing their depositions because depositions impose an "undue burden . . . on public officials."  *Payne v. D.C.*, 279 F.R.D. 1, 5 (D.D.C. 2011) (quotation marks omitted, brackets altered); (Docket Entry No. 469 at 24–25).

In the Fifth Circuit, "[i]nvoluntary depositions of highly-ranked government officials are only allowed [in] exceptional circumstances."  *In Re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018), *as revised* (Nov. 30, 2018) (quotation marks omitted).  In determining whether exceptional circumstances exist, courts consider three factors:  (1) "the high-ranking status of the deponents"; (2) "the potential burden that the depositions would impose upon them"; and (3) "the substantive

reasons for taking the depositions." *Id.* (internal quotation marks omitted).  "Once the court has determined [that] the government official qualifies as 'high-ranking,' the burden shifts to the party seeking to depose the high-ranking official to demonstrate extraordinary circumstances." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246, 2018 WL 3543955, at *2 (S.D. Miss. July 20, 2018), *aff'd* (Sept. 10, 2018) (quotation marks and citation omitted).

The felony judges have the burden of establishing that they are "sufficiently 'high-ranking' to invoke the deposition privilege." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010), *order clarified*, No. 1:05CV01198, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010); *see also Givens v. Newsom*, No. 2:20-CV-0852, 2021 WL 65878, at *4 (E.D. Cal. Jan. 7, 2021); *Byrd v. D.C.*, 259 F.R.D. 1, 8 (D.D.C. 2009).

The felony judges have not established that they are sufficiently high-ranking for the public-official protection to apply.  The felony judges have not identified, and the court has not found, cases in which a court recognized a county district court judge as a high-ranking government official.[9]

The Fifth Circuit recently explained that high-ranking government officials are protected from involuntary depositions because they "are the subject of or involved in unusually high numbers of lawsuits and therefore should be protected from undue burdens regarding the frequent litigation." *In Re Bryant*, 745 F. App'x at 220–21; *see Hernandez v. Texas Dep't of Aging & Disability Servs.*, No. A-11-CV-856, 2011 WL 6300852, at *2 (W.D. Tex. Dec. 16, 2011) ("[T]he

---

[9]  Federal courts have overwhelmingly applied the public-official protection to executive officials.  *See, e.g.*, *Bryant*, No. 3:16-CV-246, 2018 WL 3543955, at *3 (governors and their chiefs of staff); *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993) (the FDA Commissioner); *In re USA*, 624 F.3d 1368, 371 (11th Cir. 2010) (the EPA Administrator); *NEC Corp. v. United States*, 151 F.3d 1361, 1375 (Fed. Cir. 1998) (the Department of Commerce Undersecretary of International Trade); *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (members of the F.D.I.C.'s Board of Directors); *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 692 (N.D. Ga. 2019) (a Secretary of State); *Henry v. City of Sherman, Texas*, No. 4:17-CV-00313, 2018 WL 624741, at *1 (E.D. Tex. Jan. 30, 2018) (a mayor).

primary goal is to avoid burdening an official with the time drain and distraction of depositions, particularly in light of how often suits are filed challenging governmental action.").  The felony judges have not presented evidence that they are subject to an unusually high number of lawsuits. Some of the felony judges have already been deposed, and those judges have not identified any substantial disruption to their work.  "There is no indication that failure to perform their particular duties for the length of a deposition would create any hardship or unreasonable burden."  *Byrd*, 259 F.R.D. at 8.

Because the court cannot conclude on the current record that the felony judges are high-ranking government officials, the public-official exception to deposition subpoenas does not apply.

## VI.    The Time to Comply

Rule 45 requires a court to quash or modify a subpoena if it "fails to allow a reasonable time to comply."  FED. R. CIV. P. 45(d)(3)(A)(i).  The 17 felony judges argue that the document subpoenas must be quashed because they did not have reasonable compliance deadlines.  The plaintiffs served the felony judges with the Rule 45 subpoenas on February 10 and 22, with responses due by February 18 and March 1.  (Docket Entry Nos. 413-1, 413-3).  The parties extended those deadlines to March 3, 2021.  (Docket Entry No. 413 at 12 n.3).  The plaintiffs served the subpoenas again on March 17, 18, and 20.  The new deadline to comply was March 31, 2021.  (*See, e.g.*, Docket Entry No. 453-13 at 2, 36; Docket Entry No. 453-14 at 2, 28).

The felony judges argue that the deadlines were unreasonable because they must review 39,420 pages of documents, which they assert will take at least four months.  (Docket Entry No. 469 at 19 n.20; Docket Entry No. 469-8 at ¶ 9; Docket Entry No. 433 at ¶ 8).  The plaintiffs respond that the deadlines were reasonable because the items sought have already been identified based on prior subpoenas, and the felony judges previously provided their responses and objections

32

to the requests for production, although without any privilege log.  (Docket Entry No. 453 at 29–30).

The felony judges originally responded to the second set of document subpoenas in August 2020 and the first set of document subpoenas in January 2021.  (Docket Entry Nos. 453-3, 453-8).  In both responses, the felony judges stated that they were still obtaining and reviewing responsive documents.  For the second set of subpoenas, which included Requests for Production Nos. 1–4, the felony judges stated that they planned to begin production on a two-week rolling basis in October 2020.  (Docket Entry No. 453-3).  When the plaintiffs served the felony judges under Rule 45 in February 2020, and again in March, the felony judges had not finished searching for responsive documents.  The felony judges state that, to date, they have produced over 4,000 documents in response to the subpoenas.  (Docket Entry No. 469 at 18 & n.19).

As of March 31, 2021, the felony judges have found an additional 11,263 documents, comprising 39,420 pages, to review.  (Docket Entry No. 469-8 at ¶ 9).  The felony judges had responded and objected to the subpoenas before they were served under Rule 45, but they had not completed the process of obtaining or reviewing the responsive documents.  The felony judges state that they can review 400 pages of documents per workday.  At that rate, it will take at least 99 workdays to review the responsive documents obtained so far.  The compliance deadlines in the subpoenas were unreasonable.  But that does not warrant quashing the subpoenas.  Instead, the court modifies the subpoenas as follows:  the felony judges have until June 28, 2021 to begin producing the 39,420 pages of responsive documents currently awaiting review, and they have until December 9, 2021, to finish producing those documents.

The deadlines did, however, provide a reasonable time for the felony judges to produce a privilege log.  Counsel for the felony judges stated that she could produce a privilege log for the

second set of subpoenas by the end of January 2021.  (Docket Entry No. 453-4).  The felony

judges' response to the first set of subpoenas, which their counsel sent in January 2021, stated that

a privilege log would be produced "within a reasonable time."  (Docket Entry No. 453-8 at 5, 7–

10, 12–13, 15–17, 19–23, 25–26, 28–32).  Two months later, counsel estimated in her March 16,

2021, affidavit that she could produce a privilege log in one month.  (Docket Entry No. 433 ¶ 5).

No privilege log has been provided.  The deadlines in the plaintiffs' subpoenas were reasonable

for the felony judges to provide a privilege log for the documents previously reviewed and

withheld.  The felony judges must produce a privilege log by June 28, 2021.

Counsel for the 17 felony judges states that, in addition to the documents they have already

found, there will be an estimated 1,436 pages of documents identified each month by the felony

judges as a group that may be responsive to the plaintiffs' requests for production.  (Docket Entry

No. 469 at 19 n.20; Docket Entry No. 469-8 at ¶ 10).  Retrieving responsive documents appears

likely to involve about 4 work days of review per month.  Counsel must review and produce these

documents after meeting the December 9, 2021, deadline outlined above.  By March 7, 2022,

counsel must have reviewed and produced documents responsive to the plaintiffs' production

requests, that are not withheld as privileged or protected, through February 28, 2022.

After March 7, 2022, the felony judges must review and produce the documents identified

and retrieved beginning on March 1, 2022, on a monthly basis, unless they and the plaintiffs agree

to a different production schedule.

Counsel for the felony judges must provide a privilege log alongside the weekly document

production ordered above.  *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 501 (W.D. Tex. 2020)

(ordering the defendant to produce a privilege log); *Meador v. Starr Indem. & Liab. Co.,* No. CV

19-2378, 2020 WL 8256370, at *5 (E.D. La. Sept. 1, 2020) (same); *Higgs v. Costa Crociere S.p.A.*

*Co.*, No. 15-60280-CIV, 2019 WL 8370792, at *11 (S.D. Fla. Jan. 3, 2019) (a party must comply with the court's order to produce documents or a privilege log), *aff'd*, 969 F.3d 1295 (11th Cir. 2020).  The felony judges' privilege log is due by June 28, 2021, for the documents reviewed and withheld by that date.  The felony judges must supplement that log weekly, based on the documents reviewed and withheld after the previous log was produced.  By December 9, 2021, the felony judges must produce a privilege log for the 39,420 documents currently awaiting review.  By March 7, 2022, the felony judges must have supplemented the privilege log to cover all documents reviewed and withheld in response to the plaintiffs' production requests through February 28, 2022.

After March 7, 2022, the felony judges will supplement the privilege log to cover the documents reviewed and withheld beginning on March 1, 2022, on a monthly basis, unless they and the plaintiffs agree to a different production schedule.

The court modifies the plaintiffs' subpoenas to include this schedule providing ample time to respond.

## VII.   The Motion for a Protective Order

The felony judges seek a protective order under Rule 26(c) "barring any other discovery from being served on them by any party in this case."  (Docket Entry No. 413 at 35).  Under Rule 26(c), the court may issue orders limiting discovery to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1). Because the felony judges are not immune from the plaintiffs' discovery requests and the requests, as modified, do not impose an undue burden, the court denies the felony judges' request for a protective order.

## VIII.   The Modified Subpoenas

The court modifies the plaintiffs' subpoenas as follows:

- Requests for Production Nos. 21 and 22 are stricken;

- for the 39,420 pages of documents currently awaiting review, the 17 felony judges must:

  - by June 28, 2021:

    - produce all responsive, nonprivileged documents found within the first 8,000 pages; and

    - produce a privilege log for all documents reviewed and withheld within the first 8,000 pages;

  - after June 28, 2021:

    - produce all responsive, nonprivileged documents reviewed weekly; and
    - supplement the privilege log for all documents reviewed and withheld weekly;

  - by December 9, 2021:

    - produce all responsive, nonprivileged documents; and

    - produce a complete privilege log for all documents reviewed and withheld;

- for the documents not currently awaiting review and generated by the 17 felony judges after February 2021:

  - by December 9, 2021:

    - begin reviewing 400 pages per workday;

    - produce all responsive, nonprivileged documents weekly; and

    - produce a privilege log for all documents reviewed and withheld weekly;

  - by March 7, 2022:

    - produce all responsive, nonprivileged documents generated through February 28, 2022; and

    - produce a privilege log for all documents reviewed and withheld through February 28, 2022;

   o  by March 8, 2022:

         ▪  begin reviewing and producing all responsive, nonprivileged documents generated after March 1, 2022, monthly, unless the felony judges and the plaintiffs agree to a different schedule; and

         ▪  produce a privilege log for all documents reviewed and withheld monthly unless the felony judges and the plaintiffs agree to a different schedule.

## IX.   Conclusion

The felony judges' motion to quash the plaintiffs' subpoenas and for a protective order, (Docket Entry No. 413), is denied in part and granted in part.  The request for a protective order is denied and the plaintiffs' document subpoenas are modified.

SIGNED on May 14, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge