In The United States District Court For The Southern District Of Texas, Houston Division

Dwight Russell, et al.
Plaintiffs,

V.

Harris County, Texas, et al.
Defendants,

United States Courts
Southern District of Texas
FILED

DEC 02 2021

Nathan Ochsner, Clerk of Court

Case No. 4:19-cv-00226
(Class Action)
The Honorable Lee H. Rosenthal
U.S. District Judge

Civil Action No. H-19-226

Honorable Lee H. Rosenthal
Chief Judge
Bob Casey U.S. Courthouse
515 Rusk St. Room 11535
Houston, TX 77002

United States Courts
Southern District of Texas
FILED
DEC 02 2021
Nathan Ochsner, Clerk of Court

30 November 2021

Dear Honorable Lee H. Rosenthal,

Over this past summer, one of my neighbors in here, Christopher Clark, let me read his paperwork to the case mentioned on the previous page. Mr. Clark is one of the plaintiffs. When I read the names of the 23 District Felony Court Judges, I saw my Judge, Kelli Johnson. When I looked through paperwork that my girlfriend had sent me from the Harris County District Clerk's website, I saw the paperwork that said my bail was set at zero, before I was arrested or detained, before I had a lawyer, and before I had a bail hearing. There is also paperwork showing a high bond request was done.

On the night I was detained on San Jacinto by a Harris County where you pay the bonds, earlier that day, my girlfriend Delphine Toover and myself,

had received a call from One-Way Out Bail Bond at 6906 Denison St. Unit #A, Houston, TX 77020. They told us a warrant had been issued for my arrested for an incident between us on 07 February 2018, and we could come in, pay a bond, go over to San Jacinto Street and meet their runner, do a walkthrough and I would not be arrested. Delphine paid the bond with her debit card, and after sitting over at San Jacinto Street for several hours, a Deputy came out and said he had to keep me because I did not have a bond, even though I had bond receipts in my hand. I was booked in and given a higher bond. This contradicts Texas Code of Criminal Procedure, page 145, Art. 1709 (0.75a) Sec 2; Texas Criminal Procedure - Code and Rules, 2020 Edition, page 105, Art. 1709, Sec 2; and Texas Criminal And Traffic Law Manual 2017-2018, Code Of Criminal Procedure, pages 251-252, Art. 17.09, Sec 2.

When this incident between myself and Delphine happened, I was on probation out of Nacogdoches, Texas, but living in Houston. Before I came to TDCJ, my lawyer in Nacogdoches accidently gave me a copy of a Violation Report, date 08 February 2018, the day after my incident. This report tells me and Delphine that on the night I was detained, I wasn't detained because I didn't have a bond,

it was because either Judge Johnson revoked my bond or because there was some communication between Judge Johnson's irreparably corrupt court and Judge Edwin Klein's irreparably corrupt court in Nacogdoches County. Like I said, I had bond paperwork, paid bond paperwork in my hand.

While in the Harris County Jail, Attorney David L. Gaza (State Bar ID Number 07731475) was appointed to me. There was some collusion, malfeasance, and malicious prosecution between Harris County and Nacogdoches. Mr. Gaza never came to see me in jail. I only saw him at my court appearances. This contradicts the 2019-2020 Edition Texas Criminal And Traffic Law Manual, page 459, Code Of Criminal Procedure, Art. 26.04 Procedures for Appointing Counsel, Section (j) and Texas Rules Of Court Volume I - State 2001, page 371, Lawyer Duties To Clients. Everything I signed was coerced, I was under duress, and my signatures were involuntary.

Mr. Gaza did a County Auditor's Form 4D-18V, Harris County, TX (Rev. 4/14/2016) Attorney Fees Expense Claim. District Courts - Court Appearance for $495.00 There were Investigation Hours of zero and Investigation Other Expenses of zero. He also did a

County Auditor's Form 40-1LV. On this form it reads as follows: 06/18/2018 - Other - Consultation with family. Duration 01:00 (HH:mm). This is a BOLDFACED LIE. He knew I was on probation, but never made sure that what's written in the Texas Criminal And Traffic Law Manual 2017-2018 Edition, Page 491, Subchapter P, Revocation and Other Sanctions, Art 42A.751, Violation of Conditions of Community Supervision, Detention, and Hearing Sections (d) and (d) happened.

Due Process and Gagnon vs. Scarpelli, 411 US 778, 36 L Ed 2d 656, 93 S Ct. Says or mandates a Preliminary Hearing, but I never had one. Both Attorneys David L. Garza and Seth Johnson (State Bar ID Number 24082212) are Lawmongers, Pettifoggers, and Rambo Lawyers. The indictment in Harris County had my girlfriend listed as Delphine Tolliver when her name is Delphine Traver. Both of us don't know who Delphine Tolliver is. This is a material variance, plain error, fatal defect, and fatal variance. Mr. Garza should have done a Motion to Quash. Traver and Tolliver are not spelled alike, pronounced alike, nor sound alike.

There is paperwork filed that says "Witness filed an Emergency Protective Order." Another BOLDFACED

LIE. Delphine did not file any Protective Order, when she kept money on my phone to call home everyday, kept money on my books for commissary, and came to visit me. She did not do what's written in the Texas Rules Of Court Volume I - State 2021, page 1164, Section 5: Injunctions, Rule 682. Sworn Petition. And what's written in the 2019-2020 Edition Texas Criminal And Traffic Law Manual, Family Code, Subtitle B Protective Orders, Chapter 82 Applying For Protective Order, Subchapter A Application For Protective Order, Subchapter C Delivery Of Protective Order, Sec. 85.042 (a) did not happen, because she never filed any Protective Order. The word shall once is in all this stuff I read.

There is paperwork dated 27 February 2018, Texas Code Of Criminal Procedure Article 39.14 Joint List Of Requested And Released Discovery 39.14(j). This paperwork says there is "evidence requested by the defendant." I did not know how to request anything at that time. I know now because I've been going to the Law Library here since 6 Apr 2019. Nothing in the Texas Code of Criminal Procedure Article 39.14 (j) - Discovery happened.

Over the Summer, Harris County Public Defenders Office sent Post Conviction Writs to TDCJ Law Libra-

ies. I filled one out and sent it in. On 14 Sept 21, I received a letter from Nicholas Mensch at the Harris County PDO stating that "issues regarding bail are moot because I was convicted, and there could be collateral consequences." Black's Law Dictionary says "When a collateral consequence exists, a defendant's appeal of a conviction does not become moot when the criminal sentence is completed."

Nacogdoches really wanted Harris County to screw over me. But everyone was probably thinking I would never find out what went on, but I have. Harris County and Nacogdoches County violated not only my Civil Rights, but some of my Human Rights of the Universal Declaration of Human Rights. And when I was in Harris County, Delphine was going to hire a real lawyer, and when this lawyer looked up my case, he said Mr. Garza had filed paperwork saying I was incompetent. How can you say I'm incompetent when you never came to see me in jail. NEVER! And when my incident occured, I had been taking Testosterone Topical, Chorionic Gonadotropin (2,000 units), and Chorionic Gonadotropin (4,000 units). This was Mitigating evidence.

Harris County has paperwork filed that says "No Witness Found," for my last court date. Delphine was at all of my court dates, but at my last one, which was 21 June 2018, Delphine was not allowed to speak on my behalf. She said that since she wasn't willing to say what the prosecutor wanted her to say, she could not say anything. She has a two page affidavit scanned and saved at home with the dates and times of conversations with a Ms. Leiper at the District Attorney's Office, where Ms. Leiper wants her to say negative things about me.

Everything in this letter is true. If any paperwork I mentioned in this letter is needed, my girlfriend, Delphine Toover has it scanned and saved at home. She has a Power Of Attorney from me, and will be more than glad to email, fax, and mail to you. Delphine's number is 281-670-4732
Thank you for your time and assistance.

Respectfully,

M.C. Solliver Jr.

## UNSWORN DECLARATION

My name is Marvin Earl Tolliver Jr., my date of birth is June 18, 1973 and my inmate identifying number is 02241453. I am presently incarcerated in the Lynaugh Unit in Fort Stockton, Pecos County, Texas 79735. I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 20th day of November, 2021.

Marvin Earl Tolliver Jr.

*M E Tolliver Jr.*

This is a copy of the Violation Report I mentioned in my letter. Delphine and myself feel that this report played a part in my detention on the night I was detained. My Revocation Hearing was held on 4 January 2019, but we feel that is was really revoked on 28 February 2018. Judge Klein was my trial judge and Attorney Seth Johnson was my lawyer on that trial. Gagnon vs. Scarpelli and the Texas Constitution, as well as some other cases say a probationer is entitled to a "neutral and detached" hearing body. Judge Klein was very attached, biased, unfair, and partial. He also violated Canon 3 of the Code of Judicial Conduct. And in dealing with Seth Johnson for my revocation of probation, I was coerced, under duress, signed involuntary, and threatened.

It's a shame that I had to come to prison to find out what went on and what was supposed to go on. I took the time to investigate and do research on my cases. But there are countless others who don't have the slightest idea of wrong doing in their cases. I am very thankful to Mr. Unick for letting me read his paperwork. Everyone involved thought I was a dumb ass, I would never find out what went on, that I would break and give up. I didn't and I never will. Nacogdoches thought Delphine

would leave me too. We're still together, and she still has my back 100%. And I have another neighbor who had a judge listed in the case/lawsuit. That judge is Lakitta Harmon.

## VIOLATION REPORT

Date: February 28, 2018

Probationer:   Marvin Earl Tolliver Jr          Cause #: F142125 l
                                                         F1320445 Count1
                                                         F1320445 Count2
                                                         F1320445 Count3
                                                         F1320445 Count4
                                                         F1320445 Count5

Court: 420th Judicial District

Original Offense:

Burglary of a Habitation with Intent to Commit the Felony Offense of Aggravated Assault - a Felony of the First Degree (F1421251)

Aggravated Kidnapping by Using or Threatening to Use Deadly Force, namely, a Deadly Weapon, to wit: a Firearm – a Felony of the First Degree (F1320445 Count1)

Aggravated Kidnapping – a Felony of the First Degree (F1320445 Count2, F1320445 Count3, F1320445 Count4 and F1320445 Count5)

Original Sentence:

10 Years TDCJ Institution Division/ $0.00 Fine/ Probated 10 Years (F1320445 Count1, F1320445 Count2, F1320445 Count3, F1320445 Count4 and F1421251)
(10/27/2015 to 10/27/2025)

10 Years TDCJ Institution Division/ $10,000.00 Fine/ Probated 10 Years (F132044 Count5)
(10/27/2015 to 10/27/2025)

Attorney: Seth Johnson

Prior Criminal Record:

1992 - Theft - disposition unknown - Harris County
1995 - Assault / 2case - 6 months probation - Harris County

Alleged Violations:

New offense(s):
02/27/2018    Assault on Family Member – Felony (pending arrest)   Harris County   Pending

Failed to remit probation fees as ordered by the Court and is delinquent in the amount of $350.00 (F1320445 Count1)

<u>Supervision Level</u>: Level Indirect

<u>Court</u>:   ☒   Setting Required     ☐   No Hearing Required

<u>Disposition Recommendation</u>:

Revoke to ID

The defendant is 2 years into a 10 year term for 5 counts of aggravated kidnapping with a firearm and one count burglary of a hab with intent to commit aggravated assault and is charged with Felony Assault on a Family Member in Houston, following an argument with his girlfriend.

_Mike Harmon_
Mike Harmon
Community Supervision Officer

_Thomas Anthony_
Thomas Anthony
Unit Supervisor

That such violation or violations of the terms of probation occurred during the period, which the sentence in this case was made probationary.

WHEREFORE, the State prays that capias issue and upon arrest that a hearing be given the Defendant, that the Defendant be ordered taken into custody by the Sheriff pending hearing upon this application, and that upon such hearing the probation be revoked or modified.

*[signature]*

ATTORNEY FOR THE STATE
Janet R. Cassels
Assistant District Attorney
101 West Main, Suite 250
Nacogdoches, TX 75961
(936) 560-7766
State Bar No. 00794521

National Institutes of Health / U.S. National Library of Medicine



MedlinePlus
Trusted Health Information for You

Home → Drugs, Herbs and Supplements → Testosterone Topical

URL of this page: https://medlineplus.gov/druginfo/meds/a605020.html

# Testosterone Topical
pronounced as (tes tos' ter one)

## IMPORTANT WARNING:

Testosterone topical products may cause harmful effects to people who touch your skin in the area where you applied the gel or solution. Women and children are especially likely to be affected if they touch skin that has been covered with testosterone topical products. If a woman who is pregnant, may become pregnant, or is breastfeeding touches skin that has been covered with testosterone topical products, her baby may be harmed. Women should not use this medication, especially if they are or may become pregnant or are breastfeeding. Testosterone may harm the baby.

You must take precautions to be sure that others will not come into contact with testosterone gel or solution that is on your skin. After you apply testosterone gel or solution, you should allow the medication to dry for a few minutes and then put on clothing that completely covers the area so that no one will touch your bare skin. When you have finished applying the medication, you must wash your hands with soap and water to remove any medication that may be left on your hands.

Do not let anyone touch your skin in the area where you applied testosterone gel or solution. If you expect that you may have skin-to-skin contact with another person, you should wash the area very well with soap and water. If anyone touches skin that has been covered with testosterone gel or solution and has not been washed, that person should wash his or her skin with soap and water as soon as possible. You should also tell others to be careful when handling your clothing, bed linens, or other items that may have testosterone gel or solution on them.

If women or children touch skin that has been treated with testosterone products, they may develop certain symptoms. If a woman who may have come into contact with testosterone

heart problems; stroke and mini-stroke; liver disease; seizures; or mental health changes such as depression, mania (frenzied, abnormally excited mood), aggressive or unfriendly behavior, hallucinations (seeing things or hearing voices that do not exist), or delusions (having strange thoughts or beliefs that have no basis in reality). People who use higher doses of testosterone than recommended by a doctor may also experience withdrawal symptoms such as depression, extreme tiredness, craving, irritability, restlessness, loss of appetite, inability to fall asleep or stay asleep, or a decreased sex drive, if they suddenly stop using testosterone topical. Be sure to use testosterone topical exactly as directed by your doctor.

## What special dietary instructions should I follow?

Unless your doctor tells you otherwise, continue your normal diet.

## What should I do if I forget a dose?

Apply the missed dose as soon as you remember. However, if it is almost time for the next dose, skip the missed dose and continue your regular dosing schedule. Do not apply a double dose to make up for a missed dose.

## What side effects can this medication cause?

### Testosterone topical may cause side effects. Tell your doctor if any of these symptoms are severe or do not go away:

- breast enlargement and/or pain
- decreased sexual desire
- acne
- depression
- mood changes
- headache
- teary eyes
- dry or itchy skin
- diarrhea
- skin redness or irritation

### Some side effects can be serious. If you experience any of the following symptoms, call your doctor immediately:

- lower leg pain, swelling, warmth, or redness

Drugs & Medications

# Pregnyl Vial

GENERIC NAME(S): Chorionic Gonadotropin, Human

**Read Reviews (7)**

View Free Coupon

Uses   Side Effects  Precautions  Interactions   Overdose    Images



Pregnyl 10,000 Unit Intramuscular Solution



# View Prescription History Information Detail

## (Historical Prescription of MARVIN TOLLIVER)

**Date of Birth [ 06/18/1973 ]**

**Last updated [ 11/15/2018 at 0302 ]**

You are viewing the selected Historical Prescription Information.

*2,000 IU prior to 4,000*

### Prescription Number: 25963976

| | |
|---|---|
| **Medication Name** | CHORIONIC GONADOTROPIN 10,000U 10ML |
| | INJECT 4000 IU INTRAMUSCULARLY MO,WE,FR DILUTE THE VIAL WITH 5 MLS OF DILUENT, EACH ML CONTAINS 2000 UNITS. INJECT 2 MLS (THIS WILL BE 4000 UNITS) EVERY OTHER DAY. WHEN THE VIAL CONTAINS ONLY 1 ML, YOU WILL INJECT YOURSELF WITH THE REMAINING 1 ML FROM THE OLD VIAL, |
| **Fill Date** | 07/15/2018 |
| **Dispensed On** | 07/23/2018 |
| **Status** | Expired |
| **Facility** | HOUSTON TX VAMC |
| **Ordered On** | 11/13/2017 |
| **Quantity** | 4 |
| **Refills Remaining** | 2 |
| **Expiration Date** | 11/14/2018 |

Marvin Tollivin #[illegible]
Lynaugh Unit
1089 S. Hwy 2037
Ft. Stockton, TX 79735



7013 2630 0001 1885 5860

United States Courts
Southern District of Texas
FILED

DEC 02 2021

Nathan Ochsner, Clerk of Court

11535
Rosenthal

Honorable Lee H. Rosenthal
Chief Judge
Bob Casey U.S. Courthouse
515 Rusk St. Room 11535
Houston, TX 77002

"Legal Correspondence"