**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |
|---|---|
| RUSSELL, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:19-cv-00226 |
|  | ) (Class Action) |
|  | ) The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al., | ) U.S. District Judge |
| Defendants. | ) |

**PLAINTIFFS' ADVISORY**

On January 4, 2022, the Court scheduled a status conference for January 10, 2022. Dkt. 545. Plaintiffs have continued to monitor the jail population, and, in advance of the hearing, wish to raise a few concerns, primarily that (1) we are still seeing many people who are stuck in jail on low bonds, often without bail hearings, and (2) the Sheriff has begun transferring almost 500 people to a private jail in Louisiana because of overcrowding.[1] It is common knowledge that people detained in the Harris County Jail are routinely not brought to court and rarely see their lawyers. Transferring these individuals to Louisiana will inevitably exacerbate those Due Process and Sixth Amendment problems and will likely cause cases to drag on even longer.

**I.  People in the Jail Continue to be Denied Bail Hearings**

Plaintiffs are continuing to identify people who are languishing in the jail for months and sometimes years without any evidence of a bail hearing, which is one cause of the overcrowding that is purportedly "requiring" the County to transfer people to Louisiana.

To take just a few examples:

---

[1] Ted Oberg, *Harris County inmates sent to Louisiana in an effort to control jail* (Jan. 6, 2022), available at https://abc13.com/harris-county-jail-prison-safety-sheriffs-office-inmates/11434478/.

1

- J.B.C. is 68 years old, homeless, and a veteran. He was arrested on December 25, 2020, and accused of robbery. (J.B.C. was apparently accused of stealing a bottle of wine from CVS and threatening to strike a person with the bottle.) J.B.C. was not present at his 15.17 hearing, and the Hearing Officer set a secured bond of $30,000. The bond was lowered a few days later to $5,000. The case is assigned to Judge Kelli Johnson. **J.B.C. is currently still stuck in jail due to inability to pay $5,000, more than a year after his arrest. There is no evidence that J.B.C. has ever had an adversarial bail hearing.** J.B.C. has sent at least three letters to the court stating that he was never arraigned and asking to be released. J.B.C.'s lawyer is Kenneth McCoy. A client advocate employed by the Public Defender's Office has been unable to reach Mr. McCoy and reported that J.B.C. did not even know he had a lawyer. According to the client advocate, J.B.C's most recent court setting was on November 11, but he was not taken to court and did not see his lawyer that day. His next court setting is on Monday, January 10.[2]

- H.L. is 45 years old. He was arrested on November 23, 2021 for third-offender theft (an enhanced misdemeanor). He allegedly stole two jackets, four hats, and a backpack. His most recent conviction in Harris County was back in 2015, when he was accused of stealing two packs of beer. **He was released on a personal bond by Hearing Officer Lionel Castro on November 24, 2021. He appeared for an arraignment before Judge Ramona Franklin on November 30, 2021. Court records show that he was present in court that day, but that Judge Franklin revoked his personal bond, and he was taken into custody on a $15,000 secured bond.** There is no evidence that H.L. was given notice of a bail hearing, and his lawyer (Riddhi Desai) was not appointed until this date, leaving her no time to prepare. There are also no findings in the court record justifying his detention. **He is in jail as of today. His next court date is March 2, 2022.** There is no evidence that his lawyer has requested a bail hearing on H.L.'s behalf or that Judge Franklin has scheduled any such hearing.

- **On November 29, 2021, we identified a 66-year old veteran who was detained on a $10,000 secured bond he could not afford.** J.S.B. was booked into the jail on August 14, 2021. Defense counsel stated at the 15.17 hearing that J.S.B. has "MS" (presumably multiple sclerosis) and had been diagnosed with a blood disorder. The Hearing Officer (Lisa Porter) indicated on the 15.17 form that she was unable to issue a personal bond "per CCP 17.03" (a statute that is interpreted locally to prohibit anyone other than a district judge from releasing people charged with certain crimes on a personal bond). After the 15.17 hearing, J.S.B. submitted two pro se requests for a personal bond, but no bail hearing was ever set. In correspondence to the court (Judge Brian Warren), J.S.B. stated that he is a disabled veteran and was looking for a long-term assisted living facility, suggesting that he needs significant support for day-to-day activities. As of November 2021, there had been no in-person adversarial bail hearing on the record in Judge Warren's courtroom. **Upon receiving notice from Civil Rights Corps that J.S.B. was being detained without**

---

[2] *See ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1108–09 (S.D. Tex. 2017) ("[T]he homeless and the friendless are denied release on personal bond because they lack co-indemnitors. . . . The rigid demand for secured, rather than unsecured, money bail from a homeless individual is indistinguishable from an order that a misdemeanor defendant so indigent as to be homeless be detained because of that indigence.").

**a constitutional bail hearing, Judge Warren released J.S.B. on a personal bond – but only after he had been detained for over 3 months.**

These cases highlight systemic problems that raise the following questions:

1. What are the Judges doing to ensure these individuals have effective counsel who meet with their clients?

2. What are the Judges' policies for ensuring that bail is regularly considered?

## II.   "Violent" Cases Result in Conviction Less Than 50% of the Time – And Are Often Dismissed

Another issue that has gained significant traction in the media is the allegation that "dangerous" people charged with "violent" offenses are being released pretrial and "committing" new violent crimes. But the media virtually never mention the District Attorney's Office's low conviction and high dismissal rates. In 2019, only 42% of felony cases resulted in convictions; 34% of felony cases were dismissed; and 23% resulted in deferred adjudication (meaning the person pled guilty, but was not found guilty, and was released into the community subject to conditions).[3] In 2020, 68% of misdemeanor cases were dismissed.[4] Thus, an "arrest" in no way equals a "conviction" in Harris County: in fact, more often than not, the DAO fails to convict.

The Public Defender's Office recently collected data on 152 "violent" cases that appeared on probable cause dockets during the first week of December 2018. Plaintiffs conducted an informal analysis of these 152 cases. That analysis showed that, as of mid-December 2021:

- 21 of those cases were still active,
- 33 had resulted in deferred adjudication,
- 67 had been dismissed,
- 21 had resulted in convictions (including 16 cases that resulted in 4 years' confinement or less and 10 cases that resulted in 2 years' confinement), and
- 7 were "no billed" (meaning the grand jury found insufficient evidence to prosecute)

---

[3] ECF 728-1 at 2, *ODonnell v. Harris County*, Case No. 4:16-cv-1414 (S.D. Tex. Sept. 29, 2021) (Letter from Justice Management Institute).
[4] ECF 726-1 at 46, *ODonnell v. Harris County*, Case No. 4:16-cv-1414 (S.D. Tex. Sept. 24, 2021) (Third *ODonnell* Monitor Report).

3

In other words, **more than 3 years after these "violent" cases were filed, only 14% had resulted in convictions; 49% had been dismissed or no billed; and 22% had resulted in deferred adjudication**. This data suggests that when "violent" cases are forced to disposition, the DAO is unlikely to obtain a conviction and will dismiss almost half of them. These facts raise other important questions:

3. What are the Judges doing to ensure that the DAO turns over discovery in a timely manner and that cases are set for trial?
4. Why is the DAO accepting so many charges for prosecution that it ultimately cannot prove, particularly in light of the growing backlog of unresolved cases?

Plaintiffs believe that the questions identified in this Advisory are important for discussion at the status conference on Monday.

Date: January 7, 2022

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Jeffrey Stein (*Pro Hac Vice*)
jeff@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

*/s/ Liyah Brown*
Mimi Marziani (*Pro Hac Vice*)
Texas State Bar No. 24091906
mimi@texascivilrightsproject.org
Liyah Brown (*Pro Hac Vice*)
D.C. Bar No. 500149
liyah@texascivilrightsproject.org
Peter Steffensen
Texas State Bar No. 24106464
Southern District No. 3327006
peter@texascivilrightsproject.org

Respectfully Submitted,

*/s/ Neal S. Manne*
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

4

TEXAS CIVIL RIGHTS PROJECT
2202 Alabama Street
Houston, TX 77004
Telephone: 512-474-5073 ext. 118

## CERTIFICATE OF SERVICE

I certify that on January 7, 2022 a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the U.S. District Court for the Southern District of Texas Procedures for Electronic Filing.

*/s/ Elizabeth Rossi*
Elizabeth Rossi