# EXHIBIT B

Case 4:19-cv-00226 Document 589-2 Filed on 08/22/22 in TXSD Page 2 of 11
Russell vs
Harris County Texas
Jennifer Keith
March 10, 2022

6

1 representing you today?

2    A.   I do.

3    Q.   Is that Mr. Nichols?

4    A.   Yes, sir.

5    Q.   This is a continuation of the deposition that

6 we took on March 22nd of 2021. I'm not going to be

7 repeating the areas that we covered then except insofar

8 as it's necessary to establish context around the

9 questions that I'm going to be asking you today.

10         Do you understand that?

11    A.   Yes.

12    Q.   All of my questions today will be in your

13 representative capacity on behalf of the Harris County

14 District Attorney's Office pursuant to Rule of Civil

15 Procedure 30(b)(6) unless otherwise specified.

16         Do you understand?

17    A.   Yes.

18    Q.   And for all the questions that I ask, just like

19 last time, unless I say otherwise, the time period I'm

20 asking about is January 1st, 2015, through the present.

21         Do you understand that?

22    A.   Yes.

23         MR. NICHOLS: Objection. Yeah, objection,

24 form. And we, just for the record, Eric Nichols, we

25 have our objections to the form of the organizational

70

1  trained initially by me as well as observing other
2  prosecutors on the day shift for two weeks.  There will
3  also -- if there are changes to the law or procedure,
4  then there will be trainings relative to those
5  particular topics, as I stated earlier, such as the bail
6  reform laws that recently went into effect in December
7  and January and just as needed to address any particular
8  issues with process, procedure and substance as they
9  arise.
10      Q.   (By Mr. Stein)  All right.  I'm going to ask
11 you some questions about whether the actions you took in
12 Ka'Darian Smith's case were consistent with the District
13 Attorney's Office's policies regarding communications
14 with judges and bond requests.
15           Now, in Mr. Smith's case, you were the ADA
16 present at the 15.17 hearing, correct?
17           MR. NICHOLS:  Jeff, so you've mentioned
18 earlier as part of your long prologue in asking a bunch
19 of understandings about the deposition that you were
20 going to be covering matters that relate to the DA's
21 Office generally in her organizational capacity.  Am I
22 now hearing that you want to ask questions specifically
23 about a particular case in her individual capacity?
24           MR. STEIN:  Mr. Nichols, we've already
25 litigated whether we get to inquire about whether the

Case 4:19-cv-00226   Document 589-2   Filed on 08/22/22 in TXSD   Page 4 of 11
Russell vs                                                          Jennifer Keith
Harris County Texas                                                March 10, 2022

71

1  conduct in that case was consistent with the official
2  policies.  Ms. Keith's position as an organizational
3  representative is perfectly appropriate to answer
4  questions about that topic.
5              MR. NICHOLS:  Yeah.  And, Jeff, I politely
6  and respectfully disagree with your characterization as
7  to what was "litigated."
8              My recollection is that there was some
9  discussion about talking about, in general, about the
10 policies that the DA's Office has with respect to
11 ex parte communications with judges.
12             I don't recall any litigation, much less
13 ruling, that said that it would be appropriate to go
14 into the facts and circumstances of a particular case.
15             MR. STEIN:  I'm just going to pull up --
16 it's one of like the three points that we raised before
17 Judge Rosenthal.  And specifically, it was whether Ms.
18 Keith's alerting of prosecutors in Judge Randy Roll's
19 courtroom about a hearing officer's imposition of a
20 personal bond in an aggravated assault case was
21 consistent with HCDAO policies regarding communications
22 with judges and bond requests.
23             MR. NICHOLS:  Yes.
24             MR. STEIN:  You raised it before Judge
25 Rosenthal.  I explained the relevance of that line of

Case 4:19-cv-00226   Document 589-2   Filed on 08/22/22 in TXSD   Page 5 of 11
Russell vs
Harris County Texas
Jennifer Keith
March 10, 2022

72

1  questioning.  Judge Rosenthal agreed that we are
2  permitted to reopen on that, and so...
3                 MR. NICHOLS:  Respectfully, I think the
4  discussion before Judge Rosenthal, which was in the
5  context of a premotion conference, related to the
6  policies that the DA's Office has with respect to
7  ex parte communications.
8                 So I just want to make sure it's clear on
9  the record that now you're not asking for her to testify
10 about that subject, you're asking her to testify about
11 an individual case in which she individually was
12 involved?
13                MR. STEIN:  I'm asking her about a case
14 because it bears on the policies.  My questions are
15 about whether the conduct there was consistent with the
16 policies.
17                MR. NICHOLS:  All I want to make sure to
18 get clear, Jeff, the record that you're now asking for
19 -- I'm not saying I'm not going to let her testify to
20 it.  The record that you're asking about is her
21 individual perception of a particular case as opposed to
22 general Harris County District Attorney's Office
23 policies?  And if you just help us out by that,
24 especially in light of your comment at the beginning
25 that said you were only going to talk about things in

Case 4:19-cv-00226   Document 589-2   Filed on 08/22/22 in TXSD   Page 6 of 11
Russell vs
Harris County Texas
Jennifer Keith
March 10, 2022

73

1  her capacity as an organizational representative, I
2  think that'll help move things along.
3              MR. STEIN:  In the interest of moving
4  things along and as a good faith agreement, I'll agree
5  to ask in your individual capacity with the
6  understanding that then we will be able to move through
7  this relatively smoothly, not have to argue about
8  whether it's properly within the scope so that everyone
9  can go home hopefully very soon.
10             MR. NICHOLS:  All right.  Could you ask
11 your question again, please.
12    Q.   (By Mr. Stein)  In Mr. Smith's case, you were
13 the ADA present at the 15.17 hearing, correct?
14             MR. NICHOLS:  Objection, form, and beyond
15 the scope.
16             Ms. Keith, you can answer.
17    A.   Yes, I was.
18    Q.   (By Mr. Stein)  And in that case, you asked the
19 hearing officer to impose a $30,000 secured bond?
20             MR. NICHOLS:  Objection to form and beyond
21 the scope.
22             Ms. Keith, you can answer.
23    A.   I believe that's what I asked for, yes.
24    Q.   (By Mr. Stein)  I'm going to throw Exhibit 11
25 into the chat, going to put it up on the screen share so

Case 4:19-cv-00226   Document 589-2   Filed on 08/22/22 in TXSD   Page 7 of 11
Russell vs
Harris County Texas
Jennifer Keith
March 10, 2022

74

1  we can all look at it.
2              (Exhibit 11 marked.)
3      Q.   (By Mr. Stein)  All right.  And I'm going to
4  fast forward to time stamp 26:09.
5              Now, this is a video of that 15.17
6  hearing; is that correct?
7      A.   It appears to be, yes.
8      Q.   And beginning at time stamp 26:09, I'm going to
9  press play.  Let me know if you have trouble hearing.
10             (Video played.)
11     Q.   (By Mr. Stein)  And I'm stopping at time stamp
12 26:20.
13             Were you able to hear the hearing officer
14 say, "I will approve you for a personal bond"?
15     A.   Yes.
16     Q.   Now, following a later unrelated 15.17 hearing
17 of that same docket, you came back to address the
18 hearing officer in Mr. Smith's case, correct?
19     A.   Yes.
20     Q.   I'm going to fast forward to 31:08.  And I'm
21 going to play it for you now.
22             (Video played.)
23     Q.   (By Mr. Stein)  And I'm stopping at 31:45.
24             Were you able to hear that clip?
25     A.   Yes.

Case 4:19-cv-00226   Document 589-2   Filed on 08/22/22 in TXSD   Page 8 of 11
Russell vs
Harris County Texas
Jennifer Keith
March 10, 2022

75

1    Q.   Who was the prosecutor in Judge Roll's
2  courtroom that you contacted?
3              MR. NICHOLS:  Objection, form.
4    A.   Allen Otto was the chief in the court.
5              MR. NICHOLS:  Yeah, I'm just objecting to
6  form and beyond the scope; but let's just move through
7  this.
8    Q.   (By Mr. Stein)  How did you contact the
9  prosecutor in Judge Randy Roll's courtroom?
10             MR. NICHOLS:  Objection to form, beyond
11 the scope.
12   A.   I believe it was by email.
13   Q.   (By Mr. Stein)  And what did you tell the
14 prosecutor to relay to Judge Randy Roll?
15             MR. NICHOLS:  Objection to form and beyond
16 the scope.
17   A.   I did not tell the prosecutor to relay any
18 information to Judge Roll.
19   Q.   (By Mr. Stein)  What did you tell the
20 prosecutor in Judge Randy Roll's courtroom?
21             MR. NICHOLS:  Objection, form, and beyond
22 the scope.
23   A.   I advised him of the ruling made during the
24 15.17 hearing as I had prior knowledge from prior cases
25 of Judge Roll's supposed policy regarding aggravated

76

1  offenses.  So I simply advised him of the outcome of the
2  15.17 hearing for that particular defendant.
3       Q.   (By Mr. Stein)  Did you advise other
4  prosecutors in other courtrooms that day of outcomes in
5  the 15.17 hearing over email as you did in this case?
6            MR. NICHOLS:  Objection, form, and beyond
7  the scope.
8       A.   I may have.  I don't have any independent
9  recollection of whether I did or this particular day.
10 But it is not an uncommon occurrence for the hearing
11 court prosecutor to notify the trial court prosecutors
12 of bail hearing outcomes for defendants pending -- with
13 cases pending in their courts for a variety of reasons.
14      Q.   (By Mr. Stein)  When the hearing officers issue
15 a bail ruling in a particular case at the 15.17 hearing,
16 do you record that ruling in the case file or otherwise
17 memorialize it as part of the case file?
18           MR. NICHOLS:  Now, I think he's back in
19 the mode of asking an organizational representative
20 question.
21           MR. STEIN:  That's correct.
22      A.   Yes, we make internal -- we record it
23 internally; and it is also memorialized in the
24 documentation that is generated by the hearing officers
25 at the conclusion of each bail hearing.

Case 4:19-cv-00226   Document 589-2   Filed on 08/22/22 in TXSD   Page 10 of 11

Russell vs
Harris County
Jennifer Keith
March 22, 2021

232

1          Did you announce to the hearing
2  officer that you would ask prosecutors before
3  the District Court judge to contact that
4  District Court judge about this case?
5       A.   Not exactly.
6       Q.   What did you ask?
7       A.   I had prior knowledge that the
8  District Court judge -- of his position on
9  Personal Bonds on aggravated offenses, and
10 advised the hearing officer of that, primarily
11 from the standpoint of --
12            MR. NICHOLS:  And, Ms. Keith, I
13       don't want you getting into your work
14       thought process or whatever.
15            Just tell him what you can recall
16       about what you said to the hearing
17       officer in that matter.
18            THE WITNESS:  I advised the hearing
19       officer of the -- my knowledge of the
20       District Court judge's stance on
21       aggravated offenses, and that I did
22       advise the court prosecutors of the
23       outcome of the 15.17 Hearing, which we
24       do often.
25       Q.   (BY MR. STEIN)  And when you say

1  that you were aware of the District Court
2  Judge Roll's stance on Personal Bonds for
3  aggravated offenses, what was that stance?
4       A.   That he -- that Personal Bonds for
5  aggravated offenses in his court were rare.
6       Q.   What did Judge Roll do to
7  communicate that preference to you?
8       A.   He didn't do anything.
9       Q.   So how did you learn of the judge's
10 preference?
11      A.   I knew that from conversations with
12 prosecutors in his court on a prior
13 occasion -- or prior occasions.
14      Q.   Okay.
15           We're going to -- there we go.
16           We're just going to go back to that
17 Exhibit 12 and I'm going to begin playing at
18 31:10.
19           MR. NICHOLS:  Just for the court
20       reporter's benefit, are you -- are you
21       expecting the court reporter to follow
22       along and transcribe this?
23           MR. STEIN:  I don't believe that
24       the court reporter transcribes exhibits.
25           Is that correct, Ms. Reporter?