## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DWIGHT RUSSELL, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 4:19-cv-00226** |
| | ) | **(Class Action)** |
| **v.** | ) | **The Honorable Lee H. Rosenthal** |
| | ) | **U.S. District Judge** |
| **HARRIS COUNTY, TEXAS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH

## TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................................ 5

SUMMARY OF THE ARGUMENT .................................................................................... 6

STATEMENT OF ISSUES TO BE RULED ON ............................................................... 7

ARGUMENT ...................................................................................................................... 8

   I.    Factual Background and Procedural History ................................................. 8

       A.    Ka'Darian Smith's 15.17 Hearing ............................................................ 8

       B.    The Harris County District Attorney's Office Consented to Two Depositions Related to Bail Policies .............................................................. 8

       C.    Plaintiffs Subpoenaed HCDAO for the Emails About Which Ms. Keith Testified ... 10

   II.    The Court Should Deny HCDAO's Motion to Quash Because Plaintiffs' Subpoena Requests Relevant Discovery ......................................................... 11

       A.    The Subpoenaed Discovery Is Directly Relevant to Plaintiffs' Claims ..................... 11

       B.    The Subpoenaed Discovery Is Relevant to Assessing the Credibility of Ms. Keith's Testimony .................................................................................. 14

   III.    The Court Should Deny Plaintiffs' Motion to Quash Because the Subpoenaed Discovery Is Not Privileged. ......................................................... 16

       A.    The Subpoenaed Discovery Is Not Protected By Attorney-Client Privilege Because It Was Not a Client Communication, Was Not Intended to Be Confidential, and Any Such Privilege Was Waived ...................................................................... 17

       B.    The Subpoenaed Discovery Is Not Protected As Work Product ............................... 18

   IV.    The Court Should Deny HCDAO's Motion to Quash Because the Subpoenaed Discovery Is Not Protected by Eleventh Amendment Immunity ........................... 20

       A.    Eleventh Amendment Immunity Does Not Apply Because a Subpoena Isn't a Suit. 20

       B.    HCDAO Waived Any Potential Eleventh Amendment Immunity Claim ................. 22

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

**FIFTH CIRCUIT CASES**

*Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.,* 876 F.3d 690, 696 (5th Cir. 2017) ............................................................................................................................... 14

*Fontenot v. McCraw*, 777 F.3d 741,753 (5th Cir. 2015) ......................................................... 18

*Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349 (5th Cir. 1983) ................................... 17

*King v. Univ. Healthcare Sys., L.C.,* 645 F.3d 713, 720 (5th Cir. 2011) .............................. 14

*Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) .................................................... 15

*ODonnell I,* 892 F.3d 147 at 157 ................................................................................................ 9

*Player v. Reese,* 300 Fed. Appx. 310, 312 (5th Cir. 2008) .................................................... 11

*Cazorla v. Koch Foods of Mississippi, L.L.C.,* 838 F.3d 540 (5th Cir. 2016) ........................ 11

*Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) .................................. 16, 17

*United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976) ................................................ 14

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ................................ 8

**SOUTHERN DISTRICT OF TEXAS CASES**

*ODonnell v. Harris County*, 251 F. Supp. 3d at 1144–45 ....................................................... 9

*Vital v. Varco,* CV H-12-1357, 2015 WL 7736637, at *3 (S.D. Tex. Nov. 30, 2015), *aff'd sub nom. Vital v. Nat'l Oilwell Varco, L.P.,* 685 Fed. Appx. 355 (5th Cir. 2017) ........................ 13

*Vital v. Varco,* CV H-12-1357, 2015 WL 7736637, at *3 (S.D. Tex. Nov. 30, 2015), *aff'd sub nom. Vital v. Nat'l Oilwell Varco, L.P.,* 685 Fed. Appx. 355 (5th Cir. 2017) ........................ 11

**SUPREME COURT CASES**

*Alden v. Maine,* 527 U.S. 706 at 735 ........................................................................................ 18

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 616 ..................................... 20

*PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2260 (2021) .......................................... 18

*United States v. Abel*, 469 U.S. 45, 50–51 (1984) .................................................................... 9

*United States v. Salerno*, 481 U.S. at 749 ................................................................................ 9

*Washington v. Glucksberg*, 521 U.S. 702 ................................................................................. 9

**OTHER CASES**

*Jones v. Tozzi,* No. CV-F-05-148 OWW/DLB, 2007 WL 1299795, at *4 (E.D. Cal. Apr. 30, 2007) ...................................................................................................................................... 19

*United States v. Univ. of Mass, Worcester*, 167 F. Supp. 3d 221, 223 –24 (D. Mass. 2016) ....... 18

*Aliv. Carnegie Inst. of Washington,* 306 F.R.D. 20,30 n. 8 (D.D.C.2014) .................................. 19

*Allen v.Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) ............................................. 19

*Arista Records LLC v. Does* 1-14, No. 7:08CV00205, 2008 WL 5350246, at *3 (W.D. Va. Dec. 22, 2008) ................................................................................................................................ 19

*Charleston Waterkeeper v. Frontier Logistics, L.P.,* No. 2:20-CV-1089, 2020 WL 5629717, at *5 (D.S.C. Sept. 21, 2020) ............................................................................................................ 19

*Jackson v. AFSCME Local 196,* No.3:07CV0471 (JCH), 2008 WL 1848900, at *2 (D. Conn. Apr. 25, 2008) .......................................................................................................................... 19

*Laxalt v. McClatchy*, 109 F.R.D. 632,634 (D. Nev.1986) ............................................................. 19

*United States Dep't of Just. v. Ricco Jonas*, No. 18-MC-56-LM, 2018 WL 6718579, at *4

  (D.N.H. Nov. 1, 2018) ................................................................................................................ 19

**RULES**

Fed. R. Civ. P 30(b)(6).............................................................................................. 4, 11, 15

Fed. R. Civ. P. 26(b)(3)...................................................................................................... 16

Fed. R. Civ. P. 26(b)(5)(A)(ii) ............................................................................................ 7

Fed. R. Civ. P. 45 ......................................................................................................... 7, 8

Fed. R. Civ. P. 45(d)(3)(iv)............................................................................................... 8

Fed. R. Evid. 401 .............................................................................................................. 9

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs allege ongoing, irreparable harm to a putative class of thousands of presumptively innocent people detained in the jail in violation of their fundamental constitutional rights. Plaintiffs have alleged and seek to prove that actors in the pretrial system follow the rules, policies, and customs regarding the bail process that are promulgated by Felony Judges and enforced by the Harris County Sheriff. These policies result in unconstitutional felony bail orders that cause the pretrial detention of thousands of people every day. *See* Doc. 195-1 (Second Amended Complaint).

Throughout this case, Plaintiffs have sought and received discovery from one of pretrial system's most fundamental participants: the non-party Harris County District Attorney's Office ("HCDAO"). HCDAO staff enter and review the initial bail amount on the charging document, request and argue bail before Hearing Officers in 15.17 hearings, and make arguments to modify or revoke bail before the calendar judge. *See, e.g.*, Exhibit 2 (Dep. of Jennifer Keith, Mar. 10, 2022) at 29, 30, 105-106.

In response to a subpoena served by Plaintiffs, HCDAO is withholding two specific email threads. The emails were either to or from HCDAO's corporate representative at its Fed. R. Civ. P. 30(b)(6) deposition: Jennifer Keith, who served as Section Chief of the Hearing Court Section before becoming Division Chief of the Intake Division. Based on Ms. Keith's deposition testimony about the emails and their underlying subject matter, the emails likely contain both evidence of an *ex parte* communication between HCDAO prosecutors and former Felony Judge Randy Roll, as well as evidence of Judge Roll's unconstitutional bail-setting policies. HCDAO has moved to quash Plaintiffs' subpoena on the bases of relevance, attorney-client privilege,

work-product protection, and Eleventh Amendment immunity. Doc. 589 (HCDAO'S Motion to Quash). Fact discovery in the case closes on Sep 26, 2022.

## SUMMARY OF THE ARGUMENT

As explained below, HCDAO's assertions are not supported by the record. The email threads sought are relevant because they: (1) help to establish the existence of unconstitutional bail policies set by the felony judges and enforced by the Sheriff and County as alleged in Counts I-III of the Complaint; (2) provide important information about how the bail system actually functions; and (3) go directly to the credibility of Ms. Keith's deposition (and, potentially, future trial) testimony about the bail system. Moreover, contrary to HCDAO's argument, attorney-client privilege, work-product protection, and Eleventh Amendment immunity do not apply. Therefore, HCDAO's motion should be denied.

## STATEMENT OF ISSUES TO BE RULED ON

1. Whether Plaintiffs' subpoena to the Harris County District Attorney's Office for certain emails involving its Fed. R. Civ. P. 30(b)(6) representative should be quashed on the grounds of relevance, attorney-client privilege, work product doctrine, or Eleventh Amendment immunity.

**ARGUMENT**

**I.    Factual Background and Procedural History**

**A.   Ka'Darian Smith's 15.17 Hearing**

In November of 2019, Ms. Keith appeared on behalf of HCDAO at the 15.17 hearing of

Ka'Darian Smith.  At the hearing, Mr. Smith's public defender informed the Hearing Officer that

Mr. Smith had never been arrested before, was "below average risk," had "no violent criminal

activity flag," and was "a full-time student athlete for the University of Houston football team."

*See* Exhibit 3 at 24:47-26:08 (recording of Mr. Smith's 15.17 Hearing, available at

https://tinyurl.com/wnhrjuzv). Ms. Keith requested a secured bond of $30,000. *See* Exhibit 3 at

24:48. The Hearing Officer granted Mr. Smith a personal bond. Shortly after, Ms. Keith alerted

the court that she received an email about Mr. Smith's case. Exhibit 3 at 28:38 ("Judge, I just got

an email about something on the previous case that I need to bring to your attention.") She then

stated, "I'm just letting the court know I advised the prosecutors in the court of the rulings here,

and I was advised by the chief of the court that 'Judge Roll does not allow PR bonds on

aggravated cases'" Exhibit 3 at 31:12. She continued, "So, I told him I would let you know but it

may be a situation where the court addresses it and the judge may revoke the personal bond now.

So just FYI." *Id*. at 31:32. Less than 10 minutes later, Ms. Keith announced that Judge Roll

revoked Mr. Smith's personal bond. *Id.* at 37:07 (Ms. Keith: "It was revoked." Hearing Officer:

"Already?")

**B.   The Harris County District Attorney's Office Consented to Two Depositions Related
to Bail Policies**

Plaintiffs deposed Ms. Keith in both her personal capacity and her capacity as a corporate

representative of Harris County District Attorney's Office ("HCDAO"). HCDAO and Ms. Keith

consented to the deposition.  During the deposition, and during a subsequently re-opened deposition (by which time Ms. Keith had assumed the position of Division Chief of the Intake Division), Ms. Keith testified about emails she exchanged with home court prosecutor Allen Otto in connection with the Article 15.17 hearing of Ka'Darian Smith.[1] *See*., e.g., Exhibit 1; Exhibit 2.

According to Ms. Keith's testimony, after the Hearing Officer announced his imposition of a personal bond in Mr. Smith's case, Ms. Keith told the Hearing Officer that she emailed Mr. Otto in Judge Randy Roll's courtroom to alert him of the personal bond, which violated Judge Roll's position of prohibiting personal bonds for people charged with aggravated assault. *See* Exhibit 1 (Dep. of Jennifer Keith, Mar. 22, 2021) at 234 (Q: "Was that the stance of Judge Roll that you were just referring to when you stated, 'Judge Roll does not allow personal bonds in aggravated cases'?" A: "That was my understanding from the prosecutors who practiced in his court."). Ms. Keith later qualified her characterization by referring to a "*supposed* policy," *see* Exhibit 2 at 75, 78 (emphasis added). *Id.* at 233.

Ms. Keith also claimed that limitations in her memory prevented her from providing the full details of her email exchange with Mr. Otto. *See* Exhibit 2 at 78 ("I don't have a specific recollection of what the exact communication was, but it's pretty much reflected in what I told the court.

---

[1] HCDAO consented to depositions of Ms. Keith in her personal and representative capacity. To minimize the burden of the deposition, Plaintiffs agreed to combine the two depositions into a single deposition, with Plaintiffs asking certain questions in Ms. Keith's personal capacity and certain questions in her official capacity. Following Ms. Keith's failure to answer particular questions, and *errata* modifying answers to others, HCDAO counsel consented to reopen the deposition as to certain lines of questioning, while maintaining its objection to reopening other lines of questioning. In response, Plaintiffs requested a pre-motion conference at which the Court indicated that it would allow Plaintiffs to reopen the deposition. *See* Exhibit 6 at 1 (Request for Pre-Motion Conference (Oct. 25, 2021)) at 1; *see also* Doc. 541. HCDAO complied with the Court's directive without requesting an opportunity for formal briefing or noting an appeal.

Ms. Keith testified further that she was unaware of a Houston *Chronicle* article about her and Judge Roll's conduct in Mr. Smith's case.[2] *See* Exhibit 2 at 88. The article, titled "'A broken system in action': Judge's handling of bond in student's case sparks criticism," mentioned Ms. Keith by name multiple times.[3]

According to HCDAO's privilege log, two days before the *Chronicle* article was published, Ms. Keith exchanged emails with HCDAO's Director of Communications with the subject line "Sequence of Events - Ka'Darian Smith." Doc. 589 Ex. D. (HCDAO's Amended Privilege Log). Yet when Plaintiffs' counsel deposed Keith about the article, she testified, "I don't specifically recall being aware of the article prior to the deposition." Exhibit 2 at 88. *See also id.* at 91 (when questioned by Plaintiffs' counsel about how she could be unaware of a *Chronicle* article featuring her by name, she replied, "I don't read the Chronicle.").

## C. Plaintiffs Subpoenaed HCDAO for the Emails About Which Ms. Keith Testified

On April 11, 2022, Plaintiffs served HCDAO with a Fed. R. Civ. P. 45 subpoena for the email exchange described by Ms. Keith's testimony as evidence of Judge Roll's courtroom policies regarding bail hearings and ex parte communications. Specifically, the subpoena requested:

> "Any and all emails between ADA Jennifer Keith and prosecutors in Judge Randy Roll's courtroom regarding the 15.17 hearing of Ka'Darian Smith (Case No. 1652584), referred to in the attached deposition transcript at 71:1-76:4 (Appendix A).

*See* Exhibit 7.

---

[2] Blakinger, Keri. "'A Broken System in Action': Judge's Handling of Bond in Student's Case Sparks Criticism." *Houston Chronicle*, Houston Chronicle, 19 Dec. 2019, https://www.houstonchronicle.com/news/houston-texas/houston/article/A-broken-system-in-action-Judge-s-14914415.php.

[3] Blakinger, Keri. "'A Broken System in Action': Judge's Handling of Bond in Student's Case Sparks Criticism." *Houston Chronicle*, Houston Chronicle, 19 Dec. 2019, https://www.houstonchronicle.com/news/houston-texas/houston/article/A-broken-system-in-action-Judge-s-14914415.php.

HCDAO replied on April 25, 2022 that it was withholding all responsive emails pursuant to attorney-client privilege and the work-product doctrine. *See* Exhibit 8. HCDAO did not object on the grounds of Eleventh Amendment immunity until June 15, 2022. *See* Exhibit 4. Plaintiffs' counsel requested a privilege log, which HCDAO eventually provided on June 24, 2022.

Despite requests for sufficient information "to enable other parties to assess the claim[s]" of attorney-client privilege and work product doctrine, Fed. R. Civ. P. 26(b)(5)(A)(ii), HCDAO has refused to provide anything more than a log containing generic, conclusory, and identical descriptions of each email. *See* Doc. 589 Ex. B (HCDAO's Amended Privilege Log) (describing the information contained in each of the 13 emails as "Confidential communication among counsel made in anticipation of litigation or for trial and to facilitate rendition of professional legal services"). On June 30, 2022, Plaintiffs sent HCDAO an email responding to each of their stated objections, but HCDAO maintained its position. On July 29, 2022, Plaintiffs filed a pre-motion letter with the Court to commence proceedings to compel compliance with the subpoena.

## II.   The Court Should Deny HCDAO's Motion to Quash Because Plaintiffs' Subpoena Requests Relevant Discovery.

In determining whether to quash or modify a Rule 45 subpoena for documents or testimony, "[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). HCDAO fails to carry that burden.

### A.  The Subpoenaed Discovery Is Directly Relevant to Plaintiffs' Claims

HCDAO's argument that the requested discovery "is irrelevant to Plaintiffs' claims" and imposes an "undue burden" is incorrect. Doc. 589 (HCDAO's Mtn. to Quash) at 9. As an initial matter, the subpoena is not unduly burdensome under Fed. R. Civ. P. 45(d)(3)(iv) because it requests just two discrete email exchanges that HCDAO has already identified, reviewed, and

recorded in its privilege log. *See* Doc. 589 Ex. D. Producing these emails would entail no burden at all.

The emails are also directly relevant to all of Plaintiffs' claims. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Abel*, 469 U.S. 45, 50–51 (1984); Fed. R. Evid. 401.  As explained below, the two withheld email threads provide direct evidence on two issues "of consequence": (1) whether the Felony Judges created and, with the County and Sheriff, enforced unconstitutional bail policies, *see* Doc. 195-1 at 49-50, and (2) whether Ms. Keith's deposition (and, potentially, future trial) testimony is credible.

The emails are relevant to Count II of Plaintiffs' Complaint because they serve as direct evidence of a felony judge's policy of automatically issuing de facto orders of detention for certain categories of offenses without a finding that pretrial detention is necessary. Doc. 195-1 at 49 ("Defendants Violate Plaintiffs' Substantive Due Process Right to Pretrial Liberty by Jailing Them Without a Finding That Pretrial Detention Is Necessary"). Plaintiffs allege that the "fundamental interest in pretrial liberty . . . is infringed whenever a person is subject to a transparent or de facto order of pretrial detention." *Id.* ¶ 202. The Fifth Circuit and the Supreme Court have both found that these kinds of policies violate Substantive Due Process.[4] According to Ms. Keith's testimony, she emailed her colleague to alert him that a Hearing Officer had issued a personal bond in Mr. Smith's case, contrary to Judge Roll's policy of categorically

---

[4] *ODonnell I*, 892 F.3d 147 at 157; *ODonnell v. Harris County*, 251 F. Supp. 3d at 1144–45; *United States v. Salerno*, 481 U.S. at 749, 751 (describing the government interest in preventing serious pretrial crime as "compelling" and the statute as "careful[ly] delineat[ing] . . . the circumstances under which detention will be permitted"); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (holding that the government may not infringe "'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.")

prohibiting personal bonds for people charged with aggravated assault without a narrowly tailored compelling state interest analysis. *See* Exhibit 3 at 31:12 ("I'm just letting the court know I advised the prosecutors in the court of the rulings here, and I was advised by the chief of the court that 'Judge Roll does not allow PR bonds on aggravated cases'"); Exhibit 1 at 234 (Q: "Was that the stance of Judge Roll that you were just referring to when you stated, 'Judge Roll does not allow personal bonds in aggravated cases'?" A: "That was my understanding from the prosecutors who practiced in his court.") The requested emails will likely contain evidence establishing that Judge Roll did, in fact, maintain such a policy and shed light on how this practice of issuing unconstitutional de facto orders of pretrial detention functioned.

The emails are also relevant to Counts I and III of Plaintiffs' complaint because they serve as direct evidence of a felony judge's policy of interfering with the outcomes of 15.17 hearings and revoking bonds without the constitutionally required procedural protections.  Doc 195-1 at 48 ("Count One: Defendants Violate Plaintiffs' Equal Protection and Due Process Rights by Jailing Them Solely Because They Cannot Afford a Monetary Payment"); *id.* at 49 ("Count Three: Defendants Violate Plaintiffs' Procedural Due Process Rights.") Plaintiffs have alleged that they are entitled to notice, a hearing, and an opportunity to present and confront evidence before a bond is revoked. *Id.* ¶ 204 ("The minimal safeguards required by the Constitution include: an adversarial hearing, with counsel, at which the person has notice of the critical issues to be decided at the hearing, an opportunity to be heard and to present and confront evidence, and a statement of reasons on the record explaining the reasons for the finding that pretrial detention is necessary.") The requested emails will likely help establish that Judge Roll maintained an unconstitutional policy of revoking bond without procedural protections while shedding light on exactly how this practice functioned.

### B.  The Subpoenaed Discovery Is Relevant to Assessing the Credibility of Ms. Keith's Testimony

As core stakeholders and omnipresent participants in Harris County's criminal system, HCDAO prosecutors possess critical information about key questions at issue in this lawsuit, and in particular, about how bail hearings function in practice, how magistrates and judges operate, and what policies govern the pretrial detention process. In response to Plaintiffs' subpoena for a deposition pursuant to Fed. R. Civ. P 30(b)(6), HCDAO selected Ms. Keith to testify on its behalf as its corporate representative. Ms. Keith also testified in response to a subpoena for a deposition in her personal capacity.

Evidence that enables a party to assess and, where warranted, challenge, the credibility of a witness–let alone a witness as crucial as HCDAO's corporate representative–is always relevant. *See Cazorla v. Koch Foods of Mississippi, L.L.C.,* 838 F.3d 540 (5th Cir. 2016) (holding district court did not abuse its discretion in finding potential impeachment evidence relevant); *Vital v. Varco,* CV H-12-1357, 2015 WL 7736637, at *3 (S.D. Tex. Nov. 30, 2015), *aff'd sub nom. Vital v. Nat'l Oilwell Varco, L.P.,* 685 Fed. Appx. 355 (5th Cir. 2017) (finding that written evidence was relevant impeachment material where a witness claimed he was "unaware" of the contents of that evidence); *Player v. Reese,* 300 Fed. Appx. 310, 312 (5th Cir. 2008) (finding that evidence was relevant to impeaching a witness in a §1983 action).

Permitting Plaintiffs to review the emails themselves–rather than having to rely on Ms. Keith's description of them–would enable counsel to assess the credibility of statements Ms. Keith made during her deposition. For instance, in response to deposition questions about a *Houston Chronicle* article that featured her (by name) and her conduct in the Ka'Darian Smith 15.17 hearing, Ms. Keith testified she was unaware of the article until Plaintiffs' counsel asked her about it during her first deposition on March 22, 2021. *See* Exhibit 2 at 88 ("I became aware

of the article when you brought it up in the prior deposition . . . . I don't specifically recall being aware of the article prior to the deposition."). When pressed further by counsel about how it could be possible that, as a practicing prosecutor in the HCDAO, she could be unaware of a *Chronicle* article that named her no fewer than four separate times and detailed her actions in Mr. Smith's case, she replied, "I don't read the Chronicle." *See* Exhibit 2 at 91.  She further testified, " I don't recall discussing [Mr. Smith's case] with any supervisors or other personnel after the hearing" and "I do not recall having any conversations with any supervisors or other District Attorney's Office personnel specifically regarding this defendant, this hearing or this case." Exhibit 2 at 91-92.

And yet, even the minimal information available from HCDAO's privilege log indicates that, just two days before the *Chronicle* article was published, Ms. Keith communicated with HCDAO's Director of Communications through a series of emails the subject line "Sequence of Events - Ka'Darian Smith." Doc. 589 Ex. D. While it is impossible to confirm without reviewing the emails' content, that Ms. Keith emailed with HCDAO's press liaison about Mr. Smith's 15.17 hearing just two days before the article's publication raises serious questions about the veracity of her deposition testimony that (1) she was unaware of the article until asked about it at deposition (Exhibit 2  at 88 "I don't specifically recall being aware of the article prior to the deposition")  and (2) she did not discuss Mr. Smith's 15.17 hearing with any HCDAO staff afterwards (Exhibit 2 at 91-92 "I do not recall having any conversations with any supervisors or other District Attorney's Office personnel specifically regarding this defendant, this hearing or this case.") That alone supplies ample reason that Plaintiffs should not be forced to take Ms. Keith at her word.

In a related example, Ms. Keith provided a sworn affidavit in support of HCDAO's Motion to Quash, in which she avers, under penalty of perjury, that all of the subpoenaed emails were "prepared in anticipation of litigation or for trial." Doc. 589 Ex. E (Decl. of J. Keith) at 2. But again, details from the privilege log call into question the veracity of that sworn statement. As described above, at least two emails included HCDAO's Director of Communications. Although, once again, it is impossible to be certain without reviewing the emails' content, it is difficult to imagine how emails sent from the 15.17 hearing prosecutor to the Director of Communications could be "in anticipation of litigation or for trial." *Id.* Evidence that Ms. Keith made false statements under oath is relevant to the credibility of her testimony as a whole. *See e.g.*, *Vital v. Varco,* CV H-12-1357, 2015 WL 7736637, at *3 (S.D. Tex. Nov. 30, 2015), *aff'd sub nom. Vital v. Nat'l Oilwell Varco, L.P.,* 685 Fed. Appx. 355 (5th Cir. 2017). Plaintiffs are entitled to that evidence.

The emails are also important because Ms. Keith testified during her deposition that she did not recall the entirety of her exchange with the trial court prosecutor in Judge Roll's courtroom. *See* Exhibit 2 at 78 ("I don't have a specific recollection of what the exact communication was, but it's pretty much reflected in what I told the court."). Because Ms. Keith testified that she could not remember details contained in the emails, Plaintiffs are entitled to review the documents themselves.

The Court should therefore deny HCDAO's motion to quash because the emails are directly relevant to Plaintiffs' constitutional claims and critical to evaluating–and, potentially, challenging–the credibility of Ms. Keith's testimony.

**III.    The Court Should Deny Plaintiffs' Motion to Quash Because the Subpoenaed Discovery Is Not Privileged.**

**A. The Subpoenaed Discovery Is Not Protected By Attorney-Client Privilege Because It Was Not a Client Communication, Was Never Intended to Be Confidential, and Any Such Privilege Was Waived.**

HCDAO contends that the requested discovery is "protected by the attorney-client privilege." Doc. 589 at 7. That is incorrect. "[A] confidential communication *between client and counsel* is privileged only if it is generated for the purpose of obtaining or providing legal assistance." *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.,* 876 F.3d 690, 696 (5th Cir. 2017) (emphasis added). "For a communication to be protected under the attorney-client privilege, the proponent must prove: (1) that they made a *confidential* communication; (2) to a lawyer or lawyer's subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *Id.* at 695 (emphasis added).

Attorney-client privilege does not apply to the emails that Ms. Keith exchanged with HCDAO's Director of Communications because they are not communications between a lawyer and their client. *Id.* at 696. Moreover, it is unlikely that a communication between Ms. Keith and her press representative, just two days before an article criticizing Ms. Keith was set to be published in Harris County's largest newspaper, was made "for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *Id.* at 695. Likewise, the emails involving Mr. Otto were not to or from a client. Thus, the emails are not protected by attorney-client privilege.

Further, the emails are not protected by attorney-client privilege because they were not intended to be confidential. Confidentiality is a "vital" component of a claim of attorney-client privilege. *Id.; United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976); *King v. Univ. Healthcare Sys., L.C.,* 645 F.3d 713, 720 (5th Cir. 2011) ("[T]he attorney-client privilege protects communications made *in confidence* by a client to his lawyer for the purpose of

obtaining legal advice." (emphasis added) (citations omitted). But Ms. Keith contemporaneously described portions of their contents in open court. Exhibit 3 at 31:12 ("I'm just letting the court know I advised the prosecutors in the court of the rulings here, and I was advised by the chief of the court that 'Judge Roll does not allow PR bonds on aggravated cases'"); *id.* at 31:32 ("So, I told him I would let you know but it may be a situation where the court addresses it and the judge may revoke the personal bond now. So just FYI."). For this reason alone, attorney-client privilege does not apply to this email exchange.

Just as importantly, even if the emails that Ms. Keith sent to Mr. Otto were protected by attorney-client privilege, Keith waived the privilege by disclosing portions of the emails at Mr. Smith's 15.17 hearing and in two different Rule 30(b)(6) depositions. The "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999). Ms. Keith voluntarily disclosed in open court that (1) she emailed Mr. Otto to inform him of Mr. Smith's 15.17 hearing outcome, (2) Judge Roll "does not allow PR bonds on aggravated cases," and (3) Judge Roll revoked the personal bond. Exhibit 3 at 31:12; *id.* at 31:32; *id.* at 37:07; Exhibit 1 at 234 (Q: "Was that the stance of Judge Roll that you were just referring to when you stated, 'Judge Roll does not allow personal bonds in aggravated cases'?" A: "That was my understanding from the prosecutors who practiced in his court.") The non-confidential nature of the emails therefore invalidates and waives any initially existing claim to attorney-client privilege.

The Court should therefore deny HCDAO's motion to quash because the requested emails do not meet all three requirements of attorney-client privilege and, even if they did, the privilege was waived.

**B.  The Subpoenaed Discovery Is Not Protected As Work Product**

HCDAO's argument that the requested discovery is "independently and alternatively protected by the work-product doctrine" is also misplaced. Doc. 589 at 7. The work product doctrine, articulated through Fed. R. Civ. P. 26(b)(3), protects against disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Here, Plaintiffs do not seek any such thing; rather, they seek emails containing evidence related to a felony judge's policy.

The emails withheld by HCDAO exist in two threads: those exchanged between Ms. Keith and Mr. Otto on the day of Mr. Smith's 15.17 hearing, and those exchanged with the Director of Communications months later. Neither is protected by work product doctrine. The emails that Ms. Keith sent to HCDAO's Director of Communications are not protected by the work-product doctrine because emails exchanged with a spokesperson, likely related to an imminent newspaper article, are almost certainly not "prepared in anticipation of litigation or for trial." Rule 26(b)(3).

Likewise, the emails sought between Mr. Otto and Ms. Keith also are not protected as work-product because the information sought by Plaintiffs is factual information unrelated to preparation for trial, not "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" Fed. R. Civ. P. 26(b)(3).

Even if the requested emails were initially protected by the work-product doctrine, they would be nonetheless discoverable if Plaintiffs show they have "substantial need for the materials to prepare their case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(ii). Here, Plaintiffs seek direct evidence of unconstitutional bail polices that they challenge in their Complaint. They have deposed Ms. Keith in her personal and representative capacities, but have been unable to obtain evidence of

Judge Roll's bail policies–or the nature of how those policies functioned through *ex parte* communications with prosecutors–substantially equivalent to the firsthand, contemporaneously recorded observations of the prosecutors themselves. As such, even if the emails did constitute work product, Plaintiffs' substantial need for the evidence they contain warrants disclosure.

Lastly, even if work product protection applied and Plaintiffs did not have a substantial need for the evidence contained in the emails, Plaintiffs would still be entitled to them because HCDAO waived work product protection. An attorney waives the work-product protection when they voluntarily disclose protected information in court. *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir. 1989) (work product protection "is waived when attorney requests witness to disclose information or when attorney discloses information to court voluntarily or makes no objection when it is offered."); *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349 (5th Cir. 1983) ("Work product immunity claim, if it was ever available, was extinguished when the attorney requested the witness to disclose the information and made no objection when it was offered.") Ms. Keith disclosed at least some information regarding the nature of her emails with Mr. Otto in open court during a 15.17 hearing and in two subsequent depositions, thereby waiving the work product protection for those emails. Exhibit 3 at 31:12; *id.* at 31:32; *id.* at 37:07; *See* Exhibit 1 at 234; Exhibit 2 at 75-76; *id.* at 78.

As such, the Court should deny HCDAO's motion to quash because the requested discovery is not protected by the work product doctrine.

IV.   **The Court Should Deny HCDAO's Motion to Quash Because the Subpoenaed Discovery Is Not Protected by Eleventh Amendment Immunity.**

A.  **Eleventh Amendment Immunity Does Not Apply Because a Subpoena Isn't a Suit.**

HCDAO's argument that "the Court should quash the subpoena based on sovereign immunity" is also unsupported by the law and the record. A subpoena is not a suit. *See* Fed. R. Civ. Proc. 45(a)(2) ("A subpoena must issue from the court where the action is pending."). The Supreme Court has noted that being made a defendant is what implicates the "principles underlying state sovereign immunity," and HCDAO is not a defendant in this action. *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2260 (2021). The Supreme Court has also held that there is "no reason to believe" the Founders—or those who ratified the Eleventh Amendment— viewed state officials immune from non-party subpoenas. *Alden v. Maine,* 527 U.S. 706 at 735. *See Fontenot v. McCraw*, 777 F.3d 741,753 (5th Cir. 2015). In fact, this Court has also declined to consider a subpoena to be a suit. Doc. 504 at 12 ("Considering the record before the court and the inconclusive precedents, expanding the doctrine of sovereign immunity to Rule 45 subpoenas against a nonparty state actor is either beyond this court's authority, imprudent, or both.").[5]

The majority of courts to consider the question have held that, because a Rule 45 subpoena cannot result in any kind of judgment or relief against the state, it is not a "suit" for purposes of state sovereign immunity. *See, e.g.,United States v. Univ. of Mass, Worcester*, 167 F. Supp. 3d 221, 223 –24 (D. Mass. 2016) ("[N]onparty discovery does not constitute a 'suit' for purposes of the Eleventh Amendment."); *Allen v.Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) (the Eleventh Amendment does not preclude discovery from state custodians of records because "[n]o judgment will be issued in this action against the State that could have any conceivable effect on the State treasury" and "no judgment or other relief of any kind is sought against" the state officials).[6] The result in these cases is consistent with the policy that underlies

---

[5] This Court's ruling regarding Eleventh Amendment immunity of the Felony Judges is currently pending appeal before the Fifth Circuit, *see Russell v. Jones*, *appeal docketed*, No. 21-20269 (5th Cir. May 19, 2021).

[6] *United States Dep't of Just. v. Ricco Jonas*, No. 18-MC-56-LM, 2018 WL 6718579, at *4 (D.N.H. Nov. 1, 2018), *report and recommendation adopted sub nom. United States Dep't of Just. v. Jonas*, No. 19-CV-030-LM, 2019 WL

state sovereign immunity. That is because "a federal court's enforcement of a subpoena against a state agency does not significantly infringe on federalism's promise of dual independent sovereigns. As such . . . a federal subpoena against a third-party state agency does not constitute 'a suit against the sovereign' for the purposes of state sovereign immunity and thus does not invoke the doctrine protections." *Charleston Waterkeeper v. Frontier Logistics, L.P.,* No. 2:20-CV-1089, 2020 WL 5629717, at *5 (D.S.C. Sept. 21, 2020) (distinguishing Fourth Circuit case law protecting non-party federal agencies from enforcing state subpoenas because those cases are based on "the principle of federal supremacy, which is inapplicable in the context of state sovereign immunity"). The Court should therefore deny HCDAO's Motion to Quash on the grounds of Eleventh Amendment immunity because a subpoena is not a suit.

### B. HCDAO Waived Any Potential Eleventh Amendment Immunity Claim.

Even if Eleventh Amendment immunity did apply, HCDAO waived it by consensually providing documents and deposition discovery in response to earlier subpoenas in this case. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 616, 122 S. Ct. 1640, 1642, 152 L. Ed. 2d 806 (2002) ("State's act of removing a lawsuit from state court to federal court waives [Eleventh Amendment] immunity.").

HCDAO expressly consented to the first 30(b)(6) deposition in the present suit, in which Ms. Keith testified about the subpoenaed emails. *See e.g.* Exhibit 1 at 234-236. HCDAO then

---

251246 (D.N.H. Jan. 17, 2019) (a subpoena to state officials is not a "suit against the State of New Hampshire"); *Jackson v. AFSCME Local 196,* No.3:07CV0471 (JCH), 2008 WL 1848900, at *2 (D. Conn. Apr. 25, 2008) (subpoena against a state agency official was not an action against the state); *Jones v. Tozzi,* No. CV-F-05-148 OWW/DLB, 2007 WL 1299795, at *4 (E.D. Cal. Apr. 30, 2007) (the Eleventh Amendment does not bar trial subpoenas issued to state officials; *Arista Records LLC v. Does* 1-14, No. 7:08CV00205, 2008 WL 5350246, at *3 (W.D. Va. Dec. 22, 2008) ("[T]he court finds that the doctrine of sovereign immunity is inapplicable to Plaintiffs' subpoena requests."); *Aliv. Carnegie Inst. of Washington,* 306 F.R.D. 20,30 n. 8 (D.D.C.2014) ("The Eleventh Amendment, therefore, does not completely shield UMass from certain non-party discovery requests."); *Laxalt v. McClatchy*, 109 F.R.D. 632,634 (D. Nev.1986) (holding that the Eleventh Amendment does not shield state officials from subpoenas requiring "inspection and copying of State records").

22

consented to a re-opened deposition on at least some grounds, and did not request formal briefing or note an appeal following this Court's indication that it would allow Plaintiffs to further depose Ms. Keith. *See* Exhibit 5 (Minute Entry for November 15, 2021 Discovery Hearing). Instead, HCDAO voluntarily consented to this Court's adjudication of the discovery dispute and abided by its ruling without requesting formal motions procedure or noting an appeal. *See id.*; Doc. 589 at 2. HCDAO also consensually responded to a subpoena for at least some documents related to the Bond Recommendation Form, and again voluntarily consented to this Court's adjudication of a discovery dispute regarding the quantity of forms it would produce. *See* Doc. 589 at 2. The Court should therefore deny HCDAO's motion to quash because HCDAO has waived Eleventh Amendment immunity.

## CONCLUSION

For the aforementioned reasons, the Court should deny HCDAO's motion to quash and compel production of the emails responsive to Plaintiffs' subpoena. If the Court is not inclined to compel the emails outright, Plaintiffs request that the Court review the thirteen emails *in camera* to make a fully informed decision about whether they, and/or which portions, are discoverable.

Date: September 6, 2022                                        Respectfully Submitted,

*/s/ Kiah Duggins*

Alec George Karakatsanis (*Pro Hac Vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*Pro Hac Vice*)
elizabeth@civilrightscorps.org
Jeffery David Stein
jeff@civilrightscorps.org
Jeremy D. Cutting (*Pro Hac Vice*)
cody@civilrightscorps.org
Kiah Duggins (*Pro Hac Vice*)
kiah@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

Mimi Marziani
Texas State Bar No. 24091906
Southern District No. 3364529
mimi@texascivilrightsproject.org
Travis W. Fife
Texas State Bar No. 24126956
Southern District No. 3734502
travis@texascivilrightsproject.org
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 74781
Telephone: 512-474-5073

Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Michael Gervais (*Pro Hac Vice*)
mgervais@susmangodfrey.com
Susman Godfrey L.L.P.
1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 6, 2022, a true and correct copy of this document properly was served on all counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Jeffrey Stein*
Jeffrey Stein
