United States Courts
Southern District of Texas
FILED

*November 03, 2022*

Nathan Ochsner, Clerk of Court

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 for the 𝔉𝔦𝔣𝔱𝔥 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

United States Court of Appeals
Fifth Circuit

**FILED**

September 19, 2022

Lyle W. Cayce
Clerk

No. 21-20269

---

DWIGHT RUSSELL; JOHNNIE PIERSON; JOSEPH ORTUNO;
MAURICE WILSON; CHRISTOPHER CLACK,

*Plaintiffs—Appellees,*

*versus*

JUDGE HAZEL B. JONES; NIKITA HARMON; ROBERT JOHNSON;
KELLI JOHNSON; RANDY ROLL; DASEAN JONES; ABIGAIL
ANASTASIO; JASON LUONG; GREG GLASS; FRANK AGUILAR;
CHRIS MORTON; JOSH HILL; HILARY UNGER; AMY MARTIN;
HERB RITCHIE; RAMONA FRANKLIN; JESSE MCCLURE, III;
GEORGE POWELL; BROCK THOMAS; COLLEEN GAIDO; ANA
MARTINEZ,

*Movants—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-226

---

Before STEWART, CLEMENT, and ELROD, *Circuit Judges.*

JENNIFER WALKER ELROD, *Circuit Judge:*

Plaintiffs have sued Harris County and its Sheriff to enjoin enforcement of Harris County's allegedly unconstitutional felony-bail system. While doing so, plaintiffs served *subpoenas duces tecum* on county

district judges (Felony Judges)—the non-party movant-appellants here—seeking information about their roles in creating and enforcing Harris County's bail schedule. The Felony Judges moved to quash on several grounds, including sovereign immunity, judicial immunity, Federal Rule of Civil Procedure 45's undue-burden standard, and the "mental processes" rule. The district court denied the motion in part and granted it in part, denying sovereign immunity, judicial immunity, and the mental processes rule and allowing the bulk of the subpoenas to proceed. Because sovereign immunity bars these subpoenas and the mental processes rule might also apply, we REVERSE in part the district court's order.

I.

Plaintiffs are individuals who have been held in Harris County jails after being unable to post cash bond. The appellants, referred to by the parties as "Felony Judges," are county district-court judges who handle felony cases and promulgate Harris County's bail schedule. In their Second Amended Complaint, plaintiffs sued Harris County, its Sheriff, and the Felony Judges, arguing that the cash bail system violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

About six months later, a panel of this court released its decision in a similar case, *Daves v. Dallas County*, 984 F.3d 381 (5th Cir. 2020), *vacated en banc*, 22 F.4th 522 (5th Cir. 2022). In *Daves*, the panel held that the plaintiffs' 42 U.S.C. § 1983 claims against county district-court judges in that case were barred by sovereign immunity. *Id.* at 400 (holding that the district-court judges receive sovereign immunity and "lack[ed] a sufficient connection to the enforcement of the felony bail schedules" to satisfy *Ex parte Young*). In the wake of that decision, the plaintiffs here voluntarily dismissed the Felony

No. 21-20269

Judges from the lawsuit.[1] Instead of persisting against the Felony Judges as defendants, plaintiffs served them with third-party subpoenas under Federal Rule of Civil Procedure 45, seeking "information the judges possess about their role in, and the effect of their orders, policies, and practices on, the [bail] system." This case is about those subpoenas.

In total, the plaintiffs served three sets of subpoenas: two sets of document subpoenas and one set of deposition subpoenas. These amounted to 27 requests for production on 17 Felony Judges and four deposition demands served on four others. In response, some of the Felony Judges moved to quash. Marshalling several arguments, they contended that the subpoenas were barred by (1) sovereign immunity, (2) judicial immunity and the mental-process privilege, and (3) Rule 45 for, among other reasons, being unduly burdensome and requesting information that is privileged, irrelevant, or otherwise obtainable by the remaining defendants.

The district court granted in part and denied in part the motion to quash. Finding no decision "that sovereign immunity categorically bars seeking third-party fact discovery from state officials," the district court determined that it could "carefully balance[] sovereignty interests and the burdens to government officials with the need for relevant fact discovery from

---

[1] The panel's decision was later vacated by the court's decision *en banc*. 22 F.4th 522 (2022) (*en banc*). Unlike the panel, the *en banc* court did not "resolve any Eleventh Amendment issues." *Id.* at 532. Rather, it affirmed, for purposes of § 1983, that the district judges were acting for the state, not the county, when creating the bail schedule, and therefore that the county could not be liable on their behalf. *Id.* at 540–41. Next, it held that the plaintiffs lacked standing to sue the district judges for declaratory or injunctive relief. This was because the district judges only "promulgate"—and do not enforce—the bail schedules, which are not mandatory on the hearing officers who apply them. *Id.* at 542–44. For this reason, the *en banc* court held that plaintiffs' injury derives only from the "Magistrate Judges' 'policy of routinely relying on the schedules.'" *Id.* at 543 (quoting the district court).

No. 21-20269

third parties . . . [,] weigh[ing] the burdens and necessities of discovery under the framework set out in the Federal Rules of Civil Procedure."

The district court also largely denied judicial immunity and the mental processes rule. Distinguishing between judicial and nonjudicial acts, the court determined that the Felony Judges' promulgation of the bail schedule was a nonjudicial act to which neither judicial immunity nor the mental processes rule applies. However, the district court precluded plaintiffs from asking about how the judges decide any individual cases.

Finally, the district court addressed the Felony Judges' objection that the subpoenas are unduly burdensome under Rule 45. While the district court declined to remove or modify Requests for Production 19,[2] 20,[3] 25,[4]

---

[2] This request sought: "All documents relating to providing, assigning, or appointing lawyers to represent defendants who were released after arrest, who appear in court for a scheduled appearance without an attorney present, and in whose case the judge wants to address bail on that date."

[3] This request sought: "All documents reflecting the judges' policies and practices relating to court-appointed counsel, including private counsel and the Public Defender's Office."

[4] This request sought: "All documents relating to a pending or concluded proceeding against any of the Felony Judges before the Texas Commission on Judicial Ethics."

and 27,[5] it removed Requests for Production 21[6] and 22[7] for being insuffi-
ciently related to the plaintiffs' claims. Otherwise, the district court held that
the subpoenas were not unduly burdensome, citing the documents' rele-
vance, the plaintiffs' efforts to mitigate duplicative discovery, the infor-
mation's necessity, and the relatively small number of documents at issue.

## II.

The district court had jurisdiction over this 42 U.S.C. § 1983 claim
under 28 U.S.C. §§ 1331 and 1343. This court has appellate jurisdiction un-
der 28 U.S.C. § 1291. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139, 141 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 525–27 (1985).

This court reviews the existence of sovereign immunity and judicial
privilege *de novo*. *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d
959, 962 (5th Cir. 2014); *Brewer v. Blackwell*, 692 F.2d 387, 390–91 (5th Cir.
1982). It reviews "the district court's decision on a motion to quash for abuse
of discretion." *Whole Woman's Health v. Smith*, 896 F.3d 362, 369 (5th Cir.
2018). "The district court's legal conclusions should be reviewed *de novo*,
and its factual findings should not be disturbed unless they are clearly

---

[5] This request sought: "Any and all litigation hold notices, document preservation
notices and/or other communications, memorandums, or documents provided by a Felony
Judge or their agents or representatives to any current or former personnel, employees,
agents, officers, officials, or representatives regarding the need to suspend document
destruction for the purposes of preserving evidence, including electronic documents and
data, relating to the above-captioned lawsuit."

[6] This request sought: "All documents reflecting any campaign donations or gifts
to you from any lawyer who has practiced in your courtroom."

[7] This request sought: "All documents reflecting every case in which you
authorized an appointed lawyer or public defender to hire an investigator, social worker,
and/or expert."

No. 21-20269

erroneous." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 491 (5th Cir. 2013).

## III.

The Felony Judges first contend that sovereign immunity bars the subpoenas. We agree.

### A.

The doctrine of state sovereign immunity recognizes the "residua[l] and inviolable sovereignty" retained by the states in the Constitution's wake. *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting The Federalist No. 39, at 245 (James Madison)). This principle, partially embodied in the Eleventh Amendment,[8] is commonly distilled to the proposition that individuals may not sue a state—either in its own courts, courts of other states, or federal courts—without the state's consent. For this reason, there are "only two circumstances in which an individual may sue a State": when Congress abrogates state sovereign immunity through the Fourteenth Amendment, or when the state itself consents to suit. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Absent one of these two conditions, sovereign immunity poses a total bar to "suit," not just to liability. *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146.

With this in mind, we must determine whether sovereign immunity bars the third-party subpoenas served on the Felony Judges. We hold that it does.

---

[8] Because the "Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design." *Alden*, 527 U.S. at 728–29.

No. 21-20269

First, state sovereign immunity applies only to states and state officials, not to political subdivisions like counties and county officials. *Hudson v. City of New Orleans*, 174 F.3d 677, 681–82 (5th Cir. 1999). So, the Felony Judges must have been acting, for sovereign immunity purposes, as state officials. They were. This court has held that for purposes of sovereign immunity, county district-court judges are "undeniably elected state officials." *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986). Our rule of orderliness binds us to this conclusion, and we agree—the Felony Judges are state officials here.

Second, state sovereign immunity applies only to state officials in their official capacities. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) ("The Supreme Court has recognized that sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state."). So, the Felony Judges must have been served in their official, and not personal, capacities such that the subpoenas were really served against the state. On this point, the parties agree: plaintiffs concede that the Felony Judges were served in their official capacities, *i.e.*, that the subpoenas run against not just the officeholders but the judges' offices themselves. This being the case, the subpoenas were served effectively against the state—as required for the Felony Judges to receive the state's sovereign immunity.

Third, and relatedly, compliance with the subpoenas must operate against the state in a way that implicates state sovereign immunity. Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," sovereign immunity generally bars individual suits against state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). But the Felony Judges are third-parties to this litigation, not defendants. In plaintiffs' view, this is the end of the matter. They contend that sovereign immunity only applies to "suits," that third-party subpoenas

7

No. 21-20269

are not such "suits" to which sovereign immunity attaches, and therefore that the subpoenas are not barred by sovereign immunity. In other words, sovereign immunity only applies to *defendants*, and because the Felony Judges are not defendants, the state is not either.

To this point, both parties find support in the Supreme Court's statement that "'[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'" *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quotation omitted). According to the Felony Judges, sovereign immunity applies to judicial proceedings, like third-party subpoenas, that trench on the fisc or interfere with the public administration. Plaintiffs respond that *Dugan*'s statement presupposes the existence of a "suit" and merely defines when such a "suit" is against the sovereign.

We agree with the Felony Judges that sovereign immunity bars the subpoenas. True, states-as-defendants are the usual recipients of state sovereign immunity. But sovereign immunity respects a broader berth. As the Supreme Court stated in *Ex parte Ayers*, an early sovereign immunity case:

> *The very object and purpose of the eleventh amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties.* It was thought to be neither becoming nor convenient that the several states of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer to complaints of private persons, whether citizens of other states or aliens, *or that the course of their public policy and the administration of their public affairs should be subject to and controlled by the mandates of judicial tribunals, without their consent, and in favor of individual interests.*

No. 21-20269

123 U.S. 443, 505 (1887) (emphasis added).  As *Ayers'* disjunctive "or" indicates, the indignity that sovereign immunity was designed to prevent may arise *either* when the state is a defendant *or* when its sovereign prerogatives are subjected to individuals through coercive judicial process.

Other early cases describe sovereign immunity, and the interests it protects, in similar terms.  In *The Siren*, an even earlier case, Justice Field wrote for the Court that "[states] cannot be subjected to *legal proceedings* at law or in equity without their consent; and whoever institutes such proceedings must bring his case within the authority of some act of Congress." 74 U.S. (7 Wall.) 152, 154 (1868) (emphasis added) (citing *United States v. Clarke*, 33 U.S. (8 Pet.) 436, 444 (1834)); *see also Stanley v. Schwalby*, 147 U.S. 508, 512 (1893) (quoting *The Siren*); *Belknap v. Schild*, 161 U.S. 10, 16 (1896) (same).  This rule, Justice Field wrote,

> rests upon reasons of public policy; the inconvenience and danger which would follow from any different rule.  It is obvious that the public service would be hindered, and the public safety endangered, if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government.

*The Siren*, 74 U.S. (7 Wall.) at 154; *see also, e.g., Belknap*, 161 U.S. at 445 (quoting *The Siren*).

And modern cases echo these earlier ones.  As *Dugan* puts it, "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" 372 U.S. at 620 (citation omitted) (first quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947); then quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 704 (1949)).

No. 21-20269

Precisely because this is so, sovereign immunity "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, at it appears from the entire record." *In re New York*, 256 U.S. 490, 500 (1921).

To be sure, plaintiffs are correct that these cases have involved *judgments* against states. But they are wrong to conclude that sovereign immunity protects against judgments alone. Just as sovereign immunity's preference for substance over form means that it applies to state officials—and not just states—sovereign immunity also applies to state officials as third parties, not just as defendants.

Furthermore, even putting aside the interests that sovereign immunity protects, sovereign immunity is an immunity from *suit* (including discovery), not just liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't pass go. Indeed, plaintiffs originally sued the Felony Judges directly. But when this court held in *Daves*, 984 F.3d at 381, *vacated en banc*, 22 F.4th 522, that county district-court judges receive sovereign immunity and do not lose it under *Ex parte Young*, plaintiffs hit a roadblock. No longer able to seek discovery from the Felony Judges as defendants (or no longer willing to try), plaintiffs dismissed the Felony Judges and sought the documents by third-party subpoena instead. Unfortunately, however, sovereign immunity is not so fickle. Plaintiffs may not obtain by third-party subpoena what they could not obtain from the Felony Judges as defendants.

Returning to the interests that sovereign immunity protects, this is because both types of discovery have the same effect. Sovereign immunity "rests upon reasons of public policy." *The Siren*, 74 U.S. (7 Wall.) at 154. Namely, it aims to "prevent the indignity of subjecting a state to the coercive

10

No. 21-20269

process of judicial tribunals at the instance of private parties." *Ayers*, 123 U.S. at 505. These interests—the sovereign's dignity and authority over its prerogatives—are no less interesting when a sovereign is served with a *subpoena duces tecum* instead of a complaint.

This court has already said as much. In *Louisiana v. Sparks*, we held that federal sovereign-immunity barred a state-court third-party subpoena against a federal officer. 978 F.2d 226, 235–36 (5th Cir. 1992). In doing so, we noted that "myriad cases involving a § 1442(a) removal of a state subpoena proceeding against an unwilling federal officer have held that the sovereign immunity doctrine bars enforcement of the subpoena." *Id.* at 235. "These courts have quashed state court subpoenas . . . on the ground that a court, state or federal, lacks jurisdiction to enforce a subpoena against an unwilling sovereign." *Id.*

Although *Sparks* involved a federal officer in state court and not—as here—state officers in federal court, its sovereign immunity analysis is equally applicable. *Subpoenas duces tecum* are a coercive judicial process. They issue under the court's authority and are enforced by court order. By compelling a state to produce its papers, a *subpoena duces tecum* subjects a sovereign to the "coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (quotation omitted). It "expend[s] . . . on the public treasury or domain" and "interfere[s] with the public administration." *Dugan*, 372 U.S. at 620. And it allows states to be "controlled in the use and disposition of the means required for the proper administration of the government." *The Siren*, 74 U.S. (7 Wall.) at 154.

In so doing, compelled compliance with a *subpoena duces tecum* violates the "inviolable sovereignty" retained by the states in the Constitution's wake. *Alden v. Maine*, 527 U.S. at 715 (quoting The Federalist No. 39, at 245

No. 21-20269

(James Madison)); Zoe Niesel, *Terrible* Touhy*: Navigating Judicial Review of an Agency's Response to Third-Party Subpoenas*, 41 Cardozo L. Rev. 1499, 1512 (2020) ("In the third-party subpoena case, the court's coopting of government personnel to answer the subpoena or assemble requested documents would both interfere with the public domain, and compel the government to act.").[9]   When haled into court on pain of contempt and forced to produce its papers (and litigate about whether it has to), it is no succor to the sovereign that it is not named in the complaint.

### B.

Other circuits have reached similar conclusions in analogous cases involving federal and tribal sovereign immunity.   These decisions reinforce ours.

First is federal sovereign immunity.   As just mentioned, we have already applied federal sovereign immunity to third-party subpoenas against federal officers. *Sparks*, 978 F.2d at 235–36.   Our sister circuits have as well, applying it to bar both state-court and federal-court subpoenas, respectively.

As to the former, our sister circuits are in virtual unanimous agreement that federal sovereign immunity applies to third-party subpoenas. These cases, like *Sparks*, typically arise when subpoenas are directed to third-party agency officials.   When these subpoenas come from state court, the agency officials will typically remove the subpoena proceedings to federal court under 28 U.S.C. § 1442.   If the subpoenas come from federal court, the proceedings will obviously stay there.   Where state-court third-party

---

[9] *See also Sharon Lease Oil Co. v. F.E.R.C.*, 691 F. Supp. 381, 383 (D.D.C. 1988) (holding that sovereign immunity bars third-party subpoenas against federal officials because "the essential nature and effect of the subpoena will interfere with the public administration").

No. 21-20269

subpoena proceedings are removed to federal court, our sister circuits appear to agree that federal sovereign immunity both applies to the third-party subpoenas in the first instance and bars them in the second. *E.g.*, *Elko Cnty. Grand Jury v. Siminoe*, 109 F.3d 554, 556 (9th Cir. 1997); *Edwards v. U.S. Dep't of Just.*, 43 F.3d 312, 317 (7th Cir. 1994); *Boron Oil Co. v. Downie*, 873 F.2d 67, 68 (4th Cir. 1989).

As an example, take the Fourth Circuit's decision in *Boron*. In that case, plaintiffs to a civil-tort suit served an EPA employee with subpoenas, seeking to compel him to testify about an investigation he conducted for the EPA. 873 F.2d at 68. When the state court denied the EPA's motion to quash, the EPA removed the subpoena proceedings to federal court. The district court found sovereign immunity "inapplicable because the government was not a party to the underlying action." *Id.* at 70. But on appeal, the Fourth Circuit reversed. Relying on *Dugan*, the Fourth Circuit held that the subpoena "is inherently that of an action against the United States because such a proceeding 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Id.* at 71 (alteration in original) (quoting *Dugan*, 372 U.S. at 620); *see also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("[S]overeign immunity . . . gives rise to the Government's power to refuse compliance with a subpoena."). *Boron* is representative of our sister circuits' application of federal sovereign immunity to state-court subpoenas.

Next, take the Second Circuit's conclusion that federal sovereign immunity applies to *federal*-court subpoenas against federal agents. *U.S. EPA v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999), *amended on reh'g on other grounds*, 212 F.3d 689 (2d Cir. 2000). When General Electric served an EPA employee with a third-party subpoena, the district court granted the motion to quash, holding that sovereign immunity applied to the subpoena but was

No. 21-20269

waived under the APA. *Id.* at 593.  On appeal, the Second Circuit affirmed
that sovereign immunity applied to the subpoena.  The court stated that "[i]t
is long settled law that, as an attribute of sovereign immunity, the United
States and its agencies may not be subject to judicial proceedings unless there
has been an express waiver of that immunity."  *Id.* at 597.  Thus, after
defining a judicial proceeding against the sovereign as one that "restrain[s]
the Government from acting[] or . . . compel[s] it to act," the Second Circuit
held that sovereign immunity barred the subpoenas absent consent or waiver.
*Id.* (quoting *Dugan*, 372 U.S. at 620).[10]

This conclusion is more controversial; our sister circuits begin to
disagree about the application of federal sovereign immunity to third-party
subpoena proceedings in *federal court*.[11]  But—crucially—the disagreement is

---

[10] The court later determined that sovereign immunity was waived by the APA.
197 F.3d at 599.

[11] For example, the Ninth Circuit has said that federal sovereign immunity is
inapplicable in *federal*-court third-party subpoena proceedings. *Exxon Shipping Co. v. U.S.
Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994).  In that case, the Ninth Circuit distinguished
*Boron* by emphasizing that *Boron* involved the power of a state court to compel compliance
with subpoenas issued to federal employees: "The limitations on a state court's subpoena
and contempt powers stem from the sovereign immunity of the United States and from the
Supremacy Clause.  Such limitations do not apply when a *federal* court exercises its
subpoena power against federal officials." *Id.* at 778 (quoting *In re Recalcitrant Witness
Boeh*, 25 F.3d 761, 770 (9th Cir. 1994) (Norris, J., dissenting)).  The court also concluded
that applying sovereign immunity would "raise serious separation of power questions"
about subjecting control of evidence to the executive branch, in addition to violating "the
fundamental principle that 'the public . . . has a right to every man's evidence.'" *Id.* at
778–79 (omission in original) (quotation omitted).

*Exxon*, however, overreads *Boron*'s reliance on the Supremacy Clause.  In *Boron*,
the Fourth Circuit stated only that "federal supremacy *reinforces* the protection of
sovereign immunity." *Boron*, 873 F.2d at 71 (emphasis added).  In any event, the Ninth
Circuit does not dispute that subpoenas are the type of proceedings to which sovereign
immunity applies, it contests only the application of federal sovereign immunity in federal

No. 21-20269

not about whether sovereign immunity applies to subpoenas *at all*, but rather whether sovereign immunity applies to subpoenas *in federal court*. Put differently, our sister circuits agree that where a sovereign is otherwise entitled to immunity, that immunity extends to third-party subpoenas.

Second is tribal sovereign immunity, which another two of our sister circuits have applied to bar third-party subpoenas. In *Alltel Communications, LLC v. DeJordy*, the Eighth Circuit held that a third-party subpoena was a "suit" within the protection of tribal immunity. 675 F.3d 1100, 1105 (8th Cir. 2012). In the court's words, the third-party subpoenas "command a government unit to appear in federal court and obey whatever judicial

---

court. *See Elko Cnty. Grand Jury*, 109 F.3d at 556 (applying federal sovereign immunity to state-court subpoenas).

In addition, though not relevant in this case, several other derivative doctrinal diversions follow from disagreement about the application of federal sovereign immunity in federal court. Because the APA waives sovereign immunity in federal court under certain conditions, 5 U.S.C. § 702, our sister circuits disagree—depending in part on whether federal sovereign immunity applies at all to these federal-court subpoena proceedings—about whether federal-court third-party subpoenas served on federal agents should be reviewed for arbitrary and capricious agency action under the APA or under the normal Rule 45 undue-burden standard. *Compare COMSAT*, 190 F.3d at 277 (holding that the APA waives federal sovereign immunity and analyzing the agency's refusal to comply with a subpoena under arbitrary and capricious review), *with Exxon Shipping Co.*, 34 F.3d (holding that sovereign immunity does not apply to the state-court subpoenas and directing the district court to analyze the agency's refusal to comply under the Federal Rules of Civil Procedure, including Rule 45's undue-burden standard). Because the Felony Judges are not federal agents, these derivative disagreements are irrelevant here. Nonetheless, "for a cogent discussion criticizing the reliance of federal courts on the sovereign immunity doctrine in refusing to enforce state subpoenas, *see* Note, Gregory S. Coleman, Touhy *and the Housekeeping Privilege: Dead But Not Buried?*, 70 Tex. L. Rev. 685 (1992)." *Sparks*, 978 F.2d at 235 n.16. For a cogent discussion on the jurisdictional and horizontal separation-of-powers implications of congressional subpoenas in interbranch disputes, see Reid Coleman, *Separation-of-Powers* Faux Pas: *The McGahn Litigation and Congress's Efforts to Use the Courts to Resolve Interbranch Information Disputes*, U. Chi. L. Rev. Online, https://lawreviewblog.uchicago.edu/2020/07/10/interbranch-disputes-coleman/ (July 10, 2020).

No. 21-20269

discovery commands may be forthcoming.    The potential for severe interference with government functions is apparent." *Id.* at 1103.  In doing so, the court declined to follow a prior precedent denying state sovereign immunity for third-party subpoenas in federal court. *Id.* at 1104.[12] But it also declined to predict how the Supreme Court might rule in such a case, "given the public policy underlying sovereign immunity summarized in the above-quoted portion of the opinion in *Larson*." *Id.* at 1104–05.  Based on *Boron*'s reasoning, the court opined that in such a case "the [Supreme] Court might well conclude that the Eleventh Amendment applies, or it might apply a broader form of state sovereign immunity as a matter of comity, which would likewise apply to claims of tribal immunity." *Id.* at 1105.

And the Tenth Circuit has reached the same result. *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155 (10th Cir. 2014).  In *Bonnet*, the Tenth Circuit stated that "interpreting the term 'suit' broadly comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to 'restrain the government from acting, or to compel it to act.'" *Id.* at 1159 (alteration omitted) (quoting *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922 (10th Cir. 1996) (quoting *Larson*, 337 U.S. at 704)).    Following Tenth Circuit precedent, the court reasoned that "tribes are immune from 'suit' . . . , 'suit' includes 'judicial process' . . . , and a subpoena duces tecum is a form of judicial process." *Id.* at 1160.  "The logical conclusion . . . is that a subpoena duces tecum served directly on the Tribe, regardless of whether it is a party to the underlying legal action, is a 'suit' against the Tribe, triggering tribal sovereign immunity." *Id.*

---

[12] This prior precedent is *In re Missouri Department of Natural Resources*, which stated curtly that "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." 105 F.3d 434, 436 (8th Cir. 1997).  The Eighth Circuit's later decision and discussion in *Alltel* casts considerable doubt on this claim.

No. 21-20269

And the court denied that its holding would make tribal sovereign immunity more capacious than state sovereign immunity: "[A]pplying tribal immunity to bar the instant subpoena does not require holding the Tribe is entitled to any broader immunity than the States" because "under our binding precedent . . . the Eleventh Amendment may well shield a state agency from discovery in federal court." *Id.* at 1161.[13]

This is not to say that state sovereign immunity is in every respect identical to federal or tribal immunity.  But where these immunities apply, each provides the same "common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  Relying in part on a circuit precedent applying federal sovereign immunity to third-party subpoenas, *Sparks*, 978 F.2d at 235–36, we have concluded that state sovereign immunity similarly bars the third-party subpoenas here.  Our sister circuits' decisions applying both federal and tribal immunity to third-party subpoenas further reinforce our conclusion that state sovereign immunity is no less effective.

### C.

History does not disturb our conclusion.  Plaintiffs and their *amicus* marshal a variety of cases at common law and the Founding era in an attempt to show that sovereign immunity does not apply to third-party subpoenas.  But as the Felony Judges note, these cases fail to show that subpoenas commonly issued *over the objection* of a public official *entitled to sovereign immunity. See, e.g., Pearson v. Fletcher* (1800) 170 Eng. Rep. 748 (KB) (ordering compliance with a subpoena over, apparently, only *the defendant's*

---

[13] Though it did not decide this issue, the court opined that *Ex parte Young* might permit third-party subpoenas against agency officials. *Id.* at 1162 n.1 (citing 209 U.S. 123 (1908)).  The parties do not discuss this theory, although the plaintiffs note the Tenth Circuit's suggestion.

No. 21-20269

objection and not discussing sovereign immunity); *Harris v. Whitcomb*, 70 Mass. (4 Gray) 433, 435 (1855) (ordering a new trial, stating that the best evidence rule required a *subpoena duces tecum* for the originals of the relevant documents (from individuals who would not obviously be entitled to sovereign immunity), and not discussing sovereign immunity).[14]

One exception—and plaintiffs' best shot—is *United States v. Burr*, in which Aaron Burr, being prosecuted for treason, moved for a *subpoena duces tecum* ordering President Jefferson to produce his correspondence with a certain James Wilkinson.[15] 25 F. Cas. 30, 32, 34 (C.C.D. Va. 1807) (No. 14,692D). In permitting the subpoena to issue, Chief Justice Marshall remarked that "if . . . it has ever been decided that a subpoena cannot issue to the president, that decision is unknown to this court." *Id.* at 34.

*Burr* does provide some evidence for plaintiffs' position, but not enough to tip the scales. The precise question in *Burr* was whether the president was entitled to an exception from the Sixth Amendment's guarantee of "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI; *Burr*, 25 F. Cas. at 34. In saying "no," Chief Justice Marshall concluded that "[i]n the provisions of the constitution, and of the statute, which give to the accused a right to the compulsory process of the

---

[14] Furthermore, keeping in mind that "drive-by jurisdictional rulings" are not generally precedential, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998), nor are they generally historically probative.

[15] At one point in the negotiations, the parties seemed close to a compromise. George Hay, counsel for the United States, vowed that he would, if it were possible, "obtain the papers which were wanted; and not only those, but every paper which might be necessary to the elucidation of the case." 25 F. Cas. at 31. After further conversation, John Wickham, counsel for Aaron Burr, agreed to receive only copies of certain naval papers but demanded the original version of Wilkinson's letter. *Id.* In response, Mr. Hay said the following about the requests from Aaron Burr, "sir, I retract everything that I have promised; let gentlemen, sir, take their own course." *Id.*

No. 21-20269

court, there is no exception whatever." 25 F. Cas. at 34. In contrast to *Burr*, this is a civil, not criminal, case. And the compulsory process right is irrelevant here. Because *Burr* arose in a different context and answered a question not asked in this case, it does not tip the balance when weighed against the nature of sovereign immunity as interpreted by the Supreme Court and applied by this circuit and others in analogous contexts.

\*   \*   \*

For these reasons, we REVERSE in part and AFFIRM in part the district court's order.