# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DWIGHT RUSSELL, et al. | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:19-cv-00226 |
| | ) (Class Action) |
| | ) The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) Chief U.S. District Judge |
| Defendants. | ) |

**THIRD DECLARATION OF SARAH V. WOOD**

1. My name is Sarah V. Wood.

2. I serve as General Counsel for the Harris County Public Defender's Office (PDO). I have been licensed since 2005, having worked in private criminal trial and appellate practice until joining the PDO when it opened in 2011. I served in the PDO's Appellate Division for over six years, litigating appeals and consulting on felony trials. I am Board Certified in Criminal Appellate Law. In 2017, during the federal litigation challenging the County's unconstitutional misdemeanor bail practices, *ODonnell v. Harris County*, Case No. 16-cv-01414 (S.D. Tex.), the PDO was finally permitted to provide representation at initial bail hearings to most people arrested in Harris County. I focused on developing policies and procedures for our newly formed Bail Division as well as hiring and training attorneys, and working inside the jail representing arrestees myself. I was appointed as Policy Director in early 2019, and focused on systemic policy reform in coordination with other government agencies with an emphasis on bail and booking center operations. I was promoted to my current position of General Counsel in late 2020.

3. I have previously submitted two declarations to the Court in the above-captioned lawsuit. Dkt. 32-4, Dkt. 111-1. I have reviewed those declarations. Those declarations were true and accurate at the time they were signed and remain accurate today, with the following updates.

I. **As a result of Senate Bill 6, all felony arrestees are detained until judicial review and many arrestees are prohibited from release on unsecured bond.**

4. Since portions of Senate Bill 6 (S.B. 6) went into effect in late 2021, people arrested for felonies in Harris County are now detained until judicial review.

    a. Up until late 2021, as explained in my first declaration, people who were arrested for a felony in Harris County could be released before a hearing if they either paid a secured bond that had been automatically set pursuant to the felony judges' bail schedule or if they received a personal bond issued pursuant to one of the felony judges' general orders. Dkt. 32-4 ¶¶ 7-11.

    b. Local officials have interpreted provisions of S.B. 6 to prohibit pre-hearing release based on the felony bail schedule and the judges' general orders. As a result, the bail schedule and general orders no longer dictate conditions of release prior to judicial review.

    c. Felony arrestees are detained until their bail hearing, with limited exceptions in cases selected for "EP's" or "Early Presentment."[1] A previous version of Early Presentment began in 2017 where, at the direction of the felony judges, Hearing Officers could consider the charging documents and criminal history report for arrestees charged with certain low-level offenses and then grant personal bonds, subject to the state law prohibition on personal bonds for numerous offenses. This is done in chambers "early," prior to the start of magistration. No lawyers for the state or defense participate in Early Presentment. Personal bonds granted at Early Presentment are typically announced at the beginning of the docket.

5. Since portions of S.B. 6 went into effect in late 2021, hearing officers and judges refuse to release felony arrestees charged with certain offenses on unsecured bond conditions.

    a. S.B. 6 prohibits pretrial release on unsecured bond for anyone charged with certain offenses "involving violence" as listed in Tex. Code Crim. Pro. Art. 17.03(b-2)-(b-3), and for those charged with a new felony or certain misdemeanors while on bond or community supervision for an offense "involving violence." Judges and hearing officers now require payment of secured money bail as a condition of release in all such cases.

    b. Nothing in the law prohibits secured bail from being set at a nominal amount, such as $1.

---

[1] An arrestee may also be released before a hearing where no finding of probable cause has occurred within 48 hours of arrest. However, Hearing Officers almost always find probable cause within that time.

2

## II.  Additional facts about the felony bail system.

6. Before each magistration docket, the public defender is generally rushed to interview everyone on the docket before it begins. They typically have a maximum of around 5 or 10 minutes to interview each person. They do not have time to contact potential witnesses or collect evidence. Also, witnesses are not allowed in the courtroom.

7. Hearing officers now determine probable cause on most cases in chambers prior to a hearing, based on the police statement entered into the "DIMS" system (District Attorney Intake Management System), rather than having the prosecutor read it aloud during the hearing. They then announce their probable cause decisions during magistration.

8. Currently, the District Attorney's Office files a "Motion for Sufficient Bond" requesting secured bail at the same time as the charging document in nearly every case, including those for which a personal bond is not prohibited by law. I do not recall any cases in recent memory where the prosecutor did not oppose a personal bond at magistration.

9. Even though the Felony Bail Schedule is no longer automatically applied, Hearing Officers generally impose secured bail amounts that are consistent with—or in excess of—the amount called for under the schedule. Hearing Officers typically do not make any findings regarding an arrestee's ability to pay. They do not make any findings about how the amount of secured bail would serve to assure the person's appearance in court. Hearing Officers routinely impose secured bond amounts that keep people detained without making any findings regarding why less-restrictive conditions are insufficient. If and when the trial courts review the amount of secured bail, they also do not make any findings, even when they increase the amount of bail.

10. As before, people who cannot afford the amount set by a Hearing Officer are detained until at least their first appearance in the trial court. They are often scheduled to appear in District Court on the next business day after magistration, but that does not mean they will appear in court. Sometimes they are not actually brought to the trial court for weeks or months after arrest.

11. Sometimes, first appearances in the trial court are reset or "rolled" to the next day repeatedly when the in-custody arrestee is not brought to the courthouse. Other times, they are reset for weeks or months in the future. Appointment of counsel or changes in the bail amount are sometimes made in their absence.

12. As a result of the over-crowding compounded by S.B. 6, arrestees may wait for days in the "processing" area of the jail until they are booked and sent into housing. Arrestees have commonly been kept in areas not designed for longer stays, including the holding cells in underground tunnels, while they wait for regular housing areas to become available. The

3

Texas Commission on Jail Standards recently found the delays in the Harris County Jail's booking practices to be noncompliant with standards for the care of inmates. *See* Texas Commission on Jail Standards, *Letter to Lina Hidalgo and Ed Gonzalez* (Sept. 7, 2022), attached as Exhibit A.

13. Even as judges and lawyers have returned to courtrooms, arrestees accused of felony offenses are often not transported to the court from the jail. When they are brought to the courthouse, they are typically kept in the "holdover" jail cells outside the courtroom. Commonly, the only time an arrestee accused of a felony offense in Harris County personally appears in a courtroom before the judge is to plead guilty.

14. When an arrestee is not transported from the jail to the courthouse for their first appearance in the District Court, they will not meet their lawyer that day even if the lawyer is appointed then. Even when the person is brought to the court's holding cell and has an opportunity to speak to their lawyer, they cannot have a confidential conversation because of the many people crowded into the cell and the presence of sheriff's deputies, other lawyers, and even co-defendants.

15. People who cannot pay for their release remain in detention after first appearance, usually without ever having been brought into the courtroom to see the judge in their case.

**III. At least 24 people have died in Harris County custody in 2022.**

16. At the time of this statement, at least 24 people have died while in Harris County custody in 2022. One person died while detained in a private jail in Louisiana where Harris County recently sent 500 people in custody to relieve overcrowding. I have reviewed each deceased person's case records. All of them were detained pretrial at the time of their death. Five died within hours of their arrest, another five had holds or detainers, and three never had any bail set. The remaining eleven people all had a secured financial condition of release set in their case which, if met, would have allowed for their release.

17. In one case, E.L. (SPN 02388442) was in the jail because he could not afford the payment for a $35,000 secured bond. During the three months in jail preceding his death, he sent three letters to the court asking for an affordable bail to be set, indicating he believed his bail was set in error because his lawyer told him it was $15,000. He beseeched the court, "will you all please check it and fix it in the system. please so I can post bail and get back to my family."

18. One deceased person, K.H. (SPN 00048376), never had bail set during the 104 days between his arrest and his death in custody. Court records show bail was never considered before his death, and bail remained "set" at "Refer to Magistrate."

4

19. Another deceased person, N.H. (SPN 02623034), also never had bail set and never had counsel appointed during the 11 days between his arrest and his death. Bail remained "set" at "Refer to Magistrate."

20. In one other case, K.S. (SPN 01897814), a hearing officer set secured bail at $30,000, noting that K.S. was "bel[ow] avg risk" but that S.B. 6 prohibited a personal bond. According to the records, K.S. had no criminal history and was a single, disabled, unemployed mother of four who was in a program for pregnant detainees. In the 32 days she was in custody prior to her death, K.S. never appeared in the trial court, never had her bail reviewed, and never received an evidentiary bail hearing. Three days after K.S. died, the trial court signed a "Bail Order" form reducing her bail to $5,000.

21. None of the 24 cases had any indication in the record that a formal, evidentiary bail hearing had occurred.

### IV. Felony arrestees wait an average of 52 days for a formal bail hearing with evidence.

22. In my previous declarations from March and April of 2020, I explained that an arrestee would likely wait for weeks to receive to receive an individualized evidentiary bail hearing after requesting one. Dkt. 32-4 ¶¶ 56-57, Dkt. 111-1 ¶ 21. I also noted that court proceedings were in a state of flux since the pandemic had just begun. Dkt. 111-1 ¶ 11. To assess the length of delay during 2022, I conducted a survey of court records which confirmed that my statements remain true but that the delay appears lengthier now.

23. In Harris County practice, filing a petition for a writ of habeas corpus is generally considered the best and most common vehicle for getting a formal bail hearing because it is appealable. Lawyers sometimes file unappealable motions to reduce bail, but they typically do not result in an on-the-record evidentiary hearing. I recently accessed the District Clerk's case records and extracted a list of pretrial petitions for writs of habeas corpus that were ruled on by the District Court between March and October of 2022.[2] I excluded those that were not challenges to bail, those that did not result in a hearing (typically because the person entered a plea while the request for a hearing was still pending), and those that fell outside of the relevant time period. That left a list of 30 individuals who filed petitions requesting bail reduction that resulted in a recorded hearing.

24. Based on my review of the sample of petitions, I found that, after an arrestee filed a petition for a writ seeking a hearing on bail, they waited an average of 52 days before a hearing was held. The median wait time was similar: 42.5 days from filing a petition to a hearing.

---

[2] I searched the clerk's records for "instrument type" = "PRECW - 11.08 or 11.09 (Liberty)" and then narrowed the results by "Document Scan Date" = 6/1/22 to 10/8/22. This search yielded cases for 71 individuals who had filed pretrial writs of habeas corpus.

25. D.H. (SPN 02682967) is a representative example. According to the District Clerk's records, following D.H.'s arrest on March 27, 2022, the judge in his cases set secured bonds totaling $550,000, an amount that he apparently could not afford. On April 27, D.H.'s lawyer filed a petition for a writ of habeas corpus, raising claims under the 8th and 14th Amendments and asking the Court to set an evidentiary hearing and reduce the amount of bonds. Over three months later, on August 8, the court calendared a hearing for September 8 that was later reset for September 16. A recorded hearing was held that day, after which the Court "granted" the petition and lowered the amount of D.H.'s bonds to $400,000, more than four months after his initial request. Nevertheless, D.H. remained detained.

26. In another case, R.B. (SPN 02828842), the person waited 56 days for a hearing after filing a petition to reduce his bail that was set at a $250,000 secured amount for a state jail felony charge of marijuana possession.

27. In addition to the 30 cases in which a hearing was held, I identified six individuals from the original list who filed petitions to challenge bail and then pled guilty before getting a hearing. The average interval between the filing of the petition and the guilty plea was 45 days.

28. I identified two individuals who appealed the trial court's denial of relief on a petition to challenge bail to the state intermediate court of appeals. In one case, the interval between filing the petition in the District Court and the issuance of an opinion on appeal was 177 days. In the other case, the interval was 222 days.

29. I commonly see records of detained arrestees filing their own motions or writs for bail reduction. Courts usually ignore these when the person is represented by counsel, even if the person detained also tells the trial court that their lawyer has been ignoring them. Even when the person does not have an attorney, they have trouble getting a hearing. In one case within the sample, an arrestee who had been approved to represent himself pro se filed a petition to challenge bail and then later filed an objection to the delay. The problems he describes are consistent with my observations in many cases:

> "I filed pretrial habeas applications by mail on December 8, 2021, so that the Court would have them in hand on the then-approaching appearance date December 20, 2021 . . . Unfortunately, my scheduled appearance on December 20th was cancelled without notice. At the same time, the clerk's office did not file my pretrial habeas petitions appropriately ... It took over a month of letters (plus phone calls and emails via my friend) for the filing debacle to the sorted out - i.e., for the pretrial writ applications to receive the numbers referenced above and to be placed on the writs docket. At that point, the writ hearing was scheduled - apparently as a matter of convenience - for the same date as my next appearance in the underlying prosecutions: March 10, 2022."

6

30. My findings from this sample of bail writ petitions comport with my observations over the years that it typically takes weeks or months for an evidentiary bail hearing to be scheduled, and that, as a result, such hearings are often mooted when a case resolves in the interim. These findings are also consistent with previous statements by Chief Public Defender Alex Bunin. Dkt. 127-1 ¶ 18.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability.

*Sarah Wood*　　　　　　　　　　　　　11/18/2022

Sarah Wood　　　　　　　　　　　　　　Date

7

# Exhibit A:
# TCJS Letter, Sept. 7, 2022

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

*File*
*HARRIS*

September 7, 2022

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Special Inspection Requirements Review and Jail Special Inspection Report issued on September 7, 2022, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 7th day of September 2022
Texas Commission on Jail Standards

By _____
Brandon S. Wood, Executive Director

BW/cw

---

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

# TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

_Zachary Aguirre_
Zachary Aguirre, TCJS Complaint Inspector

Facility: Harris County Jail                   Date: September 7, 2022

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | **Deficiency:** During the investigation of complaint regarding inmate Helen Subeka it was determined that 64 inmates remained in holding cells in excess of 48 hours. **Technical assistance provided:** Harris County administration will develop and submit a plan of action to correct and prevent holding for longer than 48 hours within 30 days of receipt of this notice to Byron Shelton and Cathi Williamson. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Technical Assistance: During the investigation of complaint regarding inmate Helen Subeka it was determined that an inmate had been kept in holding for longer than 48 hours. This includes the "open" areas of booking and the holding cells. This inmate was in holding from 8/13/2022 at 1828 hours until 8/17/2022 at 2131 hours. Totaling 99 hours before being housed. **Technical Assistance provided:** Harris County will submit a plan demonstrating how inmates will be processed, classified and assigned to appropriate housing within 48 hours within 14 days of receipt of this notice to Byron Shelton and Cathi Williamson. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Not applicable. |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Technical Assistance: During the investigation of complaint regarding inmate Helen Subeka and other inmates being kept in holding for longer than 48 hours, staff provided information that personal hygiene was either provided at dress in or upon request, but a log specifically addressing provision of personal hygiene needs to be included. **Technical assistance provided:** Harris County administration will develop a corrective plan of action that ensures inmates held over 48 hours are provided the opportunity to purchase personal hygiene supplies or provided personal hygiene supples if unable to supply due to indigent. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable. |
| 291.2 | Correspondence | Not applicable. |
| 291.3 | Commissary | Not applicable. |
| 291.4 | Visitation | Not applicable. |

RECEIVED
SEP 07 2022
Texas Commission On Jail Standards

## TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

| 291.5 | Religious Practices | Not applicable. |
|---|---|---|
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |
| xxx | CCQ | Not applicable. |

RECEIVED

SEP 0 7 2022

Texas Commission On
Jail Standards

# TEXAS COMMISSION ON JAIL STANDARDS

**EXECUTIVE DIRECTOR**
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE
## HARRIS COUNTY JAIL

**September 7, 2022**

Please reference the Inspection Requirements Review and Jail Inspection Report issued on September 7, 2022, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 259.138 | (a) One or more holding cells shall be provided to hold inmates pending intake, processing, release, or other reason for temporary holding. Inmates shall not be held for more than 48 hours and the cell shall include the following features. **During the investigation of a complaint regarding inmate Helen Subeka, it was determined that 64 inmates remained in holding cells in excess of 48 hours: Priscilla Garcia, Manuel Gutierrez, Rodney Bowers, Alfonzo Gonzalez, James Chaplin, Zamari Wright, Oscar Comeaux, Tayshawn Allen, Gabrielle Dean, Pascual Gomez-Gonzales, Venustiano Pena, Jasmine Saco, Martin Rangel, Jarvis Jackson, Christina Villanueva, Martin Rollins, Keangelia McDowell, Arpan Goraya, Crystal Commander, Lizette Lopez, Bridgett Clark, Leomaritza Medrano, Shunnard Broussard, Carlos Calamaco, Brittany Lynch, Destinyque Kennedy, Nubiyah Freeman, April Kuehne, Gary Freeman, Preston Allen, Shaquana Lampley, Johnny Buckley, Kimoshita Edwards, Christopher Akeju, Hakeem Adouro, Shimica Hammond, Gerardo Rodriguez, Edward Bracey, Timotyh White, Timothy Landers, Randy Sheheane, Rodney Bowers, Chester Collins, Marelin Rubio, Julios Castro, Denzel Perkins, Tatyana Henderson, Richard Turner, Laquana Moore, Wilbur Briscoe, Tra Miller, Brandon Mayweather, Karisma Harrison, April** | Upon receipt of this notice. |

Judge Bill Stoudt, Longview, Chair    Sheriff Kelly Rowe, Lubbock    Commissioner Ben Perry, Waco
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair    Sheriff Raul "Pinky" Gonzales, Refugio    Duane Lock, Southlake
Ross Reyes, Melissa    Patricia M. Anthony, Garland    Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas

DocuSign Envelope ID: BAD9C8F6-5F7E-4CF9-A9D0-A81B0DBA6048

Garcia, Shameka Young, Raymond Lincoln, Dontray Pittman, Jenifer Antonescu, Sharon Rrubins, Samatha Wilborn, Jennifer Roy, Douglas Nichols, Robert Gibson, and Frank Smith.