# EXHIBIT TO SHERIFF ED GONZALEZ'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHANNON DAVES, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:18-CV-154-N |
| § | |
| DALLAS COUNTY, TEXAS, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the questions that the Fifth Circuit directed this Court to consider on remand: (1) whether the Court should have abstained under the *Younger* abstention doctrine and (2) what effect, if any, passage of Senate Bill 6 (S.B. 6) during the Texas Legislature's second called session in 2021 has on this case. The Court believes that *Younger* abstention does not apply, but concludes that S.B. 6 moots this case.

### I. THE ORIGINS OF THIS OPINION

The Court assumes familiarity with the underlying facts giving rise to this lawsuit, which are discussed in this Court's order granting Plaintiffs' motion for preliminary injunction. *Daves v. Dallas Cty.*, 341 F. Supp. 3d 688, 691–693 (N.D. Tex. 2018). Defendants[1] appealed the preliminary injunction, and a panel of the Fifth Circuit affirmed in part, reversed in part, and remanded the cause back to this Court. *Daves v. Dallas Cty.*,

---

[1] All subsequent references to "Defendants" refer solely to those parties against whom viable claims remain pending in light of the holdings of the en banc Fifth Circuit, namely Dallas County, the Magistrate Judges, and the Dallas County Sherriff.

ORDER – PAGE 1

984 F.3d 381, 414 (5th Cir. 2020). The Circuit subsequently agreed to rehear the case en banc. *Daves v. Dallas Cty.*, 988 F.3d 834, 835 (5th Cir. 2021).

The en banc Fifth Circuit reversed two of the panel's holdings. First, Plaintiffs could not hold Dallas County liable under 42 U.S.C. § 1983 for the acts of two groups of defendants — the Texas District Court Judges and the County Court at Law Judges — because both groups of judges were acting for the State when engaging in the challenged conduct. *Daves v. Dallas Cty.*, 22 F.4th 522, 540–41 (5th Cir. 2022) (the "En Banc Opinion"). Second, Plaintiffs lacked standing to sue either the Texas District Judges (with jurisdiction over felony cases) or County Court at Law Judges (with jurisdiction over misdemeanor prosecutions). *Id.* at 544. The En Banc Court concluded by remanding the case to this Court "for the limited purpose of conducting such proceedings as it considers appropriate and making detailed findings and conclusions concerning" the applicability of the *Younger* abstention doctrine and the effect of S.B. 6, a recently passed Texas state law that imposes statewide procedural changes in the bail-setting process. *Id.* at 548.[2]

Following remand, the parties have briefed the issues that the Fifth Circuit directed this Court to consider. The Court has heard oral argument on the issues and conducted an evidentiary hearing.[3] The issues before the Court on remand are now ripe for disposition.

---

[2] Unusually, the En Banc Court "[gave] the district court authority on remand to reach the result it considers appropriate even if it is inconsistent with any of this court's precedent," excepting the En Banc Opinion itself. En Banc Opinion at 548.

[3] No live testimony was offered at the evidentiary hearing. The vast majority of the proffered evidence, consisting of video recordings and documents, was offered without objection and admitted. Some of Plaintiffs' exhibits were offered as demonstratives and considered only on that basis. Defendants offered written declarations, to which Plaintiffs objected based on relevance and an agreement among the parties that no additional

ORDER – PAGE 2

## II. THE *YOUNGER* DOCTRINE DOES NOT REQUIRE ABSTENTION IN THIS CASE

When a plaintiff has properly invoked the jurisdiction of a federal court, the court has a "virtually unflagging" duty to resolve the dispute before it. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The ordinary obligation to address the merits of a case or controversy within the court's jurisdictional grant, however, gives way in the face of several doctrines of abstention. One such rule holds that a federal court should abstain from exercising its jurisdiction when the plaintiff has requested relief from the federal court that would unduly interfere with an ongoing state judicial proceeding.

### A. Younger *Abstention Basics*

The *Younger* abstention doctrine, *see Younger v. Harris*, 401 U.S. 37 (1971), derives its force from two distinct but interrelated considerations: (1) traditional limitations on courts of equity and (2) comity between the federal and state judicial systems. First, as the Court reasoned in *Younger*, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43–44. This general principle then obtains even greater significance when a federal court faces a request to exercise its equitable powers to restrain a state judicial proceeding. *Id.* at 44. Such a

---

evidence would be offered on remand. *See* Pls.' Mot. to Strike [283]. The Court overruled the relevancy objection and determined that the declarations were offered as rebuttal evidence and thus fell outside the parties' agreement. Plaintiffs did not object to the declarations as hearsay. All of the proffered evidence is now admitted and before the Court.

ORDER – PAGE 3

request requires careful consideration under our federal system "in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.*

*Younger* involved an attempt to enjoin a state criminal prosecution, but the Court subsequently expanded the scope of state proceedings to which the doctrine applies. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975); *see also Juidice v. Vail*, 430 U.S. 327, 334 (1977). These decisions extended *Younger*'s reach to include certain categories of civil proceedings that implicate important state interests. Nevertheless, the Court has continued to emphasize that the mere existence of an ongoing state proceeding involving the same subject matter in dispute in federal court has not generally given rise to the need for abstention. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 373 (1989). Most recently, the Court has clarified that the scope of *Younger* reaches interference with only: (1) state criminal prosecutions; (2) certain civil enforcement actions that implicate important state interests; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013).

*Sprint* bore on the first prong of the oft-cited, tripartite test to determine whether to abstain under *Younger*: (1) when faced with the prospect of interference with an ongoing state proceeding of the type contemplated in *Sprint*, a court should also assess (2) whether the proceeding implicates an important state interest and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex Cty.*

ORDER – PAGE 4

*Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The relevant time frame to assess this inquiry is as of the time of filing. *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc); *Liedel v. Juvenile Ct. of Madison Cty.*, 891 F.2d 1542, 1546 n.6 (11th Cir. 1990); *Zalaman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986); *Despain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984); *cf. Colonial Life & Accident Ins. Co. v. Medley*, 572 F.3d 22, 26 (1st Cir. 2009) (noting that the court must make *Younger* abstention decision before reaching merits). If at the outset the court answers the three questions in the affirmative, it should abstain absent truly extraordinary circumstances. *Middlesex*, 457 U.S. at 431.

### B. Adequate Opportunity

The Court first considers whether there is an adequate opportunity to press constitutional challenges in the course of the state proceedings. *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986). Defendants contend that the availability of state habeas corpus relief constitutes an adequate opportunity to raise constitutional challenges.

The Court disagrees and concludes that Plaintiffs lack an adequate means of litigating their constitutional claims in the state forum. In order for an alternative mechanism to press federal claims in state court to qualify as adequate, it must be *timely*. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). At the outset of the case, this Court made factual findings that delays of days or weeks (sometimes months) separate initial bail

determination and review before a judge.[4] *Daves v. Dallas Cty*, 341 F. Supp. 3d at 692. Nowhere in the briefing do Defendants contend that these reviews — intrinsic to the bail-setting process — present an opportunity to litigate *constitutional challenges* to the structure of the system by which the determinations are made. But even if automatic bail review or reduction hearings offer a chance to press constitutional claims the factual findings made at the time the Court entered the preliminary injunction led it to conclude that these proceedings want for adequacy because they are untimely.

As an alternative, Defendants argue that filing a collateral action, in the form of a state habeas corpus petition, offers an adequate alternative mechanism to press federal challenges. Defendants acknowledge that pursuing habeas would require bringing a collateral action in Texas state court. But the Court found that obtaining appointed counsel can take substantial time. *See id.* at 692–93. As Defendants conceded at oral argument, this leaves a detained individual with the choice of either filing a pro se habeas petition (not a high percentage play) or waiting for counsel. Tr. of Oral Arg. 32:8–10 [290]. While habeas may offer a chance to litigate constitutional challenges to the process for setting bail, the practical realities reflected in the Court's prior factual findings indicate that

---

[4] The Court invited the parties on remand to propose any additional fact findings pertinent to *Younger* abstention, but neither side chose to suggest additional findings.

ORDER – PAGE 6

mechanism is inadequate, i.e., too slow.[5] As such, the Court need not have abstained under *Younger* because the third prong of the *Middlesex* test is not met.[6]

### C. Interference

The parties devote considerable attention to whether the injunctive relief sought here is the kind of interference that *Younger* seeks to avoid. That inquiry devolves to whether this case looks more like *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975), or *O'Shea v. Littleton*, 414 U.S. 488, 499-504 (1974). In *Gerstein*, the Supreme Court held that an injunction requiring a prompt pretrial judicial determination of probable cause was not the kind of interference in the underlying criminal prosecution that *Younger* sought to avoid. In *O'Shea*, the Supreme Court held that an injunction against excessive bail would involve the federal court in an ongoing audit of state criminal proceedings, which was the kind of

---

[5] This is borne out by the exemplar habeas case Defendants cite for the availability of habeas as a constitutional remedy. *Ex parte Keller*, 595 S.W.2d 531 (Tex. Crim. App. 1980). The case reflects that petitioners were in custody from August 31, 1979 through at least February 6, 1980 (the date of the opinion). That five months is considerably longer than the one month the Supreme Court found too slow in *Gerstein v. Pugh*, 420 U.S. 103 (1975).

[6] The parties disagree whether the opportunity to raise constitutional challenges must be a part of the underlying criminal proceedings (intrinsic) or whether it can be collateral, i.e., habeas (extrinsic). So far as the Court is aware, the Supreme Court has always phrased the inquiry in terms of whether the course of proceedings subject to interference would present an opportunity to raise constitutional challenges. Two circuits have held the opportunity must be intrinsic to the state proceedings, i.e., not habeas. *See Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 145 (1st Cir. 2008); *Habich v. City of Dearborn*, 331 F.3d 524, 532 (6th Cir. 2003). The Fifth Circuit has not addressed that question. Because the Court finds that state habeas is not an adequate procedure, it need not address the intrinsic/extrinsic question.

interference *Younger* sought to avoid. Given this Court's determination of the adequacy prong, it is unnecessary to resolve the difficult interference question.[7]

### III. THE PASSAGE OF SENATE BILL 6 MOOTS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs' standing, assessed at the outset of litigation, is a constitutional prerequisite to a federal court's exercise of subject matter jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Some minimum level of interest in the subject matter of the case must survive as it progresses, or else the court will dismiss it as moot. *Id.* at 189. The Supreme Court has succinctly described mootness as "standing in a time frame." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

Defendants contend that intervening legislative action, namely the passage by the Texas Legislature of Senate Bill 6 ("S.B. 6"), moots this controversy. The Court agrees that this law, passed in the wake of similar litigation challenging bail practices in Harris County, Texas renders Plaintiffs' challenge to policies and practices in Dallas County as they existed prior to S.B. 6 nonjusticiable.

Federal courts have long recognized that intervening legislative action can moot a previously live controversy. *U.S. Dep't of Just. v. Provenzano*, 469 U.S. 14, 15 (1984) (act

---

[7] The scope of relief that could be afforded to Plaintiffs in view of the En Banc Opinion is not before the Court on this limited remand. But in assessing the interference prong of *Younger*, it would appear that the Court should consider whether injunctive relief against the very few defendants remaining after the En Banc Opinion would interfere with ongoing state criminal proceedings. That perplexing formulation of the question is another reason for this Court not to reach the interference question.

ORDER – PAGE 8

of Congress); *United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 213 (1984) (amendment to challenged municipal ordinance); *see generally* 13C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3553.6 (3d ed. 2008 & Supp. 2022) (mootness by superseding legislative action). Most such cases involve repeal or amendment of the challenged portion of some law that existed at the outset of the case. *See, e.g.*, *U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco, and Firearms v. Galioto*, 477 U.S. 556, 559–60 (1986) (statutory amendment cured alleged constitutional infirmity); *AT&T Commc'ns of the Sw. v. City of Austin*, 235 F.3d 241, 243 (5th Cir. 2000) (offending ordinance repealed). But Plaintiffs here challenged the policies and procedures adopted in Dallas County in the absence of any state statute and sought an order from this Court requiring Defendants to correct alleged constitutional deficiencies in these policies and practices.

Subsequently, the Texas Legislature enacted S.B. 6 to impose uniform minimum procedural requirements on bail practices throughout the state. *See generally,* Act of August 31, 2021, 87th Tex. Leg., 2d C.S., ch.. 11, 2021 Tex. Sess. Law Serv. (West). Specifically, S.B. 6 amended the Texas Code of Criminal Procedure to require an individualized bail determination within forty-eight hours of arrest. TEX. CODE CRIM. P. ANN. art. 17.028(a). Among other factors, the decisionmaker must consider an arrestee's ability to pay money bail. *Id.* art. 17.15(a)(4). Where a bail schedule or standing order remains in place, it also codified the right of an arrested individual to complete a financial affidavit — either in advance of or concurrent with the initial bail determination proceeding

ORDER – PAGE 9

— and procedures to place arrested individuals on notice of this right. *Id.* arts. 17.028(f), (g-1). And it created a mechanism for obtaining review of an initial bail determination in light of information concerning ability to pay provided in a financial affidavit. *Id.* art. 17.028(h). These features of S.B. 6 track the Fifth Circuit's now-superseded *ODonnell* panel decision holding that due process requires an individualized determination of bail within forty-eight hours. Moreover, comments made in committee hearings in both the Texas House and Senate suggest that the Fifth Circuit's opinion in *ODonnell* motivated the bill and directly bore on its structure. Tex. Senate Comm. on Juris., *Hearing on August 7, 2021*, at 0:35–4:59 (Aug. 23, 2021), https://tlcsenate.granicus.com/MediaPlayer.php?clip_id=16451 (testimony of bill's author before Senate committee); Tex. House Select Comm. on Const. Rts. and Remedies, *Hearing on August 21, 2021*, at 9:27–10:05 (Aug. 21, 2021), https://tlchouse.granicus.com/MediaPlayer.php?view_id=46&clip_id=22300 (laying out influence of *ODonnell* on the bill's structure).

Thus, the subject matter of this lawsuit – Dallas County's home-grown procedures for setting pretrial bail circa 2018 – is no more. S.B. 6 replaced Dallas County's procedures with a uniform set of statewide statutory procedures.[8]

The enactment of S.B. 6 moots Plaintiffs' request for injunctive relief. An en banc decision of the Fifth Circuit — rendered in the same decade-long litigation that produced

---

[8] It is important to note that the constitutionality of S.B. 6 is not presently before this Court. First, there are no pleadings attacking S.B. 6. Second, none of the named plaintiffs was detained pursuant to the S.B. 6 procedures. Third, there is minimal evidence in the record reflecting what actually happens in Dallas County after the effective date of S.B. 6. And, finally, the constitutionality of S.B. 6 is not within the scope of the limited remand from the En Banc Court. *See* En Banc Opinion at 248.

ORDER – PAGE 10

the Supreme Court's decision in *Gerstein* — offers perhaps the closest procedural and factual comparator to this case.[9] In *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc), the court addressed claims challenging Dade County's bail practices (as distinct from the probable cause issue addressed in *Gerstein*). After the filing of the case, Florida adopted new procedural rules imposing statewide minimum procedural standards on bail practices. *Id.* at 1055–56. The court started with the premise that it must decide the case on the law as it then stood, not on the law in place at the outset of the case. *Id.* at 1058. The complaint, however, had challenged local policies and procedures that Dade County had adopted prior to the adoption of the then-new procedural rules. *Id.* The need to apply the amended procedural rules meant, the court reasoned, that the challenge to the pre-rule policies and procedures had "lost its character as a present, live controversy." *Id.*

This Court holds that Plaintiffs' request for injunctive relief in this case is moot for the same reasons stated in *Rainwater*. The Court must apply the law as it stands today. When the case began, Dallas County set its bail practice and procedures without the guidance of a uniform state statute or procedural rule. The Texas Legislature has stepped in to impose statewide procedural requirements that go beyond those alleged to have been in place in Dallas County at the outset of this case. A challenge to current practices, either on the grounds that various actors in Dallas County have failed to fully implement procedures compatible with S.B. 6 or based on a challenge to S.B. 6's constitutional

---

[9] The En Banc Opinion's directive that this Court should not be bound by Fifth Circuit precedent did not apply to the mootness issue on remand, but only to *Younger* abstention.

ORDER – PAGE 11

sufficiency presents an altogether different case or controversy from the one initiated in this Court in 2018.

Nor may the Court go any further in its analysis. Consideration of the constitutionality of S.B. 6 would be improper in this posture. *See* supra n.8. It remains a possibility that Dallas County's bail practices suffer from constitutional deficiencies today, but for the foregoing reasons, the Court concludes that another case properly presenting objections to post-S.B. 6 practices would be the proper vehicle to pursue such claims. *Cf. Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.*, 725 F.2d 726, 731–32 (D.C. Cir. 1984) (holding that Congress's intervening passage of a bill expressly affirming challenged agency guidelines meant that any challenge to agency guidelines promulgated under the intervening legislation required a new lawsuit).

The Court finds Plaintiffs' grounds for distinguishing *Rainwater* unavailing. At oral argument, Plaintiffs argued that a critical difference between this case and *Rainwater* is that the challenged procedural rule at issue could, in practice, have been applied consistently with the plaintiffs' demands. Tr. of Oral Arg. at 17:18–18:3. Here, by contrast, the text of the bill directly conflicts with the relief requested, at least in certain circumstances. But this objection necessarily goes to the constitutionality of the procedures contained in S.B. 6, an altogether different question than the one before the Court, which focused on the sufficiency of pre-S.B. 6 policies and practices in Dallas County.

Plaintiffs also argue that this case is not moot because they seek greater remedies than those afforded by S.B. 6, but this argument likewise fails. It confuses remedies with mootness. The question is not whether the Texas Legislature gave Plaintiffs everything on

ORDER – PAGE 12

their wish list – rather the question is whether Dallas County's home-grown bail procedures are still extant to be attacked after the enactment of S.B. 6. They are not.

In response to the *ODonnell* panel opinions, the Texas Legislature sought to the deficiencies found by imposing new statewide procedural safeguards. As the Supreme Court noted in *Gerstein*, concerns of federalism weigh in favor of deference that provides room for the States to experiment in devising procedures capable of upholding constitutional rights. *Gerstein*, 420 U.S. at 123–24. There is more than one way to ensure that a bail system upholds due process rights. Texas has chosen its way, and Plaintiffs are not entitled to have this Court immediately intervene to tinker with the rules that the Legislature has just recently enacted. Accordingly, the Court holds that Plaintiffs' request for injunctive relief should be dismissed as moot. *Accord* FEDERAL PRACTICE AND PROCEDURE, *supra*, at Supp. 73 ("A challenge to the validity of a new enactment, however, may be deferred to later litigation when the new enactment is amended while an appeal is pending and the record does not support adjudication as to the new enactment.") (citing *Am. Charities for Reas. Fund. Reg., Inc. v. O'Bannon*, 909 F.3d 329, 332-34 (10th Cir. 2018)).

## CONCLUSION

This concludes this Court's disposition of the matters referred to it by the limited remand. The parties are directed to confer with the District Clerk of this Court and the staff of the Fifth Circuit regarding how to supplement the record on appeal to reflect the proceedings here on the remand for this case's return to the En Banc Court.

Signed July 6, 2022.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14