UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | Case No. 4:19-cv-00226 |
| *Defendants*, | § | |
| | § | |
| STATE OF TEXAS, *et al.*, | § | |
| *Intervenor-Defendants*. | § | |

---

## STATE INTERVENOR'S MOTION TO DISMISS PURSUANT TO 12(B)(1), MOTION FOR SUMMARY JUDGMENT, AND RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

The State of Texas moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), for summary judgment under Federal Rule of Civil Procedure 56, and files its Response to Plaintiffs' Motion for Summary Judgment.

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................2

TABLE OF AUTHORITIES .........................................................................................3

NATURE AND STAGE OF PROCEEDINGS.................................................................7

STATEMENT OF ISSUES ..........................................................................................7

STANDARD OF REVIEW ...........................................................................................8
    I.    Rule 12(b)(1)........................................................................................................8
    II.    Rule 56 ..............................................................................................................8

SUMMARY OF THE ARGUMENT ...............................................................................9

ARGUMENT ...........................................................................................................10

    I.    Plaintiffs' Claims Are Moot ...........................................................................11

    II.    Plaintiffs Cannot Prevail On Their Substantive Due Process Claim...................13

        A. Plaintiffs Attempt to Shoehorn an Eighth Amendment Challenge into a Substantive Due Process Claim ....................................................................................14

        B. There is No Substantive Due Process Right to Pretrial Release .....................17

    III.    Plaintiffs Cannot Prevail on Their Equal Protection Claim..................................21

    IV.    Plaintiffs Cannot Prevail on Their Procedural Due Process Claim ......................22

RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ................................25

CERTIFICATE OF SERVICE.............................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................8

*Austin v. Johnson*,
   328 F.3d 204 (5th Cir. 2003) ...............................................................................14

*Bank One Tex. v. U.S.*,
   157 F.3d 397 (5th Cir. 1998) .................................................................................8

*Barrera-Montenegro v. U.S.*,
   74 F.3d 657 (5th Cir. 1996) ...................................................................................8

*Betts v. New Castle Youth Dev. Ctr.*,
   621 F.3d 249 (3rd Cir. 2010) .........................................................................14, 15

*Carlson v. Landon*,
   345 U.S. 524 (1952) ..............................................................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................8

*Collins v. City of Harker Heights*,
   503 U.S. 115 (1992) ..............................................................................................17

*Daves v. Dallas Cnty.*,
   No. 3:18-CV-154-N, 2022 WL 2473364 (N.D. Tex. July 6, 2022) ......................10, 12, 13

*Ex parte Milburn*,
   34 U.S. 704 (1835) ................................................................................................20

*Foucha v. Louisiana*,
   504 U.S. 71 (1992) ......................................................................................17, 19, 20

*Funches v. Progressive Tractor & Implement Co., LLC*,
   905 F. 3d 846 (5th Cir. 2018) ...............................................................................9

*Galbraith v. County of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) .............................................................................15

Intervenor's Motion to Dismiss, Motion for Summary Judgment,                     Page | 3
and Response to Plaintiffs' Motion for Summary Judgment

*Graham v. Connor*,
490 U.S. 386, 393–95 (1989)..................................................................................14

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2014)...............................................................................................17

*Hodgdon v. United States*,
365 F.2d 679 (8th Cir. 1966)...................................................................................16

*John Corp. v. City of Houston*,
214 F.3d 573 (5th Cir. 2000)...................................................................................14

*Johnson v. Rodriguez*,
110 F.3d 299 (5th Cir. 1997)............................................................................10, 21

*Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*,
706 F.3d 622 (5th Cir. 2013)......................................................................................8

*Mathews v. Eldridge*,
424 U.S. 319 (1976).................................................................................................19

*McClesky v. Kemp*,
481 U.S. 279 (1987).................................................................................................21

*Meza v. Livingston*,
607 F.3d 392 (5th Cir. 2010)...................................................................................22

*ODonnell v. Goodhart*,
900 F.3d 220 (5th Cir. 2018)..............................................................................9, 10

*ODonnell v. Harris County*,
892 F.3d 147 (5th Cir. 2018)....................................................................9, 10, 19, 23

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979).................................................................................................21

*Pugh v. Rainwater*,
572 F.2d 1053 (5th Cir. 1978).................................................................................13

*Ramming v. U.S.*,
281 F.3d 158 (5th Cir. 2001)......................................................................................8

*Ramsey v. Henderson*,
   286 F.3d 264 (5th Cir. 2002)................................................................................9

*Reno v. Flores*,
   507 U.S. 292 (1993)............................................................................................20

*Sample v. Morrison*,
   406 F.3d 310 (5th Cir. 2005)................................................................................8

*Stack v. Boyle*,
   342 U.S. 1 (1951)..........................................................................................20, 21

*Tesch v. County of Green Lake*,
   157 F.3d 465 (7th Cir. 1998)..............................................................................15

*Triple Tee Golf, Inc. v. Nike, Inc.*,
   485 F.3d 253 (5th Cir. 2007)................................................................................9

*United States v. Cordero*,
   166 F.3d 334 (4th Cir. 1998)..............................................................................16

*United States v. Hernandez*,
   333 F.3d 1168 (10th Cir. 2003)..........................................................................15

*United States v. Mantecon-Zayas*,
   949 F.2d 548 (1st Cir. 1991)...............................................................................16

*United States v. McConnell*,
   842 F.2d 105 (5th Cir. 1998)..............................................................................16

*United States v. Salerno*,
   481 U.S. 739 (1987)....................................................................................passim

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977).............................................................................................21

*Walker v. City of Calhoun*,
   901 F.3d 1245 (11th Cir. 2018)..........................................................................16

*Washington v. Davis*,
   426 U.S. 229 (1976)............................................................................................21

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ........................................................................................................ 17, 20

*Woods v. Edwards,*
    51 F.3d 577 (5th Cir. 1995) ................................................................................................ 22

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ........................................................................................................ 17, 20

## Statutes

Tex. Code Crim. Proc. art. 17.028 ...................................................................................... 11, 12, 25
Tex. Code Crim. Proc. art. 17.15 ................................................................................... 9, 11, 12, 24
U.S. Const. Amend. VIII .................................................................................................... 15

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ 8
Fed. R. Civ. P. 12(h)(3) ............................................................................................................ 8
Fed. R. Civ. P. 56 ............................................................................................................ 1, 2, 8

## Other Authorities

Senate Bill 6 ............................................................................................................... passim

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed this suit in 2019, challenging Defendants' bail policies and procedures. ECF 1. Governor Abbot, Attorney General Paxton, and the State of Texas intervened in March 2020 (ECF 38, 46) after Plaintiffs sought a temporary restraining order to enjoin Executive Order GA-13 and undermine the Harris County bail system by requiring the wholesale release of detained individuals. ECF 32, 53. Plaintiffs then added Harris County district court judges who oversee felony cases as parties (ECF 195-1), at which point the three intervenors withdrew their intervention. ECF 341, 342. After Plaintiffs dismissed the claims against the judges (ECF 370), the State intervened. ECF 373, 375.

Plaintiffs filed their dispositive motion on December 9, 2022 (ECF 634) pursuant to this Court's order. ECF 632.

## STATEMENT OF ISSUES

1. Whether Plaintiffs' claims have been rendered moot by the passage of S.B. 6 during the 2021 legislative session.

2. Whether Plaintiffs have created a genuine issue of material fact as to the existence of a substantive due process right to support their Fourteenth Amendment substantive due process claim.

3. Whether Plaintiffs have created a genuine issue of material fact as to the existence of purposeful discrimination motivating the state action which caused the complained-of injury, an essential element of their Equal Protection claim.

4. Whether Plaintiffs have created a genuine issue of material fact as to the existence of a liberty or property interest to support their Fourteenth Amendment procedural due process claim and, if so, whether they have created a genuine issue of material fact to establish that the procedures as set out in law do not afford the constitutional protections required by the Fifth Circuit.

## STANDARD OF REVIEW

### I.     Rule 12(b)(1)

Lack of subject-matter jurisdiction may be raised at any time by any party, or by the court *sua sponte*. Fed. R. Civ. P. 12(h)(3); *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam); *Bank One Tex. v. U.S.*, 157 F.3d 397, 403 (5th Cir. 1998). A lack of subject-matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

### II.    Rule 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013). A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the

Intervenor's Motion to Dismiss, Motion for Summary Judgment, and Response to Plaintiffs' Motion for Summary Judgment                    Page | 8

absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citation omitted). Once the movant bears its initial burden, the non-movant must identify admissible evidence that creates a fact issue as to each element of her claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). This burden is not satisfied by "conclusory allegations, speculation, and unsubstantiated assertions." *Id.* Although all reasonable inferences are drawn in favor of the nonmovant, "a mere scintilla of evidence in support of plaintiff's position will not do, nor will some metaphysical doubt as to the material facts." *Funches v. Progressive Tractor & Implement Co., LLC*, 905 F. 3d 846, 849 (5th Cir. 2018) (internal quotes omitted).

## SUMMARY OF THE ARGUMENT

There is no "fundamental substantive due process right to be free from any form of wealth-based detention." *ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018) (overruled on other grounds by *Daves v. Dallas County*, 22 F.4th 522 (2022)) ("*ODonnell I*"); *ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018) (overruled on other grounds by *Daves v. Dallas County*, 22 F.4th 522 (2022)) ("*ODonnell II*")). In the *ODonnell* decisions, the Fifth Circuit approved procedures that ensure constitutionally sound bail determinations. *ODonnell I*, 892 F.3d at 164; *ODonnell II*, 900 F.3d at 224–25. There is not a genuine issue of material fact that the bail procedures approved by the Fifth Circuit in the *ODonnell* decisions were codified first by Defendants in policy and rules and, subsequently, by the Texas Legislature in 2021 when it amended the Code of Criminal Procedure to regulate bail procedures in a manner that is consistent with the Fifth Circuit's holdings. *See* Tex. Code Crim. Proc. art. 17.15.

This case should be dismissed for four reasons:

*First*, Plaintiffs' claims have been rendered moot by the passage of S.B. 6 during the 2021 legislative session. This is not a novel argument; the Northern District of Texas has already held that a suit with claims substantively the same as those raised by Plaintiffs was rendered moot by S.B. 6. *Daves v. Dallas Cnty.*, No. 3:18-CV-154-N, 2022 WL 2473364, *5–6 (N.D. Tex. July 6, 2022).

*Second*, Plaintiffs' substantive due process claim fails because (a) they have impermissibly attempted to recast an Eighth Amendment excessive bail claim as a Fourteenth Amendment substantive due process claim and (b) they have failed to create a genuine issue of material fact as to the existence of a substantive due process right, an essential element in their claim.

*Third*, Plaintiffs' Equal Protection claim fails because Plaintiffs have failed to create a genuine issue of material fact as to the "existence of purposeful discrimination motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306–07 (5th Cir. 1997) (internal quotations omitted).

*Finally*, Plaintiffs' procedural due process claim fails because (a) it relies on the same non-existent substantive due process right as their substantive due process claim and (b) Plaintiffs have failed to create a genuine issue of material fact to establish that the procedures as set out in law do not afford the constitutional protections required by the Fifth Circuit.

## ARGUMENT

Plaintiffs claim that Defendants have violated their constitutional rights "by operating a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay secured money bail. . ." ECF 195-1 at p. 50. Since it is unquestionable that there is not a right to be free from money bail (*ODonnell I*, 892 F.3d at 163; *ODonnell II*, 900 F.3d at 225), Plaintiffs have tried, on the surface, to claim that they are not asking the Court to do away with secured bail. However, as

Intervenor's Motion to Dismiss, Motion for Summary Judgment,                    Page | 10
and Response to Plaintiffs' Motion for Summary Judgment

discussed below, that is precisely what they are doing. And, as discussed below, these claims should be summarily dismissed.

As an initial matter, state law sets forth the requirements for setting bail amounts and conditions. Tex. Code Crim. P. art. 17.15, 17.028. That law, which has been in effect for over a year, has not been challenged by Plaintiffs and renders Plaintiffs' claims in this suit moot. However, should the Court look beyond the mootness of Plaintiffs' claims, it must still summarily dismiss Plaintiffs' suit because Plaintiffs have failed to show an essential element of each of their Fourteenth Amendment claims.

## I.    Plaintiffs' Claims Are Moot

Since the filing of this lawsuit, the Texas Legislature passed Senate Bill 6, which was signed into law by Governor Abbott on September 17, 2021.[1] Among other things, this legislation amended art. 17.15 of the Code of Criminal Procedure, which now states that:

> [t]he amount of bail and any conditions of bail. . .are governed by the Constitution and the following rules:
>
> 1.  Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.
>
> 2.  The power to require bail is not to be used to make bail an instrument of oppression.
>
> 3.  The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense:
>
> (A)  is an offense involving violence as defined by Article 17.03; or
>
> (B)  involves violence directed against a peace officer.

---

[1] Information about S.B. 6, passed during the second called session of the Legislature, may be found here (last visited Jan. 12, 2023):
https://capitol.texas.gov/BillLookup/History.aspx?LegSess=872&Bill=SB6.

4. **The ability to make bail shall be considered, and proof may be taken on this point**.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

(emphasis added)

S.B. 6 also added art. 17.028, which requires that "not later than 48 hours after a defendant is arrested, a magistrate shall order, **after individualized consideration of all circumstances and of the factors required by Article 17.15(a)**, that the defendant be" granted personal bond, granted surety or cash bond, or denied bail. This provision also requires that when setting bail, the magistrate must "**impose the least restrictive conditions**, if any, and the personal bond or cash or surety bond necessary to reasonably ensure the defendant's appearance in court as required and the safety of the community, law enforcement, and the victim of the alleged offense." (emphasis added).

The Northern District of Texas recently held that S.B. 6 mooted a lawsuit that is substantially similar to this one. *Daves v. Dallas Cnty.*, No. 3:18-CV-154-N, 2022 WL 2473364, *5–6 (N.D. Tex. July 6, 2022). That case, like this one, involved a challenge to the constitutionality of bail procedures, this time in Dallas County. 2022 WL 2473364, at *4. Like Plaintiffs, the plaintiff in *Daves* sought injunctive relief to "correct alleged constitutional deficiencies in" the Dallas County bail policies and procedures that existed prior to S.B. 6. *Id.* The *Daves* court noted that "the subject matter of this lawsuit. . .is no more" because "S.B. 6 replaced Dallas County's procedures with a uniform set of

statewide statutory procedures" and found that "[t]he enactment of S.B.6 moots Plaintiffs' request for injunctive relief." *Id.* at *5.

The Norther District's decision in *Daves* squarely aligns with the Fifth Circuit's decision in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc), which involved a constitutional challenge to Florida's "pretrial bail system." *Id.* at 1055. While that case was pending before the Fifth Circuit, the Florida Supreme Court adopted a new rule that superseded the one held unconstitutional by the district court. *Id.* The Fifth Circuit held that the adoption of this new rule mooted plaintiffs' challenge because "[t]he record before the Court contains only evidence of practices under criminal procedures which predate the adoption of the current Florida rule." *Id.* at 1058. Because the Fifth Circuit's "review must be in the light of the Florida rule as it now stands, not as it stood when the judgment below was entered," it concluded that "the case has lost its character as a present, live controversy." *Id.*

Plaintiffs claim that S.B. 6 did not go far enough, but any question about "the constitutionality of S.B. 6 is not presently before this Court." 2022 WL 2473364, at *5 n.8. Because S.B. 6 established a "uniform set of statewide statutory procedures," this Court, like the Northern District did in *Daves*, should find that Plaintiffs' claims are moot. *Id.* at *5. As a result, this Court lacks jurisdiction to hear Plaintiffs' claims.

## II.     Plaintiffs Cannot Prevail On Their Substantive Due Process Claim

Plaintiffs' substantive due process claim is premised on their assertion that "[t]he Fourteenth Amendment protects the fundamental interest in pretrial liberty that is infringed whenever a person is subject to a transparent or de facto order of pretrial detention." ECF 195-1 at ¶ 202. However, what

Plaintiffs are attempting to do is recast what is actually an Eighth Amendment challenge into a substantive due process claim, a tactic rejected by Supreme Court precedent. Further, to the extent the Court finds that Plaintiffs were not required to assert their claims under the Eighth Amendment, Plaintiffs' substantive due process claim is based on a purported right that does not exist under prevailing caselaw. As such, Plaintiffs cannot establish an essential element of their substantive due process claim, and summary judgment against them is proper.

### A. Plaintiffs Attempt to Shoehorn an Eighth Amendment Challenge into a Substantive Due Process Claim

In *Graham v. Connor*, the Supreme Court rejected the then-prevailing approach among "the vast majority of lower federal courts" of analyzing excessive-force claims through a "substantive-due-process" framework instead of under the Fourth Amendment. 490 U.S. 386, 393–95 (1989). The Court reasoned that resort to "the more generalized notion of 'substantive-due-process,'" was inappropriate "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct." *Id.* at 395.

As the Fifth Circuit has since explained, "[t]he purpose of Graham is to avoid expanding the concept of substantive-due-process where another constitutional provision protects individuals against the challenged government action." *John Corp. v. City of Houston*, 214 F.3d 573, 582 (5th Cir. 2000). Thus "to the extent that there is duplication, the more explicit textual source of constitutional protection is to be used to assess the validity of the challenged action." *Id.* Applying the *Graham* principle, the Fifth Circuit and its sister circuits routinely direct litigants to a more explicit constitutional provision when they seek to circumvent it by invoking "substantive-due-process." *See Austin v. Johnson*, 328 F.3d 204, 210 n.10 (5th Cir. 2003) (Eighth Amendment); *see also Betts v. New*

*Castle Youth Dev. Ctr.*, 621 F.3d 249, 260–61 (3rd Cir. 2010) (Eighth Amendment); *United States v. Hernandez*, 333 F.3d 1168, 1174 (10th Cir. 2003) (Sixth Amendment); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (Fourth Amendment); *Tesch v. County of Green Lake*, 157 F.3d 465, 471–72 (7th Cir. 1998) (Fourth Amendment).

In this case, the Eighth Amendment supplies an "explicit textual source" of constitutional protection for the right Plaintiffs seek to vindicate: a prohibition against "[e]xcessive bail." U.S. Const. amend. VIII. Through this clause, the Framers sought not to ensure that all arrestees would obtain pre-trial release, but that "bail shall not be excessive in those cases where it is proper to grant bail." *United States v. Salerno*, 481 U.S. 739, 754 (1987) (quoting *Carlson v. Landon*, 345 U.S. 524, 545 (1952)).

Plaintiffs' substantive-due-process claim squarely implicates the protections afforded by the Excessive Bail Clause. As Plaintiffs acknowledge, "[t]his case is about Harris County jailing some of its poorest people, charged with felonies, because they cannot afford to make a monetary payment." ECF 195-1 at ¶ 1. This theme permeates Plaintiffs' pleadings in this case, culminating in their request that the Court declare "that Defendants violate the Named Plaintiffs' and Class members' constitutional rights by operating a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay secured money bail amounts. . ." ECF 195-1 at p. 50.

While Plaintiffs have attempted to cast their claims as a challenge not to the amount and conditions of bail but to the process used to set those terms, their pleadings in this case belie their intentions: Plaintiffs are asking this Court to place Harris County (and, effectively, the entire state) under a regime whereby the imposition of a secured financial condition on pretrial release is

presumptively impermissible. Plaintiffs dedicate pages of their summary judgment motion and related statement of "undisputed" facts to arguing to the Court that unsecured bail and conditions are better than secured bail and conditions. *E.g.,* ECF 634 at p. 31; ECF 634-1 at ¶¶ 207–220. Under the guise of asking the Court to impose unidentified "safeguards to ensure the accuracy of" the government's determination that secured bail is appropriate (ECF 195-1 at p. 50), Plaintiffs are asking this Court to create a system where secured bail is presumed improper in favor of non-secured conditions. In other words, Plaintiffs improperly advance an excessive-bail claim under the rubric of substantive due process.

There is a reason that Plaintiffs chose not to proceed under the Eighth Amendment: such a claim is doomed to failure under the Excessive Bail Clause. "The setting of bail is a matter committed to the sound discretion of the district court," which this Court reviews "only for abuse." *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1998). To determine whether a bail condition is excessive, a court must "compare" the allegedly unlawful condition "against the interest the Government seeks to protect by means of that response." *Salerno*, 481 U.S. at 754. Plaintiffs have not even tried to undertake this comparative analysis. Instead, they simply state that they could not afford the bail that was set for them. ECF 195-1 at ¶¶ 47–49, 52–55, 58–60, 63–65, 73–76. Yet it is well established that "a bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement." *McConnell*, 842 F.2d at 107; *see also Walker v. City of Calhoun*, 901 F.3d 1245, 1258 (11th Cir. 2018) (same); *United States v. Cordero*, 166 F.3d 334, at *2 (4th Cir. 1998) (per curiam); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *Hodgdon v. United States*, 365 F.2d 679, 687 (8th Cir. 1966).

**B.      There is No Substantive Due Process Right to Pretrial Release**

Plaintiffs claim that "due process protects a fundamental interest in pretrial liberty," then attempt to support that claim using case law that is not related to pre-trial bail. *See, e.g., Hamdi v. Rumsfeld*, 542 U.S. 507 (2014) (dealing with detention of detention of a United States citizen as an enemy combatant); *Zadvydas v. Davis*, 533 U.S. 678 (2001) (dealing with post-removal confinement of an alien found to be illegally present in the United State); *Foucha v. Louisiana*, 504 U.S. 71 (1992) (dealing with ongoing confinement of a defendant found not guilty by reason of insanity).

In fact, what Plaintiffs present to the Court as a well-established substantive due process right is actually a novel theory that is unsupported by law. Through the substantive-due-process doctrine, the Supreme Court has interpreted the Fourteenth Amendment's Due Process Clause to "provide[] heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997). But before affording such protection, the Court has required "a 'careful description' of the asserted fundamental liberty interest" to ensure that it is one that is "objectively, 'deeply rooted in this Nation's history and tradition.'" *Id.* at 720–21. The Court "has always been reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). And the lack of "guideposts for responsible decisionmaking" in this area of jurisprudence counsels "the utmost care whenever" a party "ask[s] to break new ground in this field." *Id.*

Relying chiefly on *Salerno* and *Foucha*, Plaintiffs claim that the Supreme Court has already recognized a substantive-due-process right that requires a finding that "pretrial detention s necessary

because alternatives are inadequate." ECF 634 at p. 35. But the authority cited by Plaintiffs do not support that position.

In *Salerno*, the Supreme Court <u>rejected</u> a substantive due process challenge to the federal Bail Reform Act, which authorized the federal government to detain an arrestee pretrial upon a judicial finding that such detention was necessary to protect the community. 481 U.S. at 741–43. The defendants in *Salerno* claimed a fundamental liberty interest "prohibit[ing] pretrial detention on the ground of danger to community." *Id.* at 748. Though the Court conceded the existence of a "general rule" "that the government may not detain a person prior to a judgment of guilt in a criminal trial," it rejected this broad definition of the defendants' liberty interest. *Id.* at 749. Accordingly, the Court held that "we cannot categorically state that pretrial detention 'offends some principle of justice so rooted in the traditions and conscience of our people,'" as to fall within the narrow confines of substantive due process. *Id.* at 751. Instead, the Court examined the Act's "procedural safeguards" and concluded that they "far exceed what" the Court had previously "found necessary to effect limited postarrest detentions." *Id.* at 751–52, 755.

Far from supporting Plaintiffs' substantive due process theory, then, *Salerno* undermines it. It <u>rejected</u> the concept of any substantive due process right forbidding pretrial detention. Instead, *Salerno* assessed the constitutionality of the Bail Reform Act through the lens of <u>procedural</u> due process. Plaintiffs focus on the Act's requirement that the government "demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure. . .public safety.'" ECF 634 at p. 36 (quoting *Salerno*, 481 U.S. at 741). But *Salerno* does not elevate this singular procedural aspect of the Bail Reform Act into a substantive constitutional right. Indeed, the

Court considered the clear-and-convincing-evidence requirement in the context of weighing the Bail Reform Act's many procedural requirements against the Government's "legitimate and compelling" interest "in preventing crime by arrestees." *Salerno*, 481 U.S. at 749. This is a classic procedural due process analysis. *See ODonnell I*, 892 F.3d at 159 (discussing procedural due process framework established by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

*Foucha* is even further afield. There, the Court invalidated Louisiana's civil commitment scheme for individuals who had been acquitted of a crime by reason of insanity. 504 U.S. at 73, 83. In holding that Louisiana's statutory scheme violated the Due Process Clause, the Court distinguished the "sharply focused scheme at issue in *Salerno*" from Louisiana's scheme, which was "not carefully limited." *Id.* at 81. Most strikingly, under Louisiana's regime, the State could hold a person "indefinitely" even though he or she had been acquitted of a crime and was no longer mentally ill. *Id.* at 82–83. And "the State need[ed] [to] prove nothing to justify continued detention, for the statute place[d] the burden on the detainee to prove that he is not dangerous." *Id.* The Court briefly mentioned the substantive due process doctrine, but only to state that it would forbid the State from keeping Foucha in prison to punish him—a State interest that is inapplicable in both that case and this one. *Id.* at 80. Instead, the Court held that "if Foucha can no longer be held as an insanity acquittee in a mental hospital, he is entitled to constitutionally adequate procedures to establish the grounds for his confinement." *Id.* at 79 (emphasis added).

Thus, *Foucha* announced no substantive due process right to obtain pretrial release either; like *Salerno*, it was a procedural due process case. Nevertheless, Plaintiffs represent that "*Foucha* confirmed that the BRA's mandate of a finding that detention is necessary was essential to *Salerno*'s

affirmation of the law's facial constitutionality." ECF 634 at p. 36. Not so. *Foucha* attached no special import to this provision of the Bail Reform Act but merely listed it as one of the many "procedural safeguards" that were available to the defendants in *Salerno* yet unavailable to insanity acquittees in Louisiana. *Foucha*, 504 U.S. at 81–83. The Court did not suggest that this necessity finding was the constitutional minimum, but only that Louisiana could not rely on *Salerno* to "save [its] detention of insanity acquittees who are no longer mentally ill." *Id.* at 81.

*Reno v. Flores* and *Zadvydas v. Davis* similarly do not support Plaintiffs' claim to a substantive due process right to pretrial release. *Reno* rejected a substantive due process argument akin to the one made by Plaintiffs here—namely that the federal government must satisfy heightened scrutiny to detain individuals (in that case, juvenile aliens pending a deportation hearing; in this case, indigent arrestees). 507 U.S. 292, 302–03 (1993). Meanwhile, *Zadvydas* does not even mention substantive due process. Instead, the Court invalidated a statute that lacked adequate "procedural protections" before the federal government could indefinitely detain deportable aliens and adopted a procedural remedy. 533 U.S. 678, 701 (2001).

In attempting to create a substantive due process claim, Plaintiffs make arguments that are inapposite in light of existing case law. What is "deeply rooted in this Nation's history and tradition," *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997), is not an unfettered right to pretrial release, but the use of cash bail as a surety for securing the accused's appearance at trial. The Supreme Court has long recognized that "[t]he right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (citing *Ex parte Milburn*, 34 U.S. 704, 710 (1835)). "[T]he ancient practice" was to

"secur[e] the oaths of responsible persons to stand as sureties for the accused." *Id.* at 5. Contrary to Plaintiffs' claim that rejecting a substantive due process right to pretrial release would "break with a long line of unanimous precedent," (ECF 634 at p. 38), "the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture" is directly analogous and "serves as additional assurance of the presence of an accused." *Stack*, 342 U.S. at 4. Plaintiffs' attempt to fashion a substantive due process right against this well-stablished practice is at odds with text, history, and precedent. Therefore, Plaintiffs cannot establish an essential element of their substantive due process claim, and summary judgment is appropriate.

### III.     Plaintiffs Cannot Prevail on Their Equal Protection Claim

Plaintiffs' Equal Protection claim is essentially a disparate impact theory of liability: Plaintiffs cannot afford to pay secured bail, so using secured bail keeps them in jail while others are able to pay the required amounts for their release. However, the Supreme Court has made clear "that disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 246–50 (1976)). "Thus a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." *Id.* at 306–07 (quoting *McClesky v. Kemp*, 481 U.S. 279, 292–93 (1987)); *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977). And "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite

of, the adverse impact it would have on an identifiable group." *Johnson*, 110 F.3d at 307 (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).

Here, Plaintiffs have made no attempt to allege such an improper purpose. Nor could they: the bail schedules Plaintiffs rely on are facially neutral and do not single out indigent arrestees for discriminatory treatment. ECF 634-40. Plaintiffs have provided no evidence that suggests Defendants' actions were motivated by "purposeful discrimination" or "because of" the alleged adverse impact on indigent arrestees. *Johnson*, 110 F.3d at 306–07.

Instead, Plaintiffs' claim is premised on a "disparate impact" theory—namely, that the use of financial conditions of release disproportionately impacts indigent arrestees who cannot afford to pay cash bail. *See, e.g.,* ECF 195-1 at ¶¶ 11, 47–49, 52–55, 58–60, 63–65, 73–76. Since this theory is invalidated by long-standing precedent, Plaintiffs cannot establish an essential element of their Equal Protection claim and summary judgment is appropriate.

## IV.   Plaintiffs Cannot Prevail on Their Procedural Due Process Claim

Procedural due process claims are subject to a two-step inquiry: "The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (internal quotation marks omitted).

Here, Plaintiffs have repackaged their substantive due process claim as a procedural due process claim. Both causes of action allege violation of a constitutional right to have bail imposed only where there has been a finding that pretrial detention is necessary to serve a specified, compelling interest. ECF 195-1 at ¶ 202 (alleging substantive due process violation based solely on the allegation

that Defendants "jail[] Plaintiffs prior to trial without making any finding that pretrial detention is necessary to serve the government's interests."); *see also id.* at ¶204 (alleging procedural due process violation for "detaining plaintiffs prior to trial without providing. . . safeguards to ensure the accuracy of any substantive determination that pretrial detention is necessary.").

Plaintiffs acknowledge that their procedural due process claim is dependent upon the Court finding a substantive due process right. ECF 634 at p. 44. Therefore, for the same reasons Plaintiffs' substantive due process claim should be summarily dismissed, so should Plaintiffs' procedural due process claim.

In the event the Court deems it necessary to proceed to the second step of the procedural due process inquiry, Plaintiffs' claims still must be summarily dismissed because the procedures afforded Plaintiffs are constitutionally sufficient. Specifically, the Fifth Circuit determined in *ODonnell* that the constitutionally necessary procedures the bail process must provide are: "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *ODonnell I*, 892 F.3d 147, 163 (5th Cir. 2018).

Before the statewide bail procedures were put in place by S.B. 6, it is undisputed that Harris County's process was as follows: After an arrest, Harris County employees interview the arrestee to collect both financial and personal information that will be considered in setting bail. *See* ECF 195-1 at ¶ 97 (acknowledging that arrestees participated in "interviews requiring them to discuss private financial. . .information."). The arrestee would also complete a verified affidavit of his financial condition, which provided notice to the arrestee that it "will be used to assess alternatives to imposing secured money bail and determine eligibility for appointed counsel." ECF 635.23 at pp. 9–10. The

arrestee is given a Public Safety Assessment, a risk assessment tool that uses factors to predict the likelihood an arrestee will fail to appear in court or be arrested while on pretrial release. ECF 634-1 at ¶¶ 45, 47–48.

If an arrestee is not immediately released on personal bond, he would appear before a hearing officer within 48 hours of his arrest for a probable cause and bail hearing ("magistration"). ECF 195-1 at ¶¶ 97, 110 (admitting that some arrestees have their magistration within 24 hours of arrest and all have them within 48 hours of arrest). Before magistration, arrestees were interviewed by a public defender. *Id.* at ¶ 119; ECF 634-1 at ¶¶ 57, 59. The public defender would represent the arrestee at magistration to argue bail if the arrestee authorized it. ECF 634-1 at ¶ 58.

At magistration, a hearing officer would make a probable cause finding and ask both the district attorney and the arrestee (through his counsel if he so chose) for positions on bail. *Id.* at ¶¶ 72, 74. Then the hearing officer would issue an order setting the amount and conditions of pretrial release. *Id.* at ¶ 75.

With the passage of S.B. 6, the constitutionally sufficient bail process is now codified in state law. Specifically, state law requires that "not later than 48 hours after a defendant is arrested, a magistrate shall order, after individualized consideration of all circumstances and of the factors required by Article 17.15(a)"—which includes the ability to make bail—"that the defendant be" granted personal bond, granted surety or cash bond, or denied bail, and that when setting bail, the magistrate must "impose the least restrictive conditions, if any, and the personal bond or cash or surety bond necessary to reasonably ensure the defendant's appearance in court as required and the

safety of the community, law enforcement, and the victim of the alleged offense." Tex. Code Crim. P. art. 17.028.

Plaintiffs have not—and cannot—establish a genuine issue of material fact that the procedures as set out in law do not afford the constitutional protections required by the Fifth Circuit. Therefore, Plaintiffs' procedural due process claim must be summarily dismissed.

### RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, Plaintiffs raise three issues: (1) whether Defendants violated Plaintiffs' Fourteenth Amendment right to substantive due process; (2) whether Defendants violated Plaintiffs' Fourteenth Amendment right to be free of wealth-based detention; and (3) whether Defendants violated Plaintiffs' Fourteenth Amendment right to procedural due process. ECF 634 at p. 4.

These are the same claims that are the subject of this Motion to Dismiss and Motion for Summary Judgment. Therefore, for the reasons set forth in Sections I through IV, above, not only are Plaintiffs not entitled to summary judgment because they have failed to carry their burden, but Plaintiffs' claims should be dismissed because (a) they are moot and (b) Plaintiffs have not created a genuine issue of material fact as to one or more essential element of each claim.

Respectfully submitted.


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant
Attorney General

SHAWN COWLES
Deputy Attorney General for
Civil Litigation

CHRISTOPHER D. HILTON
Chief for General Litigation Division

*/s/ Kimberly Gdula*
KIMBERLY GDULA
Attorney-in-Charge
State Bar 24052209 | So. Dist. 1092074
Kimberly.Gdula@oag.texas.gov
Deputy Chief
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

## CERTIFICATE OF SERVICE

I, Kimberly Gdula, hereby certify that on this the 13th day of January, 2023, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

_/s/ Kimberly Gdula_
Kimberly Gdula
Deputy Chief