**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| DWIGHT RUSSELL, *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br><br><br>HARRIS COUNTY, TEXAS, *et al.*,<br><br>              Defendants. | Case No. 4:19-cv-00226<br>(Class Action)<br>The Honorable Lee H. Rosenthal<br>Chief U.S. District Judge |

**PLAINTIFFS' OMNIBUS RESPONSE AND REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ............................................................................... 1

I.   SENATE BILL 6 DID NOT MOOT THE CASE ......................................... 2

   A. S.B. 6 Neither Cures the Alleged Violations Nor Affords All Relief Plaintiffs Sought... 2

   B. The *Daves* District Court's Mootness Holding Is Not Binding, Wrongly Decided,
      and Readily Distinguished.................................................................. 7

II.  PLAINTIFFS ARE ENTITLED TO RELIEF AGAINST THE COUNTY ......................... 10

   A. The Felony Judges Are County Policymakers. ...................................... 10

   B. The Sheriff Is a County Policymaker. ............................................. 17

   C. The County is a Required Party for Complete Relief. ............................. 18

III. PLAINTIFFS ARE ENTITLED TO RELIEF AGAINST THE SHERIFF ......................... 19

   A. Plaintiffs Have Standing Against the Sheriff. ................................... 19

   B. The Sheriff May Be Enjoined as an *Ex Parte Young* Enforcement Actor. .............. 20

IV.  SUMMARY JUDGMENT SHOULD BE GRANTED TO THE PLAINTIFFS ...................... 23

   A. Plaintiffs Were Not Required to Bring Their Claims Under the Eighth Amendment. ... 23

   B. Defendants' Bail Practices Violate Two Substantive Constitutional Interests. .............. 25

      1. The Fourteenth Amendment recognizes a fundamental interest in pretrial liberty. ... 25

      2. The Fourteenth Amendment prohibits incarceration solely because of nonpayment. 28

      3. Defendants have not justified their infringements of pretrial liberty.......................... 30

   C. Defendants' Bail Practices Violate Procedural Due Process. ......................... 31

CONCLUSION................................................................................. 34

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Air Evac EMS, Inc. v. Texas Department of Insurance, Division of Workers' Compensation*,
    851 F.3d 507 (5th Cir. 2017) ........................................................................ 21, 22

*Antoine v. Byers & Anderson, Inc.*,
    508 U.S. 429 (1993) ...................................................................................... 11, 13

*Barker v. Wingo*,
    407 U.S. 514 (1972) .............................................................................................. 31

*Bearden v. Georgia*,
    461 U.S. 660 (1983) ...................................................................................... passim

*Big Tyme Investments, LLC v. Edwards*,
    985 F.3d 456 (5th Cir. 2021) ........................................................................ 2, 6, 7

*Bigford v. Taylor*,
    834 F.2d 1213 (5th Cir. 1988) .............................................................................. 22

*Brady v. Fort Bend Cnty.*,
    145 F.3d 691 (5th Cir. 1998) ............................................................................... 15

*Buffin v. City & Cnty. of San Francisco*,
    No. 15-CV-4959, 2016 WL 6025486 (N.D. Cal. Oct. 14, 2016) ......................... 23

*Buffin v. City & Cnty. of San Francisco*,
    No. 15-CV-4959, 2018 WL 424362 (N.D. Cal. Jan. 16, 2018) ............................ 24

*Calderon v. Moore*,
    518 U.S. 149 (1996) ........................................................................................ 3, 7

*Chafin v. Chafin*,
    568 U.S. 165 (2013) .......................................................................................... 2, 7

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ............................................................................... 21

*Cnty. Of Riverside v. McLaughlin*,
    500 U.S. 44 (1991)...................................................................................... 10, 19

*Cooper v. McBeath*,
    11 F.3d 547 (5th Cir. 1994) .......................................................................... 7

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)...................................................................................... 24

*Daves v. Dallas Cnty.*,
    22 F.4th 522 (5th Cir. 2022) ..................................................... 12, 13, 15, 20

*Daves v. Dallas Cnty.*,
    984 F.3d 381 (5th Cir. 2020) ........................................................................ 19

*Daves v. Dallas Cnty.*,
    No. 3:18-CV-154-N, 2022 WL 2473364 (N.D. Tex. July 6, 2022).................... 7, 8

*Davis v. Tarrant Cnty.*,
    565 F.3d 214 (5th Cir. 2009) .............................................................. 11, 12, 14

*Dierlam v. Trump*,
    977 F.3d 471 (5th Cir. 2020) ..................................................................... 3, 7

*Due v. Tallahassee Theatres, Inc.*,
    333 F.2d 630 (5th Cir. 1964) ........................................................................ 22

*Echols v. Parker*,
    909 F.2d 795 (5th Cir. 1990) ........................................................................ 22

*Edwards v. Cofield*,
    265 F.Supp.3d 1344 (M.D. Ala. 2017) .................................................... 20, 22

*El Paso Elec. Co. v. FERC*,
    667 F.2d 462 (5th Cir. 1982) ........................................................................ 3

*Ex parte Young*,
    209 U.S. 123 (1908)................................................................................... 2, 20

*Fireman's Fund Ins. Co. v. City of Lodi*,
    302 F.3d 928 (9th Cir. 2002) ............................................... 20

*Forrester v. White*,
    484 U.S. 219 (1988).................................................... 13, 14

*Foucha v. Louisiana*,
    504 U.S. 71 (1992).................................................... passim

*Frazier v. Jordan*,
    457 F.2d 726 (5th Cir. 1972) .............................................. 24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................... 3

*Gagnon v. Scarpelli*,
    411 U.S. 778 (1973)................................................... 1, 24

*Graham v. Connor*,
    490 U.S. 386 (1989)..................................................... 24

*Griffin v. Cty. Sch. Bd. of Prince Edward Cnty.*,
    377 U.S. 218 (1964)..................................................... 20

*Griffin v. Illinois*,
    351 U.S. 12 (1956)................................................... 29, 30

*Henry v. Cox*,
    520 S.W.3d 28, 36 (Tex. 2017)........................................... 16

*Johnson v. Moore*,
    958 F.2d 92 (5th Cir. 1992) ............................................. 11

*Jones v. Brim*,
    165 U.S. 180 (1897)..................................................... 25

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010) .......................................... 19, 21

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
    567 U.S. 298 (2012) ................................................................................. 3, 7

*Los Angeles County v. Davis*,
    440 U.S. 625 (1979) .............................................................................. 2, 4, 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 18

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ............................................................................... 29, 30

*Malina v. Gonzales*,
    994 F.2d 1121 (5th Cir. 1993) .................................................................... 14

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ..................................................................................... 33

*McMillian v. Monroe Cnty., Ala.*,
    520 U.S. 781 (1997) ............................................................................... 15, 16

*McNeil v. Cmty. Prob. Services, LLC*,
    945 F.3d 991 (6th Cir. 2019) ................................................................. 22, 23

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) ..................................................................................... 10

*Moore v. Urquhart*,
    899 F.3d 1094 (9th Cir. 2018) .................................................................... 20

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) ................................................................................. 1, 24

*New York State Rifle & Pistol Association v. City of New York*,
    140 S.Ct. 1525 (2020) (per curiam) ..................................................... 2, 6, 9

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ...................................................................... 20

*North Carolina v. Covington*,
   138 S.Ct. 2548 (2018) ................................................................. 3, 7

*ODonnell v. Harris Cnty.*,
   251 F. Supp. 3d 1052 (S.D. Tex. 2017) ................................. 31

*ODonnell v. Harris Cnty.*,
   892 F.3d 147 (5th Cir. 2018) (op. on reh'g) ("*ODonnell I*") .......................... passim

*ODonnell v. Harris Cnty.*,
   No. CV H-16-1414, 2017 WL 784899 (S.D. Tex. Mar. 1, 2017) ......................... 16

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ....................................................... 16

*Peterson v. City of Fort Worth*,
   588 F.3d 838 (5th Cir. 2009) ........................................ 10

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ...................................... 19

*Pruett v. Harris Cnty. Bail Bond Bd.*,
   499 F.3d 403 (5th Cir. 2007) ...................................... 18

*Pugh v. Rainwater*,
   572 F.2d 1053 (5th Cir. 1978) (en banc) ("*Rainwater II*") ........................ 1, 8, 24, 28

*Reno v. Flores*,
   507 U.S. 292 (1993) ............................................. 25, 27

*Russell v. Lundergan-Grimes*,
   784 F.3d 1037 (6th Cir. 2015) ................................... 21

*Schultz v. Alabama*,
   42 F.4th 1298 (11th Cir. 2022) ................................... 22

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*,
   73 F.3d 546 (5th Cir. 1996) ..................................... 19

*Soldal v. Cook County*,
   506 U.S. 56 (1992) ................................................................................................ 23

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980) ....................................................................................... 12, 13

*Tate v. Short*,
   401 U.S. 395 (1971) ........................................................................................... 1, 28

*Torres v. Collins*,
   No. 2:20-CV-26, 2020 WL 7706883 (E.D. Tenn. Nov. 30, 2020) ....................... 24

*Turner v. Upton County*,
   915 F.2d 133 (5th Cir. 1990) ............................................................................... 17

*United States v. James Daniel Good Real Property*,
   510 U.S. 43 (1993) ................................................................................................ 23

*United States v. Salerno*,
   481 U.S. 739 (1987) ...................................................................................... passim

*United States v. Virginia*,
   518 U.S. 515 (1996) ............................................................................................. 30

*Walker v. City of Calhoun*,
   901 F.3d 1245 (11th Cir. 2018) ........................................................................... 24

*Washington v. Davis*,
   426 U.S. 229 (1976) ............................................................................................. 30

*Washington v. Harper*,
   494 U.S. 210 (1990) ............................................................................................. 32

*Williams v. Illinois*,
   399 U.S. 235 (1970) ...................................................................................... 1, 28, 29

*Youngberg v. Romeo*,
   457 U.S. 307 (1982) ............................................................................................. 27

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)..................................................................................24, 25, 28

**Constitutional Provisions**

Tex. Const. art. V ........................................................................................................ 17

**Statutes**

42 U.S.C. §1983 ..................................................................................................... 2, 20

Senate Bill 6 ........................................................................................................ 4, 6, 32

Tex. Crim. Pro. art. 17.15 .............................................................................................. 9

Tex. Gov't Code § 351.041 ........................................................................................... 17

Tex. Gov't Code § 74.092 ............................................................................................. 12

Tex. Gov't Code § 74.093 ....................................................................................... 12, 15

Tex. Gov't Code § 75.401 ............................................................................................. 16

**Rules**

Fed. R. Civ. P. 19 ..................................................................................................... 17, 18

**Treatises**

13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6 (3d ed.
    2008).................................................................................................................. 3

Restatement (Third) of Torts: Phys. & Emot. Harm (2010) ........................................ 19

**Other Authorities**

Brief for the United States as Amicus Curiae in Support of Neither Party, *Walker v. City of
    Calhoun*, No. 17-13139 (11th Cir. Sept. 13, 2017)................................................. 30

Shaila Dewan, *Jail is a Death Sentence for a Growing Number of Americans* (Nov. 22, 2022),
    *available at* https://www.nytimes.com/2022/11/22/us/jails-deaths.html............................... 33

## INTRODUCTION

Plaintiffs' claims present a straightforward constitutional question: Can the government jail people pretrial without any determination that doing so is necessary to serve a government interest? The answer is no. Two lines of binding precedent—articulating fundamental rights to pretrial liberty and against money-based jailing—establish Plaintiffs' constitutional right to pretrial release if an alternative to detention could reasonably satisfy the government's interests in protecting the public and preventing flight from prosecution. *See Bearden v. Georgia*, 461 U.S. 660 (1983); *Tate v. Short*, 401 U.S. 395 (1971); *Williams v. Illinois*, 399 U.S. 235 (1970); *United States v. Salerno*, 481 U.S. 739 (1987); *Foucha v. Louisiana*, 504 U.S. 71 (1992); *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc) ("*Rainwater II*"); *ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) (op. on reh'g) ("*ODonnell I*"), *overruled on other grounds by Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 529 (5th Cir. 2022). When these rights are at stake, the government must provide robust procedural safeguards to ensure the accuracy of any detention decision. *Salerno*, 481 U.S. at 750; *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

Despite these controlling cases, Defendants have adopted a policy of detaining arrestees who cannot pay secured money bail without any finding that their detention is necessary, and without constitutionally mandated procedures. In practice, that means jailing large numbers of people solely because they are poor, even when alternatives could serve the government's interests. The resulting harms are tragic: at least 27 people died in County custody last year. Four more died in just the first month of 2023.[1]

---

[1] Texas Attorney General, Custodial Death Report, https://oagtx.force.com/cdr/cdrreportdeaths (last visited, Feb. 13, 2023).

1

Defendants have little to say about the substantive law at issue—and much of what they do say is foreclosed by controlling law and previous rulings by this Court. Nor do they—or could they—dispute the facts, which are supported by voluminous evidence. Instead, Defendants raise primarily procedural arguments—mootness, standing, and liability—which misstate Plaintiffs' claims, misunderstand the law, and contradict binding precedent. But Plaintiffs' claims cannot be moot because they have submitted reams of unchallenged evidence that the harm they challenged continues. They have standing against the Felony Judges and the Sheriff, each of whom is a proximate and but-for cause of Plaintiffs' harm. The County can be enjoined under *Monell*, and, regardless of whether the Sheriff acts for the County or the state when he enforces unconstitutional bail orders, he can be enjoined under the plain text of 42 U.S.C. § 1983 and the principles set forth in *Ex parte Young*. The State Intervenor's merits arguments are similarly foreclosed. The Court should grant summary judgment to Plaintiffs on all counts.

## I.   SENATE BILL 6 DID NOT MOOT THE CASE

### A.  S.B. 6 Neither Cures the Alleged Violations Nor Affords All Relief Plaintiffs Sought.

Defendants fail to identify—let alone satisfy—the standard for mootness. Decades of unbroken Supreme Court precedent establish that the enactment of legislation moots a case only if the legislation "completely and irrevocably eradicates the effects of the alleged violation[s]," *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979), or affords the plaintiffs the "precise relief . . . requested in the prayer for relief in their complaint," *New York State Rifle & Pistol Association v. City of New York*, 140 S.Ct. 1525, 1526 (2020) (per curiam). In that circumstance, the case is moot because "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *accord, e.g., Big Tyme Investments, LLC v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021). A party asserting mootness bears a "heavy burden"

to prove it. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

This high bar for mootness makes sense: if any legislative action that touched on the issues raised in ongoing litigation necessarily mooted that litigation, government entities could neutralize legitimate constitutional (and other) challenges simply by passing laws advertised as redress. *See North Carolina v. Covington*, 138 S.Ct. 2548, 2553 (2018) (rejecting defendant's characterization that racial gerrymandering claim was mooted by new legislative districts because "it is the segregation of the plaintiffs—not the legislature's line-drawing as such—that gives rise to their claims"); *see also El Paso Elec. Co. v. FERC*, 667 F.2d 462, 467 (5th Cir. 1982) (holding that the mere theoretical prospect of a change in policy does not force a court to refrain from examining the actual curative efficacy of a new policy). Hence, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012); *see Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020), *cert. denied sub nom. Dierlam v. Biden*, 141 S. Ct. 1392 (2021) ("[i]f an intervening event renders the court unable to grant the litigant 'any effectual relief whatever,' the case is moot") (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996)); 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6 (3d ed. 2008) (explaining that legislative action case only moots a claim when it is clear that the "change has removed any basis for a claim, or has fully satisfied the claim"). As discussed below, Defendants have neither presented any evidence that the harm has ceased nor demonstrated that this Court cannot grant any effectual relief. They fail to carry their heavy burden.

Plaintiffs challenge local bail practices, not state law, as the source of their constitutional injuries. Specifically, they allege that the County and Sheriff subject them to pretrial detention

without a judicial finding that such detention is necessary and without the procedural safeguards required by the Constitution. Dkt. 195-1 ¶ 9. There is no dispute that Plaintiffs continue to be injured *now* in precisely the same way they were injured in January 2019 when they sued, or that Senate Bill 6 ("S.B. 6") fails to grant Plaintiffs the relief sought in their complaint.

Far from cured, Plaintiffs' injuries are active and ongoing. For example: E.J.H., a 77-year-old man, was arrested in December 2022 for allegedly taking toilet paper and underwear from a Dollar Store. As of the date this brief is filed, nearly two months later, he remains detained because he cannot afford $5,000, an amount required even though no one has made findings about his ability to pay or the necessity of his detention. Ex. 1 (Plaintiffs' Supplemental Statement of Undisputed Material Facts ("Pls' SSUMF")) ¶ 3. G.R., a 66-year-old woman arrested in January 2023 for allegedly pushing another woman is also still in jail because she cannot afford the payment for a $7,500 secured bond set without any determination that her detention serves any purpose. *Id.* ¶ 4. A.S. was arrested in November 2022 for allegedly spitting on a police officer. She is still in jail because she cannot afford a $5,000 bond. *Id.* ¶ 5. These harms are commonplace. *E.g.*, *id.* ¶ 6 (D.G. Case Records) (requiring $7,500 secured bond for 70-year-old with lowest possible "risk" score, who has been in jail for almost three months without ever appearing in court); *id.* ¶ 7 (G.H. Case Records) (requiring $10,000 secured bond for 73-year-old with no income, who has been detained for four months without an evidentiary bail hearing). These undisputed facts end the mootness inquiry.

Aside from these most recent cases, the previously submitted record confirms that S.B. 6 has not "completely and irrevocably eradicate[d] the effects of the alleged violation[s]," *Los Angeles Cnty.*, 440 U.S. at 631, and that since S.B. 6, Defendants have continued to routinely detain people pretrial with no evidentiary hearing or other required procedural protections and no

on-the-record finding that detention is necessary. The following are a few examples of the ongoing,

post-S.B. 6 harm—which is substantively identical to the harm Plaintiffs were suffering in January

2019:

- **Felony arrestees who are obviously too poor to make a payment are required to pay secured bail without any finding that their detention is necessary.** Dkt. 634 (Pls' Br.) at 43–44; Dkt. 634-1 (Pls' SUMF) ¶¶ 103, 109; *e.g. id.* ¶ 109 n. 205 (May 6, 2022; A.R. was required to pay $20,000 for release, even though she is a single mother of four who relies on food assistance; no findings of ability to pay or necessity of detention); *id.* (September 12, 2022; M.A.A. was required to pay $50,000 for release, even though she is an indigent mother of three who had never been arrested before; no findings of ability to pay or necessity of detention).

- **Detention orders are imposed without any opportunity to present evidence, let alone any application of a heightened evidentiary standard or an explanation of how any such evidence supports judicial findings.** Dkt. 634 (Pls' Br.) at 43–44; Dkt. 634-1 (Pls' SUMF) ¶¶ 100, 106, 113; *e.g. id.* ¶ 113 n. 210 (July 29, 2022 hearing lasting 70 seconds where officer required $10,000 secured bond for R.J.M. without making any findings or applying any standard of evidence).

- **Class members are stuck in jail when they cannot pay secured bail without any opportunity for an adversarial, on-the-record bail hearing, and are sometimes not brought to court at all until they plead guilty.** Dkt. 634 (Pls' Br.) at 18–20; *e.g.*, Dkt. 634-1 (Pls' SUMF) ¶ 151 n. 276 (D.H. waited over four months for a hearing); *id.* (R.B. waited 56 days for a hearing); *id.* ¶ 139 (August 5, 2022 hearing where officer required $25,000 secured bond in absentia for teenager J.S., who four months later still had not seen a judge).

Data confirms that the law has done nothing to ameliorate Plaintiffs' injuries:

- **Money bail is still set in a majority of felony cases.** Prior to S.B. 6,[2] about 69% of people charged with felonies were required to make a payment to get out of jail. Dkt. 634 (Pls' Br.) at 24. After S.B. 6,[3] about 75% must make a payment. Ex. 1 (Pls' SSUMF) ¶ 2(a) (citing Supplement to Expert Report of Dr. Jennifer Copp ("Supp. Copp Report").

- **Most people still cannot pay their way out of jail prior to first appearance.** Prior to S.B. 6, 68% of people remained detained at their scheduled first appearance in district court. Dkt. 634 (Pls' Br.) at 24. After S.B. 6, 73% remained detained at first appearance. Ex. 1 (Pls' SSUMF) ¶ 2(d) (citing Supp. Copp Report).

---

[2] The analyzed data covers all felony arrests between January 1, 2015 and December 31, 2021. *See generally* Dkt. 634-1 (Expert Report of Jennifer Copp, Ph.D.).

[3] The analyzed data covers all felony arrests between January 1, 2022, and September 30, 2022. *See* Ex. 1 (Pls' SSUMF) ¶ 2.

- **Bail review hearings remain extremely rare.** Both before and since S.B. 6, only 7% of detained felony arrestees were scheduled for one. Dkt. 634 (Pls' Br.) at 24; Ex. 1 (Pls' SSUMF) ¶ 2(e) (citing Supp. Copp Report).

- **Thousands of people are still detained at disposition every year solely because they cannot pay the secured bail amounts required for release.** Before S.B. 6, 45% of people who were required to pay money to be released remained detained at the time their case was resolved. Dkt. 634 (Pls' Br.) at 25. After S.B. 6, among cases that were resolved, that figure was 64%. Ex. 1 (Pls' SSUMF) ¶ 2(c) (citing Supp. Copp Report).

In short, the factual record is unmistakable: "the crux of [Plaintiffs'] claim[s] remain[] unchanged." *Big Tyme Investments*, 985 F.3d at 465.

There is likewise no question that S.B. 6 fails to provide the "precise relief . . . requested in the prayer for relief in the[] complaint." *New York State Rifle*, 140 S.Ct. at 1526. S.B. 6 expressly provides that "it may not be construed as requiring the court to hold an evidentiary hearing that is not required by other law." § 5. In other words, S.B. 6 explicitly *does not* create a right to an evidentiary, adversarial, on-the-record bail hearing—freeing counties to detain people without any evidence that such detention serves any governmental purpose. S.B. 6 also fails to provide the other procedural protections that due process requires, such as an on-the-record statement of reasons justifying any order resulting in pretrial detention and findings by clear and convincing evidence. Texas law remains silent on the important matters raised in this case.

Although S.B. 6 requires judicial officers to "impose the least restrictive conditions, if any, and the personal bond or cash surety bond necessary to reasonably ensure the defendant's appearance in court as required and the safety of the community," § 5 (adding Tex. Code Crim. Proc. art. 17.028), this provision is plainly contradicted by the law's requirement that broad groups of people be detained unless they can pay a money bond, *id.* §§ 6–7. Moreover, as explained above, the provision has had no discernible effect on the County's local practices, where judicial officers still consistently do not make a finding of necessity before requiring a monetary payment for

6

release. Defendants do not even claim to make the substantive findings or provide the procedural protections required to justify pretrial detention. It cannot be said that the Court is "unable to grant the litigant 'any effectual relief whatever.'" *Dierlam*, 977 F.3d at 476 (quoting *Calderon*, 518 U.S. at 150). Plaintiffs continue to be harmed by the same practices they initially challenged and thus retain a "concrete interest" in the relief they originally sought: protection from pretrial detention unless a judge finds that such detention is necessary by a heightened evidentiary standard. *Knox*, 567 U.S. at 307–08.[4]

### B. The *Daves* District Court's Mootness Holding Is Not Binding, Wrongly Decided, and Readily Distinguished.

Defendants' arguments in support of mootness rest almost entirely on a non-binding district court decision that ignored the controlling Supreme Court test for mootness in a case challenging a factually distinguishable bail system in Dallas County. Dkt. 642 (State Br.) at 12 (citing *Daves v. Dallas Cnty.*, No. 3:18-CV-154-N, 2022 WL 2473364, *5–6 (N.D. Tex. July 6, 2022)); Dkt. 643 (County Br.) at 9; Dkt. 641 (Sheriff Br.) at 4. First, Defendants ignore the relevant test. Contrary to decades of binding precedent, the *Daves* court concluded that because S.B. 6 mandated certain changes to state bail law, plaintiffs must sue to enforce the provisions of S.B. 6 or challenge that law as unconstitutional. *Daves*, 2022 WL 2473364, at *5–6. The court did not ask whether S.B. 6 "completely . . . eradicate[d]" the constitutional violations alleged by the plaintiffs. *Los Angeles Cnty.*, 440 U.S. at 631. Nor did the court find that it was "impossible for [it] to grant any effectual relief whatever to the prevailing party." *Chafin*, 568 U.S. at 172. In fact, the court recognized the

---

[4] Even if S.B. 6 had lessened Plaintiffs' injuries instead of exacerbating them, mootness would remain improper. *See Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (passage of legislation that disadvantaged the plaintiff's members "to a lesser degree," but still "disadvantage[d] them in the same fundamental way" as before the legislation, did not render the case moot); *Covington*, 138 S.Ct. at 2553; *Big Tyme Investments*, 985 F.3d at 465; *Cooper v. McBeath*, 11 F.3d 547, 550–51 (5th Cir. 1994).

opposite, acknowledging that "[p]laintiffs . . . seek greater remedies than those afforded by S.B. 6." *Daves*, 2022 WL 2473364, at *6. This finding should have been decisive. Instead, even as the district court recognized that S.B. 6 did not grant plaintiffs complete relief, the court applied its own novel test, finding that S.B. 6 mooted the case because it "replaced" Dallas County's "home-grown" bail procedures. *Id.* at *5. But using opaque labels like "replaced" and "home-grown" cannot change the dispositive inquiry, namely: has the harm been completely cured? Whatever the Fifth Circuit ultimately decides in *Daves*, applying the correct test in *this* case, the answer is no.

*Daves* and *Rainwater II*, on which *Daves* largely rests, are factually distinguishable. *Rainwater II* was a facial challenge to a county bail rule. In the middle of that litigation, the Florida Supreme Court adopted a rule that totally replaced the county rule. *See* 572 F.2d at 1055. Crucially, the *Rainwater* Court could not assess whether the harm alleged there continued after adoption of the new rule because the record contained "only evidence of practices under criminal procedures which predate[d] the adoption of the current Florida rule." *Id.* at 1058. Given the complete replacement of the challenged rule, and the lack of evidence that the new rule resulted in the same alleged violations, *Rainwater II* held that the challenge to the original rule was moot. *See id.* at 1059. In contrast, in this case, Plaintiffs have submitted declarations, data, case documents, and bail hearing videos all demonstrating that the constitutional violations they alleged in January 2019 continue unabated *today*. Dkt. 634 (Pls' Br.) at 43–44. *Daves*—relying on *Rainwater*—held that the plaintiffs' claims were moot there because the challenged procedures were "replaced." 2022 WL 2473364, at *5. Leaving aside for a moment that the *Daves* facts and legal analysis were wrong, there is no dispute that, in Harris County, S.B. 6 has not "replaced" Defendants' bail procedures, let alone ended the alleged harm. *See* Section I.A., *supra*.

Nor does it matter, as Defendants assert, whether S.B. 6 was meant to codify the Fifth Circuit's decision in *ODonnell*. Dkt. 643 (County Br.) at 9 (citing *ODonnell I*, 892 F.3d at 157). First, Plaintiffs here seek relief that goes beyond what *ODonnell* held to be required and raise claims that the court there did not address, so even if S.B. 6 codified *ODonnell*, that would not provide Plaintiffs the "precise relief . . . requested . . . in their complaint." *New York State Rifle*, 140 S.Ct. at 1526. And in any event, S.B. 6 does not provide all of the relief *ODonnell* required;[5] in fact, the statute's bar on unsecured release for huge categories of people inflicts the very constitutional violations *ODonnell* identified, by "automatically" detaining indigent arrestees for those offenses while allowing individuals who can pay secured bail to go free. *ODonnell I*, 892 F.3d at 159.

Thus, even on paper, S.B. 6 changed little in Harris County.[6] But this case does not turn on the text of state law; it challenges Defendants' local bail *practices*, regardless of what state law requires. As explained in Section I.A., *supra*, it is beyond debate that those practices continue to cause the same injuries. *See also* Dkt. 634 (Pls' Br.) at 59–60.

---

[5] For instance, thousands of Plaintiff class members every year do not receive a magistration hearing within 48 hours, as required by *ODonnell I*, let alone the adversarial on-the-record evidentiary hearing that the Constitution demands. Dkt. 634 (Pls' Br.) at 24.

[6] For example, the State Intervenor places heavy emphasis on the fact that a judicial officer setting bail must consider an individual's "ability to make bail," Dkt. 642 (State Br.) at 11–12, apparently implying that this is a changed circumstance supporting mootness. Not true; this requirement is decades old. Tex. Crim. Pro. art. 17.15 (1993) ("ability to make bail is to be regarded, and proof may be taken upon this point"). And Harris County felony arrestees have completed a financial affidavit for years prior to this lawsuit, Dkt. 634 (Pls' Br.) at 9–10, so S.B. 6's requirement that they do so was functionally meaningless. Whatever the effects of S.B. 6 in Dallas, the law barely changed the applicable law in Harris County, much less "replaced" it, and the constitutional harms remain the same. One change to Harris County bail practices is clear: S.B. 6's mandated cash-bail provisions have resulted in even fewer people receiving unsecured bonds and more people being detained while awaiting trial. Dkt. 634 (Pls' Br.) at 8–9. But the fact that local officials are now violating the Constitution for another related but independent reason does not invalidate Plaintiffs' claims, which have yet to be addressed. It cannot be right—and Supreme Court precedent shows clearly that it is not right—that a law that exacerbates harms challenged in litigation renders that litigation moot.

Defendants' assertion that S.B. 6 mooted Plaintiffs' claims cannot make it so. They offer no evidence to show that the violations have ceased. This case is not moot.

## II.     PLAINTIFFS ARE ENTITLED TO RELIEF AGAINST THE COUNTY

Counties are liable for injuries caused by county policies. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Cnty. Of Riverside v. McLaughlin*, 500 U.S. 44, 47–48, 50–51 (1991) (holding class of pretrial detainees had standing to sue the county for policy that delayed bail and probable cause hearings). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). The actions of the Harris County Felony Judges and Sheriff each provide a basis for relief against the County.[7]

### A.  The Felony Judges Are County Policymakers.

It is undisputed that the Felony Judges' customs and practices are the "moving force" behind Plaintiffs' injuries. *Peterson*, 588 F.3d at 847; Dkt. 197 at 3 (Answer of Sheriff Ed Gonzalez) ("The felony judges in Harris County are the true policymakers regarding bail practices, both in terms of setting rules and procedures and in applying those rules and procedures in individual cases."); Dkt. 181-1 at 5 (Memorandum in Support of Intervention by Judge Chuck Silverman) (the Felony Judges are "key stakeholders in promulgating bail procedures and processes to determine which arrestees are eligible for release on non-financial conditions, the findings required to justify pretrial detention, and the procedural safeguards required in bail

---

[7] The County suggests that because the bail schedule is no longer in effect, Plaintiffs cannot trace their injuries to Harris County or the Felony Judges. Dkt. 643 (County Br.) at 9–10. But the County later concedes (correctly) that "Plaintiffs may be challenging other aspects of the bail system." *Id.* at 7. The County ignores the evidence showing the numerous ways the County—through the Judges—controls the post-arrest process and causes Plaintiffs' injuries. *See* Dkt. 634 (Pls' Br.) at 25–27. Traceability is easily satisfied.

hearings"). The County does not and cannot deny the Judges' connection to Plaintiffs' injuries. Instead, the County argues that it cannot be held liable because, the County asserts, the Judges are acting judicially on behalf of the state. Dkt. 643 (County Br.) at 6–7. That is not correct.

Under Texas law, judges' *judicial* acts are on behalf of the state, *Davis v. Tarrant Cnty.*, 565 F.3d 214, 227 (5th Cir. 2009), but judges also perform administrative duties and, in doing so, may set county policy, *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). Here, The Felony Judges act administratively—not judicially—when they promulgate and enforce the administrative rules, policies, and customs that cause Plaintiffs' constitutional injuries, and they act on behalf of the County, not the state, when doing so.

## 1. The Judges' administrative functions cause Plaintiffs' injuries

To determine whether an act is judicial or administrative, courts distinguish between "discretionary decisionmaking" and "administrative duty." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). The "touchstone" of judicial action is "performance of the function of resolving disputes between parties." *Id.* at 435–36. A court may also consider whether the relevant act took place in or near a courtroom, whether the act involved a pending case, and whether the act arose out of a visit to the judge in their official capacity. *Davis*, 565 F.3d at 222.

The Felony Judges are not engaged in judicial conduct when they administer general rules governing the County's felony post-arrest process, divorced from the substantive outcome of any particular case or controversy. Adopting local policies is an "administrative duty," not "discretionary decisionmaking" that "resolv[es] disputes between parties." *Antoine*, 508 U.S. at 435–36. The "actual function[s]" at issue in this case are the administration of felony post-arrest procedures and court operations for Harris County by either majority vote,[8] Tex. Gov't Code §§

---

[8] *See also* Dkt. 634-1 (Pls' SUMF) ¶ 189 (citing Ex. 31 (Deposition of Judge Brian Warren) ("We [Felony Judges] need 15 to adopt any rule. So we – we just need the 15 of 22 judges to vote in favor of any rule,

74.093(a), (c)(4), or an order by the Administrative Judge,[9] *id.* §§ 74.092(a)(1), (3). Those decisions are independent from any individual "case pending before the court," "courtroom," or litigant. *Davis*, 565 F.3d at 222; *accord Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980) (holding "rulemaking" is "not an act of adjudication"). Nor do the policies and practices at issue dictate the outcome of judicial acts. *Daves*, 22 F.4th at 539.

The County's argument to the contrary rests on a misreading of the Fifth Circuit's decision in *Daves v. Dallas Cnty*. The *Daves* Court applied *McMillian* only to the Dallas County judges' promulgation of a recommended (*i.e.*, non-binding) bail schedule. 22 F.4th at 539–40 (citing *Davis*, 565 F.3d at 218–19). It did not address any other function or policy. Here, Plaintiffs challenge *numerous* functions and policies, and the only one addressed in *Daves*—the bail schedule—is not even at issue in this case because it was rescinded following the passage of S.B. 6. This case is therefore *only* about the constitutionality of rules and procedures that were not addressed in *Daves* and that do not dictate the outcome of any judicial officer's discretionary decision. Thus, the holding in *Daves* that the Dallas County judges acted judicially and on behalf of the state when they promulgated a discretionary bail schedule (which, the court held, they did not and could not enforce) says nothing about whether the numerous *other* functions Plaintiffs challenge in this case are judicial in nature. That question cannot be answered categorically, as Defendants would have this Court do. The facts control.

---

that's binding on any of the other judges.")); *id.* ¶ 190 (citing Dkt. 181-1 (Motion to Intervene by Judge Chuck Silverman) ("The criminal district judges have full discretion consistent with state and federal law to determine policies relating to post-arrest release and detention.")).

[9] *E.g.*, Dkt. 634-1 (Pls' SUMF) ¶ 190(d) (citing Ex. 33 (First Amended General Order Bond)); *id.* ¶ 190(q) (citing Ex. 37 (Order To Disregard Directive by Harris County Judge, signed by Administrative Judge Herb Ritchie); *id.* (citing Ex. 30 (Deposition of Sheriff Ed Gonzalez) (testifying that he was required to comply with Judge Ritchie's order under pain of contempt)).

As Plaintiffs explain in their opening brief, the Felony Judges exert administrative control over the felony post-arrest process through more than a dozen different policies and administrative rules. Dkt. 634 (Pls' Br.) at 25–27. Prior to S.B. 6, the Judges' control of virtually every aspect of the post-arrest process was exemplified by—but never limited to—their implementation of a binding bail schedule that did not "creat[e] guidance," but rather controlled bail conditions prior to a magistration hearing and *at* a magistration hearing for decades. *Contra Daves* 22 F.4th at 543 (finding that "the act of creating [non-binding] guidance for setting bail" is a judicial act). Under *Davis*, the policies still in force in Harris County, unlike the bail schedule in *Daves*, are core administrative functions. For example, the Judges control the content of the financial affidavit administered by Pretrial Services, direct Pretrial Services not to ask felony arrestees the specific amount they can pay for release, and set rules for the timing of bail hearings and whether a defendant is brought to the courtroom. Dkt. 634 (Pls' Br.) at 25–27. Most of these policies establish procedures for the Sheriff, Pretrial Services, and hearing officers to follow and dictate the proper paperwork to be filed in administering the felony system's bureaucracy: run this risk algorithm, interview (or do not interview) this person, ask (or do not ask) these questions, use this form to set the bond, transmit this form to the clerk. *Id.* at 5, 25–27. These duties are ministerial and do not constitute substantive guidance on how any judicial officer should exercise their discretion in any given case. *See Antoine*, 508 U.S. at 436 ("ministerial" matters are not judicial acts); *see also Forrester v. White*, 484 U.S. 219, 229 (1988) ("overseeing the efficient operation of a court" is not a judicial act); *Sup. Ct. of Va.*, 446 U.S. at 731 ("rulemaking" is not a judicial act). Therefore, under *Davis*, the Felony Judges do not act judicially when they promulgate and enforce policies and customs that control the post-arrest process in Harris County.

13

Although the *en banc* court in *Daves* only looked at the first *Davis* factor, the remaining three factors—whether the act occurred in a courtroom or chambers, whether the act arose directly out of a visit to the judge in his official capacity, and whether the controversy centered around a pending case—support the conclusion that the Judges act administratively when they promulgate rules and procedures that govern the post-arrest process. As *Davis* recognized, the "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform" are not judicial functions simply because they are performed by a judge. 565 F.3d at 221 (internal quotation marks omitted). The judicial-capacity inquiry turns on "the nature of the function performed, not the identity of the actor who performed it." *Forrester*, 484 U.S. at 229. Thus, courts look to this location factor to confirm that a judicial defendant was exercising case-specific judicial authority. *See, e.g.*, *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993) (holding that a contempt order entered, and subsequent sentenced imposed, in a courtroom were judicial acts). The rules and policies the Judges promulgate and enforce are not issued in courtrooms; they are voted on at meetings or decided in chambers by the Administrative Judge. They do not arise out of a "visit" to any particular judge in his or her judicial capacity. Rather, they are promulgated *sua sponte*, in the Judges' discretion, in an attempt to ensure the felony bail system is administered efficiently and fairly. The last *Davis* factor, whether the policies center on a pending case, further establishes that the Judges are not acting judicially, as their policies and practices govern the processes that apply uniformly to all felony arrestees and do not focus on any one pending case.

### 2. The Judges Act for the County When Promulgating Administrative Rules.

The next question is whether the Judges act on behalf of the County or the State when they exercise their authority to promulgate "policies relating to post-arrest release and detention." Dkt. 634 (Pls' Br.) at 27 (citing Dkt. 181-1 (Memorandum in Support of Intervention by Judge Chuck

Silverman). The Supreme Court explained in *McMillian v. Monroe Cnty., Ala.*, that whether a local official acts on behalf of the state or the county is a function-specific inquiry that focuses on whether, as a practical matter, the Judges act as policymakers in this particular context—not whether the Judges act as policymakers "in some categorical, 'all or nothing' manner." 520 U.S. 781, 785–86 (1997); *id.* (the question is simply whether they set policy "in a particular area, or on a particular issue"); *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 699, 701 (5th Cir. 1998) (sheriff acts for the county "with respect to the specific action at issue"). The *en banc* court's decision in *Daves* offers little guidance on this question because the court focused only on whether the felony district judges were acting "as officers of the state judicial system" when they "made a bail schedule." 22 F.4th at 541. Plaintiffs in this case challenge numerous functions—like the timing of bail settings, whether a person will be brought from the jail to the courthouse for a court setting, and what form the hearing officers complete when setting bail —that have nothing to do with the specific bail amounts imposed in particular cases.[10] Dkt. 634 (Pls' Br.) at 25–27. These functions are not directed by state law, but rather promulgated as an exercise of the Judges' discretion to make general rules and processes of administration for any "matter necessary to . . . improve the administration and management of the court system and its auxiliary services." Tex. Gov't Code §§ 74.093(a), (c)(4).

The most important *McMillian* factor is that state law affords the Felony Judges broad discretion to determine local rules governing the post-arrest process. Tex. Gov't Code § 74.093

---

[10] Although the Harris County Felony Judges' bail schedule is no longer in effect, the Fifth Circuit's holding that the Dallas County judges' *discretionary* bail schedule, which merely guided magistrate judges' decision-making at the initial bail setting, was a judicial function performed on behalf of the state would not have foreclosed a holding in *this* case that the Harris County judges were promulgating an *administrative* policy on behalf of the County when they issued a blanket policy requiring the County Pretrial Services agency and the District Attorney's Office to affix a particular bail amount to a complaint, and required the Sheriff to demand that amount of money in exchange for release before a judicial officer ever considered the facts of the specific case.

("The district and statutory county court judges in each county shall, by majority vote, adopt local rules of administration."). If the judges in a particular county choose to exercise that discretion in a way not required by Texas law but that violates federal law, their illegal policies constitute official policy for the County, not for Texas.[11] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that a county is liable under § 1983 when a policymaker makes "a deliberate choice to follow a course of action . . . from among various alternatives"). That is precisely what has happened in Harris County. Nothing in state law requires the Judges to promulgate the specific array of unconstitutional administrative policies and practices that cause Plaintiffs' injuries, and nothing prohibits the Judges from promulgating rules requiring bail processes that would be constitutional. The Felony Judges could make policy choices that are consistent with state law and that comply with federal due process and equal protection, yet they have decided not to. Policies and practices relating to bail-setting procedures that are not required by state law and that apply to all arrestees only within a given county constitute official policy for the County. None of the other *McMillian* factors warrants deviating from this conclusion.[12]

---

[11] Arguably, the County would be liable even if the Judges were merely following state law, but that issue is not presented here because Harris County's policies are not required by state law.

[12] While the Court in *McMillian* ultimately held that the sheriffs were state officials, that was only because it concluded that several "important" points were outweighed by others. 520 U.S. at 791–93. Those other points (the intent of the framers of the Alabama Constitution; that authority to impeach sheriffs rests with the Alabama State Supreme Court; and the existence of state case law interpreting the Constitution and its history to reveal the framers' intent that sheriffs be considered state officers, *McMillian*, 520 U.S. at 787– 89) do not tip the balance here. And although the Felony Judges can be recommended for removal by a state commission rather than county actors, Tex. Const. art. V, § 1-a, the historical context that gave this factor weight in *McMillian* is absent here. Moreover, Harris County budgets for and funds the court administrator system, Tex. Gov't Code § 75.401, as well as any other officials "necessary to the administration of the judicial system," *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017).

In *ODonnell*, this Court considered the fact that the Governor fills vacancies for felony judges (as compared to the Harris County Commissioners Court, which fills vacancies for misdemeanor judges), and that only the Texas Supreme Court can remove felony judges (as compared to misdemeanor judges, who can also be removed by a felony judge), to be relevant to but not dispositive in deciding that the misdemeanor judges are County actors. *ODonnell v. Harris Cnty.*, No. CV H-16-1414, 2017 WL 784899, at *3 (S.D. Tex. Mar. 1, 2017) (denying County's motion to reconsider). Here, these factors may be relevant,

The Felony Judges are county officials, elected by county voters, who are engaged in creating local administrative rules that only apply to the county in which they sit. Their state law duties do not compel these policies, nor do the policies dictate any future judicial act. Therefore, the Judge are County policymakers for the relevant functions.

### B. The Sheriff Is a County Policymaker.

Although currently foreclosed by circuit precedent, *ODonnell I*, 892 F.3d at 156, Plaintiffs preserve their argument that the Sheriff acts as a policymaker for Harris County when he enforces orders to pay secured bail that result in unconstitutional detention. "[I]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement" by virtue of the sheriff's election to office. *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) (internal citation omitted); *see also* Tex. Gov't Code § 351.041 ("The sheriff of each county is the keeper of the county jail."). The Sheriff does not dispute that his office enforces such orders; he questions whether his conduct is a "policy." Just as the Sheriff has the authority—indeed the duty—to refuse to enforce judicial orders requiring the pretrial detention of all people who are Jewish or Catholic, the Sheriff has discretion, and the duty, not to enforce orders that result in pretrial detention without any determination that the detention serves any purpose. He chooses to enforce them anyway, as matter of policy. He acts as a final policymaker for the County when he does so. Accordingly, the County is properly enjoined under *Monell* because of the Sheriff's conduct.

---

but cannot overcome the weight of the other factors pointing toward a conclusion that the Felony Judges, like misdemeanor judges, are making policy on behalf of Harris County.

### C.  The County is a Required Party for Complete Relief.

Even if the policies at issue are not attributable to the County, the County would not be subject to dismissal because it is a "required" party under Rule 19(a)(1)(A) and (B). Fed. R. Civ. P. 19. First, this Court "cannot accord complete relief" without the County as a party. Fed. R. Civ. P. 19(A). Plaintiffs seek attorneys' fees, Dkt. 195-1 (Second Amended Compl.) at 51, and if they prevail against the Sheriff, the fees will likely come from County coffers. *See Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 417 (5th Cir. 2007) ("That a defendant does not promulgate a policy does not eliminate the costs the plaintiff had to bear in securing his rights, hence even defendants lacking culpability and acting in good faith should pay attorneys' fees."). Second, the County has "claim[ed] an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence may . . . impair or impede [its] ability to protect the interest." Fed. R. Civ. P. 19(B)(i). The County has told this Court that "it is time to end the sale of liberty for pre-trial detainees," Dkt. 209 (County Answer) at 1, and has "requested that *we* craft and implement a felony bond system that promises Equal Protection and Due Process, and demolishes the systematic incarceration of our most impoverished felony arrestees," *id.* at 2 (emphasis added). Surely, if the State has an interest in this, Dkt. 375 (Order Granting Unopposed Mot. to Intervene by the State of Texas), so does Harris County, which is charged with implementing and paying for the local bail system. For these reasons, even if the County were not a proper Defendant, its participation in this litigation is required to afford Plaintiffs complete relief. Indeed, the County has asked to participate. Dkt. 209 at 2.

III.    **PLAINTIFFS ARE ENTITLED TO RELIEF AGAINST THE SHERIFF**

      A.  **Plaintiffs Have Standing Against the Sheriff.**

The Sheriff argues that Plaintiffs lack standing against him because Plaintiffs' injury is traceable only to the decision-makers whose decisions he "mere[ly]" administers. Dkt. 641 (Sheriff Br.) at 3. This misunderstands the causation requirement for standing.

Plaintiffs have satisfied the injury, traceability, and redressability requirements of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). This is because: (1) the Plaintiff class is continuously and unconstitutionally detained (2) because the Sheriff contributes to that injury by enforcing unconstitutional bail orders, and (3) an order from this Court prohibiting the Sheriff from enforcing unconstitutional orders would end the harm. *McLaughlin*, 500 U.S. at 51; *see also* Section II.B., *supra* (explaining why the Sheriff may be enjoined). It makes no difference that Plaintiffs *also* have standing against the Judges. *C.f. Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007) ("We reject the Public Defender's attempt to evade liability by shifting to the municipal judge all responsibility for the alleged infringement of Powers's rights."); *see, e.g.*, Restatement (Third) of Torts: Phys. & Emot. Harm § 29, cmt. b (2010) ("Multiple factual causes always exist, . . . and multiple proximate causes are often present."). The Sheriff literally holds the keys to the jail; of course he is causing the unlawful detention, and of course an order from this Court requiring him to release anyone who is unconstitutionally detained would remedy the harm. *K.P. v. LeBlanc*, 627 F.3d 115, 123–24 (5th Cir. 2010) (holding that a plaintiff can satisfy redressability when a favorable decision would relieve an injury, even if it doesn't relieve all of the plaintiff's injuries).

*Daves* does not hold otherwise, contrary to the Sheriff's assertion. Dkt. 641 (Sheriff Br.) at 3. In a portion of the *Daves* panel decision that has not been addressed by the *en banc* court, the

Fifth Circuit held that the plaintiffs had standing against the sheriff. 984 F.3d 381, 405–07 (5th Cir 2020); 22 F.4th at 545.[13] By detaining the Plaintiff class, the Sheriff has "contributed" to Plaintiffs' unconstitutional pretrial detention. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) (affirming causation where defendant "contributes" to plaintiff's injury).

### B.  The Sheriff May Be Enjoined as an *Ex Parte Young* Enforcement Actor.

Liability is a related but distinct inquiry from standing. With respect to liability, the Sheriff argues that he cannot be subject to injunctive relief because he is merely "execut[ing] faithfully" the judges' orders of pretrial detention. Dkt. 641 (Sheriff Br.) at 3. This "argument ignores hornbook law that has been around for over 100 years." *Edwards v. Cofield*, 265 F.Supp.3d 1344, 1345 (M.D. Ala. 2017). Whether or not the Sheriff knows the detention orders he enforces are illegal[14] or has state-law authority to refuse them, this Court can declare that they are unconstitutional and enjoin him from enforcing them. At that point—if knowledge mattered—the Sheriff would know that he was violating the federal Constitution.

Federal courts have the power to enjoin local officials from violating the Constitution. The exception to Eleventh Amendment immunity set forth in *Ex parte Young* permits prospective injunctive relief against state or local officials[15] for violating federal law so long as they have

---

[13] The traceability analysis the *en banc Daves* Court *did* undertake, as to the judges' discretionary bail schedule, bolsters Plaintiffs' argument, as nothing could be more "expected" or "predictable," 22 F.4th at 543–44, than the fact that enforcing unconstitutional bail orders by locking people up will lead to unconstitutional detention.

[14] If knowledge were a requirement, Plaintiffs have satisfied it: The Sheriff is aware that these court proceedings do not pass constitutional muster, Dkt. 634-1 (Pls' SUMF) ¶ 134, and he knows that thousands of people in his custody would be released if only they could pay the required amount, *id.* ¶ 135.

[15] *See, e.g.*, *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("Actions under *Ex parte Young* can be brought against both state and county officials . . . so it is unnecessary for us to resolve the parties' dispute over whether the Sheriff acts on behalf of King County or the State of Washington when he executes writs of restitution. . . . The Sheriff's role in executing those writs makes him a proper defendant . . ."); *Griffin v. Cty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 228 (1964) (upholding injunction against

"some connection with the enforcement of the" challenged acts. 209 U.S. 123, 157 (1908); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("Under the doctrine articulated in *Ex parte Young*, a state official attempting to enforce an unconstitutional law 'is stripped of his official clothing and becomes a private person subject to suit.'") (citations omitted); *see* 42 U.S.C. § 1983. To have such a connection, plaintiffs need demonstrate only that, in exercising official duties, the official "constrain[s]" the plaintiffs' rights in some way. *Air Evac EMS, Inc. v. Texas Department of Insurance, Division of Workers' Compensation*, 851 F.3d 507, 519 (5th Cir. 2017); *see also LeBlanc*, 627 at 124.

The *Ex parte Young* analysis has "significantly overlap" with the Article III standing analysis. *Air Evac*, 851 F.3d at 520. "In fact, it may be the case that an official's "connection to [] enforcement" is satisfied when standing has been established. *City of Austin v. Paxton*, 943 F.3d 993, 1002–03 (5th Cir. 2019) (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*.")). "At the minimum, our case law shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question." *Id.*; *see, e.g., LeBlanc*, 627 F.3d at 122.

For the same reasons Plaintiffs have standing, *see* Section III.A., *supra*, the Sheriff bears a sufficiently close connection to the challenged practices to be enjoined. Indeed, the Sheriff "jails presumptively innocent people for inordinate periods of time in ways that disproportionately fall on the poor, especially persons of color," Dkt. 641 (Sheriff Br.) at 1, pursuant to secured financial

---

county officials under *Ex parte Young*); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 957 (9th Cir. 2002) (reinstating claims against municipal officers because they were "classic *Ex parte Young* defendants"). Here, too, it does not matter which entity the Sheriff represents when he commits his violations.

conditions issued without an inquiry into ability to pay, consideration of alternatives to detention, or a finding that detention is necessary. Dkt. 634 (Pls' Br.) at 6; *see also* Dkt. 634-1 (Pls' SUMF) ¶ 86 ("[T]he hearing officer signs a document stating, 'The Court ORDERS the defendant committed to the custody of the Sheriff . . . until he posts the required bond or until further order[.]'"). This detention violates the Constitution. Dkt. 634 (Pls' Br.) at 35–59. The Sheriff is therefore an *Ex parte Young* enforcement actor who may be properly enjoined from enforcing the "discriminatory bail practices" he acknowledges in his brief. Dkt. 641 (Sheriff Br.) at 4.

The Sheriff's argument that he cannot be enjoined is premised on a misreading of *ODonnell I*, 892 F.3d. Although the *ODonnell* Court held that the Sheriff was not a policymaker and initially dismissed him from the case, on rehearing, the court reinstated the plaintiffs' claims against him as an enforcement actor. *Id.* at 165. And as Judge Jeffrey Sutton explained in a Sixth Circuit case when affirming an injunction prohibiting a Tennessee County sheriff from enforcing unconstitutional bail orders issued by Judges who were not defendants in the case, "[t]here are plenty of cases allowing injunction actions like this one." *McNeil v. Cmty. Prob. Services, LLC*, 945 F.3d 991, 996 (6th Cir. 2019).

The Sheriff's appeal to his supposed lack of discretion is also unavailing. Indeed, when an official claims a lack of discretion under state law not to enforce the challenged acts, it is particularly clear that "some connection" exists. *See Air Evac*, 851 F.3d at 519. If, as the Sheriff claims, he has no choice but to enforce state-court orders, then he is a state actor charged with enforcing those orders. *Echols v. Parker*, 909 F.2d 795, 800–01 (5th Cir. 1990) ("When a state statute directs the actions of an official, as here, the officer, be he state or local, is acting as a state official."); *see also Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988); *Due v. Tallahassee Theatres, Inc.*, 333 F.2d 630, 632 (5th Cir. 1964) ("If . . . the Sheriff, either through

22

misunderstanding as to the scope of the order, or in excessive zeal in enforcing it, or because the order itself . . . violat[ed] the constitutional rights of the appellants, [or] invaded appellants' constitutional rights, this could be tested out in a suit seeking to enjoin such conduct[.]"). As one court put it, a sheriff "does not enjoy immunity merely because he was following orders. Indeed, [] *Ex parte Young* assumes that the state actor has done nothing more than enforce the law as promulgated by the State." *Edwards*, 265 F. Supp. 3d at 1346; *see also Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022); *Buffin v. City & Cnty. of San Francisco*, No. 15-CV-4959, 2016 WL 6025486, at *8–9 (N.D. Cal. Oct. 14, 2016); *McNeil*, 945 F.3d (enjoining a county sheriff in Tennessee from enforcing unconstitutional bail orders pursuant to the equitable principles set forth in *Ex parte Young*).

The Sheriff may therefore be enjoined from enforcing federal constitutional violations regardless of his discretion or lack thereof, and should not be dismissed.

## IV.   SUMMARY JUDGMENT SHOULD BE GRANTED TO THE PLAINTIFFS

The County and Sheriff do not even attempt to justify their practices under the Fourteenth Amendment. And the State Intervenor's feeble attempt to argue the substantive law misreads controlling precedent. Plaintiffs have presented unrebutted evidence meeting the elements of three separate constitutional violations and thus merit summary judgment on all counts.

### A.  Plaintiffs Were Not Required to Bring Their Claims Under the Eighth Amendment.

The State Intervenor argues that Plaintiffs had to bring their claims under the Eighth Amendment's Excessive Bail Clause rather than the Fourteenth Amendment. As this Court has already observed, Dkt. 326 (MTD Op.) at 42–43, binding precedent rejects that argument.

The Supreme Court has repeatedly "rejected" the notion "that the applicability of one constitutional amendment pre-empts the guarantees of another." *United States v. James Daniel*

*Good Real Property*, 510 U.S. 43, 49 (1993). To the contrary, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992). Hence, in *Rainwater*, the Fifth Circuit analyzed a challenge to Florida's money-bail system under the Fourteenth Amendment, and held that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Rainwater II*, 572 F.2d at 1057; *Salerno*, 481 U.S. at 746 (analyzing challenge to the Bail Reform Act under both due process and the Excessive Bail Clause of the Eighth Amendment).

True, the Supreme Court has cautioned that reliance on substantive due process is sometimes improper if challenged conduct is covered by a specific constitutional provision. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). But that caution is not implicated here. *Graham* reflects only a "reluctan[ce] to expand the concept of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiffs' claims involve no such expansion; they rely on two venerable principles: that equal protection and substantive due process protect against money-based detention, *see Bearden*, 461 U.S. at 665; *ODonnell I*, 892 F.3d at 161; *Rainwater II*, 572 F.2d at 1057; *Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972), and that substantive due process encompasses the "fundamental" interest in bodily liberty, *see Foucha*, 504 U.S. at 80; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), including for people accused of crime, *Salerno*, 481 U.S. at 750, or convicted of them, *Gagnon*, 411 U.S. at 786; *Morrissey*, 408 U.S. at 489. In *ODonnell I*, the Fifth Circuit rejected the argument that *Graham* had undermined *Rainwater*, concluding that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." 892 F.3d at 157 (citation omitted); *see also Walker v. City of Calhoun*, 901 F.3d

24

1245, 1258 (11th Cir. 2018) ("The district court was correct [] to evaluate this case under due process and equal protection rubrics rather than the Eighth Amendment."), *cert. denied*, 139 S.Ct. 1446; *Torres v. Collins*, No. 2:20-CV-26, 2020 WL 7706883, at *5 (E.D. Tenn. Nov. 30, 2020); *Buffin v. City & Cnty. of San Francisco*, No. 15-CV-4959, 2018 WL 424362, at *4 (N.D. Cal. Jan. 16, 2018). The *en banc* court in *Daves* did not disturb that holding. It thus binds this Court.

**B.  Defendants' Bail Practices Violate Two Substantive Constitutional Interests.**

Defendants' bail practices are unconstitutional because they violate Plaintiffs' substantive due process rights. Their arguments to the contrary are without merit.

### 1. The Fourteenth Amendment recognizes a fundamental interest in pretrial liberty.

As Plaintiffs explain in their opening brief, Dkt. 634 at 35–38, the Supreme Court has repeatedly held that due process protects a "fundamental" right to pretrial liberty. *Salerno*, 481 U.S. at 750; *Foucha*, 504 U.S. at 80 ("Freedom from bodily restraint," the Supreme Court has explained, "has always been at the core of the liberty protected by the Due Process Clause."); *Zadvydas*, 533 U.S. at 690; *Reno v. Flores*, 507 U.S. 292, 302 (1993). Consistent with that principle, the Court has recognized a "'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial" in the absence of a compelling state interest. *Salerno*, 481 U.S. at 749.

The State Intervenor's arguments to the contrary mischaracterize Plaintiffs' claims and the controlling law. First, the State Intervenor contends that Plaintiffs assert "an unfettered right to pretrial release." Dkt. 642 (State Br.) at 20. Not so. As Plaintiffs explain in their opening brief, "[t]he interest in pretrial liberty is not absolute; people can be detained pretrial . . . . when the government's interest is sufficiently 'compelling' and the deprivation is narrowly tailored to that interest." Dkt. 634 (Pls' Br.) at 35; *see also id.* at 56 ("The County can still detain any person who

poses a danger that cannot be mitigated with less-restrictive conditions of release—so long as a finding that pretrial detention is necessary to serve a compelling government interest has been made and procedures afforded to ensure the accuracy of that determination."). Put differently, it is only *unjustified* deprivations of the right that violate substantive due process. *See Jones v. Brim*, 165 U.S. 180, 182 (1897).

Next, the State Intervenor selectively and misleadingly quotes *Salerno*—omitting the phrase "[u]nder these circumstances"—from a critical section of the opinion to argue (wrongly) that the Supreme Court "rejected the concept of any substantive due process right forbidding pretrial detention," which is not an argument Plaintiffs make anyway. Dkt. 642 (State Br.) at 18. Omitting that phrase changes the entire meaning of the passage as actually written. Here is what the Court wrote: after emphasizing the "importance and fundamental nature" of the right to liberty, *Salerno* observed that there nevertheless may be "circumstances where the government's interest is sufficiently weighty" that the right can be subordinated. 481 U.S. at 750–51. The Court then concluded, "*Under these circumstances*, we cannot categorically state that pretrial detention offends" a "fundamental" principle of justice. *Id.* at 751 (emphasis added) (quotation marks omitted). As both the full passage of *Salerno* and *Foucha*'s discussion of *Salerno* make clear, *Salerno* held only that the individual's "fundamental" interest in pretrial liberty could yield to the government's interests if less-restrictive conditions were considered and the appropriate findings were made on the record. *Foucha*, 504 U.S. at 80–81, 83. The fact that an individual right can sometimes be outweighed does not mean it does not exist, and Plaintiffs concede that the interests at issue in this case—although fundamental—must yield when the government's interests are sufficiently weighty and nothing short of detention is available to meet those important interests.

It is worth pausing here for a moment to consider the radical implications that follow from the State Intervenor's argument. If this Court were to accept the State Intervenor's claim that the federal constitution does not recognize an interest in pretrial liberty, it would allow jurisdictions to detain every individual arrested (for any crime at all) within their borders indefinitely, without any showing that pretrial detention was justified, based on nothing more than a finding of probable cause. And if the Fourteenth Amendment does not apply after arrest, the Constitution would permit states to detain all Black people or all women. The State Intervenor essentially asks for this Court's imprimatur to excuse pretrial detention from constitutional scrutiny. Such practices would offend the very "core" of due process. *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982).

Third, the State Intervenor undercuts its argument that *Salerno* rejected a substantive due process right by asserting that neither *Salerno* nor *Foucha* addressed substantive due process at all. Dkt. 642 (State Br.) at 19. Reference to the text of those decisions immediately reveals this to be incorrect. *Salerno* recognized that due process protects a "fundamental" interest in pretrial liberty, adopting the quintessential language of substantive due process. 481 U.S. at 746–52 (explaining the "'general rule' of substantive due process" that protects pretrial liberty and the conditions under which it can be overcome). The *Foucha* Court later affirmed *Salerno*'s substantive due process recognition that individuals' interest in physical freedom is the "core of the liberty protected by the Due Process Clause." *Foucha*, 504 U.S. at 80. *Foucha* further noted that "the Due Process Clause contains a *substantive* component that bars certain arbitrary, wrongful government actions *regardless of the fairness of the procedures* used to implement them." *Id.* (citations omitted, emphasis added); *see also id.* at 107 ("The Court today concludes that Louisiana has denied Foucha both procedural *and substantive* due process.") (Thomas, J. dissenting) (emphasis added).

27

The State Intervenor next observes that *Reno* rejected plaintiffs' substantive due process challenge. Dkt. 642 (State Br.) at 20. That is true, but in doing so, the *Reno* Court described the contours of the *substantive* right to pretrial liberty. That analysis is binding precedent. Writing for the majority in *Reno*, Justice Scalia described *Salerno* as a case that "forbids the government to infringe certain 'fundamental' liberty interests . . . unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S. at 301–02. However, he continued, "[t]he freedom from physical restraint invoked by respondents is not at issue in this case." *Id.* at 302 (quotations omitted). In other words, *Reno* confirms the legal doctrine about the substantive right to liberty, even as it finds that that right was not infringed.

Contrary to the State Intervenor's argument, Dkt. 642 (State Br.) at 20, *Zadvydas v. Davis*, 533 U.S. 678 (2001), is similarly supportive. *Zadvydas* was clear that its constitutional analysis rested largely on substantive due process grounds: "[W]e believe that an alien's liberty interest is, at the very least, strong enough to raise a serious question as to whether, *irrespective of the procedures used*, the Constitution permits detention that is indefinite and potentially permanent." 533 U.S. at 696 (emphasis added); *id.* at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). As outlined in these cases—and others the State Intervenor declines to mention, *see* Dkt. 634 (Pls' Br.) at 35–38—the Constitution forbids pretrial detention without adequate justification.

### 2. The Fourteenth Amendment prohibits incarceration solely because of nonpayment.

The Supreme Court has established another general rule: a state cannot condition a person's liberty on a monetary payment they cannot afford unless no alternative measure can meet the state's needs. *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971);

*Bearden v. Georgia*, 461 U.S. 660 (1983); *accord Rainwater II*, 572 F.2d at 1056 (applying *Bearden*'s principles to pretrial detention). Applying this binding precedent, federal courts around the country have repeatedly affirmed that money-based pretrial detention is unconstitutional without a substantive necessity finding. Dkt. 634 (Pls' Br.) at 44 n. 36 (citing cases).

Defendants offer little in response. The County and Sheriff do not address Plaintiffs' *Bearden* claim. *But see* Dkt 197 (Sheriff's Answer) at 1 ("The Sheriff continues to believe it is wrong to detain an arrestee in jail merely because the arrestee is too poor to post a bond."); Dkt. 209 (County's Answer) at 1 ("Currently, there are primarily two pre-trial bond detention structures: one for the wealthy and another for everybody else . . . . detaining somebody based upon their wealth is barbaric, unjust and defies the basic liberties guaranteed to us as a society."). The State Intervenor's response does not cite or discuss the *Williams-Tate-Bearden* line of cases. In fact, the State Intervenor's section addressing Plaintiffs' claims against money-based jailing does not reference a single case cited in Plaintiffs' brief. Dkt. 642 (State Br.) at 21–22. They may disagree with this binding precedent, but they had an obligation to address it. Their silence speaks volumes.

The State Intervenor's only argument is an unsupported assertion that Plaintiffs' equal protection claim is a "disparate impact" claim requiring evidence of "purposeful discrimination." Dkt. 642 (State Br.) at 21. Yet the Supreme Court has already rejected this argument. *M.L.B. v. S.L.J.*, 519 U.S. 102, 127 (1996) (rejecting argument that a facially neutral law cannot violate Equal Protection, citing the equal justice cases—*Griffin v. Illinois*, 351 U.S. 12, 17 n.11 (1956); *Williams*, 399 U.S. at 242; *Bearden*, 461 U.S. at 664–65—as examples). The *Bearden* framework is well established, and differs in its legal analysis from traditional Equal Protection doctrine.

Under governing case law, discriminatory intent is not an element of money-based detention claims.

Like Defendants' bail practices, the law at issue in *Williams*, *Tate*, and *Bearden* "[o]n its face . . . extend[ed] to all defendants an apparently equal opportunity": pay a sum of money to avoid incarceration. *Williams*, 399 U.S. at 242. The issue thus was not disparate treatment; it was that "'a law nondiscriminatory on its face may be grossly discriminatory in its operation.'" *Id.* (quoting *Griffin*, 351 U.S. at 17 n.11). This conclusion, the Supreme Court later explained, was consistent with the holding in *Washington v. Davis*, 426 U.S. 229 (1976), that disparate-impact claims are not normally cognizable under the Equal Protection Clause, *id.* at 239. That is because "[s]anctions of the *Williams* genre . . . . are wholly contingent on one's ability to pay, and thus 'visit different consequences on two categories of persons.'" *M.L.B.*, 519 U.S. at 127 (quoting *Williams*, 399 U.S. at 242); *see also ODonnell I*, 892 F.3d at 163; Brief for the United States as Amicus Curiae in Support of Neither Party, *Walker v. City of Calhoun*, No. 17-13139 at 18 n.7 (11th Cir. Sept. 13, 2017) (explaining that the Supreme Court has "rejected" the argument that *Davis* calls into question the holdings of *Williams*, *Tate*, and *Bearden*).

In short, it is settled law that a claim against money-based detention does not require evidence of discriminatory intent. The reason the State Intervenor nonetheless tries to re-litigate this precedent is that they cannot prevail under it.

### 3. Defendants have not justified their infringements of pretrial liberty.

Defendants do not challenge Plaintiffs' evidence that poor people are stuck in jail while those with access to cash are released, or that no government official makes findings concerning ability to pay or the availability of less-restrictive alternatives. Dkt. 634 (Pls' Br.) at 22–25, 42–44. That is unquestionably incarceration "solely because of [] lack of financial resources."

30

*Bearden*, 461 U.S. at 661. It also constitutes a clear denial of the "fundamental" interest in pretrial liberty. *Salerno*, 481 U.S. at 750. Defendants' bail practices thus infringe both substantive constitutional rights discussed above.

Defendants make no effort to justify that infringement. *See United States v. Virginia*, 518 U.S. 515, 533 (1996) (with heightened scrutiny, state alone bears the burden). The completely undisputed "corpus of persuasive evidence," Dkt. 643 (County Br.) at 1, includes deposition testimony by judicial officers and other local officials, expert reports, video recordings, sworn declarations, academic studies, and government records describing local bail practices in painstaking detail. There is no dispute over the material facts: local officials routinely require secured money bail that serves to detain people without any consideration of ability to pay, without making any findings about the availability of less-restrictive alternative conditions, and without issuing any statement of findings or reasons explaining why a particular financial condition or pretrial detention is necessary to serve the government's interests. Dkt. 634 (Pls' Br.) at 41–44. Summary judgment thus should be granted to the Plaintiffs on Counts I and II.

### C.  Defendants' Bail Practices Violate Procedural Due Process.

Defendants' bail practices are independently unconstitutional because they violate Plaintiffs' procedural due process rights. To protect against an erroneous deprivation of Plaintiffs' private liberty interests—including the right to pretrial liberty and against money-based jailing, as well as the fundamental rights to "the presumption of innocence and the right to prepare for trial," *ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1143 (S.D. Tex. 2017) (*citing Salerno*, 481 U.S. at 749–51), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018); *see also Barker v. Wingo*, 407 U.S. 514, 532–33 (1972)—Plaintiffs are entitled to robust procedural protections, which Defendants concede Plaintiffs do not receive. Dkt. 634 (Pls' Br.) at 46–55.

31

The State Intervenor first argues that Plaintiffs' procedural due process claim duplicates their substantive due process claim, Dkt. 642 (State Br.) at 22, but this argument confuses substantive and procedural rights. A procedural due process violation hinges on the identification of a substantive right. The substantive liberty interests implicated by money-based pretrial detention are so important that due process demands robust procedural protections to guard against the risk that someone will be erroneously detained. The failure to provide these procedural protections is a separate constitutional violation from the failure to ensure that the required factual circumstances exist (*i.e.*, the unavailability of less-restrictive alternatives to meet the government's compelling interests) before a person is jailed. *See Washington v. Harper*, 494 U.S. 210, 220 (1990) ("identifying the contours of the substantive right remains a task distinct from deciding what procedural protections are necessary to protect that right").

The State Intervenor next claims that the County's bail procedures are consistent with *ODonnell I*, and therefore must be "constitutionally sufficient," Dkt. 642 (State Br.) at 23. Both parts of this conclusory argument are wrong. First, as explained previously, felony arrestees in Harris County do not receive all of the protections required by *ODonnell*. For example, *ODonnell I* required "an opportunity to be heard and submit evidence within 48 hours of arrest," 892 F.3d at 163, but it is undisputed that (1) thousands of Plaintiff class members do not receive a magistration hearing within 48 hours of arrest, Dkt. 634 (Pls' Br.) at 24; (2) nearly one in ten class members do not appear at a magistration hearing at all, *id.*, meaning they receive no opportunity to be heard at all until their first appearance in district court, an appearance that is routinely delayed, *id.* at 18–19; and (3) because felony magistration hearings are non-evidentiary, *e.g.*, *id.* at 56 (hearing officer remarking that "we don't hold full evidentiary hearings"), class members do not receive an opportunity for an on-the-record hearing with the ability to submit evidence until weeks or even

months after arrest, Dkt. 634 (Pls' Br.) at 19–20 (citing data showing class members wait an average of 52 days for an evidentiary hearing).[16] Therefore, by the State's own terms, the County's procedure is constitutionally deficient.

The State Intervenor's argument is also wrong because Plaintiffs here are raising claims that were not raised in *ODonnell I* and are seeking relief the *ODonnell* Court did not address. Specifically, *ODonnell I* addressed only a state-created liberty interest, equal protection, and procedural due process. The Court did not consider the federal substantive due process interest in pretrial liberty—which is at issue in this case—and which demands greater procedural protections under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (and also more stringent substantive findings to justify deprivation). Additionally, the *ODonnell* Plaintiffs did not raise an argument that clear and convincing evidence is required to justify pretrial detention, which Plaintiffs raise in this case.[17] Thus, even if the County were complying with *ODonnell I* as to felony arrestees (and they are not), Plaintiffs' claims would still be live.

None of the Defendants grapple with *Gagnon*, *Morrissey*, *Addington* or any of the other cases Plaintiffs rely on to show why the government must provide robust procedural protections including a clear and convincing evidence standard to any finding that detention is necessary. Nor do they claim that those same protections are actually being provided to class members. Summary judgment should be granted to the Plaintiffs on Count III.

***

---

[16] *See also* S.B. 6 § 5 (expressly providing that it "may not be construed as requiring the court to hold an evidentiary hearing that is not required by other law").

[17] As explained in their opening brief, Dkt. 634 at 50 n.42), Plaintiffs acknowledge this Circuit's prior holding that findings of fact justifying pretrial detention do not have to be written to comply with Due Process, but disagree with the underlying reasoning and preserve the option to appeal the issue.

Plaintiff class members are currently detained in a jail where a record 27 people died in 2022, including several who were denied basic medical care like insulin; where four people have died already this year; and where conditions are nationally known to be deplorable.[18] They are kept in metal jail cells, stripped of their liberty, unable to hug their children, unable to pay rent or bills, and exposed to violence and death, despite no court having ever found that their detention is necessary to meet any state interest. The distinguishing factor between those who face this trauma and those who are spared is simple: some can pay and some cannot. The Constitution prohibits this injustice.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Defendants' Motions for Summary Judgment and the State Intervenor's Motion to Dismiss be denied, and that summary judgment instead be granted to Plaintiffs on all counts.

(signatures on following page)

---

[18] *See* Shaila Dewan, *Jail is a Death Sentence for a Growing Number of Americans* (Nov. 22, 2022), *available at* https://www.nytimes.com/2022/11/22/us/jails-deaths.html.

Date: February 13, 2023                              Respectfully Submitted,

*/s/ Jeremy D. Cutting*

Alec George Karakatsanis (*pro hac vice*)           Neal S. Manne
alec@civilrightscorps.org                           Texas Bar No. 12937980
Elizabeth Rossi (*pro hac vice*)                    nmanne@susmangodfrey.com
elizabeth@civilrightscorps.org                      Joseph S. Grinstein
Jeffrey Stein (Texas Bar No. 24124197)              Texas Bar No. 24002188
jeff@civilrightscorps.org                           jgrinstein@susmangodfrey.com
Kiah Duggins (*pro hac vice*)                       SUSMAN GODFREY L.L.P.
kiah@civilrightscorps.org                           1000 Louisiana Street, Suite 5100
Jeremy D. Cutting (*pro hac vice*)                  Houston, TX 77002
cody@civilrightscorps.org                           Telephone: (713) 651-9366
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

Dustin Rynders
Texas Bar No. 24048005
dustin@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
travis@texascivilrightsproject.org
2100 Travis Street
Houston, TX 77002
Ashley Fernandez Dorsaneo
Texas Bar No. 24127393
ashley@texascivilrightsproject.org
1405 Montopolis Dr.
Austin, TX 78741
TEXAS CIVIL RIGHTS PROJECT
Telephone: (512) 474-5073 ext. 118

**CERTIFICATE OF SERVICE**

I certify that on February 13, 2023, a true and correct copy of this document properly was served on all counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

_/s/ Jeremy D. Cutting_____
Jeremy D. Cutting