IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DWIGHT RUSSELL, et al.** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:19-CV-00226** |
| | § | |
| **HARRIS COUNTY, TEXAS, et al.** | § | |
| *Defendants*. | § | |
| | § | |

### DEFENDANT HARRIS COUNTY'S REPLY TO ITS CROSS-MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE CHIEF JUDGE LEE ROSENTHAL:

Harris County files this Reply in support of its Cross-Motion for Summary Judgment (Doc. 634) and represents as follows:

## I.
## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs cannot identify a county policymaker[1] because the bail policies Plaintiffs complain about are judicial acts adopted by Felony Judges on behalf of the <u>state</u>—not the county. The Fifth Circuit Court of Appeals already held in this case that the Felony Judges are "undeniably state officials,"[2] and *Daves* held that bail policies such as the ones at bar are "inextricably linked" to the judicial act of setting bail.[3] Thus, the allegedly unconstitutional policies cited by Plaintiffs cannot be attributed to Harris County, and the claims against the county must be dismissed.

---

[1] *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). Plaintiffs recognize the need to identify a policymaker at Doc. 650 at 10.

[2] *Russell v. Jones*, 49 F.4th 507, 512-13 (5th Cir. 2022), quoting *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986).

[3] *Daves v. Dallas County, Tex.*, 22 F.4th 522, 539 (5th Cir. 2022), quoting *Davis v. Tarrant County,* 565 F.3d 214, 218-19 (5th Cir. 2009).

## II.
## THE FELONY JUDGES ARE NOT COUNTY POLICYMAKERS FOR ANY FUNCTION RELATED TO SETTING BAIL

**A.   *Daves* holds that the "act of creating guidance for setting bail is 'inextricably linked' to the subsequent setting of bail and is a judicial act."**

Plaintiffs argue against well-settled law by claiming that when the Felony Judges set bail policy, they engage in "administrative" acts attributed to the county.[4] Whether a judge acts in a judicial or administrative capacity depends on the "'nature' and 'function' of the act, not the 'act itself.' In other words, [a court should] look at the particular act's relation to a general function normally performed by a judge."[5]

The Fifth Circuit considers up to four factors to help determine whether an act is judicial: (1) whether the act is a normal judicial function, (2) whether the act occurred in a courtroom or appropriate adjunct space such as the judge's chambers, (3) whether the controversy centered around a case before the court, and (4) whether the act arose directly out of a visit to the judge in his official capacity.[6] A judicial act does not require all four factors,[7] and "[t]he scope of the judge's jurisdiction must be construed broadly."[8] Plaintiffs bear the burden of pleading their case[9]

---

[4] Doc. 650 at 11 & 13-17.

[5] *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009). For this reason, even a private actor can have quasi-judicial immunity "if the private actor's role is functionally comparable to that of a judge or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Id.*, 565 F.3d at 224.

[6] *Davis*, 565 F.3d at 222.

[7] *Daves*, 22 F.4th 522, 539–40; *Morrison v. Walker*, 704 Fed. Appx. 369, 373 (5th Cir. 2017), citing *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

[8] *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (even informal, *ex parte*, and unconstitutional proceedings where the judge conceals his rulings by not filing them in the record can be judicial acts); *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) (a judge engages in a judicial act when he jails a visitor to chambers for no apparent reason and fails to enter the order for six weeks); *Morrison v. Walker*, 704 Fed. Appx. 369, 373 (5th Cir. 2017) (a judge engages in a judicial act when he files personal grievances against a political opponent unrelated to matters before the court).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

and should identify what specific policies they believe are not judicial and why those policies are not a function of setting bail.

In *Davis*, Tarrant County criminal district courts published guidelines for felony court appointments which permitted qualified attorneys to represent indigent defendants on a rotating basis. A local attorney was denied a spot on the list and filed a *Monell* suit alleging "Tarrant County was liable for the defendant judges' actions" as policymakers.[10] The Fifth Circuit held "the act of selecting applications for inclusion on a rotating list of attorneys eligible for court appointments is inextricably linked to and cannot be separated from the act of appointing counsel in a particular case, which is clearly a judicial act under Texas law."[11]

In *Daves*, the Fifth Circuit applied *Davis* to judges who set policies related to bail:

> The *Davis* opinion was correct in its approach. Implicitly, it concluded that there are factual situations in which it makes sense not to consider multiple factors but just to focus on an overarching point: when judges decide on a procedure for taking what indisputably will be judicial acts in the future, that decision is so intertwined with what will follow as to be a judicial act as well. That form of analysis applies equally here. <u>The creation of bail schedules was no more or less divorced from setting bail in a specific case than establishing a method for selecting counsel was divorced from appointment of counsel in a specific case.</u> We do acknowledge one difference: in *Davis*, the judges establishing the procedure were also the ones appointing counsel. Here, the bail schedules were created by judges other than those who would later set bail for individual arrestees. A difference, but we see no distinction. The unbroken linkage conceptually remains between the two. Thus, <u>the act of creating guidance for setting bail is "inextricably linked" to the subsequent setting of bail and is a judicial act.</u>[12]

Plaintiffs do not provide any reason there would be a legal difference between the "non-binding" bail schedule in *Daves* and the policies they identify at bar.[13] The Fifth Circuit considers a

---

[10]  *Davis*, 565 F.3d at 217.

[11]  *Davis*, 565 F.3d at 226.

[12]  *Daves*, 22 F.4th at 539–40 (emphasis added) (internal citations omitted).

[13]  See Plaintiffs' argument that *Daves* applies only to non-binding bail schedules. Doc. 650 at 12.

discretionary bail schedule to be a judicial act, and *a fortiori*, a formal policy adopted by the Felony Judges is also a judicial act.

**B.     Each of Plaintiffs' policies is a judicial act "inextricably linked" to setting bail.**

Plaintiffs claim the Felony Judges adopted as many as 15 unconstitutional policies[14] related to bail. For example, Plaintiffs assert that judges act for the county when they "control the content of the financial affidavit" and form required by state law to establish indigency and when they direct "Pretrial Services not to ask felony arrestees the specific amount they can pay for release."[15] They also claim Felony Judges act on behalf of the county by setting "rules for the timing of bail hearings and whether [and when] a defendant is brought to the courtroom," and directing others to interview arrestees and complete and file paperwork related to bail.[16] Each of these alleged policies is so inextricably linked to setting bail that the first *Davis* factor is dispositive of this case.[17]

Bail is an adversarial process between the state and defendant, and no one can reasonably dispute that a judge engages in a normal judicial function by setting bail. This judicial act requires

---

[14] In their live pleading, Plaintiffs claim Felony Judges adopted unconstitutional policies by: (1) determining what procedural protections to provide at magistration hearings, (2) determining what substantive findings must be made before bail is imposed, (3) determining the contents of forms hearing officers use when issuing bail orders, (4) controlling whether and to what extent to allow the Public Defender's Office to represent people at bail hearings, (5) determining the timing of bail hearings and other court proceedings, (6) deciding whether to conduct bail hearings virtually or in person, (7) deciding whether to bring a person from jail to the courthouse for a court setting, (8) controlling the timing of appointment of counsel, (9) determining whether to put bail review hearings on the record, (10) threatening to hold third parties in contempt for failing to comply with bail orders, (11) issuing instructions (in the past) about when to deny personal bonds, (12) issuing  an order (in the past) instructing hearing officers to comply with a bail schedule, (13) issuing orders (in the past) related to the detention or release of people during the pandemic, (14) issuing instructions to hearing officers related to the setting of bail, and (15) authorizing the use of a financial affidavit that does not ask those charged with felonies the question: "What specific amount of money can the person afford to pay at the time of the hearing?" Doc. 634 at 25-27. In their Response/Reply, Plaintiffs appear to have narrowed this list.

[15]  Doc. 650 at 13.

[16]  Doc. 650 at 13.

[17] See *Daves*, 22 F.4th at 539–40; *Davis*, 565 F.3d at 222.

that a judge assure necessary documents are in the record and review relevant information to make a decision under state law. Relevant documents might include affidavits and other evidence, and a judge normally appoints counsel and asks questions (or chooses not to ask questions) of the parties, counsel, and witnesses—either directly or through court staff. If, as Plaintiffs contend, the Felony Judges helped draft the financial questions required to determine indigency under state law, that would also be a judicial function.[18]

To the extent Plaintiffs complain about Felony Judges setting "rules for the timing of bail hearings and whether [and when] a defendant is brought to the courtroom," and directing others to interview arrestees and complete and file paperwork related to bail,[19] that is also inextricably linked to the process of setting bail. The Code of Criminal Procedure specifies the procedures judges must follow to comply with state law, including the timing of bail hearings, evidence to be considered, and bail paperwork that must be included in the record.[20]  A judge cannot hold hearings if he does not have the authority to schedule hearings, order defendants to the courtroom, and direct others to gather and file the information necessary for the hearing to occur. Controlling access to the courtroom is a normal judicial function inextricably linked to setting bail.

Finally, Plaintiffs argue "Felony Judges are not engaged in judicial conduct when they administer general rules governing the County's felony post-arrest process, divorced from the

---

[18] This is reinforced by the fact that state law requires judges to assure defendants receive indigency affidavits using state-mandated language under Tex. Code Crim. P. art. 17.021(f).

[19] Doc. 650 at 13.

[20] See, e.g., Tex. Code Crim. Proc. art. 17.028, which requires a magistrate to set bail within 48 hours of arrest and art. 17.15(a), which requires judges to hold individualized hearings for some defendants and consider seven factors in setting bail.

substantive outcome of any particular case or controversy."[21] *Davis*[22] and *Daves*[23] both squarely address this by holding that the creation and enforcement of local rules relating to the appointment of counsel and bail schedules are judicial acts.[24]

If the Court reaches the remaining *Davis* factors, it should find that they also weigh in favor of the policies in this case being judicial acts. The second *Davis* factor is whether the act occurred in a courtroom, chambers, or other appropriate space.[25] While Harris County has not found a case on point, an "appropriate space" since COVID-19 could mean anywhere that a judge performs relevant work. In this case, there is no allegation the Felony Judges enacted relevant policies outside of a courthouse, chambers, home office, or other appropriate work location.[26]

The third *Davis* factor is whether the act was designed to resolve cases before the court.[27] There can be no reasonable doubt that the alleged policies in this case—like *Davis* and *Daves*—were created to help schedule hearings, gather evidence, review affidavits, forms, and questions, set local rules, and take other steps necessary to resolve bail cases under state law.

The final *Davis* factor distinguishes acts taken by judges while visiting in a personal capacity from acts taken by judges in an official capacity.[28] In this case, there is no suggestion that

---

[21] Doc. 650 at 11.

[22] *Daves*, 22 F.4th at 522.

[23] *Davis*, 565 F.3d at 214.

[24] Further, Tex. Gov. Code § 74.093 requires judges to adopt local rules for their courts as part of their duty to manage their dockets under state law. This is clearly a judicial function.

[25] *Davis*, 565 F.3d at 222.

[26] This is not a case of judges acting in a location that would lead a reasonable person to believe they are not judges. *See Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (Louisiana judge lost immunity for pulling over motorist in his vehicle and charging him with six crimes for honking on Interstate 10.)

[27] *Davis*, 565 F.3d at 222.

[28] *Davis*, 565 F.3d at 222.

judges took these actions in an informal capacity. In fact, to the extent the judges voted on local rules or policies, those meetings would have been called for the purpose of considering these rules.

Plaintiffs cite only two cases (in the context of whether judicial immunity attaches) where a judge was *not* held to have acted with judicial authority. First, in *Forrester*, the Supreme Court held that when a judge discriminates against his employees, his actions are no different than any other employer who engages in the same kind of discrimination, and he does not act in a judicial capacity.[29] Plaintiffs overreach by suggesting this case establishes that bail policies are administrative acts because they are designed to "oversee the efficient operation of a court."[30]

Second, in *Supreme Court of Virginia*, the Virginia Supreme Court promulgated disciplinary rules that applied to every attorney in the state—regardless of whether they had cases before the court.[31] This would not have satisfied the *Davis* test because the Virginia Supreme Court's rules did not affect parties before the court, but merely those who practiced law in Virginia.[32] Indeed, the United States Supreme Court noted the Virginia Supreme Court was acting in a "legislative capacity."[33] Those facts are not applicable to this case, and in fact supports Harris County's argument that acts taken by judges bearing on parties before the court are judicial acts.

Finally, Plaintiffs cite *Antoine* for the principle that "'ministerial' matters are not judicial acts."[34] In *Antoine*, a court reporter failed to provide a complete transcript of a criminal proceeding, which resulted in a defendant's appeal being delayed.[35] The case did not involve a judge, and the

---

[29] *Forrester v. White*, 484 U.S. 219, 229 (1988).

[30] Doc. 650 at 13, citing *Forrester*, 484 U.S. at 229.

[31] *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 721 (1980).

[32] *Supreme Court of Virginia*, 446 U.S. at 731.

[33] *Supreme Court of Virginia*, 446 U.S. at 731.

[34] Doc. 650 at 13, citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993).

[35] *Antoine*, 508 U.S. at 430.

issue was whether judicial immunity could extend to the court reporter. This case did not deal with

bail, or even judicial policy. Accordingly, it is inapplicable to the facts at bar.

### III.
### THE FELONY JUDGES ARE STRUCTURALLY ESTABLISHED AS STATE OFFICIALS UNDER TEXAS LAW

The Fifth Circuit's rulings are reinforced by state law.[36] Felony Judges are district judges

who occupy state offices under Article V of the Texas Constitution and are part of a state judicial

system whose rulings are appealed to state appellate courts.[37] These judges are paid by the state in

a section of the Texas Government Code captioned "State Officers and Employees," which

provides: "a judge of a district court is entitled to an annual base salary from the state as set by the

General Appropriations Act in an amount equal to at least $140,000..."[38] Only the Supreme Court

can remove a Felony Judge, and only the Governor can fill a vacancy.[39]

Still, Plaintiffs premise their lawsuit on the misconception that the Felony Judges create

Harris County policy when they decide how, when, and in what amount to set bail. First, Plaintiffs

do not believe there is enough "historical context" to show the framers of the Texas constitution

intended for district judges to be state officers.[40] However, there is no need to discuss what the

framers of the Texas Constitution intended because the Constitution and Legislature clearly

establish district courts as state offices.

---

[36] *Daves*, 22 F.4th at 533 ("For purposes of Section 1983, it is state law that determines whether an official with final policymaking authority as to the specific function involved in the litigation is acting for a local governmental unit or the state.") *Daves*, 22 F.4th at 534-541 (discussing the structure of state government).

[37] See discussion at Doc. 643 at 6-7.

[38] Tex. Gov't Code § 659.012.

[39] Plaintiffs acknowledge this at Doc. 650 at fn. 12.

[40] Doc. 650 at fn. 12.

Second, Plaintiffs assert that state judges must be Harris County policymakers because the county funds support positions "necessary to the administration of the judicial system."[41] The fact that Harris County helps support the district judges does not make them official county policymakers when they set bail policy.[42]

Third, Plaintiffs contend state judges are county policymakers because the voters in their district live in Harris County and the rules they enact affect only judges in Harris County.[43] However, district court boundaries do not always coincide with county boundaries. Harris County has 61 civil and criminal district courts, and each court may have a different policy. Conversely, many counties share one court. As this map of the panhandle illustrates, the 69th District covers Dallam, Hartley, Sherman, and Moore Counties. The 31st District covers five counties, and the 100th District's five counties are not even connected:



[44]

---

[41] Doc. 650 at fn. 12, quoting *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017).

[42] *Daves*, 22 F.4th at 540-541.

[43] Doc. 650 at 14-17.

[44] "State District Courts", January, 2023, retrieved March 5, 2023 from https://www.txcourts.gov/media/1455548/district-courts-january-2023.pdf

As a matter of law and fact, a district judge cannot set policy for the county in which he or she happens to reside. *Daves* recognizes this and explicitly holds, "[t]he geographic limit of their action does not define the level of government for which the judges acted."[45]

IV.
**CONCLUSION AND PRAYER**

Plaintiffs allege that the Felony Judges adopted policies that were the moving force depriving them of their constitutional rights. However, each of the policies Plaintiffs identify are inextricably linked and cannot be separated from the Felony Judges' judicial act of setting bail. Thus, the Felony Judges act on behalf of the state and are not county policymakers. Accordingly, Plaintiffs' motion for summary judgment must be denied, Harris County's motion must be granted, and this case must be dismissed.

Respectfully submitted,

**JONATHAN FOMBONNE**
First Assistant County Attorney
Texas Bar No. 24102072
**SETH HOPKINS**
Special Assistant County Attorney
Texas Bar No. 24032435
**RACHEL FRASER**
Assistant County Attorney
Texas Bar No. 24079725
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
(713) 274-5141 (telephone)
Seth.Hopkins@cao.hctx.net
**ATTORNEYS FOR HARRIS COUNTY, TEXAS**

---

[45] *Daves*, 22 F.4th at 540.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served on all counsel of record on March 8, 2023, through the electronic case file system of the Southern District of Texas.

/s/ Seth Hopkins
**SETH HOPKINS**