# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:19-cv-00226 |
| v. | ) | (Class Action) |
| | ) | The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) | U.S. District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

## THIRD AMENDED MOTION TO CERTIFY CLASS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... iii

NATURE AND STAGE OF PROCEEDING .......................................................... 1

STATEMENT OF THE ISSUE AND STANDARD OF REVIEW ........................ 2

SUMMARY OF ARGUMENT .................................................................................. 2

FACTUAL BACKGROUND .................................................................................... 3

LEGAL ARGUMENT .............................................................................................. 8

     I.     Numerosity: Joinder of All Proposed Class Members Is Impracticable ............... 9

     II.     Commonality: Claims by the Proposed Class Raise Common Questions That Will Generate Common Answers .............................................................. 15

     III.     Typicality: The Named Plaintiffs' Claims Are Typical of the Proposed Class .. 18

     IV.     Adequacy: The Named Plaintiffs Are Competent and Dedicated Class Representatives ................................................................................................ 20

     V.     Certification for Prospective Relief Is Appropriate Under Rule 23(b)(2) .......... 28

CONCLUSION ......................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) ........................................................ 31

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ..................................................... 30, 32

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................ 21

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) .................................................................. 2, 9

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) .................................................... 32

*Baby Neal ex rel. Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ................................................................ 15

*Booth v. Galveston County*,
    352 F. Supp. 3d 718 (S.D. Tex. 2019) ........................................... 23

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
    624 F.3d 185 (5th Cir. 2010) .......................................................... 31

*Clark v. AdvanceMe Inc.*,
    No. 08-3540 (C.D. Cal.) .................................................................. 27

*Cole v. Collier*,
    No. 4:14-cv-1698 (S.D. Tex.) ......................................................... 28

*DeBremaecker v. Short*,
    433 F.2d 733 (5th Cir. 1970) .......................................................... 28

*Earnest v. General Motors Corp.*,
    923 F. Supp. 1469 (N.D. Ala. 1996) ............................................... 28

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) .......................................................... 21

*Gardner v. Westinghouse Broadcasting Co.*,
    437 U.S. 478 (1978) .......................................................................... 9

*Gerardo v. Quong Hop & Co.*,

No. 08-CV-3953, 2009 WL 1974483 (N.D. Cal. July 7, 2009)................................................ 14

*Gerstein v. Pugh,*
   420 U.S. 103 (1975)................................................ 12, 23
*Horton v. Goose Creek Indep. Sch. Dist.,*
   690 F.2d 470 (5th Cir. 1982) ................................................ 2

*Huisha-Huisha v. Gaynor,*
   No. 1:21-cv-00100 (D.D.C.) ................................................ 28

*In re Deepwater Horizon,*
   739 F.3d 790 (5th Cir. 2014) ................................................ 8, 15

*In re Ins. Brokerage Antitrust Litig.,*
   579 F.3d 241 (3d Cir. 2009)................................................ 31

*In re Toyota Motor Corp.,*
   No. 10-2151 (C.D. Cal.)................................................ 27

*In re Universal Service Fund Telephone Billing Practices Litig.,*
   619 F.3d 1188 (10th Cir. 2010) ................................................ 27

*In re Veneman,*
   309 F.3d 789 (D.C. Cir. 2002) ................................................ 30

*J.D. v. Azar,*
   925 F.3d 1291 (D.C. Cir. 2019) ................................................ 23

*Jack v. Am. Linen Supply Co.,*
   498 F.2d 122 (5th Cir. 1974) ................................................ 11

*Jackson v. Foley,*
   156 F.R.D. 538 (E.D.N.Y. 1994) ................................................ 14

*James v. City of Dallas, Tex.,*
   254 F.3d 551 (5th Cir. 2001) ................................................ 18, 20

*Jonathan R. by Dixon v. Just.,*
   41 F.4th 316 (4th Cir. 2022) ................................................ 23

*Jones v. Diamond,*
   519 F.2d 1090 (5th Cir. 1975) ................................................ 9, 10, 12

*Kilgo v. Bowman Transp., Inc.,*
   789 F.2d 859 (11th Cir. 1986) ................................................ 13

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012) ........................................................................ 28

*Mejdrech v. Met-Coil Sys. Corp.,*
  319 F.3d 910 (7th Cir. 2003) ....................................................................... 13

*Mullen v. Treasure Chest Casino, LLC,*
  186 F.3d 620 (5th Cir. 1999) ........................................................ 10, 15, 18, 21

*Neff v. Via Metro. Transit Auth.,*
  179 F.R.D. 185 (W.D. Tex. 1998) ................................................................ 31

*Nemnich v. Stangler,*
  No. 91-CV-4517, 1992 WL 178963 (W.D. Mo. Jan. 7, 1992) ................................. 13

*ODonnell v. Harris County,*
  251 F. Supp. 3d 1052 (S.D. Tex. 2017) ......................................................... 11

*ODonnell v. Harris County,*
  No. 4:16-cv-01414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) ................ 11, 20, 24, 26

*Olson v. Brown,*
  594 F.3d 577 (7th Cir. 2010) ....................................................................... 23

*P.J.E.S. v. Wolf,*
  No. 1:20-cv-02245 (D.D.C.) ........................................................................ 28

*Paxton v. Union Nat'l Bank,*
  688 F.2d 552 (8th Cir. 1982) ....................................................................... 21

*Pederson v. La. State Univ.,*
  213 F.3d 858 (5th Cir. 2000) ....................................................................... 10, 11

*Perez-Benites v. Candy Brand,*
  267 F.R.D. 242 (W.D. Ark. 2010) ................................................................ 13

*Prado-Steiman v. Bush,*
  221 F.3d 1266 (11th Cir. 2000) .................................................................... 15

*Russell v. Harris Cnty., Tex.,*
  500 F. Supp. 3d 577 (S.D. Tex. 2020) ........................................................... 22

*Sherman v. Griepentrog,*
  775 F. Supp. 1383 (D. Nev. 1991) ................................................................ 14

*Simms v. Jones,*

296 F.R.D. 485 (N.D. Tex. 2013) ............................................................. 15

*Stoffels v. SBC Commc'ns, Inc.*,
   238 F.R.D. 446 (W.D. Tex. 2006) ........................................................... 21

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .................................................................. 13

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011) ...................................................................... passim

*Ward v. Hellerstedt*,
   753 F. App'x 236 (5th Cir. 2018) ........................................................... 23

*Wilson v. Gordon*,
   822 F.3d 934 (6th Cir. 2016) .................................................................. 23

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) ..................................................... 9, 10, 13

**Other Authorities**

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
   84 NYU L. Rev. 97 (2009) ..................................................................... 17

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................ passim
Fed. R. Civ. P. 23(b)(2) ......................................................... 32, 33, 34, 35
Fed. R. Civ. P. 23(g) ................................................................... 28, 29, 32

**Treatises**

Moore's Federal Practice § 23.22 ............................................................. 12
Moore's Federal Practice § 23.24 ............................................................. 21
Moore's Federal Practice § 23.43 ............................................................. 34
Newberg on Class Actions § 1:3 (5th ed.) ............................................... 34
Newberg on Class Actions § 25:4 (4th ed.) ............................................. 12
Newberg on Class Actions § 3:12 (5th ed.) ............................................. 10
Newberg on Class Actions § 3:19 (5th ed.) ............................................. 17
Newberg on Class Actions § 4:28 (5th ed.) ............................................. 32
Newberg on Class Actions § 4:40 (5th ed.) ............................................. 33

## NATURE AND STAGE OF PROCEEDING

Plaintiffs filed this proposed class action lawsuit on January 21, 2019, challenging Harris County's unconstitutional felony post-arrest system, which jails tens of thousands of people every year because they cannot make the payment required for their pretrial release. Plaintiffs filed a Motion to Certify Class concurrently with the Complaint.[1] The case was abated to permit settlement discussion for about one year.[2] Plaintiffs subsequently filed an Amended Motion to Certify Class at the time they filed the First Amended Complaint, adding two named Plaintiffs.[3] Plaintiffs filed a Second Amended Motion to Certify Class on May 7, 2021.[4] Defendants did not oppose any of Plaintiffs' motions for class certification. The Court denied Plaintiffs' Second Amended Motion without prejudice to refile "after the threshold issues have been resolved."[5] Following a motions hearing on March 29, 2023, the Court set an April 20, 2023 deadline for Plaintiffs to file a Third Amended Motion for Class Certification.[6]

Plaintiffs move under Rule 23 of the Federal Rules of Civil Procedure for certification of a class seeking prospective relief. Plaintiffs propose a class defined as: All felony arrestees who are or will be detained by Harris County because they are unable to pay a secured financial condition of release.

Plaintiffs also move for appointment of undersigned counsel to represent the certified class under Rule 23(g) of the Federal Rules of Civil Procedure.

---

[1] *See* Doc. 2.

[2] *See* Docs. 13, 15, 26, and 31.

[3] *See* Doc. 11.

[4] *See* Doc. 503.

[5] Doc. 622 at 1.

[6] *See* Doc. 659.

## STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

The issue before the Court is whether Plaintiffs have met the following requirements of Fed. R. Civ. P. 23(a) for class certification: (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the proposed class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the proposed class; and (4) the representative parties will fairly and adequately protect the interest of the proposed class. Also before the Court is whether Plaintiffs have satisfied at least one element of Rule 23(b). While the Court must perform a "rigorous analysis" to determine whether to certify a class,[7] the Court may not require the plaintiffs to establish their claims at the class certification stage.[8] The Fifth Circuit instructs courts to "err in favor of certification."[9]

## SUMMARY OF ARGUMENT

Class certification is appropriate because Plaintiffs' claims concern Defendants' systemic policies and practices that result in injuries common among the members of the class, consisting of well over ten thousand people every year.[10] The named Plaintiffs and their counsel are dedicated to vindicating the constitutional rights of the proposed class members, and they will provide quality representation for the interests of proposed class members.

---

[7] *Wal-Mart v. Dukes*, 564 U.S. 338, 351 (2011).

[8] *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

[9] *Horton v. Goose Creek Indep. Sch. Dist.*, 690 2d 470, 487 (5th Cir. 1982).

[10] *See* Doc. 634-3 (Expert Report of Dr. Jennifer Copp ("Copp Expert Report")) ¶ 38 (finding from 2015 through 2021 that 132,054 people arrested for felonies remained detained on secured financial bond when their case was disposed, which does not include those who spent days, weeks, or months detained before being released); Doc. 650-3 (Supplemental Expert Report of Dr. Jennifer Copp ("Supp. Copp Expert Report") ¶ 5, 5(a), 5(b) (finding 27,473 people arrested for felonies had secured financial bond set in their case from January 1, 2022 to September 30, 2022); Ex. 7 (Pretrial Services 2020 Annual Report) at 10 (reporting that in 2020 at least 12,433 felony defendants were arrested and detained without ever posting bond); Ex. 8 (Pretrial Services 2019 Annual Report) at 14 (reporting that in 2019 at least 15,175 defendants were arrested and detained without ever posting bond).

2

## FACTUAL BACKGROUND

Plaintiffs challenge Defendants' policy and practice of enforcing secured financial conditions of release that result in the pretrial detention of only those arrestees who cannot pay the money bail amounts. The amount of money an arrestee must pay to secure release is routinely imposed without any findings concerning ability to pay or necessity of detention.[11]

People arrested for felonies appear at a magistration (or "15.17") hearing before a Hearing Officer, where they are generally told they must pay secured bail if they want to be released.[12] Defendants release those who can pay and detain those who cannot.[13] At the magistration, Hearing Officers routinely do not—and are not required by local rules or policies to—make findings concerning ability to pay;[14] they routinely do not—and are not required to—

_____

[11] *See* Doc. 634-19 (Decl. of former Criminal Law Hearing Officer Colin Amann ("Amann Decl.")) ¶ 11 ("During my time as a hearing officer, I followed the procedural requirements of Rule 9 in misdemeanor cases once it was promulgated. However, since there was no equivalent rule governing felony cases, I did not make the same findings or provide the same procedures in the course of setting bail for felony arrestees."); Doc. 634-16 (Decl. of Sarah Wood, then-Policy Director of the Harris County Public Defender's Office ("First Wood Decl.")) ¶ 29 (Hearings Officers do not make findings "as to whether a person can pay any particular amount of money before requiring secured money bail as a condition of release" or "as to whether an order to pay secured bail will operate to detain the person because the person cannot pay it."); Doc. 634-28 (Dep. of Jennifer Gaut, former Criminal Law Hearing Officer ("Gaut Dep.")) at 104 ("Q: Do you make findings on the record concerning your own determination of whether a felony defendant can afford to pay the secured bail amount that you're setting?" A: "I do not." Q: "Why not?" A: "It just has never been – it's never been part of my practice. It wasn't what I was taught to do. And it's just not something I've done."); *id.* at 156:4–10 (Q: "Now, do you follow the procedures of 9.12.6 for felony defendants at magistration?" A: "No." Q: "And is this because the felony judges have not required you to follow the procedures?" A: "Yes, that's correct.").

[12] Doc. 634-3 (Copp Expert Report) ¶ 41 (from 2015 through 2018, only 6% of people arrested for felonies were released on unsecured bonds).

[13] Doc. 634-29 (Dep. of Harris County 30(b)(6) at 67:15–20) ("Q: If the person could pay that amount of money on the charging document and they don't have any other holds, would they be released from Harris County custody before the 15.17 hearing? A: Yes."); Doc. 634-27 (Dep. of Courtney St. Julian, Chief Criminal Law Hearing Officer ("St. Julian Dep.") at 32:21–33:1); Doc. 634-16 (First Wood Decl.) ¶ 18.

[14] *See* Doc. 634-27 (St. Julian Dep. at 152:16–24) (Q: "What does Rule 9.12.4 require hearing officers to do with respect to misdemeanor defendants?" A: "To ask the defendant under penalty of perjury the amount of money the defendant can afford to pay from any lawful source at the time of the hearing." Q: "Is there any policy requiring hearing officers to make this finding for felony defendants at magistration?" A: "There is not."). Doc. 634-16 (First Wood Decl.) ¶ 29 (Hearings Officers do not make findings "as to whether a person can pay any particular amount of money before requiring secured money bail as a condition of

make findings as to whether pretrial detention is necessary to serve any government interest;[15]

arrestees have no opportunity to put on evidence in support of pretrial release;[16] and Hearing

Officers do not provide other basic procedural safeguards, such as applying a heightened

evidentiary standard or issuing a reasoned decision concerning why a particular financial

condition or pretrial detention is required.[17] Arrestees unable to pay the secured bail amount set

at magistration must wait for a first appearance before the judge in their case.[18] Those first

---

release" or "as to whether an order to pay secured bail will operate to detain the person because the person cannot pay it."); Doc. 634-28 (Gaut Dep. at 104) ("Q: Do you make findings on the record concerning your own determination of whether a felony defendant can afford to pay the secured bail amount that you're setting?" A: "I do not." Q: "Why not?" A: "It just has never been – it's never been part of my practice. It wasn't what I was taught to do. And it's just not something I've done."); *id.* (156:4–10) (Q: "Now, do you follow the procedures of 9.12.6 for felony defendants at magistration?" A: "No." Q: "And is this because the felony judges have not required you to follow the procedures?" A: "Yes, that's correct.").

[15] *See* Doc. 634-27 (St. Julian Dep. at 156:25–157:4) (Q: "And is there any policy issued by felony judges to the hearing officers requiring that hearing officers make those findings for felony defendants during 15.17 hearings?" A: "There is not."); Doc. 634-16 (First Wood Decl.) ¶ 29 ("Hearing Officers routinely do not make findings that detention is necessary to meet a compelling government interest or that less-restrictive conditions are inadequate to meet a compelling government interest."); *id.* ¶ 45; Doc. 634-18 (Third Wood Decl.) ¶ 9.

[16] *See* Doc. 634-19 (Amann Decl.) ¶ 5 ("I never saw someone call a witness in a 15.17 hearing. Although I am not aware of any rule prohibiting it, it was commonly understood among the hearing officers, attorneys, and members of the sheriff's office that the 15.17 hearing was not an opportunity to present evidence other than the probable cause statement by the arresting officer or complaining witness."); Docs. 634-44 (Bail Hearing Video Index), 634-45–634-71 (videos of 26 magistration hearings in which the hearing officer made no findings of ability to pay or necessity of detention).

[17] *See* Doc. 634-28 (Gaut Dep. at 143:18–21) ("Q. Are you required to make a finding of indigence by clear and convincing evidence for the felony defendants who appear in your court for a 15.17 hearing? A. No."); Doc. 634-19 (Amann Decl.) ¶ 11 (stating he did not follow the requirements of Rule 9 in felony cases). Doc. 634-28 (Gaut Dep. at 147:13–20) (Hearing Officers are not required to make findings by "clear and convincing" evidence for felony arrestees); Doc. 259-3 (videos of named Plaintiffs' 15.17 hearings in which Hearing Officers did not apply heightened scrutiny or issue a reasoned decision about why a particular financial condition or pretrial detention is required).

[18] Doc. 634-18 (Third Wood Decl.) ¶ 9 ("Hearing Officers routinely impose secured bond amounts that keep people detained without making any findings regarding why less-restrictive conditions are insufficient."); *id.* ¶ 13 ("Even as judges and lawyers have returned to courtrooms, arrestees accused of felony offenses are often not transported to the court from the jail. When they are brought to the courthouse, they are typically kept in the "holdover" jail cells outside the courtroom."); Doc. 634-16 (First Wood Decl.) ¶ 54 ("As a result, individuals who cannot pay money bail remain in detention after first appearance and are returned to the Harris County Jail, often without ever having been brought into the courtroom."). *See also* Doc. 635-5 (J.S. Case Records) (J.S. remains in jail four months after a hearing officer required a $25,000 secured bond at magistration where he was not present); Doc. 634-105 (J.B.C. Case Records) (a

appearances are routinely delayed or postponed.[19] Often, even when a first appearance is scheduled on the docket, detained individuals remain in lock-up outside of the courtroom and are not brought into the courtroom for a hearing.[20] There is typically no review of the money bail amount keeping the person in jail.[21] Even when judges do informally address bail at the first appearance—typically to revoke previously imposed personal bonds or increase the bail amount—they do not provide for an adversarial bail hearing on the record, make findings concerning ability to pay or the necessity of pretrial detention, or provide other procedural protections.[22]

---

68-year-old homeless veteran detained for over a year on a $5,000 bond, J.B.C. sent at least three letters to the court stating that he was never arraigned and asking to be released, but there is no evidence he received a bail hearing or was brought to court until he pleaded guilty months later).

[19] Doc. 634-13 (Supplement to Second Declaration of Alex Bunin, Harris County Chief Public Defender, Apr. 7, 2020 ("Supp. Bunin Decl.")) ¶ 5(a) ("[I]t can take more than one business day for a detained person to have a PACA/PIA setting."); Doc. 634-11 (First Declaration of Alex Bunin, Harris County Chief Public Defender ("First Bunin Decl.")) ¶ 5 ("In fact, people arrested for felony offenses do not typically "appear" physically at the PACA/PIA docket."); Doc. 634-18 (Third Wood Decl.) ¶ 10 ("They are often scheduled to appear in District Court on the next business day after magistration, but that does not mean they will appear in court."); *id.* ¶ 11 ("Sometimes, first appearances in the trial court are reset or "rolled" to the next day repeatedly when the in-custody arrestee is not brought to the courthouse. Other times, they are reset for weeks or months in the future.").

[20] Doc. 634-29 (Dep. of Harris County 30(b)(6) at 161:3–7) (Q. "Has it been typical for defendants to remain in lockup outside of the courtroom during the first appearance, from 2015 to the present? A. And long before that. Yes."); Doc. 634-16 (First Wood Decl.) ¶ 52 ("Detained individuals typically remain in lock-up outside of the courtroom and are not brought into the courtroom on this court date").

[21] *See* Doc. 634-16 (First Wood Decl.) ¶ 50 ("Although an informal, off-the-record request for a reduction in the amount required may theoretically occur at first appearance, the Felony Judges do not provide for an adversarial 15.17 hearing on the record at that time"); Doc. 634-20 (Decl. of Defense Attorney Brent Mayr ("Mayr Decl.")) ¶ 17 ("As a matter of routine practice, Judge Franklin and the other District Judges do not conduct first appearances on the record, including bond discussions and revocation proceedings.").

[22] Doc. 634-16 (First Wood Decl.) ¶ 50 ("Although an informal, off-the-record request for a reduction in the amount required may theoretically occur at first appearance, the Felony Judges do not provide for an adversarial 15.17 hearing on the record at that time"); Doc. 634-11 (First Decl. of Alex Bunin, Harris County Chief Public Defender ("Bunin Decl.")) ¶ 6 ("[PACA/PIA] is not an opportunity for an adversarial bail hearing."); Doc. 634-12 (Second Bunin Decl.) ¶ 13 (same); Doc. 634-13 (Supp. Bunin Decl.) ¶ 5(b) ("[W]hen the DAO states that 'any defendant' can request a 'bail review' and will have one 'within days,' the DAO is referring to the informal discussions . . . . The DAO does not mean that there are individualized hearings on the record with an opportunity to make evidence, or that findings are made if the judge refuses to order release on a personal bond or lowered bail amount."); *see also* Doc. No. 634-1 (Pls.' SUMF) at 49–50 n.224 (citing emails from Felony Judges describing bail reduction motions as resolved via email or

Due to these and other policies and practices, thousands of presumptively innocent people languish in jail cells every night in Harris County, simply because they cannot pay for their release.[23] This system violates the constitutional rights of tens of thousands of people arrested in Harris County every year who cannot afford to purchase their freedom.[24]

During the pendency of this litigation, the State of Texas has promulgated new policies affecting bail, but none remedied the harm to Plaintiffs. On March 29, 2020, Governor Greg Abbott issued Executive Order GA-13, which prohibited pretrial release on unsecured bail for large categories of people accused of crimes across Texas.[25] And on September 17, 2021, Governor Abbott signed into law Senate Bill 6, or "S.B. 6," which made several changes to the state's bail laws.[26] Yet even after GA-13 and S.B. 6, the constitutional violations Plaintiffs challenged persisted.[27] As a matter of practice, these new laws changed nothing.

At the time the named Plaintiffs sued, Defendants were jailing each of them because they were too poor to pay a secured financial condition of release that had been imposed without

---

informal, off-the-record conversations without any specific findings).

[23] On April 18, 2023, the Harris County Jail detained approximately 6,783 pretrial felony arrestees (not including felony capital cases). *See* Harris County, Current Jail Population, https://charts.hctx.net/jailpop/App/JailPopCurrent.

[24] *See* Doc. 634-3 (Copp Expert Report) at 11 (finding from January 1, 2015 to December 31, 2022 85,665 people were detained on secured bonds when they cases were disposed); Ex. 7 (Pretrial Services 2020 Annual Report) at 10 (In 2020, at least 12,433 felony defendants were arrested and detained without posting bond); Doc. 634-29 (Dep. of Harris County 30(b)(6) at 67:21–25) ("Q: And do you routinely meet people before the 15.17 hearing who are detained because they cannot afford to pay the amount printed on the charging document? A. Yes."); Doc. 634-24 (Dep. of HCSO 30(b)(6) at 42:9–13) ("Q. And if they can't pay the amount required by the bail schedule, then they remain in jail, correct? A. Correct. If they – If they refuse to pay or they can't pay.").

[25] Doc. 634-41 (Executive Order GA-13, Mar. 29, 2020).

[26] Damon Allen Act, S.B. 6, 87th Leg. (Tex. 2021), available at bit.ly/3Y83m6d ("S.B. 6").

[27] Doc. 650-3 (Supp. Copp Expert Report) ¶ 5 ("75% of people arrested for felonies between January 1, 2022 and September 30, 2022 had secured bonds set in their cases (27,473 people of a total of 36,596 arrests)."); *id.* at ¶ 5(b) (finding 64% of people with a secured bond set and valid case complete data, or 7,036 people out of 11,010 qualifying arrests, were detained at case disposition; *see also* Doc. 650-1 (Supp. Statement of Undisputed Material Facts) ¶¶ 3–7 (citing post-S.B. 6 case records).

findings concerning (a) their ability to pay or (b) the necessity of detaining them. Plaintiff Dwight Russell was 61 years old when he was arrested for a felony offense.[28] He was kept in jail for 52 days because he was unable to pay a $25,000 money bail.[29] Plaintiff Johnnie Pierson was 51 years old when he was arrested for a state jail felony.[30] He was kept in jail for 13 days because he was unable to pay the $15,000 money bail required for his release.[31] Plaintiff Joseph Ortuno was 18 years old when he was arrested for a felony offense.[32]  He was kept in jail for 79 days because he was unable to pay the $30,000 money bail amount required for his release from Harris County custody.[33] Plaintiff Christopher Clack was 45 years old when he was arrested for two felony offenses.[34] He was kept in jail for 211 days because he was unable to pay the $17,500 bail required for his release.[35] Plaintiff Maurice Wilson was 35 years old when he was arrested for a felony offense.[36] He was kept in Harris County custody for 143 days in 2020 because he was unable to pay $15,000 bail.[37] Two years later, in 2022, he was arrested and jailed again, this time for three days because he was unable to pay the $2,500 bail required for his release.[38] At the time they filed this case, each of the named Plaintiffs was locked in a jail cell and unable to afford the money bail amounts required for their release without sacrificing the basic necessities of life, and all of them would have walked out of the doors of the jail if they had come up with

---

[28] Ex. 1 (Decl. of Dwight Russell) ¶¶ 1, 3.

[29] *Id.* ¶ 10.

[30] Ex. 2 (Decl. of Johnnie Pierson) ¶¶ 1, 3.

[31] *Id.* ¶¶ 5, 13.

[32] Ex. 3 (Decl. of Joseph Ortuno) ¶¶ 1, 3.

[33] *Id.* ¶ 9.

[34] Ex. 4 (Decl. of Christopher Clack) ¶¶ 1–2.

[35] *Id.* ¶¶ 3, 21.

[36] Ex. 5 (Decl. of Maurice Wilson) ¶¶ 1–2.

[37] *Id.* ¶¶ 3, 5, 15.

[38] *Id.* ¶ 17.

enough cash.[39] Pursuant to the policies and practices that govern Harris County's post-arrest processes, all of them faced weeks of detention prior to any opportunity to challenge those conditions at an individualized bail hearing, on the record with evidence and argument.[40]

Defendants' policies and practices violate (1) class members' rights under the Equal Protection and Due Process Clauses by jailing them solely because they cannot afford a monetary payment (Count One); (2) class members' substantive due process rights to pretrial liberty by jailing them without finding that pretrial detention is necessary (Count Two); and (3) class members' procedural due process rights by jailing them without the procedural safeguards required to ensure that the decision to detain is not erroneous (Count Three). Plaintiffs request class-wide declaratory and injunctive relief and certification of the following class: All felony arrestees who are or will be detained by Harris County because they are unable to pay a secured financial condition of release.

## LEGAL ARGUMENT

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Miller v. Mackey Int'l., Inc.*, 452 F.2d 424 (5th Cir. 1971). Class certification is not a "dress rehearsal for the merits." *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). While the Court must perform a "rigorous analysis" to determine whether to certify a class, *Wal-Mart v. Dukes*, 564 U.S. 338, 351 (2011), the Court may not require the

---

[39] *See* Ex. 1 (Russell Decl.) ¶¶ 4, 7, 10; Ex. 2 (Pierson Decl.) ¶¶ 5, 9–10, 13; Ex. 3 (Ortuno Decl.) ¶¶ 4, 7–9; Ex. 4 (Clack Decl.) ¶¶ 3, 8, 21; Ex. 5 (Wilson Decl.) ¶¶ 4–5, 15–16.

[40] *See* Docs. 634-78 (Russell Case Records), 634-79 (Pierson Case Records), 634-80 (Ortuno Case Records), 634-81 (Clack Case Records), 634-82 (Wilson Case Records); Doc. 634-11 (First Bunin Decl.) ¶ 2 ("Based upon the records I have reviewed and reports from lawyers in my office, at least since . . . August 2018, it has been practically impossible for a person arrested for a felony offense to obtain an adversarial, individualized bail hearing before a felony district court judge for, typically, two to four weeks after arrest.").

plaintiffs to establish their claims at the class certification stage, *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). The Fifth Circuit instructs courts to "err in favor of certification." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 487 (5th Cir. 1982). Further, the Fifth Circuit has held that "it is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975), *abrogated on other grounds by Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478 (1978); *accord Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Jones*, 519 F.2d at 1099 (holding courts should not apply rules about the burden of proof "rigidly or blindly" in civil rights cases)).

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). This case easily satisfies each of those fundamental class action prerequisites, known respectively as numerosity, commonality, typicality, and adequacy.

## I.    Numerosity: Joinder of All Proposed Class Members Is Impracticable

Plaintiffs' proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class or subclass members required for a finding of numerosity. Instead, the key question is "whether joinder of all members is practicable in

view of the numerosity of the class and all other relevant factors." *Zeidman*, 651 F.2d at 1038. These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.*; *see also* William B. Rubenstein et al., *Newberg on Class Actions* § 3:12 (5th ed.). Courts also consider "judicial economy arising from the avoidance of a multiplicity of actions." *Newberg on Class Actions* § 3:12 (5th ed.). Finally, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification."[41] The Fifth Circuit has held that "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Jones*, 519 F.2d at 1100. Joinder is presumptively impracticable when a class consists of forty members or more. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Newberg on Class Actions* § 3:1).

Although the Defendants are in the best position to know exactly how many class members there are and will be in the future—because the Defendants keep records of the identities of the people who they detain—the proposed class clearly satisfies the numerosity requirement. For instance, from 2015 through 2021, at least 132,054 people arrested for felony offenses had secured money bail set in their case and were still detained at the time their case was disposed, not including those who were detained due to inability to pay for days, weeks, or months before they were released.[42] Similarly, from January 1, 2022 to September 30, 2022, at least 7,036 people arrested for felonies with a secured bond amount set were detained when their case was disposed, not including people detained before they were released or those who remain detained on cases that have not yet been disposed.[43]

---

[41] *Pederson v. La. State Univ.*, 213 F.3d 858, 867 n.11 (5th Cir. 2000).

[42] Doc. 634-3 (Copp Expert Report) ¶ 38(a).

[43] Doc. 650-3 (Supp. Copp Expert Report) ¶ 5(b) ("Of those with a secured bond set and a valid case

In a similar lawsuit challenging the misdemeanor money bail system in Harris County, this Court found that the plaintiffs in *ODonnell* satisfied the numerosity requirement where Harris County detained over 20,000 people every year.[44] The class size at issue here is orders of magnitude larger than the (wrong) number offered by defendants in *ODonnell*, which this Court found would satisfy numerosity.[45]

Moreover, there is an indeterminate future stream of class members who will suffer the same injury, absent injunctive relief, given that the Defendants arrest and detain new people every day. Thus, traditional "joinder" is not practicable. *See Moore's Federal Practice* § 23.22(f) ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future. Courts in these cases often find that joinder of separate suits would be impracticable because those who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit."); *Newberg on Class Actions* § 25:4 (4th ed.) ("Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future or if the identity or location of many class members is unknown for good cause."); *see also Pederson*, 213 F.3d at 868 n.11 ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification."); *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (finding the numerosity requirement satisfied where the class included "unknown,

---

complete date, 64% (7,036 people out of 11,010 qualifying arrests) were detained at case disposition.").

[44] *ODonnell v. Harris County*, No. 4:16-cv-01414, 2017 WL 1542457, at *4 (S.D. Tex. Apr. 28, 2017). The Court held that the plaintiffs in *ODonnell* satisfied numerosity even considering the defendants' expert's dramatic and not credible underestimation that Harris County detained approximately 1,600 people over two years because they could not pay secured money bail. *See ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1117 (S.D. Tex. 2017) (finding "critical flaws" in the defense expert's analysis that "undermine his credibility").

[45] On April 18, 2023, the Harris County Jail detained approximately 6,783 pretrial felony arrestees (not including felony capital cases). *See* Harris County, Current Jail Population, https://charts.hctx.net/jailpop/App/JailPopCurrent.

unnamed future" class members rendering joinder "certainly impracticable"). In such cases, the

numerosity requirement is met because the putative class seeks declaratory and injunctive relief

against an ongoing policy, a resolution will affect numerous people in the future, and the

composition of the class is fluid and unknown.[46]

These considerations were the foundation of the Supreme Court's decision to hear a

similar class action brought by two post-arrest inmates in *Gerstein v. Pugh*, 420 U.S. 103 (1975):

> Pretrial detention is by nature temporary, and it is most unlikely that any given
> individual could have his constitutional claim decided on appeal before he is
> either released or convicted. The individual could nonetheless suffer repeated
> deprivations, and it is certain that other persons similarly situated will be detained
> under the allegedly unconstitutional procedures.

*Id*. at 110–11 n.11. The Supreme Court's discussion of why such cases are not moot is relevant

to why it is critical to allow such challenges to ongoing bail policies to proceed as a class:

> It is by no means certain that any given individual, named as plaintiff, would be
> in pretrial custody long enough for a district judge to certify the class. Moreover,
> in this case the constant existence of a class of persons suffering the deprivation
> is certain.

*Id*.

In addition to the future stream of arrestees suffering the same violations, other factors

highlight the undesirability of individual lawsuits here. In assessing the impracticability of non-

class joinder, "courts should take a common-sense approach which takes into account the

objectives of judicial economy and access to the legal system."[47] The judicial resources that

would be expended in repeated litigation and discovery, the potential for multiple or conflicting

judgments inherent in many more individual cases concerning the same municipal scheme, and

---

[46] *Jones*, 519 F.2d at 1100 (granting liberal construction of numerosity prong in a case seeking injunctive relief on behalf of future class members because "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1).").

[47] *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (internal citation and quotations omitted).

the lack of access to the legal system for low-income arrestees all point strongly toward the advantages offered by the class-action vehicle in this case. *See Zeidman*, 651 F.2d at 1039 ("[A] number of facts . . . may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."); *Jones*, 519 F.2d at 1098; *see also Nemnich v. Stangler*, No. 91-CV-4517, 1992 WL 178963, at *4 (W.D. Mo. Jan. 7, 1992) (finding impracticability of joinder and emphasizing indigency of class members); *Perez-Benites v. Candy Brand*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (same); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) ("Practicability of joinder depends on many factors, including, for example, . . . ease of identifying [the class's] numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion.").

The resolution of the central facts and legal issues concerning Defendants' money-based post-arrest detention system in one judicial proceeding is far preferable, for all parties involved, to proceedings and discovery repeatedly litigated in this Court on behalf of new indigent arrestees each week and each month. *See Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). A class action is superior when "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Judicial economy will therefore be well served by adjudicating the legality of Defendants' money-bail system in a single class proceeding rather than clogging this Court with numerous individual suits on an ongoing basis for each new arrest.[48]

---

[48] Multiple people detained at Harris County Jail have sent this Court handwritten letters and requests to intervene. The Court has denied them, finding that they are members of the putative class whose interests are "adequately represented by counsel for the plaintiffs, who are vigorously litigating the constitutionality of the felony bail system in Harris County." Doc. 494; *see also* Doc. 621 (denying motion to intervene because movant is a putative class member whose interests are "adequately represented by counsel for plaintiffs"); Doc. 528 (similar).

Moreover, the ability of individual impoverished arrestees to instigate separate lawsuits is compromised because they are unlikely to have the resources to investigate and develop their constitutional claims, let alone to find a lawyer to represent them in the hours after their arrest. As a group, they are among the most marginalized members of the community and struggle economically to meet the basic necessities of life—indeed, their defining characteristic is that they are unable to make the monetary payment required to obtain their freedom. And, unlike those who have been injured by a defective product, indigent arrestees may not even be aware that they have a valid constitutional claim for challenging the practice of jailing the poor for the inability to make a monetary payment. *See Jackson v. Foley*, 156 F.R.D. 538, 541–42 (E.D.N.Y. 1994) (finding numerosity and impracticable joinder when the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits); *Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding, in action brought for injunctive relief challenging Medicaid policy, that joinder was impracticable because the proposed class consisted of poor and elderly or disabled people who could not bring individual lawsuits without hardship); *Gerardo v. Quong Hop & Co.*, No. 08-CV-3953, 2009 WL 1974483, at *2 (N.D. Cal. July 7, 2009) (certifying class where "potential class members are not legally sophisticated," making it difficult for them to bring individual claims).

Finally, a class action does not present any insurmountable difficulties in management—the class is easily ascertainable from records in Defendants' possession *and* the class is limited in geographic scope, as opposed to a nationwide, multi-district class of millions. Requiring separate individual lawsuits against Defendants would likely result in far greater manageability problems, such as duplicative discovery (including numerous depositions of the same witnesses and repetitive production of documents), repeated adjudication of similar controversies in this

Court (with the resultant risk of inconsistent judgments), and excessive costs for all involved. Joinder of so many individual claims would be impracticable, and judicial economy would undoubtedly suffer.

## II. Commonality: Claims by the Proposed Class Raise Common Questions That Will Generate Common Answers

The claims asserted on behalf of the proposed class include "questions of law or fact common to the class" that satisfy Rule 23(a)(2). Commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The threshold for satisfying the commonality prerequisite is "not demanding." *Mullen*, 186 F.3d at 625; *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810. Courts generally "find[] common questions of law to be at a high level of generality . . . and questions of fact similarly broad . . . ." William B. Rubenstein, *Newberg on Class Actions* § 3:19 (5th ed.) (citations omitted). Commonality also requires these common questions "to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 NYU L. REV. 97, 132 (2009)). These "common answers" may be answers about the "defendant's injurious conduct." *Deepwater Horizon*, 739 F.3d at 811. Traditionally, the Rule asks whether the disputed questions are capable of class-wide proof or resolution, and claims need not be identical to satisfy this requirement.[49]

---

[49] *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) ("Even a single common question of law or fact can suffice.") (citing *Dukes*, 564 U.S. at 359); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000).

Although there need not be common issues of *both* law and fact under Rule 23(a), here the entire case is pervaded by critical and dispositive issues of both law and fact that are common to the class. Among the most important, but not the only, common questions of fact are:

- Whether local judicial officers have a policy and practice of requiring secured bail amounts as conditions of releasing a person from the jail;

- Whether Defendants require people arrested to pay the secured money bail amount required by a judicial officer before releasing them from the jail;

- Whether, when requiring a financial condition of release, there is an inquiry into and findings concerning ability to pay;

- Whether, if a person cannot pay for release, there is any inquiry into and findings concerning availability of alternative conditions of release and a finding that pretrial detention is necessary;

- Whether, in requiring pretrial detention, there is an adversarial hearing with counsel and notice of the critical issues at stake, opportunity to be heard and to confront evidence, findings by clear and convincing evidence, and a reasoned decision concerning the need for pretrial detention;

- What standard post-arrest procedures are performed on felony arrestees.

Among the most common questions of law with respect to the Class are:

- Whether requiring arrestees to pay money upfront to secure release from pretrial detention without an inquiry into or findings concerning the arrestee's present ability to pay the amount required, and without meaningful consideration of less restrictive alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

- Whether it is lawful to impose a secured financial condition of release that operates as a de facto order of pretrial detention because of a person's inability to pay without complying with the substantive findings, legal standards, and procedural safeguards required for issuing and enforcing a transparent order of preventive detention;

- What substantive findings and procedural safeguards are required as a matter of federal law prior to pretrial detention of a presumptively innocent person.

As these common questions demonstrate, the Plaintiffs' claims hinge on answers about Defendants' policies and practices toward all class members; resolving Plaintiffs' contentions about Defendants' policies and practices "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Indeed, *ODonnell* considered

similar questions of fact in law in concluding that plaintiffs in those cases met the commonality requirement. *See ODonnell v. Harris Cnty., Tex.*, No. 4:16-CV-01414, 2017 WL 1542457, at *5 (S.D. Tex. Apr. 28, 2017); *see also Baker v. City of Florissant*, No. 4:16-CV-1693 NAB, 2023 WL 1434261, at *11–12 (E.D. Mo. Feb. 1, 2023); *Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2021 WL 616153, at *6 (E.D. Mo. Feb. 17, 2021); *Edwards v. Cofield*, No. 3:17-CV-321-WKW, 2017 WL 3015176, at *2 (M.D. Ala. July 14, 2017); *Walker v. City of Calhoun, Georgia*, No. 4:15-CV-170-HLM, 2016 WL 361580, at *4 (N.D. Ga. Jan. 28, 2016), *appeal not considered*, 682 F. App'x 721 (11th Cir. 2017).

This case exemplifies the Supreme Court's explanation of commonality in *Dukes*, 564 U.S. at 349–51. As *Dukes* noted, it is not just the existence of hypothetical common questions that justify class treatment (such as, "Are all of the Plaintiffs human beings?" or "Does Harris County have a jail?"). Rather, it is the existence of common factual or legal questions relevant to deciding the claims raised. In other words, there must be factual or legal questions the "answers" to which or the "resolution" of which help to advance the legal claims of the Plaintiffs. *Id.* at 350.

In this case, the fundamental common questions of fact and law listed above are the dispositive issues necessary to determine Defendants' liability as to all class members. Plaintiffs' proposed class falls well within the usual parameters for commonality. At the time they sued, the named Plaintiffs were subject to Defendants' policies and practices of requiring payment of secured money bail, imposed without the required findings.[50] Neither S.B. 6 nor any other change to state law has had a material effect on local practices, which result in the same constitutional harms today as they did when the case was filed, and continue to present the same

---

[50] *See, e.g.*, Ex. 1 (Russell Decl.) ¶¶ 3–6; Ex. 2 (Pierson Decl.) ¶¶ 4–7, 13; Ex. 3 (Ortuno Decl.) ¶¶ 3–6; Ex. 4 (Clack Decl.) ¶¶ 2–5; Ex. 5 (Wilson Decl.) ¶¶ 2–5.

common questions of fact and law.[51] Every member of the proposed class will be subjected to these policies, meaning that every class member will be eligible for release from Harris County custody if she pays the money bail amount set in her case.[52] Every class member who is unable to pay the money bail amount will be detained by Harris County,[53] and kept in jail without any findings as to whether she has the ability to pay and whether pretrial detention is necessary.[54]

Because Defendants apply and enforce a detention system with the same constitutional flaws for each class member and cause the same harm to each class member, the proposed class satisfies the commonality requirement of Rule 23(a)(2).

## III.   Typicality: The Named Plaintiffs' Claims Are Typical of the Proposed Class

The named Plaintiffs in this case have claims typical of people who are subject to Defendants' post-arrest policies and practices. "[T]he test for typicality is not demanding." *Mullen*, 186 F.3d at 625. To meet the typicality requirement, the named Plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality does not require a complete identity of claims." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012) (internal citation and quotations omitted). In analyzing typicality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the

---

[51] *See* Doc. 650 (Pls.' Resp. in Support of MSJ) at 2–7 (citing evidence demonstrating that the harm class members experience today is substantively identical to the harm named Plaintiffs were suffering in January 2019).

[52] *See* Ex. 6 (Rule 30(b)(6) Deposition of Harris County Sheriff's Office, Major Patrick Dougherty as corporate representative, at 42:9–23) ("[I]f the bail is paid, then we will release that particular charge").

[53] *See id.* ("[U]ntil somebody pays the bail, they will stay incarcerated."); *id.* (169:20–170:14).

[54] Doc. 634-16 (First Wood Decl.) ¶¶ 33, 45; *see also, e.g.*, Doc. 634-28 at 23 (Gaut Dep. at 104:8–12); Docs. 634-44 (Bail Hearing Video Index), 634-45–634-71 (videos of 26 magistration hearings in which the hearing officer made no findings of ability to pay or necessity of detention).

same legal theory, factual differences will not defeat typicality." *Id.* (citing James Wm. Moore et al., *Moore's Federal Practice* § 23.24[4] (3d ed. 2000)).

The named Plaintiffs were injured in the same way as the other class members: they were detained following magistrations at which de facto detention orders were issued; their detention was due to their inability to pay the amount of money required for their release; and the amount required was determined without any findings concerning ability to pay and without the procedures necessary for issuing a valid order of pretrial detention, including consideration of alternatives to secured financial conditions of release and findings on the record.[55] These experiences are typical of people who were arrested both prior to and after S.B. 6 was promulgated.[56]

---

[55] *See* Ex. 1 (Russell Decl.); Ex. 2 (Pierson Decl.); Ex. 3 (Ortuno Decl.); Ex. 4 (Clack Decl.); Ex. 5 (Wilson Decl.). Just as S.B. 6 had no effect on the policies and practices Plaintiffs challenge, the legislation had no effect on the typicality prong. The named Plaintiffs experienced identical injuries—money-based pretrial detention without adequate justification or procedural protections—to those suffered by class members today. *See* Doc. 650 at 2–7 (summarizing evidence that class members continue to be injured in the same way). As such, their claims are typical of the class. Moreover, one of the named Plaintiffs was subjected to Harris County's bail proceedings and money-based detention *after S.B. 6 went into effect*. He was detained for several days because he could not afford the secured money bail amount set in his case without any findings of his ability to pay that amount, whether a financial payment was necessary, or whether alternative conditions of release would suffice. Ex. 5 (Wilson Decl.) ¶¶ 17–18. As such, even if S.B. 6 impacted typicality (and it does not), these named Plaintiffs would still satisfy it.

[56] *See* Doc. 634-1 (Pls.' SUMF) ¶¶ 92–113 (citing evidence); Doc. 650-1 (Pls.' SSUMF) ¶¶ 2–7 (citing evidence); *e.g.*, Doc. 634-60 (E.A. Bail Hearing, Jan. 18, 2019) (hearing officer did not make an ability-to-pay finding before requiring a $20,000 secured bond for man who allegedly stole a soda and pushed the shop owner with his hand, despite knowing that he was homeless, a lifelong Houston resident, and had no money for bond); Doc. 634-75 (R.M. Bail Hearing, June 4, 2020) (hearing officer did not make an ability-to-pay finding before requiring a $7,500 secured bond for man who allegedly tried to steal coins from a Watermill Express hut, despite being aware that R.M. had been homeless for the past year and had no violent convictions and no violence flag on the risk assessment tool); Doc. 634-71 (N.E.A. Bail Hearing, June 7, 2020) (hearing officer did not make an ability-to-pay finding before requiring a $35,000 secured bond despite being aware that N.E.A. had "no cash on hand, no money in her checking or savings account" and "refer[red] any request for a lower bond or a personal bond to Judge Glass"); Doc. 634-63 (J.M. Bail Hearing, Apr. 22, 2022) (hearing officer made no findings and provided no explanation for why it was necessary to deny a personal bond and imposing a $25,000 secured bond despite J.M. being charged with a non-violent property crime and being the caretaker of his sick mother); Doc. 634-53 (A.R. Bail Hearing, May 6, 2022) (hearing officer did not make an ability-to-pay finding before imposing a $20,000 secured bond (twice as high as the State's request) on a non-violent property offense despite being aware that A.R. relied on food stamps and cared for a daughter undergoing chemotherapy); Doc. 634-74 (R.J.M. Bail

The named Plaintiffs also rely on the same legal theories as the other class members concerning whether Defendants' policies and practices of detaining people on unattainable financial release conditions imposed without adequate justification is unconstitutional.[57] The proof concerning whether Defendants engage in those policies and the legal argument about whether those policies are unlawful are critical for each class member in this case to establish the liability of Defendants. Thus, if the named Plaintiffs succeed in their claim that Defendants' policies and practices concerning pretrial detention as alleged in the Complaint are unlawful, then that ruling will likewise benefit every other member of the class. That is the essence of Rule 23(a)'s typicality requirement. As such, *ODonnell* ruled that plaintiffs satisfied the typicality requirement. *See ODonnell*, 2017 WL 1542457, at *5–6 (finding that a similar class of misdemeanors arrestees satisfied typicality).

## IV.   Adequacy: The Named Plaintiffs Are Competent and Dedicated Class Representatives

The class representatives will "fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(4). The adequacy analysis encompasses two separate inquiries: (1) whether

---

Hearing, July 29, 2022) (in a hearing lasting 70 seconds, hearing officer made no findings and provided no explanation why denying a personal bond and imposing a $10,000 secured bond was necessary); Docs. 634-72, 634-73 (O.G. Bail Hearing Part 1 & Part 2, Aug. 9, 2022) (hearing officer did not make an ability-to-pay finding before requiring a $5,000 secured bond on a non-violent charge despite being aware that O.G. supported three minor children and had only part-time employment earning $300 per month); Doc. 650-4 (E.J.H. Case Records) (77-year-old man arrested in December 2022 for allegedly taking toilet paper and underwear from a Dollar Store and still detained for nearly two months because he could not afford $5,000, an amount required even though no one has made findings about his ability to pay or the necessity of his detention); Doc. 650-5 (G.R. Case Records) (66-year-old woman arrested in January 2023 for allegedly pushing another woman because she cannot afford the payment for a $7,500 secured bond set without any determination that her detention serves any purpose); Doc. 650-6 (A.S. Case Records) (arrested in November 2022 for allegedly spitting on a police officer, she is still in jail because she cannot afford a $5,000 bond); Doc. 650-7 (D.G. Case Records) (requiring $7,500 secured bond for 70-year-old with lowest possible "risk" score, who has been in jail for almost three months without ever appearing in court); Doc. 650-8 (G.H. Case Records) (requiring $10,000 secured bond for 73-year-old with no income, who had been detained for four months without an evidentiary bail hearing).

[57] *See James*, 254 F.3d at 571.

the named Plaintiffs have common interests with the other class members, and (2) whether the representatives will adequately prosecute the action through qualified counsel. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982); s*ee also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129–30 (5th Cir. 2005).

The named Plaintiffs are adequate class representatives. To determine adequacy, courts consider "[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Feder*, 429 F.3d at 130. "Class representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26. The Fifth Circuit has specified that, while courts should consider class representatives' "willingness and ability . . . to take an active role in and control the litigation," *Feder*, 429 F.3d at 130, the representatives "need not be legal scholars and are entitled to rely on [class] counsel," *id.* at 132 n.4 (citation omitted). "The representative class members are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006). An example of an adequate class representative is one with "commendable familiarity with the complaint and the concept of a class action." *Horton*, 690 F.2d at 484.[58]

---

[58] *ODonnell* held that plaintiffs satisfied the "adequacy" prong. *See ODonnell*, 2017 WL 1542457 at *6.

The named Plaintiffs in this case have agreed to act as class representatives.[59] They have each met with the undersigned counsel and discussed the responsibility of prosecuting a class action on behalf of Harris County's poorest residents.[60] The named Plaintiffs can demonstrate familiarity with the complaint and the concept of a class action.[61] Each named Plaintiff is familiar with Defendants' procedures challenged here and the constitutional protections they seek to vindicate.[62] The named Plaintiffs have responded to discovery requests in this case.[63] Finally, the named Plaintiffs are dedicated to fulfilling the role and duties of a class representative protecting class members' fundamental constitutional rights.[64]

The named Plaintiffs' release from Harris County custody does nothing to undermine their adequacy as class representatives. As this Court has observed, named plaintiffs' release from detention "does not moot the plaintiffs' claims in this inherently transitory putative class action" because of the uncertain duration of pretrial detention and the persistent constitutional violations that have continued to occur to thousands of others similarly situated as the named Plaintiffs were. *See Russell v. Harris Cnty., Tex.*, 500 F. Supp. 3d 577, 599 (S.D. Tex. 2020). Under the long-standing inherently transitory exception to mootness, named Plaintiffs remain adequate class representatives even after their individual claims may otherwise be moot if: "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons

---

[59] Ex. 10 (Decl. of Dustin Rynders) ¶ 12.

[60] *Id.*

[61] *Id.* at ¶ 13.

[62] *Id.*

[63] *Id.* at ¶ 14.

[64] *Id.* at ¶ 12; Ex. 1 (Russell Decl.) ¶ 11; Ex. 2 (Pierson Decl.) ¶ 14; Ex. 3 (Ortuno Decl.) ¶ 11; Ex. 4 (Clack Decl.) ¶ 24; Ex. 5 (Wilson Decl.) ¶ 20.

suffering the deprivation complained of in the complaint." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010); *see J.D. v. Azar*, 925 F.3d 1291, 1310 (D.C. Cir. 2019) (applying two-part test); *Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016) (same and quoting *Olson*, 594 F.3d at 582); *Jonathan R. by Dixon v. Just.*, 41 F.4th 316, 326 (4th Cir. 2022) (same and quoting *Olson*, 594 F.3d at 582), *cert. denied*, 143 S. Ct. 310 (2022); *Ward v. Hellerstedt*, 753 F. App'x 236, 242–43 (5th Cir. 2018) (distilling similar factors when finding a class's claims were inherently transitory).

These requirements are easily met here. First, "pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Gerstein*, 420 U.S. at 111 n.11; *see Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991) (applying inherently transitory exception to class action challenging "the manner in which the County . . . provides probable cause determinations"); *Booth v. Galveston County*, 352 F. Supp. 3d 718, 728 (S.D. Tex. 2019) ("[T]he Supreme Court has expressly held on several occasions that, in a class action challenging procedures for pretrial detention, the release of the named plaintiff from jail does not moot the action."). Indeed, in Harris County, there is no certainty as to how long a person will be detained pretrial, and local officials largely control that time period because they determine conditions of release, the pace of hearings, and the timing of disposition.[65] In civil litigation as complex as this case, the duration of pretrial detention is clearly temporary and uncertain enough to meet the first prong.

---

[65] *See* Doc. 634-3 (Copp Expert Report) ¶¶ 26–30 (detailing variations of people detained on secured bond during pendency of their respective criminal cases); *id.* ¶ 40 ("69% of people arrested for felonies had secured bonds set in their cases. Only around half made the required bond amount."); Harris County, Current Jail Population, https://charts.hctx.net/jailpop/App/JailPopCurrent (accessed Apr. 4, 2023) (listing average length of stay as 199 days and median length of stay as 97 days).

Second, there will be, and has been, an ongoing group of people suffering the same injury as the named Plaintiffs. Every day, from the moment this case was filed through the present, Harris County has detained thousands of people in its jail solely because they cannot make a cash payment without finding that such pretrial detention is necessary.[66] The putative class therefore satisfies the second requirement of an inherently transitory class.

The named Plaintiffs here are part of the class, share the class's interests, and suffer the same injuries as the class members. There are no known conflicts between the named Plaintiffs' interests and the interests of the class members. The interests of the named Plaintiffs and class members are aligned: they are all people seeking relief from unconstitutional pretrial detention. There are no named Plaintiffs or class members who benefit from the denial of due process or equal protection while imprisoned. Plaintiffs have also hired counsel who are willing to undertake financial responsibility for this action pro bono, and to seek payment of costs and attorney's fees only as permitted under 42 U.S.C. § 1988 and other fee-shifting provisions.

Finally, Plaintiffs' counsel are competent and zealous. Plaintiffs' counsel from Civil Rights Corps, Susman Godfrey, and Texas Civil Rights Project have extensive experience litigating civil rights cases.[67] This experience includes representation of a class of misdemeanor arrestees in a case that raises the same legal claims challenging materially identical bail practices in misdemeanor cases.[68] Counsel have a history of zealous advocacy on behalf of their clients,

---

[66] *See* Doc. 195-1 (Second Amended Compl.) ¶¶ 13, 15, 44–79 (allegations regarding detention of named Plaintiffs); 199–204 (claims for relief); Doc. 634 (Pls.' Mot. for Summary Judgment) at 34 (summarizing Plaintiffs' claims).

[67] *See* Ex. 9 (Decl. of Alec Karakatsanis) ¶¶ 6–8; Ex. 10 (Rynders Decl.) ¶¶ 7–8.

[68] *See also ODonnell*, 2017 WL 1542457 (certifying class with Civil Rights Corps and Susman Godfrey as class counsel); *Daves v. Dallas Cnty., Texas*, No. 3:18-CV-0154, 2018 WL 4537202, at *1 (N.D. Tex. Sept. 20, 2018) (certifying class with Civil Rights Corps as class counsel).

as evidenced by the filings and favorable results in those cases. Having spent years litigating Harris County's pretrial detention scheme, Counsel are intimately familiar with the practices and procedures at issue as well as the constitutional law. Counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of reasonable constitutional options available to municipalities. As a result, Counsel have devoted substantial resources to becoming familiar with the money-based detention scheme in Harris County, Texas, and with the relevant state and federal laws and procedures.

Counsel for the named Plaintiffs also seek to be appointed Class Counsel pursuant to Rule 23(g), given their extensive involvement in this action and that they will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Rule 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court must consider factors including: (1) "the work counsel has done in identifying or investigating potential claims in this action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Undersigned counsel satisfy these four requirements. First, Plaintiffs' counsel have interviewed Plaintiffs and other class members, performed relevant legal research and drafting, and investigated the facts and legal claims raised in this case over a significant period of time.[69] Second, Plaintiffs' counsel have significant experience litigating civil rights actions, including claims concerning due process, equal protection, the right to counsel, and conditions of

---

[69] Ex. 9 (Karakatsanis Decl.) ¶¶ 4–5.

confinement.[70] Counsel have also litigated challenges to unconstitutional bail systems in this jurisdiction, other jurisdictions in Texas, and across the country.[71] Third, Plaintiffs' counsel are particularly familiar with the application of constitutional rights in Texas misdemeanor and felony courts.[72] Counsel have advocated for policy reforms on the issues raised in this case with state and local officials, and educated the public and other attorneys about preventing and remedying the type of constitutional violations exemplified by this case.[73] Counsel have substantial experience litigating class actions and other complex matters.[74] Finally, Plaintiffs' counsel are prepared to contribute significant resources to the representation of this class.[75] Therefore, Plaintiffs' counsel satisfy the four criteria in Rule 23(g), and they respectfully request appointment as class counsel.

Counsel for the named Plaintiffs have also been the lead attorneys in several recent constitutional civil rights class action lawsuits raising similar issues. *See, e.g.*, *ODonnell*, 2017 WL 1542457 at *8 (appointing Civil Rights Corps and Susman Godfrey as class counsel in a similar lawsuit challenging the misdemeanor bail-setting process); *McNeil v. Community Probation Services*, No. 1:18-CV-33 (M.D. Tenn. 2018); *Torres v. Collins*, No. 2:20-CV-26 (E.D. Tenn. 2020); *Daves v. Dallas Cnty.*, No. 3:18-CV-0154 (N.D. Tex. 2018); *Dixon v. City of St. Louis*, No. 4:19-CV-112 (E.D. Mo. 2019); *Schultz v. State*, No. 5:17-CV-270 (N.D. Ala. 2017); *Edwards v. Cofield*, No. 3:17-CV-321 (M.D. Ala. 2017); *Caliste v. Cantrell*, No. 2:17-CV-6197 (E.D. La. 2017); *Jones v. City of Clanton*, No. 2:15-CV-34 (M.D. Ala. 2015);

---

[70] *Id.* ¶¶ 4–8.

[71] *Id.* ¶¶ 6–8.

[72] *Id.* ¶¶ 4–6; Ex. 10 (Rynders Decl.) at ¶¶ 9–10.

[73] Ex. 9 (Karakatsanis Decl.) ¶ 8.

[74] *Id.* ¶¶ 6–8; Ex. 10 (Rynders Decl.) ¶¶ 3–8.

[75] Ex. 9 (Karakatsanis Decl.) ¶ 9.

*Rodriguez v. Providence Comm. Corr., Inc.*, No. 3:15-CV-1048 (M.D. Tenn. 2015); *Cooper v. City of Dothan*, No. 1:15-CV-425 (M.D. Ala. 2015). Several of those cases have resulted in injunctions or consent decrees requiring jurisdictions to change their post-arrest procedures to remove secured money bail for new arrestees or other relief.

Susman Godfrey is one of the preeminent law firms in the country in class action litigation, with extensive experience in prosecuting class action cases and civil rights cases. Counsel are knowledgeable concerning the factual and legal issues involved in this lawsuit and are committed to providing the resources necessary to represent the class. They possess the necessary qualifications, experience, and resources.[76] Susman Godfrey has more than 170 lawyers and offices in Houston, New York, Los Angeles, and Seattle. The firm has extensive experience representing plaintiffs in complex class action litigation in state and federal courts in many fields, including antitrust and price-fixing cases, securities litigation, consumer class actions, products liability, and civil rights cases. A few of Susman Godfrey's significant cases as lead counsel for classes of consumer plaintiffs include *In re Universal Service Fund Telephone Billing Practices Litig.*, 619 F.3d 1188 (10th Cir. 2010) (challenging overcharges to customers for telephone bills); *Clark v. AdvanceMe Inc.*, No. 08-3540 (C.D. Cal.) (challenging financial agreements with retail merchants under California's laws against usury); and *In re Toyota Motor Corp.*, No. 10-2151 (C.D. Cal.) (challenging defectiveness of vehicles for breach of warranty, unjust enrichment, and violation of consumer protection statutes). Susman Godfrey is eminently able to conduct this litigation and protect the interests of this class.

The Texas Civil Rights Project ("TCRP") is a nonprofit organization that has spent

---

[76] *See Neal S. Manne, Managing Partner*, SUSMAN GODFREY L.L.P., https://www.susmangodfrey.com/attorneys/neal-s-manne/; *Joseph S. Grinstein, Partner*, SUSMAN GODFREY L.L.P., https://www.susmangodfrey.com/attorneys/joseph-s-grinstein/ (biographies of Neal S. Manne and Joseph Grinstein).

decades litigating individual and class-based civil rights actions in state and federal courts throughout Texas.[77] It has a proven track record of zealous and effective advocacy in complex cases involving constitutional rights.[78] In addition to this case, TCRP's recent and ongoing class action litigation includes: *Huisha-Huisha v. Gaynor*, No. 1:21-CV-00100 (D.D.C.) (currently pending class action on behalf of minors and their families expelled, or at risk of being expelled, under Title 42 of the U.S. Code); *P.J.E.S. v. Wolf*, No. 1:20-CV-02245 (D.D.C.) (currently pending class action on behalf of unaccompanied minors expelled, or at risk of being expelled, under Title 42 of the U.S. Code); *Cole v. Collier*, No. 4:14-CV-1698 (S.D. Tex.) (class action challenging Texas prison system's failure to mitigate extreme heat in housing unit for elderly and medically-vulnerable incarcerated people; settled favorably in 2018, *see* Doc. No. 1188).

Accordingly, the named Plaintiffs and undersigned counsel meet the adequacy requirement of Rule 23(a) and Rule 23(g)(2).

## V.     Certification for Prospective Relief Is Appropriate Under Rule 23(b)(2)[79]

The proposed class in this case is exactly the sort of class described in Rule 23(b)(2) . To certify a class under Rule 23(b)(2), the party seeking class certification must show that "the

---

[77] Ex. 10 (Rynders Decl.) ¶ 5.

[78] *Id.* ¶¶ 7–8.

[79] Plaintiffs do not seek to certify a damages class because they have not brought a damages claim. At least with respect to a damages class under Rule 23(b)(3), courts have held that "ascertainability" is, in essence, a fifth Rule 23 prerequisite. A class must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). "[T]he class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class[,]" *Earnest v. General Motors Corp.*, 923 F. Supp. 1469, 1473 (N.D. Ala. 1996), however "'it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.'" *Id.* at 1473 n.4 (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)). Although it is doubtful that such a requirement exists with respect to a purely injunctive class under Rule 23(b)(2), *see, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012) (noting that the rule has been applied to Rule 23(b)(3) damages classes), that requirement is easily met here. Defendants have in their possession the identity of each and every person they keep in custody after an arrest who would be released if they made a monetary payment. Also, by necessity, Defendants will come to know the identity of each future arrestee.

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "This is a simple inquiry in most cases." William B. Rubenstein et al., *Newberg on Class Actions* § 4:28 (5th ed.). The requirement of a generally applicable set of actions "ensures that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient." *Id.* Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Civil rights class actions seeking injunctive and declaratory relief are "prime examples" of the types of actions that Rule 23(b)(2) is meant to capture. *Id.* at 361 (quotation omitted). Rule 23(b)(2) classes seek "an indivisible injunction benefitting all its members at once," individualized inquiries into "whether class issues predominate" are unnecessary, and "[p]redominance and superiority are self-evident." *Id.* at 362–63; *see also id.* at 361 (emphasizing the importance of classwide relief based on the structure of Rule 23(b)(2) and noting the Rule's historical basis in civil rights cases).

This case is exactly the kind of class action that Rule 23(b)(2) is meant to capture. *Id.*; *see also* William B. Rubenstein et al., *Newberg on Class Actions* § 4:40 (5th ed.) ("While civil rights cases are often maintained against public and private defendants under civil rights *statutes*, many (b)(2) class actions challenge government actions on *constitutional* grounds as well.") (emphasis in original). Defendants have acted on grounds that apply generally to the class—the relevant unconstitutional policies and practices apply to every arrestee detained in the Harris County Jail before trial because they cannot pay the secured financial conditions required for their release. Injunctive and declaratory relief are appropriate for the class precisely because the only adequate

relief is enjoining Defendants' enforcement of unconstitutional policies and practices. Furthermore, it is far more efficient for this court to grant injunctive and declaratory relief protecting all of the class members than to extend that relief piecemeal through individual suits. Because the putative class challenges Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply identically to every member of the class, Rule 23(b)(2) is appropriate and necessary. *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002) ("Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury)."[80] As the Supreme Court explained in *Dukes*:

> When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident.

564 U.S. at 362–63. In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998), the Fifth Circuit stated that the underlying premise of a Rule 23(b)(2) class action is that class members suffer from a common injury which is properly addressed by class-wide relief. "Thus, if the plaintiffs [seek] only injunctive and declaratory relief, [the] case [can] readily be certified as a class action under Rule 23(b)(2)." *Id.* at 411. As the Fifth Circuit recognized, "[s]uch relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Id.* at 414.

Plaintiffs seek only injunctive and declaratory relief that is designed to remedy the

---

[80] Rule 23(b)(2) arose out of experience "in the civil rights field," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted), in which the government typically treats a whole class in an unconstitutional manner based on law or government policy. "Rule 23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions." James Moore et al., *Moore's Federal Practice* § 23.43; *see also Newberg on Class Actions* § 1:3 (5th ed.) ("Rule 23(b)(2) authorizes a class action when a party has taken or refused to take action with respect to a class, and final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole. This category is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.").

deficiencies of the post-arrest system in ways that apply to the class as a whole—Defendants have acted on grounds that apply generally to the class. A declaration and injunction stating that Defendants cannot implement and enforce their system of money-based detention would provide relief to every member of the class. *See Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) ("Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class.").[81] Because Plaintiffs seek only such "uniform group remedies," certification is appropriate. *Allison*, 151 F.3d at 414.

Due to the "group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Id.* at 413. Thus, the Court need not conduct an independent probe into the degree to which common issues predominate over those affecting only individuals, as they would with a Rule 23(b)(3) class, for example. *Id.* at 414. Indeed, the Rule 23(b)(3) requirement is "almost automatically fulfilled in actions where the relief sought is primarily injunctive." *Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 195 (W.D. Tex. 1998). The central issue common to the entire class is Defendants' application and enforcement of policies and procedures to detain arrestees unless and until they pay amounts of money imposed

---

[81] All of the proof and evidence in this case relevant to whether the policies and practices at issue exist—including standing orders and rules, internal written and oral directives to employees and other subordinates, the standard documents and systems used by the County officers and clerks, the testimony of numerous civilian witnesses as well as the testimony of court and jail officials, and Defendants' docket and record-keeping systems—will be common to all Class members and comprise the necessary proof for their claims of Defendants' liability. The legal claims thus involve the same nucleus of facts about the scheme that Defendants have constructed and that it applies every day. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269–270 (3d Cir. 2009) (certifying the class based on a common course of conduct by the defendant). Similarly, the dispositive legal questions in determining liability are identical. Once the common facts are established through common evidence, the question will be whether those facts give rise to the legal violations alleged in the First Amended Complaint. Those important constitutional questions concerning liability should be decided in one proceeding. *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

without any findings concerning ability to pay or the necessity of pretrial detention.[82]

The requirements of Rule 23(b)(2) are satisfied here because "the predominant relief sought is injunctive or declaratory." *Allison*, 151 F.3d at 411; *Baby Neal*, 43 F.3d at 58 (noting that the requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief" for common legal claims.); *see also Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 465 (S.D. Fla. 2002) (finding class certification appropriate when "the Class Plaintiffs sought exclusively injunctive relief based on their allegations").

Certification of the class under Rule 23(b)(2) is merited because the named Plaintiffs, at the time they sued, and the rest of the members of the putative class are arrestees who are or will be detained by Harris County after arrest because they are unable to pay money bail. Absent the requested relief, the named Plaintiffs and the putative class members will be subjected to a flagrantly unconstitutional set of practices, policies, and procedures. Injunctive relief compelling Defendants to comply with Equal Protection and Due Process and prohibiting them from enforcing orders to pay secured bail that violate the federal Constitution will protect each member of the class from being subjected to Defendants' unlawful policies and practices.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the court certify the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

---

[82] *See, e.g.*, *ODonnell v. Harris County*, 2017 WL 1542457 at *8 (certifying class composed of "[a]ll Class A and Class B misdemeanor arrestees who are detained by Harris County from the date of this order through the final resolution of this case, for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on the secured money bail because of indigence."); *see also, e.g. Daves*, 2018 WL 4537202 at *1 (certifying class of "all arrestees who are or will be detained in Dallas County custody because they are unable to pay a secured financial condition of release."); *Walker*, 2016 WL 361580, at *10 (granting, "for purposes of pursuing declaratory and injunctive relief," a class composed of "[a]ll arrestees unable to pay for their release who are or will be in the custody of the City of Calhoun as a result of an arrest involving a misdemeanor, traffic offense, or ordinance violation").

Date: April 20, 2023                                    Respectfully Submitted,

*/s/ Jeremy D. Cutting*
Alec George Karakatsanis (*pro hac vice*)              Neal S. Manne
alec@civilrightscorps.org                               Texas Bar No. 12937980
Elizabeth Rossi (*pro hac vice*)                        nmanne@susmangodfrey.com
elizabeth@civilrightscorps.org                          Joseph S. Grinstein
Jeffrey Stein (Texas Bar No. 24124197)                  Texas Bar No. 24002188
jeff@civilrightscorps.org                               jgrinstein@susmangodfrey.com
Kiah Duggins (*pro hac vice*)                           SUSMAN GODFREY L.L.P.
kiah@civilrightscorps.org                               1000 Louisiana Street, Suite 5100
Jeremy D. Cutting (*pro hac vice*)                      Houston, TX 77002
cody@civilrightscorps.org                               Telephone: (713) 651-9366
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

Dustin Rynders
Texas Bar No. 24048005
dustin@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
travis@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
2100 Travis Street
Houston, TX 77002
Telephone: (512) 474-5073

Ashley Fernandez Dorsaneo
Texas Bar No. 24127393
ashley@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
Telephone: (512) 474-5073

**CERTIFICATE OF SERVICE**

I certify that on April 20, 2023, a true and correct copy of this document was properly served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

/s/ Jeremy D. Cutting