UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWIGHT RUSSELL, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | Case No. 4:19-cv-00226 |
| | § | |
| *Defendants*, | § | |
| | § | |
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| *Intervenor-Defendants*. | § | |

***AMICUS CURIAE* BRIEF OF
HARRIS COUNTY DISTRICT ATTORNEY KIM OGG
<u>REGARDING ABSTENTION AND MOOTNESS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST OF AMICUS CURIAE ................................................................................ 1

ARGUMENT ...................................................................................................................... 2

     I.    The Systems and Claims in This Case Are
           Indistinguishable from Those at Issue in *Daves II* ................................. 3

     II.   *Younger* Abstention ............................................................................... 4

     III.  Mootness of *Russell* Plaintiffs' Claims ................................................ 11

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Barichello v. McDonald,*
   98 F.3d 948 (7th Cir. 1996) .......................................................................... 9

*Bellotti v. Baird,*
   428 U.S. 132 (1976) ...................................................................................... 8

*Curd v. City of Searcy,*
   739 F. App'x 359 (8th Cir. 2018) ................................................................. 9

*Daves v. Dallas County,*
   --- F.4th ----, 2023 WL 2720444 (5th Cir. Mar. 31, 2023) (en banc) .............. *passim*

*Daves v. Dallas County,*
   22 F.4th 522 (5th Cir. 2022) (en banc) ....................................................... 3

*Daves v. Dallas County,*
   341 F. Supp. 3d 688 (N.D. Tex. 2018) ........................................................ 4

*H.C. ex rel. Gordon v. Koppel,*
   203 F.3d 610 (9th Cir. 2000) ........................................................................ 9

*Lawrence v. McCarthy,*
   344 F.3d 467 (5th Cir. 2003) ........................................................................ 8

*Morrow v. Winslow,*
   94 F.3d 1386 (10th Cir. 1996) ...................................................................... 9

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,*
   491 U.S. 350 (1989) ...................................................................................... 10

*O'Neill v. City of Philadelphia,*
   32 F.3d 785 (3d Cir. 1994) ........................................................................... 9

*O'Neill v. Coughlan,*
   511 F.3d 638 (6th Cir. 2008) ........................................................................ 9

*ODonnell v. Harris County,*
   227 F. Supp. 3d 706 (S.D. Tex. 2016) ......................................................... 4

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*,
  477 U.S. 619 (1986) ............................................................................ 8

*RTM Media LLC v. City of Houston*,
  584 F.3d 220 (5th Cir. 2009) ............................................................. 8

*Tex. Ass'n of Bus. v. Earle*,
  388 F.3d 515 (5th Cir. 2004) ............................................................. 7

*United States v. Olano,*
  507 U.S. 725 (1993) ............................................................................ 8

*Younger v. Harris*,
  401 U.S. 37 (1971) ............................................................................ 10

**Statutes**

TEX. CODE CRIM. PROC. art. 17.027 ............................................................. 14

TEX. CODE CRIM. PROC. art. 17.028(a), (b) .............................................. 11

TEX. CODE CRIM. PROC. art. 17.15 ............................................................... 3

TEX. CODE CRIM. PROC. art. 17.15(5) .......................................................... 6

TEX. CODE CRIM. PROC. art. 17.15(a) .......................................................... 12

**Other Authorities**

Anders Anglesey, *Convicted Felon Out on Bond Kills Man
  and Steals His Car: Police*, NEWSWEEK (Mar. 16, 2023),
  bit.ly/3H6fHRu ................................................................................ 6

First, Second, Third, Fourth, Fifth, and Sixth Six-Month Monitor Reports,
  *ODonnell v. Harris County*, No. 4:16-cv-1414 (S.D. Tex.),
  ECF Nos. 722, 725, 726, 732, 733, 734, 736 ........................................ 7

Grace White, *Man Charged With Capital Murder While Out on Bond
  for Separate Capital Murder Charge, Police Say*, KHOU11 (Apr. 7, 2023),
  bit.ly/43VQ5AC ................................................................................ 6

HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE,
  BAIL, CRIME & PUBLIC SAFETY (2021),
  bit.ly/3MTloWL ................................................................................ 6

Harris County District Attorney's Statement of Intent to Appear
  and Supplemental Amicus Brief, *ODonnell v. Harris County*,
  No. 4:16-cv-1414 (S.D. Tex. Oct. 17, 2019), ECF. No. 665 ........................................ 6

Pl.'s Reply in Supp. of Prelim. Inj., *Daves v. Dallas County*,
  341 F. Supp. 3d 688 (N.D. Tex. 2018) (No. 3:18-cv-154),
  ECF No. 57, 2018 WL 8063802 ................................................................................. 4

Samantha Ketterer, *Repeated Bail for Houston Man Accused of Murder,*
  *6 Felony Convictions Raises Eyebrows*, HOUSTON CHRON. (Sept. 11, 2020),
  bit.ly/3N4fn9J ........................................................................................................ 6

## INTEREST OF *AMICUS CURIAE*

As the Court is aware, Harris County District Attorney Kim Ogg ("District Attorney Ogg") is the elected head of the Harris County District Attorney's Office (the "HCDAO"). Given the allegations made by Plaintiffs, they have never sought to make her a party to this lawsuit. However, District Attorney Ogg's office is obviously tasked with essential duties in the Harris County criminal justice system. As such, the Court has repeatedly asked her and the HCDAO as non-parties for information about the Harris County criminal justice system in general and the status of cases and dockets. *E.g.*, Dkts. 122, 166, 198. So too have the parties, from time to time. As an example, the HCDAO provided an organizational representative for deposition in the litigation at the request of Plaintiffs and their counsel. Over the course of two days, the organizational representative addressed questions about the organization and operation of the bail-setting system in Harris County, as it was operating prior to implementation of the provisions of law enacted through S.B. 6. Dkts. 634-25, 634-26 (excerpts of depositions taken on March 22, 2021 and March 10, 2022); **Exhibit A** ¶ 3 (Declaration of Jennifer Keith).[1]

District Attorney Ogg submits this *amicus curiae* brief to provide the Court with her office's perspective on the important, fundamental, and threshold issues of abstention and mootness that are before the Court in light of the Fifth Circuit's *en*

---

[1] When Plaintiffs sought to obtain internal communications at the HCDAO on a specific case, District Attorney Ogg objected on various grounds, including on sovereign immunity grounds. The Court upheld these objections. Dkt. 638. But District Attorney Ogg has repeatedly provided public-facing information requested by the Court or on a request from the parties on the operation of the Harris County bail-setting process.

*banc* decision in *Daves v. Dallas County*, --- F.4th ----, 2023 WL 2720444 (5th Cir. Mar. 31, 2023) (en banc) (hereinafter *Daves II*). Specifically, District Attorney Ogg seeks to address why the abstention and mootness principles applied in *Daves II* to the federal constitutional challenges to the Dallas County bail-setting system apply just as readily to the bail-setting system in place in Harris County.

The brief also emphasizes that application of *Younger* abstention will serve the important purpose—under general federalism principles—of placing responsibility over pretrial release and bail-setting practices with local officials, agencies, and judges in Harris County. These local participants in the criminal justice system must be free to play their parts in the operation of Harris County's criminal justice system under state law, and in a manner that protects the rights of not only persons charged with crimes but also the interests of the broader citizen population of Harris County. The brief also seeks to make the point that there is public-facing evidence available on the implementation of law changes enacted through S.B. 6 in the Harris County system, to the extent there is any question before this Court on the plain application of core mootness principles to *Russell*.

## ARGUMENT

Respectfully to all parties, there can and should be no equivocation on the application of *Daves II* to this litigation. A plain, intellectually consistent, and real-world application of *Daves II* to Plaintiffs' claims—and to the post-S.B. 6 Harris County bail-setting system—mandates dismissal of the *Russell* litigation.

## I.    The Systems and Claims in This Case Are Indistinguishable from Those at Issue in *Daves II*

Although Plaintiffs' arguments have shifted over time, this case was filed to challenge the constitutionality of Harris County's use of a "predetermined money bail schedule . . . to determine financial conditions of pretrial release for nearly all felony arrestees in Harris County."  Dkt. 195-1 at ¶ 80.  That was precisely the bail-setting practice at issue in *Daves*:  "Central to [*Daves*] is that the District Judges in Dallas County promulgated a bail schedule for felony arrestees."  *Daves v. Dallas County*, 22 F.4th 522, 530 (5th Cir. 2022) (en banc) (hereinafter *Daves I*); *see also Daves II*, 2023 WL 2720444, at *2 (recounting that the plaintiffs alleged they were "unconstitutionally incarcerated pretrial solely because they were financially unable to post required bail" that was determined "via an offense-based schedule").  Both cases involve private plaintiffs raising federal constitutional challenges to the administration of initial appearance/bail-consideration hearings (conducted under TEX. CODE CRIM. PROC. art. 17.15) and the determination of cash bail amounts.

The constitutional claims and remedies sought in both cases are fundamentally the same.  In this case, the complaint alleges violations of the Equal Protection Clause and substantive and procedural components of the Due Process Clause.  Dkt. 195-1 at ¶¶ 200, 202, 204.  *Daves* involves the same claims.  *Daves I*, 22 F.4th at 542 (summarizing alleged violations of "equal protection, "substantive due process," and "procedural due process").  Both cases seek declaratory and injunctive relief.  Dkt. 634 at 12 (ECF pagination); *Daves I*, 22 F.4th at 529 n.2.

3

Plaintiffs have conceded over time that this case is indistinguishable from *Daves*. *Daves* and this case were filed by the same attorneys from the same non-profit, and they argued that both cases were indistinguishable from another case they filed, *ODonnell v. Harris County*, 227 F. Supp. 3d 706 (S.D. Tex. 2016).  In *Daves*, Plaintiffs' counsel told the district court that *ODonnell* involved "a materially indistinguishable context."  Pl.'s Reply in Supp. of Prelim. Inj. at 4, *Daves v. Dallas County*, 341 F. Supp. 3d 688 (N.D. Tex. 2018) (No. 3:18-cv-154), ECF No. 57, 2018 WL 8063802.  The district court accepted that argument.  *Daves*, 341 F. Supp. 3d at 691; *see also Daves II*, 22 F.4th at 530 ("The district court held that this case was materially indistinguishable from *ODonnell I*, thereby accepting the *ODonnell I* court's legal conclusions as controlling . . . .").  Here, Plaintiffs' counsel similarly argued that *ODonnell* is indistinguishable, stating in the complaint:  "*ODonnell* raises the same legal claims [as this case] and challenges materially identical bail policies and practices as applied to people arrested for misdemeanor offenses.  This lawsuit is a companion case to *ODonnell*; the claims pled here could have been added to *ODonnell* itself by way of an amended Complaint."  Dkt. 195-1 at ¶ 14.

## II.    *Younger* Abstention

The same federalism concerns that led the Fifth Circuit in *Daves II* to apply *Younger* abstention to federal constitutional challenges to Dallas County's bail-setting process apply just as readily to the equally complicated, busy, and layered Harris County criminal justice system.  The "mischief" of a federal-court order "fix[ing] the time of, the nature of and even the burden of proof" for bail hearings is that it would "permit a pre-trial detainee who claimed that the order was not

complied with to proceed to the federal court for interpretations thereof." *Daves II*, 2023 WL 2720444, at *8 (quoting *Wallace v. Kern*, 520 F.2d 400, 406 (2d Cir. 1975)). "This would constitute not only an interference in state bail hearing procedures, but also the kind of continuing surveillance found to be objectionable in *O'Shea*." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974)).

If there are instances in which individuals subject to pretrial detention or release believe that state-law requirements have not been satisfied, as the Fifth Circuit recognized, "Texas law [already] expressly provides mechanisms for challenging excessive bail." *Id.* at *9. For example, pretrial detainees and their criminal defense counsel have the ability to seek bail reductions, at court appearances and otherwise, in the Harris County system. **Exhibit A** ¶ 3 & Ex. 1 (deposition excerpt). Under plain federalism principles, federal civil rights claims cannot be used as a method of micromanaging, much less supplanting, the authority of local officials and judges to administer cases and run a state criminal justice process they are charged with operating. As reinforced in *Daves II*, local officials and judges can and should be free from federal oversight in performing their state-law duties—including doing what they can to ensure court appearances and protect public safety.

These broader public safety interests are critically important, and District Attorney Ogg is frankly concerned that arguments made in the litigation have not paid enough attention to them. As the Court is undoubtedly aware, there have been repeated instances in Harris County in which arrestees have been issued personal bonds or minimal cash bonds, only to see those arrestees commit murders, other

serious acts of violence, and other crimes while on pretrial bond conditions.[2]  The safety of the broader community has been and continues to be a baseline consideration in the setting of a bail amount under Texas state law, both before and after the implementation of relevant legal changes through S.B. 6.  TEX. CODE CRIM. PROC. art. 17.15(5).  Regardless of whether the judgments of state-court district and magistrate judges in setting bail in felony cases have been influenced away from public safety considerations by the *Russell* litigation and its predecessor *ODonnell* litigation, the point of *Younger* abstention as re-emphasized in *Daves II* is crystal clear.  A state criminal justice system must be allowed to operate its trial and appellate procedures in individual cases, free of attempts at federal micromanagement.  *Daves II*, 2023 WL 2720444, at *4.[3]  Under *Younger*, "federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted."  *Tex. Ass'n of Bus. v.*

---

[2]*See, e.g.*, HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE, BAIL, CRIME & PUBLIC SAFETY (2021), bit.ly/3MTloWL; Grace White, *Man Charged With Capital Murder While Out on Bond for Separate Capital Murder Charge, Police Say*, KHOU11 (Apr. 7, 2023), bit.ly/43VQ5AC; Anders Anglesey, *Convicted Felon Out on Bond Kills Man and Steals His Car: Police*, NEWSWEEK (Mar. 16, 2023), bit.ly/3H6fHRu; Samantha Ketterer, *Repeated Bail for Houston Man Accused of Murder, 6 Felony Convictions Raises Eyebrows*, HOUSTON CHRON. (Sept. 11, 2020), bit.ly/3N4fn9J.

[3]Indeed, the core of the *Daves II* decision completely undermines the basis for the *ODonnell* consent decree.  *Daves II*, 2023 WL 2720444, at *10 ("[N]either *ODonnell I* nor this case should have been adjudicated in federal court.").  As the Court is aware, District Attorney Ogg respectfully objected to entry of the consent decree, including on grounds that it represented an unwarranted and improper intrusion into the operation of the Harris County criminal justice process.  *See* Harris County District Attorney's Statement of Intent to Appear and Supplemental Amicus Brief at 4, *ODonnell v. Harris County*, No. 4:16-cv-1414 (S.D. Tex. Oct. 17, 2019), ECF. No. 665.

*Earle*, 388 F.3d 515, 518 (5th Cir. 2004); *see also Daves II*, 2023 WL 2720444, at *6 (describing "the principles of *Younger*" as a "mandate").

As a result of implementation of the *ODonnell* consent decree in Harris County, the Court has seen firsthand the results of federal intrusion into a local criminal justice system that *Daves II* holds should not occur. An obvious example is through the work (not to mention the related expenditure of county taxpayer resources) of court-appointed monitors under the *ODonnell* consent decree. *See, e.g.,* First, Second, Third, Fourth, Fifth, and Sixth Six-Month Monitor Reports, *ODonnell v. Harris County*, No. 4:16-cv-1414 (S.D. Tex.), ECF Nos. 722, 725, 726, 732, 733, 734, 736. Although District Attorney Ogg believes that the monitors appointed through the *ODonnell* consent decree endeavor to act professionally in discharging their duties, there is also no doubt that participants in the Harris County system—including the HCDAO—have spent a great deal of time reporting to the monitors, including on individual cases. *E.g.*, **Exhibit A** ¶ 14. This is precisely the type of federal micromanagement that *Daves II* confirmed is inappropriate and improper. *Daves II*, 2023 WL 2720444, at *4. This is also precisely the type of federal micromanagement that the *Russell* plaintiffs have requested be done for the bail-setting and case-administration processes for felony cases in Harris County. Dkt. 634 at 12–13 (ECF pagination); Dkt. 195-1 at 50–51 (ECF pagination).

*Daves II* confirms, as a matter of binding precedent, that *Younger* abstention is alive and well. The Court recently requested briefing from the parties on "to what extent abstention is a waivable defense," and District Attorney Ogg respectfully

contends that the abstention issue has not been waived in the *Russell* litigation.  The Supreme Court has held that "the fact that the full arguments in favor of abstention may not have been asserted in the District Court does not bar [the Supreme Court's] consideration of the issue."  *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976). "[A]bstention may be raised by the court *sua sponte*."  *Id.*  In *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626 (1986), the Court held that *Younger* abstention was not waived even though the state stipulated to the district court's jurisdiction because there had been no "express . . . consent or waiver." Abstention can therefore be waived by express consent but cannot be forfeited by an assertion of abstention that a party claims is untimely.  *Cf. United States v. Olano,* 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'").

Following this authority, the Fifth Circuit has rejected an argument that waiver occurs when a governmental entity makes arguments about the merits of a case without first raising abstention, because "for a state to waive *Younger* abstention, it must do so explicitly."  *RTM Media LLC v. City of Houston*, 584 F.3d 220, 229 n.15 (5th Cir. 2009) (citing *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008)).  The Fifth Circuit has also previously considered the issue of *Younger* abstention *sua sponte.  See Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003) ("Although the Marine Corps never requested [it] . . . , we believe it is necessary to raise the issue whether the federal

courts have equitable jurisdiction to hear this case under the abstention doctrine promulgated in *Younger v. Harris*, 401 U.S. 37 (1971).").

Other circuits have similarly held that *Younger* abstention can be waived by express consent but cannot be forfeited based on a claim that abstention was not raised timely. *See, e.g.*, *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008) (holding that a state does not "waive[] the right to assert *Younger* simply by addressing the merits of the case without having raised the issue of *Younger* abstention"); *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) ("We may [consider *Younger* abstention] for the first time on appeal because *Younger* abstention may be raised sua sponte at any point in the appellate process."); *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) ("In the absence of a showing that a state has waived abstention arguments by expressly urging the federal court to address the merits, the issue may be raised on the initiative of the court."); *Morrow v. Winslow*, 94 F.3d 1386, 1391 (10th Cir. 1996) ("We are convinced that we have properly raised the abstention issue *sua sponte*."); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 786 n.1 (3d Cir. 1994) ("Even though the question of *Younger* abstention was not raised by the parties on appeal, we may consider it *sua sponte*."); *Curd v. City of Searcy*, 739 F. App'x 359, 360 (8th Cir. 2018) (unpublished) ("Upon review, we conclude that the District Court's sua sponte decision to abstain under *Younger* was appropriate.").

Here, at least two of the party defendants—the Harris County Sheriff and the State of Texas as intervenor—have expressly invoked *Younger* abstention. Dkts. 669, 670. As the foregoing cases make clear, it would never be "too late" to raise additional

9

arguments for *Younger* abstention. This is especially true in light of the fact that *Daves II* recently overruled *ODonnell I*—a Fifth Circuit panel decision that declined to apply *Younger* abstention to litigation that by all accounts was similar to this. The Fifth Circuit held in *Daves II* that *Younger* abstention applied and overruled *ODonnell I*, stating that "neither *ODonnell I* nor this case should have been adjudicated in federal court." 2023 WL 2720444, at *10.

District Attorney Ogg joins the Harris County Sheriff and intervenor State of Texas in urging this Court to abstain from further proceedings on Plaintiffs' claims. As the elected official in charge of the office that prosecutes all criminal cases in Harris County, she believes that any reforms to Harris County's bail system must be developed and implemented by the people's elected officials at the county and state level, rather than by private plaintiffs seeking to involve a federal court. She fully appreciates that this Court has a genuine and well-intentioned interest in addressing issues raised by Plaintiffs related to the Harris County bail-setting system. However, the overarching purpose of *Younger* abstention is the "vital consideration" of "comity," which includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 364 (1989) (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)). Out of respect for "Our Federalism," *Younger*, 401 U.S. at 44, the Court should abstain from

the Plaintiffs' invitation to engage in federal micromanagement of state criminal proceedings in Harris County.

## III.  Mootness of *Russell* Plaintiffs' Claims

There should likewise be no equivocation on the plain application of core mootness provisions to bar review of Plaintiffs' federal constitutional claims.  The *Daves II* decision unequivocally found the named plaintiffs' claims to be moot, given the relevant changes in state law through the S.B. 6 legislation.  *See Daves II*, 2023 WL 2720444, at *13.  These changes to state law included reinforced requirements for judges and magistrate judges to make an "individualized" determination of the "least restrictive" bail conditions "necessary to reasonably ensure the defendant's appearance in court as required and the safety of the community, law enforcement, and the victim of the alleged offense."  TEX. CODE CRIM. PROC. art. 17.028(a), (b); *see also Daves II*, 2023 WL 2720444, at *14.

This case was brought as a challenge to pre-S.B. 6 bail policies and practices in Harris County.  As further admitted by Plaintiffs, they have not raised any constitutional challenge to the law changes enacted through S.B. 6.  The complaint describes Harris County's pre-S.B. 6 bail policy as "a system of pretrial detention based solely on access to money by imposing and enforcing secured financial conditions of pretrial release" without any consideration of whether "the person can afford to pay the amount required for release" or whether "pretrial detention is necessary because every less-restrictive alternative condition is inadequate to meet a specific, compelling government interest in court appearance or community safety." Dkt. 195-1 at ¶ 13.

The law changes enacted by S.B. 6 address the heart of Plaintiffs' claims, without regard to their merit. The law changes specifically require: (1) a decision on bail within 48 hours of arrest; (2) individual consideration of the factors listed in TEX. CODE CRIM. PROC. art. 17.15(a), which includes the "ability to make bail"; and (3) the imposition of the "least restrictive conditions, if any" that will "reasonably ensure the defendant's appearance in court as required and the safety of the community, law enforcement, and the victim of the alleged offense." TEX. CODE. CRIM. PROC. art. 17.028(a), (b). These provisions of law, which are just as applicable to Harris County as Dallas County, are considered every day in the large criminal dockets in Harris County. The real-world, public-facing experience in Harris County today confirms that S.B. 6 has been implemented in the Harris County criminal justice system. **Exhibit A ¶¶** 4–5. These changes include the post-S.B. 6 phase-out of the court-issued bail-amount guidelines over which the litigation in *Russell* and *Daves* was filed. *Id*. ¶ 4.

At the summary judgment hearing before this Court on March 29, 2023, the parties debated whether the S.B. 6 law changes mooted this case. Plaintiffs' counsel argued that the case is not moot because "[w]e are not challenging S.B. 6." Hearing Tr. at 26:22. Counsel for the State of Texas responded that "whether [this case] is termed as a challenge to the law [S.B. 6], which plaintiffs say it is not, or practices [of Harris County] . . . what the plaintiffs are asking this Court to do is to fashion remedies that will directly impact and in some cases . . . be contrary to what is provided in [S.B. 6]." Hearing Tr. at 55:6–12. The State as intervenor further

12

argued—in a manner that previewed the analysis underlying *Daves II*—that because the named plaintiffs in *Russell* were processed through the pre-S.B. 6 bail system, they could conceivably only have standing to challenge that pre-S.B. 6 process. Hearing Tr. 19:19–20:5.

The Fifth Circuit's holding on mootness in *Daves II* makes clear its agreement with the State's argument that S.B. 6 makes this case moot: "That the named plaintiffs have not been subject to bail proceedings since years before the advent of S.B. 6 calls into question their ability to pursue this litigation for ongoing injunctive relief as injured parties, much less class representatives." *Daves II*, 2023 WL 2720444, at \*14. If there were any doubt about the record before the Court, public-record information confirms that each of the named plaintiffs in *Russell* was processed for pre-trial release under the pre-S.B. 6 process. Dkt. 195-1 at ¶¶ 45, 51, 57, 62, 72; **Exhibit A ¶¶ 6–11.**[4]

Despite Plaintiffs' apparent efforts to create an appearance of daylight between the records in *Daves II* and this Court, the same mootness principles apply here. For example, Plaintiffs rely on pre-S.B. 6 information about the number of people who waited more than 48 hours after arrest to receive a bail determination. *E.g.*, Dkt. 634

---

[4]District Attorney Ogg is aware that Plaintiffs have asked this Court to consider class certification in *Russell* before these threshold issues of abstention and mootness are decided. Such a result would be inconsistent with the principles reaffirmed in *Daves II*, both because abstention and mootness (if the right course, as here) should preclude class certification and because under the clear dictates of *Daves II*, the *Russell* named plaintiffs could never be adequate class representatives. *See Daves II*, 2023 WL 2720444, at \*13 (holding that plaintiffs that have not been subject to bail proceedings since S.B. 6 lack the ability "to pursue this litigation for ongoing injunctive relief as injured parties, much less class representatives").

at 19 (ECF pagination).  Public-record data shows that all five of the named Plaintiffs, who were processed before the provisions of S.B. 6 took effect, received a bail determination within 48 hours.  **Exhibit A ¶¶** 6–12.  Of the 61 additional detainees cited by Plaintiffs in their summary-judgment brief and reply brief, public-record data shows that only three did not have bail set within 48 hours of arrest.  *Id.* ¶ 13. In fact, one of those detainees was referred to his "home court" under a new provision of state law enacted through S.B. 6.  TEX. CODE CRIM. PROC. art. 17.027; **Exhibit A ¶** 13. This new provision of law—which again, Plaintiffs by their own statements to the Court do not challenge—requires that a defendant who is charged with a felony while on bail for another felony have her or his bail set by the court before whom the prior case is pending, referred to as the "home court."

On a broader scale than anecdotes about 61 cases, the plain and public-facing fact remains that hundreds of arrestees in Harris County each month are processed in and out of pretrial detention under the Harris County system that incorporates the S.B. 6 law changes.  **Exhibit A ¶** 5.  Any alleged missing of deadlines or claimed failures in representation by defense counsel in individual cases cannot overcome the fundamental point of *Daves II*:  The passage of S.B. 6 and reinforced processes for state-court bail-setting render the federal constitutional challenges to a pre-S.B. 6 system moot.  *Daves II*, 2023 WL 2720444, at * 13 (holding the case moot even though "plaintiffs submitted some kind of video evidence purporting to demonstrate deficient proceedings").

In total, thirteen of the fifteen Fifth Circuit judges who heard *Daves II* agreed that the law changes enacted through S.B. 6 rendered the case moot. *See id.* at *13 (majority opinion) (holding that the "present controversy must be considered moot"); *id.* at *15 (Richman, C.J., concurring in the judgment) (concurring "that this case is moot in light of new legislation passed by the Texas legislature"); *id.* at *15 (Southwick, J., concurring in the judgment) (concurring with the majority's analysis of mootness because the "Texas legislature's adoption of new rules for addressing bail in trial courts has entirely changed the relevant factual and legal underpinnings for the dispute"); *id.* at *33 (Higginson, J., concurring in part and dissenting in part) ("I would hold that this case is moot and affirm on that basis alone."). *Daves II* is not materially distinguishable from this case. As with the litigation at issue in *Daves II*, this case is mooted by the S.B. 6 law changes and should be dismissed.

## CONCLUSION

District Attorney Ogg respectfully urges this Court to dismiss this case on the grounds of *Younger* abstention and mootness, following the clear dictates of law as re-emphasized by the *en banc* Fifth Circuit in *Daves II*.

Respectfully submitted,

BUTLER SNOW LLP

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols
Texas Bar No. 14994900
S.D. Tex. Bar No. 13066
eric.nichols@butlersnow.com

Cory R. Liu
Texas Bar No. 24098003
S.D. Tex. Bar No. 3047640
cory.liu@butlersnow.com

1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Phone: (737) 802-1800
Fax: (737) 802-1801

*Counsel for Amicus Curiae*
*Harris County District Attorney Kim Ogg*

**CERTIFCATE OF SERVICE**

A true and correct copy of the foregoing pleading was served on counsel of record for the parties in compliance with the Federal Rules of Civil Procedure by filing with the Court's CM/ECF system on April 24, 2023.

*/s/ Cory R. Liu*
Cory R. Liu

# Exhibit A

## DECLARATION OF JENNIFER KEITH

1.      My name is Jennifer Keith.  I am over the age of eighteen and am competent to testify.  The below information is provided based on my personal knowledge.

2.      I am an attorney at the Harris County District Attorney's Office (the "HCDAO").  I currently serve as the Division Chief of the Intake Division of the HCDAO.  In my current role and in prior roles at the HCDAO, I am and have been familiar with and exposed to, on a daily basis, publicly available information about the operation of the initial appearance and bail-setting processes for felony criminal cases in Harris County.

3.      I have provided testimony as an organizational representative for the HCDAO in *Russell v. Harris County et al.*, Case No. 4:19-cv-0026, as well as testimony in my individual capacity.  I gave deposition testimony in two sessions, one on March 22, 2021 and one on March 10, 2022.  As I recall, there was only a passing reference to the law changes made through S.B. 6 in the questions at one of my deposition sessions. A true and correct copy of an excerpt from the March 10, 2022 deposition is attached as Exhibit 1 to this declaration.

4.      The changes to Texas law concerning initial appearances and bail-setting in Texas criminal cases were phased in following the passage and signing of S.B. 6 into law in 2021, with all of the S.B. 6 changes taking effect in 2022.  Once the changes in law enacted through S.B. 6 took effect, from my observations working in the HCDAO Intake Division, appearing in and monitoring 17.15 hearings, and in

monitoring the processing of criminal cases following the arrest or surrender of persons charged with crimes, the S.B. 6 law changes were implemented in the initial appearance and bail-setting practices in the Harris County criminal justice system. This implementation included the following:

- A new public safety report system was implemented statewide, including in Harris County, following S.B. 6 law changes;

- The felony bail schedule previously considered by magistrate judges in setting bail was no longer used;

- The "general order bonds" or GOBs implemented for felony cases during the pandemic were phased out;

- The types of cases for which personal bonds were granted changed in a manner consistent with the S.B. 6 law changes; and

- The requirement of having the "home court" set bail for those persons who had a prior case in which a bond had been posted was implemented, by referring those persons to their "home court" for the setting of bail in the newly filed case(s)

5.     Since S.B. 6 was implemented, hundreds of persons who were arrested or who self-surrendered in Harris County on felony charges were processed in and out of pretrial detention under the Harris County system that incorporates the S.B. 6 law changes.  On a typical day, the 17.15 dockets for felony cases included between 18-21 defendants on each of the 8 dockets conducted every three hours.  Over and above 17.15 dockets, many more persons were processed in and out of pretrial

detention through the early presentment process, without appearing at a 17.15 hearing.

6.      All five of the named plaintiffs in the *Russell* litigation were processed under the bail system that existed in Harris County prior to the implementation of the S.B. 6 law changes.

7.      According to public records, Dwight Russell was arrested for his third DWI, a third-degree felony, at 3:50 p.m. on 1/19/2019.  He was booked into the Harris County Jail at 12:11 a.m. on 1/20/2019, had a bail hearing on 1/20/2019 at 5:42 a.m., was represented by Harris County assistant public defender E. Cantu, and had bond set at $25,000 by Texas Government Code Chapter 54 hearing officer L. Porter.

8.      According to public records, Johnnie Pierson was arrested for felony possession of a controlled substance at 1:45 a.m. on 1/18/2019.  He was booked into the Harris County Jail at 3:08 a.m. on 1/19/2019, had a bail hearing at 8:03 a.m. on 1/19/2019, was represented by Harris Count assistant public defender D. Kundiger, and had bond set at $15,000 by Texas Government Code Chapter 54 hearing officer J. Licata.

9.      According to public records, Joseph Ortuno was arrested for felony possession of a controlled substance with intent to deliver at 1:30 a.m. on 1/18/2019.  He was booked into the Harris County Jail at 3:19 a.m. on 1/19/2019, had a bail hearing at 7:56 a.m. on 1/19/2019, was represented by Harris County assistant public defender D. Kundiger, and had bond set at $30,000 by Texas Government Code Chapter 54 hearing officer J. Licata.

10. According to public records, Christopher Clack was arrested for felony tampering with a government record and charged as a habitual offender at 9:42 a.m. on 1/17/2020. He was booked into the Harris County Jail at 11:51 a.m. on 1/17/2020, had a bail hearing at 1:21 a.m. on 1/18/2020, was represented by Harris County assistant public defender C. Self, and had bond set at $10,000 by Texas Government Code Chapter 54 hearing officer C. Harris-Diggs.

11. According to public records, Maurice Wilson was arrested for felony possession of a controlled substance at 12:01 a.m. on 1/31/2020. He was booked into the Harris County Jail at 1:37 a.m. on 1/31/2020, had a bail hearing at 4:59 p.m. on 1/31/2020, was represented by Harris County assistant public defender M. Jones, and had bond set at $15,000 by Texas Government Code Chapter 54 hearing officer C. St. Julian.

12. In each of the five named Plaintiffs' cases, they received a bail hearing less than 48 hours after their arrest and were represented by counsel.

13. Of the 61 additional detainees cited by Plaintiffs in their submission to the Court, according to public records, only three did not have bail set within 48 hours of arrest. With respect to those three, one person (B. Davis) was scheduled for a preliminary initial appearance before a "home court" under a provision of S.B. 6 that requires a defendant charged with a felony while on bail for another felony to have bail set by the court in which the previous case is pending. Another person (J. Mason) was already in custody for having absconded on a bond (for the third time) on a prior misdemeanor case and was assigned to appear initially in the district court in which

4

that case was filed. The final person (T. Holmes) was scheduled for and appeared in the home court in which the case was filed but did not appear at a 17.15 hearing.

14.    I have been involved with several situations in which court-appointed monitors operating under the *ODonnell v. Harris County* consent decree have inquired about individual cases. These inquiries have been routed through the Harris County Attorney's Office or the Office of Court Management, Harris County Courts. These requests have inquired about why general order bonds were not issued in particular misdemeanor matters. I am also aware that representatives of the court-appointed monitors have conducted meetings over time with Texas Government Code Chapter 54 hearing officers and representatives of the Harris County Public Defender's Office.

15.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24, 2023.

Jennifer Keith

5

# Exhibit 1
# to Declaration of Jennifer Keith

114

1   office-wide criteria for what sorts of individuals might

2   be eligible for a reduced or personal bond through this

3   process?

4        A.    The only criteria is just to make sure it is in

5   compliance with any applicable laws, including the most

6   recent bail laws that went into effect at the beginning

7   of this year.

8        Q.    And you're referring to SB-6?

9        A.    That's correct.

10       Q.    When HCDAO identifies a person for whom it does

11  not oppose a personal or reduced bond through that

12  process that we were just discussing, what steps does it

13  take to notify that court or the defense attorney of its

14  nonopposition to a lower or personal bond?

15       A.    Well, we would not notify the court because

16  that would be ex parte.  So we would reach out to the

17  defense lawyer, if one has been hired or appointed at

18  the time, which usually is not the case at the time that

19  initial review is being made because the defendant, if

20  they are in custody, likely has the need for an

21  appointed lawyer.  And that appointment is -- if it is

22  not made prior to their actual appearance on that first

23  setting, then it's done at that first setting.

24            If a court proactively appoints lawyers to

25  defendants who have cases upcoming on their docket, then

1  the prosecutor would reach out to that lawyer and let

2  them know that they're either not opposed to a reduction

3  or a personal bond.  And then a bond agreement would be

4  entered either in writing and filed with the court, or

5  they would approach the judge at that first appearance

6  and let the judge know that an agreement has been made.

7  And then the judge has the clerk make the entry on the

8  docket and into the system as to whatever that agreed

9  bond amount is.

10      Q.   So in those cases where, I think you said, it's

11  typically the norm where a lawyer hasn't yet been

12  appointed, then am I correct that at the first hearing

13  that individual has before a judge, the prosecutor will

14  announce that they don't oppose a reduced or personal

15  bond?

16      A.   If that is their decision, they're not going to

17  announce it.  They're going to discuss it with whoever

18  the lawyer is that's appointed.  And then they will

19  either enter a written agreement into the records of the

20  court, or they will approach -- both parties will

21  approach the bench and advise the court of the agreement

22  that has been made.

23      Q.   In situations where there isn't an attorney

24  appointed and the DA's Office reaches out to that

25  attorney to say it no longer opposes a personal bond or