Case 4:19-cv-00226   Document 713   Filed on 08/31/23 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
August 31, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DWIGHT RUSSELL, *et al.*, § § | |
| Plaintiffs, § | |
| v. § | CIVIL ACTION NO. H-19-226 |
| § | |
| HARRIS COUNTY, TEXAS, *et al.*, § § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

*"The reason that prisons are filled with poor people, and that rich people rarely go to prison, is not because the rich have better lawyers than the poor. It is because prison is for the poor, and not the rich."*[1]

*"At least 21 inmates died while in custody at the [Harris County] jail in 2021 . . . . Another 28 inmates died last year, and another four have died in the first couple months of 2023 . . . ."*[2]

Thirty-six years ago, the Supreme Court stated that "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Today, detention before trial or a guilty plea may be "the norm," and liberty its "carefully limited exception." *See* Kellen Funk & Sandy Mayson, *Bail at the Founding*, 137 HARV. L. REV. (forthcoming 2023) (manuscript at 3).

This case challenged Harris County's pretrial practice of detaining persons accused of a crime simply because they are too poor to post money bail. The Fifth Circuit has recognized a constitutional right of those accused of certain misdemeanor offenses—and, by extension, those

---

[1] Paul D. Butler, *Poor People Lose:* Gideon *and the Critique of Rights*, 122 YALE L.J. 2176, 2178 (2013).
[2] Giulia Heyward, *Dozens of Inmates Have Died in a Houston Jail Since 2021. Now the FBI Is Investigating*, NPR (Feb. 15, 2023), https://www.npr.org/2023/02/15/1157215405/fbi-jail-deaths-harris-county-houston-civil-rights-investigations.

accused of certain nonviolent felony offenses—who are eligible for bail but unable to afford it. At the same time, the latest rulings from the Fifth Circuit have increasingly narrowed the availability of a remedy for violations of this constitutional right.

The Fifth Circuit's most recent decision in *Daves v. Dallas County* (*Daves II*), 64 F.4th 616 (5th Cir. 2023) (en banc), brings this case to an end. "Lost in the shuffle . . . is this case's bottom-line issue: in many circumstances, only those with money can get out of jail before trial. So, if you can pay for your crime of arrest, you're free. If you can't, you're not." *Daves v. Dallas County* (*Daves I*), 22 F.4th 522, 551 (5th Cir. 2022) (en banc) (Haynes, J., dissenting).

Unless the United States Supreme Court steps in, this court is bound by *Daves I* and *Daves II*. This case must be dismissed. Final judgment will be entered separately.

**I.     Background**

This case was filed in January 2019, but it began with a separate case from 2016. That case was brought by Maranda Lynn ODonnell, who was arrested for driving with a suspended license, had bail set at the prescheduled amount ($2,500), could not afford that bail, and was therefore detained. She sued, alleging a violation of her constitutional rights. *ODonnell v. Harris County*, 227 F. Supp. 3d 706, 722 (S.D. Tex. 2016). In that case, this court found "tens of thousands of constitutional violations" occurring in Harris County based on its standardized bail practices that failed to take into account an individual's ability to pay. *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1150 n.99, 1151 (S.D. Tex. 2017).

*ODonnell* went up and down the appellate ladder, but each time, this court's core holding—that this constitutional violation can and should be remedied—was upheld. *See ODonnell v. Harris County* (*ODonnell I*), 892 F.3d 147, 157 (5th Cir. 2018) ("For the reasons set forth below, we affirm the court's rulings that the County's bail system violates both due process and equal protection, though we modify the basis for its conclusion as to due process."); *ODonnell v.*

*Goodhart* (*ODonnell II*), 900 F.3d 220, 225 (5th Cir. 2018) ("The identified violation was the automatic imposition of bail. Individualized hearings fix that problem . . . ."); *ODonnell v. Salgado* (*ODonnell III*), 913 F.3d 479, 482 (5th Cir. 2019) ("[T]he published opinion granting the stay is this court's last statement on the matter and, like all published opinions, binds the district courts in this circuit.").

Shortly after the Fifth Circuit issued its opinion in *ODonnell III*, this case was filed. Several felony arrestees, on behalf of themselves and those similarly situated, sued (1) Harris County, (2) the Harris County Sheriff, and (3) Harris County District Judges, also referred to as the felony judges,[3] for using secured money bail to detain impoverished felony arrestees, without adequate factual findings or other adequate procedural safeguards in violation of equal protection and due process. (Docket Entry No. 1).

As this case proceeded, the Fifth Circuit, sitting en banc, retracted the findings made and legal conclusions reached in *ODonnell*. On January 7, 2022, the Fifth Circuit issued *Daves I*. That case was a class action lawsuit alleging that Dallas County, the Sheriff, the Magistrates, the Felony Judges, and the Misdemeanor Judges used an unconstitutional system of wealth-based detention. As the dissent noted, "[a]lthough [that] case [was] captioned as *Daves*, the majority opinion use[d] it to overrule much of the *ODonnell* cases." *Daves I*, 22 F.4th at 551 (Haynes, J., dissenting). In overruling *ODonnell*, *Daves I* made several threshold determinations about standing, abstention, and capacity to sue, which directly impacted this case. The court held a status conference on January 31, 2022, and asked the parties to brief the impact of *Daves I*. (Docket Entry No. 562).

The en banc court in *Daves I* had also instructed the Northern District of Texas to address on remand whether *Younger* abstention applied and whether Texas Senate Bill 6 mooted the case.

---

[3] The felony judges were later dismissed with prejudice. (Docket Entry No. 391).

3

*Daves I*, 22 F.4th at 531 (majority opinion). On July 6, 2022, the *Daves* district court issued its post-remand opinion, concluding that *Younger* abstention was not required, but that the case had been made moot by the Texas legislature's adoption of Senate Bill 6. *Daves v. Dallas* County, No. 3:18-cv-154, 2022 WL 2473364, at *3, *6 (N.D. Tex. July 6, 2022).

In December 2022, the *Russell* plaintiffs filed a motion for summary judgment. (Docket Entry No. 634). The plaintiffs argued that there was no genuine dispute of material fact and that they were entitled to judgment as a matter of law on their substantive and procedural due process claims. In January 2023, the State of Texas, which had intervened, moved to dismiss based on mootness. (Docket Entry No. 642). The State also argued that the plaintiffs did not establish a legal right to pretrial release or to be free from money-based detention. (Docket Entry No. 642 at 13–21). As to procedural due process, the State argues that the plaintiffs had not established a legal right or its violation. (Docket Entry No. 642 at 22–23).

In January and February 2023, the two remaining defendants, Sheriff Ed Gonzalez and Harris County, each responded to the plaintiff's motion for summary judgment with a cross-motion for summary judgment, arguing that jurisdictional issues precluded judgment for the plaintiffs as a matter of law. (Docket Entry Nos. 641, 643). Sheriff Gonzalez's response argued that the plaintiffs lacked standing to sue him and that their claims were moot. (Docket Entry No. 641). Harris County's response argued that the plaintiffs had failed to adequately plead *Monell* liability and that their claims were moot. (Docket Entry No. 643). The court heard oral argument on these issues in March 2023. (Docket Entry No. 658). Two days later, the Fifth Circuit issued *Daves II*.

In *Daves II*, the Fifth Circuit held that S.B. 6 made the case moot. *Daves II*, 64 F.4th at 635. But despite the *Daves II* court's holding that S.B. 6 (which was passed *before* the issuance of *Daves I*) mooted the case, the court did not vacate its earlier opinion in *Daves I*. The court did not explain how *Daves I* was both moot and presented a live case or controversy, a core

4

requirement for jurisdiction. *Id.* at 635 n.41. The court also, in what appears to be an advisory opinion given its conclusion that the case was moot, overruled *ODonnell*'s holding on *Younger* abstention. *Id.* at 623–33.

## II. Analysis

Based on *Daves II*, no decision on the merits may issue in this case. The plaintiffs have argued that this case is not moot, citing to "[d]ecades of unbroken Supreme Court precedent [that] establish that the enactment of legislation moots a case only if the legislation 'completely and irrevocably eradicates the effects of the alleged violation[s],' or affords the plaintiffs the 'precise relief . . . requested in the prayer for relief in their complaint.'" (Docket Entry No. 650 at 11 (first quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979), then quoting *New York State Rifle & Pistol Association v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam)).

The plaintiffs went on to provide several examples of substantive harm that existed even after the passage of S.B. 6:

> • **Felony arrestees who are obviously too poor to make a payment are required to pay secured bail without any finding that their detention is necessary.** Dkt. 634 (Pls' Br.) at 43–44; Dkt. 634-1 (Pls' SUMF) ¶¶ 103, 109; e.g. id. ¶ 109 n. 205 (May 6, 2022; A.R. was required to pay $20,000 for release, even though she is a single mother of four who relies on food assistance; no findings of ability to pay or necessity of detention); id. (September 12, 2022; M.A.A. was required to pay $50,000 for release, even though she is an indigent mother of three who had never been arrested before; no findings of ability to pay or necessity of detention).
>
> • **Detention orders are imposed without any opportunity to present evidence, let alone any application of a heightened evidentiary standard or an explanation of how any such evidence supports judicial findings.** Dkt. 634 (Pls' Br.) at 43–44; Dkt. 634-1 (Pls' SUMF) ¶¶ 100, 106, 113; e.g. id. ¶ 113 n. 210 (July 29, 2022 hearing lasting 70 seconds where officer required $10,000 secured bond for R.J.M. without making any findings or applying any standard of evidence).
>
> • **Class members are stuck in jail when they cannot pay secured bail without any opportunity for an adversarial, on-the-record bail hearing, and are sometimes not brought to court at all until they plead guilty.** Dkt. 634 (Pls' Br.)

5

at 18–20; e.g., Dkt. 634-1 (Pls' SUMF) ¶ 151 n. 276 (D.H. waited over four months for a hearing); id. (R.B. waited 56 days for a hearing); id. ¶ 139 (August 5, 2022 hearing where officer required $25,000 secured bond in absentia for teenager J.S., who four months later still had not seen a judge)

. . . .

• **Money bail is still set in a majority of felony cases.** Prior to S.B. 6, 2 about 69% of people charged with felonies were required to make a payment to get out of jail. Dkt. 634 (Pls' Br.) at 24. After S.B. 6,3 about 75% must make a payment. Ex. 1 (Pls' SSUMF) ¶ 2(a) (citing Supplement to Expert Report of Dr. Jennifer Copp ("Supp. Copp Report").

• **Most people still cannot pay their way out of jail prior to first appearance.** Prior to S.B. 6, 68% of people remained detained at their scheduled first appearance in district court. Dkt. 634 (Pls' Br.) at 24. After S.B. 6, 73% remained detained at first appearance. Ex. 1 (Pls' SSUMF) ¶ 2(d) (citing Supp. Copp Report).

• **Bail review hearings remain extremely rare.** Both before and since S.B. 6, only 7% of detained felony arrestees were scheduled for one. Dkt. 634 (Pls' Br.) at 24; Ex. 1 (Pls' SSUMF) ¶ 2(e) (citing Supp. Copp Report).

• **Thousands of people are still detained at disposition every year solely because they cannot pay the secured bail amounts required for release.** Before S.B. 6, 45% of people who were required to pay money to be released remained detained at the time their case was resolved. Dkt. 634 (Pls' Br.) at 25. After S.B. 6, among cases that were resolved, that figure was 64%. Ex. 1 (Pls' SSUMF) ¶ 2(c) (citing Supp. Copp Report).

(Docket Entry No. 650 at 14–15).

The evidence of ongoing constitutional violations is inconsistent with a finding of mootness. That finding is especially puzzling when the underlying right at issue is "'fundamental to our scheme of ordered liberty,' with 'dee[p] root[s] in [our] history and tradition.'" *Timbs v. Indiana*, 139 S. Ct. 682, 686–87 (2019) (alterations in original) (quoting reference omitted). *See generally* Monica Bell, Stephanie Garlock & Alexander Nabavi-Noori, *Toward a Demosprudence of Poverty*, 69 Duke L.J. 1473 (2020) (discussing how legal-financial obligations lead to the criminalization of poverty and calling on the judiciary to more actively address these practices);

6

Funk & Mayson, *supra* (discussing the historical origins and practices of bail). *See also id.* (manuscript at 29) ("[B]y the 1790s the states were in the process of broadly adopting a reformed approach to bail that severely limited magisterial discretion and protected the fundamental rights of the criminal accused.").

Nevertheless, this court is bound by the Fifth Circuit's conclusions. The Fifth Circuit determined that S.B. 6 mooted the challenges in *Daves*, despite the plaintiffs citing to similar continued constitutional violations. *Daves*, although involving different facts, is largely legally identical to *Russell*. Adherence to Fifth Circuit authority requires that this case be dismissed as moot. Having made that ruling, the court need not address any other basis for dismissal.

**III. Conclusion**

The motions to dismiss on the basis of mootness, (Docket Entry Nos. 641, 642, 643), are granted. This case is dismissed.

SIGNED on August 31, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge